DDH Fund, LP, a Delaware Limited Partnership
Seven (7) Property Portfolio - PA
Lima One Capital, LLC | November 8, 2019

Loan 963

# ADJUSTABLE RATE NOTE

## (LIBOR One-Year Index (As Published In *The Wall Street Journal*) – Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES I MUST PAY.**

November 8, 2019

5332 Lena Street, Philadelphia, PA 19144
1835 Harrison Street, Philadelphia, PA 19124
4124 Paul Street, Philadelphia, PA 19124
5743 North Beechwood Street, Philadelphia, PA 19138
335 North Redfield Street, Philadelphia, PA 19139
4182 Paul Street, Philadelphia, PA 19124
2737 West Eyre Street, Philadelphia, PA 19121
[Property Addresses]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$594,275.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Lima One Capital, LLC, A Georgia Limited Liability Company**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.90%**. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 is the rate I will pay both before and after any default described in Section 7(B) of this Note or the associated Security Instrument.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **10th** day of each month beginning on **January 10, 2020**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If on **December 01, 2049** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **201 East McBee Avenue, Suite 300, Greenville, SC 29601** or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

My monthly payments prior to the initial Change Date, as defined below, will be in the amount of U.S. **$3,524.86**. This amount may change in accordance with Section 4 of this Note.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) The Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on **January 01, 2020**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change is called a "Change Date."

### (B) The Index

DDH Fund, LP, a Delaware Limited Partnership
Seven (7) Property Portfolio - PA
Lima One Capital, LLC | November 8, 2019

Loan 963

Beginning with the initial Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index value available as of the date 45 days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating my interest rate.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **4.00%** (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits set forth in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that, at the Change Date, would be sufficient to repay the unpaid principal that I am expected to owe in full on the Maturity Date, at my new interest rate, in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.90%** or less than **5.90%**. Thereafter, my interest rate will never increase or decrease on any single Change Date by more than **2.00%** from the rate of interest I paid for the preceding 12 months. My interest rate will never be greater than **10.90%**, which is called the "Maximum Rate," or less than **5.90%**, which is called the "Minimum Rate".

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date on, or immediately after, the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of the change in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   PREPAYMENT**

On the date on which a prepayment, voluntary or mandatory, is made (including any amounts collected by Lender after an Event of Default), Borrower shall pay to Lender the following:

**(A)**   all accrued and unpaid interest calculated at the Interest Rate on the amount of principal being prepaid through and including the date of such prepayment, together with an amount equal to the interest that would have accrued at the Interest Rate on the amount of principal being prepaid through the end of the Interest Period in which such prepayment occurs (the "Prepayment Interest Period"), notwithstanding that such Interest Period extends beyond the date of prepayment;

**(B)**   if the prepayment is made on or prior to the sixtieth (60th) Payment Date a prepayment premium (the "Prepayment Premium") shall be paid in an amount equal to (I) three percent (3%) of the principal amount prepaid that would reduce the scheduled principal balance, per the loan's original amortization table, by more than twenty percent (20%) if the date of prepayment is after the Closing Date through and including the twelfth (12th) Payment Date, (II) three percent (3%) of the principal amount prepaid that would reduce the scheduled principal balance, per the loan's original amortization table, by more than twenty percent (20%) if the date of prepayment is after the twelfth (12th) Payment Date through and including the twenty-fourth (24th) Payment Date, (III) three percent (3%) of the principal amount prepaid that would reduce the scheduled principal balance, per the loan's original amortization table, by more than twenty percent (20%) if the date of prepayment is after the twenty-fourth (24th) Payment Date through and including the thirty-sixth (36th) Payment Date, (IV) two percent (2%) of the principal amount prepaid that would reduce the scheduled principal balance, per the loan's original amortization table, by more than twenty percent (20%) if the date of prepayment is after the thirty-sixth (36th) Payment Date through and including the forty-eighth (48th) Payment Date and (V) one percent (1%) of the principal amount prepaid that would reduce the scheduled principal balance, per the loan's original amortization table, by more than twenty percent (20%) if the date of prepayment is after the forty-eighth (48th) Payment Date through and including the sixtieth (60th) Payment Date; and

**(C)**   all other sums, then due under the Loan Documents.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the

DDH Fund, LP, a Delaware Limited Partnership
Seven (7) Property Portfolio - PA
Lima One Capital, LLC | November 8, 2019

Loan 963

Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be five (5) percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows: If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

[Signatures Commence on Next Page]

DDH Fund, LP, a Delaware Limited Partnership
Seven (7) Property Portfolio - PA
Lima One Capital, LLC | November 8, 2019

Loan ███ 63

**In Witness Whereof**, the undersigned have executed this Adjustable Rate Note as of **November 8, 2019.**

Borrower: **DDH Fund, LP, a Delaware Limited Partnership**

By: Brandon D. Mendenhall, Managing Member of DDH Capital Management, LLC, General Partner

Signed, sealed, and/or delivered in the presence of:

Unofficial Witness

By:_____

Unofficial Witness

By:_____

State of _Calif_

County of _San Bernardino_

On this **8th day of November 2019,** before me, the undersigned official, personally appeared **Brandon D. Mendenhall, Managing Member of DDH Capital Management, LLC, General Partner** of DDH Fund, LP, a Delaware Limited Partnership, known to me or satisfactorily proven to be said person upon presentation of valid photographic identification, who executed this document in my presence for the purposes herein contained.

In witness whereof, I hereunto set my hand and official seal.



[SEAL]

CAROLINE H. GUTIERREZ-JACKSON
Commission # 2136562
Notary Public - California
Los Angeles County
My Comm. Expires Dec 12, 2019

Notary Public    NOTARY public

Caroline H Gutierrez-Jackson
Print Name

12-12-19
Commission Expiration

SEE Attached
"Calif all-purpose Acknowledgment"

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

CIVIL CODE § 1189

State of California

County of _San Bernardino_ }

On _11-8-19_ before me, _Caroline H Gutierrez Jackson_,
     Date                    Here Insert Name and Title of the Officer

personally appeared _Caroline H Gutierrez-Jackson_
                           Name(s) of Signer(s)

_____

**CAROLINE H. GUTIERREZ-JACKSON**
Commission # 2136562
Notary Public - California
Los Angeles County
My Comm. Expires Dec 12, 2019

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ Notary public
                    Signature of Notary Public

---

## ─ OPTIONAL ─

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Note_

Document Date: _11-8-19_      Number of Pages: _(4)_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Individual

☐ Partner — ☐ Limited ☐ General

☐ Attorney in Fact

☐ Trustee

☐ Guardian or Conservator

☑ Other: _Managing Member of LP_

Signer Is Representing: _DDH Fund LP_

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

Signer's Name: _____

☐ Corporate Officer — Title(s): _____

☐ Individual

☐ Partner — ☐ Limited ☐ General

☐ Attorney in Fact

☐ Trustee

☐ Guardian or Conservator

☐ Other: _____

Signer Is Representing: _____

| RIGHT THUMBPRINT OF SIGNER |
|---|
| Top of thumb here |

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907