# EXHIBIT A

## SECURED NOTE

## NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE

**$105,000.00**
                                                                                           Date: December 22, 2023
                                                                                           Travis County, Texas

***Property Address:***              ***2066 E Allegheny Ave, Philadelphia, Pennsylvania 19134-3824***

FOR VALUE RECEIVED, the undersigned, RAD DIVERSIFIED REIT, INC., a Maryland corporation ("Borrower"), whose address is 805 E Bloomingdale Ave # 737, Brandon, Florida 33511-8113, hereby promises to pay to HouseMax Funding, LLC, a Texas limited liability company, or order ("Lender"), whose address is 1301 S Mo Pac Expy Ste 110, Austin, Texas 78746, the principal sum of One Hundred Five Thousand and 00/100 Dollars ($105,000.00), together with interest on the entire Loan Amount of this Note, as follows:

**1.      Interest.** Interest on the entire loan amount, including any Lender Retained Funds, will accrue from the date any proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to Eight and 50/100 Percent (8.5%) for the first eighty-four (84) months ("Initial Interest Rate"). The Initial Interest Rate will change as provided for herein.

      **1.1.      Computation of Interest.** Interest on this Note is computed on a 30/360 basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the entire Loan Amount, multiplied by a month of 30 days.  Interest for the odd days before the first full month and any partial month in which the loan is repaid in full is calculated on the basis of the actual days and a 360-day year and shall include the day of payoff. All interest payable under this Note is computed using this method.

      **1.2.      Interest Rate Changes.** The Initial Interest Rate may change on January 1, 2031, and may change on the 1st day of the month every twelve (12) months thereafter to correspond with changes in the Index rate.  Each date on which the interest rate may change shall be referred to herein as a "Change Date."

      **1.3.      Index.** Commencing on the first Change Date, the interest rate will be based on an Index. "Index" shall mean the 30-day average Secured Overnight Financing Rate ("SOFR"), which is the compounded averages of the SOFR over rolling 30 calendar day periods, as published by the Federal Reserve Bank of New York.  Any interest rate change shall be effective at the beginning of the business day on which such change becomes effective.  The use of the term shall not constitute a representation of Lender as to a rate of interest that any borrower or class of borrower shall necessarily be entitled.  The most recent Index value available as of the date forty-five (45) days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating the interest rate.

      If the Index is no longer available, the Lender will choose a new index which is based upon comparable information and shall notify Borrower of this choice.

      **1.4.      Calculation of Changes.** Before each Change Date, Lender shall calculate the interest rate by adding Five and 25/100 Percent (5.25%) (the "Margin") to the Current Index.  Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date.

      **1.5.      Limits on Interest Rate.**

        **1.5.1.      Initial Interest Rate Limitation.** The interest rate will not increase or decrease more than Five and 00/100 Percent (5%) from the Initial Interest Rate ("Initial Rate Cap").

---

1

© 2007 Geraci Law Firm; All Rights Reserved.
Note        Loan No.▮

Borrower's Initials:

**1.5.2.** **Subsequent Interest Rate Limitation.** For each subsequent Change Date, the interest rate shall not increase or decrease on any single Change Date by more than Two and 00/100 Percent (2%) ("Subsequent Rate Cap") from the previous rate.

**1.5.3.** **Minimum Interest Rate.** The interest rate will never be less than Eight and 50/100 Percent (8.5%) ("Floor Rate").

**1.5.4.** **Maximum Interest Rate.** The interest rate will never be greater than Five and 00/100 Percent (5%) above the Initial Interest Rate ("Maximum Interest Rate").

**1.6.** **Effective Date of Changes.** The new interest rate will become effective on each Change Date and the new payment calculated using the new interest rate will become effective one month after each Change Date.

**2.** **Payment Obligations.**

**2.1.** **In General.** Borrower will make a payment each month until the entire indebtedness evidenced by this Note and all accrued and unpaid principal, interest and other charges due hereunder have been paid in full. If Borrower still owes amounts under this Note on January 1, 2054 (the "Maturity Date"), Borrower will pay those amounts in full on that date. Payments due under the Note shall be made in U.S. currency. Lender may charge a non-sufficient funds fee, in Lender's discretion, for each payment that is returned unpaid by the Borrower's bank. This charge may be in addition to any other charges provided for herein. Further, if any check or other instrument received by Lender as payment under the Note or the Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; (d) Electronic Funds Transfer; or (e) wire. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

**2.2.** **Initial Payments of Principal and Interest.** Beginning on February 1, 2024 and on the first day of every month thereafter, Borrower will make monthly payments of principal and interest amortized over three hundred sixty (360) months in the amount of Eight Hundred Seven and 36/100 Dollars ($807.36).

**2.3.** **Change in Payment Calculations.** On each Change Date, Lender shall calculate the new interest rate and the adjusted monthly payment amount in accordance with this Note.

**2.4.** **Servicing Fees.** In addition to any amounts due above, Borrower shall be responsible for all servicing costs. Servicing costs will be included in Borrower's monthly statement provided by Lender's loan servicer of Lender's choice. In addition, servicing costs shall be billed to Borrower as incurred.

**2.5.** **Debt Service Reserve.** Pursuant to the terms of the Loan Agreement (as defined below), one or more of the payments due shall be paid from the Debt Service Reserve (as defined in the Loan Agreement).

**2.6.** **Delivery of Payments.** Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be a Default under this Note and the Loan Agreement. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

**2.7.** **Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest thereon under any provision of this Note, the Loan Agreement, or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

---

2

© 2007 Geraci Law Firm; All Rights Reserved.
Note       Loan No. ███████

Borrower's Initials:

**2.8.** **Other Terms.** This Note is subject to the following additional terms as provided for in the Loan Agreement. See headings in Loan Agreement sections for applicability.

      **2.8.1.** **Debt Service Reserve;**
      **2.8.2.** **Tax Holdback; and**
      **2.8.3.** **Insurance Holdback.**

**3.** **Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within ten (10) days when due, a charge of 5 cents ($0.05) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4.** **Default.** On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Loan Agreement), or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**5.** **Prepayment.**

      **5.1.** **Prepayment Premium.** Borrower may prepay this Note in whole or in part at any time without penalty. However, if Borrower prepays this Note in whole or in part prior to the Maturity Date, Borrower shall pay a Prepayment Premium ("Prepayment Premium") equal to the following:

      (a) If prepayment is made on or before one year from the Date of Advance, Borrower shall pay a fee equal to 3.00% of the amount prepaid.

      (b) If prepayment is made after one year from the Date of Advance, and on or before two years from the Date of Advance, Borrower shall pay a fee equal to 2.00% of the amount prepaid.

      (c) If prepayment is made after two years from the Date of Advance, and on or before three years from the Date of Advance, Borrower shall pay a fee equal to 1.00% of the amount prepaid.

After three years from the Date of Advance, Borrower may prepay this Note in whole or in part at any time without paying any premium. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

      **5.2.** **Ability to Pay Prepayment.** Borrower shall have no right to prepay and Lender shall have no duty to accept full or partial prepayment of this Note without Borrower giving Lender thirty (30) days prior written notice of his, her or its intention to prepay this Note. Said notice shall include the amount Borrower intends to repay. Borrower shall pay Lender the principal due under this Note together with (a) any prepayment premium contemplated in this Note and (b) any accrued but yet unpaid interest and fees.

