**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

IN RE:

RAD Diversified REIT, Inc.;


RAD Diversified OZ Fund, LP;

DHI Fund, LLC;

DHI Holdings, LP; *and*

DDH Fund, LLC,

　　　Debtors.

Chapter 11
Case No. 8:26-bk-01636-CPM

*Jointly Administered with*
Case No. 8:26-bk-01637-CPM

Case No. 8:26-bk-01638-CPM

Case No. 8:26-bk-01639-CPM

Case No. 8:26-bk-01640-CPM

**J.P. MORGAN MORTGAGE TRUST 2023-DSC1 C/O CITIBANK, N.A. AS DELAWARE TRUSTEE'S MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(Re: 3840 N 18th St, Philadelphia, PA 19140)**

J.P. Morgan Mortgage Trust 2023-DSC1 c/o Citibank, N.A. as Delaware Trustee ("Movant"), by and through undersigned counsel, files this Motion for Relief from the Automatic Stay or, in the Alternative, for Adequate Protection, and in support states as follows:

## I.　JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. Further, review is appropriate under 11 U.S.C. §§ 105(a), 362 and other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

## II.　STATEMENT OF FACTS

**A.　LOAN HISTORY**

1.　On or about February 22, 2022, RAD Diversified REIT, Inc. ("Debtor") by Brandon D. Mendenhall, executed a promissory note in the principal sum of $135,850.00 (the "Note"). The Note reflects it was indorsed in blank. The Note is secured by a recorded Mortgage

executed by Debtor (the "Mortgage") on the real property located at 3840 N 18th St, Philadelphia, PA 19140 (the "Property"), which is more fully described in the Mortgage, which is recorded in the Public Records of Philadelphia County, Pennsylvania. True and correct copies of the relevant loan documents are attached as **Composite Exhibit A**.

2.  On February 22, 2022, Brandon D. Mendenhall, executed and delivered a commercial guaranty ("Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit B**.

3.  Debtor defaulted under the terms of the Loan Documents. On December 15, 2025, Movant filed its Praecipe for Entry of Judgment by Default (Mortgage Foreclosure) ("Foreclosure") which is attached hereto as **Exhibit C**.

4.  The aforementioned Mortgage gives Movant a first mortgage position on the property legally described as:

### SCHEDULE 1
### PROPERTY DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the with-story brick dwelling thereon erected.

SITUATE on the West side of Eighteenth Street at the distance of Three hundred feet Northward from the North side of Butler Street, in the Thirteenth( formerly Thirty-Eighth) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Eighteenth Street Fifteen feet and extending of that width in length or depth Westward between parallel lines at right angles to the said Eighteenth Street Ninety-one feet to a certain Four feet wide alley which extends Northward and Southward from the said Butler to Pulaski Avenue.

TOGETHER with the free and common use. right, liberty and privilege of the above-mentioned alley as and for a passageway and watercourse in common with the owners, tenants, and occupiers of the lots of ground bounding thereon and entitled to the use thereof at all times hereafter, forever.

BEING known as No. 3840 North Eighteenth Street.

BEING OPA#

5.  NewRez LLC services the underlying mortgage loan and note for the property referenced in this motion for (Movant).  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note.  The Note is endorsed in blank.  Movant is the beneficiary or the assignee of the Deed of Trust.

**B.   PROCEDURAL HISTORY**

6. On March 1, 2026, Debtor commenced the instant case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

7. On May 11, 2026, Creditor filed its Proof of Claim listing a secured Claim of $185,569.39, including pre-petition arrears of $59,693.92. (See Claim No. 394-1).

**C.   LOAN STATUS**

8. As of June 15, 2026, the outstanding amount of the Obligations less any partial payments or suspense balance is $198,258.21.[1]*

9. The current monthly mortgage payment is $1,017.90. Payments pursuant to the Mortgage have been in default and remain in default since October 1, 2024. Debtor has made no post-petition payments.

10. The following chart sets forth the payments due pursuant to the terms of the Note that have been missed by Debtor as of June 15, 2026.

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 2 | 10/1/2024 | 11/1/2024 | $965.53 | $1,931.06 |
| 9 | 12/1/2024 | 08/01/2025 | $1,011.38 | $9,102.42 |
| 10 | 09/01/2025 | 06/01/2026 | $1,017.90 | $10,179.00 |
| Less partial payments (suspense balance): | | | | ($ 0.00) |
| Total: | | | | $21,212.48 |

11. Movant is informed and believes, based on a Broker's Price Opinion, that the value of the Property, as of January 26, 2026, is approximately $90,000.00. A copy of the Broker's Price Opinion is attached hereto as **Exhibit D**.

### III.   ARGUMENT

**1. Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(1).**

12. Relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." *See In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008) (citing, *In re Dixie Broad., Inc.* 871 F.2d 1023, 1026 (11th Cir. 1989); *See also, e.g., In re Jefferson County, Alabama*, 484 B.R. 427 (Bankr. N.D. Ala. 2012). A debtor's failure to make contractual

---

[1] As of June 15, 2026, the unpaid principal balance is $130,335.23.
*As of June 15, 2026, the total interest is $52,162.28, which consists of an interest balance of $10,867.70 and a default interest of $41,294.58.

payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986); *In re Ellis*, 60 B.R. 432 (B.A.P. 9th Cir. 1985).

13.     Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. The contractual default totals $21,212.48, which continues to increase. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986). Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). *In re Three Tuns, Inc.*, 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

**2. Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(A).**

14.     Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); *In re Stewart*, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection *per se*. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. *See In re Senior Care Properties, Inc.*, 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has generally been held to be insufficient. *In re Big Dog II, LLC*, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

15.     Here, the value of the Property is $90,000.00 (See **Exhibit D**). Movant's lien totals $198,258.21. There is no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

**3. Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(B).**

16.     Relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a movant under 11 U.S.C. § 362(d)(2)(A)

establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the ***property is essential*** for an effective reorganization that is in prospect. This means that there must be a ***reasonable possibility*** of a successful reorganization within a ***reasonable amount of time***. *Timbers*, 484 U.S. at 375.

17.    Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. As the Property ***produces little to no income, it provides no benefit to the estate; and is therefore unnecessary for the Debtor's effective reorganization***. If anything, the Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage through a Plan. Thus, Debtor failed to meet his/her burden under 11 U.S.C. § 362(g)(2).

## IV.    CONCLUSION

18.    Movant requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtors' property outside of the bankruptcy forum.

19.    Movant further requests that the Court Order entered pursuant to the instant Motion provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

20.    Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

21.    Movant hereby seeks attorneys' fees in the amount of $1,350.00 and costs in the amount of $199.00 that will be incurred in filing this Motion for Relief from the Automatic Stay.

22.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that

Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum or, in the alternative, that Debtor be directed to make regular cash payments that would adequately protect Movant's interest, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtor be required to pay Movant's attorneys' fees and costs incurred in filing this Motion, that the Court waive the fourteen (14) day stay, that Debtor be required to segregate and account for Movant's cash collateral, that Movant be permitted to communicate with Debtor for the purposes stated above, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

*/s/ Tricia A. Morra*

Tricia A. Morra (FLBN 0095989)
Aldridge Pite, LLP
101 East Park Blvd.
Suite 600, Office 23
Plano TX 75074
tmorra@aldridgepite.com
Telephone: (404) 994-7290
Attorney for Secured Creditor

**Mailing Address**
3333 Camino del Rio South
Suite 225
San Diego, CA 92108

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing Motion for Relief from the Automatic Stay or for Adequate Protection to be served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**

Jessey James Krehl
Pack Law
4649 Ponce de Leon Boulevard
Ste 405
Coral Gables, FL 33146
Email: jessey@packlaw.com

Joseph A Pack
Pack Law
4649 Ponce de Leon Boulevard
Ste 405
Coral Gables, FL 33146
305-916-4500
Email: Joe@packlaw.com

**DEBTOR**

RAD Diversified REIT, Inc.
11418 US-19 N.
Port Richey, FL 34688

**UNITED STATES TRUSTEE**
**(via electronic notice)**
Nicole Peair
Timberlake Annex
501 E Polk Street, Suite 1200
Tampa, FL 33602
813-228-2000
Email: Nicole.W.Peair@USdoj.gov

**CONSOLIDATED LIST OF CREDITORS WHO HAVE THE 30 LARGEST UNSECURED CLAIMS:**

Unsecured Creditors' Committee
c/o Greenberg Traurig
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA 30305
elrodj@gtlaw.com
kempd@gtlaw.com

Premiere Networks Inc.
C/O Mcglinchey Stafford
10375 Centurion Pkwy, Ste 420
Jacksonville, FL 32256

Ado Professional Solutions Inc.
4800 Deerwood Campus Pkwy, Bldg 800
Jacksonville, FL 32246

Arneberg, Lora
507 N. Arthur St
New Harmony, IN 47631

Jacar Investments LLC
C/O Savage Villoch Law PLLC
Attn Rovert K Savage, Esq
400 N Tampa St, Ste 2820
Tampa, FL 33602

Hemphill, Steven L
5855 Midnight Pass Rd, Unit 215
Sarasota, FL34242

Boston National LLC
Two Radnor Corporate Center
100 Matsonford Rd.
Radnor, PA 19087

Pbk Architects Inc.
C/O Stream Kim Hicks Wrage & Alfaro PC
Attn: T. Stream, S. Devore
3403 10th St, Ste 700
Riverside, CA 92501

Valet Living, LLC
10150 Highland Manor Dr
Suite 120
Tampa, Fl 33160

PECO
PO Box 37629
Philadelphia, PA 19101

Legno Construction Inc.
Attn: Christiano
3421morrell Ave
Philadelphia, PA 19114

Lowes
1000 Lowes Boulevard
Mooresville, NC 28117

Katz Barsky LLC/KBK Law Group
Attn: Katz, Jeffery

100 S Broad Street, Suite 1205
Philadelphia, PA 19110

American Express card
200 Vesey Street
New York, NY 10285-3106

Veiga Construction And Remodeling LLC
Attn: Veiga, Rojelio
136 Columbia Ave
Phoenixville, PA 19460

Shore To Shore Title LLC
2255 Glades Road Suite 2341a
Boca Raton, FL 33431

Jeffrey Jackson & Associates PLLC
11767 Katy Fwy Suite 813
Houston, TX 77079

and the Local Rule 1007 Parties in Interest List.

