UNITED STATES BANKRUPTCY
COURT MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Chapter 11

RAD DIVERSIFIED REIT, INC.;                               Case No. 8:26-bk-01636-CPM

                                                          *Jointly Administered with*

RAD Diversified OZ Fund, LP;                              Case No. 8:26-bk-01637-CPM
DHI Fund, LLC;                                            Case No. 8:26-bk-01638-CPM
DHI Holdings, LP; and                                     Case No. 8:26-bk-01639-CPM
DDH Fund, LLC                                             Case No. 8:26-bk-01640-CPM

          Debtors.
                                                    /

## U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II'S MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE  PROTECTION PAYMENTS

Secured Creditor, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II, by and through its undersigned counsel, respectfully moves this Court for relief from the automatic stay or, in the alternative, for adequate protection payments and in support of its Motion states as follows:

1.      U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II (together with any successor or assign, "Movant") hereby moves this Court, pursuant to 11 U.S.C. § 361(1); for an Order directing the Debtor to make adequate protection payments, or, in the alternative, to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor`s premises located at 5536

Bloyd Street, Philadelphia Pa. the "Property").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. "1334(b) and 157(a) and 362(d) of Title 11, United States Code (hereinafter referred to as the "Code"). Furthermore, this is a core proceeding pursuant to 28 U.S.C. '157(b)(2)(G).

3.      Movant is a secured creditor of the Debtor pursuant to a Note executed by RAD DIVERSIFIED REIT, INC. (the "Debtor") on May 26, 2022 whereby the Debtor promised to  repay $104,000.00 plus interest to Movant's predecessor in interest (the "Note"). To secure the repayment of the Note, the Debtor executed a Mortgage (the "Mortgage," Note and Mortgage, collectively, the "Loan") in favor of Movant's predecessor in interest, which was recorded on June 7, 2022, in the Office of the Clerk of Philadelphia County in Official Records with Doc Id 54052556 (the "Mortgage") encumbering the Property. The Loan was ultimately assigned to Movant by an assignment of mortgage (the "Assignment of Mortgage"). Copies of the Note, Mortgage, and Assignments of Mortgage are attached hereto as **Exhibit A**.

4.      Prior to the Bankruptcy filing, the loan was subject of a Mortgage Foreclosure Action under Docket No. 250802081 filed in the Court of Common Pleas of Philadelphia County, Pennsylvania that resulted in an In-Rem Judgment for Failure to Answer and Assessment of Damages  in the amount of $158,099.20. A copy of the Judgment is attached hereto as **Exhibit B.**

5.      A Petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on March 1, 2026.

6.      The Debtor has failed to make current mortgage payments due under the terms of the Loan. As of the filing date of the Debtor's Petition, the loan remains contractually due for June 1, 2024, with total pre-petition debt in the approximate amount of $161,670.11 and

approximate pre-petition arrears in the amount of $63,357.48.

7.     Additionally, Debtor has failed to make post-petition payments beginning with the April 1, 2026 payment.

8.     Further, Movant has been paying the taxes and lender force placed insurance policy on the Property.

9.     As of the filing date of this instant Bankruptcy Petition, the monthly post-petition payment is $1,546.16. Movant requests that Debtor be required to remain current with all post-petition payments during the pendency of this Bankruptcy case.

10.     The estimated market value of the Property is $130,000.00.  The basis for such valuation is the appraisal attached hereto as Exhibit "C".

11.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,350.00 in legal fees and $199.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

**Legal Argument**

12.     Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); In re Stewart, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection per se. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. See In re Senior Care Properties, Inc., 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has

generally been held to be insufficient. In re Big Dog II, LLC, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

13. Here, the value of the Property is $130,000.00 (See Exhibit C). Movant's lien, as of the petition date, totals $161,670.11. There is no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

14. Moreover, relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a movant under 11 U.S.C. § 362(d)(2)(A) establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. §362(g)(2); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the property is essential for an effective reorganization that is in prospect. This means that there must be a reasonable possibility of a successful reorganization within a reasonable amount of time. Timbers, 484 U.S. at 375.

15. Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. The Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage through a Plan. Thus, Debtor failed to meet its burden under 11 U.S.C. § 362(g)(2).

16. Further, relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." See In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008)

(citing, In re Dixie Broad., Inc. 871 F.2d 1023, 1026 (11th Cir. 1989); See also, e.g., In re Jefferson County, Alabama, 484 B.R. 427 (Bankr. N.D. Ala. 2012).

17.     A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. In re Harlan, 783 F.2d 839 (9th Cir. 1986); In re Ellis, 60 B.R. 432 (B.A.P.)

18.     Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. In re Harlan, 783 F.2d 839 (9th Cir. 1986).

19.     Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). In re Three Tuns, Inc., 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

20.     Pursuant to 11 U.S.C. §361, Movant is entitled to receive full monthly payments for adequate protection payments.  Debtor should also be required to produce immediate proof of paid hazard insurance listing Movant as loss payee.

21.     Additionally, 11 U.S.C. §362(d)(1) of the Bankruptcy Code provides that a court shall, upon motion, grant relief from that automatic stay for cause, which includes the lack of adequate protection of an interest in property, of the moving party.

22.   11 U.S.C. § 363(e) provides, that, "at any time, on request of an entity that has an interest in property used… the court, with or without a hearing, shall prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

23.   Accordingly, Movant is entitled to adequate protection because the Debtor is using the collateral of Movant, a secured creditor. *See In re Harold & Williams Development Co.,* 163 B.R. 77, 78 (Bankr. E.D. Va. 1994) ("Section 363(e) of the Bankruptcy Code authorizes the court to condition sale, use or lease of property as is necessary to provide adequate protection of an entity's interest."); *see also Ford Motor Credit Co. v. JKJ Chevrolet, Inc. (In re JKJ Chevrolet, Inc.),* 117 F.3d 1413 (4th Cir. 1997); *Travelers Life Insurance and Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.),* 98 B.R. 170, 173 (S.D.N.Y. 1989); *In re 354 East 66th Street Realty Corp.,* 177 B.R. 776, 781 (Bankr. E.D.N.Y. 1995).

24.   When a creditor's interest is not adequately protected, an award of adequate protection is mandatory. *See* 11 U.S.C. § 363(e) ("the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection") (emphasis added); *see also Metromedia Fiber Network SERVs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.),* 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary -- it states that the court 'shall' grant the relief specified, at any time, on the request of a secured entity."); *In re Waste Conversion Techs., Inc.,* 205 B.R. 1004, 1007 (D. Conn. 1997) (adequate protection is "recognized as a fundamental right afforded secured creditors in bankruptcy proceedings.").

25.   Movant respectfully requests that Debtor be ordered to immediately make full monthly mortgage payments, effective with the first post-petition payment due April 1, 2026, to protect against further erosion of the value of the Property; and for Debtor produce proof of paid

hazard insurance listing Movant as loss payee within 14 days of the court's order.  Alternatively, if the Debtor cannot adequately protect Secured Creditor's interest in the Property, relief from stay should be granted so that Secured Creditor can exercise its in rem rights in the Property.

26.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests an Order granting relief from the automatic stay or in the alternative granting adequate protection payment in the full monthly amount of contractual monthly payment;  for proof of paid hazard insurance;  and for such other, further and different relief as to this Court may deem just, proper, and equitable, including its fees and costs for bringing this motion.

 Rubin Lublin, LLC
Attorney for Movant
2313 W. Violet St.
Tampa, Florida 33603
Bankruptcy@rlselaw.com
Telephone No.: (813) 656-8801

/s/_Amy M. Kiser
Amy M. Kiser, Esq.
Florida Bar# 46196

EXHIBIT A

Lender Loan Number:

**ORIGINAL**

## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **RAD DIVERSIFIED REIT, INC.** (the "Borrower"), a Maryland corporation with a principal place of business of 7 St. Paul Street, Suite 820, Baltimore, MD 21202 promises to pay to the order of **Commercial Lender LLC**, a Delaware limited liability company with a mailing address of PO Box 3801, Vernon, CT 06066, or its assigns (collectively, the "Holder"), the principal sum of **One Hundred Four Thousand Dollars and No Cents ($104,000.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 6.5286% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

A. Leasing Covenant. By September 1st, 2022, Borrower must submit to Holder current, written, arm's-length leases for the following units of the Premises:

| Unit | Minimum Monthly Rent |
|---|---|
| 5536 Bloyd St, Philadelphia, PA 19138 | $1,080.00 |

Should Borrower fail to satisfy the foregoing obligation, the rate of interest will increase by two (2) percentage points. Upon satisfaction of the foregoing condition, the rate of interest will return to 6.5286% per annum.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on June 1, 2052 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on July 1, 2022 and continuing on the first (1st) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from June 1, 2022 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on June 1, 2022, a fixed interest rate equal to the interest rate in effect as of June 1, 2022, and the outstanding principal balance of the Note as of June 1, 2022. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$659.31**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1st) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such



Page 1 of 5

payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal FIVE PERCENT (5.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal FOUR PERCENT (4.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Any failure by Borrower to satisfy a Condition Precedent set forth in the Loan Agreement; (e) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Three Percent (23%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to

be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note"), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Brandon D. Mendenhall (the "Guarantor"); a certain Mortgage, Assignment of Rents, and Security Agreement (the "Security Instrument") granted by RAD DIVERSIFIED REIT, INC., in favor of Commercial Lender LLC, encumbering the real property and improvements at 5536 Bloyd St, Philadelphia, PA 19138.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

**13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT,**

Page 3 of 5

WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

Page 4 of 5

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on __MAY__ __26__, 2022.

RAD DIVERSIFIED REIT, INC.

By: _____
Name: Brandon D. Mendenhall
Title: President

STATE OF __Florida__  )
                       )ss. _____
COUNTY OF __Hillsborough__  )

I certify that on __MAY 26th__, 2022, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_____
Sandra J Roquemore
Notary Public



SANDRA J ROQUEMORE
NOTARY PUBLIC · STATE OF FLORIDA
COMMISSION # HH 131020
My Commission Expires 06/17/2025

Page 5 of 5

Recorded in Philadelphia
06/07/2022 02:01 PM     Page 1 of 6     Rec Fee: $256.75
Receipt#: 22-96176
Records Department     Doc Code: D
State RTT: $1,383.33     Local RTT: $4,534.56

Prepared by and Return to:

Assurance Abstract Corp
7929 Bustleton Avenue
Philadelphia, PA 19152
215-331-4200

File No. AF-12410-F

OPA # 12-2-2343-00

**This Indenture**, made the 2⁴ day of May, 2022,

**Between**

**5546 BLOYD STREET ACQUISITION, LLC (A PA LIMITED LIABILITY COMPANY)**

(hereinafter called the Grantor), of the one part, and

**RAD DIVERSIFIED REIT INC. (A MD CORPORATION)**

(hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantor for and in consideration of the sum of **One Hundred Thirty-Eight Thousand Three Hundred Thirty-Three And 00/100 Dollars ($138,333.00)** lawful money of the United States of America, unto it well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, its successors and/or assigns.

Street Address: **5536 Bloyd Street, Philadelphia, PA 19138**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Southwesterly side of Bloyd Street commencing at the distance of Two hundred seventy-five feet Northwestwardly from the Northwesterly side of Church Lane (late Mill Street) in the 12th (formerly 2nd) Ward of the City of Philadelphia County of Philadelphia and State of Pennsylvania.

CONTAINING in front or breadth on the said Bloyd Street, fourteen feet and extending of that width in length or depth Southwestwardly between lines parallel with the said Church Lane, one hundred feet including on the rear end thereof a certain three feet wide alley leading Northwestwardly and Southeastwardly and communicating at its Northerly and Southerly ends with the two other three feet wide alleys leading Northeastwardly into the said Bloyd Street.

TOGETHER with the free and common use, right, liberty and privilege of the said alleys as and for passageway and watercourses at all times hereafter, forever.

BEING known as No. 5536 Bloyd Street.

Being the same premises which New Decade LLC by Deed dated 7/18/2016 and recorded 8/13/2016 in Philadelphia County as Document No. 53098333 conveyed unto 5546 Bloyd Street Acquisition LLC, in fee.

**Together with** all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said grantor, as well at law as in equity, of, in and to the same.

**To have and to hold** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns, forever.

**And** the said Grantor, for itself, its successors and assigns, does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that it, the said Grantor, and its successors and assigns, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, against it, the said Grantor, and its successors and assigns, will **WARRANT SPECIALLY** and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

2

**In Witness Whereof**, the party of the first part has caused its common and corporate seal to be affixed to these presents by the hand of its Authorized Signatore. Dated the day and year first above written.

_____

[SEAL]

5546 BLOYD STREET ACQUISITION, LLC (A PA LIMITED LIABILITY COMPANY)

By: _____
Travis Robert-Ritter,
Authorized Signatore

State of Florida     } ss
County of Dade

This record was acknowledged before me on May __, 2022 by Travis Robert-Ritter as Authorized Signatore, who represents that he/she is authorized to act on behalf of 5546 Bloyd Street Acquisition, LLC (a PA Limited Liability Company).

