UNITED STATES BANKRUPTCY
COURT MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION
www.flmb.uscourts.gov


| | |
|---|---|
| In re: | Chapter 11 |
| RAD DIVERSIFIED REIT, INC.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; and | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC | Case No. 8:26-bk-01640-CPM |
| Debtors. | |
| _____/ | |

### U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II'S MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE  PROTECTION PAYMENTS

Secured Creditor, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II, by and through its undersigned counsel, respectfully moves this Court for relief from the automatic stay or, in the alternative, for adequate protection payments and in support of its Motion states as follows:

1.      U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Greene Street Funding Trust II (together with any successor or assign, "Movant") hereby moves this Court, pursuant to 11 U.S.C. § 361(1); for an Order directing the Debtor to make adequate protection payments, or, in the alternative, to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor`s premises located at 5518

Bloyd Street, Philadelphia Pa. the "Property").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. "1334(b) and 157(a) and 362(d) of Title 11, United States Code (hereinafter referred to as the "Code"). Furthermore, this is a core proceeding pursuant to 28 U.S.C. '157(b)(2)(G).

3.      Movant is a secured creditor of the Debtor pursuant to a Note executed by RAD DIVERSIFIED REIT, INC. (the "Debtor") on May 26, 2022 whereby the Debtor promised to  repay $112,000.00 plus interest to Movant's predecessor in interest (the "Note"). To secure the repayment of the Note, the Debtor executed a Mortgage (the "Mortgage," Note and Mortgage, collectively, the "Loan") in favor of Movant's predecessor in interest, which was recorded on June 7, 2022, in the Office of the Clerk of Philadelphia County in Official Records with Doc Id 54052482 (the "Mortgage") encumbering the Property. The Loan was ultimately assigned to Movant by an assignment of mortgage (the "Assignment of Mortgage"). Copies of the Note, Mortgage, and Assignments of Mortgage are attached hereto as **Exhibit A**.

4.      Prior to the Bankruptcy filing, the loan was subject of a Mortgage Foreclosure Action under Case No.250702225 filed in the Court of Common Pleas of Philadelphia County, Pennsylvania that resulted in an In-Rem Judgment for Failure to Answer and Assessment of Damages (the "Judgment") in the amount of 158,946.13. A copy of the Judgment is attached hereto as **Exhibit B.**

5.      A Petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on March 1, 2026.

6.      The Debtor has failed to make current mortgage payments due under the terms of the Loan. As of the filing date of the Debtor's Petition, the loan remains contractually due for June 1, 2024, with total pre-petition debt in the approximate amount of $170,927.46 and

approximate pre-petition arrears in the amount of $61,403.78.

7.      Additionally, Debtor has failed to make post-petition payments beginning with the April 1, 2026 payment.

8.      Further, Movant has been paying the taxes and lender force placed insurance policy on the Property.

9.      As of the filing date of this instant Bankruptcy Petition, the monthly post-petition payment is $1,308.07. Movant requests that Debtor be required to remain current with all post-petition payments during the pendency of this Bankruptcy case.

10.     The estimated market value of the Property is $74,200.00.  The basis for such valuation is the Debtor's schedules.

11.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,350.00 in legal fees and $199.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

**Legal Argument**

12.     Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); In re Stewart, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection per se. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. See In re Senior Care Properties, Inc., 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has

generally been held to be insufficient. In re Big Dog II, LLC, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

13.    Here, the value of the Property is $72,400.00 (See Exhibit C). Movant's lien, as of the petition date, totals $170,927.46 There is no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

14.    Moreover, relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a movant under 11 U.S.C. § 362(d)(2)(A) establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. §362(g)(2); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the property is essential for an effective reorganization that is in prospect. This means that there must be a reasonable possibility of a successful reorganization within a reasonable amount of time. Timbers, 484 U.S. at 375.

15.    Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. The Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage through a Plan. Thus, Debtor failed to meet its burden under 11 U.S.C. § 362(g)(2).

16.    Further, relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." See In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008)

(citing, In re Dixie Broad., Inc. 871 F.2d 1023, 1026 (11th Cir. 1989); See also, e.g., In re Jefferson County, Alabama, 484 B.R. 427 (Bankr. N.D. Ala. 2012).

17.     A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. In re Harlan, 783 F.2d 839 (9th Cir. 1986); In re Ellis, 60 B.R. 432 (B.A.P.)

18.     Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. In re Harlan, 783 F.2d 839 (9th Cir. 1986).

19.     Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). In re Three Tuns, Inc., 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

20.     Pursuant to 11 U.S.C. §361, Movant is entitled to receive full monthly payments for adequate protection payments.  Debtor should also be required to produce immediate proof of paid hazard insurance listing Movant as loss payee.

21.     Additionally, 11 U.S.C. §362(d)(1) of the Bankruptcy Code provides that a court shall, upon motion, grant relief from that automatic stay for cause, which includes the lack of adequate protection of an interest in property, of the moving party.

22.     11 U.S.C. § 363(e) provides, that, "at any time, on request of an entity that has an interest in property used… the court, with or without a hearing, shall prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

23.     Accordingly, Movant is entitled to adequate protection because the Debtor is using the collateral of Movant, a secured creditor. *See In re Harold & Williams Development Co.,* 163 B.R. 77, 78 (Bankr. E.D. Va. 1994) ("Section 363(e) of the Bankruptcy Code authorizes the court to condition sale, use or lease of property as is necessary to provide adequate protection of an entity's interest."); *see also Ford Motor Credit Co. v. JKJ Chevrolet, Inc. (In re JKJ Chevrolet, Inc.),* 117 F.3d 1413 (4th Cir. 1997); *Travelers Life Insurance and Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.),* 98 B.R. 170, 173 (S.D.N.Y. 1989); *In re 354 East 66th Street Realty Corp.,* 177 B.R. 776, 781 (Bankr. E.D.N.Y. 1995).

24.     When a creditor's interest is not adequately protected, an award of adequate protection is mandatory. *See* 11 U.S.C. § 363(e) ("the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection") (emphasis added); *see also Metromedia Fiber Network SERVs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.),* 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary -- it states that the court 'shall' grant the relief specified, at any time, on the request of a secured entity."); *In re Waste Conversion Techs., Inc.,* 205 B.R. 1004, 1007 (D. Conn. 1997) (adequate protection is "recognized as a fundamental right afforded secured creditors in bankruptcy proceedings.").

25.     Movant respectfully requests that Debtor be ordered to immediately make full monthly mortgage payments, effective with the first post-petition payment due April 1, 2026, to protect against further erosion of the value of the Property; and for Debtor produce proof of paid

hazard insurance listing Movant as loss payee within 14 days of the court's order.  Alternatively, if the Debtor cannot adequately protect Secured Creditor's interest in the Property, relief from stay should be granted so that Secured Creditor can exercise its in rem rights in the Property.

26.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests an Order granting relief from the automatic stay or in the alternative granting adequate protection payment in the full monthly amount of contractual monthly payment;  for proof of paid hazard insurance;  and for such other, further and different relief as to this Court may deem just, proper, and equitable, including its fees and costs for bringing this motion.

Rubin Lublin, LLC
Attorney for Movant
2313 W. Violet St.
Tampa, Florida 33603
Bankruptcy@rlselaw.com
Telephone No.: (813) 656-8801

/s/_Amy M. Kiser
Amy M. Kiser, Esq.
Florida Bar# 46196

EXHIBIT A

# COMMERCIAL PROMISSORY NOTE



INTERNAL FILEN███████OMMERCIAL.NOTE.pdf

Lender Loan Numb

## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **RAD DIVERSIFIED REIT, INC.** (the "Borrower"), a Maryland corporation with a principal place of business of 7 St. Paul Street, Suite 820, Baltimore, MD 21202 promises to pay to the order of **Commercial Lender LLC**, a Delaware limited liability company with a mailing address of PO Box 3801, Vernon, CT 06066, or its assigns (collectively, the "Holder"), the principal sum of **One Hundred Twelve Thousand Dollars and No Cents ($112,000.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 6.5286% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

A. Leasing Covenant. By September 1st, 2022, Borrower must submit to Holder current, written, arm's-length leases for the following units of the Premises:

| Unit | Minimum Monthly Rent |
|---|---|
| 5518 Bloyd St, Philadelphia, PA 19138 | $1,125.00 |

Should Borrower fail to satisfy the foregoing obligation, the rate of interest will increase by two (2) percentage points. Upon satisfaction of the foregoing condition, the rate of interest will return to 6.5286% per annum.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on June 1, 2052 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on July 1, 2022 and continuing on the first (1st) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from June 1, 2022 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on June 1, 2022, a fixed interest rate equal to the interest rate in effect as of June 1, 2022, and the outstanding principal balance of the Note as of June 1, 2022. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$710.02**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1st) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such



**Page 1 of 5**

payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal FIVE PERCENT (5.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal FOUR PERCENT (4.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Any failure by Borrower to satisfy a Condition Precedent set forth in the Loan Agreement; (e) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Three Percent (23%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to

**Page 2 of 5**

be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note"), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Brandon D. Mendenhall (the "Guarantor"); a certain Mortgage, Assignment of Rents, and Security Agreement (the "Security Instrument") granted by RAD DIVERSIFIED REIT, INC., in favor of Commercial Lender LLC, encumbering the real property and improvements at 5518 Bloyd St, Philadelphia, PA 19138.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

**13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT,**

Page

WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on __*06*__ ____*MAY*____, 2022.

RAD DIVERSIFIED REIT, INC.



