UNITED STATES BANKRUPTCY
COURT MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD DIVERSIFIED REIT, INC.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; and | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC | Case No. 8:26-bk-01640-CPM |
| Debtors. | |
| _____/ | |

## U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II'S MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE  PROTECTION PAYMENTS

Secured Creditor, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Spartan Funding I Trust, by and through its undersigned counsel, respectfully moves this Court for relief from the automatic stay or, in the alternative, for adequate protection payments and in support of its Motion states as follows:

1.      U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Spartan Funding I Trust (together with any successor or assign, "Movant") hereby moves this Court, pursuant to 11 U.S.C. § 361(1); for an Order directing the Debtor to make adequate protection payments, or, in the alternative, to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor`s premises located at 917 Almond Street,

Bayton Texas (the "Property").

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. "1334(b) and 157(a) and 362(d) of Title 11, United States Code (hereinafter referred to as the "Code"). Furthermore, this is a core proceeding pursuant to 28 U.S.C. '157(b)(2)(G).

3.      Movant is a secured creditor of the Debtor pursuant to a Note executed by DHI holdings, LP (the "Debtor") on May 26, 2022 whereby the Debtor promised to repay $146,177.00 plus interest to Movant's predecessor in interest (the "Note"). To secure the repayment of the Note, the Debtor executed a Mortgage (the "Mortgage," Note and Mortgage, collectively, the "Loan") in favor of Movant's predecessor in interest, which was recorded on May 27, 2021, in Harris County in Official Records with Doc Id 2021-33085 (the "Mortgage") encumbering the Property. The Loan was ultimately assigned to Movant by an assignment of mortgage (the "Assignment of Mortgage"). Copies of the Note, Mortgage, and Assignments of Mortgage are attached hereto as **Exhibit A**.

4.      Prior to the Bankruptcy filing, the loan was subject of a Mortgage Foreclosure and a Notice of Foreclosure Sale was filed with a sale scheduled for May 5, 2026. A copy of the Notice of Sale is attached hereto as **Exhibit B.**

5.      A Petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on March 1, 2026.

6.      The Debtor has failed to make current mortgage payments due under the terms of the Loan. As of the filing date of the Debtor's Petition, the loan remains contractually due for June 1, 2024, with total pre-petition debt in the approximate amount of $213,452.33 and approximate pre-petition arrears in the amount of $83,322.12.

7.      Additionally, Debtor has failed to make post-petition payments beginning with

the April 1, 2026 payment.

8.      Further, Movant has been paying the taxes and lender force placed insurance policy on the Property.

9.      As of the filing date of this instant Bankruptcy Petition, the monthly post-petition payment is $2,860.45. Movant requests that Debtor be required to remain current with all post-petition payments during the pendency of this Bankruptcy case.

10.     The estimated market value of the Property is $235,000.00.  The basis for such valuation is the BPO attached hereto as Exhibit "C".

11.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,350.00 in legal fees and $199.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

**Legal Argument**

12.     Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); In re Stewart, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection per se. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. See In re Senior Care Properties, Inc., 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has generally been held to be insufficient. In re Big Dog II, LLC, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

13. Here, the value of the Property is $235,000.00 (See Exhibit C). Movant's lien, as of the petition date, totals $213,452.33. There is not sufficient equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

14. Moreover, relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a movant under 11 U.S.C. § 362(d)(2)(A) establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. §362(g)(2); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the property is essential for an effective reorganization that is in prospect. This means that there must be a reasonable possibility of a successful reorganization within a reasonable amount of time. Timbers, 484 U.S. at 375.

15. Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. The Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage through a Plan. Thus, Debtor failed to meet its burden under 11 U.S.C. § 362(g)(2).

16. Further, relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." See In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008) (citing, In re Dixie Broad., Inc. 871 F.2d 1023, 1026 (11th Cir. 1989); See also, e.g., In re Jefferson County, Alabama, 484 B.R. 427 (Bankr. N.D. Ala. 2012).

17.    A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. In re Harlan, 783 F.2d 839 (9th Cir. 1986); In re Ellis, 60 B.R. 432 (B.A.P.)

18.    Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. In re Harlan, 783 F.2d 839 (9th Cir. 1986).

19.    Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). In re Three Tuns, Inc., 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

20.    Pursuant to 11 U.S.C. §361, Movant is entitled to receive full monthly payments for adequate protection payments.  Debtor should also be required to produce immediate proof of paid hazard insurance listing Movant as loss payee.

21.    Additionally, 11 U.S.C. §362(d)(1) of the Bankruptcy Code provides that a court shall, upon motion, grant relief from that automatic stay for cause, which includes the lack of adequate protection of an interest in property, of the moving party.

22. 11 U.S.C. § 363(e) provides, that, "at any time, on request of an entity that has an interest in property used… the court, with or without a hearing, shall prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

23. Accordingly, Movant is entitled to adequate protection because the Debtor is using the collateral of Movant, a secured creditor. *See In re Harold & Williams Development Co.,* 163 B.R. 77, 78 (Bankr. E.D. Va. 1994) ("Section 363(e) of the Bankruptcy Code authorizes the court to condition sale, use or lease of property as is necessary to provide adequate protection ofan entity's interest."); *see also Ford Motor Credit Co. v. JKJ Chevrolet, Inc. (In re JKJ Chevrolet, Inc.),* 117 F.3d 1413 (4th Cir. 1997); *Travelers Life Insurance and Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.),* 98 B.R. 170, 173 (S.D.N.Y. 1989); *In re 354 East 66th Street Realty Corp.,* 177 B.R. 776, 781 (Bankr. E.D.N.Y. 1995).

24. When a creditor's interest is not adequately protected, an award of adequate protection is mandatory. *See* 11 U.S.C. § 363(e) ("the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection") (emphasis added); *see also Metromedia Fiber Network SERVs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.),* 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary -- it states that the court 'shall' grant the relief specified, at any time, on the request of a secured entity."); *In re Waste Conversion Techs., Inc.,* 205 B.R. 1004, 1007 (D. Conn. 1997) (adequate protection is "recognized as a fundamental right afforded secured creditors in bankruptcy proceedings.").

25. Movant respectfully requests that Debtor be ordered to immediately make full monthly mortgage payments, effective with the first post-petition payment due April 1, 2026, to protect against further erosion of the value of the Property; and for Debtor produce proof of paid

hazard insurance listing Movant as loss payee within 14 days of the court's order.  Alternatively, if the Debtor cannot adequately protect Secured Creditor's interest in the Property, relief from stay should be granted so that Secured Creditor can exercise its in rem rights in the Property.

26.    Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests an Order granting relief from the automatic stay or in the alternative granting adequate protection payment in the full monthly amount of contractual monthly payment;  for proof of paid hazard insurance;  and for such other, further and different relief as to this Court may deem just, proper, and equitable, including its fees and costs for bringing this motion.

 Rubin Lublin, LLC
Attorney for Movant
2313 W. Violet St.
Tampa, Florida 33603
Bankruptcy@rlselaw.com
Telephone No.: (813) 656-8801

/s/_Amy M. Kiser
Amy M. Kiser, Esq.
Florida Bar# 46196

EXHIBIT A

# COMMERCIAL PROMISSORY NOTE

███



## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **DHI Holdings, LP** (the "Borrower"), a Delaware limited partnership with a principal place of business of 222 Angeles Blvd, Big Bear, CA 92314 promises to pay to the order of **RCN Capital, LLC**, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, or its assigns (collectively, the "Holder"), the principal sum of **One Hundred Forty-Six Thousand One Hundred Seventy-Seven Dollars and No Cents ($146,177.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 4.63% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on June 1, 2051 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on July 1, 2021 and continuing on the first (1st) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from June 1, 2021 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on June 1, 2021, a fixed interest rate equal to the interest rate in effect as of June 1, 2021, and the outstanding principal balance of the Note as of June 1, 2021. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$751.99**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1st) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal FIVE PERCENT (5.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal FOUR PERCENT (4.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal

Page 1 of 5

prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Any failure by Borrower to satisfy a Condition Precedent set forth in the Loan Agreement; (e) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Two Percent (22%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note'"), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount

**Page 2 of 5**

permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Brandon Mendenhall (the "Guarantor"); a certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") granted by DHI Holdings, LP, in favor of RCN Capital, LLC, encumbering the real property and improvements at 917 Almond St, Baytown, TX 77521.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received

by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on ___May___ _____27_____, 2021.

