UNITED STATES BANKRUPTCY
COURT MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| RAD DIVERSIFIED REIT, INC.; | Case No. 8:26-bk-01636-CPM |
| | |
| | *Jointly Administered with* |
| | |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; and | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC | Case No. 8:26-bk-01640-CPM |
| | |
| Debtors. | |
| _____/ | |

**U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF GREENE STREET FUNDING TRUST II'S AMENDED MOTION FOR RELIEF FROM AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION PAYMENTS**

Secured Creditor, U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Spartan Funding I Trust, by and through its undersigned counsel, respectfully moves this Court for relief from the automatic stay or, in the alternative, for adequate protection payments and in support of its Motion states as follows:

1.      U.S. Bank Trust National Association, not in its individual capacity but solely as trustee of Spartan Funding I Trust (together with any successor or assign, "Movant") hereby moves this Court, pursuant to 11 U.S.C. § 361(1); for an Order directing the Debtor to make adequate protection payments, or, in the alternative, to permit Movant, its successors and/or assigns, to enforce its mortgage on the Debtor`s premises located at 11927 Moss Branch

Road, Houston  Texas (the "Property").

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. "1334(b) and 157(a) and 362(d) of Title 11, United States Code (hereinafter referred to as the "Code"). Furthermore, this is a core proceeding pursuant to 28 U.S.C. '157(b)(2)(G).

3.     Movant is a secured creditor of the Debtor pursuant to a Note executed by DHI Holdings, LP (the "Debtor") on May 27, 2021 whereby the Debtor promised to repay $175,500.00 plus interest to Movant's predecessor in interest (the "Note"). To secure the repayment of the Note, the Debtor executed a Mortgage (the "Mortgage," Note and Mortgage, collectively, the "Loan") in favor of Movant's predecessor in interest, which was recorded on June 11, 2021, in the Harris County Official Records with Doc Id RP-2021-327271 (the "Mortgage") encumbering the Property. The Loan was ultimately assigned to Movant by an assignment of mortgage (the "Assignment of Mortgage"). Copies of the Note, Mortgage, and Assignments of Mortgage are attached hereto as **Exhibit A**.

4.     Prior to the Bankruptcy filing, the loan was subject of a Mortgage Foreclosure and a Notice of Sale was filed with a sale set for March 3, 2026.  A copy of the Notice of Sale is attached hereto as **Exhibit B.**

5.     A Petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on March 1, 2026.

6.     The Debtor has failed to make current mortgage payments due under the terms of the Loan. As of the filing date of the Debtor's Petition, the loan remains contractually due for September 1, 2024, with total pre-petition debt in the approximate amount of $238,954.47 and approximate pre-petition arrears in the amount of $87,761.59

7.     Additionally, Debtor has failed to make post-petition payments beginning with

the April 1, 2026 payment..

8.      Further, Movant has been paying the taxes and lender force placed insurance policy on the Property.

9.      As of the filing date of this instant Bankruptcy Petition, the monthly post-petition payment is $2,603.46. Movant requests that Debtor be required to remain current with all post-petition payments during the pendency of this Bankruptcy case.

10.     The estimated market value of the Property is $234,000.00.  The basis for such valuation is the appraisal which is attached hereto as Exhibit "C".

11.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,350.00 in legal fees and $199.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

**Legal Argument**

12.     Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); In re Stewart, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection per se. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. See In re Senior Care Properties, Inc., 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has generally been held to be insufficient. In re Big Dog II, LLC, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

13.     Here, the value of the Property is $234,000.0 (See Exhibit C). Movant's lien, as of the petition date, totals $238,954.47. There is no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

14.     Moreover, relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a movant under 11 U.S.C. § 362(d)(2)(A) establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. §362(g)(2); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the property is essential for an effective reorganization that is in prospect. This means that there must be a reasonable possibility of a successful reorganization within a reasonable amount of time. Timbers, 484 U.S. at 375.

15.     Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. The Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage through a Plan. Thus, Debtor failed to meet its burden under 11 U.S.C. § 362(g)(2).

16.     Further, relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." See In re Bryan Road, LLC, 382 B.R. 844 (Bankr. S.D. Fla. 2008) (citing, In re Dixie Broad., Inc. 871 F.2d 1023, 1026 (11th Cir. 1989); See also, e.g., In re Jefferson County, Alabama, 484 B.R. 427 (Bankr. N.D. Ala. 2012).

17.     A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. In re Harlan, 783 F.2d 839 (9th Cir. 1986); In re Ellis, 60 B.R. 432 (B.A.P.)

18.     Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. In re Harlan, 783 F.2d 839 (9th Cir. 1986).

19.     Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). In re Three Tuns, Inc., 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

20.     Pursuant to 11 U.S.C. §361, Movant is entitled to receive full monthly payments for adequate protection payments.  Debtor should also be required to produce immediate proof of paid hazard insurance listing Movant as loss payee.

21.     Additionally, 11 U.S.C. §362(d)(1) of the Bankruptcy Code provides that a court shall, upon motion, grant relief from that automatic stay for cause, which includes the lack of adequate protection of an interest in property, of the moving party.

22.     11 U.S.C. § 363(e) provides, that, "at any time, on request of an entity that has an interest in property used… the court, with or without a hearing, shall prohibit or condition such use… as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

23.     Accordingly, Movant is entitled to adequate protection because the Debtor is using the collateral of Movant, a secured creditor. *See In re Harold & Williams Development Co.,* 163 B.R. 77, 78 (Bankr. E.D. Va. 1994) ("Section 363(e) of the Bankruptcy Code authorizes the court to condition sale, use or lease of property as is necessary to provide adequate protection of an entity's interest."); *see also Ford Motor Credit Co. v. JKJ Chevrolet, Inc. (In re JKJ Chevrolet, Inc.),* 117 F.3d 1413 (4th Cir. 1997); *Travelers Life Insurance and Annuity Co. v. Ritz-Carlton of D.C., Inc. (In re Ritz-Carlton of D.C. Inc.),* 98 B.R. 170, 173 (S.D.N.Y. 1989); *In re 354 East 66th Street Realty Corp.,* 177 B.R. 776, 781 (Bankr. E.D.N.Y. 1995).

24.     When a creditor's interest is not adequately protected, an award of adequate protection is mandatory. *See* 11 U.S.C. § 363(e) ("the court ... shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection") (emphasis added); *see also Metromedia Fiber Network SERVs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.),* 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary -- it states that the court 'shall' grant the relief specified, at any time, on the request of a secured entity."); *In re Waste Conversion Techs., Inc.,* 205 B.R. 1004, 1007 (D. Conn. 1997) (adequate protection is "recognized as a fundamental right afforded secured creditors in bankruptcy proceedings.").

25.     Movant respectfully requests that Debtor be ordered to immediately make full monthly mortgage payments, effective with the first post-petition payment due April 1, 2026, to protect against further erosion of the value of the Property; and for Debtor produce proof of paid

hazard insurance listing Movant as loss payee within 14 days of the court's order.  Alternatively, if the Debtor cannot adequately protect Secured Creditor's interest in the Property, relief from stay should be granted so that Secured Creditor can exercise its in rem rights in the Property.

26.     Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests an Order granting relief from the automatic stay or in the alternative granting adequate protection payment in the full monthly amount of contractual monthly payment;  for proof of paid hazard insurance;  and for such other, further and different relief as to this Court may deem just, proper, and equitable, including its fees and costs for bringing this motion.

Rubin Lublin, LLC
Attorney for Movant
2313 W. Violet St.
Tampa, Florida 33603
Bankruptcy@rlselaw.com
Telephone No.: (813) 656-8801

/s/_Amy M. Kiser
Amy M. Kiser, Esq.
Florida Bar# 46196

Exhibit A

# COMMERCIAL PROMISSORY NOTE



## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **DHI Holdings, LP**, as borrower (the "Borrower"), a Delaware limited partnership with a principal place of business of 222 Angeles Blvd, Big Bear, CA 92314 promises to pay to the order of **RCN Capital, LLC**, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, or its assigns (collectively, the "Holder"), the principal sum of **One Hundred Seventy-Five Thousand Five Hundred Dollars and No Cents ($175,500.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 4.93% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on June 1, 2051 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on July 1, 2021 and continuing on the first (1ˢᵗ) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from June 1, 2021 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on June 1, 2021, a fixed interest rate equal to the interest rate in effect as of June 1, 2021, and the outstanding principal balance of the Note as of June 1, 2021. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$934.63**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1ˢᵗ) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal FIVE PERCENT (5.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal FOUR PERCENT (4.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount

Page 1 of 5

prepaid. For purposes of this <u>Section 5</u>, the term "<u>Prepayment</u>" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "<u>Event of Default</u>"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "<u>Default Rate</u>") equal to the lesser of (i) Twenty-Two Percent (22%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "<u>Maximum Rate</u>") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "<u>Note</u>'"), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition,

if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Brandon Mendenhall (the "Guarantor"); a certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") granted by DHI Holdings, LP, in favor of RCN Capital, LLC, encumbering the real property and improvements at 11927 Moss Branch Rd, Houston, TX 77043.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

**13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.**

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on _MAY_ _27_, 20_21_.

DHI Holdings, LP

By: _____

Name: Brandon Mendenhall
Title: General Partner

STATE OF _CALIF_____ )
                                             )ss. _____
COUNTY OF _San Bernardino_ )

I certify that on _MAY_ _27_, 20_21_, Brandon Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as General Partner of DHI Holdings, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

_____
Notary Public

_See attached "Caly Acknowledgment"_

PROMISSORY NOTE

Page 5 of 5

**CALIFORNIA ACKNOWLEDGMENT** CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Bernardino_ }

On _5-27-21_ before me, _Caroline H Gutierrez Jackson_,
Date                          Here Insert Name and Title of the Officer

personally appeared _Brandon Mendenhall_
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission # 2315890
My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

Place Notary Seal and/or Stamp Above

──────────── OPTIONAL ────────────

Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**

Title or Type of Document: _Commercial Promissory Note_

Document Date: _5-27-2021_ Number of Pages: _5_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____
_DH1 Holdings LP_

Signer's Name: _____
☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General
☐ Individual       ☐ Attorney in Fact
☐ Trustee          ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2018 National Notary Association

## ALLONGE TO COMMERCIAL PROMISSORY NOTE

This Allonge to Commercial Promissory Note is to be affixed to and made a part of that certain Commercial Promissory Note in the stated principal amount of **One Hundred Seventy-Five Thousand Five Hundred Dollars and No Cents ($175,500.00)**, executed by **DHI Holdings, LP**, a Delaware limited partnership with a principal place of business of 222 Angeles Blvd, Big Bear, CA 92314 and made to the order of **RCN Capital, LLC**, a Connecticut limited liability company, having a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074.

Pay to the order of _____, WITHOUT RECOURSE OR WARRANTY.

Dated as of June 8, 2021.

**RCN Capital, LLC**

By: _____

Matthew Gunter, Authorized Signer


STATE OF CONNECTICUT          )

                                        )ss. South Windsor

COUNTY OF HARTFORD          )

I certify that on June 8, 2021, **Matthew Gunter** came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Authorized Signer of RCN Capital, LLC, a Connecticut limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

_____

Notary Public



ANGELA DITOMMASO
Notary Public of Connecticut
My Commission Expires 3/31/2022

RP-2021-327271
06/11/2021  ER  $106.00

## NOTICE OF CONFIDENTIALITY RIGHTS:
IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

RP-2021-327271

.............................. Space Above Line for Recorder's Use ..............................

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

PARCEL ID:                      114-243-001-0048

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

## NOTICE OF CONFIDENTIALITY RIGHTS:
IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

…….......................... Space Above Line for Recorder's Use …….............................

# DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

PARCEL ID: 114-243-001-0048

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

71415

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (the "Instrument") is made by **DHI Holdings, LP**, as grantor (the "Grantor"), a Delaware limited partnership with a principal place of business at 222 Angeles Blvd, Big Bear, CA 92314 to **Angela DiTommaso**, as trustee (the "Trustee"), an individual with an address of PO Box 3801, Vernon, CT 06066, for the benefit of **RCN Capital, LLC**, as beneficiary (the "Beneficiary"), a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074.

### RECITAL

Grantor is indebted to Beneficiary in the principal amount of **One Hundred Seventy-Five Thousand Five Hundred Dollars and No Cents ($175,500.00)**, as evidenced by Grantor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Beneficiary, executed and delivered contemporaneously with this Instrument, and maturing on June 1, 2051 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Grantor and Beneficiary executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO BENEFICIARY the full and prompt payment and performance of each and all of Grantor's obligations under the Note, and the performance of the covenants and agreements of Grantor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Grantor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Grantor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Beneficiary the following described property (collectively, the "Premises"):

A    The real property located in Harris County, Texas, at **11927 Moss Branch Rd, Houston, TX 77043**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Grantor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B   All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");

C   All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Grantor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the state of Texas, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D   All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Grantor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E   All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Grantor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F   All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Grantor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

**Page 3 of 18**

G    All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H    All other interests of every kind and character, and proceeds thereof, which Grantor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Grantor does hereby represent and warrant that Grantor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Beneficiary contemporaneously with the execution and recordation of this Instrument and insuring Beneficiary's interest in the Premises. Grantor does hereby covenant and agree that Grantor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Grantor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Beneficiary and any other Person authorized by Beneficiary shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Grantor, as debtors, and Beneficiary, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the state of Texas (the "UCC"), for the purpose of securing Grantor's obligations under this Instrument and to further secure Grantor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Grantor hereby grants to Beneficiary a security interest in the Collateral. To the extent necessary under applicable law, Grantor hereby authorizes Beneficiary to prepare and file financing statements, continuation statements and financing statement amendments in such form as Beneficiary may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Beneficiary will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Beneficiary may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Beneficiary's other remedies. This Instrument also

**Page 4 of 18**

constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

3. Taxes and Other Charges. Grantor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Beneficiary's request, Grantor shall deliver to Beneficiary within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Beneficiary.

