**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; *and* | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC, | Case No. 8:26-bk-01640-CPM |
| Debtors. | |

**NOTICE OF OPPORTUNITY TO**
**OBJECT AND REQUEST FOR HEARING**

If you object to the relief requested in this paper you must file a response with the Clerk of Court at the Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Ste. 555, Tampa, Florida 33602 within twenty-one (21) days from the date of the attached proof of service, plus an additional three days if this paper was served on any party by U.S. Mail.

If you file and serve a response within the time permitted, the Court will either notify you of a hearing date or the Court will consider the response and grant or deny the relief requested in this paper without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, and the Court may grant or deny the relief requested without further notice or hearing.

**You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated if you do not timely file and serve a response.**

**DEBTORS' MOTION TO APPROVE SETTLEMENT AND**
**RELEASE PURSUANT TO BANKRUPTCY RULE 9019 BETWEEN**
**RAD DIVERSIFIED REIT, INC. AND BAHIYAH SHAM SUD'DIN**

The above-captioned debtors and debtors in possession (the "**Debtors**") seek entry of an order: (a) approving the Debtors to enter into the *General Release* (the "**Settlement Agreement**"), attached hereto as **Exhibit A,** between RAD Diversified REIT, Inc. ("**RAD**"), on the one hand, and Bahiyah Sham Sud'din, and together with RAD (the "**Parties**"), and (b) granting related relief, all as more specifically set forth in this Motion (this "**Motion**"), and in support thereof respectfully state as follows:

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested in this Motion are section 105 of the Bankruptcy Code, Bankruptcy Rules 2002 and 9019, and Local Rules 9019-1 and 9075-1.

### Background

4.      On March 1, 2026 (the "**Petition Date**"), RAD Diversified REIT, Inc. and each of the other Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Cases before the Bankruptcy Court.

5.      The Debtors are operating their business and managing their property as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of

2

the filing of this Motion, no request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed in the Chapter 11 Cases.

6.    On or around June 13, 2025 Bahiyah Shamsud'Din initiated suit in the Court of Common Pleas, Philadelphia County, PA styled Bahiyah Shamsud'Din vs. RAD Diversified REIT, Inc., Defendant, June Term 2025, No. 01596, (the "**Litigation**") The Litigation alleges a bodily injury claim against RAD in an unliquidated amount not in excess of the $50,000.00 jurisdictional limits.  The relevant insurance carrier is McClarens ("**McClarens**").  The Litigation was stayed by the initiation of the Chapter 11 Cases.

7.    The Parties desire to compromise the controversies therebetween.  Accordingly, the Parties, in good faith and at arms' length, negotiated a settlement whereby McClarens would pay the sum of $32,500.00 to Bahiyah Shamsud'Din, in exchange for a general release of RAD in connection with the Litigation.

### The Settlement Agreement

8.    The summary of the terms of the Settlement Agreement are as follows:

Bahiyah Shamsud'din, her heirs, executors, administrators and assigns ("Plaintiff" or "Releasor"), for and in consideration of  Thirty Two Thousand Five Hundred Dollars ($32,500.00), does hereby remise, release and forever discharge DDH Fund, LP a/k/a, t/a, d/b/a DDH Fund, LLC and RAD Diversified REIT, Inc. and their parent companies, subsidiaries, affiliates and associated companies, and their owners, employees, subsidiaries, affiliates, associated companies, insurers (including specifically: Lio Specialty Insurance Company), insurance administrators (including specifically: McLarens), re-insurers, assigns, predecessors, successors, heirs, executors and administrators and their agents, servants, employees and representatives (collectively "Releasees" or "Released Parties"), of and from all, and all manner of, liability, actions and causes of action, suits, costs, fees, debts, dues, accounts, bonds, covenants, contracts, DPW liens, CMS/Medicare/Medicaid liens, SSA liens, child welfare and/or support liens, medical payment insurance, insurance, agreements, judgments, claims, delay damages, compensatory damages, punitive damages, and demands whatsoever in law or equity, including any claim for any damage or injury, known or unknown, that were or could have been litigated in the lawsuit Bahiyah Shamsud'din v. RAD Diversified REIT, Inc., et al. Court of Common Pleas of Philadelphia County, June

Term, 2025, at No. 250601596 (the "Lawsuit") and/or any other matter arising out of the alleged incident that occurred on or about August 26, 2024 at 2497 North Newkirk Street, Philadelphia, PA as alleged in the Complaint in the Lawsuit (the "Incident"), which Releasor ever had, now has or which she hereafter can, shall or may have against any and all persons, companies, or entities from the beginning of the world to the present, including but not limited to claims of negligence and Personal Injury as alleged in the Lawsuit.