      **5.3.** **Prepayment Waivers.** BORROWER ACKNOWLEDGES AND AGREES THAT BORROWER HAS NO RIGHT TO PREPAY THIS NOTE EXCEPT AS PROVIDED IN THIS SECTION. BORROWER FURTHER ACKNOWLEDGES AND AGREES THAT IF THE MATURITY DATE IS ACCELERATED BY LENDER PURSUANT TO THE LOAN DOCUMENTS (INCLUDING, WITHOUT LIMITATION, A JUNIOR LIEN LENDER OF THE PROPERTY), AND BORROWER OR

---

3



Borrower's Initials:

ANY THIRD PERSON THEREAFTER SEEKS TO PAY OFF SUCH ACCELERATED INDEBTEDNESS OR PURCHASE THE PROPERTY AT A FORECLOSURE SALE (WHETHER JUDICIAL OR NON-JUDICIAL), SUCH PAYOFF OR PURCHASE SHALL CONSTITUTE A PREPAYMENT HEREUNDER AND THE PREPAYMENT PREMIUM SET FORTH ABOVE SHALL BE DUE IN THE EVENT PREPAYMENT OCCURS. BY INITIALING BELOW, BORROWER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT BORROWER SHALL PAY THE PREPAYMENT PREMIUM, EVEN IN THE CASE WHERE LENDER HAS ACCELERATED THE MATURITY DATE PURSUANT TO THE LOAN DOCUMENTS; THAT THE CALCULATION OF THE PREPAYMENT PREMIUM IS FAIR AND REASONABLE TO COMPENSATE LENDER FOR THE LOSS WHICH LENDER MAY INCUR AS A RESULT OF PREPAYMENT OF THIS NOTE; THAT BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE OR CLAIM TO HAVE UNDER TEXAS LAW; AND THAT LENDER HAS MADE THE LOAN EVIDENCED BY THIS NOTE IN RELIANCE ON THE AGREEMENTS AND WAIVERS OF BORROWER IN THIS SECTION AND LENDER WOULD NOT HAVE MADE THE LOAN WITHOUT SUCH AGREEMENTS AND WAIVERS.

BORROWER'S INITIALS:

**6.     Interest on Default.** If Borrower is in default under the Loan Documents, then at the sole and absolute discretion of Lender and without notice or opportunity to cure, the entire Loan Amount shall immediately bear an annual interest rate equal to the lesser of (a) Fourteen and 50/100 Percent (14.5%); or (b) the maximum interest rate allowed by law (the "Default Rate"). The Loan shall accrue interest at the Default Rate only until all defaults are cured and the Loan is reinstated. Borrower acknowledges, understands and agrees that in connection with any default: (i) Lender's risk of nonpayment of the Loan will be materially increased; (ii) Lender's ability to meet its other obligations and to take advantage of other investment opportunities will be adversely impacted; (iii) Lender may need to set aside funds in a loan loss reserve, repurchase the loan from a credit provider or otherwise impair their capital; (iv) Lender may be unable to raise additional funds from investors, credit facilities or other capital sources due to defaults in its portfolio; (v) the value of the Lender's loan will materially decrease and may become unmarketable altogether; (vi) the value of Lender's business enterprise will be reduced; (vii) Lender will incur additional costs and expenses arising from its loss of the use of the amounts due; (viii) the aforementioned list of risks, losses and damages is not exhaustive and Lender will suffer additional exposure to risk, losses and damages not specifically identified above; (ix) it is extremely difficult and impractical to determine such additional costs and expenses; (x) Lender is entitled to be compensated for such additional risks, costs, and expenses; and (xi) the increase to the Default Rate represents a fair and reasonable estimate of the additional risks, costs, and expenses Lender will incur by reason of Borrower's default and the additional compensation Lender is entitled to receive for the harms incurred by Lender due to Borrower's default. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Note (including, without limitation, late charges), the Loan Agreement, or the Security Instrument.

**7.     Interest on Interest.** If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

**8.     Due-on-Sale.** If Borrower (a) sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance as defined in the Security Instrument), transfers possession, or alienates all or any portion of the Property, or any of Borrower's interest in the Property, or suffers its title to, or any interest in, the Property to be divested, whether

---

4

© 2007 Geraci Law Firm; All Rights Reserved.
Note        Loan No. ███


Borrower's Initials:

voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or (b) if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, or (c) if a junior voluntary or involuntary deed of trust or mortgage lien in favor of another lender encumbers the Mortgaged Property (other than a Permitted Encumbrance) without Lender's express prior written consent thereto, which consent may be withheld in Lender's absolute and sole discretion, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

9.     **Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

10.     **Notice.** Any notice required to be provided in this Note shall be given in accordance with the notice requirements provided in the Loan Agreement.

11.     **Assignment.** This Note is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Note. The terms of this Note shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Note cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

12.     **Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the Loan, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note, or the Loan Documents, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

13.     **Usury Savings Provisions.** It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply strictly with the applicable Texas law governing the maximum rate or amount of interest payable on the Indebtedness (as hereinafter defined), or applicable United States federal law to the extent that such law permits Lender to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law. Borrower acknowledges and agrees that the interest rate set forth in this Note was elected by the parties pursuant to an optional rate ceiling set forth in Subchapter A of Chapter 303 of the Texas Finance Code. For purposes of this Note, "Indebtedness" shall mean all indebtedness evidenced by this Note, and all amounts payable in the performance of any covenant or obligation in any of the other Loan Documents or any other communication or writing by or between Borrower and Lender related to the transaction or transactions that are the subject matter of the Loan Documents, or any part of

5

© 2007 Geraci Law Firm; All Rights Reserved.
Note     Loan No. ▇▇▇▇                                ▇▇▇▇

Borrower's Initials:

such indebtedness. If the applicable law is ever judicially interpreted so as to render usurious any amount contracted for, charged, taken, reserved or received in respect of the Indebtedness, including by reason of the acceleration of the maturity or the prepayment thereof, then it is Borrower's and Lender's express intent that all amounts charged in excess of the Maximum Lawful Rate shall be automatically canceled, *ab initio*, and all amounts in excess of the Maximum Lawful Rate theretofore collected by Lender shall be credited on the principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable laws, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder; provided, however, if this Note has been paid in full before the end of the stated term hereof, then Borrower and Lender agree that Lender shall, with reasonable promptness after Lender discovers or is advised by Borrower that interest was received in an amount in excess of the Maximum Lawful Rate, either credit such excess interest against the Indebtedness then owing by Borrower to Lender and/or refund such excess interest to Borrower. Borrower hereby agrees that as a condition precedent to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender, advising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Indebtedness then owing by Borrower to Lender. All sums contracted for, charged, taken, reserved or received by Borrower for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by applicable law, be amortized, prorated, allocated or spread, using the actuarial method, throughout the stated term of this Note (including any and all renewal and extension periods) until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the Maximum Lawful Rate from time to time in effect and applicable to the Indebtedness for so long as debt is outstanding. In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving tri-party accounts) apply to this Note or any other part of the Indebtedness. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. The terms and provisions of this paragraph shall control and supersede every other term, covenant or provision contained herein, in any of the other Loan Documents or in any other document or instrument pertaining to the Indebtedness.