Dated: July 15, 2026

/s/ *Tricia Morra*
Tricia Morra

Lender Loan Numb█████████

## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **RAD DIVERSIFIED REIT, INC.** (the "Borrower"), a Maryland corporation with a principal place of business of ~~7 St. Paul Street, Suite 820, Baltimore, MD 21202~~ promises to pay to the order of **RCN Capital, LLC**, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, or its assigns (collectively, the "Holder") the principal sum of **One Hundred Thirty-Five Thousand Eight Hundred Fifty Dollars and No Cents ($135,850.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 4.6625% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on March 1, 2052 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on April 1, 2022 and continuing on the first (1st) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from March 1, 2022 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on March 1, 2022, a fixed interest rate equal to the interest rate in effect as of March 1, 2022, and the outstanding principal balance of the Note as of March 1, 2022. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$701.51**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1st) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal FIVE PERCENT (5.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal FOUR PERCENT (4.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal

**Page 1 of 5**



**COMPOSITE
EXHIBIT A**

prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Any failure by Borrower to satisfy a Condition Precedent set forth in the Loan Agreement; (e) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Three Percent (23%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note"), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount

 **Page 2 of 5**

**COMPOSITE EXHIBIT A**

permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Brandon D. Mendenhall (the "Guarantor"); a certain Mortgage, Assignment of Rents, and Security Agreement (the "Security Instrument") granted by RAD DIVERSIFIED REIT, INC., in favor of RCN Capital, LLC, encumbering the real property and improvements at 3840 N 18th St, Philadelphia, PA 19140.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received



Page 3 of 5

**COMPOSITE**
**EXHIBIT A**

**by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.**

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

Page 4 of 5

**COMPOSITE EXHIBIT A**

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on ___February___ ____22____, 2022.

RAD DIVERSIFIED REIT, INC.

By: _____

Name: Brandon D. Mendenhall

Title: President

STATE OF __Calif___ )

COUNTY OF __San Bernardino__ )ss. _____
)

I certify that on ___February 22___, 2022, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_____
(Notary Public)

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission
My Comm. Expires Dec 15, 2023

Page 5 of 5

**COMPOSITE EXHIBIT A**

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Bernardino_ }

On _2/22/22_ before me, _Caroline H. Gutierrez-Jackson_,
_____Date_____          _____Here Insert Name and Title of the Officer_____

personally appeared _Brandon Mendenhall_
_____Name(s) of Signer(s)_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission ▮▮▮▮▮
My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
_____Place Notary Seal and/or Stamp Above_____    _Signature of Notary Public_

──────────────── OPTIONAL ────────────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _Commercial Promissory Note_
Document Date: _2/22/22_                    Number of Pages: _5_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual       ☐ Attorney in Fact | ☐ Individual       ☐ Attorney in Fact |
| ☐ Trustee          ☐ Guardian or Conservator | ☐ Trustee          ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _RAD Diversified REIT, Inc._ | Signer is Representing: _____ |

©2018 National Notary Association

**COMPOSITE
EXHIBIT A**

## ALLONGE TO NOTE

Statement of Purpose: This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of interest.

TERMS OF THE NOTE

| | |
|---|---|
| Note Date | 2/23/2022 |
| Borrower(s): | RAD DIVERSIFIED REIT INC |
| | BRANDON MENDENHALL |
| Original Lender: | RCN Capital, LLC |
| Original Loan Amount: | $ 135850 |
| Property Address: | 3840 N 18TH ST, PHILADELPHIA, PA 19140 |
| Loan Number(s): | ███████████████████ |
| Client / Investor: | JPM Securitization |

## PAY TO THE ORDER OF:

Ibis Holdings A Trust

## WITHOUT RECOURSE

RCN Capital, LLC

by: NewRez LLC d/b/a Shellpoint Mortgage Servicing, as attorney in fact

_Angie Fay Chapman_

_____

Angie Fay Chapman, Vice President



**COMPOSITE
EXHIBIT A**

## ALLONGE TO NOTE

Statement of Purpose:  This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of interest.

TERMS OF THE NOTE

| Note Date | 2/23/2022 |
|---|---|
| Borrower(s): | RAD DIVERSIFIED REIT INC |
| | BRANDON MENDENHALL |
| Original Lender: | RCN Capital, LLC |
| Original Loan Amount: | $ 135850 |
| Property Address: | 3840 N 18TH ST, PHILADELPHIA, PA  19140 |
| Loan Number(s): | ████████████████████ |
| Client / Investor: | JPM Securitization |

### PAY TO THE ORDER OF:

### WITHOUT RECOURSE

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely in its capacity as trustee of IBIS Holdings A Trust

by:  NewRez LLC d/b/a Shellpoint Mortgage Servicing, as attorney in fact

*Angie Fay Chapman*

---

Angie Fay Chapman, Vice President



**COMPOSITE
EXHIBIT A**

eRecorded in Philadelphia PA    Doc Id: 54017608
04/06/2022 08:21 AM    Page 1 of 15    Rec Fee: $226.75

Records Department    Doc Code: M

.....……..........................….… Space Above Line for Recorder's Use ……..............................….

## MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

TAX PARCEL
NUMBER(S):

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |
| SIGNATURE: | <br>AGENT ON BEHALF OF THE MORTGAGEE |

Lender Loan Number: ██████

Mortgage, Assignment of Rents, and Security Agreement dated February 22, 2022.



**EXHIBIT
B**

MDK Doc ID PSC8 25-003828

Page 1 of 14    2/22/22

**COMPOSITE
EXHIBIT A**

## MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made by **RAD DIVERSIFIED REIT, INC.** (the "Mortgagor"), a Maryland corporation with a principal place of business at ~~7 St. Paul Street, Suite 820, Baltimore, MD 21202~~; in favor of **RCN Capital, LLC** (the "Mortgagee"), a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, its successors and assigns.

### RECITAL

Mortgagor is indebted to Mortgagee in the principal amount of **One Hundred Thirty-Five Thousand Eight Hundred Fifty Dollars and No Cents ($135,850.00)**, as evidenced by Mortgagor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Mortgagee, executed and delivered contemporaneously with this Instrument, and maturing on March 1, 2052 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Mortgagor and Mortgagee executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO Mortgagee the full and prompt payment and performance of each and all of Mortgagor's obligations under the Note, and the performance of the covenants and agreements of Mortgagor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Mortgagor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Mortgagor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Mortgagee, the following described property (collectively, the "Premises"):

A   The real property located in Philadelphia County, Pennsylvania, at **3840 N 18th St, Philadelphia, PA 19140**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Mortgagor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B   All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");



Page 2 of 14    2/22/22

**COMPOSITE
EXHIBIT A**

C   All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the commonwealth of Pennsylvania, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D   All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E   All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Mortgagor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F   All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Mortgagor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

G   All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating



**Page 3 of 14**

**COMPOSITE
EXHIBIT A**

thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Mortgagor does hereby represent and warrant that Mortgagor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Mortgagee contemporaneously with the execution and recordation of this Instrument and insuring Mortgagee's interest in the Premises. Mortgagor does hereby covenant and agree that Mortgagor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Mortgagor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Mortgagee and any other Person authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Mortgagor, as debtors, and Mortgagee, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the commonwealth of Pennsylvania (the "UCC"), for the purpose of securing Mortgagor's obligations under this Instrument and to further secure Mortgagor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Mortgagor hereby grants to Mortgagee a security interest in the Collateral. To the extent necessary under applicable law, Mortgagor hereby authorizes Mortgagee to prepare and file financing statements, continuation statements and financing statement amendments in such form as Mortgagee may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Mortgagee will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Mortgagee may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Mortgagee's other remedies. This Instrument also constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

Page 4 of 14

**COMPOSITE
EXHIBIT A**

3. Taxes and Other Charges. Mortgagor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Mortgagee's request, Mortgagor shall deliver to Mortgagee within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Mortgagee.