_____
Notary Public
My commission expires 12/26/23

The precise residence and the complete post office address of the above-named Grantee is:

10808 Foothill Blvd #160-347
Rancho Cucamonga, CA 91730

_____
On behalf of the Grantee

Notary Public State of Florida
Alicia Novo Varela
My Commission GG 942777
Expires 12/26/2023

File No. **AF-12410-F**

Record and return to:
*Assurance Abstract Corp*
**7929 Bustleton Avenue**
**Philadelphia, PA 19152**

3

# Deed

OPA #12-2-2343-00

5546 Bloyd Street Acquisition, LLC (a PA Limited Liability Company)

TO

RAD Diversified REIT Inc. (a MD Corporation)

Assurance Abstract Corp
7929 Bustleton Avenue
Philadelphia, PA 19152

Unofficial Copy

Unofficial Copy

**pennsylvania**
DEPARTMENT OF REVENUE
(EX) MOD 06-19 (FI)

# REV-183
BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG, PA 17128-0603

1830019105

**REALTY TRANSFER TAX STATEMENT OF VALUE**
COMPLETE EACH SECTION

| RECORDER'S USE ONLY | |
|---|---|
| State Tax Paid: | |
| Book: | Page: |
| Instrument Number: | |
| Date Recorded: | |

| SECTION I | TRANSFER DATA |
|---|---|

Date of Acceptance of Document   05  26  2022

| Grantor(s)/Lessor(s) 5536 Bloyd Street Acquisition, LLC (a PA Limited Liability Company) | Telephone Number 215-804-9751 | Grantee(s)/Lessee(s) RAD Diversified REIT, Inc. (a MD Corporation) | Telephone Number |
|---|---|---|---|
| Mailing Address 50 Biscayne Boulevard, Apt 4604 | | Mailing Address 10808 Foothill Blvd #160-347 | |

| City Miami | State FL | ZIP Code 33132 | City Rancho Cucamonga | State CA | ZIP Code 91730 |
|---|---|---|---|---|---|

| SECTION II | REAL ESTATE LOCATION |
|---|---|

| Street Address 5536 Bloyd Street | City, Township, Borough City of Philadelphia |
|---|---|
| County Philadelphia | School District | Tax Parcel Number 12-2-2343-00 |

| SECTION III | VALUATION DATA |
|---|---|

Was transaction part of an assignment or relocation?  ◯ YES  ◯ NO

| 1. Actual Cash Consideration 138,333.00 | 2. Other Consideration + | 3. Total Consideration = 138,333.00 |
|---|---|---|
| 4. County Assessed Value 20,800.00 | 5. Common Level Ratio Factor X 1.07 | 6. Computed Value = 22,256.00 |

| SECTION IV | EXEMPTION DATA - Refer to instructions for exemption status. |
|---|---|

| 1a. Amount of Exemption Claimed $ | 1b. Percentage of Grantor's Interest in Real Estate % | 1c. Percentage of Grantor's Interest Conveyed % |
|---|---|---|

2. Fill in the Appropriate Oval Below for Exemption Claimed.

◯  Will or intestate succession.

                          (Name of Decedent)            (Estate File Number)

◯  Transfer to a trust. (Attach complete copy of trust agreement and all amendments.)

◯  Transfer from a trust. (Attach complete copy of trust agreement and all amendments.)

◯  Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)

◯  Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

◯  Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)

◯  Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)

◯  Statutory corporate consolidation, merger or division. (Attach copy of articles.)

◯  Other (Provide a detailed explanation of exemption claimed. If more space is needed attach additional sheets.)

| SECTION V | CORRESPONDENT INFORMATION - All inquiries may be directed to the following person: |
|---|---|

| Name RAD Diversified REIT, Inc. (a MD Corporation) | Telephone Number ( ) |
|---|---|
| Mailing Address 10808 Foothill Blvd #160-347 | City Rancho Cucamonga | State CA | ZIP Code 91730 |

Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Correspondent or Responsible Party RAD Diversified REIT, Inc. (a MD Corporation) | Date 05-26-2022 |
|---|---|

**FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.**

1830019105

PAGE 1

DOC. ID

# PHILADELPHIA REAL ESTATE TRANSFER TAX CERTIFICATION

DATE RECORDED

CITY TAX PAID

Complete each section and file in duplicate with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed, (2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

**A. CORRESPONDENT — All inquiries may be directed to the following person:**

| NAME | TELEPHONE NUMBER: |
|---|---|
| RAD Diversified REIT, Inc. (a MD Corporation) | AREA CODE ( ) |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 10808 Foothill Blvd #160-347 | Rancho Cucamonga | CA | 91730 |

**B. TRANSFER DATA**     DATE OF ACCEPTANCE OF DOCUMENT: **May 26, 2022**

| GRANTOR(S) / LESSOR(S) | GRANTEE(S) / LESSEE(S) |
|---|---|
| 5546 Bloyd Street Acquisition, LLC (a PA Limited Liability Company) | RAD Diversified REIT, Inc. (a MD Corporation) |

| STREET ADDRESS | STREET ADDRESS |
|---|---|
| 50 Biscayne Boulevard, Apt 4604 | 10808 Foothill Blvd #160-347 |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| Miami | FL | 33132 | Rancho Cucamonga | CA | 91730 |

**C. PROPERTY LOCATION**

| STREET ADDRESS | CITY, TOWNSHIP, BOROUGH |
|---|---|
| 5536 Bloyd Street | City of Philadelphia |

| COUNTY | SCHOOL DISTRICT | TAX PARCEL NUMBER |
|---|---|---|
| Philadelphia | | 12-2-2343-00 |

**D. VALUATION DATA**

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| 138,333.00 | + | = 138,333.00 |

| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
|---|---|---|
| 20,800.00 | X 1.07 | = 22,256.00 |

**E. EXEMPTION DATA**

| 1A. PERCENTAGE OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED |
|---|---|
| | |

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____ _____
                                       (NAME OF DECEDENT)            (ESTATE FILE NUMBER)

☐ Transfer to Industrial Development Agency.

☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).

☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ _____

☐ Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____ , Page Number _____ . Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).

☐ Corrective deed (Attach copy of the prior deed).

☐ Other (Please explain exemption claimed, if other than listed above.) _____

*Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.*

| SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY | DATE |
|---|---|
| RAD Diversified REIT, Inc. (a MD Corporation) | May 26, 2022 |

82-127 (Rev. 9/11)                         (SEE REVERSE)

Unofficial Copy

INTERNAL FILENAME: 94338.MTG.pdf

··········································· Space Above Line for Recorder's Use ···································

## MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

TAX PARCEL
NUMBER(S):                     122234300

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>Commercial Lender LLC<br>PO Box 3801<br>Vernon, CT 06066 | Commercial Lender LLC<br>PO Box 3801<br>Vernon, CT 06066 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | Commercial Lender LLC<br>PO Box 3801<br>Vernon, CT 06066 |
| SIGNATURE: | _____<br>AGENT ON BEHALF OF THE MORTGAGEE |

Lender Loan Number: 94338

L#94338

**Page 1 of 14**

## MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made by **RAD DIVERSIFIED REIT, INC.** (the "Mortgagor"), a Maryland corporation with a principal place of business at 7 St. Paul Street, Suite 820, Baltimore, MD 21202; in favor of **Commercial Lender LLC** (the "Mortgagee"), a Delaware limited liability company with a mailing address of PO Box 3801, Vernon, CT 06066, its successors and assigns.

### RECITAL

Mortgagor is indebted to Mortgagee in the principal amount of **One Hundred Four Thousand Dollars and No Cents ($104,000.00)**, as evidenced by Mortgagor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Mortgagee, executed and delivered contemporaneously with this Instrument, and maturing on June 1, 2052 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Mortgagor and Mortgagee executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO Mortgagee the full and prompt payment and performance of each and all of Mortgagor's obligations under the Note, and the performance of the covenants and agreements of Mortgagor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Mortgagor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Mortgagor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Mortgagee, the following described property (collectively, the "Premises"):

A   The real property located in Philadelphia County, Pennsylvania, at **5536 Bloyd St, Philadelphia, PA 19138**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Mortgagor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B   All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");

L#94338

**Page 2 of 14**

C    All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the commonwealth of Pennsylvania, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D    All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E    All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Mortgagor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F    All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Mortgagor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

G    All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating

L#94338

Page 3 of 14

thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H  All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Mortgagor does hereby represent and warrant that Mortgagor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Mortgagee contemporaneously with the execution and recordation of this Instrument and insuring Mortgagee's interest in the Premises. Mortgagor does hereby covenant and agree that Mortgagor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Mortgagor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Mortgagee and any other Person authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Mortgagor, as debtors, and Mortgagee, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the commonwealth of Pennsylvania (the "UCC"), for the purpose of securing Mortgagor's obligations under this Instrument and to further secure Mortgagor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Mortgagor hereby grants to Mortgagee a security interest in the Collateral. To the extent necessary under applicable law, Mortgagor hereby authorizes Mortgagee to prepare and file financing statements, continuation statements and financing statement amendments in such form as Mortgagee may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Mortgagee will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Mortgagee may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Mortgagee's other remedies. This Instrument also constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

L#94338

**Page 4 of 14**

3. Taxes and Other Charges. Mortgagor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Mortgagee's request, Mortgagor shall deliver to Mortgagee within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Mortgagee.

4. Insurance. Mortgagor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Mortgagee, be and become immediately due and payable in full, subject to applicable law, and Mortgagee shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession. (A) As part of the consideration for the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to Mortgagee all Rents. It is the intention of Mortgagor to establish a present, absolute and irrevocable transfer and assignment to Mortgagee of all Rents and to authorizes and empower Mortgagee to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Mortgagee, Mortgagor agrees to execute and deliver such further assignments as Mortgagee may from time to time require. Mortgagor and Mortgagee intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the Rents will be included as a part of the Premises and it is the intention of Mortgagor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Mortgagee, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Mortgagee hereby grants to Mortgagor a revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Mortgagee and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other

L#94338

**Page 5 of 14**

amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Mortgagor free and clear of, and released from, Mortgagee's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Mortgagor authorizes Mortgagee to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Mortgagee. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, or by a receiver, Mortgagor's license to collect the Rents will automatically terminate and Mortgagee will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Mortgagor will pay to Mortgagee upon demand all the Rents to which Mortgagee is entitled. At any time on or after the date of Mortgagee's demand for the Rents, Mortgagee may give, and Mortgagor hereby irrevocably authorizes Mortgagee to give, notice to all tenants of the Premises instructing them to pay all Rents to Mortgagee. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to Mortgagor any amounts which are actually paid to* Mortgagee *in response to such a notice.* Any such notice by Mortgagee will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Mortgagor will not interfere with and will cooperate with Mortgagee's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Mortgagee will have each of the following rights and may take any of the following actions: (i) Mortgagee may, regardless of the adequacy of Mortgagee's security or the solvency of Mortgagor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Mortgagee in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to <u>Section 7(A)</u> of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Mortgagee, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Mortgagee's security, without regard to Mortgagor's solvency and without the necessity of giving prior notice (oral or written) to Mortgagor, Mortgagee may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Mortgagee elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Mortgagor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver <u>*ex parte*</u> if permitted by applicable law. (iii) If Mortgagor is a housing cooperative corporation or association, Mortgagor hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes,

Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Mortgagor and must be paid out of maintenance charges payable by Mortgagor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Mortgagee or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Mortgagee's entering upon and taking possession and control of the Premises, Mortgagor will surrender possession of the Premises to Mortgagee or the receiver, as the case may be, and will deliver to Mortgagee or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Mortgagee takes possession and control of the Premises, then Mortgagee may exclude Mortgagor and its representatives from the Premises. Mortgagor acknowledges and agrees that the exercise by Mortgagee of any of the rights conferred under this Section 7 will not be construed to make Mortgagee a Mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and Improvements. (D) If Mortgagee enters the Premises, Mortgagee will be liable to account only to Mortgagor and only for those Rents actually received. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable to the Borrower, anyone claiming under or through Mortgagor or anyone having an interest in the Premises, by reason of any act or omission of Mortgagee under Section 7(C) of this Instrument, and Mortgagor hereby releases and discharges Mortgagee from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness as provided in Section 9 of this Instrument. (F) Any entering upon and taking of control of the Premises by Mortgagee or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Mortgagee under applicable law or provided for in this Instrument. (F) During the existence of an Event of Default, Mortgagee may enter into possession of the Premises, with or without legal action, and by force, if necessary; collect all Rents (which term will also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the rents in accordance with Section 7 of this Instrument; and for that purpose Mortgagor hereby confirms The assignment to Mortgagee of all Rents due and to become due under all Leases created after the date of this Instrument, as well as all rights and remedies provided in such Lease or Leases or at law or in equity for the collection of Rents. The taking of possession and collection of Rents by Mortgagee will not be construed to be an affirmation of any Lease. **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES DURING THE EXISTENCE OF AN EVENT OF DEFAULT, MORTGAGOR AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN**

L#94338

**Page 7 of 14**

EJECTMENT FOR POSSESSION OF THE PREMISES, IN FAVOR OF Mortgagee, FOR WHICH THIS INSTRUMENT, OR A COPY VERIFIED BY AFFIDAVIT, WILL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT WILL BE DISCONTINUED, OR POSSESSION OF THE PREMISES WILL REMAIN IN OR BE RESTORED TO MORTGAGOR, Mortgagee WILL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OF EJECTMENT TO RECOVER POSSESSION OF THE PREMISES. Mortgagee MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS INSTRUMENT OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN THE ACTION OF EJECTMENT OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PREMISES IN WHICH Mortgagee IS THE SUCCESSFUL BIDDER. THIS AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS INSTRUMENT AND THE NOTE, AND WILL SURVIVE ANY EXECUTION SALE TO Mortgagee.