By: _____

Name: Brandon D. Mendenhall

Title: President

STATE OF __*Florida*__                    )
                                           )ss. _____
COUNTY OF __*Hillsboro*__                  )

I certify that on __*MAY    26*_____, 2022, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_____
Notary Public

SANDRA J ROQUEMORE
NOTARY PUBLIC • STATE OF FLORIDA
COMMISSION # HH 131020
My Commission Expires 06/17/2025

Page 5 of 5



USB Barcode: ███    USB Document Sak: ███    USB Loan Id: ███

USB Account: ███

USB Pool: ███

Name:    Brandon Mendenhall

Document Type:    NOEN    - NOEN- NOTE ENDORSEMENT

Document Notation:    COMMERCIAL LENDER LLC TO BLANK



# ALLONGE TO COMMERCIAL PROMISSORY NOTE

This Allonge to Commercial Promissory Note is to be affixed to and made a part of that certain Commercial Promissory Note in the stated principal amount of **One Hundred Twelve Thousand Dollars and No Cents ($112,000.00)**, executed by **RAD DIVERSIFIED REIT, INC.**, a Maryland corporation with a principal place of business of 7 St. Paul Street, Suite 820, Baltimore, MD 21202 and made to the order of **Commercial Lender LLC**, a Delaware limited liability company, having an address of PO Box 3201, Vernon, CT 06066.

Pay to the order of _____, WITHOUT RECOURSE OR WARRANTY.

Dated as of June 6, 2022.

**Commercial Lender LLC**

By: _____
Angela DiTommaso, Authorized Signer

| | | |
|---|---|---|
| STATE OF CONNECTICUT | ) | |
| | )ss. South Windsor | |
| COUNTY OF HARTFORD | ) | |

I certify that on June 6, 2022, **Angela DiTommaso** came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Authorized Signer of Commercial Lender LLC, a Delaware limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____
Notary Public



CECELIA RITSKOWITZ
Notary Public of Connecticut
My Commission Expires 03/31/2025

INTERNAL FILENAME:

··········· Space Above Line for Recorder's Use ····························

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

TAX PARCEL
NUMBER(S):                                    12223400

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>Commercial Lender LLC<br>PO Box 3801<br>Vernon, CT 06066 | Commercial Lender LLC<br>PO Box 3801<br>Vernon, CT 06066 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | Commercial Lender LLC<br>PO Box 3801<br>Vernon, CT 06066 |
| SIGNATURE: | |
| | AGENT ON BEHALF OF THE MORTGAGEE |

Lender Loan Number

Unofficial Copy (watermarks repeated across page)

06/07/2022 12:17 PM    Page 1 of 6    Rec Fee: $256.75
Receipt#: 22-96122
Records Department    Doc Code: D
State RTT: $1,383.33    Local RTT: $4,534.56

Prepared by and Return to:

Assurance Abstract Corp
7929 Bustleton Avenue
Philadelphia, PA 19152
215-331-4200

File No. AF-12410-A

OPA# 12-2-2334-00

**This Indenture**, made the 24 day of May, 2022,

**Between**

**5546 BLOYD STREET ACQUISITION, LLC (A PA LIMITED LIABILITY COMPANY)**

(hereinafter called the Grantor), of the one part, and

**RAD DIVERSIFIED REIT INC. (A MD CORPORATION)**

(hereinafter called the Grantee), of the other part,

**Witnesseth**, that the said Grantor for and in consideration of the sum of **One Hundred Thirty-Eight Thousand Three Hundred Thirty-Three And 00/100 Dollars ($138,333.00)** lawful money of the United States of America, unto it well and truly paid by the said Grantee, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained and sold, released and confirmed, and by these presents does grant, bargain and sell, release and confirm unto the said Grantee, its successors and/or assigns.

Street Address: **5518 Bloyd Street, Philadelphia, PA 19138**

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Southwesterly side of Bloyd Street at the distance of 149 feet Northwestwardly from the Northwesterly side of Church Lane (formerly Mill Street) in the 12th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Bloyd Street 14 feet and extending of that breadth in length or depth Southwestwardly between lines parallel with the said Church Lane, 100 feet including on the rear end thereof a certain 3 feet wide alley leading Northwestwardly and Southeastwardly and communicating at its Northerly and Southerly ends thereof with 2 other 3 feet wide alleys leading Northeastwardly into the said Bloyd Street.

TOGETHER with the free and common use, right, liberty and privilege of the above mentioned alley as and for an alley, passageway and watercourse at all times hereafter, forever, in common with the owners, tenant and occupiers of the lots of ground bounding thereon and entitled to the use thereof.

SUBJECT, however, to the proportionate part of the expense of keeping said alley in good order, condition and repair.

BEING known as No. 5518 Bloyd Street.

Being the same premises which Jewell Williams, Sheriff, of the County of Philadelphia in the Commonwealth of Pennsylvania by Deed dated 4/19/2016 and recorded 6/7/2016 in Philadelphia County as Document No. 53066985 conveyed unto 5546 Bloyd Street Acquisition LLC, in fee.

𝕿𝖔𝖌𝖊𝖙𝖍𝖊𝖗 𝖜𝖎𝖙𝖍 all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever of it, the said grantor, as well at law as in equity, of, in and to the same.

𝕿𝖔 𝖍𝖆𝖛𝖊 𝖆𝖓𝖉 𝖙𝖔 𝖍𝖔𝖑𝖉 the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, to and for the only proper use and behoof of the said Grantee, its successors and assigns, forever.

𝕬𝖓𝖉 the said Grantor, for itself, its successors and assigns, does, by these presents, covenant, grant and agree, to and with the said Grantee, its successors and assigns, that it, the said Grantor, and its successors and assigns, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, its successors and assigns, against it, the said Grantor, and its successors and assigns, will **WARRANT SPECIALLY** and defend against the lawful claims of all persons claiming by, through or under the said Grantor but not otherwise.

2

Unofficial Copy

**In Witness Whereof**, the party of the first part has caused its common and corporate seal to be affixed to these presents by the hand of its Authorized Signatore. Dated the day and year first above written.

5546 BLOYD STREET
ACQUISITION, LLC (A PA
LIMITED LIABILITY COMPANY)

By: _____
Travis Robert-Ritter,
Authorized Signatore

_____

[SEAL]

State of Florida          } ss
County of Dade

This record was acknowledged before me on  May 24 ,2022  by  Travis Robert-Ritter  as  Authorized Signatore , who represents that he is authorized to act on behalf of  5546 Bloyd Street Acquisition, LLC (a PA Limited Liability Company) .

_____
Notary Public
My commission expires  12/24/23

The precise residence and the complete post office address of the above-named Grantee is:

10808 Foothill Blvd #160-347
Rancho Cucamonga, CA 91730

_____
On behalf of the Grantee

Notary Public State of Florida
Alicia Novo Varela
My Commission GG 942777
Expires 12/26/2023

File No.  **AF-12410-A**

Record and return to:
*Assurance Abstract Corp*
**7929 Bustleton Avenue**
**Philadelphia, PA 19152**

3

# Deed

OPA# 12-2-2334-00

5546 Bloyd Street Acquisition, LLC (a PA
Limited Liability Company)

TO

RAD Diversified REIT Inc. (a MD
Corporation)

Assurance Abstract Corp
7929 Bustleton Avenue
Philadelphia, PA 19152

Unofficial Copy



5405246 07/16/2022 12:17 PM

pennsylvania
DEPARTMENT OF REVENUE
(EX) MOD 06-19 (FI)

**REV-183**

BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG, PA 17128-0603

1830019105

**REALTY TRANSFER TAX STATEMENT OF VALUE**
COMPLETE EACH SECTION

**RECORDER'S USE ONLY**

State Tax Paid:

| Book: | Page: |
|---|---|
| Instrument Number: | |
| Date Recorded: | |

## SECTION I — TRANSFER DATA

Date of Acceptance of Document    **05  26  2022**

| Grantor(s)/Lessor(s) | Telephone Number | Grantee(s)/Lessee(s) | Telephone Number |
|---|---|---|---|
| **5540 Bloyd Street Acquisition, LLC (a PA Limited Liability Company)** | **215-804-9751** | **RAD Diversified REIT, Inc. (a MD Corporation)** | |
| Mailing Address **50 Biscayne Boulevard, Apt 4604** | | Mailing Address **10808 Foothill Blvd #160-347** | |

| City **Miami** | State **FL** | ZIP Code **33132** | City **Rancho Cucamonga** | State **CA** | ZIP Code **91730** |
|---|---|---|---|---|---|

## SECTION II — REAL ESTATE LOCATION

| Street Address **5518 Bloyd Street** | City, Township, Borough **City of Philadelphia** |
|---|---|
| County **Philadelphia** | School District | Tax Parcel Number **12-2-2334-00** |

## SECTION III — VALUATION DATA

Was transaction part of an assignment or relocation?    ◯ YES    ◯ NO

| 1. Actual Cash Consideration **138,333.00** | 2. Other Consideration + | 3. Total Consideration = **138,333.00** |
|---|---|---|
| 4. County Assessed Value **28,300.00** | 5. Common Level Ratio Factor X **1.07** | 6. Computed Value = **30,281.00** |

## SECTION IV — EXEMPTION DATA - Refer to instructions for exemption status.

| 1a. Amount of Exemption Claimed $ | 1b. Percentage of Grantor's Interest in Real Estate % | 1c. Percentage of Grantor's Interest Conveyed % |
|---|---|---|

2. Fill in the Appropriate Oval Below for Exemption Claimed.

◯  Will or intestate succession. _____ (Name of Decedent)        (Estate File Number)

◯  Transfer to a trust. (Attach complete copy of trust agreement and all amendments.)

◯  Transfer from a trust. (Attach complete copy of trust agreement and all amendments.)

◯  Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)

◯  Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

◯  Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)

◯  Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)

◯  Statutory corporate consolidation, merger or division. (Attach copy of articles.)

◯  Other (Provide a detailed explanation of exemption claimed. If more space is needed attach additional sheets.)