**DHI Holdings, LP**

By: _____
Name: Brandon Mendenhall
Title: General Partner

STATE OF _Calif_____  )
                          )ss. _____
COUNTY OF _San Bernardino_  )

I certify that on ____May 27. 2021___, 2021, Brandon Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as General Partner of DHI Holdings, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

_____
Notary Public

*See "Calif Acknowledgment"*

**CALIFORNIA ACKNOWLEDGMENT**                 CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of _San Bernardino_ }

On _5/27/21_ before me, _Caroline H Gutierrez-Jackson_ ,
     Date                        Here Insert Name and Title of the Officer

personally appeared _Brandon Mendenhall_
                                Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CAROLINE H. GUTIERREZ-JACKSON
Notary Public · California
Los Angeles County
Commission # 2315890
My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

Place Notary Seal and/or Stamp Above

---

**OPTIONAL**

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _Commercial Promissory Note_

Document Date: _5/27/21_                     Number of Pages: _5_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Brandon Mendenhall_       Signer's Name: _____
☐ Corporate Officer – Title(s): _____    ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General         ☐ Partner – ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact        ☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator     ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____             ☐ Other: _____
Signer is Representing: _DHI Holdings, LP_     Signer is Representing: _____

---

©2018 National Notary Association

## ALLONGE

This Allonge is affixed to and is hereby made a part of that certain Commercial Promissory Note dated May 27, 2021 (the "Note") in the original principal amount of **One Hundred Forty-Six Thousand One Hundred Seventy-Seven Dollars and No Cents ($146,177.00)**, made by **DHI Holdings, LP**, a Delaware limited partnership in favor of **RCN Capital, LLC**, a Connecticut limited liability company (the "Payee"), and evidences the endorsement of the Note by Payee to **Western Alliance Bank**, an Arizona corporation (the "Bank"), as provided in that certain Pledge and Security Agreement dated as of September ____, 2017 (together with any and all modifications, amendments or supplements thereto, the "Agreement"), between Payee and Bank.

Pay to the order of **Western Alliance Bank**, an Arizona corporation.

Dated as of June 8, 2021.

**RCN Capital, LLC**

By: _____
Matthew Gunter, Authorized Signer

## ALLONGE TO COMMERCIAL PROMISSORY NOTE

This Allonge to Commercial Promissory Note is to be affixed to and made a part of that certain Commercial Promissory Note in the stated principal amount of **One Hundred Forty-Six Thousand One Hundred Seventy-Seven Dollars and No Cents ($146,177.00)**, executed by **DHI Holdings, LP**, a Delaware limited partnership with a principal place of business of 222 Angeles Blvd, Big Bear, CA 92314 and made to the order of **RCN Capital, LLC**, a Connecticut limited liability company, having a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074.

Pay to the order of _____, WITHOUT RECOURSE OR WARRANTY.

Dated as of June 8, 2021.

**RCN Capital, LLC**

By: _____
Matthew Gunter, Authorized Signer

STATE OF CONNECTICUT            )
                                )ss. South Windsor
COUNTY OF HARTFORD              )

I certify that on June 8, 2021, **Matthew Gunter** came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Authorized Signer of RCN Capital, LLC, a Connecticut limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____
Notary Public



ANGELA DiTOMMASO
Notary Public of Connecticut
My Commission Expires 3/31/2022

USB Account: ████████████

USB Pool: ████████

Name:    Brandon Mendenhall

Document Type:    SECI    - SECI- SECURITY INSTRUMENT

Document Notation:    DUP

06/15/2021   ER   $106.00

## NOTICE OF CONFIDENTIALITY RIGHTS:
### IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

.................................. Space Above Line for Recorder's Use ..................................

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

PARCEL ID:                          126-568-002-0058

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso ADiTommaso@EliteCommercialClosings.com RCN Capital, LLC 75 Gerber Road East, Ste. 102 South Windsor, CT 06074 | RCN Capital, LLC 75 Gerber Road East, Ste. 102 South Windsor, CT 06074 |

Lender Loan Num

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is incorporated into and shall be deemed to amend and supplement the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") of the same date, given by the undersigned (the "Grantor") encumbering the real property and improvements described in the Security Instrument and located at: 917 Almond St, Baytown, TX 77521 (the "Premises"), and granted to secure the Commercial Promissory Note (the "Note"), of the same date, made by DHI Holdings, LP to the order of RCN Capital, LLC (the "Beneficiary").

The Premises include, but are not limited to, a parcel of land improved with a dwelling, together with such other parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions of record (together, with any amendments thereto (the "Declaration"). The Premises are a part of a planned unit development known as Crockett Park (the "PUD"). The Premises also includes Grantor's interest in the homeowners association or equivalent entity (the "Owners Association") owning or managing the common areas and facilities of the PUD and the uses, benefits, and proceeds of Grantor's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Grantor and Beneficiary further covenant and agree as follows:

A. PUD Obligations. Grantor shall perform all of its obligations under the PUD's Constituent Documents. The "Constituent Documents" are: (i) the Declaration; (ii) the articles of incorporation, trust instrument, or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Grantor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Premises which is satisfactory to Beneficiary and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Beneficiary requires insurance, then: (i) Beneficiary waives the provision in Section 17(F) of the Loan Agreement for the periodic payment to Beneficiary of the premium installments for property insurance on the Premises; and (ii) Grantor's obligation under Section 17(D) of the Loan Agreement to maintain property insurance coverage on the Premises is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Beneficiary requires as a condition of this waiver can change during the term of the loan.

Grantor shall give Beneficiary prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Premises, or to common areas and facilities of the PUD, any proceeds payable to Grantor are hereby assigned to Beneficiary and shall be paid to

**NOTICE OF CONFIDENTIALITY RIGHTS:**
**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

.................................... Space Above Line for Recorder's Use ....................................

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

PARCEL ID:                          126-568-002-0058

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

Lender Loan Number ███████

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Instrument") is made by **DHI Holdings, LP** (the "Grantor"), a Delaware limited partnership with a principal place of business at 222 Angeles Blvd, Big Bear, CA 92314 to **Angela DiTommaso**, as trustee (the "Trustee"), an individual with an address of PO Box 3801, Vernon, CT 06066, for the benefit of **RCN Capital, LLC** (the "Beneficiary"), a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, its successors and assigns.

### RECITAL

Grantor is indebted to Beneficiary in the principal amount of **One Hundred Forty-Six Thousand One Hundred Seventy-Seven Dollars and No Cents ($146,177.00)**, as evidenced by Grantor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Beneficiary, executed and delivered contemporaneously with this Instrument, and maturing on June 1, 2051 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Grantor and Beneficiary executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO Beneficiary the full and prompt payment and performance of each and all of Grantor's obligations under the Note, and the performance of the covenants and agreements of Grantor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Grantor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Grantor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Beneficiary, the following described property (collectively, the "Premises"):

A   The real property located in Harris County, Texas, at **917 Almond St, Baytown, TX 77521**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Grantor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B   All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");

C   All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Grantor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the state of Texas, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D   All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Grantor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E   All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Grantor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F   All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Grantor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

**Page 3 of 18**

G   All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H   All other interests of every kind and character, and proceeds thereof, which Grantor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Grantor does hereby represent and warrant that Grantor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Beneficiary contemporaneously with the execution and recordation of this Instrument and insuring Beneficiary's interest in the Premises. Grantor does hereby covenant and agree that Grantor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Grantor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Beneficiary and any other Person authorized by Beneficiary shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Grantor, as debtors, and Beneficiary, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the state of Texas (the "UCC"), for the purpose of securing Grantor's obligations under this Instrument and to further secure Grantor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Grantor hereby grants to Beneficiary a security interest in the Collateral. To the extent necessary under applicable law, Grantor hereby authorizes Beneficiary to prepare and file financing statements, continuation statements and financing statement amendments in such form as Beneficiary may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Beneficiary will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Beneficiary may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Beneficiary's other remedies. This Instrument also

**Page 4 of 18**

constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

3. Taxes and Other Charges. Grantor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Beneficiary's request, Grantor shall deliver to Beneficiary within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Beneficiary.

4. Insurance. Grantor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Grantor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Beneficiary, be and become immediately due and payable in full, subject to applicable law, and Beneficiary shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Beneficiary in Possession. (A) As part of the consideration for the Indebtedness, Grantor absolutely and unconditionally assigns and transfers to Beneficiary all Rents. It is the intention of Grantor to establish a present, absolute and irrevocable transfer and assignment to Beneficiary of all Rents and to authorizes and empower Beneficiary to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Beneficiary, Grantor agrees to execute and deliver such further assignments as Beneficiary may from time to time require. Grantor and Beneficiary intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the state of Texas, then the Rents will be included as a part of the Premises and it is the intention of Grantor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Beneficiary, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Beneficiary hereby grants to Grantor a

revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Beneficiary and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Grantor free and clear of, and released from, Beneficiary's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Grantor authorizes Beneficiary to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Beneficiary. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Beneficiary entering upon and taking and maintaining control of the Premises directly, or by a receiver, Grantor's license to collect the Rents will automatically terminate and Beneficiary will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Grantor will pay to Beneficiary upon demand all the Rents to which Beneficiary is entitled. At any time on or after the date of Beneficiary's demand for the Rents, Beneficiary may give, and Grantor hereby irrevocably authorizes Beneficiary to give, notice to all tenants of the Premises instructing them to pay all Rents to Beneficiary. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Grantor *any amounts which are actually paid to* Beneficiary *in response to such a notice.* Any such notice by Beneficiary will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Grantor will not interfere with and will cooperate with Beneficiary's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Beneficiary will have each of the following rights and may take any of the following actions: (i) Beneficiary may, regardless of the adequacy of Beneficiary's security or the solvency of Grantor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Beneficiary in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Beneficiary, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Beneficiary's security, without regard to Grantor's solvency and without the necessity of giving prior notice (oral or written) to Grantor, Beneficiary may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Beneficiary elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Grantor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Grantor is a housing cooperative corporation or association, Grantor hereby agrees that if a receiver is appointed, the order appointing the

receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Grantor and must be paid out of maintenance charges payable by Grantor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Beneficiary or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises.