4. Insurance. Grantor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Grantor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Beneficiary, be and become immediately due and payable in full, subject to applicable law, and Beneficiary shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Beneficiary in Possession. (A) As part of the consideration for the Indebtedness, Grantor absolutely and unconditionally assigns and transfers to Beneficiary all Rents. It is the intention of Grantor to establish a present, absolute and irrevocable transfer and assignment to Beneficiary of all Rents and to authorizes and empower Beneficiary to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Beneficiary, Grantor agrees to execute and deliver such further assignments as Beneficiary may from time to time require. Grantor and Beneficiary intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the state of Texas, then the Rents will be included as a part of the Premises and it is the intention of Grantor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Beneficiary, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Beneficiary hereby grants to Grantor a

revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Beneficiary and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Grantor free and clear of, and released from, Beneficiary's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Grantor authorizes Beneficiary to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Beneficiary. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Beneficiary entering upon and taking and maintaining control of the Premises directly, or by a receiver, Grantor's license to collect the Rents will automatically terminate and Beneficiary will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Grantor will pay to Beneficiary upon demand all the Rents to which Beneficiary is entitled. At any time on or after the date of Beneficiary's demand for the Rents, Beneficiary may give, and Grantor hereby irrevocably authorizes Beneficiary to give, notice to all tenants of the Premises instructing them to pay all Rents to Beneficiary. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Grantor *any amounts which are actually paid to* Beneficiary *in response to such a notice.* Any such notice by Beneficiary will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Grantor will not interfere with and will cooperate with Beneficiary's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Beneficiary will have each of the following rights and may take any of the following actions: (i) Beneficiary may, regardless of the adequacy of Beneficiary's security or the solvency of Grantor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Beneficiary in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Beneficiary, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Beneficiary's security, without regard to Grantor's solvency and without the necessity of giving prior notice (oral or written) to Grantor, Beneficiary may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Beneficiary elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Grantor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Grantor is a housing cooperative corporation or association, Grantor hereby agrees that if a receiver is appointed, the order appointing the

receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Grantor and must be paid out of maintenance charges payable by Grantor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Beneficiary or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises.
(v) Immediately upon appointment of a receiver or immediately upon Beneficiary's entering upon and taking possession and control of the Premises, Grantor will surrender possession of the Premises to Beneficiary or the receiver, as the case may be, and will deliver to Beneficiary or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Beneficiary takes possession and control of the Premises, then Beneficiary may exclude Grantor and its representatives from the Premises. Grantor acknowledges and agrees that the exercise by Beneficiary of any of the rights conferred under this Section 7 will not be construed to make Beneficiary a mortgagee-in-possession of the Premises so long as Beneficiary has not itself entered into actual possession of the Land and Improvements. (D) If Beneficiary enters the Premises, Beneficiary will be liable to account only to Grantor and only for those Rents actually received. Except to the extent of Beneficiary's gross negligence or willful misconduct, Beneficiary will not be liable to the Borrower, anyone claiming under or through Grantor or anyone having an interest in the Premises, by reason of any act or omission of Beneficiary under Section 7(C) of this Instrument, and Grantor hereby releases and discharges Beneficiary from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Beneficiary for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Beneficiary for such purposes will become an additional part of the Indebtedness as provided in Section 10 of this Instrument. (F) Any entering upon and taking of control of the Premises by Beneficiary or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Beneficiary under applicable law or provided for in this Instrument. (F) This Section 7 will not be construed to require a *pro tanto* or other reduction of the Indebtedness resulting from the assignment of Rents. If the provisions of this Section 7 and the preceding sentence cause the assignment of Rents in this Section 7 to be deemed to be an assignment for additional security only, Beneficiary will be entitled to all rights, benefits and remedies attendant to such collateral assignment. The assignment of Rents contained in this Section 7 of this Instrument will terminate upon the release of this Instrument. (G) Unless expressly excluded, the Premises will include the Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Trustor will pay such Rents to the purchaser at such sale.
8. Intentionally left blank.

9. Application of Payments. If at any time Beneficiary receives, from Grantor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Beneficiary may apply that payment to amounts then due and payable in any manner and in any order determined by Beneficiary, in its discretion. Neither Beneficiary's

acceptance of an amount that is less than all amounts then due and payable nor Beneficiary's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Grantor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

10. Protection of Beneficiary's Security; Instrument Secures Future Advances. If Grantor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Beneficiary's security, or Beneficiary's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Beneficiary, at Beneficiary's option may make such appearances, file such documents, disburse such sums and take such actions as Beneficiary reasonably deems necessary to perform such obligations of Grantor and to protect Beneficiary's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Grantor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of Grantor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Grantor for the payment of money that is secured by a lien on the Premises. Any amounts disbursed by Beneficiary under this Section 10 or under any other provision of this Instrument that treats such disbursement as being made under this Section 10, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 10 will require Beneficiary to incur any expense or take any action. The provisions of this Section 10, including the obligation to indemnify Beneficiary, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Beneficiary's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Grantor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq., the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, et seq., the Toxic Substance Control Act, 15 U.S.C. Section 2601, et seq., the Clean Water Act, 33 U.S.C. Section 1251, et seq., and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 et seq., and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are

prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

11. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Beneficiary.

12. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Beneficiary's exercise of any particular right or remedy will not in any way prevent Beneficiary from exercising any other right or remedy available to Beneficiary. Beneficiary may exercise any such remedies from time to time and as often as Beneficiary chooses.

13. Waiver of Statute of Limitations, Offsets, and Counterclaims. Grantor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or to any action brought to enforce any Loan Document. Grantor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Beneficiary or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Beneficiary to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Grantor is obligated to make under any of the Loan Documents.

14. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Beneficiary or by any other party, Beneficiary will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Beneficiary will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Grantor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

15. Further Assurances. Grantor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Beneficiary may require from time to time in order to better assure, grant, and convey to Beneficiary the rights intended to be granted, now or in the future, to Beneficiary under this Instrument and the Loan Documents.

16. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the state of Texas. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Beneficiary's rights with respect to such security interest created in the state of Texas). Nothing in this Section 16 is intended to limit Beneficiary's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

17. Notices. All notices, demands, and other communications required hereunder or otherwise related to this Instrument must be given in accordance with the terms and conditions set forth in the Loan Agreement.

18. Successors and Assigns. This Instrument will bind the respective successors and assigns of Grantor and Beneficiary, and the rights granted by this Instrument will inure to Beneficiary's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Grantor, the obligations of such Persons will be joint and several.

20. Relationship of Parties; No Third-Party Beneficiary. The relationship between Beneficiary and Grantor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Beneficiary and Grantor. Nothing contained in this Instrument will constitute Beneficiary as a joint venturer, partner or agent of Grantor, or render Beneficiary liable for any debts, obligations, acts, omissions, representations or contracts of Grantor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

21. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this

**Page 10 of 18**

Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

22. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 10 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Beneficiary at Grantor's request, and Beneficiary will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

23. Confession of Judgment in Ejectment. To the extent permissible under the laws of the state of Texas, at any time after an Event of Default, regardless of whether Beneficiary has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Grantor and all Persons claiming under Grantor for the recovery by Beneficiary of possession of all or any part of the Premises, for which this Instrument shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Grantor, Beneficiary shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

24. Acceleration; Remedies. (A) At any time during the existence of an Event of Default, Beneficiary, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the POWER OF SALE and any other remedies permitted by Texas law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Trustor acknowledges that the POWER OF SALE granted in this Instrument may be exercised by Beneficiary without prior judicial hearing. Beneficiary will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs, costs of documentary evidence, abstracts, and title reports. (B) If Beneficiary invokes the POWER OF SALE, Beneficiary may, by and through the Trustee, or otherwise, sell or offer for sale the Premises in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of the Premises, to the highest bidder for cash at public auction. Such sale will be made at the courthouse door of the county in which all or any part of the Land to be sold is situated (whether the parts or parcel, if any, situated in different counties are contiguous or not, and without the necessity of having any Accessories present at such sale) on the first (1st) Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m., after advertising the time, place, and terms of sale and that portion of the Premises to be sold by posting or causing to be posted written or printed notice of sale at least twenty-one (21) days before the date of the sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Land may be

**Page 11 of 18**

situated, and by filing such notice with the County Clerk of the county in which all or a portion of the Land may be situated, which notice may be posted and filed by the Trustee acting, or by any Person acting for the Trustee, and Beneficiary has, at least twenty-one (21) days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness in accordance with Beneficiary's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by Beneficiary's records, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any Person having knowledge of the facts to the effect that such service was completed will be *prima facie* evidence of the fact of service. (C) The Trustee will deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Premises so sold in fee simple with covenants of general warranty. Trustor covenants and agrees to defend generally the purchaser's title to the Premises against all claims and demands. The recitals in the trustee's deed will be *prima facie* evidence of the truth of the statements contained in those recitals. Trustee will apply the proceeds of the sale in the following order: (i) To all costs and expenses of the sale, including Trustee's fees not to exceed five percent (5%) of the gross sales price, attorneys' fees and costs and costs of title evidence; (ii) To the Indebtedness in such order as Beneficiary, in its discretion, directs; and (iii) The excess, if any, to the Person or Persons legally entitled thereto. (D) If all or any part of the Premises are sold pursuant to this Section 24, Trustor will be divested of any and all interest and claim to the Premises, including any interest or claim to all insurance policies, utility deposits, bonds, loan commitments and other intangible property included as a part of the Premises. Additionally, after a sale of all or any part of the Land, Improvements, Accessories, and personalty, Trustor will be considered a tenant at sufferance of the purchaser of the same, and the purchaser will be entitled to immediate possession of such property. If Trustor will fail to vacate the Premises immediately, the purchaser may and will have the right, without further notice to Trustor, to go into any justice court in any precinct or county in which the Premises are located and file an action in forcible entry and detainer, which action will lie against Trustor, or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have under this Instrument or otherwise. (E) In the event an interest in any of the Premises are foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Trustor agrees as follows: notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Trustor agrees that Beneficiary will be entitled to seek a deficiency judgment from Trustor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Premises was sold pursuant to judicial or nonjudicial foreclosure sale. Trustor expressly recognizes that this Section 24(E) constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Trustor and other Persons against whom a recovery of deficiencies is sought or guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Premises as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Trustor further acknowledges and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Premises for purposes of calculating deficiencies owed by Trustor, any guarantor of the Note, and others against whom

**Page 12 of 18**

recovery of a deficiency is sought. Alternatively, in the event the waiver provided for in this Section 24(E) is determined by a court of competent jurisdiction to be unenforceable, in any action for a deficiency after a foreclosure under this Instrument, if any Person against whom recovery is sought requests the court in which the action is pending to determine the fair market value of the Premises, as of the date of the foreclosure sale, the following will be the basis of the court's determination of fair market value: (i) The Premises will be valued "as is" and in its condition as of the date of foreclosure, and no assumption of increased value because of post-foreclosure repairs, refurbishment, restorations or improvements will be made. (ii) Any adverse effect on the marketability of title because of the foreclosure or because of any other title condition not existing as of the date of this Instrument will be considered. (iii) The valuation of the Premises will be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Premises for cash within a six (6) month period after foreclosure. (iv) The valuation of the Premises will be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Premises for cash within a six (6) month period after foreclosure. (v) The gross valuation of the Premises as of the date of foreclosure will be further discounted and reduced by reasonable estimated costs of disposition, including brokerage commissions, title policy premiums, environmental assessment and clean-up costs, tax and assessment, prorations, costs to comply with legal requirements and attorneys' fees and costs. (vi) Expert opinion testimony will be considered only from a licensed appraiser certified by the state of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five (5) years' experience in appraising property similar to the Premises in the county where the Premises are located, and who has conducted and prepared a complete written appraisal of the Premises taking into considerations the factors set forth in this Instrument; no expert opinion testimony will be considered without such written appraisal. (vii) Evidence of comparable sales will be considered only if also included in the expert opinion testimony and written appraisal referred to in Section 24(E)(vi) of this Instrument, above. (viii) An affidavit executed by Beneficiary to the effect that the foreclosure bid accepted by the Trustee was equal to or greater than the value of the Premises determined by Beneficiary based upon the factors and methods set forth in Sections 24(E)(i) through (vii) of this Instrument above before the foreclosure will constitute *prima facie* evidence that the foreclosure bid was equal to or greater than the fair market value of the Premises on the foreclosure date. (F) Beneficiary may, at its option, comply with these provisions in the manner permitted or required by Title 5, Section 51.002 of the Texas Property Code (relating to the sale of real estate) or by Chapter 9 of the Texas Business and Commerce Code (relating to the sale of collateral after default by a debtor), as those titles and chapters now exist or may be amended or succeeded in the future, or by any other present or future articles or enactments relating to same subject. Unless expressly excluded, the Premises will include the Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Trustor will pay such Rents to the purchaser at such sale. (G) At any such sale, all of the following will be true: (i) Whether made under the power contained in this Instrument, Section 51.002 of the Texas Property Code, Chapter 9 of the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it will not be necessary for the Trustee to have physically present, or to have constructive possession of, the Premises. Trustor will deliver to the Trustee any portion of the Premises not actually or constructively possessed by the Trustee immediately upon demand by the Trustee and the title to and right of possession of any such property will

pass to the purchaser as completely as if the property had been actually present and delivered to the purchaser at the sale. (ii) Each instrument of conveyance executed by the Trustee will contain a general warranty of title, binding upon Trustor. (iii) The recitals contained in any instrument of conveyance made by the Trustee will conclusively establish the truth and accuracy of the matters recited in the Instrument, including nonpayment of the Indebtedness and the advertisement and conduct of the sale in the manner provided in this Instrument and otherwise by law and the appointment of any successor Trustee. (iv) All prerequisites to the validity of the sale will be conclusively presumed to have been satisfied. (v) The receipt of the Trustee or of such other party or officer making the sale will be sufficient to discharge to the purchaser or purchasers for such purchasers' purchase money, and no such purchaser or purchasers, or such purchasers' assigns or personal representatives, will thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication of such purchase money. (vi) To the fullest extent permitted by law, Trustor will be completely and irrevocably divested of all of Trustor's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale will be a perpetual bar to any claim to all or any part of the property sold, both at law and in equity, against Trustor and against any Person claiming by, through or under Trustor. (vii) To the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale.

25. Release. Upon payment of the Indebtedness, Beneficiary will release this Instrument. Trustor will pay Beneficiary's reasonable costs incurred in releasing this Instrument.

26. Trustee. (A) The Trustee may resign by giving of notice of such resignation in writing to Beneficiary. If the Trustee will die, resign or become disqualified from acting under this Instrument or will fail or refuse to act in accordance with this Instrument when requested by Beneficiary or if for any reason and without cause Beneficiary will prefer to appoint a substitute trustee to act instead of the original Trustee named in this Instrument or any prior successor or substitute trustee, Beneficiary will have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who will succeed to all the estate, rights, powers and duties of the original Trustee named in this Instrument. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Beneficiary (whether acting pursuant to a power of attorney or otherwise), and such appointment will be conclusively presumed to be executed with authority and will be valid and sufficient without proof of any action by Beneficiary. (B) Any successor trustee appointed pursuant to this Section 26 will, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as the Trustee in this Instrument; but, nevertheless, upon the written request of Beneficiary or such successor trustee, the trustee ceasing to act will execute and deliver an instrument transferring to such successor trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and will duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor trustee. (C) The Trustee may authorize one or more parties to act on the Trustee's behalf to perform the ministerial functions required of the Trustee under this Instrument, including the transmittal and posting of any notices.

**Page 14 of 18**

27. Vendor's Lien. To the extent a vendor's lien is retained in that certain deed conveying the Premises to Trustor and dated on or about the date of this Instrument, such vendor's lien has been assigned to Beneficiary, the Note is primarily secured by said vendor's lien, and this Instrument is additional security therefor.