The parties hereto further agree as follows:

1.      This Release contains the entire agreement between the parties hereto, and the terms of this Release are contractual and not a mere recital. In making this settlement and in giving this Release, Releasor acknowledges that she does not rely on any statements or representations of the Released Parties or any person acting on their behalf. The payment of the settlement funds to the Releasors and by the Released Parties constitutes an acknowledgment that all claims for indemnity or contribution in this matter are resolved.

2.      Releasor recognizes that the claims that she has asserted are disputed by the Released Parties and it is further understood that payment made on behalf of the Released Parties is not intended to be construed as an admission of any liability by Released Parties which liability is expressly denied by Released Parties. It is further understood, that the settlement amount and particulars are not to be published (orally, in print, or by social media/networking) by the parties and that such disclosure by the Plaintiffs and/or their attorneys, including but not limited to jury publications and reviews, or failure to abide by this portion of the Release can lead to such sanctions upon the violating party as the Court may impose. This limitation does not include those governmental entities which require reporting of receipt of funds, such as the IRS or a settlement structure professional, or lien holders in an attempt to negotiate any outstanding liens.

3.      It is further understood and agreed that if it is alleged in any suit, action or proceeding that the Released Parties are individually liable, jointly liable, and/or severally liable with others for Releasor's injuries or damages, then Releasor as further consideration of the aforesaid payment, will defend, indemnify and hold harmless the Released Parties, and satisfy any judgment or award, to the extent of the Released Parties' liability for contribution. The said payment, therefore, is received by Releasor  in full satisfaction of the pro rata or percentage share of responsibility of the Released Parties for the verdict or award.

4.      It is further understood and agreed that Releasor is solely responsible for the payment of any and all liens and/or charges and/or claims and/or outstanding costs, against this settlement sum, including but not limited to liens asserted by any other individual, group, insurance company, workers' compensation carrier, employer, or lienholder, including but not limited to, medical bills/expenses, Medicare, Medicaid, Social Security, and/or similar plans, shall  be paid and discharged from the settlement proceeds by the Releasor. Releasor

4

represents and warrant that all liens which may have accrued as a result of medical care and treatment, workers' compensation or legal services provided to Releasor arising out of or related to the Litigation have been waived, released, or will be satisfied out of the proceeds of this settlement, including, but not limited to benefits subject to the mandatory reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 42 U.S.C. § 1395y, et seq. and any applicable amendments thereto. Releasor agrees to be solely responsible for any such claims or liens, to defend, indemnify, and hold Released Parties and their insurers, current and former officers, directors, agents, attorneys, law firms representing the Released Parties, employees, parents, subsidiaries, affiliates, predecessors, successors and assigns, and/or any other person or entity allied- in-interest who may be liable or who may be claimed to be liable, harmless from any claims, demands, costs, expenses, or causes of action, including, but not limited to, all liens, claims, charges, fees, costs, interest and other sums incurred by and/or asserted against Released Parties in conjunction with such claims, whether known or unknown, including, but not limited to attorney's fees and benefits subject to the mandatory reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 42 U.S.C. § 1395y, et seq. and any applicable amendments thereto, in connection with or arising as a result of any said liens. This is intended to become part of the consideration for settlement. It is further agreed that Releasors' obligation to indemnify or hold harmless the Released Parties pursuant to the Release is the limited by the consideration.

5.      Releasor has received in the past and may receive in the future any Medicare, Medicaid or any other similar benefit offered or available through any local, state or federal government in connection with the accident, casualty and/or event that is the subject of this General Release, Releasor has the sole and exclusive responsibility to satisfy any payment, repayment or lien obligations in connection therewith; and further that Releasor expressly release the Released Parties from any such payment, repayment or lien obligations; and further still that Releasor shall defend, indemnify and hold harmless the Released Parties in connection therewith. The Released Parties assume no further liability to the Releasor or any third parties, including but not limited to amounts due to any and all health care providers or persons furnishing services to the Releasor of any nature whatsoever.