14.     **Capitalized Terms**. Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents (as defined in the Loan Agreement).

15.     **Loan Agreement**. This Note is also secured by and is subject to the provisions of that certain Loan and Security Agreement of even date herewith (the "Loan Agreement") between Borrower and Lender, and all Collateral referenced and incorporated in the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Note, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

16.     **Counterparts**. This Note may be signed in one or more counterparts, each of which shall be deemed an original. This Note shall be deemed fully executed and effective when all parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

THIS AGREEMENT MAY BE EXECUTED IN COUNTER-PARTS.

[SIGNATURES FOLLOW]

---

6

© 2007 Geraci Law Firm; All Rights Reserved.
Note        Loan No. ███

Borrower's Initials:

**BORROWER:**

**RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION**

By: _____

Taylor Green, Corporate Secretary

---

7

© 2007 Geraci Law Firm; All Rights Reserved.
Note       Loan No. ███

Borrower's Initials: ___

## EXHIBIT "A"

## ALLONGE

This Allonge is affixed to, and is hereby made a part of, that certain Note, dated December 22, 2023, in the original principal amount of $105,000.00 ("Note"), made by RAD Diversified REIT, Inc, a Maryland , for the benefit of HOUSEMAX FUNDING, LLC, a Texas Limited Liability Company ("Assignor"), by and between Assignor and the endorsee hereon ("Agreement"), to wit:

Pay to the order of _____

_____

Dated: *1 / 11 / 2024*

**ASSIGNOR:**

HOUSEMAX FUNDING, LLC,
a Texas limited liability company

By: _____
Name:  Chandler Roberts
Title: Director of Capital Markets

2066 E Allegheny Ave Philadelphia, PA 19134

eRecorded in Philadelphia PA Doc Id: 54208044
01/04/2024 09:23 AM   Page 1 of 31   Rec Fee: $244.75
Receipt#:
Records Department   Doc Code: M

**WHEN RECORDED, RETURN TO:**

HouseMax Funding, LLC, a Texas limited liability company
1301 S Mo Pac Expy Ste 110
Austin, Texas 78746

Loan No. ▮
Property ID No.: 252308000

## THIS MORTGAGE IS AN OPEN-END [PURCHASE MONEY] MORTGAGE PURSUANT TO 42 PA.C.S.A. §8143, SECURING PRESENT AND FUTURE ADVANCES UP TO A MAXIMUM PRINCIPAL AMOUNT OF $105,000.00, PLUS ACCRUED INTEREST AND OTHER INDEBTEDNESS AS DESCRIBED IN 42 PA.C.S.A. §8143. THIS MORTGAGE ALSO SECURES ADVANCES DESCRIBED IN 42 PA.C.S.A. §8144.

### OPEN-END PURCHASE MONEY MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT

**Note Amount:**       $105,000.00
**Property Address:**   2066 E Allegheny Ave, Philadelphia, Pennsylvania 19134-3824

### THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE PENNSYLVANIA UNIFORM COMMERCIAL CODE.

### THIS INSTRUMENT IS TO BE INDEXED AS BOTH A MORTGAGE AND A FIXTURE FILING

This Open-End Purchase Money Mortgage, Assignment of Leases and Rents, and Security Agreement (the "Security Instrument" or "Mortgage") is made as of December 22, 2023, among RAD DIVERSIFIED REIT, INC., a Maryland corporation ("Borrower"), whose address is 805 E Bloomingdale Ave # 737, Brandon, Florida 33511-8113; and HouseMax Funding, LLC, a Texas limited liability company, as mortgagee ("Lender"), whose address is 1301 S Mo Pac Expy Ste 110, Austin, Texas 78746.

**TRANSFER OF RIGHTS IN THE PROPERTY**

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower does hereby irrevocably and unconditionally MORTGAGE, GRANT, ASSIGN, REMISE, BARGAIN, SELL, WARRANT, AND CONVEY to and for the benefit of Lender the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Lender, its successors and assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Lender against anyone lawfully claiming it or any part of it; provided,

---

1

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ▮

Borrower's Initials:

however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Lender, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property. Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

## DEFINITIONS.

1.      **Definitions.** For purposes of this Security Instrument, each of the following terms shall have the following respective meanings:

    **1.1**      **"Attorneys' Fees."** Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

    **1.2**      **"Borrower."**

        1.2.1.    The named Borrower in this Security Instrument;

        1.2.2.    The obligor under the Note, whether or not named as Borrower in this Security Instrument; and

        1.2.3.    Subject to any limitations of assignment as provided for in the Loan Documents, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such Person.

    All references to Borrower in the remainder of the Loan Documents shall mean the obligor under the Note.

    **1.3**      **"Event of Default."** An Event of Default as defined in the Loan Agreement.

---

2

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. █████

Borrower's Initials:

**1.4**    "**Fixtures.**" All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located, including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

**1.5**    "**Governmental Authority.**" Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

**1.6**    "**Governmental Requirements.**" Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.7**    "**Impositions.**" All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.8**    "**Improvements.**"    Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Lender under this Security Instrument.

**1.9**    "**Indebtedness.**" The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.9.1.    The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.9.2.    The Loan Agreement;

1.9.3.    This Security Instrument and all other Loan Documents;

1.9.4.    All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.9.5.    Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the Security Instrument; and

1.9.6.    Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

---

3

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials:

1.10 "**Land**." The real estate or any interest in it described in Exhibit "A" attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

1.11 "**Leases**." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

1.12 "**Lender**." The named Lender in this Security Instrument and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Security Instrument, whether or not named as Lender in this Security Instrument, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such Person.

1.13 "**Loan**." The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

1.14 "**Loan Agreement**." The Loan and Security Agreement given by Borrower evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments thereto.

1.15 "**Loan Documents**." Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan. Notwithstanding the foregoing, when used in the definitions of Indebtedness and Obligations, and in relation to the discussion of the Obligations and Indebtedness that are secured by this Security Instrument, the term "Loan Documents" specifically excludes any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, each of which are not secured by this Security Instrument.

1.16 "**Mortgaged Property**." The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as:      **2066 E Allegheny Ave, Philadelphia, Pennsylvania 19134-3824**
**Property ID No.: 252308000**

together with:

1.16.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the

4

© 2007 Geraci Law Firm: All Rights Reserved.
Mortgage | Loan No.

Borrower's Initials:

Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.16.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.16.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.16.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.16.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.16.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.16.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the Loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.16.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit "A" attached to this Security Instrument (the "Leasehold") including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.16.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with

5

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No

Borrower's Initials

the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.16.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.16.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.16.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.16.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.16.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.16.15. All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.17** "**Note.**" The Secured Note payable by Borrower to the order of Lender in the principal amount of **One Hundred Five Thousand and 00/100 Dollars ($105,000.00), which matures on January 1, 2054,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

**1.18** "**Obligations.**" Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Security Instrument whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender

6

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No.

Borrower's Initials:

whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, which is not secured by this Security Instrument.

**1.19** **"Permitted Encumbrances."** At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.20** **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.21** **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

**1.22** **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.23** **"Uniform Commercial Code."** The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.