4. Insurance. Mortgagor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrauces.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Mortgagee, be and become immediately due and payable in full, subject to applicable law, and Mortgagee shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession. (A) As part of the consideration for the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to Mortgagee all Rents. It is the intention of Mortgagor to establish a present, absolute and irrevocable transfer and assignment to Mortgagee of all Rents and to authorizes and empower Mortgagee to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Mortgagee, Mortgagor agrees to execute and deliver such further assignments as Mortgagee may from time to time require. Mortgagor and Mortgagee intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the Rents will be included as a part of the Premises and it is the intention of Mortgagor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Mortgagee, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Mortgagee hereby grants to Mortgagor a revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Mortgagee and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other

Page 5 of 14

**COMPOSITE
EXHIBIT A**

amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Mortgagor free and clear of, and released from, Mortgagee's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Mortgagor authorizes Mortgagee to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Mortgagee. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, or by a receiver, Mortgagor's license to collect the Rents will automatically terminate and Mortgagee will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Mortgagor will pay to Mortgagee upon demand all the Rents to which Mortgagee is entitled. At any time on or after the date of Mortgagee's demand for the Rents, Mortgagee may give, and Mortgagor hereby irrevocably authorizes Mortgagee to give, notice to all tenants of the Premises instructing them to pay all Rents to Mortgagee. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Mortgagor *any amounts which are actually paid to* Mortgagee *in response to such a notice.* Any such notice by Mortgagee will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Mortgagor will not interfere with and will cooperate with Mortgagee's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Mortgagee will have each of the following rights and may take any of the following actions: (i) Mortgagee may, regardless of the adequacy of Mortgagee's security or the solvency of Mortgagor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Mortgagee in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Mortgagee, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Mortgagee's security, without regard to Mortgagor's solvency and without the necessity of giving prior notice (oral or written) to Mortgagor, Mortgagee may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Mortgagee elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Mortgagor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Mortgagor is a housing cooperative corporation or association, Mortgagor hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes,

**COMPOSITE
EXHIBIT A**

Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Mortgagor and must be paid out of maintenance charges payable by Mortgagor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Mortgagee or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Mortgagee's entering upon and taking possession and control of the Premises, Mortgagor will surrender possession of the Premises to Mortgagee or the receiver, as the case may be, and will deliver to Mortgagee or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Mortgagee takes possession and control of the Premises, then Mortgagee may exclude Mortgagor and its representatives from the Premises. Mortgagor acknowledges and agrees that the exercise by Mortgagee of any of the rights conferred under this Section 7 will not be construed to make Mortgagee a Mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and Improvements. (D) If Mortgagee enters the Premises, Mortgagee will be liable to account only to Mortgagor and only for those Rents actually received. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable to the Borrower, anyone claiming under or through Mortgagor or anyone having an interest in the Premises, by reason of any act or omission of Mortgagee under Section 7(C) of this Instrument, and Mortgagor hereby releases and discharges Mortgagee from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness as provided in Section 9 of this Instrument. (F) Any entering upon and taking of control of the Premises by Mortgagee or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Mortgagee under applicable law or provided for in this Instrument. (F) During the existence of an Event of Default, Mortgagee may enter into possession of the Premises, with or without legal action, and by force, if necessary; collect all Rents (which term will also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the rents in accordance with Section 7 of this Instrument; and for that purpose Mortgagor hereby confirms The assignment to Mortgagee of all Rents due and to become due under all Leases created after the date of this Instrument, as well as all rights and remedies provided in such Lease or Leases or at law or in equity for the collection of Rents. The taking of possession and collection of Rents by Mortgagee will not be construed to be an affirmation of any Lease. **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES DURING THE EXISTENCE OF AN EVENT OF DEFAULT, MORTGAGOR AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN**

**COMPOSITE EXHIBIT A**

EJECTMENT FOR POSSESSION OF THE PREMISES, IN FAVOR OF Mortgagee, FOR WHICH THIS INSTRUMENT, OR A COPY VERIFIED BY AFFIDAVIT, WILL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT WILL BE DISCONTINUED, OR POSSESSION OF THE PREMISES WILL REMAIN IN OR BE RESTORED TO MORTGAGOR, Mortgagee WILL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OF EJECTMENT TO RECOVER POSSESSION OF THE PREMISES. Mortgagee MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS INSTRUMENT OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN THE ACTION OF EJECTMENT OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PREMISES IN WHICH Mortgagee IS THE SUCCESSFUL BIDDER. THIS AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS INSTRUMENT AND THE NOTE, AND WILL SURVIVE ANY EXECUTION SALE TO Mortgagee.

8. Application of Payments. If at any time Mortgagee receives, from Mortgagor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Mortgagee may apply that payment to amounts then due and payable in any manner and in any order determined by Mortgagee, in Mortgagee's discretion. Neither Mortgagee's acceptance of an amount that is less than all amounts then due and payable nor Mortgagee's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Mortgagor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Mortgagee's Security; Instrument Secures Future Advances. If Mortgagor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Mortgagee's security, or Mortgagee's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Mortgagee, at Mortgagee's option may make such appearances, file such documents, disburse such sums and take such actions as Mortgagee reasonably deems necessary to perform such obligations of Mortgagor and to protect Mortgagee's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Mortgagor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of the Mortgagor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Mortgagor for the payment of money that is secured by a

Page 8 of 14

**COMPOSITE EXHIBIT A**

lien on the Premises. Any amounts disbursed by Mortgagee under this Section 9 or under any other provision of this Instrument that treats such disbursement as being made under this Section 9, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 9 will require Mortgagee to incur any expense or take any action. The provisions of this Section 9, including the obligation to indemnify Mortgagee, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Mortgagee's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Mortgagor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq., and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Mortgagee.

11. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Mortgagee's exercise of any particular right or remedy will not in any way prevent Mortgagee from exercising any other right or remedy available to Mortgagee. Mortgagee may exercise any such remedies from time to time and as often as Mortgagee chooses.

12. Waiver of Statute of Limitations, Offsets, and Counterclaims. Mortgagor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or

**COMPOSITE
EXHIBIT A**

to any action brought to enforce any Loan Document. Mortgagor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Mortgagee or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Mortgagee to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Mortgagor is obligated to make under any of the Loan Documents.

13. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Mortgagee or by any other party, Mortgagee will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Mortgagee will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. Further Assurances. Mortgagor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Mortgagee may require from time to time in order to better assure, grant, and convey to Mortgagee the rights intended to be granted, now or in the future, to Mortgagee under this Instrument and the Loan Documents.

15. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the commonwealth of Pennsylvania. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Mortgagee's rights with respect to such security interest created in the commonwealth of Pennsylvania). Nothing in this Section 15 is intended to limit Mortgagee's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. Notices. All notices, consents, approvals, and requests required or permitted under this Instrument or under any other Loan Document shall be given in accordance with the requirements set forth under the Loan Agreement.

17. Successors and Assigns. This Instrument will bind the respective successors and assigns of Mortgagor and Mortgagee, and the rights granted by this Instrument will inure to Mortgagee's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Mortgagor, the obligations of such Persons will be joint and several.

**Page 10 of 14**

**COMPOSITE
EXHIBIT A**

19. Relationship of Parties; No Third-Party Beneficiary. The relationship between Mortgagee and Mortgagor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Mortgagee and Mortgagor. Nothing contained in this Instrument will constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations or contracts of Mortgagor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Mortgagee at Mortgagor's request, and Mortgagee will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the commonwealth of Pennsylvania, at any time after an Event of Default, regardless of whether Mortgagee has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Mortgagor and all Persons claiming under Mortgagor for the recovery by Mortgagee of possession of all or any part of the Premises, for which this Instrument

Page 11 of 14

**COMPOSITE EXHIBIT A**

shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. At any time during the existence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Indebtedness to be immediately due and payable without further demand and may foreclose the lien of this Instrument by judicial proceedings and may invoke any other remedies permitted by Pennsylvania law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Mortgagee will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs or fifteen percent (15%) of the unpaid balance of the sums secured by this Instrument, but not less than five thousand dollars ($5,000.00), and costs of documentary evidence, abstracts, and title reports.

24. Release. Upon payment of the Indebtedness, this Instrument will become null and void and Mortgagee will discharge this Instrument. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging this Instrument.

25. Purchase Money Mortgage. If the proceeds of the Indebtedness are used by Mortgagor to pay all or a part of the purchase price of the Premises, this Instrument is declared to be a purchase money mortgage and will be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. Con. Stat. Ann. Section 8141, as amended.

26. Future Advances. This Instrument secures future advances. Notwithstanding anything to the contrary contained in this Instrument, the maximum amount of indebtedness outstanding at any time which may be secured by this Instrument is One Hundred Thirty-Five Thousand Eight Hundred Fifty Dollars and No Cents ($135,850.00), plus accrued and unpaid interest.

*[Remainder of page intentionally left blank]*



Page 12 of 14

**COMPOSITE
EXHIBIT A**

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has signed and delivered this Mortgage, Assignment of Rents, and Security Agreement or has caused said instrument to be signed and delivered by its duly authorized representative on ~~February~~ ~~22~~, 2022.

**RAD DIVERSIFIED REIT, INC.**

Witness: Edward Shays

By: _____
Name: Brandon D. Mendenhall
Title: President

Witness: _____

STATE OF _Calif_                )
                                )ss. _____
COUNTY OF _San Bernardino_      )

I certify that on _February 22,_, 2022, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_____
Notary Public

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission █████████
My Comm. Expires Dec 15, 2023

**COMPOSITE
EXHIBIT A**

**CALIFORNIA ACKNOWLEDGMENT**                                   CIVIL CODE § 1189

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of California

County of _San Bernardino_ }

On _2/22/22_ _____ before me, _Caroline H. Gutierrez-Jackson_ ,
     Date                           Here Insert Name and Title of the Officer

personally appeared _Brandon Mendenhall_
                                 Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> CAROLINE H. GUTIERREZ-JACKSON
> Notary Public - California
> Los Angeles County
> Commission ███████
> My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Place Notary Seal and/or Stamp Above

Signature _____
                        Signature of Notary Public

---
——————————— OPTIONAL ———————————

| Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document. |
| --- |

**Description of Attached Document**
Title or Type of Document: _Mortgage, Assignment of Rents, and Security Agreement_
Document Date: _2/22/22_ _____ Number of Pages: _14_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
| --- | --- |
| ☐ Corporate Officer – Title(s): _____ | ☐ Corporate Officer – Title(s): _____ |
| ☐ Partner – ☐ Limited ☐ General | ☐ Partner – ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |
| _RAD Diversified REIT, Inc._ | |

©2018 National Notary Association

**COMPOSITE
EXHIBIT A**

## SCHEDULE 1
## PROPERTY DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the with-story brick dwelling thereon erected.

SITUATE on the West side of Eighteenth Street at the distance of Three hundred feet Northward from the North side of Butler Street, in the Thirteenth( formerly Thirty-Eighth) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Eighteenth Street Fifteen feet and extending of that width in length or depth Westward between parallel lines at right angles to the said Eighteenth Street Ninety-one feet to a certain Four feet wide alley which extends Northward and Southward from the said Butler to Pulaski Avenue.