8. Application of Payments. If at any time Mortgagee receives, from Mortgagor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Mortgagee may apply that payment to amounts then due and payable in any manner and in any order determined by Mortgagee, in Mortgagee's discretion. Neither Mortgagee's acceptance of an amount that is less than all amounts then due and payable nor Mortgagee's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Mortgagor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Mortgagee's Security; Instrument Secures Future Advances. If Mortgagor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Mortgagee's security, or Mortgagee's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Mortgagee, at Mortgagee's option may make such appearances, file such documents, disburse such sums and take such actions as Mortgagee reasonably deems necessary to perform such obligations of Mortgagor and to protect Mortgagee's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Mortgagor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of the Mortgagor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Mortgagor for the payment of money that is secured by a

L#94338

**Page 8 of 14**

lien on the Premises. Any amounts disbursed by Mortgagee under this Section 9 or under any other provision of this Instrument that treats such disbursement as being made under this Section 9, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 9 will require Mortgagee to incur any expense or take any action. The provisions of this Section 9, including the obligation to indemnify Mortgagee, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Mortgagee's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Mortgagor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq., and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Mortgagee.

11. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Mortgagee's exercise of any particular right or remedy will not in any way prevent Mortgagee from exercising any other right or remedy available to Mortgagee. Mortgagee may exercise any such remedies from time to time and as often as Mortgagee chooses.

12. Waiver of Statute of Limitations, Offsets, and Counterclaims. Mortgagor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or

L#94338

**Page 9 of 14**

to any action brought to enforce any Loan Document. Mortgagor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Mortgagee or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Mortgagee to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Mortgagor is obligated to make under any of the Loan Documents.

13. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Mortgagee or by any other party, Mortgagee will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Mortgagee will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. Further Assurances. Mortgagor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Mortgagee may require from time to time in order to better assure, grant, and convey to Mortgagee the rights intended to be granted, now or in the future, to Mortgagee under this Instrument and the Loan Documents.

15. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the commonwealth of Pennsylvania. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Mortgagee's rights with respect to such security interest created in the commonwealth of Pennsylvania). Nothing in this Section 15 is intended to limit Mortgagee's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. Notices. All notices, consents, approvals, and requests required or permitted under this Instrument or under any other Loan Document shall be given in accordance with the requirements set forth under the Loan Agreement.

17. Successors and Assigns. This Instrument will bind the respective successors and assigns of Mortgagor and Mortgagee, and the rights granted by this Instrument will inure to Mortgagee's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Mortgagor, the obligations of such Persons will be joint and several.

L#94338

**Page 10 of 14**

19. Relationship of Parties; No Third-Party Beneficiary. The relationship between Mortgagee and Mortgagor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Mortgagee and Mortgagor. Nothing contained in this Instrument will constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations or contracts of Mortgagor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Mortgagee at Mortgagor's request, and Mortgagee will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the commonwealth of Pennsylvania, at any time after an Event of Default, regardless of whether Mortgagee has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Mortgagor and all Persons claiming under Mortgagor for the recovery by Mortgagee of possession of all or any part of the Premises, for which this Instrument

L#94338

**Page 11 of 14**

shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. At any time during the existence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Indebtedness to be immediately due and payable without further demand and may foreclose the lien of this Instrument by judicial proceedings and may invoke any other remedies permitted by Pennsylvania law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Mortgagee will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs or fifteen percent (15%) of the unpaid balance of the sums secured by this Instrument, but not less than five thousand dollars ($5,000.00), and costs of documentary evidence, abstracts, and title reports.

24. Release. Upon payment of the Indebtedness, this Instrument will become null and void and Mortgagee will discharge this Instrument. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging this Instrument.

25. Purchase Money Mortgage. If the proceeds of the Indebtedness are used by Mortgagor to pay all or a part of the purchase price of the Premises, this Instrument is declared to be a purchase money mortgage and will be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. Con. Stat. Ann. Section 8141, as amended.

26. Future Advances. This Instrument secures future advances. Notwithstanding anything to the contrary contained in this Instrument, the maximum amount of indebtedness outstanding at any time which may be secured by this Instrument is One Hundred Four Thousand Dollars and No Cents ($104,000.00), plus accrued and unpaid interest.

*[Remainder of page intentionally left blank]*

L#94338

**Page 12 of 14**

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has signed and delivered this Mortgage, Assignment of Rents, and Security Agreement or has caused said instrument to be signed and delivered by its duly authorized representative on __MAY____ ___26th_____, 2022.

**RAD DIVERSIFIED REIT, INC.**

Witness: _Sandra J Roquemore_

By: _____

Name: Brandon D. Mendenhall

Title: President

Witness: _____

STATE OF __Florida____ )
                         )ss. _____
COUNTY OF __Hillsborough__ )

I certify that on ____MAY 26th_____, 2022, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_Sandra J Roquemore_
Notary Public



SANDRA J ROQUEMORE
NOTARY PUBLIC · STATE OF FLORIDA
COMMISSION # HH 131020
My Commission Expires 05/17/2025

L#94338

**Page 13 of 14**

## SCHEDULE 1
## PROPERTY DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Southwesterly side of Bloyd Street commencing at the distance of Two hundred seventy-five feet Northwestwardly from the Northwesterly side of Church Lane (late Mill Street) in the 12th (formerly 2nd) Ward of the City of Philadelphia County of Philadelphia and State of Pennsylvania.

CONTAINING in front or breadth on the said Bloyd Street, fourteen feet and extending of that width in length or depth Southwestwardly between lines parallel with the said Church Lane, one hundred feet including on the rear end thereof a certain three feet wide alley leading Northwestwardly and Southeastwardly and communicating at its Northerly and Southerly ends with the two other three feet wide alleys leading Northeastwardly into the said Bloyd Street.

TOGETHER with the free and common use, right, liberty and privilege of the said alleys as and for passageway and watercourses at all times hereafter, forever.

BEING known as No. 5536 Bloyd Street.

**Property Parcel Number 12-2-2343-00**

Being the same premises which New Decade LLC by Deed dated 7/18/2016 and recorded 8/13/2016 in Philadelphia County as Document No. 53098333 conveyed unto 5546 Bloyd Street Acquisition LLC, in fee.

L#94338

**Page 14 of 14**

Record and Return to:

Hladik Onorato & Federman LLP
298 Wissahickon Avenue
North Wales, PA 19454

Parcel ID No. 12-2-2343-00

## ASSIGNMENT OF MORTGAGE

Date of Assignment: 1/29/25

### KNOW ALL MEN BY THESE PRESENTS:

**Greene Street Funding Trust II** herein designated as the Assignor, for and in consideration of the sum of ONE and 00/100 ($1.00) DOLLAR and other good and valuable consideration, the receipt whereof is hereby acknowledged, does by these presents assign to **U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II,** with offices at 60 Livingston Avenue EP-MN-WS3D, St. Paul, MN 55107 herein designated as the Assignee, a certain Mortgage to Commercial Lender, LLC a Delaware Limited Liability Company dated May 26, 2022 and recorded June 7, 2022 made by **RAD Diversified REIT, Inc. by Brandon D. Mendenhall, President** on lands located in the County of Philadelphia State of Pennsylvania to secure payment of the sum of $104,000.00 which mortgage is recorded or registered in the Recorder of Deeds Office of the County of Philadelphia recorded as Instrument No. 54052557.

**Property Address: 5536 Bloyd Street, Philadelphia, PA 19138.**

TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to grow due thereon, with the interest. **TO HAVE AND TO HOLD** the same unto the said Assignee forever, subject only to all the provisions contained the said Mortgage and the Bond, Note or other Obligation.

**AND** the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

I do hereby certify that the precise address of **U.S. Bank Trust National Association, not in its individual capacity but solely as Trustee of Greene Street Funding Trust II,** is 60 Livingston Avenue, EP-MN-WS3D, St. Paul, MN 55107.

Attested By: Cristian Morales

In all references herein to any parties, persons, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

**IN WITNESS WHEREOF,** the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this 29 day of January, 2025.

Attest:

_Cristian Morales_

(Signature)

RF Mortgage Services Corporation as Servicer and attorney-in-fact for Greene Street Funding Trust II

Signature: _S. S_____

Name: Shlomo Sahadeo
Title: Authorized Agent

CERTIFICATE OF ACKNOWLEDGMENT

State of Illinois       :

SS                      :

County of Cook          :

BE IT REMEMBERED, that on this 29 day of January, 2025, before me, the undersigned Notary Public, personally appeared Shlomo Sahadeo, who came before me and acknowledged under oath herself/himself to be the authorized agent of RF Mortgage Services Corporation as Servicer and attorney-in-fact for Greene Street Funding Trust II, and he/she, as such being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself/herself.

Sworn to and subscribed before me
the date aforesaid.

_Kayla_____
Notary Public
My Commission Expires: 9/29/2028



OFFICIAL SEAL
KAYLA S PAPACEK
Notary Public, State of Illinois
Commission No. 997624
My Commission Expires
September 27, 2028

## LEGAL DESCRIPTION

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE SOUTHWESTERLY SIDE OF BLOYD STREET COMMENCING AT THE DISTANCE OF TWO HUNDRED SEVENTY-FIVE FEET NORTHWESTWARDLY FROM THE NORTHWESTERLY SIDE OF CHURCH LANE (LATE MILL STREET) IN THE 12TH (FORMERLY 2ND) WARD OF THE CITY OF PHILADELPHIA COUNTY OF PHILADELPHIA AND STATE OF PENNSYLVANIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID BLOYD STREET, FOURTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY BETWEEN LINES PARALLEL WITH THE SAID CHURCH LANE, ONE HUNDRED FEET INCLUDING ON THE REAR END THEREOF A CERTAIN THREE FEET WIDE ALLEY LEADING NORTHWESTWARDLY AND SOUTHEASTWARDLY AND COMMUNICATING AT ITS NORTHERLY AND SOUTHERLY ENDS WITH THE TWO OTHER THREE FEET WIDE ALLEYS LEADING NORTHEASTWARDLY INTO THE SAID BLOYD STREET.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE SAID ALLEYS AS AND FOR PASSAGEWAY AND WATERCOURSES AT ALL TIMES HEREAFTER, FOREVER.

BEING KNOWN AS NO. 5536 BLOYD STREET.

PROPERTY. PARCEL NUMBER12-2-2343-00



*Filed and Attested by the Office of Judicial Records 23 DEC 2025 03:44 pm A. STAMATO*

HLADIK, ONORATO & FEDERMAN, LLP
David C. Onorato, Esq., ID No. 41217
Thomas M. Federman, Esq., ID No. 64068
Stephen M. Hladik, Esq., ID No. 66287
Robert W. Williams, Esq., ID No. 315501
Thomas C. Dyer, Esq., ID No. 331768
298 Wissahickon Avenue
North Wales, PA 19454
(215) 855-9521

| | |
|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II, *Plaintiff,*<br><br>v.<br><br>BRANDON D. MENDENHALL RAD DIVERSIFIED REIT, INC., *Defendants.* | COURT OF COMMON PLEAS PHILADELPHIA COUNTY, PA<br><br>DOCKET NO. 250802081 |

### PRAECIPE TO ENTER JUDGMENT BY DEFAULT

TO THE PROTHONOTARY OF PHILADELPHIA COUNTY:

Kindly enter judgment by default in favor of Plaintiff and against Defendants, Brandon D. Mendenhall, RAD Diversified REIT, Inc., in the above-captioned matter for failure to answer Plaintiff's Complaint within the time prescribed by Pa. R.C.P. No. 1026, and assess Plaintiff's damages as follows:

| | |
|---|---|
| Amount due through May 9, 2025 as stated in the Complaint | $142,371.76 |
| Additional Interest due and owing at the *per diem* rate of $68.98 from May 10, 2025 through December 23, 2025 | $15,727.44 |
| **TOTAL** | **$158,099.20** |

Case ID: 250802081

Total damages to be assessed at **$158,099.20** together with interest at the aggregate daily rate of $68.98 from December 24, 2025, until the date of entry of final judgment, plus interest thereafter on the judgment, at the rate stated on the subject Note, plus any costs, expenses, attorney's fees and all other amounts due and payable under the Note and Mortgage, up through the sale of the mortgaged premises.

Date: 12/23/25

Respectfully submitted,

HLADIK, ONORATO & FEDERMAN, LLP

__ David C. Onorato, Esq., ID No. 41217
__ Thomas M. Federman, Esq., ID No. 64068
__ Stephen M. Hladik, Esq., ID No. 66287
__ Robert W. Williams, Esq., ID No. 315501
XO Thomas C. Dyer, Esq., ID No. 331768
*Attorney for Plaintiff*

**AND NOW**, this _____ day of _____, 2025, Judgment is entered in favor of Plaintiff, **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II** and against Defendants, **BRANDON D. MENDENHALL, RAD DIVERSIFIED REIT, INC.**, by Default, for want of an answer, and damages are assessed in the amount of **$158,099.20**, plus interest and costs.