## SECTION V — CORRESPONDENT INFORMATION - All inquiries may be directed to the following person:

| Name **RAD Diversified REIT, Inc. (a MD Corporation)** | Telephone Number ( ) |
|---|---|
| Mailing Address **10808 Foothill Blvd #160-347** | City **Rancho Cucamonga** | State **CA** | ZIP Code **91730** |

Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Correspondent or Responsible Party **RAD Diversified REIT, Inc. (a MD Corporation)** | Date **05-26-2022** |
|---|---|

**FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.**



1830019105        1830019105

**PAGE 1**

54052462 Page 6 of 8 06/07/2022 12:17 PM

# PHILADELPHIA REAL ESTATE TRANSFER TAX CERTIFICATION

| DOC. ID |
| --- |
| DATE RECORDED |
| CITY TAX PAID |

Complete each section and file in duplicate with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed, (2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

### A. CORRESPONDENT — All inquiries may be directed to the following person:

| NAME | TELEPHONE NUMBER: |
| --- | --- |
| RAD Diversified REIT, Inc. (a MD Corporation) | AREA CODE ( ) |

| STREET ADDRESS | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- |
| 10808 Foothill Blvd #160-347 | Rancho Cucamonga | CA | 91730 |

### B. TRANSFER DATA

DATE OF ACCEPTANCE OF DOCUMENT: **May 26, 2022**

| GRANTOR (S) / LESSOR (S) | GRANTEE (S) / LESSEE (S) |
| --- | --- |
| 5546 Bloyd Street Acquisition, LLC (a PA Limited Liability Company) | RAD Diversified REIT, Inc. (a MD Corporation) |
| STREET ADDRESS | STREET ADDRESS |
| 50 Biscayne Boulevard, Apt 4604 | 10808 Foothill Blvd #160-347 |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
| --- | --- | --- | --- | --- | --- |
| Miami | FL | 33132 | Rancho Cucamonga | CA | 91730 |

### C. PROPERTY LOCATION

| STREET ADDRESS | CITY, TOWNSHIP, BOROUGH |
| --- | --- |
| 5518 Bloyd Street | City of Philadelphia |

| COUNTY | SCHOOL DISTRICT | TAX PARCEL NUMBER |
| --- | --- | --- |
| Philadelphia | | 12-2-2334-00 |

### D. VALUATION DATA

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
| --- | --- | --- |
| 138,333.00 | + | = 138,333.00 |

| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
| --- | --- | --- |
| 28,300.00 | X 1.07 | = 30,281.00 |

### E. EXEMPTION DATA

| 1A. PERCENTAGE OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED |
| --- | --- |
| | |

2. Check Appropriate Box Below for Exemption Claimed

- [ ] Will or intestate succession _____ (NAME OF DECEDENT) _____ (ESTATE FILE NUMBER)
- [ ] Transfer to Industrial Development Agency.
- [x] Transfer to agent or straw party. (Attach copy of agency/straw party agreement).
- [ ] Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ _____
- [ ] Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).
- [ ] Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____, Page Number _____. Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).
- [ ] Corrective deed (Attach copy of the prior deed).
- [ ] Other (Please explain exemption claimed, if other than listed above.) _____

_Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete._

| SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY | DATE |
| --- | --- |
| RAD Diversified REIT, Inc. (a MD Corporation) | May 26, 2022 |

82-127 (Rev. 9/11)                    (SEE REVERSE)

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made by **RAD DIVERSIFIED REIT, INC.** (the "Mortgagor"), a Maryland corporation with a principal place of business at 7 St. Paul Street, Suite 820, Baltimore, MD 21202; in favor of **Commercial Lender LLC** (the "Mortgagee"), a Delaware limited liability company with a mailing address of PO Box 3801, Vernon, CT 06066, its successors and assigns.

## RECITAL

Mortgagor is indebted to Mortgagee in the principal amount of **One Hundred Twelve Thousand Dollars and No Cents ($112,000.00)**, as evidenced by Mortgagor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Mortgagee, executed and delivered contemporaneously with this Instrument, and maturing on June 1, 2052 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Mortgagor and Mortgagee executed and delivered contemporaneously herewith.

## AGREEMENT

TO SECURE TO Mortgagee the full and prompt payment and performance of each and all of Mortgagor's obligations under the Note, and the performance of the covenants and agreements of Mortgagor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Mortgagor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Mortgagor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Mortgagee, the following described property (collectively, the "Premises"):

A    The real property located in Philadelphia County, Pennsylvania, at **5518 Bloyd St, Philadelphia, PA 19138**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Mortgagor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

C   All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the commonwealth of Pennsylvania, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D   All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E   All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Mortgagor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F   All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Mortgagor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

G   All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of arising from or

thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H    All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Mortgagor does hereby represent and warrant that Mortgagor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Mortgagee contemporaneously with the execution and recordation of this Instrument and insuring Mortgagee's interest in the Premises. Mortgagor does hereby covenant and agree that Mortgagor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Mortgagor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Mortgagee and any other Person authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Mortgagor, as debtors, and Mortgagee, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the commonwealth of Pennsylvania (the "UCC"), for the purpose of securing Mortgagor's obligations under this Instrument and to further secure Mortgagor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Mortgagor hereby grants to Mortgagee a security interest in the Collateral. To the extent necessary under applicable law, Mortgagor hereby authorizes Mortgagee to prepare and file financing statements, continuation statements and financing statement amendments in such form as Mortgagee may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Mortgagee will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Mortgagee may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Mortgagee's

3. Taxes and Other Charges. Mortgagor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Mortgagee's request, Mortgagor shall deliver to Mortgagee within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Mortgagee.

4. Insurance. Mortgagor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Mortgagee, be and become immediately due and payable in full, subject to applicable law, and Mortgagee shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession. (A) As part of the consideration for the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to Mortgagee all Rents. It is the intention of Mortgagor to establish a present, absolute and irrevocable transfer and assignment to Mortgagee of all Rents and to authorizes and empower Mortgagee to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Mortgagee, Mortgagor agrees to execute and deliver such further assignments as Mortgagee may from time to time require. Mortgagor and Mortgagee intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the Rents will be included as a part of the Premises and it is the intention of Mortgagor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Mortgagee, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default,

amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Mortgagor free and clear of, and released from, Mortgagee's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Mortgagor authorizes Mortgagee to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Mortgagee. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, or by a receiver, Mortgagor's license to collect the Rents will automatically terminate and Mortgagee will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Mortgagor will pay to Mortgagee upon demand all the Rents to which Mortgagee is entitled. At any time on or after the date of Mortgagee's demand for the Rents, Mortgagee may give, and Mortgagor hereby irrevocably authorizes Mortgagee to give, notice to all tenants of the Premises instructing them to pay all Rents to Mortgagee. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Mortgagor *any amounts which are actually paid to* Mortgagee *in response to such a notice.* Any such notice by Mortgagee will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Mortgagor will not interfere with and will cooperate with Mortgagee's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Mortgagee will have each of the following rights and may take any of the following actions: (i) Mortgagee may, regardless of the adequacy of Mortgagee's security or the solvency of Mortgagor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Mortgagee in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Mortgagee, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Mortgagee's security, without regard to Mortgagor's solvency and without the necessity of giving prior notice (oral or written) to Mortgagor, Mortgagee may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Mortgagee elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Mortgagor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Mortgagor is a housing cooperative corporation or association, Mortgagor hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision

Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Mortgagor and must be paid out of maintenance charges payable by Mortgagor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Mortgagee or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Mortgagee's entering upon and taking possession and control of the Premises, Mortgagor will surrender possession of the Premises to Mortgagee or the receiver, as the case may be, and will deliver to Mortgagee or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Mortgagee takes possession and control of the Premises, then Mortgagee may exclude Mortgagor and its representatives from the Premises. Mortgagor acknowledges and agrees that the exercise by Mortgagee of any of the rights conferred under this Section 7 will not be construed to make Mortgagee a Mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and Improvements. (D) If Mortgagee enters the Premises, Mortgagee will be liable to account only to Mortgagor and only for those Rents actually received. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable to the Borrower, anyone claiming under or through Mortgagor or anyone having an interest in the Premises, by reason of any act or omission of Mortgagee under Section 7(C) of this Instrument, and Mortgagor hereby releases and discharges Mortgagee from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness as provided in Section 9 of this Instrument. (F) Any entering upon and taking of control of the Premises by Mortgagee or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Mortgagee under applicable law or provided for in this Instrument. (F) During the existence of an Event of Default, Mortgagee may enter into possession of the Premises, with or without legal action, and by force, if necessary; collect all Rents (which term will also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the rents in accordance with Section 7 of this Instrument; and for that purpose Mortgagor hereby confirms The assignment to Mortgagee of all Rents due and to become due under all Leases created after the date of this Instrument, as well as all rights and remedies provided in such Lease or Leases or at law or in equity for the collection of Rents. The taking of possession and collection of Rents by Mortgagee will not be construed to be an affirmation of any Lease. **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES DURING THE EXISTENCE OF AN EVENT OF DEFAULT, MORTGAGOR AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR TO APPEAR FOR AND**

EJECTMENT FOR POSSESSION OF THE PREMISES, IN FAVOR OF Mortgagee, FOR WHICH THIS INSTRUMENT, OR A COPY VERIFIED BY AFFIDAVIT, WILL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT WILL BE DISCONTINUED, OR POSSESSION OF THE PREMISES WILL REMAIN IN OR BE RESTORED TO MORTGAGOR, Mortgagee WILL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OF EJECTMENT TO RECOVER POSSESSION OF THE PREMISES. Mortgagee MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS INSTRUMENT OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN THE ACTION OF EJECTMENT OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PREMISES IN WHICH Mortgagee IS THE SUCCESSFUL BIDDER. THIS AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS INSTRUMENT AND THE NOTE, AND WILL SURVIVE ANY EXECUTION SALE TO Mortgagee.