(v) Immediately upon appointment of a receiver or immediately upon Beneficiary's entering upon and taking possession and control of the Premises, Grantor will surrender possession of the Premises to Beneficiary or the receiver, as the case may be, and will deliver to Beneficiary or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Beneficiary takes possession and control of the Premises, then Beneficiary may exclude Grantor and its representatives from the Premises. Grantor acknowledges and agrees that the exercise by Beneficiary of any of the rights conferred under this Section 7 will not be construed to make Beneficiary a Mortgagee-in-possession of the Premises so long as Beneficiary has not itself entered into actual possession of the Land and Improvements. (D) If Beneficiary enters the Premises, Beneficiary will be liable to account only to Grantor and only for those Rents actually received. Except to the extent of Beneficiary's gross negligence or willful misconduct, Beneficiary will not be liable to the Borrower, anyone claiming under or through Grantor or anyone having an interest in the Premises, by reason of any act or omission of Beneficiary under Section 7(C) of this Instrument, and Grantor hereby releases and discharges Beneficiary from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Beneficiary for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Beneficiary for such purposes will become an additional part of the Indebtedness as provided in Section 9 of this Instrument. (F) Any entering upon and taking of control of the Premises by Beneficiary or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Beneficiary under applicable law or provided for in this Instrument. (F) This Section 7 will not be construed to require a *pro tanto* or other reduction of the Indebtedness resulting from the assignment of Rents. If the provisions of this Section 7 and the preceding sentence cause the assignment of Rents in this Section 7 to be deemed to be an assignment for additional security only, Beneficiary will be entitled to all rights, benefits and remedies attendant to such collateral assignment. The assignment of Rents contained in this Section 7 of this Instrument will terminate upon the release of this Instrument. (G) Unless expressly excluded, the Premises will include the Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Trustor will pay such Rents to the purchaser at such sale.

8. Application of Payments. If at any time Beneficiary receives, from Grantor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Beneficiary may apply that payment to amounts then due and payable in any manner and in any order determined by Beneficiary, in its discretion. Neither Beneficiary's acceptance of an amount that is less than all amounts then due and payable nor Beneficiary's

application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Grantor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Beneficiary's Security; Instrument Secures Future Advances. If Grantor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Beneficiary's security, or Beneficiary's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Beneficiary, at Beneficiary's option may make such appearances, file such documents, disburse such sums and take such actions as Beneficiary reasonably deems necessary to perform such obligations of Grantor and to protect Beneficiary's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Grantor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of Grantor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Grantor for the payment of money that is secured by a lien on the Premises. Any amounts disbursed by Beneficiary under this Section 9 or under any other provision of this Instrument that treats such disbursement as being made under this Section 9, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 9 will require Beneficiary to incur any expense or take any action. The provisions of this Section 9, including the obligation to indemnify Beneficiary, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Beneficiary's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Grantor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq., and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and

any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Beneficiary.

11. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Beneficiary's exercise of any particular right or remedy will not in any way prevent Beneficiary from exercising any other right or remedy available to Beneficiary. Beneficiary may exercise any such remedies from time to time and as often as Beneficiary chooses.

12. Waiver of Statute of Limitations, Offsets, and Counterclaims. Grantor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document. Grantor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Beneficiary or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Beneficiary to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Grantor is obligated to make under any of the Loan Documents.

13. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Beneficiary or by any other party, Beneficiary will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Beneficiary will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Grantor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. Further Assurances. Grantor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Beneficiary may require from time to time in order to better assure, grant, and convey to Beneficiary the rights intended to be granted, now or in the future, to Beneficiary under this Instrument and the Loan Documents.

15. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the state of Texas. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Beneficiary's rights with respect to such security interest created in the state of Texas). Nothing in this Section 15 is intended to limit Beneficiary's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. Notices. All notices, consents, approvals, and requests required or permitted under this Instrument or under any other Loan Document shall be given in accordance with the requirements set forth under the Loan Agreement.

17. Successors and Assigns. This Instrument will bind the respective successors and assigns of Grantor and Beneficiary, and the rights granted by this Instrument will inure to Beneficiary's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Grantor, the obligations of such Persons will be joint and several.

19. Relationship of Parties; No Third-Party Beneficiary. The relationship between Beneficiary and Grantor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Beneficiary and Grantor. Nothing contained in this Instrument will constitute Beneficiary as a joint venturer, partner or agent of Grantor, or render Beneficiary liable for any debts, obligations, acts, omissions, representations or contracts of Grantor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on

Page 10 of 18

such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Beneficiary at Grantor's request, and Beneficiary will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the state of Texas, at any time after an Event of Default, regardless of whether Beneficiary has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Grantor and all Persons claiming under Grantor for the recovery by Beneficiary of possession of all or any part of the Premises, for which this Instrument shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Grantor, Beneficiary shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. (A) At any time during the existence of an Event of Default, Beneficiary, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the POWER OF SALE and any other remedies permitted by Texas law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Trustor acknowledges that the POWER OF SALE granted in this Instrument may be exercised by Beneficiary without prior judicial hearing. Beneficiary will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs, costs of documentary evidence, abstracts, and title reports. (B) If Beneficiary invokes the POWER OF SALE, Beneficiary may, by and through the Trustee, or otherwise, sell or offer for sale the Premises in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of the Premises, to the highest bidder for cash at public auction. Such sale will be made at the courthouse door of the county in which all or any part of the Land to be sold is situated (whether the parts or parcel, if any, situated in different counties are contiguous or not, and without the necessity of having any Accessories present at such sale) on the first (1st) Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m., after advertising the time, place, and terms of sale and that portion of the Premises to be sold by posting or causing to be posted written or printed notice of sale at least twenty-one (21) days before the date of the sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Land may be

**Page 11 of 18**

situated, and by filing such notice with the County Clerk of the county in which all or a portion of the Land may be situated, which notice may be posted and filed by the Trustee acting, or by any Person acting for the Trustee, and Beneficiary has, at least twenty-one (21) days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness in accordance with Beneficiary's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by Beneficiary's records, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any Person having knowledge of the facts to the effect that such service was completed will be *prima facie* evidence of the fact of service. (C) The Trustee will deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Premises so sold in fee simple with covenants of general warranty. Trustor covenants and agrees to defend generally the purchaser's title to the Premises against all claims and demands. The recitals in the trustee's deed will be *prima facie* evidence of the truth of the statements contained in those recitals. Trustee will apply the proceeds of the sale in the following order: (i) To all costs and expenses of the sale, including Trustee's fees not to exceed five percent (5%) of the gross sales price, attorneys' fees and costs and costs of title evidence; (ii) To the Indebtedness in such order as Beneficiary, in its discretion, directs; and (iii) The excess, if any, to the Person or Persons legally entitled thereto. (D) If all or any part of the Premises are sold pursuant to this Section 24, Trustor will be divested of any and all interest and claim to the Premises, including any interest or claim to all insurance policies, utility deposits, bonds, loan commitments and other intangible property included as a part of the Premises. Additionally, after a sale of all or any part of the Land, Improvements, Accessories, and personalty, Trustor will be considered a tenant at sufferance of the purchaser of the same, and the purchaser will be entitled to immediate possession of such property. If Trustor will fail to vacate the Premises immediately, the purchaser may and will have the right, without further notice to Trustor, to go into any justice court in any precinct or county in which the Premises are located and file an action in forcible entry and detainer, which action will lie against Trustor, or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have under this Instrument or otherwise. I In the event an interest in any of the Premises are foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Trustor agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Trustor agrees that Beneficiary will be entitled to seek a deficiency judgment from Trustor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Premises was sold pursuant to judicial or nonjudicial foreclosure sale. Trustor expressly recognizes that this Section 24I constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Trustor and other Persons against whom a recovery of deficiencies is sought or guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Premises as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Trustor further acknowledges and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Premises for purposes of calculating deficiencies owed by Trustor, any guarantor of the Note, and others against whom