28. No Fiduciary Duty. Beneficiary owes no fiduciary or other special duty to Trustor.

29. Fixture Filing. This Instrument is also a fixture filing under the Uniform Commercial Code of Texas.

30. Loan Charges. Trustor and Beneficiary intend at all times to comply with the laws of the state of Texas governing the maximum rate or amount of interest payable on or in connection with the Indebtedness (or applicable United States Federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount payable under the Note, this Instrument or any other Loan Document, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or if acceleration of the maturity of the Indebtedness, or if any prepayment by Trustor results in Trustor having paid any interest in excess of that permitted by any applicable law, then Trustor and Beneficiary expressly intend that all excess amounts collected by Beneficiary will be applied to reduce the unpaid principal balance of the Indebtedness (or, if the Indebtedness has been or would thereby be paid in full, will be refunded to Trustor), and the provisions of the Note, this Instrument and the other Loan Documents immediately will be deemed reformed and the amounts thereafter collectible under the Loan Documents will be deemed reduced, without the necessity of the execution of any new documents, so as to comply with any applicable law, but so as to permit the recovery of the fullest amount otherwise payable under the Loan Documents. The right to accelerate the maturity of the Indebtedness does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Beneficiary does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Indebtedness will, to the extent permitted by any applicable law, be amortized, prorated, allocated and spread throughout the full term of the Indebtedness until payment in full so that the rate or amount of interest on account of the Indebtedness does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Note, this Instrument or any other Loan Document that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Indebtedness, the total amount of interest that Trustor shall be obligated to pay and Beneficiary is entitled to receive with respect to the Indebtedness will not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually disbursed to or for the account of Trustor, including all current and prior advances and any advances made pursuant to the Instrument or any other Loan Document (such as for the payment of Impositions and similar expenses or costs).

**31. ENTIRE AGREEMENT. THIS INSTRUMENT, THE NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,**

**CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

32. Notice of Additional Provisions Regarding Insurance. Any terms to the contrary contained in this Instrument notwithstanding, the following requirements are hereby imposed pursuant to Section 307.052 of the Texas Finance Code: **(A) TRUSTOR IS REQUIRED TO: (i) KEEP THE PREMISES INSURED AGAINST DAMAGE IN AN AMOUNT EQUAL TO THE INDEBTEDNESS; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER, AND (iii) NAME BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF LOSS. (B) IF TRUSTOR SHOULD FAIL TO COMPLY WITH SECTION 32(A) ABOVE, BENEFICIARY MAY, BUT WILL NOT BE OBLIGATED TO, OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF TRUSTOR AT TRUSTOR'S EXPENSE.**

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the undersigned has signed and delivered this Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing or has caused said instrument to be signed and delivered by its duly authorized representative on _____ May 27 _____, 20 21 .

**DHI Holdings, LP**

Witness: *Edward Hays*

By: _____
Name: Brandon Mendenhall
Title: General Partner

Witness: _____


STATE OF _Calif_____ )
                                 )ss. _____
COUNTY OF _San Bernardino_____ )

I certify that on _____ 5-27 _____, 20 21 , Brandon Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as General Partner of DHI Holdings, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

_____
Notary Public

*See "Calif Acknowledgment"*

## CALIFORNIA ACKNOWLEDGMENT

CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _San Bernardino_ }

On _5·27·2021_ before me, _Caroline H Gutierrez - Jackson_,
      Date                                      Here Insert Name and Title of the Officer

personally appeared _Brandon Mendenhall_
                                           Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> CAROLINE H. GUTIERREZ-JACKSON
> Notary Public - California
> Los Angeles County
> Commission # 2315890
> My Comm. Expires Dec 15, 2023

Signature _____
                   Signature of Notary Public

Place Notary Seal and/or Stamp Above

--- **OPTIONAL** ---

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

Description of Attached Document

Title or Type of Document: _Deed of Trust, Assignment of Rents, Security Agreement & Fixture Filing_

Document Date: _5-27-2021_      Number of Pages: _18_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _DHI Holdings LP_

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact
☐ Trustee      ☐ Guardian or Conservator
☐ Other: _____
Signer is Representing: _____

©2018 National Notary Association

## SCHEDULE 1
## PROPERTY DESCRIPTION

LOT FORTY-EIGHT (48), IN BLOCK ONE (1), OF REPLAT OF SPRING MEADOWS, SECTION TWO (2), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 297, PAGE 90 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Property Address and Tax Parcel Identification Number listed are provided solely for informational purposes , without warranty as to accuracy or completeness and are not hereby insured.

Property Address: 11927 Moss Branch Rd, Houston, TX 77043

Tax Parcel ID Number: 1142430010048

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is incorporated into and shall be deemed to amend and supplement the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Security Instrument") of the same date, given by the undersigned (the "Grantor") encumbering the real property and improvements described in the Security Instrument and located at: 11927 Moss Branch Rd, Houston, TX 77043 (the "Premises"), and granted to secure the Commercial Promissory Note (the "Note"), of the same date, made by DHI Holdings, LP to the order of RCN Capital, LLC (the "Beneficiary").

The Premises include, but are not limited to, a parcel of land improved with a dwelling, together with such other parcels and certain common areas and facilities, as described in covenants, conditions, and restrictions of record (together, with any amendments thereto (the "Declaration"). The Premises are a part of a planned unit development known as Spring Meadow (the "PUD"). The Premises also includes Grantor's interest in the homeowners association or equivalent entity (the "Owners Association") owning or managing the common areas and facilities of the PUD and the uses, benefits, and proceeds of Grantor's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Grantor and Beneficiary further covenant and agree as follows:

A. PUD Obligations. Grantor shall perform all of its obligations under the PUD's Constituent Documents. The "Constituent Documents" are: (i) the Declaration; (ii) the articles of incorporation, trust instrument, or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Grantor shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Premises which is satisfactory to Beneficiary and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Beneficiary requires insurance, then: (i) Beneficiary waives the provision in Section 17(F) of the Loan Agreement for the periodic payment to Beneficiary of the premium installments for property insurance on the Premises; and (ii) Grantor's obligation under Section 17(D) of the Loan Agreement to maintain property insurance coverage on the Premises is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Beneficiary requires as a condition of this waiver can change during the term of the loan.

Grantor shall give Beneficiary prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Premises, or to common areas and facilities of the PUD, any proceeds payable to Grantor are hereby assigned to Beneficiary and shall be paid to

Beneficiary. Beneficiary shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Grantor.

C. Public Liability Insurance. Grantor shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Beneficiary.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Grantor in connection with any condemnation or other taking of all or any part of the Premises or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Beneficiary. Such proceeds shall be applied by Beneficiary to the sums secured by the Security Instrument as provided in Section 9.

E. Beneficiary's Prior Consent. Grantor shall not, except after notice to Beneficiary and with Beneficiary's prior written consent, either partition or subdivide the Premises or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Beneficiary; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Beneficiary.

F. Remedies. If Grantor does not pay PUD dues and assessments when due, then Beneficiary may pay them. Any amounts disbursed by Beneficiary under this Paragraph F shall become additional debt of Grantor secured by the Security Instrument. Unless Grantor and Beneficiary agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the interest rate set forth in the Note and shall be payable, with interest, upon notice from Beneficiary to Grantor requesting payment.

*[Remainder of this page intentionally left blank]*

BY SIGNING BELOW, the undersigned accepts and agrees to the terms and covenants contained in this Planned Unit Development Rider on _____ MAY 27 , 20 21 .

**DHI Holdings, LP**

Witness: _Edward Heys_

By: _____
Name: Brandon Mendenhall
Title: General Partner

Witness: _____

STATE OF _Calif_ )
)ss. _____
COUNTY OF _San Bernardino_ )

I certify that on _MAY 27_ , 20 21 , Brandon Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as General Partner of DHI Holdings, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

_____
Notary Public

_See "Calf Acknowledgment" attached_

Page 3 of 3

**CALIFORNIA ACKNOWLEDGMENT**                                    CIVIL CODE § 1189

┃ A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document
┃ to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _San Bernardino_ }

On _5-27-2021_ before me, _Caroline H. Gutierrez - Jackson_,
    Date                           Here Insert Name and Title of the Officer

personally appeared _Brandon Mendenhall_
                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

CAROLINE H. GUTIERREZ-JACKSON
Notary Public - California
Los Angeles County
Commission # 2315890
My Comm. Expires Dec 15, 2023

I certify under PENALTY OF PERJURY under the
laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
        Signature of Notary Public

*Place Notary Seal and/or Stamp Above*

──────────────────── OPTIONAL ────────────────────

*Completing this information can deter alteration of the document or
fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _PLANNED Unit Development Rider_
Document Date: _5-27-2021_ _____ Number of Pages: _3_
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer – Title(s): _____   ☐ Corporate Officer – Title(s): _____
☐ Partner – ☐ Limited ☐ General         ☐ Partner – ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact    ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator   ☐ Trustee    ☐ Guardian or Conservator
☐ Other: _____                ☐ Other: _____
Signer is Representing:                  Signer is Representing: _____
_DHI HOLDING LP_

©2018 National Notary Association

Escrow File No.: GF21143202

## EXHIBIT "A"

The following real property situated in Harris County, Texas, as follows:

LOT FORTY-EIGHT (48), IN BLOCK ONE (1), OF REPLAT OF SPRING MEADOWS, SECTION TWO (2), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 297, PAGE 90 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

PARCEL NUMBER(S): 1142430010048

RP-2021-327271
# Pages 24
06/11/2021 09:58 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees  $106.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP-2022-506265
10/13/2022 ER $18.00

Recording Requested By:
Title Clearing and Escrow

When Recorded Return To:

Assignments and Lien Release
Title Clearing and Escrow
1601 LBJ Freeway Suite 150
Farmers Branch, TX 75234

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**Harris, Texas**
**Fay Servicing#: ****7610, "DHI HOLDINGS, LP" TCEL-216092-TX Escrow/Title: TCEL-216092-TX**

Date of Assignment: October 12th, 2022
Assignor: RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT at c/o Fay Servicing, 1601 LBJ Freeway, Suite 150, Farmers Branch, TX 75243
Assignee: U.S. Bank National Association, not in its individual capacity but solely as Trustee for Spartan Funding I Trust at 60 Livingston Ave, St. Paul, MN 55107

Executed By: DHI HOLDINGS, LP To: RCN CAPITAL, LLC
Dated: 05-27-2021 Recorded: 06-11-2021 as Instrument No. 2021-327271, Book/Reel/Liber N/A, Page/Folio N/A In the County of Harris, State of Texas.

Property Address: 11927 MOSS BRANCH RD, HOUSTON, TX 77043

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $175,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT
On October 12th, 2022

By: _____
Anne Finkel, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On October 12th, 2022, before me, Crystal Malone, a Notary Public in and for Dallas in the State of Texas, personally appeared Anne Finkel, Assistant Secretary of RCN CAPITAL, LLC, BY FAY SERVICING, LLC AS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Crystal Malone
Notary Expires: 6/24/2026  #133827769



Crystal Malone
My Commission Expires
6/24/2026
Notary ID 133827769

RP-2022-506265
# Pages 2
10/13/2022 10:43 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
TENESHIA HUDSPETH
COUNTY CLERK
Fees  $18.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2025-5456

FILED 7/24/2025 9:23:34 AM

25-02777
11927 MOSS BRANCH RD, HOUSTON, TX 77043

## NOTICE OF FORECLOSURE SALE AND
## APPOINTMENT OF SUBSTITUTE TRUSTEE

**Property:**  The Property to be sold is described as follows:

LOT FORTY-EIGHT (48), IN BLOCK ONE (1), OF REPLAT OF SPRING MEADOWS, SECTION TWO (2), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 297, PAGE 90 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS

**Security Instrument:**  Deed of Trust dated May 27, 2021 and recorded on June 11, 2021 at Instrument Number RP-2021-327271 in the real property records of HARRIS County, Texas, which contains a power of sale.

**Sale Information:**  September 2, 2025, at 10:00 AM, or not later than three hours thereafter, at THE BAYOU CITY EVENT CENTER, MAGNOLIA SOUTH BALLROOM, LOCATED AT 9401 KNIGHT RD, HOUSTON, TX 77045 OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE. or as designated by the County Commissioners Court.

**Terms of Sale:**  Public auction to highest bidder for cash. In accordance with Texas Property Code section 51.009, the Property will be sold as is, without any expressed or implied warranties, except as to warranties of title, and will be acquired by the purchaser at its own risk. In accordance with Texas Property Code section 51.0075, the substitute trustee reserves the right to set additional, reasonable conditions for conducting the sale and will announce the conditions before bidding is opened for the first sale of the day held by the substitute trustee.

**Obligation Secured:**  The Deed of Trust executed by DHI HOLDINGS LP secures the repayment of a Note dated May 27, 2021 in the amount of $166,734.01. U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SPARTAN FUNDING I TRUST, whose address is c/o RF Mortgage Services Corporation, 222 W Adams St #3150, Chicago, IL 60606, is the current mortgagee of the Deed of Trust and Note and RF Mortgage Services Corporation is the current mortgage servicer for the mortgagee. Pursuant to a servicing agreement and Texas Property Code section 51.0025, the mortgagee authorizes the mortgage servicer to administer the foreclosure on its behalf.

**Substitute Trustee:**  In accordance with Texas Property Code section 51.0076 and the Security Instrument referenced above, mortgagee and mortgage servicer's attorney appoint the substitute trustees listed below.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED



4848377

**FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

*Mary Company*

De Cubas & Lewis, P.C.
Mary Company , Attorney at Law
PO Box 5026
Fort Lauderdale, FL 33310

Substitute Trustee(s): Jeff Leva, Sandy Dasigenis,
Patricia Poston, Megan L. Randle, Ebbie Murphy,
Wayne Daughtrey, Steve Leva, Nicole Durrett
ServiceLink ASAP

c/o De Cubas & Lewis, P.C.
PO Box 5026
Fort Lauderdale, FL 33310

Certificate of Posting

I, _____ SANDY DASIGENIS _____, declare under penalty of perjury that on the __24th__ day of _____ July _____, 20_25_, I filed and posted this Notice of Foreclosure Sale in accordance with the requirements of HARRIS County, Texas and Texas Property Code sections 51.002(b)(1) and 51.002(b)(2).

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2025-5456

FILED 7/24/2025 9:23:34 AM

# APPRAISAL OF REAL PROPERTY



### LOCATED AT

11927 Moss Branch Rd
Houston, TX 77043
Lot 48 Block 1 Spring Meadow Sec 2 R/P

### FOR

RCN Capital
75 Gerber Road
South Windsor, CT 06074

### AS OF

04/19/2021

### BY

William C Clements Jr
Residential Valuation Corp
20747 Clay Rd
Katy, TX 77449
(281) 646-7000
bill@residentialvaluation.com

# Uniform Residential Appraisal Report

File # ▮▮▮▮▮

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | | |
|---|---|---|---|
| Property Address 11927 Moss Branch Rd | City Houston | State TX | Zip Code 77043 |

Borrower Brandon Mendenhall — Owner of Public Record Michael Ray Batts — County Harris

Legal Description Lot 48 Block 1 Spring Meadow Sec 2 R/P

Assessor's Parcel # 114-243-001-0048 — Tax Year 2020 — R.E. Taxes $ 4,530

Neighborhood Name Spring Meadow — Map Reference 449L KeyMap — Census Tract 5402.00

Occupant ☐ Owner ☒ Tenant ☐ Vacant — Special Assessments $ 0 — ☒ PUD — HOA $ 466 ☒ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Ascertain Market Value

Lender/Client RCN Capital — Address 75 Gerber Road, South Windsor, CT 06074

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). DOM 8;Listed in MLS on 02/05/2021 for $250,000. The Listing was withdrawn on 02/13/2021.
HAR MLS#35273486 .