6.      It is the Parties' intention and purpose to provide for the full protection and indemnification of the Released Parties, including their past, present and future officers, directors, shareholders, attorneys, trustees, agents, servants, representatives, employees, subsidiaries, affiliates, partners, insurers, predecessors and successors in interest and assigns, from and against any claims, actions, causes of action, enforcement proceedings, penalties, fines, liabilities and other sanctions under the requirements, regulations and provisions of the FMCRA and MSP and accompanying regulations. In the event that any of the above information provided by Releasors are false or in any way incorrect, Releasor shall be solely liable for any and all actions, causes of actions, penalties, claims, costs, services, compensation or the like resulting from these inaccuracies. Releasor acknowledges that Medicare may require them to exhaust the entire settlement proceeds on

Medicare covered expenses, and Releasors understand that no additional payments will be made by Released Parties beyond the payment made under this Release. Releasor agrees to waive any and all claims for damages, including a private cause of action provided in the FMCRA and/or MSP, 42 U.S.C. § 1395y(b)(3)(A), should Medicare deny coverage for any reason, including the failure to establish a set aside allocation to protect Medicare's interest. Releasor agrees and covenant that in the event they submit any medical expenditures related to this Incident to Medicare for reimbursement, they will be solely liable for any penalties, causes of action, etc., that Medicare may assert.

7.    Releasor waives any and all rights of any nature, including, but not limited to, a private cause of action, against the Releasees under the Medicare Second Payor Act, or any other applicable federal law. It is the parties' intentions that this Release shall be construed against Releasor in every instance so that Releasees never have to pay any additional monies for any reason under any circumstances.

8.    Releasor warrants, represents and acknowledges that she has not assigned or transferred her rights, claims or causes of action arising from the aforesaid accident and/or damages to any other person or entity, and that they have the sole and exclusive authority to enter into this general release. It is agreed that this is a compromise settlement of claims which are in dispute, and neither this Release nor the payment of the consideration given for this Release and settlement agreement is to be construed as a concession or admission concerning  the liability of any party.

9.    Releasor understands and acknowledges the payment above extinguishes any and all liability of Released Parties for damages sustained to Releasor due to losses incurred as a consequence of this accident. Releasor  agrees and understands  that this release extends to all such past, present and future losses, damages and claims whether they be known or unknown, expected or unexpected. There are no representations by Released Parties not expressly  set forth in this Release which the Releasor is relying upon in entering  into this Release.  It is further agreed and acknowledged  that this document  represents the complete Release Agreement between the Parties and that that this Release supersedes any and all previous written and verbal agreements and understandings concerning any settlement agreement between the Parties hereto and there are no other documents, agreements, promises or understandings relating to this settlement or the obligations of the Parties to it, other than what is set forth in this Release.

10.    It is understood between the parties that the Releasor and/or Releasor's attorney did not rely upon any representations, express or implied, made by Releasees or any of their representatives, as to the tax or Medicare or Medicaid/Medical Assistance consequences of this Release and that Releasor releases Releasees from any and all liability in connection with any such tax or Medicare consequences.

11.     Releasor agrees that the settlement or any of the terms and conditions of the Agreement or any of the amounts, numbers or terms and conditions of any sums payable to Releasor, as memorialized in the Release, shall not be revealed to any person, firm or corporation. Notwithstanding the above, Releasor may disclose specific settlement terms to her attorneys, accountants and financial advisors who also otherwise are bound by this confidentiality provision. Further, Releasor hereby agrees to decline to comment should any person, firm or organization seek confirmation of this settlement or any term or payment provided for in the Release.

12.     It is further understood from the date of full execution of the Release and moving forward, Releasor shall not engage in any communications, including, but not limited to postings on social media and/or the internet, which consist of or contain their opinion which tends to disparage any Party's reputation or portray any of the Releasees or their agents, employees, officers, directors, owners, members, attorneys, licensees,   independent contractors, subsidiaries, affiliates, assigns, insurers, third party administrators, successors, heirs, predecessors, and any other person, firm, corporation, association or partnership in a negative light with respect to this matter.

13.     The provisions of this Release are severable, and if any part of it is found to be unenforceable, the other paragraphs shall remain fully valid and enforceable.

14.     Each party shall bear all attorneys' fees and costs arising from the actions of their own counsel in connection with this Release and the matters and documents  referred to herein, the filing of a dismissal, and all related matters.

15.     Releasees agree that the remittance of the settlement amount  be made within thirty (30) calendar days after its receipt of: (a) a fully-executed copy of this Agreement; and (b) a completed Form W-9 from Plaintiffs' Counsel; and (c) approval from the Bankruptcy Court.

16.     Releasor and her attorneys shall take whatever actions are necessary to ensure that the Lawsuit will be dismissed in its entirety, with prejudice, and without costs or fees, within five (5) days after Releasor's receipt of the settlement amount provided for in this Release. Releasees and their attorneys will cooperate in securing the dismissal of the Lawsuit, as appropriate.