---

7

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials:

**1.24** **"Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Loan Agreement and Note, dated of even date herewith between Borrower and Lender.

## UNIFORM COVENANTS

**2.** **Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Security Instrument; (d) pay when due all claims for labor performed, services performed, equipment provided and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

**3.** **Use of Mortgaged Property.** Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4.** **Condemnation and Insurance Proceeds.**

**4.1** **Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract

---

8

© 2007 Geraci Law Firm. All Rights Reserved.
Mortgage | Loan No. ▮



Borrower's Initials:

or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**4.2    Insurance Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

4.2.1.   Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Loan Agreement, the Note, and any other Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment

9

© 2007 Geraci Law Firm: All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials:

and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

        4.2.2.   If fewer than all conditions (a) through (i) above are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this Section to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) above shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

        **4.3**     **Material Loss Not Covered.** If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

        **4.4**     **Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

        **4.5**     **Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("Awarded Funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such Awarded Funds and the other equal to the amount by which such Awarded Funds exceed the principal balance of the Note at the time of receipt of such Awarded Funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

        **4.6**     **Cure of Waiver of Default.** Any application of such Awarded Funds or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

**5.**     **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety

---

10

© 2007 Geraci Law Firm: All Rights Reserved.
Mortgage | Loan No ▮▮▮▮▮

Borrower's Initials:

company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 5(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

6.      **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against Rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against Rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. Any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the

---

11

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ▮▮▮▮



Borrower's Initials ▮▮▮▮▮

terms of the Loan Agreement, the Note and this Security Instrument; and upon the occurrence of any such violation, Lender, at Lender's option, may, without prior notice or after any notice or cure period required by law, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

7.      **Right to Collect and Receive Rents.** Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of trustee's sale proceedings under this Security Instrument or judicial foreclosure, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorneys' Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

---

12

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No

Borrower's Initials:

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

8.      **Assignment of Causes of Action, Awards, and Damages.**  All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument.  Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorneys' Fees, incurred by Lender in recovering or collecting any sums under this Section, Lender may apply or release the balance of any funds received by it under this Section, or any part of such balance, as it elects.  Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this Section and may make any compromise or settlement in such action whatsoever.  Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time.  If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

9.      **Defense of Security Instrument; Litigation.**  Borrower represents and warrants that this Security Instrument creates a first position lien and security interest against the Mortgaged Property.  Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents.  Despite any other provision of this Security Instrument, Borrower agrees that Lender may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorneys' Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents, and that if Lender elects not to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender, including costs of evidence of title and Attorneys' Fees, in any such action or proceeding in which Lender may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.

---

13

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials

10. **Borrower's Failure to Comply With Security Instrument.** If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Agreement, the Note or this Security Instrument, Lender may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents, Lender being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorneys' Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

11. **Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender at the Default Rate provided in the Note, regardless of whether an Event of Default has occurred, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, shall have the same priority to which the Security Instrument otherwise would be entitled as of the date this Security Instrument is executed and recorded, without regard to the fact that any such future advances may occur after this Security Instrument is executed, and shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

12. **Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

13. **Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement

14

© 2007 Geraci Law Firm. All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials:

or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

14. **Fixture Filing.** This Security Instrument constitutes a financing statement filed as a fixture filing under the Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement. The addresses of Borrower ("Debtor") and Lender ("Secured Party") are set forth on the first page of this Security Instrument.

15. **Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

16. **Default.** Any Event of Default, as defined in the Loan Agreement, shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any event which, with any required lapse of time or notice, may constitute an Event of Default, whether or not any such requirement for notice or lapse of time has been satisfied).

17. **Acceleration on Transfer or Encumbrance.**

17.1 **Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance), transfers possession, or alienates all or any portion of the Mortgaged Property, or any of Borrower's interest in the Mortgaged Property, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents. For purposes of this Section "interest in the Mortgaged Property" means any legal or beneficial interest in the Mortgaged Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

15

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials: _____

contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

      **17.2**    **Replacement Personalty.** Notwithstanding anything to the contrary herein, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

      **17.3**    **Junior Liens.** If Lender consents in writing, in Lender's sole and absolute discretion, the due-on-encumbrance prohibition shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Loan Agreement and the Note). Borrower shall reimburse Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance. Should Borrower fail to obtain Lender's express written consent to any junior voluntary lien, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by this Security Instrument, regardless of any their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**18.**    **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

**19.**    **Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan

16

© 2007 Geraci Law Firm. All Rights Reserved.
Mortgage | Loan No. ▮▮▮▮▮▮



Borrower's Initials: _____

Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this Section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorneys' Fees as Lender may have advanced, for any action taken by Lender under this Section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**20.    Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

**21.    Prepayment.** If the Loan Documents provide for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under the Loan Documents and Lender has declared all sums secured by this Security Instrument immediately due and payable.

**22.    Governing Law; Consent to Jurisdiction and Venue.** This Loan is made by Lender and accepted by Borrower in the State of Texas except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Mortgaged Property under the Loan Documents shall be governed by and construed according to the laws of the state in which the Mortgaged Property is situated. To the fullest extent permitted by the law of the state in which the Mortgaged Property is situated, the law of the State of Texas shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which the Mortgaged Property is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be Travis County, Texas, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS:

**23.    Taxation of Security Instrument.** In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part

---

17

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No

Borrower's Initials:

of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Security Instrument.

24.    **Mechanic's Liens.** Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanic's, laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

25.    **Liability for Acts or Omissions.** Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

26.    **Notices.** Except for any notice required by Governmental Requirements to be given in another manner, any notice required to be provided in this Security Instrument shall be given in accordance with the Loan Agreement.

27.    **Statement of Obligations.** Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

28.    **Remedies Are Cumulative.** Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

29.    **Obligations of Borrower Joint and Several.** If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

30.    **Delegation of Authority.** Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

31.    **Funds for Taxes Insurance, and Impositions.** If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest

18

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No ███



Borrower's Initials _____

or principal under the Note, an additional amount sufficient to discharge the Impositions as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Impositions under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

## 32.    General Provisions.

**32.1    Successors and Assigns.** This Security Instrument is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Security Instrument. The terms of this Security Instrument shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Security Instrument cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Security Instrument, and may sell or assign participations or other interests in all or any part of this Security Instrument, all without notice to or the consent of Borrower.

**32.2    Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

---

19

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ████

Borrower's Initials

**32.3** **Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**32.4** **Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**32.5** **Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

**33.** **Dispute Resolution: Waiver of Right to Jury Trial.**

**33.1** **ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**33.2** **WAIVER OF RIGHT TO JURY TRIAL.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS:

**33.3** **PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in the Section above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in the Section above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission of the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in the Section above.

**34.** **Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the Loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**35.** **Loan Agreement.** This Security Instrument is subject to the provisions of the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Security Instrument, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

20

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials:

36.   **Condominium and Planned Unit Developments**.  If any of the Mortgaged Property includes a unit or units in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") or a Planned Unit Development ("PUD"), the following additional requirements shall be in place.