TOGETHER with the free and common use. right, liberty and privilege of the above-mentioned alley as and for a passageway and watercourse in common with the owners, tenants, and occupiers of the lots of ground bounding thereon and entitled to the use thereof at all times hereafter, forever.

BEING known as No. 3840 North Eighteenth Street.

BEING OPA# ███████

**COMPOSITE
EXHIBIT A**

eRecorded in Philadelphia PA   Doc Id: 54547938
05/04/2026 11:41 AM   Page 1 of 3   Rec Fee: $246.75
Receipt#: 26-36114
Records Department   Doc Code: A

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **RCN CAPITAL, LLC** located at **75 GERBER ROAD EAST, STE. 102, SOUTH WINDSOR, CT 06074**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over without recourse, representation or warranty, expressed or implied unto **J.P. MORGAN MORTGAGE TRUST 2023-DSC1 C/O CITIBANK, N.A. AS DELAWARE TRUSTEE** located at **388 GREENWICH STREET ATTENTION:AGENCY & TRUST-JPMMT 2023-DSC1, NEW YORK, NY 10013**, Assignee, its successors and assigns, that certain Mortgage described below.

Said Mortgage dated **FEBRUARY 22, 2022** executed by **RAD DIVERSIFIED REIT, INC.**, Mortgagor, to **RCN CAPITAL, LLC**, Original Mortgagee, in the amount of **$135,850.00** and recorded on **APRIL 06, 2022** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **54017608**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **3840 N 18TH ST, PHILADELPHIA, PA 19140**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on _____ **APR 23 2026**

**RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT**

Name: _Leslie Richardson_
Title: _Assistant Secretary_

**COMPOSITE
EXHIBIT A**

STATE OF _____Texas_____ COUNTY OF _____Dallas_____ ) ss.
On _____APR 2 3 2026_____, before me, _____Daniel Juan Alvarado Jr_____, personally appeared _____Leslie Richardson_____ known to me to be the _____Assistant Secretary_____ of RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_____ (COMM. EXP. 5/22/29)
Daniel Juan Alvarado Jr
NOTARY PUBLIC

DANIEL JUAN ALVARADO JR
Notary
My Commission Expires
May 27, 2029

I do hereby certify that the precise address of the Assignee Residence is:
**J.P. MORGAN MORTGAGE TRUST 2023-DSC1 C/O CITIBANK, N.A. AS DELAWARE TRUSTEE, 388 GREENWICH STREET ATTENTION:AGENCY & TRUST-JPMMT 2023-DSC1, NEW YORK, NY 10013**

Name: Leslie Richardson
Title: Assistant Secretary

**COMPOSITE
EXHIBIT A**

██████████████████  RAD DIVERSIFIED REIT, INC.

LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the with-story brick dwelling thereon erected.

SITUATE on the West side of Eighteenth Street at the distance of Three hundred feet Northward from the North side of Butler Street, in the Thirteenth (formerly Thirty-Eighth) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Eighteenth Street Fifteen feet and extending of that width in length or depth Westward between parallel lines at right angles to the said Eighteenth Street Ninety-one feet to a certain Four feet wide alley which extends Northward and Southward from the said Butler to Pulaski Avenue.

TOGETHER with the free and common use, right, liberty and privilege of the above-mentioned alley as and for a passageway and watercourse in common with the owners, tenants, and occupiers of the lots of ground bounding thereon and entitled to the use thereof at all times hereafter, forever.

Page 3 of 3

**COMPOSITE
EXHIBIT A**

## COMMERCIAL GUARANTY

THIS COMMERCIAL GUARANTY (the "Guaranty") is made by **Brandon D. Mendenhall** ("Guarantor"), an individual, residing at 222 Angels Boulevard, Big Bear City, CA 92314.

FOR VALUE RECEIVED, Guarantor hereby unconditionally and absolutely guarantees the prompt payment and performance of a certain Commercial Promissory Note (the "Note") in the principal amount of One Hundred Thirty-Five Thousand Eight Hundred Fifty Dollars and No Cents ($135,850.00), plus interest, fees, and any other charges due thereunder (all sums due under the aforesaid Note are hereinafter referred to collectively, as the "Indebtedness") made and delivered simultaneously with this Guaranty by RAD DIVERSIFIED REIT, INC., in favor of RCN Capital, LLC, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, and its assigns (collectively, the "Holder"); and all monies coming due under a certain Commercial Loan Agreement (the "Loan Agreement") between Borrower and Lender, any mortgage or any other document granted to secure the Indebtedness, any environmental indemnification agreement, and any other document executed in relation to and simultaneously with the Indebtedness (all of the foregoing document are hereinafter referred to collectively as the "Loan Documents").

1. Consent to Modifications. Guarantor consents to any change in the terms and conditions of the Loan Documents, including but not limited to, any change in the collateral provided in the Loan Documents or any change with respect to the parties who may be liable with respect to the Loan Documents, with notice to, or further assent by, Guarantor. Guarantor is to remain bound upon this Guaranty, notwithstanding any such change or extension or release, substitution, exchange or other indulgence granted any maker of the Indebtedness. Guarantor hereby waives all defenses, counterclaims, or offsets which Guarantor might have by reason of any change in or to the Loan Documents or any release, exchange, surrender, or impairment of security, or any addition or release of any party liable with respect to the Loan Documents.

2. Default. Upon any Event of Default of (as defined in each respective loan document), Borrower in the payment or performance under any of the Loan Documents, Holder may enforce this Guaranty immediately against Guarantor and may exercise remedies under any security instruments given to secure the obligations under this Guaranty, without the necessity of any suit or action against Borrower or any other party and without resorting to and without regard to any collateral or any other guarantee or any other source of payment. In the event of default under any of the Loan Documents, Guarantor further agrees to pay all costs, without limitation, reasonable attorneys' fees, incurred or expended by Holder in the collection or attempted collection under this Guaranty and in realization of any lien or security interest securing amounts due hereunder, including, without limitation, those incurred as a result of Holder's participation in any proceeding involving Guarantor under the Federal Bankruptcy Code.

3. Delay or Omission No Waiver; Continuing Guaranty. No delay or omission in exercising any right hereunder shall operate as a waiver of such right or any other right; and a waiver on one occasion shall not be a bar to or waiver of any right on any other occasion. This Guaranty is a continuing guaranty which shall take effect on its delivery to Holder and shall remain in full force and effect and be binding upon Guarantor until the complete satisfaction of all of the obligations set forth in the Loan Documents.

4. Waiver. Guarantor hereby waives demand, presentment, protest, and notice of acceptance of this Guaranty by Holder, and of any loans made, extensions granted or other action taken in reliance hereon and all other demands and notices of any description in connection with this Guaranty, or under the Loan Documents.

5. Representations and Warranties. Guarantor represents and warrants that: (a) Guarantor is deriving direct financial benefit from the Indebtedness; (b) Guarantor is not now insolvent and will not be rendered insolvent by the execution hereof or the performance hereunder; (c) there are no actions, suits or proceedings pending, and Guarantor has not received notice of any actions, suits, proceedings, against or affecting Guarantor, or the properties of Guarantor before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to Guarantor, would have a material adverse effect on the financial condition, properties or operations of Guarantor; (d) the most recent financial statements of Guarantor, copies of which statements have been furnished to Holder, fairly present the financial condition of Guarantor as of such dates in accordance with generally accepted accounting principles applied on a consistent

**EXHIBIT B**

basis, and since the date of each of such financial statements, there has been no material adverse change in such condition or operations; (e) Guarantor is not a party to any indenture, loan or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on the ability of Guarantor to carry out its obligations hereunder; (f) no information, exhibit or report furnished by Guarantor to Holder in connection with the negotiation of this Guaranty contained as of the date thereof, or, if there be no such date, the date of furnishing thereof, any untrue statements of a material fact and do not omit to state any material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; (g) this Guaranty constitutes the valid and legally binding obligation of Guarantor, enforceable in accordance with its terms, except as the enforcement may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditor's rights generally; and (h) all authorizations, consents and approvals of governmental bodies or agencies required in connection with the execution and delivery of this Guaranty, or in connection with the performance of Guarantor's obligations hereunder, if any, have been obtained as required hereunder or by law

6. Dealing with Borrower and Others. Without incurring responsibility to Guarantor and without impairing or releasing the liabilities and obligations of Guarantor hereunder, Holder may, at any time and from time to time, without the consent of or notice to Guarantor, upon any terms or conditions and in whole or in part shall have the right to: (a) sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order, any property by whomsoever at any time pledged, assigned, mortgaged or in which a security interest is given to secure, or howsoever securing, the liabilities and obligations of Borrower; (b) exercise or refrain from exercising any rights against Borrower or other persons or entities (including Guarantor) or against any security given by Borrower or other persons or entities (including Guarantor), or otherwise act or refrain from acting; (c) Settle or compromise any liabilities and obligations of Borrower to Holder, dispose of any security therefor, with or without consideration, or any liability incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liabilities and obligations of Borrower (whether due or not) to creditors of Borrower other than Holder and Guarantor; and (d) apply any sums by whomsoever paid and howsoever realized for the benefit of Borrower to any liabilities and obligations of Borrower, subject to the provisions of the Loan Documents.

7. Subrogation. So long as: (i) the Indebtedness remains unpaid; (ii) any liabilities and obligations of Borrower exist under the Loan Documents; or (iii) any liabilities and obligations of Guarantor exist under this Guaranty; Guarantor waives any and all rights of indemnification, reimbursement, subrogation or contribution which Guarantor may otherwise have now or hereafter as a matter of law against Borrower.