BY THE PROTHONOTARY:

_____

EXHIBIT B



| 3 | | | DEFENDANT | MENDENHALL, BRANDON D |
|---|---|---|---|---|
| **Address:** | 7 SAINT PAUL STREET<br>SUITE 820<br>BALTIMORE MD 21202 | **Aliases:** | *none* | |

| 4 | 10 | | DEFENDANT | RAD DIVERSIFIED REIT INC |
|---|---|---|---|---|
| **Address:** | 5536 BLOYD STREET<br>PHILADELPHIA PA 19138 | **Aliases:** | *none* | |

| 5 | 1 | | ATTORNEY FOR PLAINTIFF | DYER, THOMAS C |
|---|---|---|---|---|
| **Address:** | 2005 MARKET STREET<br>SUITE 2600<br>PHILADELPHIA PA 19106<br>(215)564-8696<br>tdyer@stradley.com | **Aliases:** | *none* | |

| 6 | 1 | | ATTORNEY FOR PLAINTIFF | WILLIAMS, ROBERT W |
|---|---|---|---|---|
| **Address:** | HLADIK, ONORATO, & FEDERMAN,<br>298 WISSAHICKON AVE.<br>NORTH WALES PA 19454<br>(215)855-9521<br>rwilliams@hoflawgroup.com | **Aliases:** | *none* | |

| 7 | | | MOTION ASSIGNMENT JUDGE | PADOVA, JOHN |
|---|---|---|---|---|
| **Address:** | CITY HALL ROOM 469<br>PHILADELPHIA PA 19107<br>(215)686-2602 | **Aliases:** | *none* | |

| 8 | | | TEAM LEADER | ROBERTS, JOSHUA |
|---|---|---|---|---|
| **Address:** | 538 CITY HALL<br>PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 9 | | | JUDGE | THOMAS-STREET, SIERRA |
|---|---|---|---|---|
| **Address:** | 529 CITY HALL<br>PHILADELPHIA PA 19107<br>(215)686-2961 | **Aliases:** | *none* | |

| 10 | | | ATTORNEY FOR DEFENDANT | KATZ, JEFFREY |
|---|---|---|---|---|
| **Address:** | KBK LAW GROUP<br>100 S BROAD ST<br>SUITE 1208<br>PHILADELPHIA PA 19102<br>(267)761-5090<br>jeffrey@kbklawgroup.com | **Aliases:** | *none* | |

## 📖 Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|
| 18-AUG-2025 06:36 PM | ACTIVE CASE | | |
| **Docket Entry:** | E-Filing Number: 2508038621 | | |

| 18-AUG-2025 06:36 PM | COMMENCEMENT OF CIVIL ACTION | HLADIK, STEPHEN M | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>Final Cover<br>MR Notice | | 🛒 Add All to Cart |
| **Docket Entry:** | *none.* | | |

| 18-AUG-2025 06:36 PM | COMPLAINT FILED NOTICE GIVEN | HLADIK, STEPHEN M | $134,567.61 |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03161 - Complaint Sent for Filing 08-18-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. NOTICE OF INTENT UNDER ACT 6 HAS BEEN SENT TO THE DEFENDANT. | | |

| 19-AUG-2025 02:30 PM | WAITING-ISSUE CASE MGMT ORDER | | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| 28-AUG-2025 04:10 PM | ATTEMPTED SERVICE - NOT FOUND | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03161 - NSM on Both at 5536 Bloyd Street.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 08/22/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 04-SEP-2025 11:00 AM | ATTEMPTED SERVICE - NOT FOUND | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03161 - NSM on both defendants at 10808 Foothill Boulevard.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 08/25/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 04-SEP-2025 02:07 PM | PRAECIPE TO REINSTATE CMPLT | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03161 - Praecipe to Reinstate Complaint Sent for filing 09-04-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 30-SEP-2025 11:26 AM | PRAECIPE TO REINSTATE CMPLT | WILLIAMS, ROBERT W | |
|---|---|---|---|

| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>[24-03161 - Praecipe to Reinstate Sent for Filing 09-30-25.pdf](#) | 🛒 Add All to Cart |
|---|---|---|

| Docket Entry: | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF US BANK TRUST NA) | |

| 03-NOV-2025 12:15 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|
| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Both at 1935 Parkerhill Lane.pdf](#) | 🛒 Add All to Cart | |
| Docket Entry: | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 09/04/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 03-NOV-2025 12:16 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|
| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Both at 222 Angels Boulevard.pdf](#) | 🛒 Add All to Cart | |
| Docket Entry: | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 08/30/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 03-NOV-2025 12:17 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|
| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Both at 805 E Bloomingdale Ave.pdf](#) | 🛒 Add All to Cart | |
| Docket Entry: | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 09/08/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 03-NOV-2025 12:18 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|
| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Both at 9463 Canyon Oaks Court.pdf](#) | 🛒 Add All to Cart | |
| Docket Entry: | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 09/11/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 03-NOV-2025 12:19 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|
| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Both at 100 Ashley Drive South.pdf](#) | 🛒 Add All to Cart | |
| Docket Entry: | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 10/03/2025. (FILED ON BEHALF OF US BANK TRUST NA) | | |

| 03-NOV-2025 12:20 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|

| Documents: | *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Both at 5404 Cypress Center Drive.pdf](#) | 🛒 Add All to Cart |
|---|---|---|

| Docket Entry: | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 10/03/2025. (FILED ON BEHALF OF US BANK TRUST NA) |
|---|---|

| 03-NOV-2025 12:21 PM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|

| Documents: | *Click link(s) to preview/purchase the documents*<br>[24-03161 - NSM on Brandon Mendenhall at 7 Saint Paul St.pdf](#) | 🛒 Add All to Cart |
|---|---|---|

| Docket Entry: | BRANDON D MENDENHALL NOT FOUND ON 08/22/2025. (FILED ON BEHALF OF US BANK TRUST NA) |
|---|---|

| 03-NOV-2025 12:22 PM | AFFIDAVIT OF SERVICE FILED | DYER, THOMAS C | |
|---|---|---|---|

| Documents: | *Click link(s) to preview/purchase the documents*<br>[24-03161 - Completed Service on RAD Diversified at 7 Saint Paul St.pdf](#) | 🛒 Add All to Cart |
|---|---|---|

| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC BY PERSONAL SERVICE ON 08/22/2025 FILED. (FILED ON BEHALF OF US BANK TRUST NA) |
|---|---|

| 05-NOV-2025 09:10 AM | MOTION FOR ALTERNATIVE SERVICE | WILLIAMS, ROBERT W | |
|---|---|---|---|

| Documents: | *Click link(s) to preview/purchase the documents*<br>[24-03161 - MSS Sent for Filing 11-05-25.pdf](#)<br>[Motion CoverSheet Form](#) | 🛒 Add All to Cart |
|---|---|---|

| Docket Entry: | 92-25111092 MOTION FOR ALTERNATIVE SERVICE (FILED ON BEHALF OF US BANK TRUST NA) |
|---|---|

| 05-NOV-2025 01:11 PM | MOTION ASSIGNED | | |
|---|---|---|---|

| Docket Entry: | 92-25111092 MOTION FOR ALTERNATIVE SERVICE ASSIGNED TO JUDGE: THOMAS-STREET, SIERRA . ON DATE: NOVEMBER 05, 2025 |
|---|---|

| 06-NOV-2025 10:59 AM | ORDER ENTERED/236 NOTICE GIVEN | THOMAS-STREET, SIERRA | |
|---|---|---|---|

| Documents: | *Click link(s) to preview/purchase the documents*<br>[ORDER_19.pdf](#) | 🛒 Add All to Cart |
|---|---|---|

| Docket Entry: | 92-25111092 UPON CONSIDERATION OF PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE, IT IS HEREBY ORDERED AND DECREED THAT SAID MOTION IS GRANTED FOR THE REASONS SET FORTH BELOW: -PLAINTIFF(S) HAS MADE A GOOD FAITH EFFORT TO LOCATE THE DEFENDANT(S), -PLAINTIFF(S) HAS SHOWN PRACTICAL EFFORTS TO SERVE THE DEFENDANT(S) UNDER THE CIRCUMSTANCES BECAUSE: -PLAINTIFF(S) PROPOSED ALTERNATIVE MEANS OF SERVICE IS REASONABLY CALCULATED TO PROVIDE DEFENDANT(S) WITH NOTICE OF THE PROCEEDING AGAINST HIM/HER. SEE ORDER FOR FULL TERMS. ...BY THE COURT: THOMAS-STREET, J. 11/05/2025 |
|---|---|

| 06-NOV-2025 10:59 AM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|

| Docket Entry: | NOTICE GIVEN ON 06-NOV-2025 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 06-NOV-2025. |
|---|---|

| 14-NOV-2025 12:24 PM | PRAECIPE TO REINSTATE CMPLT | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> 24-03161 - Praecipe to Reinstate Complaint Sent for filing 11-14-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF US BANK TRUST NA) | | |
| | | | |
| 17-NOV-2025 11:35 AM | AFFIDAVIT OF SERVICE FILED | WILLIAMS, ROBERT W | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> 24-03161 - Affidavit of Service of Process Sent for Filing 11-17-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL BY CERTIFIED MAIL,FIRST CLASS REGULAR MAIL ON 11/14/2025 FILED. (FILED ON BEHALF OF US BANK TRUST NA) | | |
| | | | |
| 25-NOV-2025 10:00 AM | AFFIDAVIT OF SERVICE FILED | WILLIAMS, ROBERT W | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> 24-03161 - Completed Posting for Both Defendants.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL BY POSTING PREMISES ON 11/19/2025 FILED. (FILED ON BEHALF OF US BANK TRUST NA) | | |
| | | | |
| 04-DEC-2025 04:19 PM | CASE MANAGEMENT ORDER ISSUED | | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> CMOJS_24.pdf | | 🛒 Add All to Cart |

| Docket Entry: | IT IS HEREBY ORDERED, THAT THE ABOVE CAPTIONED MATTER IS PROJECTED TO BE LISTED FOR TRIAL DURING THE TRIAL MONTH BEGINNING 08-SEP-2026 AND COUNSEL SHOULD ANTICIPATE TRIAL TO BEGIN EXPEDITIOUSLY THEREAFTER. HOWEVER, COUNSEL AND THE PARTIES WILL RECEIVE SUBSEQUENT NOTICE ATTACHING THEM TO A SPECIFIC TRIAL POOL MONTH AND SHOULD ANTICIPATE TRIAL TO BEGIN EXPEDITIOUSLY THEREAFTER. UPON RECEIPT OF THE TRIAL POOL ATTACHMENT NOTICE, ALL COUNSEL AND PARTIES MUST IMMEDIATELY NOTIFY THE COURT IN WRITING OF ANY SCHEDULING CONFLICTS, INCLUDING TRIAL ATTACHMENTS AND PRE-PAID VACATIONS, AND ARE UNDER A CONTINUING OBLIGATION TO NOTIFY THE COURT OF ANY SUBSEQUENT TRIAL ATTACHMENTS DURING THE TRIAL POOL MONTH. THE TRIAL CONFLICT LETTER MUST BE SUBMITTED NOT LATER THAN THE 20TH DAY OF THE MONTH PRIOR TO THE START OF THE TRIAL POOL MONTH. THE COURT WILL NOT RECOGNIZE ANY UNTIMELY CONFLICT NOTIFICATIONS. FAILURE TO NOTIFY THE COURT OF ANY SCHEDULING CONFLICTS MAY RESULT IN THE ISSUANCE OF A RULE TO SHOW CAUSE WHY THE COURT SHOULD NOT IMPOSE APPROPRIATE SANCTIONS. TO ELECTRONICALLY FILE THE TRIAL POOL CONFLICT LETTER, ACCESS THE "EXISTING CASE" SECTION OF THE COURT'S ELECTRONIC FILING SYSTEM. SELECT "CONFERENCE SUBMISSIONS" AS THE FILING CATEGORY. SELECT "TRIAL POOL CONFLICT LETTER" AS THE DOCUMENT TYPE. IF THE CASE IS NOT CALLED FOR TRIAL DURING THE DESIGNATED TRIAL POOL MONTH, IT WILL AUTOMATICALLY BE ASSIGNED TO THE NEXT TRIAL POOL MONTH AND EACH SUBSEQUENT TRIAL POOL MONTH UNTIL THE MATTER IS CALLED TO TRIAL. PARTIES ARE UNDER A CONTINUING OBLIGATION TO ELECTRONICALLY FILE CONFLICT LETTERS BEFORE THE START OF EACH TRIAL POOL MONTH. AND NOW, THIS 04-DEC-2025 IT IS ORDERED THAT: 1. THE CASE MANAGEMENT AND TIME STANDARDS ADOPTED FOR EXPEDITED TRACK CASES SHALL BE APPLICABLE TO THIS CASE AND ARE HEREBY INCORPORATED INTO THIS ORDER. 2. ALL DISCOVERY IN THE ABOVE MATTER SHALL BE COMPLETED NO LATER THAN 04-MAY-2026. 3. DISPOSITIVE MOTIONS MUST BE FILED NO LATER THAN 01-JUN-2026. TEN DAYS PRIOR TO THE START OF THE ASSIGNED TRIAL POOL MONTH, ALL COUNSEL SHALL SERVE UPON ALL OPPOSING COUNSEL AND/OR OPPOSING PARTIES AND FILE WITH THE COURT, A PRE-TRIAL MEMORANDUM CONTAINING THE FOLLOWING: (a) A CONCISE SUMMARY OF THE NATURE OF THE CASE IF PLAINTIFF OR THE DEFENSE IF DEFENDANT OR ADDITIONAL DEFENDANT. (b) A LIST OF ALL WITNESSES WHO MAY BE CALLED TO TESTIFY AT TRIAL BY NAME AND ADDRESS. (c) A LIST OF ALL EXHIBITS THE PARTY INTENDS TO OFFER INTO EVIDENCE. COUNSEL SHOULD EXPECT ANY EXHIBIT NOT LISTED TO BE PRECLUDED AT TRIAL; (d) EACH COUNSEL SHALL PROVIDE AN ESTIMATE OF THE ANTICIPATED LENGTH OF TRIAL. ALL MOTIONS IN LIMINE SHALL BE FILED IN ACCORDANCE WITH ELECTRONIC FILING PROCEDURES NOT LATER THAN 15 DAYS PRIOR TO THE START OF TRIAL. RESPONDING COUNSEL SHALL HAVE 10 DAYS AFTER SERVICE TO FILE ANY RESPONSE. FOR POOL CASES, THE START OF THE TRIAL IS DEFINED AS THE FIRST DAY OF THE TRIAL POOL LISTING. REQUESTS TO EXTEND ANY CASE MANAGEMENT DEADLINE OR FOR TRIAL CONTINUANCE MUST BE SUBMITTED BY FILING A MOTION FOR EXTRAORDINARY RELIEF AND FILED PRIOR TO THE EXPIRATION OF THE DEADLINE IN QUESTION. ANY REQUESTS FOR A DATE-CERTAIN TRIAL LISTING MUST BE SUBMITTED IN WRITING WITH SPECIFICITY, INCLUDING THE NEED FOR A LANGUAGE INTERPRETER, WITH A COPY TO OPPOSING PARTY, AND DIRECTED TO THE HONORABLE JOSHUA ROBERTS, TEAM LEADER VIA THE COURT?S ELECTRONIC FILING SYSTEM, AS A TRIAL CONFLICT LETTER. HOWEVER, SAID REQUESTS MAY BE MADE ONLY UNDER EXIGENT CIRCUMSTANCES. IF A PARTY OR WITNESS REQUIRES A LANGUAGE INTERPRETER, IT IS THE OBLIGATION OF THE PARTY WITH THE REQUIREMENT TO REQUEST THE INTERPRETER FROM THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA COURT REPORTER, DIGITAL RECORDING AND INTERPRETER ADMINISTRATION USING THE FORM FOUND AT: HTTPS://WWW.COURTS.PHILA.GOV/PDF/FORMS/COURT-REPORTERS/INTERPRETER-REQUEST-FORM.PDF. THE COURT WILL NOT GRANT CONTINUANCE REQUESTS WHEN COUNSEL OR AN UNREPRESENTED PARTY HAS FAILED TO TIMELY REQUEST A LANGUAGE INTERPRETER. ALL COUNSEL ARE UNDER A CONTINUING OBLIGATION AND ARE HEREBY ORDERED TO SERVE A COPY OF THIS ORDER UPON ALL UNREPRESENTED PARTIES AND UPON ALL COUNSEL ENTERING AN APPEARANCE SUBSEQUENT TO THE ENTRY OF THIS ORDER. JOSHUA ROBERTS, J. 04-DEC-2025 |
|---|---|