8. Application of Payments. If at any time Mortgagee receives, from Mortgagor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Mortgagee may apply that payment to amounts then due and payable in any manner and in any order determined by Mortgagee, in Mortgagee's discretion. Neither Mortgagee's acceptance of an amount that is less than all amounts then due and payable nor Mortgagee's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Mortgagor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Mortgagee's Security; Instrument Secures Future Advances. If Mortgagor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Mortgagee's security, or Mortgagee's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Mortgagee, at Mortgagee's option may make such appearances, file such documents, disburse such sums and take such actions as Mortgagee reasonably deems necessary to perform such obligations of Mortgagor and to protect Mortgagee's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Mortgagor has failed to pay

lien on the Premises. Any amounts disbursed by Mortgagee under this Section 9 or under any other provision of this Instrument that treats such disbursement as being made under this Section 9, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 9 will require Mortgagee to incur any expense or take any action. The provisions of this Section 9, including the obligation to indemnify Mortgagee, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Mortgagee's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Mortgagor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq., and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Mortgagee.

11. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Mortgagee's exercise of any particular right or remedy will not in any way prevent Mortgagee from exercising any other right or remedy available to Mortgagee. Mortgagee may exercise any such remedies from time to time and as often as Mortgagee chooses.

to any action brought to enforce any Loan Document. Mortgagor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Mortgagee or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Mortgagee to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Mortgagor is obligated to make under any of the Loan Documents.

13. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Mortgagee or by any other party, Mortgagee will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Mortgagee will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. Further Assurances. Mortgagor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Mortgagee may require from time to time in order to better assure, grant, and convey to Mortgagee the rights intended to be granted, now or in the future, to Mortgagee under this Instrument and the Loan Documents.

15. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the commonwealth of Pennsylvania. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Mortgagee's rights with respect to such security interest created in the commonwealth of Pennsylvania). Nothing in this Section 15 is intended to limit Mortgagee's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. Notices. All notices, consents, approvals, and requests required or permitted under this Instrument or under any other Loan Document shall be given in accordance with the requirements set forth under the Loan Agreement.

17. Successors and Assigns. This Instrument will bind the respective successors and assigns of Mortgagor and Mortgagee, and the rights granted by this Instrument will inure to Mortgagee's successors and assigns.

19. Relationship of Parties; No Third-Party Beneficiary. The relationship between Mortgagee and Mortgagor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Mortgagee and Mortgagor. Nothing contained in this Instrument will constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations or contracts of Mortgagor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Mortgagee at Mortgagor's request, and Mortgagee will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the commonwealth of Pennsylvania, at any time after an Event of Default, regardless of whether Mortgagee has asserted any other right or exercised any other remedy under this Instrument or

shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. At any time during the existence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Indebtedness to be immediately due and payable without further demand and may foreclose the lien of this Instrument by judicial proceedings and may invoke any other remedies permitted by Pennsylvania law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Mortgagee will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs or fifteen percent (15%) of the unpaid balance of the sums secured by this Instrument, but not less than five thousand dollars ($5,000.00), and costs of documentary evidence, abstracts, and title reports.

24. Release. Upon payment of the Indebtedness, this Instrument will become null and void and Mortgagee will discharge this Instrument. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging this Instrument.

25. Purchase Money Mortgage. If the proceeds of the Indebtedness are used by Mortgagor to pay all or a part of the purchase price of the Premises, this Instrument is declared to be a purchase money mortgage and will be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. Con. Stat. Ann. Section 8141, as amended.

26. Future Advances. This Instrument secures future advances. Notwithstanding anything to the contrary contained in this Instrument, the maximum amount of indebtedness outstanding at any time which may be secured by this Instrument is One Hundred Twelve Thousand Dollars and No Cents ($112,000.00), plus accrued and unpaid interest.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has signed and delivered this Mortgage, Assignment of Rents, and Security Agreement or has caused said instrument to be signed and delivered by its duly authorized representative on ___MAY___ ___26___, 2022.

**RAD DIVERSIFIED REIT, INC.**

Witness: _Andrea J Roquord_ ✓

By: _____

Name: Brandon D. Mendenhall

Title: President

Witness: _Sandra J Roquemore_


STATE OF ___Florida___ )
_____ )ss. _____
COUNTY OF ___Hillsborough___ )

I certify that on ___MAY 26___, 2022, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as President of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

_Sandra J Roquemore_
Notary Public



**SANDRA J ROQUEMORE**
NOTARY PUBLIC · STATE OF FLORIDA
COMMISSION # HH 131020
My Commission Expires 05/17/2025

# SCHEDULE 1
# PROPERTY DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Southwesterly side of Bloyd Street at the distance of 149 feet Northwestwardly from the Northwesterly side of Church Lane (formerly Mill Street) in the 12th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Bloyd Street 14 feet and extending of that breadth in length or depth Southwestwardly between lines parallel with the said Church Lane, 100 feet including on the rear end thereof a certain 3 feet wide alley leading Northwestwardly and Southeastwardly and communicating at its Northerly and Southerly ends thereof with 2 other 3 feet wide alleys leading Northeastwardly into the said Bloyd Street.

TOGETHER with the free and common use, right, liberty and privilege of the above mentioned alley as and for an alley, passageway and watercourse at all times hereafter, forever, in common with the owners, tenant and occupiers of the lots of ground bounding thereon and entitled to the use thereof.

SUBJECT, however, to the proportionate part of the expense of keeping said alley in good order, condition and repair.

BEING known as No. 5518 Bloyd Street.

**Property Parcel Number 12-2-2334-00**

Being the same premises which Jewell Williams, Sheriff of the County of Philadelphia in the Commonwealth of Pennsylvania by Deed dated 4/19/2016 and recorded 6/7/2016 in Philadelphia County as Document No. 53066985 conveyed unto 5546 Bloyd Street Acquisition LLC, in fee.

EXHIBIT B



Filed and Attested by the
Office of Judicial Records
23 DEC 2025 03:25 pm
A. STAMATO

HLADIK, ONORATO & FEDERMAN, LLP
David C. Onorato, Esq., ID No. 41217
Thomas M. Federman, Esq., ID No. 64068
Stephen M. Hladik, Esq., ID No. 66287
Robert W. Williams, Esq., ID No. 315501
Thomas C. Dyer, Esq., ID No. 331768
298 Wissahickon Avenue
North Wales, PA 19454
(215) 855-9521

| | |
|---|---|
| GREEN STREET FUNDING TRUST II,<br>*Plaintiff,*<br>v.<br><br>BRANDON D. MENDENHALL<br>RAD DIVERSIFIED REIT, INC.,<br>*Defendants.* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY, PA<br><br>DOCKET NO. 250702225 |

### PRAECIPE TO ENTER JUDGMENT BY DEFAULT

TO THE PROTHONOTARY OF PHILADELPHIA COUNTY:

Kindly enter judgment by default in favor of Plaintiff and against Defendants, Brandon D. Mendenhall, RAD Diversified REIT, Inc., in the above-captioned matter for failure to answer Plaintiff's Complaint within the time prescribed by Pa. R.C.P. No. 1026, and assess Plaintiff's damages as follows:

| | |
|---|---|
| Amount due through April 30, 2025<br>as stated in the Complaint | $142,360.87 |
| Additional Interest due and owing<br>at the *per diem* rate of $69.98 from<br>May 1, 2025 through December 23, 2025 | $16,585.26 |
| **TOTAL** | **$158,946.13** |

Total damages to be assessed at **$158,946.13** together with interest at the aggregate daily rate of $69.98 from December 24, 2025, until the date of entry of final judgment, plus interest thereafter on the judgment, at the rate stated on the subject Note, plus any costs, expenses, attorney's fees and all other amounts due and payable under the Note and Mortgage, up through the sale of the mortgaged premises.

Respectfully submitted,

HLADIK, ONORATO & FEDERMAN, LLP

Date: 12/23/25

__ David C. Onorato, Esq., ID No. 41217
__ Thomas M. Federman, Esq., ID No. 64068
__ Stephen M. Hladik, Esq., ID No. 66287
__ Robert W. Williams, Esq., ID No. 315501
✗ Thomas C. Dyer, Esq., ID No. 331768
*Attorney for Plaintiff*

**AND NOW**, this _____ day of _____, 2025, Judgment is entered in favor of Plaintiff, **GREEN STREET FUNDING TRUST II** and against Defendants, **BRANDON D. MENDENHALL, RAD DIVERSIFIED REIT, INC.**, by Default, for want of an answer, and damages are assessed in the amount of **$158,946.13**, plus interest and costs.

BY THE PROTHONOTARY:

_____

Case ID: 250702225

## Court of Common Pleas - Civil
# Civil Docket Report

🛒 No Items in Cart    🔒 Log In

A $5 Convenience fee will be added to the transaction at checkout.