recovery of a deficiency is sought. Alternatively, in the event the waiver provided for in this Section 24I is determined by a court of competent jurisdiction to be unenforceable, in any action for a deficiency after a foreclosure under this Instrument, if any Person against whom recovery is sought requests the court in which the action is pending to determine the fair market value of the Premises, as of the date of the foreclosure sale, the following will be the basis of the court's determination of fair market value: (i) The Premises will be valued "as is" and in its condition as of the date of foreclosure, and no assumption of increased value because of post-foreclosure repairs, refurbishment, restorations or improvements will be made. (ii) Any adverse effect on the marketability of title because of the foreclosure or because of any other title condition not existing as of the date of this Instrument will be considered. (iii) The valuation of the Premises will be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Premises for cash within a six (6) month period after foreclosure. (iv) The valuation of the Premises will be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Premises for cash within a six (6) month period after foreclosure. (v) The gross valuation of the Premises as of the date of foreclosure will be further discounted and reduced by reasonable estimated costs of disposition, including brokerage commissions, title policy premiums, environmental assessment and clean-up costs, tax and assessment, prorations, costs to comply with legal requirements and attorneys' fees and costs. (vi) Expert opinion testimony will be considered only from a licensed appraiser certified by the state of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five (5) years' experience in appraising property similar to the Premises in the county where the Premises are located, and who has conducted and prepared a complete written appraisal of the Premises taking into considerations the factors set forth in this Instrument; no expert opinion testimony will be considered without such written appraisal. (vii) Evidence of comparable sales will be considered only if also included in the expert opinion testimony and written appraisal referred to in Section 24I(vi) of this Instrument, above. (viii) An affidavit executed by Beneficiary to the effect that the foreclosure bid accepted by the Trustee was equal to or greater than the value of the Premises determined by Beneficiary based upon the factors and methods set forth in Sections 24I(i) through (vii) of this Instrument above before the foreclosure will constitute *prima facie* evidence that the foreclosure bid was equal to or greater than the fair market value of the Premises on the foreclosure date. (F) Beneficiary may, at its option, comply with these provisions in the manner permitted or required by Title 5, Section 51.002 of the Texas Property Code (relating to the sale of real estate) or by Chapter 9 of the Texas Business and Commerce Code (relating to the sale of collateral after default by a debtor), as those titles and chapters now exist or may be amended or succeeded in the future, or by any other present or future articles or enactments relating to same subject. Unless expressly excluded, the Premises will include the Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Trustor will pay such Rents to the purchaser at such sale. (G) At any such sale, all of the following will be true: (i) Whether made under the power contained in this Instrument, Section 51.002 of the Texas Property Code, Chapter 9 of the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it will not be necessary for the Trustee to have physically present, or to have constructive possession of, the Premises. Trustor will deliver to the Trustee any portion of the Premises not actually or constructively possessed by the Trustee immediately upon demand by the Trustee and the title to and right of possession of any such property will

**Page 13 of 18**

E - · - - - -

pass to the purchaser as completely as if the property had been actually present and delivered to the purchaser at the sale. (ii) Each instrument of conveyance executed by the Trustee will contain a general warranty of title, binding upon Trustor. (iii) The recitals contained in any instrument of conveyance made by the Trustee will conclusively establish the truth and accuracy of the matters recited in the Instrument, including nonpayment of the Indebtedness and the advertisement and conduct of the sale in the manner provided in this Instrument and otherwise by law and the appointment of any successor Trustee. (iv) All prerequisites to the validity of the sale will be conclusively presumed to have been satisfied. (v) The receipt of the Trustee or of such other party or officer making the sale will be sufficient to discharge to the purchaser or purchasers for such purchasers' purchase money, and no such purchaser or purchasers, or such purchasers' assigns or personal representatives, will thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication of such purchase money. (vi) To the fullest extent permitted by law, Trustor will be completely and irrevocably divested of all of Trustor's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale will be a perpetual bar to any claim to all or any part of the property sold, both at law and in equity, against Trustor and against any Person claiming by, through or under Trustor. (vii) To the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale.

24. Release. Upon payment of the Indebtedness, Beneficiary will release this Instrument. Trustor will pay Beneficiary's reasonable costs incurred in releasing this Instrument.

26. Trustee. (A) The Trustee may resign by giving of notice of such resignation in writing to Beneficiary. If the Trustee will die, resign or become disqualified from acting under this Instrument or will fail or refuse to act in accordance with this Instrument when requested by Beneficiary or if for any reason and without cause Beneficiary will prefer to appoint a substitute trustee to act instead of the original Trustee named in this Instrument or any prior successor or substitute trustee, Beneficiary will have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who will succeed to all the estate, rights, powers and duties of the original Trustee named in this Instrument. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Beneficiary (whether acting pursuant to a power of attorney or otherwise), and such appointment will be conclusively presumed to be executed with authority and will be valid and sufficient without proof of any action by Beneficiary. (B) Any successor trustee appointed pursuant to this Section 26 will, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as the Trustee in this Instrument; but, nevertheless, upon the written request of Beneficiary or such successor trustee, the trustee ceasing to act will execute and deliver an instrument transferring to such successor trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and will duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor trustee. (C) The Trustee may authorize one or more parties to act on the Trustee's behalf to perform the ministerial functions required of the Trustee under this Instrument, including the transmittal and posting of any notices.

27. **Vendor's Lien.** To the extent a vendor's lien is retained in that certain deed conveying the Premises to Trustor and dated on or about the date of this Instrument, such vendor's lien has been assigned to Beneficiary, the Note is primarily secured by said vendor's lien, and this Instrument is additional security therefor.

28. **No Fiduciary Duty.** Beneficiary owes no fiduciary or other special duty to Trustor.

29. **Fixture Filing.** This Instrument is also a fixture filing under the <u>Uniform Commercial Code of Texas</u>.

30. **Loan Charges.** Trustor and Beneficiary intend at all times to comply with the laws of the state of Texas governing the maximum rate or amount of interest payable on or in connection with the Indebtedness (or applicable United States Federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under the Note, this Instrument or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or if acceleration of the maturity of the Indebtedness, or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by any applicable law, then Trustor and Beneficiary expressly intend that all excess amounts collected by Beneficiary will be applied to reduce the unpaid principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, will be refunded to Trustor), and the provisions of the Note, this Instrument and the other Loan Documents immediately will be deemed reformed and the amounts thereafter collectible under the Loan Documents will be deemed reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. The right to accelerate the maturity of the Indebtedness does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Beneficiary does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Indebtedness will, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Note, this Instrument or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Indebtedness, the total amount of interest that Trustor shall be obligated to pay and Beneficiary is entitled to receive with respect to the Indebtedness will not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually disbursed to or for the account of Trustor, including all current and prior advances and any advances made pursuant to the Instrument or any other Loan Document (such as for the payment of Impositions and similar expenses or costs).

31. **ENTIRE AGREEMENT. THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,**

**CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

32. Notice of Additional Provisions Regarding Insurance. Any terms to the contrary contained in this Instrument notwithstanding, the following requirements are hereby imposed pursuant to Section 307.052 of the Texas Finance Code: **(A) TRUSTOR IS REQUIRED TO: (i) KEEP THE PREMISES INSURED AGAINST DAMAGE IN AN AMOUNT EQUAL TO THE INDEBTEDNESS; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER, AND (iii) NAME Beneficiary AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS. (B) IF TRUSTOR SHOULD FAIL TO COMPLY WITH SECTION 32(A) ABOVE, Beneficiary MAY, BUT WILL NOT BE OBLIGATED TO, OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF TRUSTOR AT TRUSTOR'S EXPENSE.**

*[Remainder of page intentionally left blank]*

**Page 16 of 18**

IN WITNESS WHEREOF, the undersigned has signed and delivered this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing or has caused said instrument to be signed and delivered by its duly authorized representative on __ May _____

_27__, 2021.

**DHI Holdings, LP**

Witness: _Edward Hays_

By: _Brandon Mendenhall_
Name: Brandon Mendenhall
Title: General Partner

Witness: _____

STATE OF _Calif_____ )
)ss. _____
COUNTY OF _San Bernardino_ )

I certify that on ___ May ___ 27_____, 2021, Brandon Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as General Partner of DHI Holdings, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

_____
Notary Public

*Sa attached*
*" Calif Acknowledgment "*

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of __San Bernardino__ }

On __5/27/21__ before me, __Caroline H Gutierrez-Jackson__
    *Date*                         *Here Insert Name and Title of the Officer*

personally appeared __Brandon Mendenhall__
                                     *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> CAROLINE H. GUTIERREZ-JACKSON
> Notary Public - California
> Los Angeles County
> Commission # 2315890
> My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Place Notary Seal and/or Stamp Above*

Signature _____
                         *Signature of Notary Public*

━━━━━━━━━━━━━━━━━━━━━━━━━━━ OPTIONAL ━━━━━━━━━━━━━━━━━━━━━━━━━━━

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: __Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing__

Document Date: __5/27/21__ Number of Pages: __18__

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: __Brandon Mendenhall__    Signer's Name: _____
☐ Corporate Officer – Title(s): _____    ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General    ☐ Partner – ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact     ☐ Individual    ☐ Attorney in Fact
☐ Trustee    ☐ Guardian or Conservator    ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____    ☐ Other: _____
Signer is Representing: __DHI Holdings LT__    Signer is Representing: _____

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

©2018 National Notary Association

## SCHEDULE 1
## PROPERTY DESCRIPTION

The following described real estate, situated in the County of Harris, State of Texas:

Lot Fifty-Eight (58), in Block Two (2), Crockett Park, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Film Code No. 578018 of the Map Records of Harris County, Texas.