## CONTRACT

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ — Date of Contract — Is the property seller the owner of public record? ☐ Yes ☐ No — Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE / AGE | One-Unit 70 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) / (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 68 Low 0 | Multi-Family 5 % |
| Neighborhood Boundaries Tanner Rd on the north. Gessner Rd on the east. Hammerly Blvd on the south. | | 525 High 76 | Commercial 20 % |
| Addicks Barker Reservoir on the west. All other land use is undeveloped land. | | 340 Pred. 50 | Other 5 % |

Neighborhood Description Older, primarily residential neighborhood in west Houston TX Metro area. Deed restrictions control property use due to the lack of zoning in this market area. The lack of zoning in this area is typical & does not adversely effect marketability. Homes are compatible and adequately maintained with average market appeal. Consumer goods and services are within the general area.

Market Conditions (including support for the above conclusions) Marketing conditions are reasonably balanced based on MLS statistics. Opinion of reasonable Exposure Time for Subject based on MLS statistics and 1004MC Form: 60 days or less. Numerous types of financing are available with typical seller concessions noted of 2 points or less. According to MLS statistics, values appear to be stable.

## SITE

Dimensions 50x110 - See Survey/Plat — Area 5500 sf — Shape Avg:Rectangular — View N;Res;

Specific Zoning Classification Deed restricted - SFR — Zoning Description No Zoning in area (typical). Deed Restrictions are typical.

Zoning Compliance ☐ Legal ☐ Legal Nonconforming (Grandfathered Use) ☒ No Zoning ☐ Illegal (describe) There is no zoning in this market area.

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe The Appraiser is not aware of any condition that would prevent rebuilding 100% of the residence should it be completely or partially destroyed.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street Concrete | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley None | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No — FEMA Flood Zone X — FEMA Map # 48201C0630M — FEMA Map Date 11/15/2019

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

Typical zero lot line subdivision site. The Appraiser has not reviewed a survey of the Subject site. No apparent adverse easements, encroachments, environmental conditions or land uses have been observed. There was no evidence of drilling activity, income production, farming or other agricultural activity on the Subject property. See attached County Plat Map.

## IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls CCSlab/Avg | Floors Tile/Lam/Good |
| # of Stories 2 | ☐ Full Basement ☐ Partial Basement | Exterior Walls Brk/Sdg/Avg | Walls Gypboard/Good |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | Roof Surface CompShg//Good | Trim/Finish Wood/Good |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts Metal/Avg | Bath Floor Tile/Avg |
| Design (Style) Trad | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type Vinyl/Avg | Bath Wainscot Tile/Good |
| Year Built 1983 | Evidence of ☐ Infestation | Storm Sash/Insulated Double Pane/Avg | Car Storage ☐ None |
| Effective Age (Yrs) 30 | ☐ Dampness ☐ Settlement | Screens Vinyl/Avg | ☒ Driveway # of Cars 2 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Driveway Surface Concrete/Avg |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel Gas | ☒ Fireplace(s) # 1 ☒ Fence Wood | ☒ Garage # of Cars 2 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Covrd ☒ Porch Covered | ☐ Carport # of Cars 0 |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool None ☐ Other None | ☒ Att. ☐ Det. ☐ Built-in |

Woodstove(s) # 0

Appliances ☐ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 7 Rooms — 3 Bedrooms — 2.1 Bath(s) — 1,763 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Energy features include: insulation, attic ventilation, window coverings, double paned windows, ceiling fans. All utilities were on and related mechanical systems were functional at the time of the Appraisal.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). C3;Kitchen-updated-less than one year ago;Bathrooms-updated-less than one year ago;See attached addendum for explanation of condition and quality ratings. No repairs are required for this analysis. Effective age is less than actual age due to maintenance and updates since original construction. Owner states they replaced the roof in 2021, the flooring in 2021, the stove in 2021, and new interior paint in 2021.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

No physical deficiencies or adverse conditions were readily apparent. No damage was observed that was caused by the Texas Winter Storm (Uri) that began on 02/11/2021 and resulted with issuance of Presidential FEMA Disaster Declaration DR-4586-TX on 02/19/2021. This weather event is now over.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Covid-19 statement. This pandemic is ongoing in this market area. In the Appraiser's opinion, effects of Covid has resulted in a very limited housing supply which has resulted in short market exposure times and value increases in many areas.

## Uniform Residential Appraisal Report

File # ▓▓▓▓▓

There are __2__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 210,000 to $ 249,900 .

There are __26__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 177,000 to $ 340,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 11927 Moss Branch Rd  Houston, TX 77043 | 3715 Moss Tree Rd  Houston, TX 77043 | | 4730 Newpark Dr  Houston, TX 77041 | | 11915 N Fairhollow Ln  Houston, TX 77043 | |
| Proximity to Subject | | 0.14 miles N | | 1.44 miles NE | | 0.33 miles N | |
| Sale Price | $ | $ 205,000 | | $ 250,000 | | $ 218,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 137.40 sq.ft. | | $ 147.06 sq.ft. | | $ 114.86 sq.ft. | |
| Data Source(s) | | HARMLS#45484817;DOM 34 | | HARMLS#29937683;DOM 3 | | HAR MLS# 3185072;DOM 4 | |
| Verification Source(s) | | CAD/Inspection/Realist | | CAD/Inspection/Realist | | CAD/Inspection/Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth  Conv;1500 | 0 | ArmLth  Conv;0 | | ArmLth  Conv;3000 | 0 |
| Date of Sale/Time | | s11/20;c10/20 | | s03/21;c01/21 | | s10/20;c09/20 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5500 sf | 5500 sf | | 8904 sf | -3,400 | 5000 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT2;Trad | DT1;Trad | 0 | DT2;Trad | | DT1;Trad | 0 |
| Quality of Construction | Q4 | Q4 | +7,500 | Q4 | | Q4 | +7,500 |
| Actual Age | 38 | 39 | 0 | 40 | 0 | 41 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 7 / 3 / 2.1 | 6 / 3 / 2.0 | +2,500 | 7 / 3 / 2.1 | | 6 / 3 / 2.0 | +2,500 |
| Gross Living Area | 1,763 sq.ft. | 1,492 sq.ft. | +9,500 | 1,700 sq.ft. | 0 | 1,898 sq.ft. | -4,700 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Standard | Standard | | Standard | | Standard | |
| Heating/Cooling | Cen Heat&A/C | Cen Heat&A/C | | Cen Heat&A/C | | Cen Heat&A/C | |
| Energy Efficient Items | DblePaneWins | SnglPaneWins | +5,000 | DblePaneWins | | SnglPaneWins | +5,000 |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Prch/CvPatODk | Porch/Cv Patio | +2,500 | Porch/Cabana | 0 | Porch/Patio | +7,500 |
| Closing date | N/A | 11/13/2020 | 0 | 03/08/2021 | 0 | 10/29/2020 | 0 |
| Other feature | None | None | | Pool | -12,500 | None | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 27,000 | ☐ + ☒ - | $ -15,900 | ☒ + ☐ - | $ 17,800 |
| Adjusted Sale Price of Comparables | | Net Adj. 13.2 %  Gross Adj. 13.2 % | $ 232,000 | Net Adj. 6.4 %  Gross Adj. 6.4 % | $ 234,100 | Net Adj. 8.2 %  Gross Adj. 12.5 % | $ 235,800 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s) __MLS, CAD and/or Realist__

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s) __MLS, CAD and/or Realist__

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | HAR MLS/CAD/Realist | HAR MLS/CAD/Realist | HAR MLS/CAD/Realist | HAR MLS/CAD/Realist |
| Effective Date of Data Source(s) | 04/19/2021 | 04/19/2021 | 04/19/2021 | 04/19/2021 |

Analysis of prior sale or transfer history of the subject property and comparable sales     According to available sources, the Subject has not sold or transferred during the preceding 3 year period. No prior sales or transfers of the Comparables were found to have occurred during the 1 year period preceding their respective sale date.

I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three year period immediately preceding acceptance of this assignment.

Summary of Sales Comparison Approach     These Comparables are representative of the best available. Closed transactions and current offers were considered.  Comparables which illustrate a lower, similar, and higher price range, as well as properties which are smaller, similar and larger in size were researched. Comparable 2 is located further from the Subject than is expected by industry guidelines, is in the Subject's competing market area and was selected due to the numerous similarities to the Subject.  With regard to verification sources, the CAD records are considered most reliable for certain physical characteristics of the Comparables including lot size, year built, living area, etc. MLS is likely more reliable for condition, updates, additions and closing/financing information.The Appraiser's inspection verifies land uses and external features. The included data is considered adequate for use in producing a credible valuation analysis. Sales Comparison Comments continued on Form page 3.

Indicated Value by Sales Comparison Approach $ __234,000__

Indicated Value by: Sales Comparison Approach $ __234,000__   Cost Approach (if developed) $ __234,400__   Income Approach (if developed) $

Market Approach given most weight in the final valuation analysis as it reflects typical buyer motivation. Cost Approach provides support for the market value as well as the site valuation. Income Approach is not applicable as it does not reflect buyer motivation in this market. See attached Appraiser's Certification and Statement of Limiting Conditions.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: None.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ __234,000__ , as of __04/19/2021__ , which is the date of inspection and the effective date of this appraisal.

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

File [ ]

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 11927 Moss Branch Rd Houston, TX 77043 | 12002 S Youngwood Ln Houston, TX 77043 | | | | | |
| Proximity to Subject | | 0.40 miles N | | | | | |
| Sale Price | $ | $ 198,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 125.95 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | HAR MLS# 13309161;DOM 40 | | | | | |
| Verification Source(s) | | CAD/Inspection/Realist | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | Conv;0 | 0 | | | | |
| Date of Sale/Time | | s11/20;c10/20 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 5500 sf | 6100 sf | 0 | | | | |
| View | N;Res; | A;Res;BsyCnr | +5,000 | | | | |
| Design (Style) | DT2;Trad | DT1;Trad | 0 | | | | |
| Quality of Construction | Q4 | Q4 | +7,500 | | | | |
| Actual Age | 38 | 37 | 0 | | | | |
| Condition | C3 | C3 | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7  3  2.1 | 6  3  2.0 | +2,500 | | | | |
| Gross Living Area | 1,763 sq.ft. | 1,572 sq.ft. | +6,700 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Standard | Standard | | | | | |
| Heating/Cooling | Cen Heat&A/C | Cen Heat&A/C | | | | | |
| Energy Efficient Items | DblePaneWins | SnglPaneWins | +5,000 | | | | |
| Garage/Carport | 2ga2dw | 2ga2dw | | | | | |
| Porch/Patio/Deck | Prch/CvPatODk | Porch/Patio | +7,500 | | | | |
| Closing date | N/A | 11/10/2020 | 0 | | | | |
| Other feature | None | None | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ +  ☐ - | $ 34,200 | ☐ +  ☐ - | $ | ☐ +  ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 17.3 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 17.3 % | $ 232,200 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | HAR MLS/CAD/Realist | HAR MLS/CAD/Realist | | |
| Effective Date of Data Source(s) | 04/19/2021 | 04/19/2021 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Uniform Residential Appraisal Report

**ADDITIONAL COMMENTS**

The adjustments applied in this analysis are intended to reflect anticipated market response to differences between the Subject and the Comparables. The commonly recognized methodology to produce these adjustments is by use of paired sales comparisons. In circumstances where the market activity appears to vary from logical response to a differential, the Appraiser may influence adjustments based on past experience and reasonable judgment. The net adjustments to Comparable 4 have exceeded typical industry expectations. As the Appraiser has recognized and considered all material differences between the Subject and this Comparable, the accuracy of this analysis is not adversely effected due to this variance.

Comparables 2 and 3 received Seller paid concessions, but as these concessions were not in excess of 2%, the median contribution for this area, they were not deemed to have impacted the final negotiated price and no adjustments were deemed necessary.

All Comparables except 2 are located in the same PUD development as Subject. Comparable 2 is located in a nearby competing PUD development that is similarly deed restricted and feature similar amenities as the. No adjustment for PUD differences were indicated or applied. As stated elsewhere, Comparable 2 has been included due to having numerous similarities to the Subject.

Comparable 2 required a downward adjustment to compensate for a notable difference in lot size.

Comparable 5 received an upward adjustment for the undesirable site influence of a busy corner location.

Upward quality adjustments were applied to all Comparables except 2, based on the Appraiser's interpretation of the descriptions, comments and photographs provided through MLS.

All Comparables were similar enough in age to the Subject that no adjustment was deemed necessary.

Comparables were adjusted for living area and bathroom differences as warranted.

Comparable 2 features similar double paned windows as the Subject. All other Comparables required upward adjustments to offset their inferior single paned windows.

All Comparables received relative adjustments to compensate for exterior.amenity differences.

RECONCILIATION - After consideration and adjustment for the various differences between the Subject and the Comparables, the value indications fall within a very narrow range. Typically the Appraiser will correlate the individual adjusted sales prices into an indication of value based on the weighed reliability of each Comparable. However, in this analysis all value indications provide focused support for the Subject's final concluded, as is value opinion to be $234,000 without requiring further reconciliation. The estimated value of the Subject is lower than the predominant value for the neighborhood due to the presence of numerous larger homes in the area. The Subject's value is within the overall value range, does not represent an under improvement for the area and does not suffer from marketability due to this condition.

The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and the Definition of Market Value. No additional intended Users are identified by the Appraiser.

The Appraiser certifies that this appraisal report was completed in compliance with the Appraiser Independence Requirements (AIR) and in adherence with non influence policy and procedures. No one has influenced or attempted to influence the development, reporting, result or review of this assignment in any manner. The current version of USPAP (Uniform Standards of Professional Appraisal Practice) recognizes two types of reports; "Appraisal Report" and "Restricted Appraisal Report". This valuation is identified as an "Appraisal Report". Clarence Warren Walker II, Texas Licensed Trainee # TX 1342386 has provided significant professional assistance in the preparation of this report. This assistance has included the market research and report preparation

The definition of Highest and Best Use as used in this report is as follows: "the use, from among reasonably probable and legal alternative uses, found to be physically possible, appropriately supported, financially feasible and that result in the highest present land value." The Subject is legally deed restricted to single family residential use, its most probable and feasible use. The Subject's Highest and Best Use is therefore considered to be for residential use (both if vacant and as improved).