I HAVE READ THIS GENERAL RELEASE CAREFULLY BEFORE SIGNING IT AND I UNDERSTAND IT AND HAVE HAD ITS EFFECT EXPLAINED TO ME BY ATTORNEYS OF MY CHOOSING. THIS RELEASE IS BEING EXECUTED IN PENNSYLVANIA AND IS TO BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE COMMONWEAL TH OF PENNSYLVANIA.

**Basis for Relief**

9.      Bankruptcy Rule 9019(a) grants the bankruptcy court power after notice and a hearing to approve settlements and compromises. *GMGRSST, Ltd. v. Menotte (In re Air Safety Int'l, L.C.),* 336 B.R. 843, 852 (S.D. Fla. 2005); Fed. R. Bankr. P. 9019(a). There is also a general policy encouraging settlement of disputes over litigation. *In re Biocoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

10.      Approval of settlements in a bankruptcy proceeding is within the sole discretion of the bankruptcy court. *In re Arrow Air, Inc.,* 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988). The discretion to approve settlements is also broad and should only result in rejection if the proposed settlement "falls below the lowest point in the range of reasonableness." *In re Biocoastal Corp.,* 164 B.R. at 1016.

11.      The legal standard for approval of settlements in the Eleventh Circuit is set forth *in In re Justice Oaks, II, Ltd.*, 898 F.2d. 1544, 1549 (11th Cir. 1990) *cert. denied*, 498 U.S. 959 (1990). Under the standard set forth in *Justice Oaks II*, the Court should consider the:

  a.   probability of success in litigation;

  b.   difficulties, if any, to be encountered in the matter of collection;

  c.   complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and

  d.   paramount interest of the creditors and a proper deference to their reasonable views in the premises.

12.      The proposed settlement agreement satisfies the four-part test required *In Justice Oaks II* and falls well within the requisite of "range of reasonableness".

  a.      Probability of success in litigation:   The Debtors are confident in their positions with respect to the Litigation and the negotiated settlement involves McClarens funding $32,500.00 to Bahiyah Sham Sud 'Din. The Settlement Payment is to be made by McClarens and RAD shall not be

required to make any portion of the Settlement Payment in its own right. By agreeing to the settlement, the Parties are eliminating the risk and expense of costly, time-consuming, and distracting litigation in favor of a consensual resolution.

b. <u>Difficulties, if any, to be encountered in the matter of collection:</u>  Because the Settlement Agreement compromises claims asserted *against* the Debtors rather than claims held by the Debtors, this factor is not relevant to the instant Motion and neither weighs in favor nor against approval of the Settlement Agreement.

c. <u>Complexity, Expense, and Delay with the Litigation:</u>  Absent the Settlement Agreement, the Debtors would be compelled to litigate these claims to finality.  As the record of the Litigation makes clear, significant discovery occurred in the Litigation prior to it being stayed by these Chapter 11 Cases, and trial would no doubt involve significant testimony, including possible expert witness testimony.  The Settlement Agreement guarantees a sum-certain compromise and facilitates a consensual resolution on a timely basis and efficient basis.

d. <u>Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views in the Premises:</u>  This last factor weighs heavily in favor of approval of the Settlement Agreement because the Settlement Agreement provides that the Settlement Payment will be funded by the Debtors' insurance, McClaren, and will fully release RAD from the uncertain and unliquidated claim asserted in the Litigation, giving finality and clarity to each of McClaren, Bahiyah Sham Sud 'Din, and all other parties in interest.

13. Based on the foregoing, the Debtors respectfully submit that there is good and sufficient cause for the Court to approve the Settlement Agreement.

**WHEREFORE,** the Debtors respectfully request the entry of an order granting the relief requested herein and such other and further relief as the Court deems appropriate under the circumstances.

*Remainder of Page Left Intentionally Blank*

Dated: July 22, 2026

Respectfully submitted,

**PACK LAW**
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500

By:  */s/ Joseph A. Pack*
   Joseph A. Pack
   Email:  joe@packlaw.com
   Florida Bar No. 117882
   Jessey J. Krehl
   Email:  jessey@packlaw.com
   Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served this day by transmission of Notice of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

**I FURTHER CERTIFY** that on July 22, 2026, I transmitted the foregoing document to Epiq Corporate Restructuring, LLC for service on those persons entitled to notice by mail under the *Interim Order Granting Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and Consolidated List of the Top Thirty Unsecured Creditors, (II) Establishing Notice Procedures, and (III) Granting Related Relief* [Dkt. No. 72].

By:  */s/ Joseph A. Pack*
   Joseph A. Pack
   Florida Bar No. 117882

10