36.1   **Additional Security**.  If the owners association or other entity which acts for the Condominium Project and/or PUD (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Mortgaged Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

36.2   **Obligations**.  Borrower shall perform all of Borrower's obligations under the Condominium Project's and/or PUD Constituent Documents. The "Constituent Documents" are the: (1) condominium declaration and/or any other document which creates the Condominium Project and or PUD; (2) any by-laws; (3) any code or regulations; (4) articles of incorporation, trust instrument or any equivalent document which create the Owners Association; and (5) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

36.3   **Owners Association Policy Proceeds**.  If the Owners Association maintains a "master" or "blanket" policy on the Condominium Project or PUD and an event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower.

36.4   **Owners Association Liability Coverage**.  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

36.5   **Consent of Lender**.  Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Mortgaged Property or consent to:

36.5.1.  the abandonment and/or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain;

36.5.2.  any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

36.5.3.  termination of professional management and assumption of self-management of the Owners Association; or

36.5.4.  any action which would have the effect of rendering the any insurance coverage maintained by the Owners Association unacceptable to Lender.

## NON-UNIFORM COVENANTS.

Notwithstanding anything to the contrary elsewhere in this Security Instrument, Borrower and Lender further covenant and agree as follows:

37.   **Default; Acceleration; Remedies**.  Upon the occurrence and continuance of any Event of Default beyond all applicable notice, grace and/or cure periods, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Mortgaged Property, including, but not limited to, the following actions, each of which may be

21

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ▮▮▮▮▮

Borrower's Initials:

pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender to the extent permitted by Applicable Law:

**37.1**    Lender may declare the entire unpaid principal balance of the Note to be due and payable immediately (or after any notice or cure period required by law), whereupon the obligations secured hereby shall become immediately due and payable.  Thereafter, the Event of Default may be cured only by the payment of the entire Indebtedness.

**37.2**    Lender may (i) institute and maintain an action of mortgage foreclosure against any of the Mortgaged Property through judicial proceedings pursuant to the applicable statutes, ordinances, or rules of civil procedure, (ii) institute and maintain an action on the obligations secured hereby, (iii) sell or cause to be sold any of the Mortgaged Property at public sale, and convey the same to the purchaser in accordance with said statutes in a single parcel or in several parcels at the option of Lender, or (iv) take such other action at law or in equity for the enforcement of any document evidencing or securing the obligations secured hereby as the law may allow.  Lender may proceed in any such action in accordance with all laws of the Commonwealth of Pennsylvania, including, without limitation, the Pennsylvania Deficiency Judgment Act, 42 Pa. C.S. §8103, to final judgment and execution thereon for all sums due, together with interest on such sums as provided in the Note and the Loan Agreement, all costs of suit and a reasonable attorneys' commission for fees and expenses actually incurred.  To the extent permitted by law, interest at a rate equal to the Default Rate shall be due on any judgment obtained by Lender from the date of judgment until actual payment is made of the full amount of the judgment by the Sheriff or otherwise.

**37.3**    Lender may, without releasing Borrower from any obligation under any document evidencing or securing the obligations secured hereby or under any lease or waiving any Event of Default: (i) collect any or all of the rents, including any rents past due and unpaid, (ii) perform any obligation or exercise any right or remedy of Borrower under any lease, or (iii) enforce any obligation of any tenant of any of the Mortgaged Property.  Lender shall not be obligated to do any of the foregoing, even if Lender may have performed any obligation or exercised any remedy of landlord or have enforced any obligation of a tenant.  Lender may exercise any right under this subsection whether or not Lender shall have entered into possession of any of the Mortgaged Property, and nothing contained herein shall be construed as constituting Lender a "mortgagee in possession" unless Lender shall have entered into and shall remain in actual possession of the Mortgaged Property.  Borrower hereby authorizes and instructs each and every present and future tenant of any of the Mortgaged Property to pay all rents directly to Lender and to perform all other obligations of that tenant for the direct benefit of Lender as if Lender were the landlord under the lease with that tenant immediately upon receipt of a demand by Lender to make such payment or perform such obligations.  No tenant shall have any responsibility to ascertain whether such demand is permitted hereunder or whether an Event of Default shall have occurred; Borrower hereby waives any right, claim or demand it may now or hereafter have against any such tenant by reason of such payment of rents or performance of obligations to Lender; and any such payment or performance to Lender shall discharge the obligations of the tenant to make such payment or performance to Borrower.  Borrower agrees to indemnify Lender and hold Lender harmless from any and all liability under any lease and from any and all claims and demands which may be asserted against Lender by reason of any alleged obligations to perform any provision of any lease, except as to Lender's own negligence or willful misconduct.

**37.4**    Lender may, without releasing Borrower from any obligation under any document evidencing or securing the obligations secured hereby or under any lease or waiving any Event of Default, enter upon and take possession of any of the Mortgaged Property, with or without legal action and by force

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No.

Borrower's Initials

if necessary, or upon any proper action being commenced for the foreclosure of this Security Instrument, have a receiver appointed without proof of depreciation or inadequacy of the value of the Mortgaged Property or other security or proof of the insolvency of Borrower. Lender or said receiver may manage and operate any of the Mortgaged Property; make, cancel, enforce or modify leases; obtain and evict tenants; establish or change the amount of any rents; and perform any acts which Lender deems proper to protect the security of this Security Instrument. After deduction of all costs and expenses of operation and management of the Mortgaged Property and of collection of the rents (including reasonable Attorneys' Fees actually incurred, administration expenses, management fees and brokers' commissions), Lender may apply the rents received by Lender to the payment of any or all of the following, in such order and amounts as Lender, in its sole discretion, may elect: liens on any of the Mortgaged Property, taxes, claims, insurance premiums, other carrying charges, invoices of persons who have supplied goods or services to or for the benefit of any of the Mortgaged Property, costs and expenses of maintenance, repair, restoration, alteration or improvement of any of the Mortgaged Property, costs and expenses of maintenance, repair, restoration, alteration or improvement of any of the Mortgaged Property, or any amount outstanding on the obligations secured hereby. Lender may, in its sole discretion, determine the method by which, and extent to which, the rents will be collected and obligations of tenants enforced; and Lender may waive or fail to enforce any right or remedy of the landlord under a lease. Lender shall not be accountable for any rents or other sums it does not actually receive. Borrower hereby appoints Lender as its attorney-in-fact to perform all acts which Borrower is required or permitted to perform under any and all leases.

     37.5    Lender may, without releasing Borrower from any obligation under any document evidencing or securing the obligations secured hereby or under any lease or waiving any default, enter upon and take possession of the Mortgaged Property, with or without legal action, and by force if necessary, collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to any one or more of the following items in such manner and in such order of priority as Lender, in Lender's sole discretion, may elect: the payment of any sums due under any prior lien, taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Property, or on account of the Secured Obligations; in and for that purpose Borrower hereby assigns to Lender all rentals due and to become due under any lease or leases or rights to use and occupation of the Mortgaged Property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals.

     37.6    Lender may, without proof of depreciation or inadequacy of the value of the Mortgaged Property or other security or proof of the insolvency of Borrower, have a receiver appointed to manage the Mortgaged Property and collect the rents, issues, profits and income therefrom.

     37.7    Subject to any express rights of tenant thereof, Lender may disaffirm and cancel any lease which is subordinate to this Security Instrument at any time before the expiration of sixty (60) days after Lender acquires legal title to the Mortgaged Property by any transfer pursuant to the exercise of a remedy hereunder or otherwise, even though Lender shall have enforced such lease, collected rents thereunder or taken any action that might be deemed by law to constitute an affirmance of the lease. Such disaffirmance shall be made by notice addressed to the tenant at the Mortgaged Property or, at Lender's option, such other address of the tenant as may be provided in that tenant's lease.