8. Obligations Absolute; No Impairment; Rights Cumulative. The liabilities and obligations of Guarantor hereunder shall be absolute and unconditional irrespective of: (i) any lack of validity or enforceability of the Indebtedness or any other Loan Document; (ii) the insolvency of, or the voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization, or other similar proceedings affecting Borrower, Guarantor, any other guarantor of the Indebtedness, or any assets owned by the aforementioned persons or entities; or (iii) any other circumstance or claim which otherwise might constitute a defense available to, or a discharge of, Borrower with respect to its liabilities and obligations under the Loan Documents, or of Guarantor with respect to this Guaranty. No invalidity, irregularity or unenforceability of all or any part of any liabilities and obligations of Borrower or the impairment or loss of any security therefor, whether caused by any actions or inactions of Holder, or otherwise, shall affect, impair or be a defense to this Guaranty. All rights, powers and remedies afforded to Holder by reason of this Guaranty are separate and cumulative remedies, and no one of such remedies whether or not exercised by Holder shall be deemed to exclude any of the other remedies available to Holder nor prejudice the availability of any other legal or equitable remedy which Holder may have with respect to the Indebtedness.

**9. COMMERCIAL TRANSACTION. GUARANTOR ACKNOWLEDGES THAT THIS GUARANTY AND EACH TRANSACTION RELATED TO IT IS A "COMMERCIAL TRANSACTION" WITHIN THE MEANING OF CHAPTER 903A OF THE CONNECTICUT GENERAL STATUTES, AS AMENDED. GUARANTOR WAIVES ANY RIGHT WHICH THEY MIGHT HAVE TO A NOTICE AND A HEARING OR A PRIOR COURT ORDER, UNDER SAID CHAPTER 903A OR AS OTHERWISE PROVIDED UNDER ANY APPLICABLE FEDERAL OR STATE LAW, IN THE**



**EXHIBIT B**

**EVENT HOLDER SEEKS ANY PREJUDGMENT REMEDY IN CONNECTION WITH THIS GUARANTY.**

10. Joint and Several Liability; Successors and Assigns; Counterparts. The liability of Guarantor under this Guaranty shall be joint and several with that of each and every other guarantor under any other Commercial Guaranty executed in connection with the Loan. This Guaranty shall inure to the benefit of Holder, and its successors and assigns, and it shall be binding upon Guarantor and the executors, administrators, heirs, successors, and assigns, of Guarantor. This Guaranty may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Guaranty may be detached from any counterpart of this Guaranty without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Guaranty identical in form hereto but having attached to it one or more additional signature pages.

11. Governing Law. This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of Connecticut and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state without regard to conflicts of laws considerations; and this Guaranty shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of Connecticut. The undersigned agrees to submit to personal jurisdiction in the State of Connecticut in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in Connecticut and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

*[Remainder of page intentionally left blank]*

**EXHIBIT B**

IN WITNESS WHEREOF, the undersigned have executed this Commercial Guaranty on _February_ ___22___, 2022.

Brandon D. Mendenhall

_____

Brandon D. Mendenhall

STATE OF __Calif__            )
                             )ss. _____
COUNTY OF __San Bernardino__  )

On the __22nd__ day of __February__, in the year 2022, before me, the undersigned, a Notary Public in and for said State, personally appeared Brandon D. Mendenhall, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission #
My Comm. Expires Dec 15, 2023

**EXHIBIT B**

**CALIFORNIA ACKNOWLEDGMENT**                                        CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Bernardino_ }

On _2/22/22_ before me, _Caroline H. Gutierrez-Jackson_,
　　　　Date　　　　　　　　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared _Brandon Mendenhall_
　　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission ▓▓▓▓
My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
Place Notary Seal and/or Stamp Above            Signature of Notary Public

———————————————— OPTIONAL ————————————————

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Guaranty_

Document Date: _2/22/22_　　　　　　　　　　　　Number of Pages: _4_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____
_RAD Diversified REIT Inc._

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2018 National Notary Association

**EXHIBIT B**



*Filed and Attested by the Office of Judicial Records 15 DEC 2025 09:41 am B MERCEDES*

**IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA**

J.P. Morgan Mortgage Trust 2023-DSC1 c/o Citibank, N.A. as Delaware Trustee,

    Plaintiff,

       vs.

RAD Diversified Reit Inc.

    Defendant.

CIVIL DIVISION

NO.: 250902146

**PRAECIPE FOR ENTRY OF JUDGMENT BY DEFAULT (MORTGAGE FORECLOSURE)**

FILED ON BEHALF OF:

J.P. Morgan Mortgage Trust 2023-DSC1 c/o Citibank, N.A. as Delaware Trustee, Plaintiff

COUNSEL OF RECORD FOR THIS PARTY:

MDK LEGAL
Cristina L. Connor, Esquire – PA ID # 318389
Meredith H. Wooters, Esquire (307207)
Kimberly J. Hong, Esquire (74950)
Michael E. Carleton, Esquire (203009)
Katherine M. Wolf, Esquire (314307)
Ed E. Qaqish, Esquire (309463)

P. O. Box 165028
Columbus, OH  43216-5028
614-220-5611
Atty File No.: 25-003828

25-003828_FJH

E42

Case ID: 250902146

**EXHIBIT C**

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY, PENNSYLVANIA**

| | |
|---|---|
| J.P. Morgan Mortgage Trust 2023-DSC1 c/o Citibank, N.A. as Delaware Trustee | CIVIL DIVISION |
| Plaintiff, | Docket No.: 250902146 |
| vs. | |
| RAD Diversified Reit Inc. | |
| Defendant. | |

**PRAECIPE FOR ENTRY OF JUDGMENT BY DEFAULT**
**(MORTGAGE FORECLOSURE)**

TO: PROTHONOTARY

Please enter in rem default judgment in favor of the Plaintiff against Defendant RAD Diversified Reit Inc. due to the failure to respond to the Complaint within the time prescribed by the Rules of Civil Procedure for foreclosure and judicial sale of the Property and assess in rem damages as set forth in the Complaint, against RAD Diversified Reit Inc., in the amount of $168,567.82, plus interest at the rate of 4.6625% from October 16, 2025 to the date of judgment and then at the statutory rate of 6% per annum from the date of judgment and for foreclosure and sale of the mortgaged premises.

| I hereby certify that the defendant's last known address is: | 10808 Foothill Boulevard 160-347 Rancho Cucamonga, CA  91730 |
|---|---|

25-003828_FJH

E42

Case ID: 250902146

**EXHIBIT C**

I hereby certify that notice has been given in accordance with Rule 237.1, a copy is attached hereto.

/s/ Cristina L. Connor
Cristina L. Connor, Esquire (318389)
Meredith H. Wooters, Esquire (307207)
Kimberly J. Hong, Esquire (74950)
Michael E. Carleton, Esquire (203009)
Katherine M. Wolf, Esquire (314307)
Ed E. Qaqish, Esquire (309463)
MDK Legal
P. O. Box 165028
Columbus, OH  43216-5028
Telephone:  614-220-5611
Fax:  614-220-5613
Email:  CLConnor@mdklegal.com
Attorney for Plaintiff

DAMAGES ARE HEREBY ASSESSED AS INDICATED

Date_____          _____
                                           Prothonotary

25-003828_FJH

Case ID: 250902146

**EXHIBIT C**

## CERTIFICATION

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

/s/ Cristina L. Connor
Cristina L. Connor, Esquire (318389)
Meredith H. Wooters, Esquire (307207)
Kimberly J. Hong, Esquire (74950)
Michael E. Carleton, Esquire (203009)
Katherine M. Wolf, Esquire (314307)
Ed E. Qaqish, Esquire (309463)
MDK Legal
P. O. Box 165028
Columbus, OH  43216-5028
Telephone:  614-220-5611
Fax:  614-220-5613
Email:  CLConnor@mdklegal.com
Attorney for Plaintiff

25-003828_FJH

**EXHIBIT C**

## IN THE COURT OF COMMON PLEAS
## PHILADELPHIA COUNTY, PENNSYLVANIA

J.P. Morgan Mortgage Trust 2023-DSC1 c/o
Citibank, N.A. as Delaware Trustee
75 Beattie Place
Suite 300
Greenville, South Carolina  29601

      Plaintiff,

vs.

RAD Diversified Reit Inc.

      Defendant(s).

CIVIL DIVISION

Docket No.: 250902146

## IMPORTANT NOTICE

TO:  RAD Diversified Reit Inc., 3840 N 18th Street, Philadelphia, PA 19140

DATE OF NOTICE:  December _____2_____, 2025

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILE IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

### NOTICE TO DEFEND & LAWYER REFERRAL SERVICE

Lawyer Referral and Information Service

**Philadelphia Bar Association**
**1101 Market Street, 11th Floor**
**Philadelphia, PA 19107**
**(215) 238-6333**

Lawyer Referral and Information Service

**Philadelphia Bar Association**
**1101 Market Street, 10th Floor**
**Philadelphia, PA 19107**
**(215) 238-6333**

25-003828_EMB

EJL

Case ID: 250902146

**EXHIBIT C**

TO: RAD Diversified Reit Inc., 3840 N 18th Street, Philadelphia, PA 19140

FECHA DEL AVISO: December __2__, 2025

USTED ESTÁ EN MORA PORQUE HA FALLADO EN PRESENTAR UNA APARIENCIA PERSONAL POR ESCRITO O A TRAVES DE UN ABOGADO Y HA FALLADO DE PRESENTAR CON LA CORTE SUS DEFENSAS U OBJECIONES A LAS DEMANDAS ESTABLECIDAS CONTRA USTED. A MENOS QUE ACTÚE DENTRO DE DIEZ DÍAS DESDE LA FECHA DE ESTE AVISO, UN JUICIO PUEDE ENTRAR CONTRA USTED SIN UNA AUDIENCIA Y USTED PUEDE PERDER SU PROPIEDAD U OTROS DERECHOS IMPORTANTES.

DEBERÍA LLEVAR ESTA AVISO AS A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE UN ABOGADO, VAYA O LLAME A LA OFICINA PROVEIDA ABAJO. ESTA OFICINA LE PUEDE DAR INFORMACIÓN PARA CONTRATAR UN ABOGADO.