| 04-DEC-2025 04:19 PM | LISTED FOR TRIAL | | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| 04-DEC-2025 04:19 PM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|
| **Docket Entry:** | NOTICE GIVEN ON 05-DEC-2025 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 04-DEC-2025. | | |

| 23-DEC-2025 03:28 PM | JUDGMENT BY DEFAULT/FINAL DISP | DYER, THOMAS C | $149,970.24 |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> Default Judgment executed_Mendenhall_RAD Diversified_250802080.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | PRAECIPE FOR ENTRY OF DEFAULT JUDGMENT FILED. JUDGMENT IN FAVOR OF US BANK TRUST NA AND AGAINST RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL FOR FAILURE TO FILE ANSWER WITHIN REQUIRED TIME. NOTICE UNDER RULE 236 GIVEN. NOTICE UNDER 237.1 GIVEN. AFFIDAVIT OF NON-MILITARY SERVICE FILED. DAMAGES ASSESSED: $149,970.24 | | |

| 13-JAN-2026 01:11 PM | PRAECIPE TO ISSUE WRIT FILED | WILLIAMS, ROBERT W | |
|---|---|---|---|

| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>Mendenhall_5536_Bloyd Praecipe for Writ.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | PRAECIPE FOR WRIT OF EXECUTION (RE) FILED. WRIT OF EXECUTION (RE) ISSUED. SUBJECT PREMISES: 5536 BLOYD STREET PHILADELPHIA. (FILED ON BEHALF OF US BANK TRUST NA) |
|---|---|

| 09-FEB-2026 04:39 PM | ORDER ENTERED/236 NOTICE GIVEN | THOMAS-STREET, SIERRA | |
|---|---|---|---|

| **Docket Entry:** | ***PLEASE NOTE: THIS ORDER WAS FILED UNDER THE INCORRECT CASE NUMBER VJM OJR |
|---|---|

| 09-FEB-2026 04:39 PM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|

| **Docket Entry:** | NOTICE GIVEN ON 10-FEB-2026 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 09-FEB-2026. |
|---|---|

| 10-FEB-2026 11:34 AM | AFFIDAVIT OF SERVICE FILED | | |
|---|---|---|---|

| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>225375.01_AFFIDAVIT1_0269F58E-AA04-6241-9864-A54183EDF915.pdf<br>CS225375.01 PIC OF POSTING.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON BRANDON D MENDENHALL BY POSTING OF PREMISES ON 02/01/2026 FILED. |
|---|---|

| 10-FEB-2026 11:45 AM | AFFIDAVIT OF SERVICE FILED | | |
|---|---|---|---|

| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>CS225375.02 PIC OF POSTING.pdf<br>225375.02_AFFIDAVIT1_F4B6DC62-A0B1-B84A-9B5C-ACFE728C2D04.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC BY POSTING OF PREMISES ON 02/01/2026 FILED. |
|---|---|

| 06-MAR-2026 04:06 PM | SUGGESTION OF BANKRUPTCY FILED | KATZ, JEFFREY | |
|---|---|---|---|

| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>250802080 RAD-US Green Bank Suggestion of Bankruptcy[1].pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | PRAECIPE TO DEFER CASE DUE TO PENDING BANKRUPTCY ACTION UNDER CASE NUMBER: 8:26-BK-01636-CPM (FILED ON BEHALF OF RAD DIVERSIFIED REIT INC) |
|---|---|

| 12-MAR-2026 04:55 PM | AFFIDAVIT OF SERVICE FILED | HLADIK, STEPHEN M | |
|---|---|---|---|

| Documents: | 📄 *Click link(s) to preview/purchase the documents*<br>250802080 Mendenhall Affserve NOS MSS Mail 2.2.26.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF NOTICE OF SALE UPON BRANDON D MENDENHALL BY CERTIFIED MAIL,FIRST CLASS REGULAR MAIL ON 02/04/2026 FILED. (FILED ON BEHALF OF US BANK TRUST NA) |
|---|---|

^ Go to Top

🏠 Philadelphia Courts

Questions regarding cases listed on this site can be directed to the Trial Division - Civil Administration at ✉
civiladminsupport@courts.phila.gov and 📞 (215) 686-8326 or the Office of Judicial Records - Civil at ✉
OJRCivil@courts.phila.gov and 📞 (215) 686-6652.

User Accepts/Agrees to Disclaimer.



04/27/2022

5536 Bloyd St
TAX MAP 85N200 LOT 66
Philadelphia, PA 19138

Commercial Lender,Llc
P.O BOX 3201, Vernon, CT 06066

Table of Contents/Cover Page ................................................................................................................................ 1
UAD Definitions Addendum .................................................................................................................................... 2
UAD Additional Appraiser Definitions Addendum ................................................................................................. 5
USPAP Identification ............................................................................................................................................... 6
FIRREA/USPAP Addendum .................................................................................................................................... 7
URAR ...................................................................................................................................................................... 8
Additional Comparables 4-6 ................................................................................................................................. 14
Single Family Comparable Rent Schedule ........................................................................................................... 15
Market Conditions Addendum to the Appraisal Report ........................................................................................ 16
Aerial Map ............................................................................................................................................................. 17
Location Map ......................................................................................................................................................... 18
Building Sketch ..................................................................................................................................................... 19
Supplemental Addendum ...................................................................................................................................... 20
Subject Photos ...................................................................................................................................................... 22
Subject Photos ...................................................................................................................................................... 23
Interior Photos ....................................................................................................................................................... 24
Comparable Photos 1-3 ........................................................................................................................................ 25
Comparable Photos 4-6 ........................................................................................................................................ 26
Rental Photos 1-3 ................................................................................................................................................. 27
LICENSE ............................................................................................................................................................... 28
E&O - Page 1 ......................................................................................................................................................... 29
E&O - Page 2 ......................................................................................................................................................... 30

File No. ███

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

**Not Updated**

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

**Updated**

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
### (Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

UAD Version 9/2011 (Updated 1/2014)

Form UADDEFINE1A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

94341
File No.   ANS-683620

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

Other Appraiser-Defined Abbreviations (continued)

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

UAD Version 9/2011 (Updated 1/2014)

Form UADDEFINE2A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Borrower | Brandon Mendenhall | | | | | File No. |
|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | |
| City | Philadelphia | County | Philadelphia | State | PA | Zip Code 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

☒ Appraisal Report     (A written report prepared under Standards Rule   2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

☐ Restricted        (A written report prepared under Standards Rule   2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report,
Appraisal Report    restricted to the stated intended use only by the specified client and any other named intended user(s).)

## Comments on Standards Rule 2-3
I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no  personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Luciano Petrone provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

## Reasonable Exposure Time     (USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:     0-3 Months

## Comments on Appraisal and Report Identification
Note any USPAP-related issues requiring disclosure and any state mandated requirements:
THE INTENDED USER OF THIS APPRAISAL REPORT IS FOR THE CLIENT/LENDER

THE HIGHEST AND BEST USE OF THE SITE AS VACANT WOULD BE TO IMPROVE IT WITH A SINGLE FAMILY DWELLING SIMILIAR TO THE SUBJECT WITH AMENITIES EXPECTED IN TODAYS MARKET.
THE CURRENT IMPROVEMENTS MEET ALL THE ABOVE CRITERIA ,AS SUCH, THE PRESENT USE IT THE HIGHEST AND BEST USE AS IMPROVED.

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: *Ettore Petrone* | Signature: |
| Name: Ettore Petrone | Name: |
| State Certification #: RL139162 | State Certification #: |
| or State License #: | or State License #: |
| State: PA    Expiration Date of Certification or License: 06/30/2023 | State:    Expiration Date of Certification or License: |
| Date of Signature and Report: 05/06/2022 | Date of Signature: |
| Effective Date of Appraisal: 04/27/2022 | |
| Inspection of Subject: ☐ None ☒ Interior and Exterior ☐ Exterior-Only | Inspection of Subject: ☐ None ☐ Interior and Exterior ☐ Exterior-Only |
| Date of Inspection (if applicable): 04/27/2022 | Date of Inspection (if applicable): |

Ettore Petrone

## FIRREA / USPAP ADDENDUM

| Borrower | Brandon Mendenhall | | | File No. | ████ |
|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | |
| City | Philadelphia | County | Philadelphia | State PA | Zip Code 19138 |
| Lender/Client | Commercial Lender,Llc | | | | |

### Purpose

Purchase

### Scope of Work

The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications.

### Intended Use / Intended User

Intended Use:    THE INTENDED USE OF THIS APPRAISAL REPORT IS FOR THE LENDER/CLIENT TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR MORTGAGE FINANCE PURPOSES

Intended User(s):    THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT

### History of Property

Current listing information:    NOT LISTED

Prior sale:   07/08/2016 FOR $12,500

### Exposure Time / Marketing Time

0-3months

### Personal (non-realty) Transfers

No personal property were included in this appraisal report.

### Additional Comments

SEE ADDENDUM

### Certification Supplement

1. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.

2. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.

| | |
|---|---|
| Appraiser:   Ettore Petrone | Supervisory Appraiser: |
| Signed Date:   05/06/2022 | Signed Date: |
| Certification or License #:   RL139162 | Certification or License #: |
| Certification or License State:   PA   Expires:   06/30/2023 | Certification or License State:   Expires: |
| Effective Date of Appraisal:   04/27/2022 | Inspection of Subject:  ☐ Did Not  ☐ Exterior Only  ☐ Interior and Exterior |

Form FUA_LG2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Ettore Petrone

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | |
|---|---|---|
| Property Address 5536 Bloyd St | City Philadelphia | State PA  Zip Code 19138 |
| Borrower Brandon Mendenhall | Owner of Public Record 5546 Bloyd Street Acquisions | County Philadelphia |
| Legal Description TAX MAP 85N200 LOT 66 | | |
| Assessor's Parcel # 122234300 | Tax Year 2022 | R.E. Taxes $ 291 |
| Neighborhood Name Philadelphia city/Ogontz | Map Reference 37964 | Census Tract 0247.00 |

Occupant ☐ Owner ☒ Tenant ☐ Vacant   Special Assessments $ 0   ☐ PUD  HOA $ 0   ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe)
Lender/Client  Commercial Lender,Llc   Address  P.O BOX 3201, Vernon, CT 06066
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).   THE SUBJECT WAS NOT LISTED PER MLS/DEED OF TAX RECORD/PRIVATE SALE

**CONTRACT**

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   Arms length sale;After reviewing the fully executed contract , no abnormalities were found . Private bulk sale by owner

Contract Price $ 85,000   Date of Contract 03/06/2022   Is the property seller the owner of public record? ☒ Yes ☐ No  Data Source(s)  deed of records
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No
If Yes, report the total dollar amount and describe the items to be paid.   $0;;

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One–Unit Housing Trends | One–Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE | AGE | One-Unit | 84 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) | (yrs) | 2-4 Unit | 4 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 90 Low | 0 | Multi-Family | 5 % |
| | | 160 High | 128 | Commercial | 3 % |
| | | 125 Pred. | 85 | Other | 4 % |

Neighborhood Boundaries   THE SUBJECT IS BOUND BY :TO NORTH :STENTON AVE. TO SOUTH: BELFIELD AVE. TO EAST: OGONTZ AVE. TO WEST; E WASHINGTON LANE
Neighborhood Description   THE SUBJECT IS LOCATED IN OGONTZ NEAR ALL MAJOR AMENITIES INCLUDING SCHOOLS , SHOPPING,AND PLACES OF WORSHIP. CLOSE PROXIMITY TO MAJOR HIGHWAYS OFFERS EASY ACCESS TO EMPLOYMENT CENTERS AND METROPOLITAN AREAS.EMPLOYMENT STABILITY AND APPEAL TO MARKET ARE AVERAGE FOR THE SUBJECT.
Market Conditions (including support for the above conclusions)   PROPERTY VALUES APPEAR TO BE STABLE IN THE IMMEDIATE AREA OVER THE PAST 3-12 MONTHS MARKETING TIME IS GENERALLY BETWEEN 0 TO 3  MONTHS . THE GENERAL TREND IN THIS AREA IS TO USE CONVENTIONAL FINANCING WITH FIXED RATES , HOWEVER , GOVERNMENT FINANCING IS AVAILABLE.