< Return to Results

---

### 🏷 Case Description

| | |
|---|---|
| **Case ID:** | 250702225 |
| **Case Caption:** | GREEN STREET FUNDING TRUST II VS MENDENHALL ETAL |
| **Filing Date:** | Monday , July 21st, 2025 |
| **Court:** | MORTGAGE FORECLOSURE |
| **Location:** | CITY HALL |
| **Jury:** | NON JURY |
| **Case Type:** | NOT RESIDENTIAL OWNER OCCUP-MR |
| **Status:** | JUDGMENT BY DEFAULT/FINAL DISP |

---

### 🗐 Related Cases

*No related cases were found.*

---

### 📅 Case Event Schedule

*No case events were found.*

---

### 🖥 Case Motions

*No case motions were found.*

---

### 👤 Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | WILLIAMS, ROBERT W |
| **Address:** | HLADIK, ONORATO, & FEDERMAN, 298 WISSAHICKON AVE. NORTH WALES PA 19454 (215)855-9521 rwilliams@hoflawgroup.com | **Aliases:** | *none* | |
| | | | | |
| 2 | | 1 | PLAINTIFF | GREEN STREET FUNDING TRUST II |

1/8

| | | | | |
|---|---|---|---|---|
| **Address:** | 60 LIVINGSTON AVENUE<br>EP-MN-WS3D<br>ST. PAUL MN 55107 | **Aliases:** | *none* | |
| | | | | |
| 3 | | | DEFENDANT | MENDENHALL, BRANDON D |
| **Address:** | 7 SAINT PAUL STREET<br>SUITE 820<br>BALTIMORE MD 21202 | **Aliases:** | *none* | |
| | | | | |
| 4 | | | DEFENDANT | RAD DIVERSIFIED REIT INC |
| **Address:** | 5518 BLOYD STREET<br>PHILADELPHIA PA 19138 | **Aliases:** | *none* | |
| | | | | |
| 5 | 1 | | ATTORNEY FOR PLAINTIFF | DYER, THOMAS C |
| **Address:** | 2005 MARKET STREET<br>SUITE 2600<br>PHILADELPHIA PA 19106<br>(215)564-8696<br>tdyer@stradley.com | **Aliases:** | *none* | |
| | | | | |
| 6 | 1 | | ATTORNEY FOR PLAINTIFF | HLADIK, STEPHEN M |
| **Address:** | HLADIK, ONORATO & FEDERMAN LLP<br>298 WISSAHICKON AVE<br>NORTH WALES PA 19454<br>(215)855-9521<br>shladik@hoflawgroup.com | **Aliases:** | *none* | |
| | | | | |
| 7 | | | MOTION ASSIGNMENT JUDGE | YU, KAY |
| **Address:** | RM 606, CITY HALL<br>BROAD AND MARKET ST.<br>PHILADELPHIA PA 19107 | **Aliases:** | *none* | |
| | | | | |
| 8 | | | TEAM LEADER | ROBERTS, JOSHUA |
| **Address:** | 538 CITY HALL<br>PHILADELPHIA PA 19107 | **Aliases:** | *none* | |
| | | | | |
| 9 | | | JUDGE | HALL, CHRISTOPHER |
| **Address:** | STOUT CENTER<br>PHILADELPHIA PA 19107 | **Aliases:** | *none* | |
| | | | | |
| 10 | | | ATTORNEY FOR DEFENDANT | KATZ, JEFFREY |
| **Address:** | KBK LAW GROUP<br>100 S BROAD ST<br>SUITE 1208<br>PHILADELPHIA PA 19102<br>(267)761-5090<br>jeffrey@kbklawgroup.com | **Aliases:** | *none* | |

### 📖 Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|



| 21-JUL-2025 11:05 AM | ACTIVE CASE | | |
|---|---|---|---|
| **Docket Entry:** | E-Filing Number: 2507044454 | | |

| 21-JUL-2025 11:05 AM | COMMENCEMENT OF CIVIL ACTION | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>Final Cover<br>MR Notice | | 🛒 Add All to Cart |
| **Docket Entry:** | *none.* | | |

| 21-JUL-2025 11:05 AM | COMPLAINT FILED NOTICE GIVEN | WILLIAMS, ROBERT W | $142,360.87 |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Complaint Sent for Filing 07-21-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. NOTICE OF INTENT UNDER ACT 6 HAS BEEN SENT TO THE DEFENDANT. | | |

| 22-JUL-2025 04:28 PM | WAITING-ISSUE CASE MGMT ORDER | | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| 28-AUG-2025 02:01 PM | ATTEMPTED SERVICE - NOT FOUND | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - NSM on Both Defendants at 5518 Bloyd Street.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 08/02/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |

| 28-AUG-2025 02:02 PM | ATTEMPTED SERVICE - NOT FOUND | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - NSM on Both Defendants at 1935 Parkerhill Lane.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 07/26/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |

| 28-AUG-2025 02:03 PM | ATTEMPTED SERVICE - NOT FOUND | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - NSM on Both Defendants at 10808 Foothill Boulevard.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 07/24/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |



| 28-AUG-2025 02:10 PM | ATTEMPTED SERVICE - NOT FOUND | WILLIAMS, ROBERT W | |
|---|---|---|---|
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - NSM on Brandon at 7 Saint Paul Street.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | BRANDON D MENDENHALL NOT FOUND ON 07/25/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |
| 28-AUG-2025 02:11 PM | AFFIDAVIT OF SERVICE FILED | WILLIAMS, ROBERT W | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Completed Service on RAD Diversified at 7 Saint Paul Street.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC BY PERSONAL SERVICE ON 07/25/2025 FILED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |
| 04-SEP-2025 02:09 PM | PRAECIPE TO REINSTATE CMPLT | WILLIAMS, ROBERT W | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Praecipe to Reinstate Complaint Sent for filing 09-04-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |
| 15-SEP-2025 11:29 AM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - NSM on Both at 805 E Bloomingdale Avenue.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 09/09/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |
| 30-SEP-2025 11:27 AM | PRAECIPE TO REINSTATE CMPLT | WILLIAMS, ROBERT W | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Praecipe to Reinstate Sent for Filing 09-30-25.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |
| 23-OCT-2025 08:47 AM | CASE MANAGEMENT ORDER ISSUED | | |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>CMOJS_13.pdf | | 🛒 Add All to Cart |

| Docket Entry: | IT IS HEREBY ORDERED, THAT THE ABOVE CAPTIONED MATTER IS PROJECTED TO BE LISTED FOR TRIAL DURING THE TRIAL MONTH BEGINNING 03-AUG-2026 AND COUNSEL SHOULD ANTICIPATE TRIAL TO BEGIN EXPEDITIOUSLY THEREAFTER. HOWEVER, COUNSEL AND THE PARTIES WILL RECEIVE SUBSEQUENT NOTICE ATTACHING THEM TO A SPECIFIC TRIAL POOL MONTH AND SHOULD ANTICIPATE TRIAL TO BEGIN EXPEDITIOUSLY THEREAFTER. UPON RECEIPT OF THE TRIAL POOL ATTACHMENT NOTICE, ALL COUNSEL AND PARTIES MUST IMMEDIATELY NOTIFY THE COURT IN WRITING OF ANY SCHEDULING CONFLICTS, INCLUDING TRIAL ATTACHMENTS AND PRE-PAID VACATIONS, AND ARE UNDER A CONTINUING OBLIGATION TO NOTIFY THE COURT OF ANY SUBSEQUENT TRIAL ATTACHMENTS DURING THE TRIAL POOL MONTH. THE TRIAL CONFLICT LETTER MUST BE SUBMITTED NOT LATER THAN THE 20TH DAY OF THE MONTH PRIOR TO THE START OF THE TRIAL POOL MONTH. THE COURT WILL NOT RECOGNIZE ANY UNTIMELY CONFLICT NOTIFICATIONS. FAILURE TO NOTIFY THE COURT OF ANY SCHEDULING CONFLICTS MAY RESULT IN THE ISSUANCE OF A RULE TO SHOW CAUSE WHY THE COURT SHOULD NOT IMPOSE APPROPRIATE SANCTIONS. TO ELECTRONICALLY FILE THE TRIAL POOL CONFLICT LETTER, ACCESS THE "EXISTING CASE" SECTION OF THE COURT'S ELECTRONIC FILING SYSTEM. SELECT "CONFERENCE SUBMISSIONS" AS THE FILING CATEGORY. SELECT "TRIAL POOL CONFLICT LETTER" AS THE DOCUMENT TYPE. IF THE CASE IS NOT CALLED FOR TRIAL DURING THE DESIGNATED TRIAL POOL MONTH, IT WILL AUTOMATICALLY BE ASSIGNED TO THE NEXT TRIAL POOL MONTH AND EACH SUBSEQUENT TRIAL POOL MONTH UNTIL THE MATTER IS CALLED TO TRIAL. PARTIES ARE UNDER A CONTINUING OBLIGATION TO ELECTRONICALLY FILE CONFLICT LETTERS BEFORE THE START OF EACH TRIAL POOL MONTH. AND NOW, THIS 23-OCT-2025 IT IS ORDERED THAT: 1. THE CASE MANAGEMENT AND TIME STANDARDS ADOPTED FOR EXPEDITED TRACK CASES SHALL BE APPLICABLE TO THIS CASE AND ARE HEREBY INCORPORATED INTO THIS ORDER. 2. ALL DISCOVERY IN THE ABOVE MATTER SHALL BE COMPLETED NO LATER THAN 06-APR-2026. 3. DISPOSITIVE MOTIONS MUST BE FILED NO LATER THAN 04-MAY-2026. TEN DAYS PRIOR TO THE START OF THE ASSIGNED TRIAL POOL MONTH, ALL COUNSEL SHALL SERVE UPON ALL OPPOSING COUNSEL AND/OR OPPOSING PARTIES AND FILE WITH THE COURT, A PRE-TRIAL MEMORANDUM CONTAINING THE FOLLOWING: (a) A CONCISE SUMMARY OF THE NATURE OF THE CASE IF PLAINTIFF OR THE DEFENSE IF DEFENDANT OR ADDITIONAL DEFENDANT. (b) A LIST OF ALL WITNESSES WHO MAY BE CALLED TO TESTIFY AT TRIAL BY NAME AND ADDRESS. (c) A LIST OF ALL EXHIBITS THE PARTY INTENDS TO OFFER INTO EVIDENCE. COUNSEL SHOULD EXPECT ANY EXHIBIT NOT LISTED TO BE PRECLUDED AT TRIAL; (d) EACH COUNSEL SHALL PROVIDE AN ESTIMATE OF THE ANTICIPATED LENGTH OF TRIAL. ALL MOTIONS IN LIMINE SHALL BE FILED IN ACCORDANCE WITH ELECTRONIC FILING PROCEDURES NOT LATER THAN 15 DAYS PRIOR TO THE START OF TRIAL. RESPONDING COUNSEL SHALL HAVE 10 DAYS AFTER SERVICE TO FILE ANY RESPONSE. FOR POOL CASES, THE START OF THE TRIAL IS DEFINED AS THE FIRST DAY OF THE TRIAL POOL LISTING. REQUESTS TO EXTEND ANY CASE MANAGEMENT DEADLINE OR FOR TRIAL CONTINUANCE MUST BE SUBMITTED BY FILING A MOTION FOR EXTRAORDINARY RELIEF AND FILED PRIOR TO THE EXPIRATION OF THE DEADLINE IN QUESTION. ANY REQUESTS FOR A DATE-CERTAIN TRIAL LISTING MUST BE SUBMITTED IN WRITING WITH SPECIFICITY, INCLUDING THE NEED FOR A LANGUAGE INTERPRETER, WITH A COPY TO OPPOSING PARTY, AND DIRECTED TO THE HONORABLE JOSHUA ROBERTS, TEAM LEADER VIA THE COURT?S ELECTRONIC FILING SYSTEM, AS A TRIAL CONFLICT LETTER. HOWEVER, SAID REQUESTS MAY BE MADE ONLY UNDER EXIGENT CIRCUMSTANCES. IF A PARTY OR WITNESS REQUIRES A LANGUAGE INTERPRETER, IT IS THE OBLIGATION OF THE PARTY WITH THE REQUIREMENT TO REQUEST THE INTERPRETER FROM THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA COURT REPORTER, DIGITAL RECORDING AND INTERPRETER ADMINISTRATION USING THE FORM FOUND AT: HTTPS://WWW.COURTS.PHILA.GOV/PDF/FORMS/COURT-REPORTERS/INTERPRETER-REQUEST-FORM.PDF. THE COURT WILL NOT GRANT CONTINUANCE REQUESTS WHEN COUNSEL OR AN UNREPRESENTED PARTY HAS FAILED TO TIMELY REQUEST A LANGUAGE INTERPRETER. ALL COUNSEL ARE UNDER A CONTINUING OBLIGATION AND ARE HEREBY ORDERED TO SERVE A COPY OF THIS ORDER UPON ALL UNREPRESENTED PARTIES AND UPON ALL COUNSEL ENTERING AN APPEARANCE SUBSEQUENT TO THE ENTRY OF THIS ORDER. JOSHUA ROBERTS, J. 23-OCT-2025 |
| --- | --- |