Property Address and Tax Parcel Identification Number listed are provided solely for informational purposes , without warranty as to accuracy or completeness and are not hereby insured.

Property Address: 917 Almond St, Baytown, TX 77521

Tax Parcel ID Number: 1265680020058

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is incorporated into and shall be deemed to amend and supplement the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") of the same date, given by the undersigned (the "Grantor") encumbering the real property and improvements described in the Security Instrument and located at: 917 Almond St, Baytown, TX 77521 (the "Premises"), and granted to secure the Commercial Promissory Note (the "Note"), of the same date, made by DHI Holdings, LP to the order of RCN Capital, LLC (the "Beneficiary").

The Premises include, but are not limited to, a parcel of land improved with a dwelling, together with such other parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions of record (together, with any amendments thereto (the "Declaration"). The Premises are a part of a planned unit development known as Crockett Park (the "PUD"). The Premises also includes Grantor's interest in the homeowners association or equivalent entity (the "Owners Association") owning or managing the common areas and facilities of the PUD and the uses, benefits, and proceeds of Grantor's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Grantor and Beneficiary further covenant and agree as follows:

A. PUD Obligations. Grantor shall perform all of its obligations under the PUD's Constituent Documents. The "Constituent Documents" are: (i) the Declaration; (ii) the articles of incorporation, trust instrument, or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Grantor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Premises which is satisfactory to Beneficiary and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Beneficiary requires insurance, then: (i) Beneficiary waives the provision in Section 17(F) of the Loan Agreement for the periodic payment to Beneficiary of the premium installments for property insurance on the Premises; and (ii) Grantor's obligation under Section 17(D) of the Loan Agreement to maintain property insurance coverage on the Premises is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Beneficiary requires as a condition of this waiver can change during the term of the loan.

Grantor shall give Beneficiary prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Premises, or to common areas and facilities of the PUD, any proceeds payable to Grantor are hereby assigned to Beneficiary and shall be paid to

Page 1 of 3

Beneficiary. Beneficiary shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Grantor.

C. Public Liability Insurance. Grantor shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Beneficiary.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Grantor in connection with any condemnation or other taking of all or any part of the Premises or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Beneficiary. Such proceeds shall be applied by Beneficiary to the sums secured by the Security Instrument as provided in Section 9.

E. Beneficiary's Prior Consent. Grantor shall not, except after notice to Beneficiary and with Beneficiary's prior written consent, either partition or subdivide the Premises or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Beneficiary; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Beneficiary.

F. Remedies. If Grantor does not pay PUD dues and assessments when due, then Beneficiary may pay them. Any amounts disbursed by Beneficiary under this Paragraph F shall become additional debt of Grantor secured by the Security Instrument. Unless Grantor and Beneficiary agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the interest rate set forth in the Note and shall be payable, with interest, upon notice from Beneficiary to Grantor requesting payment.

*[Remainder of this page intentionally left blank]*

BY SIGNING BELOW, the undersigned accepts and agrees to the terms and covenants contained in this Planned Unit Development Rider on ___May___27_____ __, 2021.

**DHI Holdings, LP**

Witness: _Eduardo Hays_

By: _Brandon Mendenhall_
Name: Brandon Mendenhall
Title: General Partner

Witness: _____

STATE OF __Calif_____                    )
                                              )ss. _____
COUNTY OF __San Bernardino____                )

I certify that on ___May___27_____, 2021, Brandon Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as General Partner of DHI Holdings, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

_____
Notary Public

See attached
"Calif Acknowledgment"

Page 3 of 3

**CALIFORNIA ACKNOWLEDGMENT**                                      CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of San Bernardino

On 5/27/21 before me, Caroline H Gutierrez-Jackson ,
         Date                          Here Insert Name and Title of the Officer

personally appeared Brandon Mendenhall
                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CAROLINE H. GUTIERREZ-JACKSON
Notary Public · California
Los Angeles County
Commission # 2315890
My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

Place Notary Seal and/or Stamp Above

----------------------- OPTIONAL -----------------------
Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: Planned Unit Development Rider
Document Date: 5/27/21                                     Number of Pages: 3
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: Brandon Mendenhall              Signer's Name: _____
☐ Corporate Officer – Title(s): _____        ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General               ☐ Partner – ☐ Limited ☐ General
☐ Individual        ☐ Attorney in Fact         ☐ Individual        ☐ Attorney in Fact
☐ Trustee           ☐ Guardian or Conservator  ☐ Trustee           ☐ Guardian or Conservator
☐ Other: _____                               ☐ Other: _____
Signer is Representing: DHI Holdings, LP        Signer is Representing: _____

©2018 National Notary Association

Escrow File No.:

## EXHIBIT "A"

The following described real estate, situated in the County of Harris, State of Texas:

Lot Fifty-Eight (58), in Block Two (2), Crockett Park, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Film Code No. 578018 of the Map Records of Harris County, Texas.


PARCEL NUMBER(S): 1265680020058

10/13/2022  ER  $18.00

Recording Requested By:
Title Clearing and Escrow

When Recorded Return To:

Assignments and Lien Release
Title Clearing and Escrow
1601 LBJ Freeway Suite 150
Farmers Branch, TX  75234

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Harris, Texas
Fay Servicing#: ████   "DHI HOLDINGS, LP" TCEL-216093-TX  Escrow/Title: TCEL-216093-TX

Date of Assignment: October 12th, 2022
Assignor: RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT at c/o Fay Servicing, 1601 LBJ Freeway, Suite 150, Farmers Branch, TX  75243
Assignee: U.S. Bank National Association, not in its individual capacity but solely as Trustee for Spartan Funding I Trust at 60 Livingston Ave, St. Paul, MN  55107

Executed By: DHI HOLDINGS, LP  To: RCN CAPITAL, LLC
Dated: 05-27-2021 Recorded: 06-15-2021 as Instrument No. 2021-333085, Book/Reel/Liber N/A, Page/Folio N/A  In the County of Harris, State of Texas.

Property Address: 917 ALMOND ST, BAYTOWN, TX  77521

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $146,177.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT
On October 12th, 2022

By: _____
Anne Finkel, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On October 12th, 2022, before me, Crystal Malone, a Notary Public in and for Dallas in the State of Texas, personally appeared Anne Finkel, Assistant Secretary of RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Crystal Malone
Notary Expires: 6/24/2026  #133827769



Crystal Malone
My Commission Expires
6/24/2026
Notary ID 133827769

RP-2022-506262

RP-2022-506262

\# Pages 2

10/13/2022 10:42 AM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

TENESHIA HUDSPETH

COUNTY CLERK

Fees   $18.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

**COUNTY CLERK**
**HARRIS COUNTY, TEXAS**

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2024-4752

FILED 9/5/2024 9:26:31 AM

## NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

1. *Property to Be Sold.* The property to be sold is described as follows: LOT FIFTY-EIGHT (58), IN BLOCK TWO (2), CROCKETT PARK, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN FILM CODE NO. 578018 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 05/27/2021 and recorded in Document 2021-333085 real property records of Harris County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

Date:       10/01/2024

Time:       12:00 PM

Place:      Harris County, Texas at the following location: AT THE MAGNOLIA SOUTH BALLROOM OF THE BAYOU CITY EVENT CENTER LOCATED AT 9401 KNIGHT ROAD, HOUSTON, TX 77045 PER ORDER RECORDED IN CLERK'S FILE NO. RP-2023-304925, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court, or as designated by the County Commissioners Court.