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     Site value has been based on a review of the limited area Market Data (a summary of which has been retained in the appraisal work file), consideration of the County Appraisal District valuation, typical allocation of land/improvements and the residual land value indicated by the Cost Approach. Land value exceeds 30% of overall value. This is typical in this area of high demand.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ 87,500 |
|---|---|---|
| Source of cost data     Online service, Files & Experience | DWELLING     1,763 Sq.Ft. @ $ 95.00 | =$ 167,485 |
| Quality rating from cost service     Avg     Effective date of cost data     Current | Bsmt     0 Sq.Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.)     Cv Areas 383sf x $35 | | =$ 13,405 |
| Areas calculated based on sketch addendum floor plan. Physical | Garage/Carport     480 Sq.Ft. @ $ 38.00 | =$ 18,240 |
| depreciation based on age/life method. Effective age is less than actual | Total Estimate of Cost-New | =$ 199,130 |
| due to maintenance and improvement since construction. No Functional | Less     Physical     Functional     External | |
| or External Obsolescence has been charged. Cost Approach has been | Depreciation     59,739 | =$( 59,739) |
| used to support land valuation using residual analysis. | Depreciated Cost of Improvements | =$ 139,391 |
| | "As-is" Value of Site Improvements | =$ 7,500 |
| Estimated Remaining Economic Life (HUD and VA only)     70 Years | INDICATED VALUE BY COST APPROACH | =$ 234,400 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $     1,825     X Gross Rent Multiplier     = $     Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)     Income Approach has not been used as it does not reflect the typical Buyer motivation in this market area. Subject is reported leased for $1750 per month through 02/12/2022.

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?     ☐ Yes  ☒ No     Unit type(s)  ☒ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases          Total number of units          Total number of units sold

Total number of units rented          Total number of units for sale          Data source(s)

Was the project created by the conversion of existing building(s) into a PUD?     ☐ Yes  ☐ No     If Yes, date of conversion.

Does the project contain any multi-dwelling units?     ☐ Yes  ☐ No     Data Source

Are the units, common elements, and recreation facilities complete?     ☐ Yes  ☐ No     If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?     ☐ Yes  ☐ No     If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.     The pool, park and green areas appear to be adequately maintained. HOA fees and amenities are considered competitive for the general market area.

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

**APPRAISER'S CERTIFICATION:**          The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Page 5 of 6          Fannie Mae Form 1004 March 2005

# Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  William C Clements Jr | Name |
| Company Name  Residential Valuation Corp | Company Name |
| Company Address  20747 Clay Rd | Company Address |
| Katy, TX 77449 | |
| Telephone Number  (281) 646-7000 | Telephone Number |
| Email Address  bill@residentialvaluation.com | Email Address |
| Date of Signature and Report  04/22/2021 | Date of Signature |
| Effective Date of Appraisal  04/19/2021 | State Certification # |
| State Certification #  1321203 | or State License # |
| or State License # | State |
| or Other (describe)          State # | Expiration Date of Certification or License |
| State  TX | |
| Expiration Date of Certification or License  06/30/2021 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

11927 Moss Branch Rd
Houston, TX 77043

APPRAISED VALUE OF SUBJECT PROPERTY $  234,000

LENDER/CLIENT

Name  Appraisal Nation
Company Name  RCN Capital
Company Address  75 Gerber Road, South Windsor, CT 06074

Email Address

**SUBJECT PROPERTY**

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

**COMPARABLE SALES**

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

COMPARABLE RENT SCHEDULE

File # ▮▮▮

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 11927 Moss Branch Rd Houston, TX 77043 | 11919 Moss Branch Rd Houston, TX 77043 | | 3806 Moss Tree Rd Houston, TX 77043 | | 12002 N Fairhollow Ln Houston, TX 77043 | |
| Proximity to Subject | | 0.02 miles E | | 0.16 miles N | | 0.35 miles N | |
| Date Lease Begins | 02/2021 | 11/2020 | | 04/2021 | | 11/2020 | |
| Date Lease Expires | 02/2022 | 11/2021 | | 04/2022 | | 11/2021 | |
| Monthly Rental | If Currently Rented: $ 1,750 | $ 1,550 | | $ 1,750 | | $ 1,850 | |
| Less: Utilities | $ | $ | | $ | | $ | |
| Furniture | | | | | | | |
| Adjusted Monthly Rent | $ 1,750 | $ 1,550 | | $ 1,750 | | $ 1,850 | |
| Data Source | | HAR MLS#29219856 ;DOM12 CAD/Inspection | | HAR MLS#64043150 ;DOM14 CAD/Inspection | | HAR MLS#27520099 ;DOM28 CAD/Inspection | |

| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +( -)$ Adjust. | DESCRIPTION | +( -)$ Adjust. | DESCRIPTION | +( -)$ Adjust. |
|---|---|---|---|---|---|---|---|
| Rent Concessions | | None Known | | None Known | | None Known | |
| Location/View | N;Res; N;Res; | N;Res; N;Res; | | N;Res; N;Res; | | N;Res; N;Res; | |
| Design and Appeal | DT2;Trad Traditional | DT1;Trad Traditional | 0 | DT1;Trad Traditional | 0 | DT1;Trad Traditional | 0 |
| Age/Condition | 38 C3 | 38 C3 | | 41 C3 | | 42 C3 | |
| Above Grade Room Count — Total / Bdrms / Baths | 7 / 3 / 2.1 | 6 / 3 / 2.0 | +25 | 6 / 3 / 2.0 | +25 | 7 / 3 / 2.0 | +25 |
| Gross Living Area | 1,763 Sq. Ft. | 1,386 Sq. Ft. | +150 | 1,626 Sq. Ft. | +50 | 1,824 Sq. Ft. | |
| Other (e.g., basement, etc.) | 0sf | 0sf Inf Quality | +50 | 0sf | | 0sf Sup Quality | -50 |
| Other: | 2 Car Garage Cv Patio | 2 Car Garage Cv Patio | | 2 Car Garage Cv Patio | | 2 Car Garage Cv Patio | |
| Net Adj. (total) | | ☒ + ☐ – $ | 225 | ☒ + ☐ – $ | 75 | ☐ + ☒ – $ | -25 |
| Indicated Monthly Market Rent | | Net 14.5 % Gross 14.5 % $ | 1,775 | Net 4.3 % Gross 4.3 % $ | 1,825 | Net 1.4 % Gross 4.1 % $ | 1,825 |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.) MLS reports the monthly rental rates in this area are from approximately $1150 to $2900. The vacancy rate in the area is estimated to be less than 5%. Most properly priced/marketed rentals required less than 45 days of market exposure. The above rent Comparables are located in the Subject's market area and represent direct competition to the subject. The following adjustments were deemed necessary; All comparables were adjusted upward for lacking the half bath the Subject possesses. Comparables 1 and 2 received upward adjustment for smaller living area. Comparable 1 received upward adjustment for slightly inferior quality and Comparable 3 for slightly superior quality, as viewed from MLS photos and descriptions.

Final Reconciliation of Market Rent: All adjusted comps indicate a narrow range of Economic Rent. All are considered to support an indicated Economic Rental Rate of $1825 per month for the Subject Property. Subject's Economic Rent estimate is based on its present "As Is" condition. No repairs are required. It is common for contract rents to be below market rents due to long terms tenants or due to owner's lack of market research.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF 04/19/2021 TO BE $ 1,825

| | | |
|---|---|---|
| Appraiser(s) SIGNATURE | | Review Appraiser SIGNATURE (If applicable) |
| NAME William C Clements Jr | | NAME |
| Date Property Inspected 04/19/2021 | Report Signed 04/22/2021 | Date Property Inspected Report Signed |
| License or Certification # 1321203 | State TX | License or Certification # State |
| Expiration Date of License or Certification 06/30/2021 | | Expiration Date of License or Certification |
| | | Review Appraiser ☐ Did ☐ Did Not Inspect Subject Property |

Freddie Mac Form 1000 (8/88)  Fannie Mae Form 1007 (8/88)

## 11927 Moss Branch Rd, Houston, TX 77043-1119, Harris County

| | | | |
|---|---|---|---|
| MLS Beds 3 | MLS Sq Ft 1,746 | Lot Sq Ft 5,500 | Sale Price N/A |
| MLS Baths 2.1 | Yr Built 1983 | Type SFR | Sale Date N/A |

### OWNER INFORMATION

| | | | |
|---|---|---|---|
| Owner Name | Dhi Holdings Lp | Tax Billing City & State | Tampa, FL |
| Owner Occupied | No | Tax Billing Zip | 33607 |
| Carrier Route | C034 | Tax Billing Zip+4 | 2485 |
| Tax Billing Address | 4115 W Spruce St | | |

### LOCATION INFORMATION

| | | | |
|---|---|---|---|
| Subdivision | Spring Meadows Sec 02 R/P | Key Map | 449I |
| School District Name | Spring Branch ISD | Waterfront Influence | Neighborhood |
| Neighborhood Code | Spring Meadows #1, 2-7729.00 | Topography | Flat/Level |
| Township | Houston | Census Tract | 5402.00 |
| MLS Area | 24 | Map Facet | 449-L |
| Market Area | SPRING BRANCH | Traffic | Paved |

### TAX INFORMATION

| | | | |
|---|---|---|---|
| Parcel ID | 114-243-001-0048 | % Improved | 66% |
| Parcel ID | 1142430010048 | Tax Area | 040 |
| Lot # | 48 | Water Tax Dist | 041 |
| Block # | 1 | | |
| Legal Description | LT 48 BLK 1 SPRING MEADOWS SEC 2 R/P | | |

### ASSESSMENT & TAX

| Assessment Year | 2020 | 2019 | 2018 |
|---|---|---|---|
| Assessed Value – Total | $183,134 | $174,572 | $161,756 |
| Assessed Value – Land | $63,000 | $52,500 | $39,375 |
| Assessed Value – Improved | $120,134 | $122,072 | $122,381 |
| YOY Assessed Change ($) | $8,562 | $12,816 | |
| YOY Assessed Change (%) | 4.9% | 7.92% | |
| Market Value – Total | $183,134 | $174,572 | $161,756 |
| Market Value – Land | $63,000 | $52,500 | $39,375 |
| Market Value – Improved | $120,134 | $122,072 | $122,381 |

| Tax Year | Total Tax | Change ($) | Change (%) |
|---|---|---|---|
| 2018 | $4,235 | | |
| 2019 | $4,374 | $139 | 3.29% |
| 2020 | $4,530 | $155 | 3.55% |

| Jurisdiction | Tax Rate | | Tax Amount |
|---|---|---|---|
| Spring Branch ISD | 1.3073 | | $2,394.11 |
| Harris County | .39116 | | $716.35 |
| Hc Flood Control Dist | .03142 | | $57.54 |
| Port Of Houston Authority | .00991 | | $18.15 |
| Hc Hospital Dist | .16671 | | $305.30 |
| Hc Department Of Education | .00499 | | $9.14 |
| Houston City Of | .56184 | | $1,028.92 |
| Total Estimated Tax Rate | 2.4733 | | |

### CHARACTERISTICS

| | | | |
|---|---|---|---|
| Land Use - CoreLogic | SFR | Full Baths | 2 |
| Land Use - County | Res Imprvd Table Val | Half Baths | MLS: 1 |
| Land Use - State | Resid Single Family | Fireplace | Y |

**Property Details** | Courtesy of JILL HAYGOOD, Residential Valuation Corp., Houston Association of REALTORS

The data within this report is compiled by CoreLogic from public and private sources. If desired, the accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Generated on: 04/12/21

Page 1/3

| | | | |
|---|---|---|---|
| Lot Acres | 0.1263 | Fireplaces | 1 |
| Lot Sq Ft | 5,500 | Elec Svs Type | Y |
| # of Buildings | 1 | Cooling Type | Central |
| Building Type | Single Family | Heat Type | Central |
| Bldg Class | R | Porch | Open Frame Porch |
| Building Sq Ft | 1,746 | Porch Sq Ft | 30 |
| Gross Sq Ft | Tax: 2,166 MLS: 1,746 | Patio/Deck 2 Area | 118 |
| Above Gnd Sq Ft | 1,746 | Parking Type | Attached Masonry Garage |
| Ground Floor Sq Ft | 1,349 | No. Parking Spaces | MLS: 2 |
| 2nd Floor Sq Ft | 397 | Garage Type | Attached Garage |
| Stories | 2 | Garage Capacity | MLS: 2 |
| Condition | Average | Garage Sq Ft | 420 |
| Quality | Average | Foundation | Slab |
| Total Rooms | 6 | Exterior | Frame Concrete Block/Brick |
| Bedrooms | 3 | Year Built | 1983 |
| Total Baths | Tax: 2 MLS: 2.1 | Effective Year Built | 1983 |
| MLS Total Baths | 2.1 | | |

### FEATURES

| Feature Type | Unit | Size/Qty |
|---|---|---|
| Open Frame Porch Pri | S | 30 |
| Open Frame Porch Pri | S | 118 |
| Base Area Pri | S | 367 |
| Base Area Upr | S | 367 |
| One Story Frame Upr | S | 30 |
| Mas/Brk Garage Pri | S | 420 |
| One Story Mas Pri | S | 307 |
| One Story Mas Pri | S | 675 |

| Building Description | Building Size |
|---|---|
| Room: Bedroom | 3 |
| Fireplace: Metal | 1 |
| Fixtures: Total | 9 |
| Fixtures: Addl | 1 |
| Room: Full Bath | 2 |
| Room: Total | 6 |
| Story Height Index | 2 |

### SELL SCORE

| | | | |
|---|---|---|---|
| Rating | High | Value As Of | 2021-03-13 23:53:39 |
| Sell Score | 785 | | |

### LISTING INFORMATION

| | | | |
|---|---|---|---|
| MLS Listing Number | 35273486 | MLS Current List Price | $250,000 |
| MLS Status | Withdrawn | MLS Original List Price | $250,000 |
| Listing Area | 24 | MLS Status Change Date | 02/13/2021 |
| MLS D.O.M | 8 | Listing Agent | Pattond-David Patton |
| MLS Listing Date | 02/05/2021 | Listing Broker | BHGRE GARY GREENE |

| | |
|---|---|
| MLS Listing # | 87587736 |
| MLS Status | Terminated |
| MLS Listing Date | 09/16/2017 |
| MLS Listing Price | $164,500 |
| MLS Orig Listing Price | $171,500 |
| MLS Wthdr Date | 09/29/2017 |

### LAST MARKET SALE & SALES HISTORY

| | | | | | |
|---|---|---|---|---|---|
| Recording Date | 04/29/2020 | 10/25/2017 | 07/24/2017 | 02/24/2017 | |
| Buyer Name | Dhi Holdings Lp | Batts Michael R | Withers Scott A | Dhi Holdings Lp | Withers Billie O |
| Seller Name | Batts Michael R | Withers Billie J | Dhi Holdings Lp | Withers Billie J | |

**Property Details** | Courtesy of JILL HAYGOOD, Residential Valuation Corp., Houston Association of REALTORS

The data within this report is compiled by CoreLogic from public and private sources. If desired, the accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Generated on: 04/12/21
Page 2/3

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE



| Document Number | 179677 | 468074 | 330180 | 79125 | |
|---|---|---|---|---|---|
| Document Type | Quit Claim Deed | Warranty Deed | Correction Deed | Warranty Deed | Deed (Reg) |

**MORTGAGE HISTORY**

| Mortgage Date | 10/25/2017 | 02/24/2017 | 05/14/2007 | 05/20/2003 |
|---|---|---|---|---|
| Mortgage Amount | $99,000 | $59,900 | $59,900 | $38,039 |
| Mortgage Lender | Little Cty Invs LLC | Countrywide Hm Lns Inc | Countrywide Hm Lns Inc | Gmac Mtg |
| Mortgage Code | | Conventional | Conventional | Fha |
| Borrower Name | Batts Michael R | Dhi Holdings Lp | Withers Billie O | Withers Billie O |

**PROPERTY MAP**

*Lot Dimensions are Estimated

Property Details | Courtesy of JILL HAYGOOD, Residential Valuation Corp., Houston Association of REALTORS
The data within this report is compiled by CoreLogic from public and private sources. If desired, the accuracy of the data contained herein can be independently verified by the recipient of this report with the applicable county or municipality.