     37.8    Lender may take possession of any of the Property constituting personal property and may sell such property pursuant to the provisions of the applicable Uniform Commercial Code and exercise such other rights and remedies with respect to such property as may be provided by said Code.

---

23

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ▮▮▮▮▮

Borrower's Initials

**37.9**    Lender may apply on account of the obligations secured hereby the balance of the accumulated installment payments made by Borrower for taxes, water and sewer rents and insurance premiums, and all other items for which Lender has made payment, as set forth herein.

**37.10**    Upon the acceleration of the maturity of the obligations secured hereby as herein provided, a tender of payment of the amount necessary to satisfy the entire Indebtedness made at any time prior to foreclosure sale by Borrower, its successors or assigns, shall, to the extent permitted by law, constitute an evasion of the prepayment terms of the obligations secured hereby and be deemed to be a voluntary prepayment thereunder, and Lender shall not be obligated to accept any such tender of payment unless such tender of payment includes the additional prepayment premium required under the terms of the prepayment privilege, if any, contained in the Note and the Loan Agreement.

**37.11**    In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Mortgaged Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Mortgaged Property unimpaired and without loss of priority. Notwithstanding the provisions of this Section to the contrary, if any Event of Default as described in the Loan Documents shall occur and remain continuing beyond all applicable notice, grace and/or cure periods, the entire unpaid Debt shall be automatically due and payable, without any further notice, demand or other action by Lender.

**37.12**    If Lender retains the services of counsel in order to enforce any remedy available to Lender under the Note, this Security Instrument or any of the other Loan Documents, reasonable Attorneys' Fees shall be payable on demand by Borrower to Lender, and Borrower shall also pay on demand the cost of any title search and all other costs incurred by Lender in connection with proceedings to recover any sums due hereunder. Any such amounts not paid promptly on demand shall be added to the outstanding principal amount of the Note, shall bear interest at the Default Rate from the date of such demand until paid in full and shall be secured by this Security Instrument. Borrower shall also pay on demand any reasonable and customary charge of Lender in connection with the cancellation of this Note and/or the satisfaction of this Security Instrument of record. Nothing contained herein shall limit or impair the obligation of Borrower to pay any and all costs and expenses for which Borrower is otherwise liable under the Note, this Security Instrument or any of the other Loan Documents and all costs and expenses provided by law.

**37.13**    This instrument is granted upon express condition that if Borrower punctually pays and performs all of the Indebtedness covenants and obligations in accordance with the terms of the Loan Documents and the terms hereof, then this Security Instrument and the estate granted hereby shall cease and become void, except for those provisions hereof which by their terms survive, and the Mortgaged Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Lender in due form at Borrower's cost. No release of this Security Instrument or the lien hereof shall be valid unless executed by Lender.

**37.14**    After entry of a judgment on any of the Loan Documents, or a judgment in mortgage foreclosure hereunder, interest shall continue to accrue under the Note and this Security Instrument at the rates set forth in the Note. This Security Instrument shall not, solely for purposes of determining interest payable under the Note, merge with any judgment on any Loan Document or a judgment in mortgage foreclosure under this Security Instrument.

**38.**    **Waiver of Redemption and Reinstatement Rights of Tenants.**

**38.1**    Borrower hereby covenants and agrees that it will not at any time apply for, insist upon, plead, avail itself, or in any manner claim or take any advantage of, any appraisement, stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter enacted or in force in order

---

24

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No █████

Borrower's Initials:

to prevent or hinder the enforcement or foreclosure of this Security Instrument. Without limiting the foregoing:

38.1.1. Borrower, for itself and all Persons who may claim by, through or under Borrower, hereby expressly waives any so-called "Moratorium Law" and any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Security Instrument, it being the intent hereof that any and all such "Moratorium Laws", and all rights of reinstatement and redemption of Borrower and of all other Persons claiming by, through or under Borrower are and shall be deemed to be hereby waived to the fullest extent permitted by the laws of the Property Jurisdiction;

38.1.2. Borrower shall not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power remedy herein or otherwise granted or delegated to Lender but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

38.1.3. If Borrower is a trust, Borrower represents that the provisions of this Section (including the waiver of reinstatement and redemption rights) were made at the express direction of Borrower's beneficiaries and the persons having the power of direction over Borrower, and are made on behalf of the trust estate of Borrower and all beneficiaries of Borrower, as well as all other persons mentioned above.

38.2    Lender shall have the right to foreclose subject to the rights of any tenant or tenants of the Mortgaged Property having an interest in the Mortgaged Property prior to that of Lender. The failure to join any such tenant or tenants of the Mortgaged Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Borrower as a defense in any civil action instituted to collect the Indebtedness, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Mortgaged Property, any statute or rule of law at any time existing to the contrary notwithstanding.

39.    **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs unless Pennsylvania law provides otherwise. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Pennsylvania law.

40.    **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Mortgaged Property, this Security Instrument shall be a purchase money mortgage, and Lender is entitled to all of the rights and benefits thereof including the benefits of 42 Pa. C.S.A. § 8141, as amended.

41.    **Powers of Attorney.** Borrower acknowledges and agrees that (a) any power of attorney set forth in this Security Instrument and any of the other Loan Documents is made in connection with a commercial transaction, (b) Lender's exercise of the authority granted in the power of attorney would be in accordance with Borrower's reasonable expectations, and (c) Lender does not and, in regards to this Security Instrument, the Loan or any of the other Loan Documents, shall not have any of the duties to Borrower set forth in 20 Pa.C.S.A.§5601.3(b).

42.    **Waiver of Right of Offset.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits any rights to offset under Pennsylvania law.

---

25

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ████

Borrower's Initials

43.    **Security for Future Advances.** This Security Instrument is intended to be eligible for all of the benefits of the provisions of the Statutes of the Commonwealth of Pennsylvania as pertain to the securing of future advances (including, without limitation, 42 Pa.C.S. §§8143-8144), but to the extent that any rule or law would grant greater protection to Lender or greater priority for the lien of the Security Instrument as it secures any advance, such rule or law shall prevail. All future advances, whether such advances are obligatory, optional or both and whether made before or after default or maturity or other similar event, shall be secured by this Security Instrument to the same extent as if such future advances were made contemporaneously with the execution of this Security Instrument, even though no advance may have been made at the time of execution of this Security Instrument and even though no indebtedness is outstanding at the time any advance is made. Any lien attaching to the Mortgaged Property after the date hereof shall be under, subject and subordinate to all indebtedness, including, without limitation, future advances (regardless of when made) secured hereby. This Security Instrument shall also secure, in addition to the maximum principal amount specified herein, disbursements and other advances made for the payment of taxes, assessments, maintenance, care, protection or insurance on the Mortgaged Property, for the discharge of liens having priority over the lien of this Security Instrument, for the curing of waste of the Mortgaged Property, for indemnification obligations regarding environmental liabilities of the Mortgaged Property, and for service charges and expenses incurred by reason of an Event of Default hereunder, including, without limitation, late charges, Attorneys' Fees and court costs, together with interest on all such disbursements at the rate then in effect under the Note, and all other charges, disbursements, advances, costs and expenses now or hereafter permitted by law. The preference and priority of the lien of this Security Instrument shall extend to any and all modifications of this Security Instrument, except to the extent expressly limited by applicable law. Notwithstanding the foregoing, Lender shall have no obligation to make any disbursements or advance any sums as a result of this Section.