SI USTED NO PUEDE PAGAR PARA CONTRATAR A UN ABOGADO, ESTA OFICINA LE PUEDE DAR INFORMACIÓN SOBRE LAS AGENCIAS QUE PUEDEN OFRECER SERVICIOS LEGALES A UNA CUOTA REDUCIDA O SIN UNA CUOTA PARA LAS PERSONAS QUE QUALIFICAN.

**NOTICE TO DEFEND & LAWYER REFERRAL SERVICE**

| **Lawyer Referral and Information Service** | **Lawyer Referral and Information Service** |
|---|---|
| **Philadelphia Bar Association**<br>**1101 Market Street, 11th Floor**<br>**Philadelphia, PA 19107**<br>**(215) 238-6333** | **Philadelphia Bar Association**<br>**1101 Market Street, 10th Floor**<br>**Philadelphia, PA 19107**<br>**(215) 238-6333** |

/s/ Katherine M. Wolf

Cristina L. Connor, Esquire (318389)
Meredith H. Wooters, Esquire (307207)
Kimberly J. Hong, Esquire (74950)
Michael E. Carleton, Esquire (203009)
Katherine M. Wolf, Esquire (314307)
Ed E. Qaqish, Esquire (309463)
MDK Legal
P. O. Box 165028
Columbus, OH  43216-5028
Telephone:  614-220-5611
Fax:  614-220-5613
Email:  CLConnor@mdklegal.com
Attorney for Plaintiff

25-003828_EMB

Case ID: 250902146

**EXHIBIT C**

## IN THE COURT OF COMMON PLEAS
## PHILADELPHIA COUNTY, PENNSYLVANIA

J.P. Morgan Mortgage Trust 2023-DSC1 c/o
Citibank, N.A. as Delaware Trustee
75 Beattie Place
Suite 300
Greenville, South Carolina  29601

     Plaintiff,

vs.

RAD Diversified Reit Inc.

     Defendant(s).

CIVIL DIVISION

Docket No.: 250902146

## IMPORTANT NOTICE

TO:  RAD Diversified Reit Inc., 10808 Foothill Boulevard 160-347, Rancho Cucamonga, CA 91730

DATE OF NOTICE:  December ___2___, 2025

YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILE IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

### NOTICE TO DEFEND & LAWYER REFERRAL SERVICE

**Lawyer Referral and Information Service**

**Philadelphia Bar Association**
**1101 Market Street, 11th Floor**
**Philadelphia, PA 19107**
**(215) 238-6333**

**Lawyer Referral and Information Service**

**Philadelphia Bar Association**
**1101 Market Street, 10th Floor**
**Philadelphia, PA 19107**
**(215) 238-6333**

25-003828_EMB

Case ID: 250902146

**EXHIBIT C**

TO:  RAD Diversified Reit Inc., 10808 Foothill Boulevard 160-347, Rancho Cucamonga, CA 91730

FECHA DEL AVISO:  December ____2____, 2025

USTED ESTÁ EN MORA PORQUE HA FALLADO EN PRESENTAR UNA APARIENCIA PERSONAL POR ESCRITO O A TRAVES DE UN ABOGADO Y HA FALLADO DE PRESENTAR CON LA CORTE SUS DEFENSAS U OBJECIONES A LAS DEMANDAS ESTABLECIDAS CONTRA USTED.  A MENOS QUE ACTÚE DENTRO DE DIEZ DÍAS DESDE LA FECHA DE ESTE AVISO, UN JUCIO PUEDE ENTRAR CONTRA USTED SIN UNA AUDIENCIA Y USTED PUEDE PERDER SU PROPIEDAD U OTROS DERECHOS IMPORTANTES.

DEBERÍA LLEVAR ESTA AVISO AS A SU ABOGADO INMEDIATAMENTE.  SI USTED NO TIENE UN ABOGADO, VAYA O LLAME A LA OFICINA PROVEIDA ABAJO.  ESTA OFICINA LE PUEDE DAR INFORMACIÓN PARA CONTRATAR UN ABOGADO.

SI USTED NO PUEDE PAGAR PARA CONTRATAR A UN ABOGADO, ESTA OFICINA LE PUEDE DAR INFORMACIÓN SOBRE LAS AGENCIAS QUE PUEDEN OFRECER SERVICIOS LEGALES A UNA CUOTA REDUCIDA O SIN UNA CUOTA PARA LAS PERSONAS QUE QUALIFICAN.

**NOTICE TO DEFEND & LAWYER REFERRAL SERVICE**

| **Lawyer Referral and Information Service** | *Lawyer Referral and Information Service* |
|---|---|
| **Philadelphia Bar Association** <br>**1101 Market Street, 11th Floor** <br>**Philadelphia, PA 19107** <br>**(215) 238-6333** | **Philadelphia Bar Association** <br>**1101 Market Street, 10th Floor** <br>**Philadelphia, PA 19107** <br>**(215) 238-6333** |

/s/ Katherine M. Wolf

Cristina L. Connor, Esquire (318389)
Meredith H. Wooters, Esquire (307207)
Kimberly J. Hong, Esquire (74950)
Michael E. Carleton, Esquire (203009)
Katherine M. Wolf, Esquire (314307)
Ed E. Qaqish, Esquire (309463)
MDK Legal
P. O. Box 165028
Columbus, OH  43216-5028
Telephone:  614-220-5611
Fax:  614-220-5613
Email:  CLConnor@mdklegal.com
Attorney for Plaintiff

25-003828_EMB

Case ID: 250902146

**EXHIBIT C**

## IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY, PENNSYLVANIA

J.P. Morgan Mortgage Trust 2023-DSC1 c/o
Citibank. N.A. as Delaware Trustee

                             Plaintiff(s)

VS.

RAD Diversified Reit Inc

                          Defendant(s)

Court No. _____

Filed and Attested by the
Office of Judicial Records
20 NOV 2025 01:00 pm
C. SMITH

### AFFIDAVIT OF SPECIAL PROCESS SERVER

I, R. HEADCOCK _____, being first duly sworn on oath depose and state as follows:
I am over the age of 18, not a party to this action, and an employee or agent of Firefly Legal, Inc., a licensed private detective agency, license

Type of Process:   Important Notice, Defendant's Certification That Premises are Residential and Owner Occupied and Request for Conciliation Conference, Civil Cover Sheet, Notice to Defend, and Civil Action - In Rem Complaint in Mortgage Foreclosure

Defendant to be served:   Rad Diversified Reit Inc.

I SERVED/NON-SERVED the within named defendant on: 11-6-2025 @ 11:41   AM/PM

ADDRESS WHERE ATTEMPTED OR SERVED:   10808 Foothill Boulevard 160-347
Rancho Cucamonga, CA 91730

_____ INDIVIDUAL SERVICE by delivering to the within named defendant a copy of this process personally.  The defendant confirmed that she/he resides at the above address.

_____ SUBSTITUTE SERVICE by leaving a copy of this process at his/her usual place of abode with: _____.
(Relationship): _____, a family member or person residing therein who is the age of 18 years or upwards confirmed the defendant resides at the above address and informed that person of the contents thereof.

✓ CORPORATE OR GOVERNMENT SERVICE by leaving a copy of this process with INTAKE CLERK . (Title)
DANNY SMITH . a person authorized to accept service and informed that person of the contents thereof.

_____ POSTED

_____ NON-SERVICE for the reason that after diligent investigation found

_____

MILITARY _____

Additional Comments

_____

I certify that I am a United States citizen, over the age of 18 and not a party to, nor otherwise interested in the above action.

Subscribed and sworn before me on 11/14/2025

_____
Notary Public

_____
Signature of Process Server

R. HEADCOCK
Printed Name of Process Server

**EXHIBIT C**

Case ID: 250902146

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY, PENNSYLVANIA**

| | |
|---|---|
| J.P. Morgan Mortgage Trust 2023-DSC1 c/o Citibank, N.A. as Delaware Trustee<br><br>     Plaintiff,<br><br>vs.<br><br>RAD Diversified Reit Inc.<br><br>     Defendant. | CIVIL DIVISION<br><br>Docket No.: 250902146 |

**NOTICE OF ORDER, DECREE OR JUDGMENT**

TO:    RAD Diversified Reit Inc.
       10808 Foothill Boulevard 160-347
       Rancho Cucamonga, CA  91730

    [ ]    Plaintiff
    [✓]    Defendant
    [ ]    Additional Defendant

You are hereby notified that an Order, Decree or Judgment was entered in the above captioned proceeding on _____.

    [ ]    A copy of the Order or Decree is enclosed,
    or
    [✓]    An in rem foreclosure judgment against RAD Diversified Reit Inc. and assessed against RAD Diversified Reit Inc. as follows: $168,567.82 plus costs.

                                 Prothonotary

25-003828_FJH

E73

Case ID: 250902146

**EXHIBIT C**

Case ID: 250902146

**IN THE COURT OF COMMON PLEAS**
**PHILADELPHIA COUNTY, PENNSYLVANIA**

| | |
|---|---|
| J.P. Morgan Mortgage Trust 2023-DSC1 c/o Citibank, N.A. as Delaware Trustee | CIVIL DIVISION |
| Plaintiff, | Docket No.: 250902146 |
| vs. | |
| RAD Diversified Reit Inc. | |
| Defendant. | |

**NOTICE OF ORDER, DECREE OR JUDGMENT**

TO:   RAD Diversified Reit Inc.
3840 N 18th Street
Philadelphia, PA 19140

[  ]   Plaintiff
[�v]   Defendant
[  ]   Additional Defendant

You are hereby notified that an Order, Decree or Judgment was entered in the above captioned proceeding on _____.

[  ]   A copy of the Order or Decree is enclosed,
or
[�v]   An in rem foreclosure judgment against RAD Diversified Reit Inc. and assessed against RAD Diversified Reit Inc. as follows: $168,567.82 plus costs.