**SITE**

Dimensions 14X100   Area 1400 sf   Shape rectangular   View N;Res;
Specific Zoning Classification  RM1   Zoning Description  030 RES ROW
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street MACADAM | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley NONE | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  X   FEMA Map # 4207570095G   FEMA Map Date 01/17/2007
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description  materials/condition | Interior  materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☐ Crawl Space | Foundation Walls STONE/AVG | Floors TILE/WD/GD |
| # of Stories 2 | ☒ Full Basement ☐ Partial Basement | Exterior Walls Masonry/sid/GD | Walls DRYWALL/GD |
| Type ☐ Det. ☒ Att. ☐ S-Det./End Unit | Basement Area 474 sq.ft. | Roof Surface Rubber/GD | Trim/Finish WOOD/GD |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts ALUM/GD | Bath Floor CT/GD |
| Design (Style) ROW | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type VINYL-DH/GD | Bath Wainscot CT/GD |
| Year Built 1920 | Evidence of ☐ Infestation | Storm Sash/Insulated YES/GD | Car Storage ☒ None |
| Effective Age (Yrs) 5 | ☐ Dampness ☐ Settlement | Screens YES/GD | ☐ Driveway  # of Cars 0 |

Attic ☒ None   Heating ☒ FWA ☐ HWBB ☐ Radiant   Amenities ☐ Woodstove(s) # 0   Driveway Surface
☐ Drop Stair ☐ Stairs   ☐ Other  Fuel Gas   ☐ Fireplace(s) # 0 ☒ Fence rear   ☐ Garage  # of Cars 0
☐ Floor ☐ Scuttle   Cooling ☐ Central Air Conditioning   ☐ Patio/Deck none ☒ Porch FRONT   ☐ Carport  # of Cars 0
☐ Finished ☐ Heated   ☒ Individual none ☐ Other   ☐ Pool none ☐ Other NONE   ☐ Att. ☐ Det. ☐ Built-in
Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area **above** grade contains:   4 Rooms   2 Bedrooms   1.0 Bath(s)   904 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).   1-150-200 AMP BREAKERS

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C3;Kitchen-remodeled-less than one year ago;Bathrooms-remodeled-less than one year ago;AT TIME OF INSPECTION, SUBJECT WAS FOUND TO BE IN REMODELED CONDITION, WITH NO PHYSICAL, FUNCTIONAL, OR EXTERNAL OBSOLESCENCE NOTED.SEE SOW

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

## Uniform Residential Appraisal Report

| | | | |
|---|---|---|---|
| There are 15 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 120,000 to $ 169,900 . | | | |
| There are 38 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 90,000 to $ 160,000 . | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 5536 Bloyd St Philadelphia, PA 19138 | 5724 N Beechwood St Philadelphia, PA 19138 | | 5309 Wakefield St Philadelphia, PA 19144 | | 5545 Bloyd St Philadelphia, PA 19138 | |
| Proximity to Subject | | 0.29 miles SE | | 0.74 miles SW | | 0.03 miles NE | |
| Sale Price | $ 85,000 | $ 140,000 | | $ 130,000 | | $ 138,333 | |
| Sale Price/Gross Liv. Area | $ 94.03 sq.ft. | $ 151.19 sq.ft. | | $ 164.56 sq.ft. | | $ 153.02 sq.ft. | |
| Data Source(s) | | Bright mls#2016786;DOM 31 | | bright mls#2044674;DOM 77 | | bright mls#2093524;DOM 1 | |
| Verification Source(s) | | assessor records | | assessor records | | assessor records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Conv;0 | | Cash;0 | |
| Date of Sale/Time | | s02/22;c08/21 | | s04/22;c11/21 | | s04/22;c04/22 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1400 sf | 869 sf | 0 | 692 sf | 0 | 1279 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | AT2;ROW | AT2;ROW | | SD2;ROW | 0 | AT2;ROW | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 102 | 122 | 0 | 97 | | 102 | |
| Condition | C3 | C3 | | C3 | | C2 | -5,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | -2,000 | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 4 2 1.0 | 4 3 2.0 | -5,000 | 4 2 1.0 | | 5 2 1.0 | 0 |
| Gross Living Area | 904 sq.ft. | 926 sq.ft. | 0 | 790 sq.ft. | +2,280 | 904 sq.ft. | |
| Basement & Finished Rooms Below Grade | 474sf0sfin | 480sf0sfin | 0 | 360sf0sfin | 0 | 474sf0sfin | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | GHA/NONE | GHA/NONE | | GHW/NONE | 0 | GHA/CA | -5,000 |
| Energy Efficient Items | INSULATED | INSULATED | | INSULATED | | INSULATED | |
| Garage/Carport | None | None | | None | | None | |
| Porch/Patio/Deck | PORCH | PORCH | | PORCH | | PORCH | |
| Net Adjustment (Total) | | ☐ + ☒ - $ -7,000 | | ☒ + ☐ - $ 2,280 | | ☐ + ☒ - $ -10,000 | |
| Adjusted Sale Price of Comparables | | Net Adj. 5.0 % Gross Adj. 5.0 % $ 133,000 | | Net Adj. 1.8 % Gross Adj. 1.8 % $ 132,280 | | Net Adj. 7.2 % Gross Adj. 7.2 % $ 128,333 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)    MLS/PUBLIC RECORDS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)    MLS/PUBLIC RECORDS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 12/08/2016 | 07/25/2003 | 03/30/2010 | 05/31/2016 |
| Price of Prior Sale/Transfer | $12,500 | $1 | $70,000 | $10,100 |
| Data Source(s) | deed of tax records | deed of tax records | deed of tax records | deed of tax records |
| Effective Date of Data Source(s) | 04/27/2022 | 04/27/2022 | 04/27/2022 | 04/27/2022 |

Analysis of prior sale or transfer history of the subject property and comparable sales    SUBJECT HAS NO PRIOR TRANSFERS WITHIN THE PAST 36 MONTHS PER PUBLIC RECORDS.

Summary of Sales Comparison Approach    The above comparables are generally competative with the subject property in terms of most critical points . Adjustments were made to reflect the inherent differences between each sale and the subject . The market area was researched within a .5 mile radius .  Comp 2 was given most weight

Indicated Value by Sales Comparison Approach $    130,000

Indicated Value by: Sales Comparison Approach $ 130,000    Cost Approach (if developed) $ 130,592    Income Approach (if developed) $ 132,000
THE INCOME APPROACH WAS RELIED UPON AS THE BEST INDICATOR OF VALUE.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: THIS APPRAISAL REPORT HAS BEEN PREPARED WITH THE PROPERTY IN AS IS CONDITION .
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 130,000 , as of 04/27/2022 , which is the date of inspection and the effective date of this appraisal.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

**ADDITIONAL COMMENTS**

see addendum

---

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    LAND VALUE WAS ESTIMATED BY REVIEWED OF LAND SALES AND FURTHER SUPPORTED  BY AN ALLOCATION OF APPROXIMATELY  10% OF LAND TO BUILDING RATIO AS ESTABLISHED BY THE APPRAISED VALUE .

**COST APPROACH**

ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW

Source of cost data    ONLINE COST MANUALS, LOCAL CONTRACTORS

Quality rating from cost service    NA    Effective date of cost data    05/22

Comments on Cost Approach (gross living area calculations, depreciation, etc.)    THE COST APPROACH IS NOT DEEMED RELIABLE BUT WAS AT THE LEAST EMPHASIZED IN THIS REPORT.

| | | | | |
|---|---|---|---|---|
| OPINION OF SITE VALUE | | | =$ | 13,000 |
| DWELLING | 904 Sq.Ft. @ $ | 129.00 | =$ | 116,616 |
| BASEMENT | 474 Sq.Ft. @ $ | 20.00 | =$ | 9,480 |
| | | | =$ | |
| Garage/Carport | Sq.Ft. @ $ | | =$ | |
| Total Estimate of Cost-New | | | =$ | 126,096 |

| Less | Physical | Functional | External | |
|---|---|---|---|---|
| Depreciation | 10,504 | | | =$( 10,504) |
| Depreciated Cost of Improvements | | | | =$ 115,592 |
| "As-is" Value of Site Improvements | | | | =$ 2,000 |

Estimated Remaining Economic Life (HUD and VA only)    55 Years    INDICATED VALUE BY COST APPROACH    =$ 130,592

---

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

**INCOME**

Estimated Monthly Market Rent $    1,200    X Gross Rent Multiplier    110    = $    132,000    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)    A GRM OF 110.00 APPEARS TO BE REASONABLE AND SUPPORTIVE.

---

**PROJECT INFORMATION FOR PUDs (if applicable)**

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?    ☐ Yes    ☐ No    Unit type(s)    ☐ Detached    ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases    Total number of units    Total number of units sold

Total number of units rented    Total number of units for sale    Data source(s)

Was the project created by the conversion of existing building(s) into a PUD?    ☐ Yes    ☐ No    If Yes, date of conversion.

Does the project contain any multi-dwelling units?    ☐ Yes    ☐ No    Data Source

Are the units, common elements, and recreation facilities complete?    ☐ Yes    ☐ No    If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?    ☐ Yes    ☐ No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

---

Freddie Mac Form 70 March 2005    UAD Version 9/2011    Page 3 of 6    Fannie Mae Form 1004 March 2005

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:    The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:    The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:        The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

### APPRAISER

Signature _Ettore Petrone_
Name   Ettore Petrone
Company Name   Petrone Valuations,Llc
Company Address   1280 Cherry Ln
    Blue Bell, PA 19422-1804
Telephone Number   215-783-9034
Email Address   ettorep@comcast.net
Date of Signature and Report   05/06/2022
Effective Date of Appraisal   04/27/2022
State Certification #   RL139162
or State License # 
or Other (describe) _____ State # _____
State   PA
Expiration Date of Certification or License   06/30/2023

ADDRESS OF PROPERTY APPRAISED
5536 Bloyd St
Philadelphia, PA 19138
APPRAISED VALUE OF SUBJECT PROPERTY $   130,000
LENDER/CLIENT
Name   Appraisal Nation
Company Name   Commercial Lender,Llc
Company Address   P.O BOX 3201, Vernon, CT 06066
Email Address 

### SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature 
Name 
Company Name 
Company Address 

Telephone Number 
Email Address 
Date of Signature 
State Certification # 
or State License # 
State 
Expiration Date of Certification or License 

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection 
☐ Did inspect interior and exterior of subject property
    Date of Inspection 

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection 

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | LE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 5536 Bloyd St Philadelphia, PA 19138 | 6252 N Beechwood St Philadelphia, PA 19138 | | 2062 E Haines St Philadelphia, PA 19138 | | | |
| Proximity to Subject | | 0.46 miles NE | | 0.98 miles NE | | | |
| Sale Price | $ 85,000 | $ 129,900 | | $ 147,900 | | $ | |
| Sale Price/Gross Liv. Area | $ 94.03 sq.ft. | $ 149.31 sq.ft. | | $ 155.36 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | bright mls#2083440;DOM 63 | | bright mls#2096102;DOM 44 | | | |
| Verification Source(s) | | assessor records | | assessor records | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Listing | -1,299 | Listing | -1,479 | | |
| Concessions | | 0;0 | | 0;0 | | | |
| Date of Sale/Time | | Active | | Active | | | |
| Location | N;Res; | N;Res; | | N;Res; | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 1400 sf | 1050 sf | 0 | 2189 sf | 0 | | |
| View | N;Res; | N;Res; | | N;Res; | | | |
| Design (Style) | AT2;ROW | SD2;ROW | 0 | SD2;ROW | 0 | | |
| Quality of Construction | Q3 | Q3 | | Q3 | | | |
| Actual Age | 102 | 102 | | 97 | 0 | | |
| Condition | C3 | C3 | | C4 | +5,000 | | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 4 / 2 / 1.0 | 4 / 2 / 1.0 | | 4 / 2 / 1.0 | | | |
| Gross Living Area | 904 sq.ft. | 870 sq.ft. | 0 | 952 sq.ft. | 0 | sq.ft. | |
| Basement & Finished | 474sf0sfin | 450sf300sfin | -5,000 | 450sf0sfin | 0 | | |
| Rooms Below Grade | | 1rr0br0.0ba0o | 0 | | | | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | | |
| Heating/Cooling | GHA/NONE | GHA/NONE | | GHA/CA | -5,000 | | |
| Energy Efficient Items | INSULATED | INSULATED | | INSULATED | | | |
| Garage/Carport | None | None | | None | | | |
| Porch/Patio/Deck | PORCH | PORCH | | PATIO | 0 | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -6,299 | ☐ + ☒ - | $ -1,479 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 4.8 % | | Net Adj. 1.0 % | | Net Adj. % | |
| of Comparables | | Gross Adj. 4.8 % $ | 123,601 | Gross Adj. 7.8 % $ | 146,421 | Gross Adj. % $ | |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 12/08/2016 | | | |
| Price of Prior Sale/Transfer | $12,500 | | | |
| Data Source(s) | deed of tax records | deed of tax records | deed of tax records | |
| Effective Date of Data Source(s) | 04/27/2022 | 04/27/2022 | 04/27/2022 | |

Analysis of prior sale or transfer history of the subject property and comparable sales     SUBJECT HAS NO PRIOR TRANSFERS WITHIN THE PAST 36 MONTHS PER PUBLIC RECORDS .