| 23-OCT-2025 08:47 AM | LISTED FOR TRIAL | | |
| --- | --- | --- | --- |
| **Docket Entry:** | *none.* | | |

| 23-OCT-2025 08:47 AM | NOTICE GIVEN UNDER RULE 236 | | |
| --- | --- | --- | --- |
| **Docket Entry:** | NOTICE GIVEN ON 23-OCT-2025 OF CASE MANAGEMENT ORDER ISSUED ENTERED ON 23-OCT-2025. | | |

| 03-NOV-2025 11:51 AM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
| --- | --- | --- | --- |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> 24-03160 - NSM on Both at 9463 Canyon Oaks Court.pdf | | 🛒 Add All to Cart |
| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 09/11/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) | | |

| 03-NOV-2025 11:52 AM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
| --- | --- | --- | --- |
| **Documents:** | 📄 *Click link(s) to preview/purchase the documents* <br> 24-03160 - NSM on Both at 100 Ashley Drive South.pdf | | 🛒 Add All to Cart |

| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 10/03/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |
|---|---|

| 03-NOV-2025 11:53 AM | ATTEMPTED SERVICE - NOT FOUND | DYER, THOMAS C | |
|---|---|---|---|

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - NSM on Both at 5404 Cypress Center Drive.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL NOT FOUND ON 10/03/2025. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |
|---|---|

| 05-NOV-2025 09:15 AM | MOTION FOR ALTERNATIVE SERVICE | WILLIAMS, ROBERT W | |
|---|---|---|---|

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - MSS for Both Sent for filing 11-05-25.pdf<br>Motion CoverSheet Form | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | 93-25111093 MOTION FOR ALTERNATIVE SERVICE (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |
|---|---|

| 05-NOV-2025 01:11 PM | MOTION ASSIGNED | | |
|---|---|---|---|

| **Docket Entry:** | 93-25111093 MOTION FOR ALTERNATIVE SERVICE ASSIGNED TO JUDGE: HALL, CHRISTOPHER . ON DATE: NOVEMBER 05, 2025 |
|---|---|

| 06-NOV-2025 09:46 AM | ORDER ENTERED/236 NOTICE GIVEN | HALL, CHRISTOPHER | |
|---|---|---|---|

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>ORDER_21.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | 93-25111093 UPON CONSIDERATION OF PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE PURSUANT TO PA.R.C.P. NO. 430 (THE "MOTION"), AND THE AFFIDAVIT OF GOOD FAITH INVESTIGATION ATTACHED THERETO, IT IS HEREBY: ORDERED THAT (I) THE MOTION IS GRANTED AND (II) SERVICE ON DEFENDANTS, BRANDON D. MENDENHALL AND RAD DIVERSIFIED REIT, INC., C/O BRANDON D. MENDENHALL, SHALL BE COMPLETE WHEN: 1. TRUE AND CORRECT COPIES OF THE PLEADING HAVE BEEN MAILED BY FIRST CLASS REGULAR MAIL AND BY CERTIFIED TO THE DEFENDANT?S LAST KNOWN ADDRESS: 5518 BLOYD STREET, PHILADELPHIA, PA 19138 10808 FOOTHILL BLVD., STE 150, RANCHO CUCAMONGA, CA 91730-7612 5404 CYPRESS CENTER DR, STE 320, TAMPA, FL 33609-1044 805 E. BLOOMINGDALE AVE, UNIT 737, BRANDON, FL 33511 9463 CANYON OAKS COURT, RANCHO CUCAMONGA, CA 91730 100 S. ASHLEY DRIVE, SUITE 700, TAMPA, FL 33602 1935 PARKERHILL LANE, CHESTER SPRINGS, PA 19425; AND 2. THE SHERIFF, MARSHAL OR OTHER APPROPRIATE PARTY POSTS A COPY OF THE PLEADING TO BE SERVED ON THE MOST PUBLIC PART OF THE PROPERTY LOCATED AT 5518 BLOYD STREET, PHILADELPHIA, PA 19138, WHICH IS THE SUBJECT OF THIS ACTION IN FORECLOSURE. ...BY THE COURT: HALL, J., 11/5/2025 |
|---|---|

| 06-NOV-2025 09:46 AM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|

| **Docket Entry:** | NOTICE GIVEN ON 06-NOV-2025 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 06-NOV-2025. |
|---|---|

| 14-NOV-2025 01:47 PM | PRAECIPE TO REINSTATE CMPLT | WILLIAMS, ROBERT W | |
|---|---|---|---|

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Praecipe to Reinstate Complaint Sent for Filing 11-14-25.pdf | 🛒 Add All to Cart |
|---|---|---|

| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |
|---|---|

| 17-NOV-2025 11:33 AM | AFFIDAVIT OF SERVICE FILED | WILLIAMS, ROBERT W | |

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Affidavit of Service of Process Sent for Filing 11-17-25.pdf | 🛒 Add All to Cart |

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL BY CERTIFIED MAIL,FIRST CLASS REGULAR MAIL ON 11/14/2025 FILED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |

| 25-NOV-2025 09:28 AM | AFFIDAVIT OF SERVICE FILED | WILLIAMS, ROBERT W | |

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>24-03160 - Completed Posting for Both Defendants.pdf | 🛒 Add All to Cart |

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL BY POSTING PREMISES ON 11/19/2025 FILED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |

| 23-DEC-2025 03:55 PM | JUDGMENT BY DEFAULT/FINAL DISP | DYER, THOMAS C | $158,946.13 |

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>Default Judgment executed _ Mendenhall_RAD Diversified_250702225.pdf | 🛒 Add All to Cart |

| **Docket Entry:** | PRAECIPE FOR ENTRY OF DEFAULT JUDGMENT FILED. JUDGMENT IN FAVOR OF GREEN STREET FUNDING TRUST II AND AGAINST RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL FOR FAILURE TO FILE ANSWER WITHIN REQUIRED TIME. NOTICE UNDER RULE 236 GIVEN. NOTICE UNDER 237.1 GIVEN. AFFIDAVIT OF NON-MILITARY SERVICE FILED. DAMAGES ASSESSED: $158,946.13 |

| 13-JAN-2026 01:02 PM | PRAECIPE TO ISSUE WRIT FILED | WILLIAMS, ROBERT W | |

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>Mendenhall_5518 Bloyd Praecipe for Writ.pdf | 🛒 Add All to Cart |

| **Docket Entry:** | PRAECIPE FOR WRIT OF EXECUTION (RE) FILED. WRIT OF EXECUTION (RE) ISSUED. SUBJECT PREMISES: 5518 BLOYD STREET PHILADELPHIA. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |

| 10-FEB-2026 11:29 AM | AFFIDAVIT OF SERVICE FILED | | |

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>225373.01_AFFIDAVIT1_F1F2B570-D004-AA45-A580-92357D9CB650.pdf<br>CS225373.01 PIC OF POSTING.pdf | 🛒 Add All to Cart |

| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON BRANDON D MENDENHALL BY POSTING OF PREMISES ON 02/01/2026 FILED. |

| 10-FEB-2026 11:31 AM | AFFIDAVIT OF SERVICE FILED | | |

| **Documents:** | 📄 *Click link(s) to preview/purchase the documents*<br>CS225373.02 PIC OF POSTING.pdf<br>225373.02_AFFIDAVIT1_88BFA487-315F-EE45-9F72-87AB56EB4378.pdf | 🛒 Add All to Cart |

| Docket Entry: | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON RAD DIVERSIFIED REIT INC BY POSTING OF PREMISES ON 02/01/2026 FILED. | | |
|---|---|---|---|
| | | | |
| 06-MAR-2026 09:47 AM | SUGGESTION OF BANKRUPTCY FILED | KATZ, JEFFREY | |

**Documents:**

📄 *Click link(s) to preview/purchase the documents*
[250702225 RAD-Green Bank Suggestion of Bankruptcy.pdf](#)

🛒 Add All to Cart

| Docket Entry: | PRAECIPE TO DEFER CASE DUE TO PENDING BANKRUPTCY ACTION UNDER CASE NUMBER: 8:26-BK-01636-CPM (FILED ON BEHALF OF RAD DIVERSIFIED REIT INC) | | |
|---|---|---|---|
| | | | |
| 12-MAR-2026 04:57 PM | AFFIDAVIT OF SERVICE FILED | HLADIK, STEPHEN M | |

**Documents:**

📄 *Click link(s) to preview/purchase the documents*
[250702225 Mendenhall Affserve NOS MSS Mail 2.2.26.pdf](#)

🛒 Add All to Cart

| Docket Entry: | AFFIDAVIT OF SERVICE OF NOTICE OF SALE UPON RAD DIVERSIFIED REIT INC AND BRANDON D MENDENHALL BY CERTIFIED MAIL,FIRST CLASS REGULAR MAIL ON 02/04/2026 FILED. (FILED ON BEHALF OF GREEN STREET FUNDING TRUST II) |
|---|---|

^ Go to Top



🏠 Philadelphia Courts

Questions regarding cases listed on this site can be directed to the Trial Division - Civil Administration at ✉️ civiladminsupport@courts.phila.gov and 📞 (215) 686-8326 or the Office of Judicial Records - Civil at ✉️ OJRCivil@courts.phila.gov and 📞 (215) 686-6652.