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

5. *Obligations Secured.* The Deed of Trust executed by DHI HOLDINGS, LP AND BRANDON MENDENHALL, provides that it secures the payment of the indebtedness in the original principal amount of $146,177.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE OF SPARTAN FUNDING I TRUST is the current mortgagee of the note and deed of trust and FAY SERVICING, LLC is mortgage servicer. A servicing agreement between the mortgagee, whose address is U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE OF SPARTAN FUNDING I TRUST c/o FAY SERVICING, LLC, 425 S. Financial Place, Suite 2000, Chicago, IL 60605 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint AVT Title Services, LLC, located at 5177 Richmond Avenue Suite 1230, Houston, TX 77056, Substitute Trustee to act under and by virtue of said Deed of Trust.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Michael Zientz, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Ester Gonzales, Attorney at Law
Karla Balli, Attorney at Law
Parkway Office Center, Suite 900
14160 Dallas Parkway
Dallas, TX 75254

For additional sale information visit: www.mwzmlaw.com/tx-investors

Certificate of Posting

I am _____SANDY DASIGENIS_____ whose address is c/o AVT Title Services, LLC, 5177 Richmond Avenue, Suite 1230, Houston, TX 77056. I declare under penalty of perjury that on _____9/5/24_____ I filed this Notice of Foreclosure Sale at the office of the Harris County Clerk and caused it to be posted at the location directed by the Harris County Commissioners Court.

24-000085-347-1 // 917 ALMOND ST, BAYTOWN, TX 77521

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

Please Note: This report was completed with the following assumptions: Market Approach: **Fair Market Price** , Marketing Time: **Typical** . Important additional information relating to this report, including use and restrictions, is contained in an attached addendum which is an integral part of this report.

| | | | |
|---|---|---|---|
| **Address** | 917 Almond St, Baytown, TX 77521 | **Order ID** | 10997215 |
| **Inspection Date** | 03/20/2026 | **Date of Report** | 03/24/2026 |
| **Loan Number** | ▮ | **APN** | 1265680020058 |
| **Borrower Name** | DHI LP | **County** | Harris |

**Property ID** 38548138

**Tracking IDs**

| | | | |
|---|---|---|---|
| **Order Tracking ID** | UNKNOWN | **Tracking ID 1** | UNKNOWN |
| **Tracking ID 2** | -- | **Tracking ID 3** | -- |

## General Conditions

| | |
|---|---|
| **Owner** | Mendenhall Brandon D |
| **R. E. Taxes** | $6,012 |
| **Assessed Value** | $232,672 |
| **Zoning Classification** | Residential |
| **Property Type** | SFR |
| **Occupancy** | Occupied |
| **Ownership Type** | Fee Simple |
| **Property Condition** | Average |
| **Estimated Exterior Repair Cost** | $0 |
| **Estimated Interior Repair Cost** | $0 |
| **Total Estimated Repair** | $0 |
| **HOA** | CIA Services--Crocket Park Subdivision 281-852-1700 |
| **Association Fees** | $345 / Year (Landscaping,Insurance) |
| **Visible From Street** | Visible |
| **Road Type** | Public |

**Condition Comments**

The subject property is a 1-story average quality and condition SFR consisting of 3 bedrooms, 2 baths with 2078 sq ft built in 2008 and sits on 0.14 acres. The subject is located in a non-gated planned unit development with a homeowner association. The improvement is of modern design/appeal and conforms well to the neighborhood. Minor landscaping is recommended to improve the marketability of the subject property.

## Neighborhood & Market Data

| | |
|---|---|
| **Location Type** | Suburban |
| **Local Economy** | Stable |
| **Sales Prices in this Neighborhood** | Low: $140,000 High: $443,000 |
| **Market for this type of property** | Remained Stable for the past 6 months. |
| **Normal Marketing Days** | <30 |

**Neighborhood Comments**

Property values in the neighborhood are felt to be stable. There is a demand for single-family residences in the area without an oversupply.

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Current Listings

| | Subject | Listing 1 | Listing 2 * | Listing 3 |
|---|---|---|---|---|
| **Street Address** | 917 Almond St | 914 Whispering Winds Court | 935 Sage Street | 1107 Treasure Court |
| **City, State** | Baytown, TX | Baytown, TX | Baytown, TX | Baytown, TX |
| **Zip Code** | 77521 | 77521 | 77521 | 77521 |
| **Datasource** | Tax Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 0.76 [1] | 0.05 [1] | 0.69 [1] |
| **Property Type** | SFR | SFR | SFR | SFR |
| **Original List Price $** | $ | $269,900 | $270,000 | $299,000 |
| **List Price $** | -- | $249,900 | $270,000 | $299,000 |
| **Original List Date** | | 12/26/2025 | 06/27/2025 | 03/14/2026 |
| **DOM · Cumulative DOM** | -- · -- | 87 · 88 | 3 · 270 | 9 · 10 |
| **Age** (# of years) | 18 | 16 | 16 | 13 |
| **Condition** | Average | Average | Average | Good |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Location** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **View** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **Style/Design** | 1 Story Traditional | 2 Stories Traditional | 2 Stories Traditional | 2 Stories Traditional |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 2,078 | 2,333 | 2,434 | 2,548 |
| **Bdrm · Bths · ½ Bths** | 3 · 2 | 4 · 2 · 1 | 4 · 2 · 1 | 4 · 2 · 1 |
| **Total Room #** | 8 | 9 | 9 | 9 |
| **Garage** (Style/Stalls) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) |
| **Basement** (Yes/No) | No | No | No | No |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | -- | -- | -- | -- |
| **Pool/Spa** | -- | -- | -- | -- |
| **Lot Size** | 0.15 acres | 0.21 acres | 0.14 acres | 0.14 acres |
| **Other** | None | None | None | None |

\* Listing 2 is the most comparable listing to the subject.

[1] Comp's "Miles to Subject" was calculated by the system.
[2] Comp's "Miles to Subject" provided by Real Estate Professional.
[3] Subject $/ft based upon as-is sale price.

**Listing Comments** Why the comparable listing is superior or inferior to the subject.

**Listing 1**  Is inferior because it's the farthest in proximity to the subject compared to other comps used. Overall, similar in design and appeal and has comparable views.

**Listing 2**  Best represents the subject "as-is." Most comparable in design and appeal and property characteristics with a similar view.

**Listing 3**  Represents an active good condition comp at the upper end of this neighborhood. The subject would compete below this.

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Recent Sales

| | Subject | Sold 1 | Sold 2 * | Sold 3 |
|---|---|---|---|---|
| **Street Address** | 917 Almond St | 927 Chad | 3519 Sunny Drive | 946 Chad |
| **City, State** | Baytown, TX | Baytown, TX | Baytown, TX | Baytown, TX |
| **Zip Code** | 77521 | 77521 | 77521 | 77521 |
| **Datasource** | Tax Records | MLS | MLS | MLS |
| **Miles to Subj.** | -- | 0.12 [1] | 0.68 [1] | 0.14 [1] |
| **Property Type** | SFR | SFR | SFR | SFR |
| **Original List Price $** | -- | $259,900 | $247,000 | $279,999 |
| **List Price $** | -- | $239,900 | $247,000 | $264,999 |
| **Sale Price $** | -- | $215,000 | $245,000 | $260,000 |
| **Type of Financing** | -- | Conventional | Conventional | Conventional |
| **Date of Sale** | -- | 04/04/2025 | 09/19/2025 | 10/03/2025 |
| **DOM · Cumulative DOM** | -- · -- | 99 · 129 | 14 · 57 | 37 · 69 |
| **Age** (# of years) | 18 | 21 | 11 | 22 |
| **Condition** | Average | Average | Average | Good |
| **Sales Type** | -- | Fair Market Value | Fair Market Value | Fair Market Value |
| **Location** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **View** | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential | Neutral ; Residential |
| **Style/Design** | 1 Story Traditional | 1 Story Traditional | 1 Story Traditional | 1 Story Traditional |
| **# Units** | 1 | 1 | 1 | 1 |
| **Living Sq. Feet** | 2,078 | 2,078 | 1,817 | 2,119 |
| **Bdrm · Bths · ½ Bths** | 3 · 2 | 3 · 2 | 3 · 2 | 3 · 2 |
| **Total Room #** | 8 | 8 | 8 | 8 |
| **Garage** (Style/Stalls) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) | Attached 2 Car(s) |
| **Basement** (Yes/No) | No | No | No | No |
| **Basement** (% Fin) | 0% | 0% | 0% | 0% |
| **Basement Sq. Ft.** | | -- | -- | -- |
| **Pool/Spa** | -- | -- | -- | -- |
| **Lot Size** | 0.15 acres | 0.15 acres | 0.13 acres | 0.17 acres |
| **Other** | None | None | None | None |
| **Net Adjustment** | -- | +$2,712 | +$5,195 | -$30,259 |
| **Adjusted Price** | -- | $217,712 | $250,195 | $229,741 |

* Sold 2 is the most comparable sale to the subject.

[1] Comp's "Miles to Subject" was calculated by the system.

[2] Comp's "Miles to Subject" provided by Real Estate Professional.

[3] Subject $/ft based upon as-is sale price.

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Recent Sales - Cont.

**Reasons for Adjustments** Why the comparable sale is superior or inferior to the subject.

**Sold 1**  Is inferior because of a smaller GLA and a smaller lot. Overall, similar in design and appeal, and has comparable views. Adjustments: -$288 due to the lot, $3000 due to age.