Generated on: 04/12/21
Page 3/3

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Market Conditions Addendum to the Appraisal Report

File No. ▮▮▮

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 11927 Moss Branch Rd | City Houston | State TX | ZIP Code 77043 |
|---|---|---|---|---|

Borrower    Brandon Mendenhall

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 13 | 9 | 4 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 2.17 | 3.00 | 1.33 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 0 | 0 | 2 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.0 | 0.0 | 1.5 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $200,000 | $205,000 | $298,750 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 8 | 11 | 23 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Comparable List Price | $0 | $0 | $229,950 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 0 | 0 | 9.5 | ☐ Declining | ☒ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 99% | 100% | 97% | ☐ Increasing | ☒ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☒ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    The percentage of competing sales with concessions has been (oldest to most recent quarter): 38%, 20%, 56%, 50%. This is a total of 42% of all competing sales in the past year. The contribution percent of the concessions has been (oldest to most recent quarter): 1.4%, 3.7%, 1.4%, 1.5%. The percentage of sales in the broader overall neighborhood with concessions has been (oldest to most recent quarter): 46%, 34%, 39%, 38%. This is a total of 39% of overall sales in the past year. The contribution percent of the concessions has been (oldest to most recent quarter): 1.4%, 1.6%, 1.4%, 1.3%.

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).
None the of the above competing sales are reported as foreclosures or short sales. None of the overall neighborhood sales which have occurred within the past year or neighborhood listings are reported as foreclosures or short sales.

Cite data sources for above information.    The HAR MLS system is the data source used for the information on this addendum. An effective date of April 19, 2021 was used to calculate the data. Trendsheet software was used to analyze and report the neighborhood and the competing property statistics.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

This form has been completed using data that has been filtered for properties that are considered to be in competition to the Subject.  A separate analysis that includes unfiltered data for all properties was used to reflect the overall market conditions of the defined neighborhood. The results of the separate analysis has been used in the completion of the Neighborhood Section of the Appraisal Form 1004.  The median Sales Prices shown above for competing properties indicate a steady increase over the reporting periods. However, the Median SF of the homes correspondingly increase over the same periods (See Graphs). After this consideration, the value trend is indicated to be stable.While the results of these analyses are believed to be reasonably reliable, there are research firms available to perform in depth, more comprehensive studies of market conditions based on property type, physical characteristics/conditions, land value ratios, terms of sale, specific geographic definition, etc.

If the subject is a unit in a condominium or cooperative project , complete the following:         Project Name:

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| | |
|---|---|
| Signature | Signature |
| Appraiser Name    William C Clements Jr. | Supervisory Appraiser Name |
| Company Name    Residential Valuation Corp | Company Name |
| Company Address    20747 Clay Rd, Katy, TX 77449 | Company Address |
| State License/Certification #    1321203    State TX | State License/Certification #    State |
| Email Address    bill@residentialvaluation.com | Email Address |

Freddie Mac Form 71  March 2009                    Page 1 of 1                    Fannie Mae Form 1004MC  March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Value Trend Graphs

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |

## Average/Median Price



Value trend graph - competing properties

## Gross Livable Area



Living area trend graph - Competing properties

Subject Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | |



### Subject Front

11927 Moss Branch Rd
Sales Price
Gross Living Area    1,763
Total Rooms    7
Total Bedrooms    3
Total Bathrooms    2.1
Location    N;Res;
View    N;Res;
Site    5500 sf
Quality    Q4
Age    38



### Subject Rear



### Subject Street
Subject on Right

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | |



Front/side view



Rear/side view



Street view - Subject on Left

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |



Front view



Rear/side view



Side view. Subject on left.

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | | |
| City | Houston | County | Harris | | | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | | | |



View over rear fence



Garage



Entry

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |



Family room



Dining room



Breakfast room

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |



Kitchen



Small open concrete patio off of breakfast room



1/2 Bathroom

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | |



Primary bedroom



Primary bathroom



Stairway

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |



Family room viewed from 2nd floor.



Bedroom



Bedroom

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | | |
| City | Houston | County | Harris | | | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | | | |



Bathroom



HVAC Unit



Attic space

Photograph Addendum

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | |



Electrical meter and breaker box

Purposefully left blank

Purposefully left blank

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | |

Comparable Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Brandon Mendenhall | | | | | |
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | |



### Comparable 1

3715 Moss Tree Rd

| | |
|---|---|
| Prox. to Subject | 0.14 miles N |
| Sales Price | 205,000 |
| Gross Living Area | 1,492 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 5500 sf |
| Quality | Q4 |
| Age | 39 |



### Comparable 2

4730 Newpark Dr

| | |
|---|---|
| Prox. to Subject | 1.44 miles NE |
| Sales Price | 250,000 |
| Gross Living Area | 1,700 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 8904 sf |
| Quality | Q4 |
| Age | 40 |



### Comparable 3

11915 N Fairhollow Ln

| | |
|---|---|
| Prox. to Subject | 0.33 miles N |
| Sales Price | 218,000 |
| Gross Living Area | 1,898 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 5000 sf |
| Quality | Q4 |
| Age | 41 |

Comparable Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | |



### Comparable 4

12002 S Youngwood Ln

| | |
|---|---|
| Prox. to Subject | 0.40 miles N |
| Sale Price | 198,000 |
| Gross Living Area | 1,572 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | A;Res;BsyCnr |
| Site | 6100 sf |
| Quality | Q4 |
| Age | 37 |

### Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Rental Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | |



### Rental 1

11919 Moss Branch Rd

| | |
|---|---|
| Proximity to Subject | 0.02 miles E |
| Adj. Monthly Rent | 1,550 |
| Gross Living Area | 1,386 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C3 |
| Age/Year Built | 38 |



### Rental 2

3806 Moss Tree Rd

| | |
|---|---|
| Proximity to Subject | 0.16 miles N |
| Adj. Monthly Rent | 1,750 |
| Gross Living Area | 1,626 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C3 |
| Age/Year Built | 41 |



### Rental 3

12002 N Fairhollow Ln

| | |
|---|---|
| Proximity to Subject | 0.35 miles N |
| Adj. Monthly Rent | 1,850 |
| Gross Living Area | 1,824 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C3 |
| Age/Year Built | 42 |

Rental Photo Page

| Borrower | Brandon Mendenhall | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | |

Rental 4

Proximity to Subject
Adj. Monthly Rent
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Condition
Age/Year Built

Rental 5

Proximity to Subject
Adj. Monthly Rent
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Condition
Age/Year Built

Rental 6

Proximity to Subject
Adj. Monthly Rent
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Condition
Age/Year Built

Building Sketch

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | | State | TX | Zip Code 77043 |
| Lender/Client | RCN Capital | | | | | | |



| Area Calculations Summary | | |
|---|---|---|
| **Living Area** | | **Calculation Details** |
| 2 Car Attached | -480.5 Sq ft | 20 × 21.3 = 426 |
| | | 12.1 × 4.5 = 54.4 |
| First Floor | 1770.1 Sq ft | 20 × 21.5 = 430 |
| | | 24.8 × 6.5 = 161.2 |
| | | 32.2 × 14.4 = 463.7 |
| | | 19 × 4.3 = 81.7 |
| | | 6.6 × 6.8 = 44.9 |
| | | 33.9 × 6.6 = 223.7 |
| | | 12.4 × 28 = 346.7 |
| | | 0.5 × 28 × 0 = 0.6 |
| | | 0.5 × 5.9 × 5.9 = 17.6 |
| Second Floor | 473.1 Sq ft | 11.5 × 9.5 = 109.2 |
| | | 10.2 × 7.4 = 75.5 |
| | | 14 × 20.6 = 288.4 |
| **Total Living Area (Rounded):** | **1763 Sq ft** | |

TOTAL Sketch by a la mode, inc.

Location Map

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |



Aerial Map



Plat Map



Flood Map

| Borrower | Brandon Mendenhall | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 11927 Moss Branch Rd | | | | | | |
| City | Houston | County | Harris | State | TX | Zip Code | 77043 |
| Lender/Client | RCN Capital | | | | | | |



Flood Certification - Page 1

DEPARTMENT OF HOMELAND SECURITY
Federal Emergency Management Agency

**STANDARD FLOOD HAZARD DETERMINATION FORM (SFHDF)**

OMB Control No. 1660-0040
Expires: 10/31/18

### SECTION I - LOAN INFORMATION

| 1. LENDER/SERVICER NAME AND ADDRESS | 2. COLLATERAL DESCRIPTION (Building/Mobile Home/Property) |
|---|---|
| RCN Capital<br>75 Gerber Road<br>South Windsor, CT 06074 | 11927 Moss Branch Rd<br>HOUSTON, TX 77043<br>Parcel ID: 48201_1142430010048<br>Borrower: Brandon Mendenhall<br>Ref/File#(s): ANS-549001<br>+Census Tract Data: St 48 Co 201 MSA 26420 Tr 5402+ |

| 3. LENDER/SERVICER ID # | 4. LOAN IDENTIFIER | 5. AMOUNT OF FLOOD INSURANCE REQUIRED |
|---|---|---|
| | 71415 | |

### SECTION II

**A. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) COMMUNITY JURISDICTION**

| 1. NFIP Community Name | 2. County(ies) | 3. State | 4. NFIP Community Number |
|---|---|---|---|
| Houston City | Harris County | TX | 480296 |

**B. NATIONAL FLOOD INSURANCE PROGRAM (NFIP) DATA AFFECTING BUILDING/MOBILE HOME**

| 1. NFIP Map Number or Community-Panel Number (Community name, if not the same as "A")<br>48201C0630M | 2. NFIP Map Panel Effective / Revised Date ‡<br>2019-11-15 | 3. Is there a Letter of Map Change (LOMC)?<br>◉ NO<br>(If yes, and LOMC date/no. is available, enter date and case no. below).<br>○ YES |
|---|---|---|
| 4. Flood Zone †<br>X | 5. No NFIP Map | Date                Case No. |

**C. FEDERAL FLOOD INSURANCE AVAILABILITY (Check all that apply.)**

1. ☒ Federal Flood Insurance is available (community participates in the NFIP).   ☒ Regular Program   ☐ Emergency Program of NFIP

2. ☐ Federal Flood Insurance is not available (community does not participate in the NFIP).

3. ☐ Building/Mobile Home is in a Coastal Barrier Resources Area (CBRA) or Otherwise Protected Area (OPA). Federal Flood Insurance may not be available.

CBRA/OPA Designation Date: _____

**D. DETERMINATION**

IS BUILDING/MOBILE HOME IN SPECIAL FLOOD HAZARD AREA (ZONES CONTAINING THE LETTERS "A" OR "V")?  ☐ YES  ☒ NO

If yes, flood insurance is required by the Flood Disaster Protection Act of 1973.
If no, flood insurance is not required by the Flood Disaster Protection Act of 1973. Please note, the risk of flooding in this area is only reduced, not removed.

This determination is based on examining the NFIP map, any Federal Emergency Management Agency revisions to it, and any other information needed to locate the building /mobile home on the NFIP map.

**E. COMMENTS (Optional)**

THIS DETERMINATION COMPLIES WITH THE FLOOD DISASTER PROTECTION ACT OF 1973.

LIFE OF LOAN

**F. PREPARER'S INFORMATION**

| NAME, ADDRESS, TELEPHONE NUMBER (If other than Lender)<br>Western Technologies Group, LLC<br>P.O. Box 636<br>Somerville, NJ 08876<br>908-725-1143 | DATE OF DETERMINATION<br><br>04/12/2021 |
|---|---|

FEMA Form 086-0-32        (06/16)

SFHDF - Form Page 1 of 1

**NOTICE IS GIVEN TO:**

| | | | |
|---|---|---|---|
| Borrower: | Brandon Mendenhall | Order Number: | 16782211 |
| Co-borrower: | | Determination Date: | 04/12/2021 |

The Flood Disaster Protection Act of 1973, as amended, requires that federally regulated lending institutions shall not make, increase, extend, or renew any loan secured by improved real estate, or a mobile home located, or to be located, in an area that has been identified by the Director of the Federal Emergency Management Agency (FEMA) as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968, through the National Flood Insurance Program (NFIP), unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance in an amount at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the Act with respect to the particular type of property, whichever is less.

## NOTICE TO BORROWER ABOUT SPECIAL FLOOD HAZARD AREA STATUS

☐ Notice of Property in Special Flood Hazard Area (SFHA)

The building or mobile home securing the loan for which you have applied is or will be located in an area with special flood hazards. The area has been identified by the Director of FEMA as a SFHA using FEMA's Flood Insurance Rate Map or the Flood Hazard Boundary Map for the following community: Houston City
The area has at least a one percent (1%) chance of a flood equal to or exceeding the base flood elevation (a 100-year flood) in any given year. During the life of a 30-year mortgage loan, the risk of a 100-year flood in a SFHA is 26 percent (26%). Federal law allows a lender and borrower jointly to request the Director of FEMA to review the determination of whether the property securing the loan is located in a SFHA. If you would like to make such a request, please contact us for further information.

☒ Notice of Property Not in Special Flood Hazard Area (SFHA)

The building or mobile home described in the attached instrument is not currently located in an area designated by the Director of FEMA as a SFHA. NFIP flood insurance is not required, but may be available. If, during the term of this loan, the subject property is identified as being in a SFHA, as designated by FEMA, you may be required to purchase and maintain flood insurance at your expense.

## NOTICE TO BORROWER ABOUT FEDERAL DISASTER ASSISTANCE

☒ Notice in Participating Communities

The community in which the property securing the loan is located participates in the NFIP. The Flood Disaster Protection Act of 1973, as amended, mandates federally insured or regulated lenders to require the purchase of flood insurance on all buildings being financed that are located in SFHAs of communities participating in the NFIP. The flood insurance must be maintained for the term of the loan. If you fail to purchase or renew flood insurance on the property, federal law authorizes and requires us to purchase the flood insurance at your expense.
- At a minimum, flood insurance purchased must cover the lesser of:
    - (1) the outstanding principal balance of the loan; or
    - (2) the maximum amount of coverage allowed for the type of property under the NFIP.
- Flood insurance coverage under the NFIP is limited to the building or mobile home and any personal property that secures your loan and not the land itself.
- Federal disaster relief assistance (usually in the form of a low-interest loan) may be available for damages incurred in excess of your flood insurance if your community's participation in the NFIP is in accordance with NFIP requirements.
- Although you may not be required to maintain flood insurance on all structures, you may still wish to do so, and your mortgage lender may still require you to do so to protect the collateral securing the mortgage. If you choose not to maintain flood insurance on a structure and it floods, you are responsible for all flood losses relating to that structure.