[SIGNATURES FOLLOW]

---

26

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials: ___

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date first written above.

**BORROWER:**

RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION

By: _____

Taylor Green, Corporate Secretary

Certification of Lender's Address

The undersigned hereby certifies that
Lender's mailing address is:

HouseMax Funding, LLC, a Texas limited liability company
1301 S Mo Pac Expy Ste 110
Austin, Texas 78746

By: _____ -agent
Kristen Anglin -agent

---

27

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials _____

[Acknowledgment in an individual capacity:]

STATE OF _CALIFORNIA_

COUNTY OF _SAN BERNARDINO_   :SS
:

This record was acknowledged before me on _12-28-2023_ by _Taylor Green_.

Signature of notarial officer: _Yumma Mi_

Title of Office: _NOTARY Public_

My Commission Expires: _Sept 29, 2026_

YASMIN BHOLAT
Notary Public - California
San Bernardino County
Commission # 2416153
My Comm. Expires Sep 29, 2026

[Acknowledgment in a representative capacity:]

STATE OF _____ :

COUNTY OF _____   :SS
:

This record was acknowledged before me on _____ by _____ as
_____ who represent that _____ [he, she, or they] is/are authorized to act on behalf of
_____.

Signature of notarial officer: _____

Title of Office: _____

My Commission Expires:

---

28

© 2007 Geraci Law Firm; All Rights Reserved.
Mortgage | Loan No ████

Borrower's Initials: _____

EXHIBIT "A"
LEGAL PROPERTY DESCRIPTION

All the following described real estate, situated in the County of Philadelphia and the state of Pennsylvania known and described as follows, to wit:

Beginning on the Southwesterly side of Allegheny Avenue at the distance of One Hundred Thirty-One feet, Two and One- Quarter inches more or less Northwestwardly from the Northwesterly side of Amber Street and extending thence Southwestwardly on a line at right angles with the said Allegheny Avenue and partly through a party wall between Nos. 2066 and 2068, Eighty-Six feet, Two and one-half inches more or less to a point; thence Northwestwardly on a line at right angles with Frankford Avenue Fourteen feet, Six and Five-Eighths inches more or less to a point; thence Northeastwardly on a line at right angles with Allegheny Avenue and passing through the middle of a Two feet wide alley (built over a depth of Twenty-eight feet, Five inches from Allegheny Avenue) Eighty-Five feet, Eight and Seven-Eights inches more or less to the Southwesterly side of Allegheny Avenue; thence Southeastwardly along said Allegheny Avenue Fourteen feet, Six and One-half inches more or less to the first mentioned point and place of beginning.

Parcel ID: 252308000

Being all and the same lands and premises conveyed to Qi Hua Gong and Ming Shi Jaing, husband and wife, as tenants by the entireties by Carmelita S. Pablo, Executrix under the will of Marilyn V. Pablo, also known as Marilyn Pablo, deceased in a Deed dated 11/10/1995 and recorded 02/03/1996 in Book 1062 Page 506 Document Number 000547, in the Land Records of Philadelphia County, Pennsylvania. Qi Hua Gong, is deceased on 12/09/2020, Certificate of Death Recorded on 12/13/2020 in Certificate Number P 27855105

---

29

© 2007 Geraci Law Firm: All Rights Reserved.
Mortgage | Loan No.

Borrower's Initials:

## RIDER TO SECURITY INSTRUMENT RE SURVIVAL EVENT

THIS RIDER TO SECURITY INSTRUMENT RE SURVIVAL EVENT ("Rider") is entered into as of December 22, 2023, and is by and among RAD DIVERSIFIED REIT, INC., a Maryland corporation("Borrower"); to and for the benefit of HouseMax Funding, LLC, a Texas limited liability company ("Lender").

## RECITALS

A.      Borrower has obtained or will obtain a mortgage loan from Lender as evidenced by that certain Loan and Security Agreement of even date, executed by Borrower (the "Loan Agreement") and that certain Secured Note of even date, executed by Borrower (the "Note"), which are secured by the Collateral identified in the Loan Agreement.  The Loan Agreement, Note, any Security Instrument, and Security Agreements are collectively referred to herein as the "Loan Documents" which evidence the "Loan."

## AGREEMENT

NOW, THEREFORE, in consideration of Lender agreeing to make the Loan to Borrower, and other valuable consideration, the receipt and sufficiency of which is acknowledged, Borrower agrees as follows:

1.      **Capitalized Terms.**  Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents.

2.      **Effect of Survival Events.**

(a)      **Borrower Obligations.**  Both before and after any Survival Event, Borrower shall:

(i)      Maintain, repair and restore the Mortgaged Property and take the other actions required by Section 2 (**Repair and Maintenance of Mortgaged Property**) of the Security Instrument;

(ii)      Pay the amounts and take the actions required by Section 4 (**Condemnation and Insurance Proceeds**), inclusive of subsections, of the Security Instrument, as well as permit collection and application of all proceeds thereunder;

(iii)      Promptly pay taxes and other sums as required in Section 5 (**Taxes and Other Sums Due**) of the Security Instrument;

(iv)      Treat any amounts expended by Lender under Section 7 (**Right to Collect and Receive Rents**) of the Security Instrument as additional debt of Borrower, including the accrual of interest at the rate stated in the Note on all such amounts;

(v)      Permit the collection and payment of all proceeds as required by Section 8 (**Assignment of Causes of Action, Awards, and Damages**) of the Security Instrument;

(vi)      Pay the amounts and take the actions required by Section 9 (**Defense of Security Instrument; Litigation**) of the Security Instrument;

(vii)      Treat any amounts expended by Lender under Section 11 (**Sums Advanced to Bear Interest and to Be Secured by Security Instrument**) of the Security Instrument as additional debt of Borrower, including the accrual of interest at the rate stated in the Note on all such amounts;

(viii)      Pay the amounts and take the actions required by Section 13 (**Uniform Commercial Code Security Agreement**) of the Security Instrument;

---

30

© 2007 Geraci Law Firm. All Rights Reserved.
Mortgage | Loan No. ███

Borrower's Initials

(ix)    Promptly pay when due all amounts and take the actions required in Section 24 (**Mechanic's Liens**) of the Security Instrument;

(x)    Promptly perform all obligations under the Condominium Project's and/or PUD Constituent Documents required in Section 34.2 (**Obligations**) of the Security Instrument;

(xi)    Pay any Attorney's Fees and Costs under the Loan Documents, including, but not limited to Section 8.12 of the Loan Agreement (**Attorney Fees**) and Section 35.12 of the Security Instrument;

(xii)    If the Security Instrument is on a leasehold, comply with all the provisions of the lease;

**(b)    Remedies.** Both before and after any Survival Event, Lender shall may enforce any and all remedies under the Loan Documents, including, but not limited to those provided in the Remedies section of the Loan Agreement, and Applicable Law, at its option and without prior demand.