_____
Prothonotary

25-003828_FJH

E73

**EXHIBIT C**

**GUARDIAN**
ASSET MANAGEMENT

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

## ORDER DETAILS

| | | | |
|---|---|---|---|
| Client | Shellpoint | Mortgagor's Name | RAD DIVERSIFIED REIT INC |
| Client Loan Number | ███ | Order Number | ███ |
| Tracking #1 | ███ | Property ID | |
| Broker Name | Philip Green | License Number | — |
| Broker Phone | 215-410-4864 | eSignature* | (*Signature on File) |
| Broker Company | Green Group Real Estate LLC | Date Signed | 01/26/2026 |
| Broker Address | 3430 Philadelphia Pike Unit 695 Claymont DE, 19703 | Subject Address | 3840 N 18TH ST PHILADELPHIA PA, 19140 |

## SUBJECT FRONT / AERIAL / NEIGHBORHOOD VIEW





## PRICE ESTIMATE

| | | | |
|---|---|---|---|
| AS-IS (60–90 Days) | $90,000 | Repaired (60–90 Days) | $90,000 |
| AS-IS (Quick Sale) | $85,000 | Repaired (Quick Sale) | $85,000 |
| Estimated Land Value | $30,960 | Total Repair Costs | $0.00 |
| PSF As-Is (Price per SqFt) | $46.08 | PSF Repaired (Price per SqFt) | $46.08 |

## GENERAL INFORMATION

| | | | |
|---|---|---|---|
| County | PHILADELPHIA | Overall Condition | Average |
| Development or Neighborhood Name | philadelphia | Curb Appeal | Average |
| Zoning | Residential | Landscaping Condition | Average |
| Legal Description | 300'N BUTLER ST | | |
| Homeowners Association | No | Secured? | Yes |
| HOA Name | | Occupancy Status | Occupied |
| HOA Mgmt. Co. Name | | If "Occupied", by whom? | tenants |
| HOA Phone | | Subject conforms to neighborhood? | Yes |
| HOA Dues | | Are any Code Violations Posted? | No |
| HOA Dues Frequency | | Is the property subject to any rent controls? | No |
| HOA Dues Include | | Vacant Property Registration Required? | No |
| Environmental Hazards | None | Site Influences | none |

## TAX DATA, SALES & LISTING HISTORY

| | | | |
|---|---|---|---|
| Tax Assessed Value Date | 03/30/2025 | Last Known Sale Date | 02/22/2022 |
| Tax Assessed Value | 154800 | Last Known Sale Price | 1 |
| Current Annual Real Estate Taxes | 2166.89 | Taxes Delinquent? | No |
| Assessor's Parcel Number (APN) | ███ | Amount Delinquent | |
| Currently Listed for Sale (In MLS or FSBO)? | No | | |
| Agent Name | | Original List Price | |
| Agent Company | | Original List Date | |
| Agent Phone | | Current List Price | |
| DOM | | Current List Date | |
| Transaction Type | | Dwelling Access | |
| Listing Status | | MLS Number | |

**EXHIBIT D**

**GUARDIAN** ASSET MANAGEMENT

## NEIGHBORHOOD & MARKET INFORMATION

| | | | |
|---|---|---|---|
| Density | Urban | Prior 12 Month Home Values Have | Stable |
| Predominant Occupancy | Investor | At a Rate of | 41 |
| Neighborhood Values Low | 102,300 | Housing Supply of Similar Homes | In-Balance |
| Neighborhood Values High | 9,052,025 | Typical Marketing Time | <60 Days |
| Predominant Value | 167,000 | Vandalism Present in Area | No |
| Number of Homes in Direct Competition | 149 | Average DOM Active Comps | 2 |
| Number of Similar Homes Sold in Last 6 Months | 241 | Average DOM Sold Comps | 36 |
| Neighborhood Comments | none | | |



## AREA SALES DATA

| Inventory Analysis | 7–12 mo | 4–6 mo | 0–3 mo | % | Trend |
|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 212 | 104 | 96 | -8 % | Stable |
| Absorption Rate (Total Sales / Months) | 36 | 35 | 32 | -9 % | Descreasing |
| Total # of Comparable Active Listings | 148 | 102 | 149 | 46 % | Increasing |
| Months of Housing Supply (Listings / Absorption Rate) | 5 | 3 | 5 | 67 % | Increasing |
| **Median Sale & List Price, DOM, List to Sales Ratio** | | | | | |
| Median Comparable Sale Price | 130,000 | 101,500 | 115,000 | 13 % | Increasing |
| Median Comparable Sales DOM | 35 | 50 | 34 | -32 % | Descreasing |
| Median Comparable List Price | 134,900 | 150,000 | 127,900 | -15 % | Descreasing |
| Median Comparable Listings DOM | 18 | 2 | 2 | 0 % | Stable |
| Median Sale Price as % of List Price | 100 | 100 | 100 | 0 % | Stable |

## DEFERRED MAINTENANCE

Deferred Maintenance Present or Repairs Needed?  No

| # | Description | Cost | Comments |
|---|---|---|---|
| | | | |
| | Total Repair Costs: | $0 | |

Guardian Asset Management

**EXHIBIT D**



Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

GUARDIAN
ASSET MANAGEMENT

BPO Interior 5 day
Inspection Date: 01/25/2026

## COMPARABLE SALES

| Items | Subject | Comparable Sale 1 | | Comparable Sale 2 | | Comparable Sale 3 | |
|---|---|---|---|---|---|---|---|
| Photos | | | | | | | |
| Address | 3840 N 18TH ST | 3720 North Bouvier Street | | 2659 North 17th Street | | 524 East Penn Street | |
| City, State Zip | PHILADELPHIA, PA 19140 | Philadelphia, PA 19140 | | Philadelphia, PA 19132 | | Philadelphia, PA 19144 | |
| Proximity To Subject (Miles) | 0.000 | 0.1 mi | | 1.3 mi | | 1.8 mi | |
| Data Source | MLS | MLS | | MLS | | MLS | |
| Sale Price | 1 | 90,000 | | 195,000 | | 121,800 | |
| Price Per SqFt | $0.00 | $48.03 | | $110.54 | | $71.73 | |
| DOM | 0 | 90 | | 166 | | 13 | |
| List Price At Sale | 100,000 | 150,000 | | 210,000 | | 106,000 | |
| Original List Price | 110,000 | 190,000 | | 285,000 | | 106,000 | |
| Original List Date | 1/1/2000 | 8/12/2025 | | 4/29/2025 | | 10/31/2024 | |
| Property Type | TOWNHOUSE/ROWHOUSE | Townhouse | | Townhouse | | Townhouse | |
| Financing Method | Cash | Other | | Conventional | | Conventional | |
| Transaction Type | Arms Length | Arms Length | | Arms Length | | REO | |
| Owner | Investor | Owner Occupied | | Owner Occupied | | Owner Occupied | |
| Value Adjustments | Description | Description | Adjust | Description | Adjust | Description | Adjust |
| Sale Date | 2022-02-22 | 12/22/2025 | | 12/4/2025 | | 9/30/2025 | |
| Property Style | Contemporary | Contemporary | | Contemporary | | Contemporary | |
| Above Grade SqFt | 1953 | 1874 | | 1764 | | 1698 | |
| # of Units | 1 | 1 | | 1 | | 1 | |
| Lot Size (Acres) | 0.031 Acres | 0.03 Acres | | 0.02 Acres | | 0.03 Acres | |
| Year Built | Age | 1940 | 1915 | 111 | | 1915 | 111 | | 1900 | 126 | |
| Condition | Average | Average | | Good | | Average | |
| Total # Rooms | 8 | 8 | | 8 | | 8 | |
| Bed | Full Bath | Half Bath | 5 | 2 | 1 | 5 | 2 | 0 | | 5 | 2 | 0 | | 5 | 1 | 1 | |
| Seller Concessions | | 0 | | 0 | | 0 | |
| Basement | Yes | No | 0 | Yes | | Yes | |
| Basement Type | Full | | | Full | | Full | |
| Basement Total SqFt | 925 | | | 636 | | 802 | |
| Basement Finished SqFt | | | | 100 | | | |
| Garage Type | None | None | | None | | None | |
| Garage Spaces | 0 | 0 | | 0 | | 0 | |
| Pool / Spa | No | No | | No | | No | |
| View | Residential | Residential | | Residential | | Residential | |
| Adjustment Total | | | 0 | | 0 | | 0 |
| Adjusted Price | | | 90,000 | | 195,000 | | 121,800 |