Analysis/Comments     LISTINGS WERE PROVIDED BUT NOT GIVEN WEIGHT.1% WAS USED FOR SP/LP.

Ettore Petrone

# SINGLE FAMILY COMPARABLE RENT SCHEDULE



This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. ~~only for~~ items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|------|---------|------------------|--|------------------|--|------------------|--|
| Address | 5536 Bloyd St Philadelphia, PA 19138 | 6055 N Norwood St Philadelphia, PA 19138 | | 5529 Bloyd St Philadelphia, PA 19138 | | 5959 N Beechwood St Philadelphia, PA 19138 | |
| Proximity to Subject | | 0.31 miles NE | | 0.03 miles NE | | 0.23 miles E | |
| Date Lease Begins / Date Lease Expires | not provided / NA | 01/15/2022 / ANNUALLY | | 11/17/2021 / ANNUALLY | | 09/15/2021 / ANNUALLY | |
| Monthy Rental | If Currently Rented: $ 0 | $ 1,050 | | $ 1,200 | | $ 1,250 | |
| Less: Utilities / Furniture | $ 0 / 0 | $ 0 / 0 | | $ 0 / 0 | | $ 0 / 0 | |
| Adjusted Monthly Rent | $ 0 | $ 1,050 | | $ 1,200 | | $ 1,250 | |
| Data Source | INSPECTION assessor records | bright mls#2061984 assesor records | | bright mls#2039210 assesor records | | bright mls#2028122 assesor records | |

| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
|------------------|-------------|-------------|---------------|-------------|---------------|-------------|---------------|
| Rent / Concessions | | 0 / 0 | | 0 / 0 | | 0 / 0 | |
| Location/View | N;Res; N;Res; | N;Res; N;Res; | | N;Res; N;Res; | | N;Res; N;Res; | |
| Design and Appeal | AT2;ROW AVG | AT2;Row AVG | | AT2;Row AVG | | AT2;Row AVG | |
| Age/Condition | 102 C3 | 102 C4 | +50 | 102 C2 | −50 | 102 C2 | −50 |
| Above Grade Room Count | Total 4 Bdrms 2 Baths 1.0 | Total 4 Bdrms 2 Baths 1.0 | | Total 4 Bdrms 2 Baths 1.0 | | Total 4 Bdrms 2 Baths 1.0 | |
| Gross Living Area | 904 Sq. Ft. | 856 Sq. Ft. | 0 | 896 Sq. Ft. | 0 | 868 Sq. Ft. | 0 |
| Other (e.g., basement, etc.) | 474sf0sfin | 450sf0sfin | 0 | 450sf0sfin | 0 | 450sf0sfin | 0 |
| Other: | PORCH | PORCH | | PORCH | | PORCH | |
| Net Adj. (total) | | ☒ + ☐ − $ | 50 | ☐ + ☒ − $ | −50 | ☐ + ☒ − $ | −50 |
| Indicated Monthly Market Rent | | Net 4.8 % Gross 4.8 % $ | 1,100 | Net 4.2 % Gross 4.2 % $ | 1,150 | Net 4.0 % Gross 4.0 % $ | 1,200 |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments.  (Rent concessions should be adjusted to the market, not to the subject property.)    RENTALS IN THE AREA RANGE FROM $1000-$1400 DEPENDING ON SIZE ,CONDITION, BED AND BATH COUNT. CONCESSIONS ARE NOT PREVALENT .

Final Reconciliation of Market Rent:    Rentals in the area reflect inherent differences and adjusted accordingly Gla varies and adjusted accoordingly.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF    04/27/2022    TO BE $    1,200

Appraiser(s) SIGNATURE    _Ettore Petrone_
NAME    Ettore Petrone

Review Appraiser SIGNATURE
(If applicable)    NAME

Date Property Inspected  04/27/2022    Report Signed  05/06/2022
License or Certification #  RL139162    State  PA
Expiration Date of License or Certification  06/30/2023

Date Property Inspected    Report Signed
License or Certification #    State
Expiration Date of License or Certification
Review Appraiser    ☐ Did    ☐ Did Not    Inspect Subject Property

Freddie Mac Form 1000  (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Fannie Mae Form 1007  (8/88)

# Market Conditions Addendum to the Appraisal Report

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 5536 Bloyd St | City Philadelphia | State PA | ZIP Code 19138 |
|---|---|---|---|---|

Borrower    Brandon Mendenhall

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 18 | 11 | 9 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 3.00 | 3.67 | 3.00 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | 2 | 4 | 15 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.7 | 1.1 | 5.0 | ☐ Declining | ☐ Stable | ☒ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 175,450 | 164,900 | 165,750 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 23 | 20 | 23 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Comparable List Price | 162,400 | 163,500 | 165,500 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 36 | 84 | 58 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 100% | 97% | 98% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).        The typical concessions were found to be 0-3%. The overal values appear to be stable for the past 3-12 months . Listings prices appear to be stable within the past 3-12 months

Are foreclosure sales (REO sales) a factor in the market?    ☐ Yes   ☒ No    If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.    MULTIPLE LISTING SERVICE AND APPRAISERS EXAMINATION OF THE MARKET AREA.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
COMPARABLES ARE REQUIRING MORE DAYS ON MARKET TO SELL, AND ARE COMMANDING A HIGHER PERCENTAGE OF THE LISTING PRICE WHEN SOLD. SELLER CONCESSIONS ARE REQUIRED MORE OFTEN IN RECENT MONTHS.

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | Project Name: | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?    ☐ Yes   ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | Signature |
|---|---|
| Appraiser Name    Ettore Petrone | Supervisory Appraiser Name |
| Company Name    Petrone Valuations,Llc | Company Name |
| Company Address    1280 Cherry Ln, Blue Bell, PA 19422-1804 | Company Address |
| State License/Certification #    RL139162    State  PA | State License/Certification #    State |
| Email Address    ettorep@comcast.net | Email Address |

Freddie Mac Form 71   March 2009          Page 1 of 1          Fannie Mae Form 1004MC   March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Aerial Map

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | | |
| City | Philadelphia | County | Philadelphia | State | PA | Zip Code | 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | | |



## Location Map

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | | |
| City | Philadelphia | County | Philadelphia | State | PA | Zip Code | 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | | |



# Building Sketch

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | |
| City | Philadelphia | County | Philadelphia | State PA | Zip Code | 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | |



Sketch by Apex Sketch v5 Standard™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 474.00 | 474.00 |
| GLA2 | Second Floor | 430.00 | 430.00 |
| BSMT | Basement | 474.00 | 474.00 |
| P/P | Porch | 84.00 | 84.00 |
| Net LIVABLE Area | (rounded) | | 904 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 14.0 x | 26.0 | 364.00 |
| 10.0 x | 11.0 | 110.00 |
| Second Floor | | |
| 14.0 x | 26.0 | 364.00 |
| 6.0 x | 11.0 | 66.00 |
| 4 Items | (rounded) | 904 |

Form SKT.BLDSKI - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Supplemental Addendum

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | | |
| City | Philadelphia | County | Philadelphia | | State | PA | Zip Code | 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | | |

### GENERAL COMMENTS

COMPS 1-3 ARE ARV- ESTIMATED AT $119,000 PER THE APPRAISERS VIEW OF THE ATTCHED SCOPE OF WORK
COMPS 4-6 ARE AS IS -ESTIMATED AT $85,000

UTILITIES WERE ON AND FUNCTIONAL AT THE TIME OF THE INSPECTION .
SMOKE AND CARBON DETECTORS WERE PRESENT AT THE TIME OF THE INSPECTION AND REQUIRED BY JURISDICTION.
ALL APPLIANCES WERE FUNCTIONAL AT THE TIME OF THE INSPECTION.

THE ROOF WAS PARTIALLY OBSERVABLE FROM THE STREET AND FROM AN INTERIOR INSPECTION OF THE SECOND LEVEL CEILINGS, THE ROOF WAS FOUND TO HAVE NO LEAKS OR DEFICIENCIES AND HAS AT LEAST A TWO YEAR REMAINING LIFESPAN.
THE APPRAISER IS NOT A ROOFING CONTRACTOR AND MAKES NO WARRANTIES IN THIS STATEMENT.

THE BASEMENT WAS INSPECTED AND MEETS ALL MINIMUM FNMA GUIDELINES.
THERE IS NO ATTIC IN THE SUBJECT

THE SUBJECT IS LOCATED IN THE OGONTZ SECTION OF PHILADELPHIA CITY CONSISTING OF MIXED STYLE DWELLINGS.
THE SUBJECT AND ITS MARKETPLACE ARE LOCATED PROXIMATE TO  SCHOOLS, CORNER STORES,  SMALL STRIP CENTERS AND OTHER COMMERCIAL AND INDUSTRIAL ACTIVITY. THIS IS COMMONPLACE FOR THE AREA AND WOULD NOT AFFECT ESTIMATED VALUE OR FUTURE MARKETABILITY OF THE SUBJECT .
THE ESTIMATED VALUE FALLS BELOW THE PREDOMINANT NEIGHBORHOOD VALUE BUT WOULD NOT BE CONSIDERED UNDERBUILT

THE OTHER 4% LAND USE REPRESENTS PARKS AND EXCESS LAND.

SITE ADJSTMENTS WERE NOT FELT WARRANTED.
AGE ADJUSTMENTS WERE NOT FELT WARRANTED.

THERE ARE NO SPECIAL CONDITIONS OR OTHER REQUIREMENTS THAT WOULD AFFECT THE MARKET VALUE OR FUTURE MARKETABILITY IN THIS APPRAISAL REPORT.

THE ESTIMATE OF COMPARABLE SALES GROSS LIVING AREA HAVE BEEN MADE BY THE USE OF OUR OWN FILES, THE SELLING AGENCIES ESTIMATE, PUBLIC RECORDS AND A CURB ESTIMATE BY THE APPRAISER.  UNLESS AN ACTUAL MEASUREMENT HAS BEEN MADE, THE FIGURE SHOWN HAS BEEN ROUNDED. SQUARE FOOT ADJUSTMENTS ARE BASED ON THAT FIGURE WHICH HAS BEEN DICTATED IN THIS MARKET PLACE BY PRUDENT BUYERS. THIS AMOUNT BEING $20.00 PER SQUARE FOOT.

I HAVE NOT INSPECTED OR PERFORMED ANY SERVICES ON THE SUBJECT WITHIN THE PAST THREE YEARS PRIOR TO THE ACCEPTANCE OF THIS ASSIGNMENT.

### DIGITAL SIGNATURE(S)

THE SIGNATURE(S) AFFIXED TO THIS REPORT IS A DIGITAL IMAGE CONTROLLED BY A PERSONAL IDENTIFICATION NUMBER IN ACCORDANCE WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE.

### ENVIRONMENTAL DISCLAIMER

THE VALUE ESTIMATED IS BASED ON THE ASSUMPTION THAT THE PROPERTY IS NOT NEGATIVELY AFFECTED BY THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS UNLESS OTHERWISE STATED IN THIS REPORT. THE APPRAISER IS NOT AN EXPERT IN THE IDENTIFICATION OF HAZARDOUS SUBSTANCES OR DETRIMENTAL  ENVIRONMENTAL CONDITIONS. THE APPRAISER'S ROUTINE INSPECTION OF, AND INQUIRIES ABOUT THE SUBJECT PROPERTY, DID NOT DEVELOP ANY INFORMATION THAT INDICATED ANY APPARENT SIGNIFICANT HAZARDOUS SUBSTANCES OR DETRIMENTAL ENVIRONMENTAL CONDITIONS WHICH WOULD AFFECT THE PROPERTY NEGATIVELY UNLESS OTHERWISE STATED IN THIS REPORT.  IT IS POSSIBLE THAT TESTS AND INSPECTIONS MADE BY QUALIFIED HAZARDOUS SUBSTANCE AND ENVIRONMENTAL EXPERT WOULD REVEAL THE EXISTENCE OF HAZARDOUS SUBSTANCES OR DETRIMENTAL  ENVIRONMENTAL CONDITIONS ON OR AROUND THE PROPERTY  THAT WOULD NEGATIVELY AFFECT ITS VALUE.

### ADDITIONAL CERTIFICATION

THE APPRAISER FURTHER CERTIFIES AND AGREES THAT:

1)  THIS APPRAISAL CONFORMS TO THE UNIFORM STANDARD OF PROFESSIONAL APPRAISAL PRACTICE ("USPAP") ADOPTED BY THE APPRAISAL STANDARDS BOARD OF THE APPRAISAL FOUNDATION, EXCEPT THAT THE DEPARTURE PROVISION OF THE USPAP DOES NOT APPLY.