User Accepts/Agrees to [Disclaimer](#).

# DRIVE-BY CMA

by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

This analysis has not been performed in accordance with Uniform Standards of Professional Appraisal Practice which require valuers to act as unbiased, disinterested third parties with impartiality, objectivity, and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose. This CMA provides a probable sales price to assist the user in decisions that may result in a disposition of the property. The user understands that this CMA may be provided in anticipation of a listing, and agrees to consider engaging the real estate professional if the property is listed for sale. This CMA may not be used for a loan origination.

| | | | |
|---|---|---|---|
| **Address** | 5518 Bloyd St, Philadelphia, PA 19138 | **Order ID** | 10823575 | **Property ID** | 38243129 |
| **Inspection Date** | 01/22/2026 | **Date of Report** | 01/23/2026 | | |
| **Loan Number** | 10011590 | **APN** | 122233400 | | |
| **Borrower Name** | BRANDON MENDENHALL | **County** | Philadelphia | | |

**Tracking IDs**

| | | | |
|---|---|---|---|
| **Order Tracking ID** | UNKNOWN | **Tracking ID 1** | 10011590 |
| **Tracking ID 2** | -- | **Tracking ID 3** | -- |

## General Conditions

| | |
|---|---|
| **Owner** | RAD DIVERSIFIED REIT INC |
| **R. E. Taxes** | $1,039 |
| **Assessed Value** | $74,200 |
| **Zoning Classification** | Residential |
| **Property Type** | SFR |
| **Occupancy** | Occupied |
| **Ownership Type** | Fee Simple |
| **Property Condition** | Average |
| **Estimated Exterior Repair Cost** | |
| **Estimated Interior Repair Cost** | |
| **Total Estimated Repair** | |
| **HOA** | No |
| **Visible From Street** | Visible |
| **Road Type** | Public |

**Condition Comments**

Subject is in average exterior condition and shows no visible items needing immediate attention.

## Neighborhood & Market Data

| | |
|---|---|
| **Location Type** | Urban |
| **Local Economy** | Stable |
| **Sales Prices in this Neighborhood** | Low: $57200 High: $215,980 |
| **Market for this type of property** | Remained Stable for the past 6 months. |
| **Normal Marketing Days** | <90 |

**Neighborhood Comments**

Urban location is convenient to major roads, universities, and all urban amenities including shopping, restaurants, stadiums, and theaters.

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Current Listings

| | Subject | Listing 1 * | Listing 2 | Listing 3 |
|---|---|---|---|---|
| **Street Address** | 5518 Bloyd St | 540 E Ashmead St | 5508 Jane St | 5758 N 20th St |
| **City, State** | Philadelphia, PA | Philadelphia, PA | Philadelphia, PA | Philadelphia, PA |
| **Zip Code** | 19138 | 19144 | 19138 | 19138 |
| **Datasource** | Tax Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 0.44 ¹ | 0.34 ¹ | 0.39 ¹ |
| **Property Type** | SFR | SFR | SFR | SFR |
| **Original List Price $** | $ | $118,000 | $119,700 | $120,000 |
| **List Price $** | -- | $118,000 | $119,700 | $120,000 |
| **Original List Date** | | 12/08/2025 | 12/10/2025 | 12/04/2025 |
| **DOM · Cumulative DOM** | -- · -- | 45 · 46 | 30 · 44 | 49 · 50 |
| **Age** (# of years) | 106 | 101 | 126 | 86 |
| **Condition** | Average | Average | Average | Average |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Location** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **View** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **Style/Design** | 2 Stories Rowhome | 2 Stories Rowhome | 2 Stories Rowhome | 2 Stories Rowhome |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 896 | 829 | 970 | 1,024 |
| **Bdrm · Bths · ½ Bths** | 3 · 1 | 3 · 1 | 3 · 1 | 3 · 1 |
| **Total Room #** | 6 | 6 | 6 | 6 |
| **Garage** (Style/Stalls) | None | None | None | Attached 1 Car |
| **Basement** (Yes/No) | Yes | Yes | Yes | Yes |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | 448 | 415 | 485 | 512 |
| **Pool/Spa** | -- | -- | -- | -- |
| **Lot Size** | 0.03 acres | 0.02 acres | 0.02 acres | 0.03 acres |
| **Other** | None | None | None | None |

\* Listing 1 is the most comparable listing to the subject.

¹ Comp's "Miles to Subject" was calculated by the system.
² Comp's "Miles to Subject" provided by Real Estate Professional.
³ Subject $/ft based upon as-is sale price.

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Current Listings - Cont.

**Listing Comments** Why the comparable listing is superior or inferior to the subject.

**Listing 1**  Similar to the subject in age, GLA, location, size and style. Other, Window Unit(s); Cooling Fuel: Other; Heating: Radiator; Heating Fuel: Natural Gas; Hot Water: Natural Gas; Water Source: Public; Sewer: Public Sewer

**Listing 2**  Similar to the subject in age, GLA, location, size and style. This well-maintained property features inviting laminated floors that bring warmth throughout the main living space. Step into a spacious living/dining room perfect for everyday living and entertaining. Toward the rear, you'll find a kitchen with durable laminate flooring .Upstairs, you'll find three comfortable bedrooms and a full bathroom.

**Listing 3**  Similar to the subject in age, GLA, location, size and style. No Cooling; Cooling Fuel: None; Heating: Hot Water; Heating Fuel: Natural Gas; Hot Water: Natural Gas; Water Source: Public; Sewer: Public Sewer Superior garage count

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Recent Sales

| | Subject | Sold 1 * | Sold 2 | Sold 3 |
|---|---|---|---|---|
| Street Address | 5518 Bloyd St | 5655 Boyer St | 6052 N Beechwood St | 2043 Conlyn St |
| City, State | Philadelphia, PA | Philadelphia, PA | Philadelphia, PA | Philadelphia, PA |
| Zip Code | 19138 | 19138 | 19138 | 19138 |
| Datasource | Tax Records | MLS | MLS | MLS |
| Miles to Subj. | -- | 0.19 [1] | 0.25 [1] | 0.31 [1] |
| Property Type | SFR | SFR | SFR | SFR |
| Original List Price $ | -- | $112,000 | $130,000 | $148,850 |
| List Price $ | -- | $112,000 | $115,000 | $119,000 |
| Sale Price $ | -- | $106,000 | $115,000 | $119,000 |
| Type of Financing | -- | Other | Conventional | Conventional |
| Date of Sale | -- | 11/03/2025 | 07/31/2025 | 11/06/2025 |
| DOM · Cumulative DOM | -- · -- | 14 · 94 | 26 · 125 | 24 · 43 |
| Age (# of years) | 106 | 101 | 101 | 111 |
| Condition | Average | Average | Average | Average |
| Sales Type | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| Location | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| View | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| Style/Design | 2 Stories Rowhome | 2 Stories Rowhome | 2 Stories Rowhome | 2 Stories Rowhome |
| # Units | 1 | 1 | 1 | 1 |
| Living Sq. Feet | 896 | 946 | 1,042 | 960 |
| Bdrm · Bths · ½ Bths | 3 · 1 | 3 · 1 | 3 · 2 | 3 · 1 · 1 |
| Total Room # | 6 | 6 | 6 | 6 |
| Garage (Style/Stalls) | None | None | None | None |
| Basement (Yes/No) | Yes | Yes | Yes | Yes |
| Basement (% Fin) | 0% | 0% | 0% | 0% |
| Basement Sq. Ft. | 448 | 473 | 521 | 480 |
| Pool/Spa | -- | -- | -- | -- |
| Lot Size | 0.03 acres | 0.03 acres | 0.03 acres | 0.02 acres |
| Other | None | None | None | None |
| Net Adjustment | -- | $0 | -$3,000 | -$1,500 |
| Adjusted Price | -- | $106,000 | $112,000 | $117,500 |

* Sold 1 is the most comparable sale to the subject.

[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.
[3] Subject $/ft based upon as-is sale price.

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.