**Sold 2**  Shows the best support from my value conclusion. Overall, it has the most comparable characteristics and most importantly the most similar location/view—which is one of the biggest factors with the subject. Adjustments: $10,440 due to sq ft, $1755 due to the lot, -$7000 due to age.

**Sold 3**  It also has the same view as the subject, but its larger GLA, larger lot, with updates make this superior to the subject. Therefore, my value conclusion most aligns with Sale 2. Adjustments: -$1640 due to sq ft, -$2619 due to the lot, $4000 due to age, -$20,000 due to updates, and -$10,000 due to corner lot.

# DRIVE-BY BPO

by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Subject Sales & Listing History

| | | | |
|---|---|---|---|
| **Current Listing Status** | Not Currently Listed | **Listing History Comments** | |
| **Listing Agency/Firm** | | The subject was previously sold on 02/25/2011 for $97,000, per MLS# 30538477 /Tax Records. Please note that Texas is a non-disclosure state for real estate transactions. | |
| **Listing Agent Name** | | | |
| **Listing Agent Phone** | | | |
| **# of Removed Listings in Previous 12 Months** | 1 | | |
| **# of Sales in Previous 12 Months** | 0 | | |

| Original List Date | Original List Price | Final List Date | Final List Price | Result | Result Date | Result Price | Source |
|---|---|---|---|---|---|---|---|
| 01/27/2025 | $239,000 | -- | -- | Expired | 07/17/2025 | $239,000 | MLS |

## Marketing Strategy

| | As Is Price | Repaired Price |
|---|---|---|
| **Suggested List Price** | $245,000 | $245,000 |
| **Sales Price** | $235,000 | $235,000 |

**Comments Regarding Pricing Strategy**

The search was extended back 12 months, with a distance of 1 mile, and even with relaxing the 35% GLA search criteria, I was unable to find many comps that fit within the 20% GLA requirements and have a similar style and appeal. Within 1 mile and back 12 months, I found 10 comps of which I could only use 6 due to condition or site-size factors. The comps used are the best possible currently available comps within 1 mile, and the adjustments are sufficient for this area to account for the differences in the subject and comps. Upon review of all the pertinent information, an opinion of the as-is market value of $235,000 is adequately supported with emphasis placed on List No. 2 and Sale No. 2. Based upon an exterior inspection, from the street, the subject property has no observable adverse condition noted that would cause a safety or health risk/concern at the time of inspection. Therefore, no resale issues are foreseen.

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price



---

## Clear Capital Quality Assurance Comments Addendum

| | |
|---|---|
| **Reviewer's Notes** | The broker's as-is conclusion reflects the market for the subject. Comps are within a reasonable distance, relatively current, and accurately reflect the subject's defining characteristics. Thus, the as-is conclusion appears to be adequately supported. |

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Subject Photos



Front



Address Verification



Side



Side



Street



Street

# DRIVE-BY BPO
by ClearCapital



**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Subject Photos



Other



Other

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Listing Photos



**L1** 914 Whispering Winds Court
Baytown, TX 77521



Front

**L2** 935 Sage Street
Baytown, TX 77521



Front

**L3** 1107 Treasure Court
Baytown, TX 77521



Front

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Sales Photos



**S1** 927 Chad
Baytown, TX 77521



Front

**S2** 3519 Sunny Drive
Baytown, TX 77521



Front

**S3** 946 Chad
Baytown, TX 77521



Front

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number



**$235,000**
● As-Is Price

---

## ClearMaps Addendum

| | | | | | | |
|---|---|---|---|---|---|---|
| **Address** | ⭐ 917 Almond St, Baytown, TX 77521 | | | | | |
| **Loan Number** | 10012052 | **Suggested List** $245,000 | | **Suggested Repaired** $245,000 | | **Sale** $235,000 |

[Map: ClearCapital — SUBJECT: 917 Almond St, Baytown, TX 77521 — ©2026 ClearCapital.com, Inc.]

| Comparable | Address | Miles to Subject | Mapping Accuracy |
|---|---|---|---|
| ⭐ Subject | 917 Almond St, Baytown, TX 77521 | -- | Parcel Match |
| L1 Listing 1 | 914 Whispering Winds Court, Baytown, TX 77521 | 0.76 Miles [1] | Parcel Match |
| L2 Listing 2 | 935 Sage Street, Baytown, TX 77521 | 0.05 Miles [1] | Parcel Match |
| L3 Listing 3 | 1107 Treasure Court, Baytown, TX 77521 | 0.69 Miles [1] | Parcel Match |
| S1 Sold 1 | 927 Chad, Baytown, TX 77521 | 0.12 Miles [1] | Parcel Match |
| S2 Sold 2 | 3519 Sunny Drive, Baytown, TX 77521 | 0.68 Miles [1] | Parcel Match |
| S3 Sold 3 | 946 Chad, Baytown, TX 77521 | 0.14 Miles [1] | Parcel Match |

[1] The Comparable "Distance from Subject" value has been calculated by the Clear Capital system.
[2] The Comparable "Distance from Subject" value has been provided by the Real Estate Professional.

# DRIVE-BY BPO

by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521


Loan Number

**$235,000**
● As-Is Price

---

Addendum: Report Purpose

**Market Approach and Market Time**

The Market Approach of this report, as established by the customer, is: **Fair Market Price**. (See definition below.)
The Marketing Time as specified by the customer is **Typical**. (See definition below.)

Definitions:

Fair Market Price — A price at which the property would sell between a willing buyer and a willing seller neither being compelled by undue pressure and both having reasonable knowledge of relevant facts.

Distressed Price — A price at which the property would sell between a willing buyer and a seller acting under duress.

Marketing Time — The amount of time the property is exposed to a pool of prospective buyers before going into contract. The customer either specifies the number of days, requests a marketing time that is typical to the subject's market area and/or requests an abbreviated marketing time.

Typical for Local Market — The estimated time required to adequately expose the subject property to the market resulting in a contract of sale.

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

## Addendum: Report Purpose - cont.

## Report Instructions

This section shows the instructions that were approved by the customer and provided to the broker prior to completing the report.
Instructions last updated: 07/18/2024

Purpose:
Please determine a Fair market price for this property at which it would sell in a typical marketing time for the area.
Comparable Requirements:
If any of the following comparable criteria cannot be met, the commentary is required as to why you expanded your search, and what the effect on price will be.

1. Use comps from the same neighborhood, block or subdivision.
2. Use REO comparables only if the market is driven by REOs and they are comparable in characteristics and condition.
3. Use comps that have closed in the past 3 months to show the current market conditions. In rapidly changing markets, active listing comps should be given equal or greater weight than sold comps in your analysis.
Property Condition Definitions:
1. Poor: Uninhabitable or severely damaged from fire, flood, vandalism or mold
2. Fair: Repairs needed, may not be eligible for all forms of financing, below the neighborhood average
3. Average: Minor cosmetic or no repairs needed; typical for the neighborhood, move-in ready but no significant updates or renovations
4. Good: Above average, move in ready, no repairs necessary and has recent and significant updates and/or renovations (or, for customers that do not provide for 'Average', any move-in ready property)
5. Excellent: Newer construction (1-5 years) or high end luxury
Standard Instructions:
1. Clear Capital Code Of Conduct - Please make sure that you are always abiding by the Clear Capital Code of Conduct when completing valuation reports.
2. If the subject is currently listed, please consider all available information pertaining to the subject's condition. This information should be utilized when developing the assumption of the subject's condition.
3. Use the subject characteristics provided in the report Grid (if preloaded) to evaluate the property. This information is from a full interior appraisal and is assumed to be most accurate. If your inspection reveals obvious inaccuracies, please explain in the narrative of the report.
4. Include sufficient, factual detail to help our mutual customer gain a complete understanding of the subject's neighborhood such as substantiated distance to amenities, parks, schools, commercial or industrial influences, REO activity, traffic, etc.
5. Do not approach occupants or owners.
6. If the subject is a Commercial property, contact Clear Capital immediately at 530-582-5011 for direction on how to proceed with the report.
7. Please do not accept if you or your office has completed a report on this property in the last month, are currently listing this property, or have any vested interest in the subject property.
8. Clear Capital does not allow any log ins from IP addresses from foreign countries. This includes, but is not limited to; data entry services, form completion services, etc. Also, it is against Clear Capital code of conduct to share your password with anyone who is not a W2 employee in your office.
9. Clear Capital and our mutual customers greatly appreciate your expertise. If you cannot personally inspect the property, select comparables, and determine a price for the subject, please do not accept this report. Per the standards and guidelines adopted by Clear Capital and other industry leaders, the use of assistants to complete any of the aforementioned tasks is not permitted.
10. No part of your analysis or reporting may be based on the race, color, religion, sex, actual or perceived sexual orientation, actual or perceived gender identity, age, actual or perceived marital status, disability, familial status, national origin of either the prospective owners or occupants of the subject property, present owners or occupants of the property, or present owners or occupants of the properties in the vicinity of the subject property, or on any other basis prohibited by federal, state or local law.
11. When commenting on the subject property or comp selections, refrain from the use of unsupported or subjective terms to assess or rate, such as, but not limited to, "high," "low," "good," "bad," "fair," "poor," "strong," "weak," "rapid," "slow," "fast" or "average" without providing a foundation for analysis and contextual information. It is inappropriate to add language that could indicate unconscious bias, including but not limited to: "pride of ownership," "crime-ridden area," "desirable neighborhood or location" or "undesirable neighborhood or location
Undue Influence Concerns
Please contact uiprovider@clearcapital.com for any Undue Influence concerns.
Independence Hotline
Please notify Clear Capital of any independence concerns by calling (530) 550-2138
Terms of Use, Code of Conduct and Professional Discretion:
Due to the importance of an independent opinion of price, please do not discuss your price with

# DRIVE-BY BPO

by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
● As-Is Price

---

## Report Instructions - cont.

anyone or be influenced by list price, pending offers, accept comp packets, repair estimates or the listing agent's opinion.