☐ Notice in Non-particpating Communities

Flood insurance coverage under the NFIP is not available for the property securing the loan because the community in which the property is located does not participate in the NFIP. In addition, if the nonparticipating community has been identified for at least one year as containing a SFHA, properties located in the community will not be eligible for the federal disaster relief assistance in the event of a federally-declared flood disaster.

## Appraisal Nation, LLC

### DODD-FRANK ACT AND APPRAISER INDEPENDENCE REQUIREMENTS COMPLIANCE CERTIFICATE

In compliance with the Dodd-Frank Act and Appraiser Independence Requirements, Appraisal Nation LLC, an independent third party appraisal management company, certifies that the above referenced property appraisal report was completed in compliance with the Dodd-Frank Act as well as the Appraiser Independence Requirements and has met all of the following:

- ➢ All appraisers are licensed or certified by the state in which the subject property is located in.

- ➢ No predetermined estimate of value was provided to the appraiser. The only exception being for purchase transactions. A copy of the purchase contract is provided to the appraiser in accordance with USPAP standards rule 1-5a.

- ➢ The appraiser has had no contact with the client/lender, or in any way was influenced in any manner pertaining to the appraisal process of determining valuation of the subject property

- ➢ With the exception of FHA appraisals, which require disclosure of appraisers name and license number to obtain FHA case number, lender/client was not allowed by Appraisal Nation to determine or discover the name of the appraiser engaged in an assignment until the final signed product was delivered.

- ➢ Appraiser selection was performed at the sole discretion of Appraisal Nation LLC's vendor management department utilizing criteria of: quality ranking, experience, performance, turn time, availability, proximity guidelines, and performance metrics.

- ➢ Appraisal Nation's vendor database is considered proprietary information and is never publicly disclosed.

- ➢ Appraisal Nation prohibits appraisers from communicating with the Lender Client and the borrower/property owner to obtain market and/or loan values.

- ➢ Appraisal Nation is not owned in whole or in part by any lender, broker, or correspondent lending institution. Appraisal Nation is an independent 3rd party.

To prevent fraud and alterations of reports, Appraisal Nation LLC maintains a copy of all original reports provided by the assigned independent appraiser on secure servers. A copy of any report including its compliance certificate can be provided to the original client, lender, successors or assignee. Please contact Appraisal Nation LLC to obtain this information.

Michael A. Tedesco, CEO
Appraisal Nation, LLC

| Appraisal Nation, LLC | 500 Gregson Dr Suite 120, Cary, NC 27511 | |
|---|---|---|
| Tel. (866)735-0901 | Fax (866) 227-1659 | www.appraisal-nation.com |

E & O Insurance Declaration

# AIG SPECIALTY INSURANCE COMPANY

Administrative Offices - 175 Water Street, 18th Floor, New York, NY 10038

| | |
|---|---|
| **Certificate Number:** | 026244329-01 |
| **This Certificate forms a part of Master Policy Number:** | 035908521-01 |
| **Renewal of Master Policy Number :** | 035908521-00 |

> **NOTICE: THIS INSURANCE IS WRITTEN ON A CLAIMS MADE AND REPORTED BASIS AND ONLY APPLIES TO CLAIMS FIRST MADE AGAINST THE CERTIFICATE HOLDER DURING THE CERTIFICATE PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE CERTIFICATE HOLDER AFTER THE END OF THE CERTIFICATE PERIOD UNLESS, AND TO THE EXTENT, A BASIC OR EXTENDED REPORTING PERIOD APPLIES.**
>
> **NOTICE: DEFENSE EXPENSES ARE INCLUDED WITHIN AND REDUCE THE APPLICABLE LIMIT OF LIABILITY STATED IN THE CERTIFICATE. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

NORMAN-SPENCER REAL ESTATE RISK PURCHASING GROUP INC dba
THE AMERICAN ACADEMY OF STATE CERTIFIED APPRAISERS
(A Delaware Corporation)
## CERTIFICATE DECLARATIONS

**1. Name and Address of Certificate Holder:**     **Residential Valuation Corp.**

  **20747 Clay Road**
  **Katy**                          **TX**    **77449**

**2. Certificate Period:**     **Effective Date:** **2/24/2021**     to Expiration Date:     **2/24/2022**
12:01 a.m. Standard Time at the Address of the Certificate Holder shown in item 1. above

**2a. Retroactive Date:**     **Full**
12:01 a.m. Standard Time at the Address of the Certificate Holder shown in item 1. above

**3. Limit of Liability:**     $     **1,000,000  each claim**
                 $     **2,000,000  aggregate limit**

**4. Deductible:**     $          -     **each claim**

**5. Professional Covered Services insured by this policy are:** <u>REAL ESTATE APPRAISAL SERVICES</u>

| | | | |
|---|---|---|---|
| **6. Advance Certificate Holder Premium:** | **$1,263.00** | Surplus Lines Tax | 63.20 |
| | | Stamping Fee | 0.98 |
| **7. Minimum Earned Premium:**  **25% or**  **$316.00** | | | |
| | | Risk Purchasing Group Fee | 40.00 |
| **Forms and Endorsements:** | | | |
| See Attached Forms list | | Total: | **$ 104.18** |

**Agency Name and Address:**     **Norman-Spencer Agency, LLC**
                 **8075 Washington Village Drive**
                 **Dayton, OH 45458**

> IT IS HEREBY UNDERSTOOD AND AGREED THAT THE CERTIFICATE HOLDER AGREES TO ALL TERMS AND CONDITIONS AS SET FORTH IN THE ATTACHED MASTER POLICY.

County: Harris

_____
Authorized Representative OR
Countersignature (in states where applicable)     **Date:** January 21, 2021

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as surplus line coverage under the Texas insurance statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and the insurer is not a member of the property and casualty insurance guaranty association created under Chapter 462, Insurance Code. Chapter 225, Insurance Code, requires payment of a 4.85 percent tax on gross premium

PRG 4110 (5/20)

4/12/2021                                         Matrix



| | Rental | Sold | | List Price: | $1,750 |
|---|---|---|---|---|---|
| | ML#: | 28849195 | | Orig Price: | $1,750 |
| | Address: | 11927 Moss Branch Road | | LP For Sale: | $250,000 |
| | Class: | Single Family Detached | | Sale ML#: | 35273486 |
| | Area: | 24 | | LP/SF: | $1 |
| | Tax Acc #: | 114-243-001-0048 | | DOM: | 7 |
| | City/Location: | Houston | | State: | Texas |
| | County: | Harris | | Zip Code: | 77043 - 1119 |
| | Market Area: | Spring Branch | | Key Map: | 449L |
| | Subdivision: | Spring Meadows | | Country: | United States |
| | Building Name: | | | Section #: | 2 |
| | Lot Size: | 5,500 / Appr Dist | | Sale Also: | Yes |
| | Year Built: | 1983 / Appr Dist | | Floor Loc: | |
| | SqFt: | 1,746 / Appr Dist | | Gar Apt SF: | |
| | Legal Desc: | LT 48 BLK 1 SPRING MEADOWS SEC 2 R/P | | | |

Directions:      From I10, Beltway 8 N to Hammerly Blvd/Kempwood Dr, Right Brittmoore Rd, Left Moss Ridge Rd, Left Echo Grove Ln, Curves to Right, Moss Branch Rd, House is on Left

### Listing Office Information

| List Agent: | PATTOND/David K. Patton | List Broker: | GGPR26/BHGRE Gary Greene |
|---|---|---|---|
| Agent Cell: | 713-854-8881 | | Request an Appointment |
| Agent Phone: | 713-854-8881 | Appt #: | 800-746-9464 / Showing Service |
| Address: | 14080 FM 2920 Rd. Suite C, Tomball TX 77377 | Office Phone: | 281-310-5888 |
| List Agent Web: | http://www.pattonteam.com | Fax #: | |
| Agent Email: | david@pattonteam.com | | |
| Co-List Agent: | macruz/Melissa A. Cruz | Co-Agent Phone: | 832-247-9995  melissa@gpteam.com |
| Licensed Supervisor: | Michele Verwold | Office Web: | http://www.garygreene.com |

### School Information

| School District: | 49 - Spring Branch | Elem: | TERRACE ELEMENTARY SCHOOL |
|---|---|---|---|
| Middle: | SPRING OAKS MIDDLE SCHOOL | High: | SPRING WOODS HIGH SCHOOL |

SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.

### Description Information

| Style: | Traditional | Loft: No | Unit Stories: | 2 | Bedrooms: | 3/3 |
|---|---|---|---|---|---|---|
| Type: | Free Standing | | Access: | | Baths F/H: | 2/1 |
| New Constr.: | No | | Appx Complete: | | Bldg Stories: | 2 |
| Total Units: | | Furnished: No | Unit Level: | | | |
| Lot Dim: | | | Acres: | .126 | | |
| Frt. Door Faces: | South | | Garage: | 2/Attached Garage | | |
| Gar/Car: | Double-Wide Driveway | | Carport: | | | |
| Parking: | | | Balcony Faces: | | | |

Showing Instruct:Appointment Required, Lockbox Front, Supra Keybox
Agent Remarks:
Contact Co-Listing agent Melissa Cruz, 832-247-9995, melissa@pattonteam.com. Do not send paper applications, contact agent for website to apply. Please verify room dimensions. Thank you for showing, please leave feedback! Also available for sale.

Public Remarks:
Welcome to this charming 3 bedroom, 2.5 bath home in Spring Meadows! Fantastic 2 story with vaulted ceilings and brick feature fireplace make a great first impression. Open concept floorplan with formal dining and large den with views of the covered porch and backyard. Kitchen features solid countertops, breakfast bar, stainless appliances, gas range with smart double oven function, large walk-in pantry, and fridge is included! Courtyard patio located just off the breakfast room. Primary bedroom is downstairs with large walk-in closet, en-suite bath with double vanity, granite counter, and skylight above. Upstairs are 2 bedrooms and second full bath. Recent updates include paint, flooring, roof, a/c 2021! No carpet! No flooding – per sellers.

### Rooms Information

| Room | Dimensions | Location | Room | Dimensions | Location |
|---|---|---|---|---|---|
| Kitchen | 11 x 7 | 1st | Breakfast | 10 x 7 | 1st |
| Dining Room | 11 x 10 | 1st | Den | 20 x 16 | 1st |
| Primary Bedroom | 17 x 11 | 1st | Primary Bath | 13 x 8 | 1st |
| Bedroom | 11 x 10 | 2nd | Bedroom | 10 x 10 | 2nd |
| Bath | 6 x 5 | 2nd | Porch/Balcony | 21 x 13 | 1st |

Bathroom Desc: Double Sinks, Half Bath, Tub w/shower, Vanity Area
Bedroom Desc:  En-Suite Bath, Primary Bed - 1st Floor, Walk-In Closet
Room Desc:     Breakfast Room, Den, Formal Dining, Utility Room in Garage
Kitchen Desc:  Breakfast Bar, Pantry, Walk-in Pantry

### Interior, Exterior, Utilities and Additional Information

https://matrix.harmls.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD*****AQAAAAAAAARAQAAAEMAAAAGAgAAAAQ0NjkyBgMAAAACMjkGB…    1/6

4/12/2021                                                          Matrix

| | | | | | | |
|---|---|---|---|---|---|---|
| Microwave: | **Yes** | Dishwasher: | **Yes** | Compactor: | **No** | Disposal: **Yes** |
| Fireplace: | **1/Wood Burning Fireplace** | | | Utility Dist: | **No** | Sep Ice Mkr: **No** |
| Connect: | **Electric Dryer Connections, Gas Dryer Connections, Washer Connections** | | | Range: | **Gas Range** | |
| Energy: | **Attic Vents, Ceiling Fans, High-Efficiency HVAC, Insulated/Low-E windows, North/South Exposure** | | | Flooring: | **Engineered Wood, Tile** | |
| Oven: | **Electric Oven** | | | Countertops: | | |
| Green/Energy Cert: | | | | Prvt Pool: | **No** | |
| Interior: | **Fire/Smoke Alarm, High Ceiling, Prewired for Alarm System, Refrigerator Included** | | | Area Pool: | **Yes** | |
| Appliances: | **Refrigerator** | | | Waterfront Feat: | | |
| Exterior: | **Back Yard Fenced, Fully Fenced, Patio/Deck, Sprinkler System, Trash Pick Up** | | | Water/Sewer: | **Public Sewer, Public Water** | |
| Lot Description: | **Greenbelt, Subdivision Lot** | | | Cool: | **Central Electric** | |
| Heat: | **Central Gas** | | | Golf Course Nm: | | |
| Cable: | **Available** | | | Rec Facility Fee: | **Owner Pays** | |
| Utilities Provd.: | | | | Disclosures: | **No Disclosures** | |
| 55+ Community: | **No** | | | Restrictions: | **Deed Restrictions** | |

**Lease and Additional Information**

| | | | | | | |
|---|---|---|---|---|---|---|
| Property Mgmt: | **Yes / Spring Meadows / 713-932-1122** | | | List Type: | **Exclusive Right to Sell/Lease** | |
| List Date: | **02/05/2021** | Expire Date: | | T/Date: | | |
| Short Term Comp | | % Based On | | 6 Month Comp | | % Based On |
| One Year Comp | **50%** | % Based On | **One Month** | Long Term Comp | **50%** | % Based On **One Month** |
| Comp: SubAgt: | **50%** | Bonus: | | | | Var/Dual Rt: **No** |
| If Purchased Sale Compensation: Sub: | | | | Buy: | | OPEnd Date: |

| | | | | | | |
|---|---|---|---|---|---|---|
| Sec Deposit: | **1750** | | | Smoke: | **No** | |
| Date Avail: | **02/05/2021** | | | Applic Fees: | **$50.00** | |
| Rental Terms: | **Long Term, One Year** | | | Apprvl Req: | **Yes/** | |
| Other Mand Fee: | **No** | | | Vacation Rental: / | | Daily: |
| Pets: | **Case By Case Basis** | | | Weekly: | | Monthly: |
| Pet Deposit: | **Yes** | | | Recurring Comp: | **No** | |

Pet Description: **$350 for 1 pet, $500 for 2. No aggressive breeds.**

Affordable Housing Desc:

**Pending Information**

| | | | | | |
|---|---|---|---|---|---|
| Pending Date: | **02/12/2021** | Est Close Dt: | | TREC #: | OPT End: |
| Sell Agent: | **Erick Mariscal (edmarisc)** | | | Sell Broker: | **City Insight Houston City Insight Houston (CISI01)** |
| Co-Sell Agent: | **()** | | | Co-Sell Office: | **City Insight Houston ()** |
| Sell Team Name: | | | | | |

**Leased Information**

| | | | | | | |
|---|---|---|---|---|---|---|
| Leased Price: | **$1,750** | Leased Date: | **02/15/2021** | Ttl Discount Pts: | | |
| SP$/SF: | **$1.00** | Days to Close: | **3** | Terms: | **One Year** | |
| New Loan: | | Interest Rate: | | Amortize Years: | | CoOp: **Yes** |
| Seller Contribution to Buyer Costs: | | | | Repair/Actual Pd: | | Title Pd By: |

**Prepared By: Jill Haygood**          Data Not Verified/Guaranteed by MLS          Date: 04/12/2021 4:08 PM

Obtain Signed HAR Broker Notice to Buyer Form

Copyright 2021 Houston Realtors Information Service, Inc. All Rights Reserved. Users are Responsible for Verifying All Information for Total Accuracy.