**3.    Survival of Obligations.** For avoidance of doubt, and regardless of whether a particular provision in the Loan Documents references a "Survival Event," the obligations of Borrower and the rights and remedies of Lender thereunder and under any other Loan Documents shall continue after and survive the entry of a judgment under the Loan Documents or otherwise, or the occurrence of any other Survival Event described in the Loan Documents; it being the intention of the parties hereto that such rights, remedies, and obligations, including but not limited to the obligations of Borrower to perform any covenants in the Loan Documents shall not merge into or be extinguished by such judgment nor be extinguished by the occurrence of any other Survival Event, but shall continue in effect until the Secured Obligations have been fully paid and satisfied.

**4.    Loan Agreement.** This Rider is subject to the provisions of the Loan Agreement, which is incorporated herein.

IN WITNESS WHEREOF, Borrower has executed this Agreement as of the date first written above by and through their duly authorized representatives.

**BORROWER:**

RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION

By: _____

Taylor Green, Corporate Secretary

---

31

© 2007 Geraci Law Firm. All Rights Reserved.
Mortgage | Loan No. █████

Borrower's Initials: _____

**SCHEDULE A**

**LEGAL DESCRIPTION**

**PROPERTY DESCRIPTION:**

2066 East Allegheny Avenue
City of Philadelphia, PA  19134
*Tax Parcel(s) 25-2308000, City of Philadelphia, Philadelphia County*

All the following described real estate, situated in the County of Philadelphia and the state of Pennsylvania known and described as follows, to wit:

Beginning on the Southwesterly side of Allegheny Avenue at the distance of One Hundred Thirty-One feet, Two and One- Quarter inches more or less Northwestwardly from the Northwesterly side of Amber Street and extending thence Southwestwardly on a line at right angles with the said Allegheny Avenue and partly through a party wall between Nos. 2066 and 2068, Eighty-Six feet, Two and one-half inches more or less to a point; thence Northwestwardly on a line at right angles with Frankford Avenue Fourteen feet, Six and Five-Eighths inches more or less to a point; thence Northeastwardly on a line at right angles with Allegheny Avenue and passing through the middle of a Two feet wide alley (built over a depth of Twenty-eight feet, Five inches from Allegheny Avenue) Eighty-Five feet, Eight and Seven-Eights inches more or less to the Southwesterly side of Allegheny Avenue; thence Southeastwardly along said Allegheny Avenue Fourteen feet, Six and One-half inches more or less to the first mentioned point and place of beginning.

Parcel ID: 252308000

Being all and the same lands and premises conveyed to Qi Hua Gong and Ming Shi Jaing, husband and wife, as tenants by the entireties by Carmelita S. Pablo, Executrix under the will of Marilyn V. Pablo, also known as Marilyn Pablo, deceased in a Deed dated 11/10/1995 and recorded 02/03/1996 in Book 1062 Page 506 Document Number 000547, in the Land Records of Philadelphia County, Pennsylvania. Qi Hua Gong, is deceased on 12/09/2020, Certificate of Death Recorded on 12/13/2020 in Certificate Number P 27855105

eRecorded in Philadelphia PA Doc# 54248403
09/24/2024 11:20 AM    Page 1 of 3    Rec Fee: $242.75
Receipt#:
Records Department    Doc Code: A

When Recorded Return To:
Assignments and Lien Release
Title Clearing and Escrow
1601 LBJ Freeway Suite 150
Farmers Branch, TX  75234

---

## CORPORATE ASSIGNMENT OF MORTGAGE

Philadelphia, Pennsylvania
Fay Servicing#: **▮▮▮ "RAD DIVERSIFIED REIT, INC.,a Maryland corporation" ▮▮▮▮▮

Date of Assignment: 9/18/24

Assignor: HOUSEMAX FUNDING, LLC, A TEXAS LIMITED LIABILITY COMPANY
Assignee: U.S. Bank Trust National Association, not in its individual capacity but solely as Delaware Trustee for New Roots N Trust

I hereby certify the precise address of the within named Assignee is 1011 Centre Rd Suite 203, Wilmington, DE  19805.

Executed By: RAD DIVERSIFIED  REIT, INC.,a Maryland corporation  To: HouseMax Funding, LLC, a Texas limited liability company
Dated: 12-22-2023 Recorded: 01-04-2024 as Instrument/Document 54258033, Book/Reel/Liber N/A Page/Folio N/A  In the County of Philadelphia, State of Pennsylvania.

Property Address: 2066 E ALLEGHENY AVE, PHILADELPHIA, PA  19134 in the City of PHILADELPHIA

Legal:See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

I do certify that the precise address of U.S. Bank Trust National Association, not in its individual capacity but solely as Delaware Trustee for New Roots N Trust is 1011 Centre Rd Suite 203, Wilmington, DE 19805
Attested By:

*[signature]*

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $105,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 3

HOUSEMAX FUNDING, LLC, A TEXAS LIMITED LIABILITY COMPANY
On ___9/18/24___

By: _____
_Chase Scott_

(This area for corporate seal)

STATE OF _TX_
COUNTY OF ___Travis___

On ___9/18/24___, before me, _Preston Roberts_, a Notary Public in and for
_Housemax_ in the State of _TX_, personally appeared _Chase Scott_ of
HOUSEMAX FUNDING, LLC, A TEXAS LIMITED LIABILITY COMPANY, personally known to me (or
proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_Preston Roberts_

PRESTON ROBERTS
Notary ID #133082956
My Commission Expires
May 4, 2025

CORPORATE ASSIGNMENT OF MORTGAGE Page 3 of 3

## Exhibit A

All the following described real estate, situated in the County of Philadelphia and the state of Pennsylvania known and described as follows, to wit:

Beginning on the Southwesterly side of Allegheny Avenue at the distance of One Hundred Thirty-One feet, Two and One-Quarter inches more or less Northwestwardly from the Northwesterly side of Amber Street and extending thence Southwestwardly on a line at right angles with the said Allegheny Avenue and partly through a party wall between Nos. 2066 and 2068, Eighty-Six feet, Two and one-half inches more or less to a point, thence Northwestwardly on a line at right angles with Frankford Avenue Fourteen feet, Six and Five-Eighths inches more or less to a point; thence Northeastwardly on a line at right angles with Allegheny Avenue and passing through the middle of a Two feet wide alley (built over a depth of Twenty-eight feet, Five inches from Allegheny Avenue) Eighty-Five feet, Eight and Seven-Eights inches more or less to the Southwesterly side of Allegheny Avenue, thence Southeastwardly along said Allegheny Avenue Fourteen feet, Six and One-half inches more or less to the first mentioned point and place of beginning.

Parcel ID: 252308000

Being all and the same lands and premises conveyed to Qi Hua Gong and Ming Shi Jaing, husband and wife, as tenants by the entireties by Carmelita S. Pablo, Executrix under the will of Marilyn V. Pablo, also known as Marilyn Pablo, deceased in a Deed dated 11/10/1995 and recorded 02/03/1996 in Book 1062 Page 506 Document Number 000547, in the Land Records of Philadelphia County, Pennsylvania. Qi Hua Gong, is deceased on 12/09/2020, Certificate of Death Recorded on 12/13/2020 in Certificate Number P 27855105