## COMPARABLE COMMENTS & ADJUSTMENT JUSTIFICATION

### Comparable Sale 1

inferior GLA, equal lot size, equal condition, inferior age,

### Comparable Sale 2

inferior GLA, inferior lot size, inferior age, superior condition

### Comparable Sale 3

inferior GLA, equal lot size, inferior age, equal condition,

Guardian Asset Management

# EXHIBIT D

**GUARDIAN**
ASSET MANAGEMENT

Subject Property
3848 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

## COMPARABLE LISTINGS



| Items | Subject | Comparable Listing 1 | | Comparable Listing 2 | | Comparable Listing 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3840 N 18TH ST | 5634 Morton Street | | 2853 North 4th Street | | 2515 North 4th Street | |
| City, State Zip | PHILADELPHIA, PA 19140 | Philadelphia, PA 19144 | | Philadelphia, PA 19133 | | Philadelphia, PA 19133 | |
| Proximity To Subject (Miles) | 0.000 | 2.0 mi | | 1.6 mi | | 1.9 mi | |
| Data Source | MLS | MLS | | MLS | | MLS | |
| Current List Price | 0 | 159,900 | | 110,000 | | 189,900 | |
| Price Per SqFt | $0.00 | $84.78 | | $62.36 | | $116.15 | |
| MLS Status | | Pending | | Active | | Active | |
| DOM | 0 | 152 | | 1334 | | 84 | |
| Original List Price | 110,000 | 169,900 | | 175,000 | | 189,900 | |
| Original List Date | 1/1/2000 | 8/28/2025 | | 6/3/2022 | | 11/5/2025 | |
| Property Type | TOWNHOUSE/ROWHOUSE | Townhouse | | Townhouse | | Townhouse | |
| Transaction Type | Arms Length | Arms Length | | Arms Length | | Arms Length | |
| Owner | Investor | Owner Occupied | | Owner Occupied | | Owner Occupied | |
| Value Adjustments | Description | Description | Adjust | Description | Adjust | Description | Adjust |
| List Date | | 8/28/2025 | | 6/3/2022 | | 11/5/2025 | |
| Property Style | Contemporary | Contemporary | | Contemporary | | Contemporary | |
| Above Grade SqFt | 1953 | 1888 | | 1764 | | 1635 | |
| # of Units | 1 | 1 | | 1 | | 11 | |
| Lot Size (Acres) | 0.031 Acres | 0.05 Acres | | 0.02 Acres | | 0.02 Acres | |
| Year Built \| Age | 1940 | 1925 \| 101 | | 1920 \| 106 | | 1920 \| 106 | |
| Condition | Average | Average | | Average | | Good | |
| Total # Rooms | 8 | 9 | | 9 | | 8 | |
| Bed \| Full Bath \| Half Bath | 5\|2\|1 | 6\|1\|1 | | 6\|1\|0 | | 4\|2\|1 | |
| Basement | Yes | Yes | | Yes | | Yes | |
| Basement Type | Full | Full | | Full | | Full | |
| Basement Total SqFt | 925 | 843 | | 636 | | 815 | |
| Basement Finished SqFt | | | | | | 100 | |
| Garage Type | None | None | | None | | None | |
| Garage Spaces | 0 | 0 | | 0 | | 0 | |
| Pool / Spa | No | No | | No | | No | |
| View | Residential | Residential | | Residential | | Residential | |
| Adjustment Total | | | 0 | | 0 | | 0 |
| Adjusted Price | | | 159,900 | | 110,000 | | 189,900 |

## COMPARABLE COMMENTS & ADJUSTMENT JUSTIFICATION

**Comparable Listing 1**

inferior GLA, superior lot size, equal condition, inferior age,

**Comparable Listing 2**

inferior GLA, inferior lot size, inferior age, equal condition

**Comparable Listing 3**

inferior GLA, inferior lot size, superior condition, inferior age,

# EXHIBIT D

**GUARDIAN**
ASSET MANAGEMENT

Subject Property
3840 N 15TH ST
PHILADELPHIA, PA 19140

**BPO Interior 5 day**
Inspection Date: 01/25/2026

## VALUE CONCLUSION

| | | | |
|---|---|---|---|
| As-Is (60–90 Days) | $ 90000 | Repaired (60–90 Days) | $ 90000 |
| As-Is (Quick Sale) | $ 85000 | Repaired (Quick Sale) | $ 85000 |
| | Estimated Land Value | $ 30960 | |

## BROKER ADDENDUM & SUBJECT COMMENTS

Sales approached was used to arrive at the estimated sales price above and this is concluded by reviewing the sales activity of homes with similar style and features in the area. At the time of the exterior inspection the home appeared to be maintained with no noticeable damage on the exterior .

## QUALITY CONTROL REVIEWER COMMENTS

**EXHIBIT D**

**GUARDIAN** ASSET MANAGEMENT

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

## STATE MANDATED DISCLOSURES

**AR** — Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. Pursuant to Ark. Code. Ann. § 17-42-110(d), a broker price opinion or market analysis issued by a real estate licensee shall not contain the terms "market value", "appraised value" or "appraisal".

**DE** — Notwithstanding any language to the contrary contained herein, this Competitive Market Analysis is NOT an appraisal of the market value for property and is not intended to be used for any legal purpose including approving a mortgage loan, modification of a mortgage loan, divorce/property separation, estate settlement, bankruptcy proceedings or any other purpose where real estate value is needed. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.

**ID** — This report is not intended to meet the Uniform Standards of Professional Appraisal Practice. This broker's price opinion is not intended to be an appraisal of the market value of the property, and that if an appraisal is desired, the services of a licensed or certified appraiser should be obtained by a licensee licensed under the Idaho real estate appraisers act, chapter 41 title 54 Idaho Code.

**IL** — This is a broker price opinion/comparative market analysis, not an appraisal of the market value of the real estate, and was prepared by a licensed real estate broker or managing broker who was not acting as a State certified real estate appraiser.

**MD** — This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property.

**ME** — This opinion or appraisal was prepared solely for the client, for the purpose and function stated in this report and is not intended for subsequent use. It was not prepared by a licensed or certified appraiser and may not comply with the appraisal standards of the Uniform Standards of Professional Appraisal Practice.

**MI** — This is a market analysis, not an appraisal and was prepared by a licensed real estate broker or associate broker, not a licensed appraiser.

**MN** — This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.

**MS** — This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. The licensee who prepared this opinion certifies that he/she is covered by errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of the opinion.

**NC** — This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest services of a in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit.

**NE** — This opinion or analysis is not an appraisal. It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property, for lending purposes in a transaction other than a federally related transaction, or for real property tax appeal purposes. This opinion or analysis is not governed by the Real Property Appraiser Act.

**NV** — This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained.

**OR** — If licensee is also licensed by the Appraiser Certification and Licensure Board, the report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. This competitive market analysis or letter opinion is not intended as an appraisal and if an appraisal is desired, the services of a competent professional licensed appraiser should be obtained.

**PA** — This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which require valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose.

**SC** — This market analysis may not be used for the purposes of obtaining financing in a federally related transaction.

**TX** — THIS IS A BROKER PRICE OPINION OR COMPARATIVE MARKET ANALYSIS AND SHOULD NOT BE CONSIDERED AN APPRAISAL OR OPINION OF VALUE. In making any decision that relies upon my work, you should know that I have not followed the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation.

**WA** — This brokers price opinion is not an appraisal as defined in chapter 18.140 RCW and has been prepared by a real estate licensee, licensed under chapter 18.85 RCW, who is not also state-certified or state-licensed as a real estate appraiser under chapter 18.140 RCW.

**WY** — This is an opinion of price and is not a certified appraisal of the market value of the property. If such an appraisal is desired, the service of a certified appraiser must be obtained.

Guardian Asset Management

**EXHIBIT D**

**GUARDIAN** ASSET MANAGEMENT

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

This document is not an appraisal as defined by USPAP (Uniform Standards of Professional Appraisal Practice). It is not to be construed as an appraisal and may not be used as such for any purpose. The intended user of this report is the Client(s) named above and is to be used at the Client(s) sole discretion. This report is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. Any opinion rendered in this report is that of the report preparer and does not necessarily reflect the views and opinions of the company, its owners, affiliates and/or assigns.

All data contained herein is deemed accurate and reliable, but not guaranteed.

## PROXIMITY MAP



| | | Proximity Map | Proximity |
|---|---|---|---|
| Subject | 3840 N 18TH ST | PHILADELPHIA, PA 19140 | |
| Sold Comp 1 | 3720 North Bouvier Street | Philadelphia, PA 19140 | 0.10 |
| Sold Comp 2 | 2659 North 17th Street | Philadelphia, PA 19132 | 1.30 |
| Sold Comp 3 | 524 East Penn Street | Philadelphia, PA 19144 | 1.80 |
| List Comp 1 | 5634 Morton Street | Philadelphia, PA 19144 | 2.00 |
| List Comp 2 | 2853 North 4th Street | Philadelphia, PA 19133 | 1.60 |
| List Comp 3 | 2515 North 4th Street | Philadelphia, PA 19133 | 1.90 |

## SUBJECT AERIAL VIEW

Aerial View
Guardian Asset Management

**EXHIBIT D**

GUARDIAN
ASSET MANAGEMENT

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

**SUBJECT PROPERTY PHOTOGRAPHS**



Front View



Right Side View



Left Side View



Street View



Address Verification

Guardian Asset Management

**EXHIBIT D**

GUARDIAN
ASSET MANAGEMENT

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

**COMPARABLE PROPERTY PHOTOS**



**Comparable Sale 1**
3720 North Bouvier Street
Philadelphia, PA 19140
**Sold for:** $90,000 on 12/22/2025



**Comparable Listing 1**
5634 Morton Street
Philadelphia, PA 19144
**Listed for:** $159,900 on 8/28/2025



**Comparable Sale 2**
2659 North 17th Street
Philadelphia, PA 19132
**Sold for:** $195,000 on 12/4/2025



**Comparable Listing 2**
2853 North 4th Street
Philadelphia, PA 19133
**Listed for:** $110,000 on 6/3/2022



**Comparable Sale 3**
524 East Penn Street
Philadelphia, PA 19144
**Sold for:** $121,800 on 9/30/2025



**Comparable Listing 3**
2515 North 4th Street
Philadelphia, PA 19133
**Listed for:** $189,900 on 11/5/2025

Guardian Asset Management

**EXHIBIT D**

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

## GUARDIAN
ASSET MANAGEMENT

**ADDITIONAL SUBJECT PHOTOS**



Living Room



half bath first floor



Kitchen



Kitchen



Bedroom 1



Bedroom 2

Guardian Asset Management

**EXHIBIT D**

GUARDIAN
ASSET MANAGEMENT

Subject Property
3840 N 18TH ST
PHILADELPHIA, PA 19140

BPO Interior 5 day
Inspection Date: 01/25/2026

**ADDITIONAL SUBJECT PHOTOS**



Full bath 2nd floor



Master bedroom 2nd Floor



bedroom 4 3rd floor



Full bathroom 3rd Floor



bedroom 5 3rd floor



Street View

**EXHIBIT D**