2)  MY COMPENSATION IS NOT CONTINGENT UPON THE REPORTING OF A PREDETERMINED VALUE OR DIRECTION IN VALUE THAT FAVORS THE CAUSE OF THE CLIENT, THE AMOUNT OF THE VALUE ESTIMATE, THE ATTAINMENT OF A STIPULATED RESULT, OR THE OCCURRENCE OF A SUBSEQUENT EVENT.

3)  THIS APPRAISAL ASSIGNMENT WAS NOT BASED ON A REQUESTED MINIMUM VALUATION, A SPECIFIC VALUATION OR THE APPROVAL OF THE LOAN.

### ANALYSIS OF AGREEMENT OF SALE AND PRIOR SALES

PERSONAL PROPERTY HAS BEEN GIVEN NO VALUE IN CONNECTION WITH THIS APPRAISAL, AND DOES NOT AFFECT THE MARKET VALUE OR FUTURE MARKETABILITY OF THE SUBJECT PROPERTY.

### COMMENTS ON FINAL RECONCILIATION

## Supplemental Addendum

| | |
|---|---|
| Borrower | Brandon Mendenhall |
| Property Address | 5536 Bloyd St |
| City | Philadelphia    County  Philadelphia    State  PA    Zip Code  19138 |
| Lender/Client | Commercial Lender,Llc |

THE PURPOSE OF THIS APPRAISAL IS TO ESTIMATE THE MARKET VALUE OF THE SUBJECT PROPERTY AS DESCRIBED HEREIN.

THE FUNCTION OF THIS APPRAISAL IS TO ASSIST THE ABOVE NAMED LENDER IN EVALUATING THE SUBJECT PROPERTY FOR MORTGAGE LENDING PURPOSES.

THIS  APPRAISAL REPORT AS DEFINED BY THE APPRAISAL STANDARDS BOARD OF THE APPRAISAL FOUNDATION AND COMPLIES WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE.

THIS APPRAISAL REPORT IS INTENDED FOR USE IN A MORTGAGE FINANCE TRANSACTION ONLY.  THIS REPORT IS NOT INTENDED FOR ANY OTHER USE.

## Subject Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | |
| City | Philadelphia | County | Philadelphia | State | PA | Zip Code 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | |



### Subject Front

5536 Bloyd St

| | |
|---|---|
| Sales Price | 85,000 |
| Gross Living Area | 904 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1400 sf |
| Quality | Q3 |
| Age | 102 |



### STREET



### Subject ST RIGHT

## Subject Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | |
| City | Philadelphia | County | Philadelphia | State | PA | Zip Code 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | |



**LEFT**

| 5536 Bloyd St | |
|---|---|
| Sales Price | 85,000 |
| Gross Living Area | 904 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1400 sf |
| Quality | Q3 |
| Age | 102 |



**RIGHT**



**REAR**

## Interior Photos

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | | |
| City | Philadelphia | County | Philadelphia | | State | PA | Zip Code  19138 |
| Lender/Client | Commercial Lender,Llc | | | | | | |



**KITCHEN**



**LIVING ROOM**



**FULL BSMT/UTLITY**



**ELEC PANEL**



**BATH**



**BED 1**



**BED 2**

# Comparable Photo Page

| | |
|---|---|
| Borrower | Brandon Mendenhall |
| Property Address | 5536 Bloyd St |
| City | Philadelphia  County Philadelphia  State PA  Zip Code 19138 |
| Lender/Client | Commercial Lender,Llc |



### Comparable 1

5724 N Beechwood St

| | |
|---|---|
| Prox. to Subject | 0.29 miles SE |
| Sale Price | 140,000 |
| Gross Living Area | 926 |
| Total Rooms | 4 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 869 sf |
| Quality | Q3 |
| Age | 122 |



### Comparable 2

5309 Wakefield St

| | |
|---|---|
| Prox. to Subject | 0.74 miles SW |
| Sale Price | 130,000 |
| Gross Living Area | 790 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 692 sf |
| Quality | Q3 |
| Age | 97 |



### Comparable 3

5545 Bloyd St

| | |
|---|---|
| Prox. to Subject | 0.03 miles NE |
| Sale Price | 138,333 |
| Gross Living Area | 904 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1279 sf |
| Quality | Q3 |
| Age | 102 |

# Comparable Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Brandon Mendenhall | | | | | |
| Property Address | 5536 Bloyd St | | | | | |
| City | Philadelphia | County | Philadelphia | State PA | Zip Code | 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | |



### Comparable 4

6252 N Beechwood St
Prox. to Subj.  0.46 miles NE
Sales Price   129,900
G.L.A.      870
Tot. Rooms   4
Tot. Bedrms.  2
Tot. Bathrms.  1.0
Location    N;Res;
View      N;Res;
Site      1050 sf
Quality     Q3
Age       102



### Comparable 5

2062 E Haines St
Prox. to Subj.  0.98 miles NE
Sales Price   147,900
G.L.A.      952
Tot. Rooms   4
Tot. Bedrms.  2
Tot. Bathrms.  1.0
Location    N;Res;
View      N;Res;
Site      2189 sf
Quality     Q3
Age       97

### COMPARABLE 6

Prox. to Subj.
Sales Price
G.L.A.
Tot. Rooms
Tot. Bedrms.
Tot. Bathrms.
Location
View
Site
Quality
Age

# Rental Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5536 Bloyd St | | | | | |
| City | Philadelphia | County | Philadelphia | State PA | Zip Code | 19138 |
| Lender/Client | Commercial Lender,Llc | | | | | |



## Rental 1

6055 N Norwood St

| | |
|---|---|
| Proximity to Subject | 0.31 miles NE |
| Adj. Monthly Rent | 1,050 |
| Gross Living Area | 856 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C4 |
| Age/Year Built | 102 |



## Rental 2

5529 Bloyd St

| | |
|---|---|
| Proximity to Subject | 0.03 miles NE |
| Adj. Monthly Rent | 1,200 |
| Gross Living Area | 896 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C2 |
| Age/Year Built | 102 |



## Rental 3

5959 N Beechwood St

| | |
|---|---|
| Proximity to Subject | 0.23 miles E |
| Adj. Monthly Rent | 1,250 |
| Gross Living Area | 868 |
| Total Rooms | 4 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C2 |
| Age/Year Built | 102 |

**LICENSE**



**E&O - Page 1**

## AIG SPECIALTY INSURANCE COMPANY

Administrative Offices - 1271 Ave of the Americas FL 37, New York, NY 10020-1304

| | |
|---|---|
| **Certificate Number:** | 026244604-02 |
| **This Certificate forms a part of Master Policy Number:** | 035908521-02 |
| **Renewal of Master Policy Number :** | 035908521-01 |

> NOTICE: THIS INSURANCE IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS AND ONLY APPLIES TO CLAIMS FIRST MADE AGAINST THE CERTIFICATE HOLDER DURING THE CERTIFICATE PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE CERTIFICATE HOLDER AFTER THE END OF THE CERTIFICATE PERIOD UNLESS, AND TO THE EXTENT, A BASIC OR EXTENDED REPORTING PERIOD APPLIES.
>
> NOTICE: DEFENSE EXPENSES ARE INCLUDED WITHIN AND REDUCE THE APPLICABLE LIMIT OF LIABILITY STATED IN THE CERTIFICATE. PLEASE READ THE ENTIRE POLICY CAREFULLY.

NORMAN-SPENCER REAL ESTATE RISK PURCHASING GROUP INC dba
THE AMERICAN ACADEMY OF STATE CERTIFIED APPRAISERS
(A Delaware Corporation)
### CERTIFICATE DECLARATIONS

**1. Name and Address of Certificate Holder:**   Petrone Valuations, LLC

1280 Cherry Lane
Blue Bell                                PA      19422

**2. Certificate Period:**   **Effective Date:** 3/6/2022   **to Expiration Date:** 3/6/2023
12:01 a.m. Standard Time at the Address of the Certificate Holder shown in item 1. above

**2a. Retroactive Date:**   3/6/2006
12:01 a.m. Standard Time at the Address of the Certificate Holder shown in item 1. above

**3. Limit of Liability:**   $  1,000,000  each claim
$  1,000,000  aggregate limit

**4. Deductible:**   $  -  each claim

**5. Professional Covered Services insured by this policy are:** REAL ESTATE APPRAISAL SERVICES

| | | | | |
|---|---|---|---|---|
| **6. Advance Certificate Holder Premium:** | $561.00 | Surplus Lines Tax | 16.83 |
| | | Stamping Fee | 20.00 |
| **7. Minimum Earned Premium:** 25% or | $140.00 | Risk Purchasing Group Fee | 40.00 |
| **Forms and Endorsements:** | | | |
| See Attached Forms list | | Total: | $ 76.83 |

**Agency Name and Address:**   Norman-Spencer Agency, LLC
8075 Washington Village Drive
Dayton, OH 45458

> IT IS HEREBY UNDERSTOOD AND AGREED THAT THE CERTIFICATE HOLDER AGREES TO ALL TERMS AND CONDITIONS AS SET FORTH IN THE ATTACHED MASTER POLICY.

County: Montgomery

_____
Authorized Representative OR
Countersignature (in states where applicable)       **Date:** February 7, 2022

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is not covered by the Pennsylvania Property and Casualty Insurance Guaranty Association. Brian Norman 8075 Washington Village Dr Dayton OH 45458

PRG 4110 (5/20)

**E&O - Page 2**

| FORMS SCHEDULE | | |
|---|---|---|

| Certificate Holder: | Petrone Valuations, LLC | |
|---|---|---|
| Certificate Number: | 026244604-02 | Effective Date:   03/06/22 |

| Form Number | Edition Date | Title |
|---|---|---|
| PRG 4108 | 05/20 | Real Estate Appraisers Professional Liability Coverage Form |
| PRG 4110 | 05/20 | Real Estate Appraisers - Certificate Declarations - AIG Specialty |
| PRG 2078 | 10/20 | Addendum to the Declarations - Signature page |
| PRG 3935 | 02/16 | Premises Liability Coverage Amendatory Endorsement |
| 89644 | 06/13 | Economic Sanctions Endorsement |
| 91222 | 09/16 | Policyholder Notice |
| 118477 | 03/15 | Policyholder Notice - Taxes, Assessments and/or Surcharges |
| 119914 | 10/16 | Recording and Distribution of Material or Information In Violation of Law Exclusion Endorsement |
| PRG 4026 | 09/19 | Access Or Disclosure Of Confidential Or Personal Information Exclusion Endorsement |
| PRG 4027 | 09/19 | Real Estate Appraisers Enhancement Endorsement |
| 52165 | 05/08 | Pennsylvania Amendatory Endorsement |
| PRG 4109 | 05/20 | Real Estate Appraisers - Master Policy Declarations - AIG |

PRG 4110 (5/20)

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished on July ___, 2026, by CM/ECF or by regular U.S. Mail:

| *Debtor* | represented by | **Matthew Fornshell** |
|---|---|---|
| **RAD Diversified REIT, Inc.** | | Ice Miller LLP |
| Jointly Administered with | | 250 West Street, Suite 700 |
| 26-bk-01637-CPM, 26-bk-01638-CPM, | | Columbus, OH 43215-7509 |
| 26-bk-01639-CPM, 26-bk-01640-CPM | | 614-462-2700 |
| 11418 US-19 N. | | |
| Port Richey, FL 34688 | | **Jessey James Krehl** |
| PASCO-FL | | Pack Law |
| Tax ID / EIN: 82-2026337 | | 4649 Ponce de Leon Boulevard |
| | | Ste 405 |
| | | Coral Gables, FL 33146 |
| | | 850-408-9952 |
| | | Email: jessey@packlaw.com |
| | | |
| | | **Joseph A Pack** |
| | | Pack Law |
| | | 4649 Ponce de Leon Boulevard |
| | | Ste 405 |
| | | Coral Gables, FL 33146 |
| | | 305-916-4500 |
| | | Email: Joe@packlaw.com |
| | | |
| *U.S. Trustee* | represented by | **Nicole Peair** |
| **United States Trustee - TPA** | | Timberlake Annex |
| Timberlake Annex, Suite 1200 | | 501 E Polk Street, Suite 1200 |
| 501 E Polk Street | | Tampa, FL 33602 |
| Tampa, FL 33602 | | 813-228-2000 |
| 813-228-2000 | | Email: Nicole.W.Peair@USdoj.gov |
| | | |
| *Creditor Committee* | represented by | **John D Elrod** |
| **Unsecured Creditors' Committee** | | Greenberg Traurig, LLP |
| c/o Greenberg Traurig | | Terminus 200 |
| 3333 Piedmont Road, NE | | 3333 Piedmont Road, NE |
| Suite 2500 | | Suite 2500 |
| Atlanta, GA 30305 | | Atlanta, GA 30305 |
| United States | | 678-553-2259 |
| 678-553-2100 | | Fax : 678-553-2212 |

Email: elrodj@gtlaw.com

**Danielle S Kemp**
Greenberg Traurig, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
813-318-5700
Fax : 813-318-5900
Email: kempd@gtlaw.com


Attorney for Secured Creditor
2313 W. Violet St.
Tampa, Florida  33603
flbankruptcy@rlselaw.com
Telephone No.:  (813) 656-8801
Facsimile No.: (813) 656-8802

By:/s/ Amy M. Kiser
Amy M. Kiser, ESQ.
Florida Bar# 46196