**Sold 1** Similar to the subject in age, GLA, location, size and style. No adjustments necessary

**Sold 2** Similar to the subject in age, GLA, location, size and style. Adj. for: Bath (-3000)

**Sold 3** Similar to the subject in age, GLA, location, size and style. Adj. for: 1/2 bath (-1500)

# DRIVE-BY CMA

by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Subject Sales & Listing History

| | | | |
|---|---|---|---|
| **Current Listing Status** | Not Currently Listed | **Listing History Comments** | |
| **Listing Agency/Firm** | | None | |
| **Listing Agent Name** | | | |
| **Listing Agent Phone** | | | |
| **# of Removed Listings in Previous 12 Months** | 0 | | |
| **# of Sales in Previous 12 Months** | 0 | | |

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| **Suggested List Price** | $117,900 | $117,900 |
| **Sales Price** | $108,000 | $108,000 |
| **Comments Regarding Pricing Strategy** | | |

Final value conclusion is based upon the best available similar sold and listed properties, availabilities and the market condition in the area. All comps are similar properties & in same/competitive markets. Sales and listings used in this report were selected using GLA as one of the primary factors along with location.

## Clear Capital Quality Assurance Comments Addendum

**Reviewer's Notes** The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported.

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Subject Photos



Front



Address Verification



Side



Side



Street



Street

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Subject Photos



Other

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Listing Photos

 540 E Ashmead St
Philadelphia, PA 19144



Front

 5508 Jane St
Philadelphia, PA 19138



Front

 5758 N 20th St
Philadelphia, PA 19138



Front

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Sales Photos

**S1** 5655 Boyer St
Philadelphia, PA 19138



Front

**S2** 6052 N Beechwood St
Philadelphia, PA 19138



Front

**S3** 2043 Conlyn St
Philadelphia, PA 19138



Front

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

---

## ClearMaps Addendum

**Address** ⭐ 5518 Bloyd St, Philadelphia, PA 19138

**Loan Number** 10011590 **Suggested List** $117,900 **Suggested Repaired** $117,900 **Sale** $108,000



| Comparable | | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|---|
| ⭐ | Subject | 5518 Bloyd St, Philadelphia, PA 19138 | -- | Parcel Match |
| L1 | Listing 1 | 540 E Ashmead St, Philadelphia, PA 19144 | 0.44 Miles [1] | Parcel Match |
| L2 | Listing 2 | 5508 Jane St, Philadelphia, PA 19138 | 0.34 Miles [1] | Parcel Match |
| L3 | Listing 3 | 5758 N 20th St, Philadelphia, PA 19138 | 0.39 Miles [1] | Parcel Match |
| S1 | Sold 1 | 5655 Boyer St, Philadelphia, PA 19138 | 0.19 Miles [1] | Parcel Match |
| S2 | Sold 2 | 6052 N Beechwood St, Philadelphia, PA 19138 | 0.25 Miles [1] | Parcel Match |
| S3 | Sold 3 | 2043 Conlyn St, Philadelphia, PA 19138 | 0.31 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

---

## Addendum: Report Purpose

### Market Approach and Market Time

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

| Definitions: | |
|---|---|
| Fair Market Price | A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts. |
| Distressed Price | A price at which the property would sell between a willing buyer and a seller acting under duress. |
| Marketing Time | The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time. |
| Typical for Local Market | The estimated time required to adequately expose the subject property to the market resulting in a contract of sale. |

## Addendum: Report Purpose - cont.

### Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
Instructions last updated: 07/18/2024

Purpose:
Please determine a Fair market price for this property at which it would sell in a typical marketing time for the area.
Comparable Requirements:
If any of the following comparable criteria cannot be met, the commentary is required as to why you expanded your search, and what the effect on price will be.

1. Use comps from the same neighborhood, block or subdivision.
2. Use REO comparables only if the market is driven by REOs and they are comparable in characteristics and condition.
3. Use comps that have closed in the past 3 months to show the current market conditions. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.
Property Condition Definitions:
1. Poor: Uninhabitable or severely damaged from fire, flood, vandalism or mold
2. Fair: Repairs needed, may not be eligible for all forms of financing, below the neighborhood average
3. Average: Minor cosmetic or no repairs needed; typical for the neighborhood, move-in ready but no significant updates or renovations
4. Good: Above average, move in ready, no repairs necessary and has recent and significant updates and/or renovations (or, for customers that do not provide for 'Average', any move-in ready property)
5. Excellent: Newer construction (1-5 years) or high end luxury
Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient, factual detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as substantiated distance to amenities, parks, schools, commercial or industrial influences, REO activity, traffic, etc.
5. Do not approach occupants or owners.
6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report.
7. Please do not accept if you or your office has completed a report on this property in the last month, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.
9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the aforementioned tasks is not permitted.
10. No part of your analysis or reporting may be based on the race, color, religion, sex, actual or perceived sexual orientation, actual or perceived gender identity, age, actual or perceived marital status, disability, familial status, national origin of either the prospective owners or occupants of the subject property, present owners or occupants of the property, or present owners or occupants of the properties in the vicinity of the subject property, or on any other basis prohibited by federal, state or local law.
11. When commenting on the subject property or comp selections, refrain from the use of unsupported or subjective terms to assess or rate, such as, but not limited to, "high," "low," "good," "bad," "fair," "poor," "strong," "weak," "rapid," "slow," "fast" or "average" without providing a foundation for analysis and contextual information. It is inappropriate to add language that could indicate unconscious bias, including but not limited to: "pride of ownership," "crime-ridden area," "desirable neighborhood or location" or "undesirable neighborhood or location
Undue Influence Concerns
Please contact uiprovider@clearcapital.com for any Undue Influence concerns.
Independence Hotline
Please notify Clear Capital of any independence concerns by calling (530) 550-2138
Terms of Use, Code of Conduct and Professional Discretion:
Due to the importance of an independent opinion of price, please do not discuss your price with

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Report Instructions - cont.

anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.

If you accept and perform this assignment, you do so in accordance with the Clear Capital Vendor Agreement Terms of Use and Code of Conduct to which you agreed.

All interactions with consumers (borrowers, homeowners, POCs, etc.) must be performed in a professional manner. Should you observe any concerning or suspicious activity while you engage with a consumer whether onsite or otherwise, please contact Clear Capital immediately. Please refrain from discussing anything related to the observation with the consumer directly. This includes suspected elder abuse, elder financial abuse, vulnerable adults, fraud, forgery or any violations of local, state or federal laws.

Photo Instructions:

In the case of camera malfunction and/ or if an inspector fails to inspect the property, it is prohibited to request another individual for photos.

1. Photos should be clear of car window glare, door frames, and mirrors.
2. Current and original photos of all sides of the subject (back of the subject in available)
3. Damages (upload enough photos to support your repair cost estimates)
4. Please provide close up photos of the subjects roof
5. Two street scene photos, one looking each direction down the street
6. One view photo looking across the street from the subject
7. One address verification photo
8. MLS photos of all (3) sold comparables, if available
9. MLS photos of all (3) listing comparables, if available

# DRIVE-BY CMA
by ClearCapital

**5518 BLOYD ST**
PHILADELPHIA, PA 19138

**10011590**
Loan Number

**$108,000**
● As-Is Price

## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Leeann Levin | **Company/Brokerage** | American Destiny Real Estate - Philadelphia, Inc. |
| **License No** | RS311469 | **Address** | 1717 S 2nd St Philadelphia PA 19148 |
| **License Expiration** | 05/31/2026 | **License State** | PA |
| **Phone** | 2154314658 | **Email** | gandlagent@gmail.com |
| **Broker Distance to Subject** | 8.18 miles | **Date Signed** | 01/23/2026 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.*

**Disclaimer**

**This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which requires valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished on July ___, 2026, by CM/ECF or by regular U.S. Mail:

| | | |
|---|---|---|
| ***Debtor*** | represented by | **Matthew Fornshell** |
| **RAD Diversified REIT, Inc.** | | Ice Miller LLP |
| Jointly Administered with | | 250 West Street, Suite 700 |
| 26-bk-01637-CPM, 26-bk-01638-CPM, | | Columbus, OH 43215-7509 |
| 26-bk-01639-CPM, 26-bk-01640-CPM | | 614-462-2700 |
| 11418 US-19 N. | | |
| Port Richey, FL 34688 | | **Jessey James Krehl** |
| PASCO-FL | | Pack Law |
| Tax ID / EIN: 82-2026337 | | 4649 Ponce de Leon Boulevard |
| | | Ste 405 |
| | | Coral Gables, FL 33146 |
| | | 850-408-9952 |
| | | Email: jessey@packlaw.com |
| | | |
| | | **Joseph A Pack** |
| | | Pack Law |
| | | 4649 Ponce de Leon Boulevard |
| | | Ste 405 |
| | | Coral Gables, FL 33146 |
| | | 305-916-4500 |
| | | Email: Joe@packlaw.com |
| | | |
| ***U.S. Trustee*** | represented by | **Nicole Peair** |
| **United States Trustee - TPA** | | Timberlake Annex |
| Timberlake Annex, Suite 1200 | | 501 E Polk Street, Suite 1200 |
| 501 E Polk Street | | Tampa, FL 33602 |
| Tampa, FL 33602 | | 813-228-2000 |
| 813-228-2000 | | Email: Nicole.W.Peair@USdoj.gov |
| | | |
| ***Creditor Committee*** | represented by | **John D Elrod** |
| **Unsecured Creditors' Committee** | | Greenberg Traurig, LLP |
| c/o Greenberg Traurig | | Terminus 200 |
| 3333 Piedmont Road, NE | | 3333 Piedmont Road, NE |
| Suite 2500 | | Suite 2500 |
| Atlanta, GA 30305 | | Atlanta, GA 30305 |
| United States | | 678-553-2259 |
| 678-553-2100 | | Fax : 678-553-2212 |

Email: elrodj@gtlaw.com

**Danielle S Kemp**
Greenberg Traurig, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
813-318-5700
Fax : 813-318-5900
Email: kempd@gtlaw.com

Attorney for Secured Creditor
2313 W. Violet St.
Tampa, Florida  33603
flbankruptcy@rlselaw.com
Telephone No.:  (813) 656-8801
Facsimile No.: (813) 656-8802

By:/s/ Amy M. Kiser
Amy M. Kiser, ESQ.
Florida Bar# 46196