If you accept and perform this assignment, you do so in accordance with the Clear Capital Vendor Agreement Terms of Use and Code of Conduct to which you agreed.

All interactions with consumers (borrowers, homeowners, POCs, etc.) must be performed in a professional manner. Should you observe any concerning or suspicious activity while you engage with a consumer whether onsite or otherwise, please contact Clear Capital immediately. Please refrain from discussing anything related to the observation with the consumer directly. This includes suspected elder abuse, elder financial abuse, vulnerable adults, fraud, forgery or any violations of local, state or federal laws.

Photo Instructions:

In the case of camera malfunction and/ or if an inspector fails to inspect the property, it is prohibited to request another individual for photos.

1. Photos should be clear of car window glare, door frames, and mirrors.
2. Current and original photos of all sides of the subject (back of the subject in available)
3. Damages (upload enough photos to support your repair cost estimates)
4. Please provide close up photos of the subjects roof
5. Two street scene photos, one looking each direction down the street
6. One view photo looking across the street from the subject
7. One address verification photo
8. MLS photos of all (3) sold comparables, if available
9. MLS photos of all (3) listing comparables, if available

# DRIVE-BY BPO
by ClearCapital

**917 ALMOND ST**
BAYTOWN, TX 77521

Loan Number

**$235,000**
🟡 As-Is Price

---

## Broker Information

| | | | |
|---|---|---|---|
| **Broker Name** | Frank Oveo | **Company/Brokerage** | Texas Premier Realty |
| **License No** | 630688 | **Address** | 307 Burnett Dr Baytown TX 77520 |
| **License Expiration** | 07/31/2027 | **License State** | TX |
| **Phone** | 8329555212 | **Email** | oveofrank@gmail.com |
| **Broker Distance to Subject** | 5.03 miles | **Date Signed** | 03/23/2026 |

*By confirming the above contact and real estate license information and submitting the report, the above signed hereby certifies and agrees that: 1) I personally took the pictures, selected comparables, and determined the price conclusion. 2) To the best of my knowledge, the statements of fact contained in this report are true and correct. 3) The reported analyses, opinions, and conclusions are my personal, impartial, and unbiased professional analyses, opinions, and conclusions. 4) I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved. 5) I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment. 6) My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined price point. 7) I did not base, either partially or completely, my analysis and/or opinion and conclusions in this report on race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law. 8) I maintain errors and omissions insurance, to the extent required by state law, for all liability associated with the preparation of this Report.*

---

**Disclaimer**

**THIS REPORT SHOULD NOT BE CONSIDERED AN APPRAISAL. In making any decision that relies upon my work, you should know that I have not followed the guidelines for development of an appraisal or analysis contained in the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation.**

**Unless otherwise specifically agreed to in writing:**
**The intended purpose of this report is to assist the Clear Capital account holder in making decisions within the scope of applicable statutory and regulatory requirements and performing required due diligence. This document is provided solely for the use of the Clear Capital account holder and not any other party, is not intended as any guarantee of value and/or condition of the subject property and should not be relied on as such. In the event that this document is found to be defective, incorrect, negligently prepared or unfit for its authorized use, Clear Capital's sole liability shall be to promptly refund the total fee expended by the account holder for this report or to replace it at no charge to the account holder, but in no event shall Clear Capital be responsible to the account holder for any indirect or consequential damages whatsoever. This warranty is in lieu of all other warranties, express or implied, except where otherwise required by law. The account holder shall notify Clear Capital within thirty (30) days of this report's delivery to the account holder if it believes that this document is defective, incorrect, negligently prepared or unfit for its authorized use. Under no circumstances may Clear Capital forms or their contents be published, copied, replicated, or mimicked.**

---

EXHIBIT B

## NOTICE OF FORECLOSURE SALE

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

1. *Property to Be Sold.* The property to be sold is described as follows: LOT FIFTY-EIGHT (58), IN BLOCK TWO (2), CROCKETT PARK, A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN FILM CODE NO. 578018 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

2. *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 05/27/2021 and recorded in Document 2021-333085 real property records of Harris County, Texas.

3. *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

Date:        10/01/2024

Time:        12:00 PM

Place:       Harris County, Texas at the following location: AT THE MAGNOLIA SOUTH BALLROOM OF THE BAYOU CITY EVENT CENTER LOCATED AT 9401 KNIGHT ROAD, HOUSTON, TX 77045 PER ORDER RECORDED IN CLERK'S FILE NO. RP-2023-304925, or if the preceding area is no longer the designated area, at the area most recently designated by the County Commissioner's Court, or as designated by the County Commissioners Court.

4. *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

5. *Obligations Secured.* The Deed of Trust executed by DHI HOLDINGS, LP AND BRANDON MENDENHALL, provides that it secures the payment of the indebtedness in the original principal amount of $146,177.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE OF SPARTAN FUNDING I TRUST is the current mortgagee of the note and deed of trust and FAY SERVICING, LLC is mortgage servicer. A servicing agreement between the mortgagee, whose address is U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE OF SPARTAN FUNDING I TRUST c/o FAY SERVICING, LLC, 425 S. Financial Place, Suite 2000, Chicago, IL 60605 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

6. *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint AVT Title Services, LLC, located at 5177 Richmond Avenue Suite 1230, Houston, TX 77056, Substitute Trustee to act under and by virtue of said Deed of Trust.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Michael Zientz, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Ester Gonzales, Attorney at Law
Karla Balli, Attorney at Law
Parkway Office Center, Suite 900
14160 Dallas Parkway
Dallas, TX 75254

For additional sale information visit: www.mwzmlaw.com/tx-investors

### Certificate of Posting

I am ____SANDY DASIGENIS____ whose address is c/o AVT Title Services, LLC, 5177 Richmond Avenue, Suite 1230, Houston, TX 77056. I declare under penalty of perjury that on ____9/5/24____ I filed this Notice of Foreclosure Sale at the office of the Harris County Clerk and caused it to be posted at the location directed by the Harris County Commissioners Court.

24-000085-347-1 // 917 ALMOND ST, BAYTOWN, TX 77521

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2024-4752

FILED 9/5/2024 9:26:31 AM

UNITED STATES BANKRUPTCY COURT MIDDLE
DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:                                                      Case No. 26-01636-CPM
                                                            Chapter 11
RAD Diversified REIT, Inc.,

            Debtor,
_____/

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on <u>JULY 21, 2026,</u> I served the foregoing document described as the **MOTION FOR RELIEF**, by electronic ECF notification via Bankruptcy Court's CM/ECF system and/or by U.S. Mail, on the following parties:

**VIA CM/ECF:**

Jessey James Krehl
jessey@packlaw.com
*(Attorney for Debtor)*

Joseph A Pack
Joe@packlaw.com *(Attorney for Debtor)*

United States Trustee - TPA
USTPRegion21.TP.ECF@USDOJ.GOV
*(U.S. Trustee)*

Nicole Peair
Nicole.W.Peair@USdoj.gov
*(Counsel for U. S. Trustee)*

John D Elrod elrodj@gtlaw.com
*(Attorney Creditor Committee)*

Danielle S Kemp kempd@gtlaw.com
*(Attorney Creditor Committee)*

**VIA U.S. MAIL:**

RAD Diversified REIT, Inc.,
11418 US-19 N.
Port Richey, FL 34688
*(Debtor)*

   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: <u>July 21, 2026</u>

Attorney for Secured Creditor
2313 W. Violet St.
Tampa, Florida 33603
flbankruptcy@rlselaw.com
Telephone No.: (813)  656-8801
Facsimile No.: (813) 6 56-8802

By:/s/ Amy M. Kiser
Amy M. Kiser, ESQ.
Florida Bar# 46196