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Subject's MLS Listings - Page 03

4/12/2021                                              Matrix

| | | | | |
|---|---|---|---|---|
| | **Single-Family** | | **Withdrawn** | |
| | ML#: | 35273486 | List Price: | $250,000 |
| | Address: | 11927 Moss Branch Road | Orig Price: | $250,000 |
| | Area: | 24 | LP/SF: | $143.18 |
| | Tax Acc #: | 114-243-001-0048 | DOM: | 8 |
| | City/Location: | Houston | State: | Texas |
| | County: | Harris | Zip Code: | 77043 - 1119 |
| | Market Area: | Spring Branch | Key Map: | 449L |
| | Subdivision: | Spring Meadows | Country: | United States |
| | Lot Size: | 5,500 / Appr Dist | Section #: | 02 |
| | Lot Value: | No | SqFt: | 1,746 / Appr Dist |
| | Master Planned: | No | Gar Apt SF: | |
| | Lease Also: | Yes | Year Built: | 1983 / Appr Dist |
| | Legal Desc: | LT 48 BLK 1 SPRING MEADOWS SEC 2 R/P | | |

Directions:    From I10, Beltway 8 N to Hammerly Blvd/Kempwood Dr, Right Brittmoore Rd, Left Moss Ridge Rd, Left Echo Grove Ln, Curves to Right, Moss Branch Rd, House is on Left

### Listing Office Information

| | | | |
|---|---|---|---|
| List Agent: | PATTOND/David K. Patton | List Broker: | GGPR26/BHGRE Gary Greene |
| Agent Cell: | 713-854-8881 | | Request an Appointment |
| Agent Phone: | 713-854-8881 | Appt #: | 800-746-9464 / Showing Service |
| Address: | 14080 FM 2920 Rd, Suite C, Tomball TX 77377 | Office Phone: | 281-310-5888 |
| List Agent Web: | http://www.pattonteam.com | Fax #: | |
| Agent Email: | david@pattonteam.com | | |
| Co-List Agent: | macruz/Melissa A. Cruz | Co-Agent Phone: | 832-247-9995  melissa@gpteam.com |
| Licensed Supervisor: | Michele Verwold | Office Web: | http://www.garygreene.com |

### School Information

| | | | |
|---|---|---|---|
| School District: | 49 - Spring Branch | Elem: | TERRACE ELEMENTARY SCHOOL |
| Middle: | SPRING OAKS MIDDLE SCHOOL | High: | SPRING WOODS HIGH SCHOOL |

SCHOOL INFORMATION IS COMPUTER GENERATED AND MAY NOT BE ACCURATE OR CURRENT. BUYER MUST INDEPENDENTLY VERIFY AND CONFIRM ENROLLMENT.

### Description Information

| | | | | | |
|---|---|---|---|---|---|
| Style: | Traditional | # Stories: | 2 | Bedrooms: | 3/3 |
| Type: | Free Standing | Access: | | Baths F/H: | 2/1 |
| New Constr.: | No | Appx Complete: | | Builder Nm: | |
| Lot Dim: | | Acres: | .126 / 0 Up To 1/4 Acre | | |
| Frt. Door Faces: | South | Garage: | 2/Attached Garage | | |
| Gar/Car: | Auto Garage Door Opener, Double-Wide Driveway | Carport: | | | |

Showing Instruct: Appointment Required, Lockbox Front, Supra Keybox

Agent Remarks:
Contact Co-Listing agent Melissa Cruz, 832-247-9995, melissa@pattonteam.com, Please provide preapproval letter or proof of funds with all offers. Please verify room dimensions. Thank you for showing, please leave feedback! Also available for lease.

Public Remarks:
Welcome to this charming 3 bedroom, 2.5 bath home in Spring Meadows! Fantastic 2 story with vaulted ceilings and brick feature fireplace make a great first impression. Open concept floorplan with formal dining and large den with views of the covered porch and backyard. Kitchen features solid countertops, breakfast bar, stainless appliances, gas range with smart double oven function, large walk-in pantry, and fridge is included! Courtyard patio located just off the breakfast room. Primary bedroom is downstairs with large walk-in closet, en-suite bath with double vanity, granite counter, and skylight above. Upstairs are 2 bedrooms and second full bath. Recent updates include paint, flooring, roof, a/c 2021! No carpet! No flooding – per sellers.

### Rooms Information

| Room | Dimensions | Location | Room | Dimensions | Location |
|---|---|---|---|---|---|
| Kitchen | 11 x 7 | 1st | Breakfast | 10 x 7 | 1st |
| Dining Room | 11 x 10 | 1st | Den | 20 x 16 | 1st |
| Primary Bedroom | 17 x 11 | 1st | Primary Bath | 13 x 8 | 1st |
| Bedroom | 11 x 10 | 2nd | Bedroom | 10 x 10 | 2nd |
| Bath | 6 x 5 | 2nd | Porch/Balcony | 21 x 13 | 1st |

Bathroom Desc: Double Sinks, Half Bath, Tub w/shower, Vanity Area
Bedroom Desc   En-Suite Bath, Primary Bed – 1st Floor, Walk-In Closet
Room Desc:   Breakfast Room, Den, Formal Dining, Utility Room in Garage
Kitchen Desc:   Breakfast Bar, Kitchen open to Family Room, Pantry, Walk-in Pantry

https://matrix.harmls.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD*****AQAAAAAAAARAQAAAEMAAAAGAgAAAAQ0NjkyBgMAAAACMjkGB…   3/6

Subject's MLS Listings - Page 4

4/12/2021                                                                    Matrix

| Interior, Exterior, Utilities and Additional Information | | | | | |
|---|---|---|---|---|---|
| Microwave: | Yes | Dishwasher: Yes | Compactor: | No | Disposal: Yes |
| Fireplace: | 1/Wood Burning Fireplace | | Utility Dist: | No | Sep Ice Mkr: No |
| Connect: | Electric Dryer Connections, Gas Dryer Connections, Washer Connections | | Range: | Gas Range | |
| Energy: | Attic Vents, Ceiling Fans, High-Efficiency HVAC, Insulated/Low-E windows, North/South Exposure | | Flooring: | Engineered Wood, Tile | |
| Oven: | Electric Oven | | Foundation: | Slab | |
| Green/Energy Cert: | | | Countertops: | | |
| Roof: | Composition | | Prvt Pool: | No | |
| Interior: | Fire/Smoke Alarm, Formal Entry/Foyer, High Ceiling, Refrigerator Included | | Area Pool: | Yes | |
| Exterior Constr: | Brick, Wood | | Waterfront Feat: | | |
| Exterior: | Back Green Space, Back Yard Fenced, Covered Patio/Deck, Fully Fenced, Patio/Deck, Porch | | Water/Sewer: | Public Sewer, Public Water | |
| Lot Description: | Greenbelt, Subdivision Lot | | Cool: | Central Electric | |
| Heat: | Central Gas | | Golf Course Nm: | | |
| St Surf: | Concrete, Curbs | | Exclusions: | | |
| Restrictions: | Deed Restrictions | | | | |
| Disclosures: | Sellers Disclosure | | | | |
| 55+ Community | No | | | | |

| | | | | | |
|---|---|---|---|---|---|
| MgmtCo./HOA Name: | Yes / Spring Meadows / 713-932-1122 | | List Type: | Exclusive Right to Sell/Lease | |
| List Date: | 02/05/2021 | Expire Date: | T/Date: | | Bonus End: |
| Comp: SubAgt: | 3% | Buyer Agent: 3% | Bonus: | | Var/Dual Rt: No |

| Financial Information | | | | |
|---|---|---|---|---|
| 1st Assumable: | | Finance Cnsdr: Cash Sale, Conventional, FHA, VA | | |
| Ownership Type: | Full Ownership | | Vac Rental Allwd: Not Allowed | |
| Maint. Fee: | Mandatory/$493/Annually | | | |
| Other Mand Fee: | Yes/250/Transfer and More | | Exemptions: | |
| Taxes w/o Exempt: | $4,589/2020 | | Tax Rate: | 2.5056 |
| Loss Mitigation: | No | Auction: No | Online Bidding: | No |
| Co-Sell Agent: () | | | Co-Sell Office: () | |

Prepared By: Jill Haygood                    Data Not Verified/Guaranteed by MLS          Date: 04/12/2021 4:08 PM
                                                    Obtain Signed HAR Broker Notice to Buyer Form

Copyright 2021 Houston Realtors Information Service, Inc, All Rights Reserved, Users are Responsible for Verifying All Information for Total Accuracy.

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Appraiser's State Certification



# Certified Residential
# Real Estate Appraiser

**TEXAS APPRAISER LICENSING &**
**CERTIFICATION BOARD**

Appraiser:  **William C Clements JR**

License #:  **TX 1321203 R**          License Expires: **06/30/2021**

Having provided satisfactory evidence of the qualifications required by the Texas Appraiser Licensing and Certification Act, Occupations Code, Chapter 1103, authorization is granted to use this title: Certified Residential Real Estate Appraiser

For additional information or to file a complaint please contact TALCB at www.talcb.texas.gov.

Douglas E. Oldmixon
Commissioner

File No.    0031738

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

### Condition Ratings and Definitions

**C1**

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

*Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Form UADDEFINE1A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

*(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)*

## Quality Ratings and Definitions (continued)

### Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

### Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

### Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

### Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

## Definitions of Not Updated, Updated, and Remodeled

### Not Updated

**Little or no updating or modernization. This description includes, but is not limited to, new homes.**

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

### Updated

**The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.**

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

### Remodeled

**Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.**

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

## Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

### Example:

3.2 indicates three full baths and two half baths.

UAD APPRAISAL DATABOX DEFINITIONS/ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| | | |
| | | |
| | | |
| | | |
| | | |

Form UADDEFINE1A - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Exhibit B

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2026-792

FILED 2/5/2026 9:18:33 AM

25-02777
11927 MOSS BRANCH RD, HOUSTON, TX 77043

## NOTICE OF FORECLOSURE SALE AND
## APPOINTMENT OF SUBSTITUTE TRUSTEE

| | |
|---|---|
| Property | The Property to be sold is described as follows |
| | LOT FORTY-EIGHT (48) IN BLOCK ONE (1) OF REPLAT OF SPRING MEADOWS, SECTION TWO (2) A SUBDIVISION IN HARRIS COUNTY TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 297, PAGE 90 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS |
| Security Instrument | Deed of Trust dated May 27 2021 and recorded on June 11 2021 at Instrument Number RP-2021 327271 in the real property records of HARRIS County Texas, which contains a power of sale |
| Sale Information | March 3 2026 at 10 00 AM or not later than three hours thereafter at THE BAYOU CITY EVENT CENTER, MAGNOLIA SOUTH BALLROOM LOCATED AT 9401 KNIGHT RD HOUSTON, TX 77045 OR AS DESIGNATED BY THE COUNTY COMMISSIONER'S OFFICE or as designated by the County Commissioners Court |
| Terms of Sale | Public auction to highest bidder for cash In accordance with Texas Property Code section 51 009, the Property will be sold as is without any expressed or implied warranties, except as to warranties of title and will be acquired by the purchaser at its own risk In accordance with Texas Property Code section 51 0075 the substitute trustee reserves the right to set additional reasonable conditions for conducting the sale and will announce the conditions before bidding is opened for the first sale of the day held by the substitute trustee |
| Obligation Secured | The Deed of Trust executed by DHI HOLDINGS LP secures the repayment of a Note dated May 27 2021 in the amount of $175 500 00 U S BANK TRUST NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF SPARTAN FUNDING I TRUST, whose address is c/o RF Mortgage Services Corporation 222 W Adams St #3150 Chicago, IL 60606 is the current mortgagee of the Deed of Trust and Note and RF Mortgage Services Corporation is the current mortgage servicer for the mortgagee Pursuant to a servicing agreement and Texas Property Code section 51 0025, the mortgagee authorizes the mortgage servicer to administer the foreclosure on its behalf |
| Substitute Trustee | In accordance with Texas Property Code section 51 0076 and the Security Instrument referenced above mortgagee and mortgage servicer's attorney appoint the substitute trustees listed below |

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER**

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED**



4864955

FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY

*Kathryn Dahlin*

---
De Cubas & Lewis P C
Kathryn Dahlin   Attorney at Law

3313 W Commercial Blvd  Suite F-150  Fort
Lauderdale, FL 33309

---
Substitute Trustee(s) Jeff Leva  Sandy Dasigenis
Patricia Poston  Megan L  Randle  Ebbie Murphy,
Wayne Daughtrey  Steve Leva  Agency Sales and
Posting LLC

c/o De Cubas & Lewis, P C
3313 W Commercial Blvd, Suite F-150, Fort
Lauderdale, FL 33309

Certificate of Posting

I ____ SANDY DASIGENIS ____, declare under penalty of perjury that on the ___5th___ day of ____February____, 2026, I filed and posted this Notice of Foreclosure Sale in accordance with the requirements of HARRIS County, Texas and Texas Property Code sections 51 002(b)(1) and 51 002(b)(2)

TENESHIA HUDSPETH, COUNTY CLERK, HARRIS COUNTY, TEXAS

FRCL-2026-792

FILED 2/5/2026 9:18:33 AM

UNITED STATES BANKRUPTCY COURT MIDDLE
DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:                                                          Case No. 26-01636-CPM
                                                                Chapter 11

RAD Diversified REIT, Inc.,

                Debtor,
_____/

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 21, 2026, I served the foregoing document described as the **MOTION FOR RELIEF**, by electronic ECF notification via Bankruptcy Court's CM/ECF system and/or by U.S. Mail, on the following parties:

**VIA CM/ECF:**

Jessey James Krehl
jessey@packlaw.com
*(Attorney for Debtor)*

Joseph A Pack
Joe@packlaw.com *(Attorney for Debtor)*

United States Trustee - TPA
USTPRegion21.TP.ECF@USDOJ.GOV
*(U.S. Trustee)*

Nicole Peair
Nicole.W.Peair@USdoj.gov
*(Counsel for U. S. Trustee)*

John D Elrod elrodj@gtlaw.com
*(Attorney Creditor Committee)*

Danielle S Kemp kempd@gtlaw.com
*(Attorney Creditor Committee)*

**VIA U.S. MAIL:**

RAD Diversified REIT, Inc.,
11418 US-19 N.
Port Richey, FL 34688
*(Debtor)*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: July 21, 2026

Attorney for Secured Creditor
2313 W. Violet St.
Tampa, Florida 33603
flbankruptcy@rlselaw.com
Telephone No.: (813) 656-8801
Facsimile No.: (813) 656-8802

By:/s/ Amy M. Kiser
Amy M. Kiser, ESQ.
Florida Bar# 46196