**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re:

| | |
|---|---|
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM<br>Chapter 11<br><br>*Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; *and* | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; | Case No. 8:26-bk-01640-CPM |

Debtors.
_________________________________/

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2021-3'S MOTION (I) FOR DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY, OR IN THE ALTERNATIVE, (II) FOR RELIEF FROM THE AUTOMATIC STAY (9000 West Chester Pike, Upper Darby, PA 19082)**

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR VELOCITY COMMERCIAL CAPITAL LOAN TRUST 2021-3 ("Movant"), by and through its undersigned counsel, and pursuant to section 362(d) of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves the Court for entry of an order (i) determining that the automatic stay does not apply to Movant's enforcement of its rights and remedies with respect to the Property, or in the alternative, (ii) granting Movant relief from the automatic stay to exercise those rights and remedies, and as grounds therefore states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. Procedural History.

1. On March 1, 2026 (the "Petition Date"), DDH Fund, LLC f/k/a DDH Fund, LP (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. On March 2, 2026, this Court entered an *Order Granting Debtors' Motion for Joint Administration and Intra-District Transfer, as Applicable* (Doc. No. 7).

3. The Debtor continues to conduct operations as debtor-in-possession.

### B. The Loan Documents.

5. On or about July 30, 2021, the Debtor and Velocity Commercial Capital, LLC, a California limited liability company ("VCC") entered into that certain Loan Agreement ("Loan Agreement"), pursuant to which VCC agreed to loan the Debtor the original principal amount of two hundred fifty eight thousand seven hundred fifty and 00/100 dollars ($258,750.00) under the terms more specifically stated therein ("Loan"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A**.

6. On or about July 30, 2021, as part of the same transaction, Debtor executed and delivered to VCC that certain Term Note in the original principal amount of two hundred fifty eight thousand seven hundred fifty and 00/100 dollars ($258,750.00) (together with all endorsements, allonges, modifications, and addenda, "Note"). A true and correct copy of the Note is attached hereto as **Exhibit B**.

7. On or about July 30, 2021, as part of the same transaction and to secure payment and performance under the Note, Debtor executed and delivered to VCC that certain Commercial Mortgage, Security Agreement and Assignment of Leases and Rents, recorded on September 23, 2021, as Document #2021072811, Book 6744, Page 5269, in the Delaware County Recorder of Deeds ("Mortgage"), pursuant to which Debtor provided VCC with a mortgage lien and security interest in real and personal property more specifically described therein, including the following real property:

> ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, hereditaments and appurtenances, situate in Upper Darby Township, County of Delaware and State of Pennsylvania, and described according to a Survey thereof made 10/26/1928 as follows, to wit:
>
> BEGINNING at the intersection of the Northwesterly side of Kirklyn Avenue (50 feet wide) and the Southwesterly side of West Chester Pike (67 feet wide).
> CONTAINING in front or breadth on the said West Chester Pike 20 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said West Chester Pike, the Southeasterly line thereof extending along the Northwesterly side of Kirklyn Avenue, 130 feet.
>
> BEING 9000 West Chester Pike
>
> Property Address: 9000 West Chester Pike, Upper Darby, Pennsylvania 19082-2606

(together with all personal property described in the Mortgage, the "Property"). A true and correct copy of the Mortgage is attached hereto as **Exhibit C**.

8. On or about December 9, 2022, VCC executed and delivered to Movant that certain Assignment of Open-End Mortgage, Commercial Mortgage, Security Agreement and Assignment of Leases and Rents, which was recorded on December 12, 2022, as Document #2022062402, Book 6877, Page 5032, in the Delaware County Recorder of Deeds ("Assignment," and together with the Loan Agreement, Note, Mortgage, and all related loan documents, the "Loan Documents"), pursuant to which VCC assigned the Note and its mortgage lien and security interest in the Property to Movant. A true and correct copy of Assignment is attached hereto as **Exhibit D**.

9. Movant is in possession of the original endorsed Note, is the holder of Note, and is entitled to enforce the Loan Documents.

**C. State Court Action, Judgment, and Sheriff's Sale.**

10. The covenants of the Loan Documents have been breached in that Debtor failed to make the monthly installment payment due under Note for August 2024, and all monthly installment payments due thereafter (the "Default").

11. On February 11, 2025, Movant filed a Complaint against the Debtor to, among other things, foreclose the Mortgage on the Property, in the Court of Common Pleas of Pennsylvania, Delaware County (the "State Court"), Civil Action No. CV-2025-001332 (the "State Court Action").

12. The State Court entered a Judgment against the Debtor in the amount of $281,726.36 (the "Judgment") and, on or about November 5, 2025, issued a Writ of Execution against the Property in the amount of $293,309.08, plus costs (the "Writ"). The Sheriff's Sale was scheduled for February 20, 2026 at 11:00 a.m. A copy of the Writ is attached hereto as **Exhibit E**.

13. A sheriff's sale of the Property was conducted on February 20, 2026, in Delaware County, Pennsylvania (the "Sheriff's Sale"). Movant was the successful bidder and fully complied with the terms of the Sheriff's Sale before the Debtor commenced this bankruptcy case. Following the Petition Date, the Sheriff completed the ministerial acts of executing and delivering the Sheriff's Deed to Movant, which was thereafter recorded in the Delaware County Recorder of Deeds. A copy of the Sheriff's Deed conveying the Property to Movant is attached hereto as **Exhibit F**.

**BASIS FOR RELIEF**

1. Section 541(a)(1) of the Bankruptcy Code broadly defines property of the estate to include the Debtor's legal and equitable interests in property "as of the commencement of the case." 11 U.S.C. § 541(a)(1). The nature and extent of those interests are determined under

applicable state law. *See e.g., Two Trees v. Builders Transport, Inc. (In re Builders Transport, Inc.*), 471 F.3d 1178, 1185 (11th Cir. 2006).

2. Pennsylvania law governs the Sheriff's Sale of the Property and is summarized, in relevant part, below:

> [A]t any time at least one hour prior to the commencement of bidding at a sheriff sale or other judicial sale on a residential mortgage obligation, the residential mortgage debtor or anyone in his behalf, not more than three times in any calendar year, may cure his default and prevent sale or other disposition of the real estate and avoid acceleration . . . .

41 P.S. § 404(a).

> Under Pennsylvania law, a mortgagor has the right to redeem mortgaged property until the fall of the hammer at an originally scheduled sheriff's sale. *In re Evergreen Memorial Park Association*, 308 F.2d 65, 67 (3d Cir.1962); *Peoples Bank v. Dorsey,* 453 Pa.Super. 94, 105, 683 A.2d 291, 296 (1996). Once the hammer has fallen at the sheriff's sale, the mortgagor has no right to redeem. *Bundy v. Donovan (In re Bundy)*, 183 B.R. 700, 701 (Bankr.W.D.Pa.1995). The purchaser at the sheriff's sale obtains equitable ownership of the property and upon settling with the Sheriff, the right to compel delivery of the deed. *In re Brown*, 75 B.R. 1009, 1012 (Bankr.E.D.Pa.1987). At the time of the sale, the purchaser assumes an obligation to comply with the terms of the sale. *The Chase Manhattan Bank v. Pulcini (In re Pulcini)*, 261 B.R. 836, 841 (Bankr.W.D.Pa.2001); *Pennsylvania Co. For Insurances on Lives and Granting Annuities v. Broad Street Hospital*, 354 Pa. 123, 128, 47 A.2d 281, 283 (1946). No court confirmation or approval of the sale is required. *See* Pa.R.C.P. 3135(a) ("Confirmation of the sale by the court shall not be required."). Thus, at the fall of the hammer, the mortgagor loses rights and the purchaser acquires rights and obligations.

*In re Townsville*, 268 B.R. 95, 118–19 (Bankr. E.D. Pa. 2001) (footnote omitted).

> If bankruptcy serves no legitimate purpose in retaining the debtor's possession, then the property owner should be granted relief from the stay to exercise its non-bankruptcy law rights to recover possession from the debtor. *See, e.g. In re Moore*, 267 B.R. 111, 117–18 (Bankr.E.D.Pa.2001). Thus, if a foreclosure sale takes place prepetition, a chapter 13 debtor has no right to cure or reinstate her mortgage under Pennsylvania law. *See In re Brown*, 75 B.R. 1009 (Bankr.E.D.Pa.1987); *In re Rouse*, 48 B.R. 236 (Bankr.E.D.Pa.1985). Nor, after such a sale, does she have any right to cure a prepetition mortgage default in a chapter 13 proceeding under federal bankruptcy law. 11 U.S.C. § 1322(c)(1). In such circumstances, *i.e.,* where a pre-bankruptcy sale has already occurred, courts have routinely held that relief from the bankruptcy stay generally is appropriate so the buyer may eject the debtor. *See, e.g.*,

> *In re Moore*, 267 B.R. at 117–18; *In re Belmonte*, 240 B.R. 843, 854 (Bankr.E.D.Pa.1999) (when debtor's ownership interests in realty were terminated prepetition and the chapter 13 case cannot restore those rights, cause exists to terminate the bankruptcy stay), *rev'd in part*, 279 B.R. 812 (E.D.Pa.2001); *In re Yorke*, 1996 WL 509614, at *2 (Bankr.E.D.Pa.1996) ("Since the Debtor lacks title to her Home ... she cannot propose a viable plan to cure arrears on, or liquidate, that mortgage. Since she cannot confirm a plan achieving these ends, the Bank is entitled to relief, pursuant to 11 U.S.C. § 362(d)(1), on its Stay Motion"); *In re Brown,* 75 B.R. at 1009 (stay lifted when bankruptcy filed after foreclosure sale).

*In re Dunlop*, 378 B.R. 85, 92 (Bankr. E.D. Pa. 2007).

3. Under Pennsylvania law, the Debtor's equitable ownership of and right to redeem the Property terminated upon the fall of the hammer at the Sheriff's Sale. Movant acquired equitable ownership of the Property at that time and, upon complying with the terms of the sale, the right to delivery of the Sheriff's Deed. Accordingly, the Debtor's subsequent bankruptcy filing did not restore any ownership or redemption rights that had terminated before the Petition Date. Thus, as of the Petition Date, the Debtor held no legal or equitable ownership interest in the Property that could become property of the estate or be treated through a chapter 11 plan.

4. Movant therefore requests that the Court determine that the automatic stay does not apply to Movant's enforcement of its rights and remedies with respect to the Property, including pursuing eviction or ejectment proceedings against the tenants or any other occupants and recovering possession of the Property.

5. Alternatively, to the extent the automatic stay applies, cause exists under 11 U.S.C. § 362(d)(1) to lift the automatic stay to permit Movant to exercise its rights and remedies under applicable non-bankruptcy law, including, without limitation, pursuing or resuming eviction proceedings and recovering possession of the Property.

6. Movant further requests that the Court waive the requirements of Bankruptcy Rule 4001(a)(4) and allow the order to have immediate effect.

WHEREFORE, Movant respectfully requests that the Court enter an order (i) granting this Motion; (ii) determining that the automatic stay does not apply to Movant's enforcement of its rights and remedies with respect to the Property under applicable non-bankruptcy law, including pursuing or resuming eviction or ejectment proceedings and recovering possession of the Property; (iii) alternatively, to the extent the automatic stay applies, granting Movant relief from the automatic stay to exercise those rights and remedies; (iv) waiving the 14-day stay under Bankruptcy Rule 4001(a)(4); and (v) for such other and further relief as the Court may deem just and proper.

Respectfully submitted this 17th day of September, 2026.

*_/s/ Kylie A. Riordan_*
**Gennifer L. Bridges, Esquire**
Florida Bar No. 0072333
Email: gbridges@burr.com
Secondary: nwmosley@burr.com
**Kylie A. Riordan, Esquire**
Florida Bar No. 1058286
Email: kriordan@burr.com
Secondary: echaves@burr.com
**BURR & FORMAN LLP**
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6687
Facsimile: (407) 540-6601
*Attorneys for U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 17, 2026, a true and correct copy of the foregoing has been served through the CM/ECF system to all registered CM/ECF recipients, including the U.S. Trustee's office, the Debtors' attorneys, and Counsel for the Committee, all of whom are registered and have consented to receive electronic notices in this case. I further certify that a true and correct copy of the foregoing has been served by United States first class mail postage prepaid to: Debtor, RAD Diversified REIT, Inc., 11418 US-19N., Port Richey, FL 34688; and all parties

listed on the Local Rule 1007-2 Parties-in-Interest list, a copy of which is attached hereto and incorporated by reference.

*/s/ Kylie A. Riordan*
Kylie A. Riordan, Esquire
Florida Bar No. 1058286

Label Matrix for local noticing
113A-8
Case 8:26-bk-01636-CPM
Middle District of Florida
Tampa
Wed Sep 16 17:18:16 EDT 2026

BRAVO Residential Funding Trust 2023-NQM7
c/o Aldridge Pite, LLP Attn: Tricia Morr
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

BSI Financial Services
4200 Regent Blvd Suite 200
Irving TX 75063-2240

Barrington Oaks East Homeowners Association,
Bush Ross, P.A.
c/o G. William Norris, Jr.
P.O. Box 3913
Tampa, FL 33601-3913

Brandon Dutch Mendenhall
805 E. Bloomingdale Blvd
# 737
Brandon, FL 33511-8113

Brighthouse Life Insurance Company
c/o Aldridge Pite, LLP Attn: Tricia Morr
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

CNH Industrial Capital America LLC
c/o Robert K. Eddy
ROBERT K. EDDY, P.A
320 W. Kennedy Blvd., Suite 700
Tampa, FL 33606-1459

(p)CITY OF PHILADELPHIA LAW DEPARTMENT
MUNICIPAL SERVICES BUILDING
1401 JOHN F KENNEDY BLVD 5TH FLOOR
PHILADELPHIA PA 19102-1617

Civic Real Estate Holdings III, LLC
c/o MATTHEW KLEIN
902 Clint Moore Road, Suite 220
Boca Raton, FL 33487-2828

DLP Lending Fund LLC
c/p Esther McKean, Esquire
AKERMAN LLP
420 South Orange Avenue, Suite 1200
Orlando, FL 32801-4904

DLP Lending Fund LLC
c/o Esther McKean, Esq.
420 S. Orange Ave., Suite 1200
Orlando, FL 32801-4904

Fay Servicing
c/o Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

Fay Servicing, LLC
c/o Aldridge Pite, LLP Attn:Jennifer Lau
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

Fay Servicing, LLC
c/o Aldridge Pite, LLP Attn:Tricia Morra
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

Fay Servicing, LLC
c/o Laura Noyes, Esq.
FRIEDMAN VARTOLO LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

Fay Servicing, LLC
c/o Aldridge Pite, LLP
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

GITSIT Mortgage Loan Trust BBPLC2
c/o Melbalynn Fisher, Esq.
Ghidotti
Berger LLP
1920 Old Tustin Ave
Santa Ana, CA 92705-7811

GREENE STREET FUNDING TRUST II
c/o Rubin Lublin LLC
2313 W. Violet St.
Tampa, FL 33603-1421

Georg Couturier
c/o J. Ryan Yant Esq.,
Carlton Fields, P.A.
P.O. Box 3239
Tampa, FL 33601-3239

Grove Funding III Trust
c/o MATTHEW KLEIN
902 Clint Moore Road, Suite 220
Boca Raton, FL 33487-2828

Hillsborpugh County Tax Collector
c/o Brian T. FitzGerald, Esq.
P.O. Box 1110, 27th Floor
Tampa, FL 33601-1110

J.P. Morgan Trust 2023-DSC
c/o Seth Greenhill Esq.,
Padgett Law Group
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312-3858

Joseph Censullo c/o Gendler & Gendler PLLC
PO Box 450135
Fort Lauderdale, Florida 33345-0135

Kiavi Funding Inc
c/o Tromberg, Miller, Morris & Partners
600 West Hillsboro Boulevard
Suite 600
Deerfield Beach, FL 33441-1611

Kiavi Funding, Inc.
271 N. Shore Drive, Suite 201
Pittsburgh, PA 15212-5845

Lima One Capital Loan
c/o Atlas Solomon LLP
7674 W. Lake Mead Blvd Ste 220
Las Vegas, NV 89128-6644

Luminary 813, LLC
c/o Matthew J. Mincone, Esq.
Mincone Law Group, P.A.
1925 E 6th Ave, Ste. 10
Tampa, FL 33605-5225

Metropolitan Life Insurance Company
c/o Aldridge Pite, LLP
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

Metropolitan Life Insurance Company
c/o Aldridge Pite, LLP Attn: Tricia Morr
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

NWL Company, LLC
c/o Seth Greenhill Esq.,
Padgett Law Group
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312-3858

Nancy C Millan Tax Collector
C/O Brian T Fitzgerald, Atty 27th FL
Po Box 1110
Tampa, FL 33601-1110

NewRez LLC d/b/a Shellpoint Mortgage Servici
PO Box 10826
Greenville, SC 29603-0826

NewRez as servicer for NWL Company, LLC
c/o Leslie Rushing, Esq.
Hill Wallack LLP
300 S. Orange Avenue, Suite 1000
Orlando, FL 32801-5403

Office of the Attorney General
State of Florida, Dept of Legal Affairs
Attn: Sasha Funk Granai
3507 E Frontage Road Suite 325
Tampa FL 33607-1795

PASCO COUNTY BOARD OF COUNTY COMMISSIONERS
ATTENTION ANTHONY M. SALZANO ESQ
8731 CITIZENS DRIVE
PASCO COUNTY GOVERNMENT CENTER
SUITE 340
NEW PORT RICHEY FL 34654-5572

PBK Architects Inc.
c/o Gordon Rees Scully Mansukhani, LLP
Attn: Megan M. Adeyemo
2200 Ross Avenue, Suite 3700
Dallas, TX 75201-2794

PNC BANK, NATIONAL ASSOCIATION, successor to
c/o Kylie A. Riordan, Esq.
BURR & FORMAN LLP
200 S. Orange Avenue, Suite 800
Orlando, Florida 32801-6404

PNC Bank, National Association
c/o Brian D. Darer
Parker Poe Adams& Bernstein LLP
P.O. Box 389
Raleigh, NC 27602-0389

PNC Bank, National Association
c/o Hailey W. Klabo, Esq.
Parker Poe Adams & Bernstein LLP
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601-2172

SILVER HILL CAPITAL, LLC
c/o SPENCER FANE LLP
Kayleigh Wright, Esq.
201 North Franklin Street, Suite 2150
Tampa, Florida 33602-5627

SN Servicing Corporation
c/o Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

Silver Hill Capital, LLC
c/o Patrick M. Mosley, Esq.
Spencer Fane, LLP
201 North Franklin Street, Suite 2150
Tampa, FL 33602-5627

TN Dept of Revenue
c/o TN Attorney General's Office
Bankruptcy Division
PO Box 20207
Nashville, TN 37202-4015

U.S. BANK TRUST NATIONAL ASSOCIATION
Robertson, Anschutz, Schneid, Crane
13010 Morris Road., Suite 450
Alpharetta, GA 30004-2001

U.S. BANK TRUST NATIONAL ASSOCIATION
c/o Robertson, Anschutz, Schneid, et al
6409 Congress Avenue, Suite 100
Boca Raton, FL 33487-2853

U.S. Bank National Association
c/o Dan Eisenhauer Esq.,
De Cubas & Lewis, P.A.
PO Box 5026
Fort Lauderdale, FL 33310-5026

U.S. Bank National Association
c/o Aldridge Pite, LLP, Attn: Tricia Mor
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

U.S. Bank National Association
c/o Aldridge Pite, LLP
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

U.S. Bank National Association, as Trustee o
c/o Stephanie C. Lieb, Esq., Trenam Law
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602-5150

U.S. Bank National Association, as Trustee o
c/o Kelsey E. Burgess, Esq., Trenam Law
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602-5150

U.S. Bank Trust Company, NA
c/o Gennifer L. Bridges, Esq.
BURR & FORMAN LLP
200 S. Orange Avenue, Suite 800
Orlando, FL 32801-6404

U.S. Bank Trust Company, NA
c/o Kylie A. Riordan, Esq.
BURR & FORMAN LLP
200 S. Orange Avenue, Suite 800
Orlando, FL 32801-6404

U.S. Bank Trust NA
Aldridge Pite, LLP
Six Piedmont Center
3525 Piedmont Road, N.E.Ste 700
Atlanta, GA 30305-1608

U.S. Bank Trust National Association
c/o MCCALLA RAYMER LEIBERT PIERCE, LLP
Bankruptcy Department
110 S.E. 6th Street, Suite 2300
Ft. Lauderdale, FL 33301-5055

U.S. Bank Trust National Association
c/o Robertson, Anschutz, Schneid, Crane
13010 Morris Road., Suite 450
Alpharetta, GA 30004-2001

Unsecured Creditors Committee
c/o John D. Elrod Esq.,
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA 30305-1780

Victor and Susan Cave
c/o AMR Law Firm, P.A.
P.O. Box 340180
Tampa, FL 33694-0180

Victor and Susan Cave
15054 SERENGETI BOULEVARD
SPRING HILL, FL 34610-7686

WILMINGTON SAVINGS FUND SOCIETY
c/o ALDRIDGE PITE, LLP Attn: Tricia Morr
Six Piedmont Center
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

Wilmington Savings Fund Society
Robertson, Anschutz, Schneid, Crane
13010 Morris Road., Suite 450
Alpharetta, GA 30004-2001

Wilmington Savings Fund Society FSB
c/o Dan Eisenhauer Esq
De Cubas & Lewis PA
PO Box 5026
Fort Lauderdale FL 33310-5026

Wilmington Savings Fund Society, FSB
Padgett Law Group
6267 Old Water Oak Road, Suite 203
Tallahassee, FL 32312-3858

Wilmington Savings Fund Society, FSB
c/o Aldridge Pite, LLP
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

Wilmington Savings Fund Society, FSB
Robertson, Anschutz, Schneid, & Crane PL
13010 Morris Rd., Suite 450
Alpharetta, GA 30004-2001

Wilmington Savings Fund Society, FSB
Robertson, Anschutz, Schneid, Crane
13010 Morris Road., Suite 450
Alpharetta, GA 30004-2001

Wilmington Savings Fund Society, FSB, as Own
PO Box 27370
Anaheim Hills, CA 92809-0112

c/o Joseph F. Southron
400 N. Ashley Drive Suite 1720
Tampa, FL 33602-4326

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

City of Philadelphia
c/o Megan N. Harper
Municipal Services Building
1401 JFK Boulevard, 5th Floor
Philadelphia, PA 19102-1595

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)Brandon Dutch Mendenhall
805 E. Bloomingdale Blvd
# 737
Brandon, FL 33511-8113

(d)Fay Servicing, LLC
c/o Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

(d)Fay Servicing, LLC
c/o Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

(d)Fay Servicing, LLC
c/o Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

(d)Fay Servicing, LLC
c/o Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530-1631

(d)Fay Servicing, LLC
c/o Aldridge Pite, LLP
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

(d)Metropolitan Life Insurance Company
c/o Aldridge Pite, LLP
3525 Piedmont Road, N.E., Suite 700
Atlanta, GA 30305-1608

(u)Office of the Attorney General, State of F

(d)Wilmington Savings Fund Society, FSB
Robertson, Anschutz, Schneid, & Crane PL
13010 Morris Rd., Suite 450
Alpharetta, GA 30004-2001

(d)Wilmington Savings Fund Society, FSB
Robertson, Anschutz, Schneid, & Crane PL
13010 Morris Rd., Suite 450
Alpharetta, GA 30004-2001

End of Label Matrix
Mailable recipients 66
Bypassed recipients 10
Total 76

# EXHIBIT "A"

velocity
commercial capital

# LOAN AGREEMENT

Loan No. [redacted]2372

This LOAN AGREEMENT (this *"Agreement"*) is entered into as of **July 30, 2021**, between **DDH FUND, LP**, a Delaware limited partnership, with its chief executive office located at 16192 Coastal Highway, Lewes, DE 19958 (the *"Borrower"*) and Velocity Commercial Capital, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Road, Suite 295, Westlake Village, CA 91362 (*"Lender"*).

FOR VALUE RECEIVED, and in consideration of the granting by Lender of financial accommodations to or for the benefit of the Borrower, including without limitation respecting the Obligations (as herein defined), the Borrower represents to and agrees with Lender, as of the date hereof and as of the date of each loan, credit and/or other financial accommodation, as follows:

## 1. Definitions

**1.1 Definitions.** The following definitions shall apply:

(A) *"Code"* shall mean the *Pennsylvania Uniform Commercial Code*, Title 13 *PaCSA* as amended from time to time.

(B) *"Obligation(s)"* shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, owing by the Borrower to Lender at any time, of each and every kind, nature and description, whether arising under this Agreement or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Borrower to Lender; or are due indirectly by the Borrower to Lender as endorser, guarantor or other surety, or as a borrower under obligations due third persons which have been endorsed or assigned to Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter arising or contracted, including, without limitation, payment when due of all amounts outstanding respecting any of the Loan Documents. Said term shall also include all interest and other charges chargeable to the Borrower or due from the Borrower to Lender from time to time and all costs and expenses referred to in this Agreement.

(C) *"Person"* or *"party"* shall mean individuals, partnerships, corporations, limited liability companies and all other entities.

All words and terms used in this Agreement other than those specifically defined herein shall have the meanings accorded to them in the Code.

## 2. The Loan

**2.1 Loan.** Subject to the terms and conditions of this Agreement, Lender hereby agrees to make a loan to **DDH FUND, LP** in the original principal amount of **Two hundred fifty eight thousand seven hundred fifty and 00/100 dollars ($258,750.00)** (the *"Loan"*). The Loan shall be evidenced by that certain Term Note, of even date herewith (the *"Note"*) by **DDH FUND, LP** in favor of Lender in the original principal amount of **Two hundred fifty eight thousand seven hundred fifty and 00/100 dollars ($258,750.00)**. This Agreement, the Note, and any and all other documents, amendments or renewals executed and delivered in connection with any of the foregoing are collectively hereinafter referred to as the *"Loan Documents"*.

## 3. REPRESENTATIONS AND WARRANTIES

**3.1 Organization and Qualification.** Borrower is a duly formed and validly existing limited partnership under the laws of the State of its formation, with the exact legal name set forth in the first paragraph of this Agreement.

Borrower is in good standing under the laws of said State, has the power to own its property and conduct its business as now conducted and as currently proposed to be conducted, and is duly qualified to do business under the laws of each state where the nature of the business done or property owned requires such qualification.

**3.2 Related Parties.** Borrower has no interest in any entities, and the Borrower has never consolidated, merged or acquired substantially all of the assets of any other entity or person.

**3.3 Partnership Records.** Borrower's Partnership Agreement and all amendments thereto have been duly filed (if required) and are in proper order. All outstanding limited partnership interests issued by Borrower were and are properly issued and all books and records of the Borrower, including but not limited to its minute books and books of account, are accurate and up to date and will be so maintained.

**3.4 Title to Properties; Absence of Liens.** Borrower has good and clear record and marketable title to all of its properties and assets, and all of its properties and assets are free and clear of all mortgages, liens, pledges, charges, encumbrances and setoffs.

**3.5 Places of Business.** Borrower's chief executive office is correctly stated in the preamble to this Agreement, and Borrower shall, during the term of this Agreement, keep Lender currently and accurately informed in writing of each of its other places of business, and shall not change the location of such chief executive office or open or close, move or change any existing or new place of business without giving Lender at least thirty (30) days prior written notice thereof.

**3.6 Valid Obligations.** The execution, delivery and performance of the Loan Documents have been duly authorized by all necessary partnership action and each Loan Document represents a legal, valid and binding obligation of Borrower and is fully enforceable according to its terms, except as limited by laws relating to the enforcement of creditors' rights.

**3.7 Name and Public Organic Record.** Borrower's name printed on the signature page hereof is the Borrower's name as shown on Borrower's most recent public organic record. Borrower will not change its name as reflected on its public organic record without providing Lender at least a 30 day written notice thereof.

**3.8 Conflicts.** There is no provision in Borrower's organizational or charter documents, if any, or in any indenture, contract or agreement to which Borrower is a party which prohibits, limits or restricts the execution, delivery or performance of the Loan Documents.

**3.9 Governmental Approvals.** The execution, delivery and performance of the Loan Documents does not require any approval of or filing with any governmental agency or authority.

**3.10 Litigation, etc.** There are no actions, claims or proceedings pending or to the knowledge of Borrower threatened against Borrower which might materially adversely affect the ability of Borrower to conduct its business or to pay or perform the Obligations.

**3.11 Taxes.** The Borrower has filed all Federal, state and other tax returns required to be filed (except for such returns for which current and valid extensions have been filed), and all taxes, assessments and other governmental charges due from the Borrower have been fully paid. The Borrower has established on its books reserves adequate for the payment of all Federal, state and other tax liabilities (if any).

**3.12 Use of Proceeds.** No portion of any loan is to be used for (i) the purpose of purchasing or carrying any "margin security" or "margin stock" as such terms are used in Regulations U and X of the Board of Governors of the Federal Reserve System, 12 *C.F.R.* 221 and 224 or (ii) primarily personal, family or household purposes.

**3.13 Environmental.** As of the date hereof neither the Borrower nor any of Borrower's agents, employees or independent contractors (1) have caused or are aware of a release or threat of release of Hazardous Materials (as defined herein) on any of the premises or personal property owned or controlled by Borrower (*"Controlled Property"*) or any property abutting Controlled Property (*"Abutting Property"*), which could give rise to liability under any Environmental Law (as defined herein) or any other Federal, state or local law, rule or regulation; (2) have arranged for the transport of or transported any Hazardous Materials in a manner as to violate, or result in potential liabilities under, any Environmental Law; (3) have received any notice, order or demand from the Environmental Protection Agency or any other Federal, state or local agency under any Environmental Law; (4) have incurred

any liability under any Environmental Law in connection with the mismanagement, improper disposal or release of Hazardous Materials; or (5) are aware of any inspection or investigation of any Controlled Property or Abutting Property by any Federal, state or local agency for possible violations of any Environmental Law.

To the best of Borrower's knowledge, neither Borrower, nor any prior owner or tenant of any Controlled Property, committed or omitted any act which caused the release of Hazardous Materials on such Controlled Property which could give rise to a lien thereon by any Federal, state or local government. No notice or statement of claim or lien affecting any Controlled Property has been recorded or filed in any public records by any Federal, state or local government for costs, penalties, fines or other charges as to such property. All notices, permits, licenses or similar authorizations, if any, required to be obtained or filed in connection with the ownership, operation, or use of the Controlled Property, including without limitation, the past or present generation, treatment, storage, disposal or release of any Hazardous Materials into the environment, have been duly obtained or filed.

Borrower agrees to indemnify and hold Lender harmless from all liability, loss, cost, damage and expense, including attorney fees and costs of litigation, arising from any and all of its violations of any Environmental Law (including those arising from any lien by any Federal, state or local government arising from the presence of Hazardous Materials) or from the presence of Hazardous Materials located on or emanating from any Controlled Property or Abutting Property whether existing or not existing and whether known or unknown at the time of the execution hereof and regardless of whether or not caused by, or within the control of Borrower. Borrower further agrees to reimburse Lender upon demand for any costs incurred by Lender in connection with the foregoing. Borrower agrees that its obligations hereunder shall be continuous and shall survive the repayment of all debts to Lender and shall continue so long as a valid claim may be lawfully asserted against Lender.

The term *"Hazardous Materials"* includes but is not limited to any and all substances (whether solid, liquid or gas) defined, listed, or otherwise classified as pollutants, hazardous wastes, hazardous substances, hazardous materials, extremely hazardous wastes, or words of similar meaning or regulatory effect under any present or future Environmental Law or that may have a negative impact on human health or the environment, including but not limited to petroleum and petroleum products, asbestos and asbestos-containing materials, polychlorinated biphenyls, lead, radon, radioactive materials, flammables and explosives.

The term *"Environmental Law"* means any present and future Federal, state and local laws, statutes, ordinances, rules, regulations and the like, as well as common law, relating to protection of human health or the environment, relating to Hazardous Materials, relating to liability for or costs of remediation or prevention of releases of Hazardous Materials or relating to liability for or costs of other actual or threatened danger to human health or the environment. The term Environmental Law includes, but is not limited to, the following statutes, as amended, any successor thereto, and any regulations promulgated pursuant thereto, and any state or local statutes, ordinances, rules, regulations and the like addressing similar issues: the *Comprehensive Environmental Response, Compensation and Liability Act*; the *Emergency Planning and Community Right-to-Know Act*; the *Hazardous Materials Transportation Act*; the *Resource Conservation and Recovery Act* (including but not limited to Subtitle I relating to underground storage tanks); the *Solid Waste Disposal Act*; the *Clean Water Act*; the *Clean Air Act*; the *Toxic Substances Control Act*; the *Safe Drinking Water Act*; the *Occupational Safety and Health Act*; the *Federal Water Pollution Control Act*; the *Federal Insecticide, Fungicide and Rodenticide Act*; the *Endangered Species Act*; the *National Environmental Policy Act*; the *River and Harbors Appropriation Act*; and 35 *PaCSA* Chapter 29J.

## 4. AFFIRMATIVE COVENANTS

**4.1 Payments and Performance.** Borrower will duly and punctually pay all Obligations becoming due to Lender and will duly and punctually perform all Obligations on its part to be done or performed under this Agreement.

**4.2 Books and Records; Inspection.** Borrower will at all times keep proper books of account in which full, true and correct entries will be made of its transactions in accordance with generally accepted accounting principles, consistently applied and which are, in the opinion of a Certified Public Accountant acceptable to Lender, adequate to determine fairly the financial condition and the results of operations of Borrower. Borrower will at all reasonable times make its books and records available in its offices for inspection, examination and duplication by Lender and Lender's representatives and will permit inspection of all of its properties by Lender and Lender's representatives. Borrower will from time to time furnish Lender with such information and statements as Lender may request in its sole discretion with respect to the Obligations.

**4.3 Financial Statements.** Borrower will furnish to Lender:

(A) from time to time, such financial data and information about Borrower as Lender may reasonably request; and

(B) any financial data and information about any guarantors of the Obligations as Lender may reasonably request.

**4.4 Conduct of Business.** The Borrower will maintain its existence in good standing and comply with all laws and regulations of the United States and of any state or states thereof and of any political subdivision thereof, and of any governmental authority which may be applicable to it or to its business; provided that this covenant shall not apply to any tax, assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

**4.5 Contact with Accountant.** The Borrower hereby authorizes Lender to directly contact and communicate with any accountant employed by Borrower in connection with the review and/or maintenance of Borrower's books and records or preparation of any financial reports delivered by or at the request of Borrower to Lender.

**4.6 Taxes.** Borrower will promptly pay all real and personal property taxes, assessments and charges and all franchise, income, unemployment, retirement benefits, withholding, sales and other taxes assessed against it or payable by it before delinquent; provided that this covenant shall not apply to any tax assessment or charge which is being contested in good faith and with respect to which reserves have been established and are being maintained.

**4.7 Maintenance.** Borrower will keep and maintain its properties, if any, in good repair, working order and condition. Borrower will immediately notify Lender of any loss or damage to or any occurrence which would adversely affect the value of any such property.

**4.8 Insurance.** Borrower will maintain in force property and casualty insurance on any property of the Borrower, if any, against risks customarily insured against by companies engaged in businesses similar to that of the Borrower containing such terms and written by such companies as may be satisfactory to Lender, such insurance to be payable to Lender as its interest may appear in the event of loss and to name Lender as insured pursuant to a standard loss payee clause; no loss shall be adjusted thereunder without Lender's approval; and all such policies shall provide that they may not be canceled without first giving at least **thirty (30)** days written notice of cancellation to Lender. In the event that the Borrower fails to provide evidence of such insurance, Lender may, at its option, secure such insurance and charge the cost thereof to the Borrower. At the option of Lender, all insurance proceeds received from any loss or damage to any property shall be applied either to the replacement or repair thereof or as a payment on account of the Obligations. From and after the occurrence of an Event of Default, Lender is authorized to cancel any insurance maintained hereunder and apply any returned or unearned premiums, all of which are hereby assigned to Lender, as a payment on account of the Obligations.

**4.9 Notification of Default.** Immediately upon becoming aware of the existence of any condition or event which constitutes an Event of Default, or any condition or event which would upon notice or lapse of time, or both, constitute an Event of Default, the Borrower shall give Lender written notice thereof specifying the nature and duration thereof and the action being or proposed to be taken with respect thereto.

**4.10 Notification of Material Litigation.** Borrower will immediately notify Lender in writing of any litigation or of any investigative proceedings of a governmental agency or authority commenced or threatened against it which would or might be materially adverse to the financial condition of Borrower or any guarantor of the Obligations.

**4.11 Pension Plans.** With respect to any pension or benefit plan maintained by Borrower, or to which Borrower contributes (*"Plan"*), the benefits under which are guaranteed, in whole or in part, by the Pension Benefit Guaranty Corporation created by the *Employee Retirement Income Security Act of 1974*, P.L. 93-406, as amended (*"ERISA"*) or any governmental authority succeeding to any or all of the functions of the Pension Benefit Guaranty Corporation (*"Pension Benefit Guaranty Corporation"*), Borrower will (a) fund each Plan as required by the provisions of Section 412 of the *Internal Revenue Code* of 1986, as amended; (b) cause each Plan to pay all benefits when due; (c) furnish Lender (i) promptly with a copy of any notice of each Plan's termination sent to the Pension Benefit Guaranty Corporation (ii) no later than the date of submission to the Department of Labor or to the Internal Revenue Service, as the case may be, a copy of any request for waiver from the funding standards or extension of the amortization periods required by Section 412 of the Internal Revenue Code of 1986, as amended and (iii) notice

of any Reportable Event as such term is defined in ERISA; and (d) subscribe to any contingent liability insurance provided by the Pension Benefit Guaranty Corporation to protect against employer liability upon termination of a guaranteed pension plan, if available to Borrower.

## 5. NEGATIVE COVENANTS

**5.1 Sale of Interest.** There shall not be any sale or transfer of ownership of any interest in the Borrower without Lender's prior written consent unless such transfer shall not result in change in control of Borrower.

**5.2 Merger.** Borrower shall not merge or consolidate or be merged or consolidated with or into any other entity.

**5.3 Sale of Assets.** The Borrower shall not sell, lease or otherwise dispose of any of its assets, except in the ordinary and usual course of business and except for the purpose of replacing machinery, equipment or other personal property which, as a consequence of wear, duplication or obsolescence, is no longer used or necessary in the Borrower's business, provided that fair consideration is received therefor; provided, however, in no event shall the Borrower sell, lease or otherwise dispose of any equipment purchased with the proceeds of any loans made by Lender.

**5.4 Change of Name, etc.** Borrower shall not change its legal name or the State or the type of its formation, without giving Lender at least 30 days prior written notice thereof.

**5.5 Drug-Related Activities.** Borrower shall not enter into, consent to or permit any lease, sublease, license or other agreement relating to, or otherwise permit the use or occupancy of, the Controlled Property for a Controlled Substances Use (defined below) or in any manner that violates or could violate any Controlled Substances Laws (defined below), including, without limitation, any business, communications, financial transactions or other activities related to Controlled Substances or a Controlled Substances Use (defined below) that violate or could violate any Controlled Substances Laws (collectively, *"Drug-Related Activities"*). Borrower and its affiliates shall not engage in any Drug-Related Activities, and Borrower shall not make any payments to Lender from funds derived from Drug-Related Activities. Borrower shall provide to Lender, from time to time, within (10) ten days after Lender's request therefor, any information that Lender requests in its reasonable discretion, relating to compliance with this Section 5.5. Borrower shall include in all leases and other agreements for use and occupancy of the Controlled Property, provisions that (i) prohibit any Controlled Substance Use or Drug-Related Activities on the Controlled Property, and (ii) permit the Lender to make physical inspections of the Controlled Property upon the request of the Lender.

The term *"Controlled Substances Laws"* means the *"Federal Controlled Substances Act"* (21 U.S.C. §801 et seq.) or any other similar or related federal, state or local law, ordinance, code, rule, regulation or order;

The term *"Controlled Substances"* means marijuana, cannabis or other controlled substances as defined in the Federal Controlled Substances Act or that otherwise are illegal or regulated under any Controlled Substances Laws;

The term *"Controlled Substances Use"* means any cultivation, growth, creation, production, manufacture, sale, distribution, storage, handling, possession or 54631439 other use of a Controlled Substance in violation of any Controlled Substances Laws.

The provisions of this Section 5.5 shall apply notwithstanding any state or local law permitting the Controlled Substances Use or Drug-Related Activities. Notwithstanding any provision in this Agreement or any other Loan Document evidencing or securing the Obligations to the contrary, no direct or indirect disclosure by Borrower to Lender or any person affiliated with Lender, and no knowledge of Lender or any person affiliated with the Lender, of the existence of any Drug Related Activities or Controlled Substance Use on, in or about the Controlled Property shall estop Lender or waive any right of Lender to invoke any remedy under the documents and instruments evidencing and/or securing the Obligations for violation of any provision hereof related to the prohibition of any Drug Related Activities or Controlled Substance Use on, in or about the Controlled Property. The foregoing shall apply notwithstanding the receipt or execution of an estoppel certificate or subordination, non-disturbance or attornment agreement or other document from or with any tenant of Borrower engaged in such prohibited activity."

## 6. DEFAULT

**6.1 Default.** *"Event of Default"* shall mean the occurrence of one or more of any of the following events:

(A) default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor of the Obligations to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor of the Obligations under any other Loan Document or any other agreement with Lender;

(B) failure of the Borrower or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to Lender;

(C) default of any material liability, obligation or undertaking of the Borrower or any guarantor of the Obligations to any other party;

(D) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor of the Obligations in connection with this Agreement or in any supporting financial statement of the Borrower or any guarantor of the Obligations shall be determined by Lender to have been false or misleading in any material respect when made;

(E) if the Borrower or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(F) the death of the Borrower or any guarantor of the Obligations, and, if the Borrower or any guarantor of the Obligations, is a partnership or limited liability company, the death of any partner or member;

(G) the institution by or against the Borrower or any guarantor of the Obligations of any proceedings under the *Bankruptcy Code 11* USC §101 *et seq.* or any other law in which the Borrower or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(H) the service upon Lender of a writ in which Lender is named as trustee of the Borrower or any guarantor of the Obligations;

(I) a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(J) any levy, lien (including mechanics lien) except as permitted under the Loan Documents, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor of the Obligations;

(K) the termination or revocation of any guaranty of the Obligations; or

(L) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor of the Obligations to Lender has been or may be impaired.

**6.2 Acceleration.** If an Event of Default shall occur, at the election of Lender, all Obligations shall become immediately due and payable without notice or demand, except with respect to Obligations payable on DEMAND, which shall be due and payable on DEMAND, whether or not an Event of Default has occurred.

**6.3 Nonexclusive Remedies.** All of Lender's rights and remedies not only under the provisions of this Agreement but also under any other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

## 7. MISCELLANEOUS

**7.1 Waivers.** The Borrower waives notice of intent to accelerate, notice of acceleration, notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations, and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof.

**7.2 Waiver of Homestead.** To the maximum extent permitted under applicable law, the Borrower hereby waives and terminates any homestead rights and/or exemptions respecting any of its property under the provisions of any applicable homestead laws, including without limitation, Title 42, Section 8123, of the *Pennsylvania Consolidated Statutes Annotated*.

**7.3 Deposit Collateral.** The Borrower hereby grants to Lender a continuing lien and security interest in any and all deposits or other sums at any time credited by or due from Lender to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of Lender, whether for safekeeping or otherwise, or in transit to or from Lender (regardless of the reason Lender had received the same or whether Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Lender.

**7.4 Indemnification.** The Borrower shall indemnify, defend and hold Lender and its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless of and from any claim brought or threatened against any Indemnitee by the Borrower, any guarantor or endorser of the Obligations, or any other person (as well as from reasonable attorneys' fees and expenses in connection therewith) on account of Lender's relationship with the Borrower, or any guarantor or endorser of the Obligations (each of which may be defended, compromised, settled or pursued by Lender with counsel of Lender's election, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of Lender. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Lender in favor of the Borrower.

**7.5 Costs and Expenses.** The Borrower shall pay to Lender on demand any and all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements, court costs, litigation and other expenses) incurred or paid by Lender in establishing, maintaining, protecting or enforcing any of Lender's rights or the Obligations, including, without limitation, any and all such costs and expenses incurred or paid by Lender in defending Lender's security interest in, title or right to any collateral or in collecting or attempting to collect or enforcing or attempting to enforce payment of any Obligation.

**7.6 Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which shall constitute but one agreement.

**7.7 Severability.** If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

**7.8 Complete Agreement.** This Agreement and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

**7.9 Binding Effect of Agreement.** This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until released in writing by Lender. Lender may transfer and assign this Agreement and deliver it to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Agreement. The Borrower may not assign or transfer any of its rights or obligations under this Agreement. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Agreement or the other Loan Documents.

**7.10 Further Assurances.** Borrower will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other or further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Agreement and the other Loan Documents (including, without limitation, to correct clerical errors) or to comply with applicable statute or law.

**7.11 Amendments and Waivers.** This Agreement may be amended and Borrower may take any action herein prohibited, or omit to perform any act herein required to be performed by it, if Borrower shall obtain Lender's prior written consent to each such amendment, action or omission to act. No course of dealing and no delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or any other right and waiver on any one or more occasions shall not be construed as a bar to or waiver of any right or remedy of Lender on any future occasion.

**7.12 Terms of Agreement.** This Agreement shall continue in full force and effect so long as any Obligations or obligation of Borrower to Lender shall be outstanding, or Lender shall have any obligation to extend any financial accommodation hereunder, and is supplementary to each and every other agreement between Borrower and Lender and shall not be so construed as to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Borrower under any such agreement, nor shall any contemporaneous or subsequent agreement between Borrower and Lender be construed to limit or otherwise derogate from any of the rights or remedies of Lender or any of the liabilities, obligations or undertakings of Borrower hereunder, unless such other agreement specifically refers to this Agreement and expressly so provides.

**7.13 Notices.** Any notices under or pursuant to this Agreement shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Lender at the address set forth in this Agreement or as any party may from time to time designate by written notice to the other party.

**7.14 Governing Law.** This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania.

**7.15 Reproductions.** This Agreement and all documents which have been or may be hereinafter furnished by Borrower to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

**7.16 Jurisdiction and Venue.** Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Pennsylvania, over any suit, action or proceeding arising out of or relating to this Agreement. Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum.

Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's address shown in this Agreement or as notified to Lender or (ii) by serving the same upon the Borrower in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower.

**7.17 JURY WAIVER. THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS AGREEMENT, THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

## Signatures

Executed under seal as of July 30, 2021. This is a contract under seal and may be enforced under *42 Pa.C.S.* Section 5529(b).

**Borrower**

**DDH FUND, LP**
*a Delaware limited partnership*

**DDH CAPITAL MANAGEMENT, LLC**
*a Florida limited liability company, General Partner*

7/30/2021

**Brandon Mendenhall** Date
*Manager*

**Velocity Commercial Capital, LLC**
*a California Limited Liability Company*

Date

# EXHIBIT "B"

velocity
commercial capital

# Term Note

Loan No. [redacted]2372

**July 30, 2021**

**$258,750.00**

## 1. Promise to Pay

For value received, the undersigned, **DDH FUND, LP, a Delaware limited partnership**, with an address of **16192 Coastal Highway, Lewes, DE 19958** (the *"Borrower"*), promises to pay to the order of Velocity Commercial Capital, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Road, Suite 295, Westlake Village, CA 91362 (together with its successors and assigns, the *"Lender"*), the principal amount of **Two hundred fifty eight thousand seven hundred fifty and 00/100 dollars ($258,750.00)** on or before **August 1, 2051** (the *"Maturity Date"*), as set forth below, together with interest from the date hereof on the unpaid principal balance from time to time outstanding until paid in full. The Borrower shall pay consecutive monthly installments of principal and interest, as follows: **$1,719.73** commencing on **September 1, 2021**, and the same amount (except the last installment which shall be the unpaid balance) on the 1st day of each month thereafter. The aggregate principal balance outstanding shall bear interest thereon at a per annum rate equal to **6.99%**.

## 2. Amortization Period

The calculation of the payment amount is based on a **360 month** amortization period.

## 3. Payment Delivery; Interest Accrual Basis

Principal and interest shall be payable at Lender's main office or at such other place as Lender may designate in writing in immediately available funds in lawful money of the United States of America without set-off, deduction or counterclaim. Interest shall be calculated monthly on the basis of a 360-day year based on twelve (12) thirty (30) day months except that interest due and payable for a period of less than a full month shall be calculated by multiplying the actual number of days elapsed in such period by a daily rate based on said 360-day year.

## 4. Prepayment Penalty

This Note may be prepaid in whole or in part upon thirty (30) days prior written notice to Lender. In the event of any prepayment of this Note at any time through August 1, 2028 (the *"Prepayment Charge Expiration Date"*) whether by voluntary prepayment, acceleration or otherwise, the Borrower shall, at the option of Lender, pay a *"fixed rate prepayment charge"* equal to the product of (a) the principal amount so prepaid and (b) the percentage set forth in the table below for any prepayment made during the indicated period. No Prepayment Premium will be due if (a) prior to the Prepayment Charge Expiration Date, a prepayment amount received plus all other prepayment amounts received in the most recent 12 months is not greater than 20% of the Principal Amount of the Note, or (b) a prepayment is made in whole or in part after the Prepayment Charge Expiration Date.

For all purposes including the accrual of interest, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of the month.

| Period | Percentage |
|---|---|
| September 1, 2021 - August 1, 2022 | 5% |
| September 1, 2022 - August 1, 2023 | 4% |
| September 1, 2023 - August 1, 2024 | 3% |
| September 1, 2024 - August 1, 2025 | 2% |

| | |
|---|---|
| September 1, 2025 - August 1, 2026 | 1% |
| September 1, 2026 - August 1, 2027 | 1% |
| September 1, 2027 - August 1, 2028 | 1% |

After the last period indicated in the above table this Note may be prepaid in whole or in part without any prepayment charge.

## 5. Default

At the option of Lender, this Note shall become immediately due and payable without notice or demand upon the occurrence at any time of any of the following events of default (each, an *"Event of Default"*): (1) default of any liability, obligation, covenant or undertaking of the Borrower or any guarantor hereof to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Borrower or any guarantor hereof under any other loan document delivered by the Borrower or any guarantor, or in connection with the loan evidenced by this Note or any other agreement by the Borrower or any guarantor with Lender; (2) failure of the Borrower or any guarantor hereof to maintain aggregate collateral security value satisfactory to Lender; (3) default of any material liability, obligation or undertaking of the Borrower or any guarantor hereof to any other party; (4) if any statement, representation or warranty heretofore, now or hereafter made by the Borrower or any guarantor hereof in connection with the loan evidenced by this Note or in any supporting financial statement of the Borrower or any guarantor hereof shall be determined by Lender to have been false or misleading in any material respect when made; (5) if the Borrower or any guarantor hereof is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property; (6) the death of the Borrower or any guarantor hereof and, if the Borrower or any guarantor hereof is a partnership or limited liability company, the death of any partner or member; (7) the institution by or against the Borrower or any guarantor hereof of any proceedings under the Bankruptcy Code 11 USC §101 *et seq.* or any other law in which the Borrower or any guarantor hereof is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Borrower or any guarantor hereof of an assignment for the benefit of creditors or the granting by the Borrower or any guarantor hereof of a trust mortgage for the benefit of creditors; (8) the service upon Lender of a writ in which Lender is named as trustee of the Borrower or any guarantor hereof; (9) a judgment or judgments for the payment of money shall be rendered against the Borrower or any guarantor hereof, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution; (10) any levy, lien (including mechanics lien) except as permitted under any of the other loan documents between Lender and the Borrower, seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Borrower or any guarantor hereof; (11) the termination or revocation of any guaranty hereof; (12) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Borrower or any guarantor hereof; or (13) the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Borrower or any guarantor hereof to Lender has been or may be impaired.

## 6. Confession of Judgment

**BORROWER HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR ATTORNEYS OR THE PROTHONOTARY OR CLERK OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR IN ANY OTHER JURISDICTION, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, TO APPEAR FOR BORROWER IN ANY SUCH COURT, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM OR TIME THERE OR ELSEWHERE TO BE HELD AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER IN FAVOR OF LENDER FOR ALL SUMS DUE OR TO BECOME DUE BY BORROWER TO LENDER UNDER THIS NOTE, WITH COSTS OF SUIT AND RELEASE OF ERRORS AND WITH THE GREATER OF FIVE PERCENT (5%) OF SUCH SUMS OR $10,000 ADDED AS A REASONABLE ATTORNEY'S FEE AND FOR DOING SO THIS NOTE OR A COPY VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. SUCH AUTHORITY AND POWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE THEREOF, AND JUDGMENT MAY BE CONFESSED AS AFORESAID FROM TIME TO TIME AS OFTEN AS THERE IS OCCASION THEREFOR.**

**BORROWER ACKNOWLEDGES THAT IT HAS BEEN OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY COUNSEL IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS NOTE AND THAT IT KNOWINGLY WAIVES ITS RIGHT TO BE HEARD PRIOR TO THE ENTRY OF SUCH**

**JUDGMENT AND UNDERSTANDS THAT, UPON SUCH ENTRY, SUCH JUDGMENT SHALL BECOME A LIEN ON ALL REAL PROPERTY OF BORROWER IN THE COUNTY WHERE SUCH JUDGMENT IS ENTERED.**

## 7. How Payments Are Applied

Notwithstanding the foregoing, any payments received after the occurrence and during the continuance of an Event of Default shall be applied in such manner as Lender may determine. The Borrower hereby authorizes Lender to charge any deposit account which the Borrower may maintain with Lender for any payment required hereunder without prior notice to the Borrower.

## 8. Interest Rate Not To Exceed Legal Limit

If pursuant to the terms of this Note, the Borrower is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidenced by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

## 9. Business/Commercial Purpose

**The Borrower represents to Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.**

## 10. Lien and Setoff

The Borrower grants to Lender a continuing lien on and security interest in any and all deposits or other sums at any time credited by or due from Lender to the Borrower and any cash, securities, instruments or other property of the Borrower in the possession of Lender, whether for safekeeping or otherwise, or in transit to or from Lender (regardless of the reason Lender had received the same or whether Lender has conditionally released the same) as security for the full and punctual payment and performance of all of the liabilities and obligations of the Borrower to Lender and such deposits and other sums may be applied or set off against such liabilities and obligations of the Borrower to Lender at any time, whether or not such are then due, whether or not demand has been made and whether or not other collateral is then available to Lender.

## 11. Waivers

No delay or omission on the part of Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right of Lender, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The Borrower and any other party obligated on account of this Note by contract, by operation of law or otherwise (the Borrower and each Borrower, if more than one, and each such other party, an *"Obligor"*) regardless of the time, order or place of signing, waive presentment, demand, protest, notice of intent to accelerate, notice of acceleration and all other notices of every kind in connection with the delivery, acceptance, performance or enforcement of this Note and assent to any extension or postponement of the time of payment or any other indulgence, to any substitution, exchange or release of collateral, and to the addition or release of any other party or person primarily or secondarily liable and waive all recourse to suretyship and guarantor defenses generally, including any defense based on impairment of collateral. To the maximum extent permitted by law, the Borrower waives and terminates any homestead rights and/or exemptions respecting any premises under the provisions of any applicable homestead laws, including without limitation, Title 42, Section 8123, of the *Pennsylvania Consolidated Statutes Annotated.*

Borrower hereby waives and releases all errors, defects and imperfections in any proceedings instituted by Lender under the terms of this Note or any other loan documents, as well as all benefits that might accrue to the Borrower by virtue of any present or future laws exempting any property, real or personal, or any part of the proceeds arising from any sale of such property, from attachment, levy or sale under execution or providing for any stay of execution, exemption from civil process or extension of time for payment, as well as the right of inquisition on any real estate that may be levied upon under a judgment obtained by virtue hereof, and Borrower hereby voluntarily condemns the same and authorizes the entry of such voluntary condemnation on any writ of execution issued thereon, and agrees that such real estate may be sold upon any such writ in whole or in part in any order desired by Lender.

## 12. Indemnification

The Borrower shall indemnify, defend and hold Lender and its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless against any claim brought or threatened against any Indemnitee by the Borrower or by any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of Lender's relationship with the Borrower (each of which may be defended, compromised, settled or pursued by Lender with counsel of Lender's selection, but at the expense of the Borrower), except for any claim arising out of the gross negligence or willful misconduct of Lender.

## 13. Costs and Expenses, Default Rate, Late Charge

The Borrower agrees to pay, upon demand, costs of collection of all amounts under this Note including, without limitation, principal and interest, or in connection with the enforcement of, or realization on, any security for this Note, including, without limitation, to the extent permitted by applicable law, reasonable attorneys' fees and expenses. Upon the occurrence and during the continuance of an Event of Default, interest shall accrue at a rate per annum equal to the aggregate of 4% plus the rate provided for herein. If any payment due under this Note is unpaid for 10 days or more, the Borrower shall pay, in addition to any other sums due under this Note (and without limiting Lender's other remedies on account thereof), a late charge equal to 5% of such unpaid amount.

## 14. Binding Effect, Joint and Several Liability, Complete Agreement

This Note shall be binding upon the Borrower and upon its heirs, successors, assigns and legal representatives, and shall inure to the benefit of Lender and its successors, endorsees and assigns.

The liabilities of the Borrower and each Borrower, if more than one, and any Obligor are joint and several; provided, however, the release by Lender of the Borrower or any one or more Obligors shall not release any other person obligated on account of this Note. Any and all present and future debts of the Borrower to any Obligor are subordinated to the full payment and performance of all present and future debts and obligations of the Borrower to Lender. Each reference in this Note to the Borrower and each Borrower, if more than one, and Obligor, is to such person individually and also to all such persons jointly. No person obligated on account of this Note may seek contribution from any other person also obligated, unless and until all liabilities, obligations and indebtedness to Lender of the person from whom contribution is sought have been irrevocably satisfied in full. The release or compromise by Lender of any collateral shall not release any person obligated on account of this Note.

The Borrower authorizes Lender to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note may be made by Lender, and any such reproduction shall be admissible in evidence with the same effect as the original itself in any judicial or administrative proceeding, whether or not the original is in existence.

## 15. Further Assurances

The Borrower will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Note or any other loan documents related thereto (including, without limitation, to correct clerical errors) or to vest more fully in or assure to Lender the security interest in any collateral securing this Note or to comply with applicable statute or law.

## 16. Governing Law

This Note shall be governed by the laws of the Commonwealth of Pennsylvania.

## 17. Section Headings

Section headings are for reference only and are not intended to affect the interpretation of the provisions of this Note.

## 18. Notices

Any notices under or pursuant to this Note shall be deemed duly received and effective if delivered in hand to any officer or agent of the Borrower or Bank, or if mailed by registered or certified mail, return receipt requested, addressed to the Borrower or Bank at the address set forth in this Note or as any party may from time to time designate by written notice to the other party.

### 19. Jurisdiction and Venue

The Borrower irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Pennsylvania, over any suit, action or proceeding arising out of or relating to this Note. The Borrower irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Borrower hereby consents to any and all process which may be served in any such suit, action or proceeding, (i) by mailing a copy thereof by registered and certified mail, postage prepaid, return receipt requested, to the Borrower's, address shown in the records of Lender or (ii) by serving the same upon the Borrower(s) in any other manner otherwise permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Borrower.

### 20. Waiver of Jury Trial

**THE BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVES ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER TO LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN, WAIVED. THE BORROWER AND LENDER EACH CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.**

### 21. Notice Regarding Confession of Judgment Provision

## CONFESSION OF JUDGMENT

**THE TERMS OF THIS NOTE INCLUDE A WARRANT OF ATTORNEY TO CONFESS JUDGMENT AND HAVE BEEN NEGOTIATED AND AGREED UPON IN A COMMERCIAL CONTEXT. BORROWER HAS FULLY REVIEWED THE WARRANT OF ATTORNEY TO CONFESS JUDGMENT WITH ITS OWN COUNSEL, AND IS KNOWINGLY AND VOLUNTARILY WAIVING CERTAIN RIGHTS IT WOULD OTHERWISE POSSESS, INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO ANY NOTICE OF A HEARING PRIOR TO THE ENTRY OF JUDGMENT BY LENDER PURSUANT TO THE FOREGOING WARRANT.**

### SIGNATURES

Executed under seal as of July 30, 2021. This is a contract under seal and may be enforced under *42 Pa.C.S.* Section 5529(b).

**Borrower**

**DDH FUND, LP**
*a Delaware limited partnership*

**DDH CAPITAL MANAGEMENT, LLC**
*a Florida limited liability company, General Partner*

[signature] 7/30/2021

**Brandon Mendenhall** Date
*Manager*

# ALLONGE TO PROMISSORY NOTE

This instrument is an Allonge that shall be attached to and made a part of a certain Promissory Note, dated July 30, 2021, executed by DDH FUND, LP in favor of Velocity Commercial Capital, LLC (the "Lender").

Pay to the order of ________________________________________ without recourse.

**Velocity Commercial Capital, LLC, a California Limited Liability Company**

________________________________________________
**Michelle Byron** **Date**
*Post-Closing Manager*

# ALLONGE TO PROMISSORY NOTE

Allonge to $258,750.00 Promissory Note dated July 30, 2021, executed by Ddh Fund Lp, as Borrower, in favor of Velocity Commercial Capital, LLC, as Lender

PAY TO THE ORDER OF U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3
WITHOUT RECOURSE

Dated as of 01/11/2023

**Velocity Commercial Capital, LLC, a California Limited Liability Company**

By: ______________________________

Name: Ryan Wise

Title: Director, Capital Markets

Loan Number: [redacted]2372

# EXHIBIT "C"

# DO NOT DETACH

| | |
|---|---|
| 8259615-0018<br><br>ument Number: 2021072811<br>age: RECORD BK 6744 PG 5269<br>ed Date: 09/23/2021 9:30:04 AM | **Robert A. Auclair, Esq.**<br>Delaware County Recorder of Deeds<br>Government Center, Room 107<br>201 W. Front Street<br>Media, PA 19063<br>610-891-4152 |
| **ber:** 880899<br>tem<br>MORTGAGE<br>**ount:** : 23 | **Return To (Simplifile):**<br>J & A Abstract, Inc<br>347 2ND STREET PIKE STE 1<br>SOUTHAMPTON, PA 18966-3831 |
| )2813-00 | |
| ES: $37.50<br>OUSING FEE: $16.00<br>/EMENT FUND: $5.00<br>$15.00<br>$40.25<br>GE FEE: $38.00<br>GE FEE (AFF): $38.00<br>$0.50<br><br>$190.25<br><br>$190.25<br><br>$0.00 | **Instrument Number:** 2021072811<br>**Volume/Page:** RECORD BK 6744 PG 5269<br>**Recorded Date:** 09/23/2021 9:30:04 AM |

**OFFICIAL RECORDING COVER PAGE**

# DO NOT DETACH

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
ument data differs from this cover sheet, please first check the document on our website to ensure it has been corrected. The document data always supersedes the cover page.
n error on the cover page appears on our website after review please let our office know.
DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

**Prepared By:** Ashleigh Ramirez
30699 Russell Ranch Rd, Ste. 295
Westlake Village, CA 91362

**Return To:** Velocity Commercial
Capital, LLC
PO Box 7089
Westlake Village, CA 91359 - 7089

**Premises:** 9000 West Chester Pike,
Upper Darby, PA 19082-2606

---

# Open-End Mortgage

## Commercial Mortgage, Security Agreement and Assignment of Leases and Rents

**THIS INSTRUMENT SECURES FUTURE ADVANCES UP TO A MAXIMUM PRINCIPAL AMOUNT OF $258,750.00 PLUS ACCRUED INTEREST AND OTHER INDEBTEDNESS AS DESCRIBED IN PENNSYLVANIA ACT NO. 42 *PA. C.S.A.* SECTION 8143**

---

*VALID AS OF AUGUST 2nd, 2021*

This OPEN-END COMMERCIAL MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS (this *"Mortgage"*) is entered into as of July 30, 2021, between DDH FUND, LP, a Delaware limited partnership, with an address of 16192 Coastal Highway, Lewes, Delaware 19958 (the *"Mortgagor"*) and Velocity Commercial Capital, LLC, a California Limited Liability Company, with an address of 30699 Russell Ranch Road, Suite 295, Westlake Village, California 91362 (the *"Lender"*).

The real property which is the subject matter of this Mortgage has the following address(es): 9000 West Chester Pike, Upper Darby, Pennsylvania 19082-2606 (the *"Address(es)"*).

### 1. Mortgage, Obligations and Future Advances

**1.1 Mortgage.** For valuable consideration paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor hereby irrevocably and unconditionally mortgages, grants, bargains, transfers, sells, conveys, sets over and assigns to Lender and its successors and assigns forever, all of Mortgagor's right, title and interest in



-- [redacted] 2372

and to the Property described below, to secure the prompt payment and performance of the Obligations (as hereinafter defined), including without limitation, all amounts due and owing to Lender and all obligations respecting that certain Term Note, dated July 30, 2021, by DDH FUND, LP in favor of Lender in the original principal amount of $258,750.00 (the *"Note"*; and collectively, along with all other agreements, documents, certificates and instruments delivered in connection therewith, the *"Loan Documents"*), and any substitutions, modifications, extensions or amendments to any of the Loan Documents.

**1.2 Security Interest in Property.** As continuing security for the Obligations (as hereafter defined) the Mortgagor hereby pledges, assigns and grants to the Lender, and its successors and assigns, a security interest in any of the Property (as hereinafter defined) constituting personal property or fixtures. This Mortgage is and shall be deemed to be a security agreement and financing statement pursuant to the terms of the *Uniform Commercial Code of Pennsylvania* (the *"Uniform Commercial Code"*) as to any and all personal property and fixtures and as to all such property the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code in addition to its rights hereunder. This Mortgage constitutes a financing statement filed as a fixture filing under Section 9-502(c) of the Uniform Commercial Code covering any Property which now is or later may become a fixture.

**1.3 Collateral Assignment of Leases and Rents.** The Mortgagor hereby irrevocably and unconditionally assigns to Lender, and its successors and assigns, as collateral security for the Obligations all of the Mortgagor's rights and benefits under any and all Leases (as hereinafter defined) and any and all rents and other amounts now or hereafter owing with respect to the Leases or the use or occupancy of the Property. This collateral assignment shall be absolute and effective immediately, but the Mortgagor shall have a license, revocable by Lender, to continue to collect rents owing under the Leases until an Event of Default (as hereinafter defined) occurs and Lender exercises its rights and remedies to collect such rents as set forth herein.

**1.4 Conditions to Grant.** Lender shall have and hold the above granted Property unto and to the use and benefit of Lender, and its successors and assigns, forever; provided, however, the conveyances, grants and assignments contained in this Mortgage are upon the express condition that, if Mortgagor shall irrevocably pay and perform the Obligations in full, including, without limitation, all principal, interest and premium thereon and other charges, if applicable, in accordance with the terms and conditions in the Loan Documents (as hereinafter defined) and this Mortgage, shall pay and perform all other Obligations as set forth in this Mortgage and shall abide by and comply with each and every covenant and condition set forth herein and in the Loan Documents, the conveyances, grants and assignments contained in this Mortgage shall be appropriately released and discharged.

**1.5 Property.** The term *"Property"*, as used in this Mortgage, shall mean that certain parcel of land and the fixtures, structures and improvements and all personal property constituting fixtures, as that term is defined in the *Uniform Commercial Code*, now or hereafter thereon located at the Address(es), as more particularly described in Exhibit A attached hereto, together with:



[redacted] 2372

(i) all rights now or hereafter existing, belonging, pertaining or appurtenant thereto; (ii) the following categories of assets as defined in the Uniform Commercial Code: goods (including inventory, equipment and any accessions thereto), instruments (including promissory notes), documents, accounts (including health-care-insurance receivables), chattel paper (whether tangible or electronic), deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities and all other investment property, general intangibles (including payment intangibles and software), supporting obligations and any and all proceeds of any thereof, whether now owned or hereafter acquired, that are located on or used in connection with, or that arise in whole or in part out of the Mortgagor's use of or business conducted on or respecting, the Property and any substitutions, replacements, accessions and proceeds of any of the foregoing; (iii) all judgments, awards of damages and settlements hereafter made as a result or in lieu of any Taking, as hereinafter defined; (iv) all of the rights and benefits of the Mortgagor under any present or future leases and agreements relating to the Property, including, without limitation, rents, issues and profits, or the use or occupancy thereof together with any extensions and renewals thereof, specifically excluding all duties or obligations of the Mortgagor of any kind arising thereunder (the *"Leases"*); and (v) all contracts, permits and licenses respecting the use, operation or maintenance of the Property.

**1.6 Obligations.** The term *"Obligation(s)"*, as used in this Mortgage, shall mean, without limitation, all loans, advances, indebtedness, notes, liabilities and amounts, liquidated or unliquidated, now or hereafter owing by the Mortgagor to Lender at any time, of each and every kind, nature and description, whether arising under this Mortgage or otherwise, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by the Mortgagor to Lender; or are due indirectly by the Mortgagor to Lender as endorser, guarantor or other surety, or as obligor of obligations due third persons which have been endorsed or assigned to Lender, or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted, including, without limitation, payment of $258,750.00 of the amounts outstanding pursuant to the terms of the Loan Documents as set forth herein. Said term shall also include all interest and other charges chargeable to the Mortgagor or due from the Mortgagor to Lender from time to time and all advances, costs and expenses referred to in this Mortgage, including without limitation the costs and expenses (including reasonable attorney's fees) of enforcement of Lender's rights hereunder or pursuant to any document or instrument executed in connection herewith.

**1.7 Cross-Collateral and Future Advances.** It is the express intention of the Mortgagor that this Mortgage secure payment and performance of all of the Obligations, whether now existing or hereinafter incurred by reason of future advances by Lender or otherwise, and regardless of whether such Obligations are or were contemplated by the parties at the time of the granting of this Mortgage. Notice of the continuing grant of this Mortgage shall not be required to be stated on the face of any document evidencing any of the Obligations, nor shall such documents be required to otherwise specify that they are secured hereby.



[redacted]2 3 7 ?

**1.8 Open-End Mortgage.** Lender and the Mortgagor agree that:

(A) This Mortgage is an open-end mortgage pursuant to 42 *PA. C.S.A.* § 8143, and secures, inter alia, present and future advances made by Lender pursuant to the Loan Documents, including, without limitation, advances for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred for the protection of the Property or the lien of this Mortgage, or expenses incurred by Lender by reason of default by the Mortgagor, and to enable any completion of the improvements comprising the Property as may be contemplated by the Loan Documents. Nothing contained herein shall impose any obligation on the part of Lender to make any such additional loan(s) to Mortgagor.

(B) Without limiting any other provisions of this Mortgage, this Mortgage secures present and future loans, advances and extensions of credit made by Lender to or for the benefit of Mortgagor, and the lien of such future advances shall relate back to the date of this Mortgage. This Mortgage shall also secure additional loans hereafter made by Lender to or for the benefit of Mortgagor. Nothing contained herein shall impose any obligation on the part of Lender to make any such additional loans, advances and extensions of credit to or for the benefit of Mortgagor.

(C) If the Mortgagor sends a written notice to Lender which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Lender to make any additional advances to Mortgagor, such notice shall be ineffective as to any future advances made to pay: (i) taxes, assessments, maintenance charges and insurance premiums; (ii) costs incurred for the protection of the Property or the lien of this Mortgage, (iii) expenses incurred by Lender by reason of the default of Mortgagor, (iv) any other costs incurred by Mortgagor to protect and preserve the Property and (v) for all or part of the cost of completing any erection, construction, alteration or repair of any part of the Property. It is the intention of the parties hereto that any such advances made by Lender after any such notice by Mortgagor shall be secured by the lien of this Mortgage on the Property.

## 2. Representations, Warranties, Covenants

**2.1 Representations and Warranties.** The Mortgagor represents and warrants that:

(A) This Mortgage has been duly executed and delivered by the Mortgagor and is the legal, valid and binding obligation of the Mortgagor enforceable in accordance with its terms, except as limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting the enforcement of creditors' rights generally;

(B) The Mortgagor is the sole legal owner of the Property, holding good and marketable fee simple title to the Property, subject to no liens, encumbrances, leases, security interests or rights of others, other than as set forth in detail in Exhibit B hereto (the *"Permitted Encumbrances"*);



[redacted]

(C) The Mortgagor is the sole legal owner of the entire lessor's interest in Leases, if any, with full power and authority to encumber the Property in the manner set forth herein, and the Mortgagor has not executed any other assignment of Leases or any of the rights or rents arising thereunder;

(D) As of the date hereof, there are no Hazardous Substances (as hereinafter defined) in, on or under the Property, except as disclosed in writing to and acknowledged by Lender; and

(E) Each Obligation is a commercial obligation and does not represent a loan used for personal, family or household purposes and is not a consumer transaction.

**2.2 Recording; Further Assurances.** The Mortgagor covenants that it shall, at its sole cost and expense and upon the request of Lender, cause this Mortgage, and each amendment, modification or supplement hereto, to be recorded and filed in such manner and in such places, and shall at all times comply with all such statutes and regulations as may be required by law in order to establish, preserve and protect the interest of Lender in the Property and the rights of Lender under this Mortgage. Mortgagor will from time to time execute and deliver to Lender such documents, and take or cause to be taken, all such other or further action, as Lender may request in order to effect and confirm or vest more securely in Lender all rights contemplated by this Mortgage (including, without limitation, to correct clerical errors) or to vest more fully in, or assure to Lender the security interest in, the Property or to comply with applicable statute or law. To the extent permitted by applicable law, Mortgagor authorizes Lender to file financing statements, continuation statements or amendments, and any such financing statements, continuation statements or amendments may be filed at any time in any jurisdiction. Lender may at any time and from time to time file financing statements, continuation statements and amendments thereto that describe the Property as defined in this Mortgage and which contain any other information required by Article 9 of the *Uniform Commercial Code* for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether Mortgagor is an organization, the type of organization and any organization identification number issued to Mortgagor; Mortgagor also authorizes Lender to file financing statements describing any agricultural liens or other statutory liens held by Lender. Mortgagor agrees to furnish any such information to Lender promptly upon request. In addition, Mortgagor shall at any time and from time to time, take such steps as Lender may reasonably request for Lender (i) to obtain an acknowledgment, in form and substance satisfactory to Lender, of any bailee having possession of any of the Property that the bailee holds such Property for Lender, and (ii) otherwise to insure the continued perfection and priority of Lender's security interest in any of the Property and the preservation of its rights therein. Mortgagor hereby constitutes Lender its attorney-in-fact to execute and file all filings required or so requested for the foregoing purposes, all acts of such attorney being hereby ratified and confirmed; and such power, being coupled with an interest, shall be irrevocable until this Mortgage terminates in accordance with its terms, all Obligations are paid in full and the Property is released.



- - [redacted] 377

**2.3 Restrictions on the Mortgagor.** The Mortgagor covenants that it will not, nor will it permit any other person to, directly or indirectly, without the prior written approval of Lender in each instance:

(A) Sell, convey, assign, transfer, mortgage, pledge, hypothecate, lease or dispose of all or any part of any legal or beneficial interest in the Mortgagor or the Property or any part thereof or permit any of the foregoing, except as expressly permitted by the terms of this Mortgage;

(B) Permit the use, generation, treatment, storage, release or disposition of any oil or other material or substance constituting hazardous waste or hazardous materials or substances under any applicable Federal or state law, regulation or rule (*"Hazardous Substances"*); or

(C) Permit to be created or suffer to exist any mortgage, lien, security interest, attachment or other encumbrance or charge on the Property or any part thereof or interest therein (except for the Permitted Encumbrances), including, without limitation, (i) any lien arising under any Federal, state or local statute, rule, regulation or law pertaining to the release or cleanup of Hazardous Substances and (ii) any mechanics' or materialmen's lien. The Mortgagor further agrees to give Lender prompt written notice of the imposition, or notice, of any lien referred to in this Section and to take any action necessary to secure the prompt discharge or release of the same. The Mortgagor agrees to defend its title to the Property and Lender's interest therein against the claims of all persons and, unless Lender requests otherwise, to appear in and diligently contest, at the Mortgagor's sole cost and expense, any action or proceeding that purports to affect the Mortgagor's title to the Property or the priority or validity of this Mortgage or Lender's interest hereunder.

**2.4 Operation of Property.** The Mortgagor covenants and agrees as follows:

(A) The Mortgagor will not permit the Property to be used for any unlawful or improper purpose, will at all times comply with all Federal, state and local laws, ordinances and regulations, and the provisions of any Lease, easement or other agreement affecting all or any part of the Property, and will obtain and maintain all governmental or other approvals relating to the Mortgagor, the Property or the use thereof, including without limitation, any applicable zoning or building codes or regulations and any laws or regulations relating to the handling, storage, release or cleanup of Hazardous Substances, and will give prompt written notice to Lender of (i) any violation of any such law, ordinance or regulation by the Mortgagor or relating to the Property, (ii) receipt of notice from any Federal, state or local authority alleging any such violation and (iii) the presence or release on the Property of any Hazardous Substances;

(B) The Mortgagor will at all times keep the Property insured for such losses or damage, in such amounts and by such companies as may be required by law and which Lender may require, provided that, in any case, the Mortgagor shall maintain: (i) physical hazard insurance on an "all risks" basis in an amount not less than 100% of the full replacement cost of the Property; (ii) flood insurance if and as required by applicable Federal law



-- [redacted] 237

and as otherwise required by Lender; (iii) comprehensive commercial general liability insurance; (iv) rent loss and business interruption insurance; and (v) such other insurance as Lender may require from time to time, including builder's risk insurance in the case of construction loans. All policies regarding such insurance shall be issued by companies licensed to do business in the state where the policy is issued and also in the state where the Property is located, be otherwise acceptable to Lender, provide deductible amounts acceptable to Lender, name Lender as mortgagee, loss payee and additional insured, and provide that no cancellation or material modification of such policies shall occur without at least thirty (30) days prior written notice to Lender. Such policies shall include (i) a mortgage endorsement determined by Lender in good faith to be equivalent to the "standard" mortgage endorsement so that the insurance, as to the interest of Lender, shall not be invalidated by any act or neglect of the Mortgagor or the owner of the Property, any foreclosure or other proceedings or notice of sale relating to the Property, any change in the title to or ownership of the Property, or the occupation or use of the Property for purposes more hazardous than are permitted at the date of inception of such insurance policies; (ii) a replacement cost endorsement; (iii) an agreed amount endorsement; (iv) a contingent liability from operation endorsement; and (v) such other endorsements as Lender may request. The Mortgagor will furnish to Lender upon request such original policies, certificates of insurance or other evidence of the foregoing as are acceptable to Lender. The terms of all insurance policies shall be such that no coinsurance provisions apply, or if a policy does contain a coinsurance provision, the Mortgagor shall insure the Property in an amount sufficient to prevent the application of the coinsurance provisions;

(C) Mortgagor will not enter into or modify the Leases in any material respect without the prior written consent of Lender, execute any assignment of the Leases except in favor of Lender, or accept any rentals under any Lease for more than one month in advance and will at all times perform and fulfill every term and condition of the Leases;

(D) Mortgagor will at all times (i) maintain complete and accurate records and books regarding the Property in accordance with generally accepted accounting principles and (ii) permit Lender and Lender's agents, employees and representatives, at such reasonable times as Lender may request, to enter and inspect the Property and such books and records;

(E) Mortgagor will at all times keep the Property in good and first-rate repair and condition (damage from casualty not excepted) and will not commit or permit any strip, waste, impairment, deterioration or alteration of the Property or any part thereof; and

(F) Mortgagor shall not use or occupy the Property in any manner that would constitute a violation of any state and/or Federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions allowed by law to terminate the violating activity. Violation of this paragraph is a material breach of this Mortgage and constitutes an Event of Default.



-- [redacted] 2372

Mortgagor shall not enter into, consent to or permit any lease, sublease, license or other agreement relating to, or otherwise permit the use or occupancy of, the Property for a Controlled Substances Use (defined below) or in any manner that violates or could violate any Controlled Substances Laws (defined below), including, without limitation, any business, communications, financial transactions or other activities related to Controlled Substances or a Controlled Substances Use (defined below) that violate or could violate any Controlled Substances Laws (collectively, *"Drug-Related Activities"*). Mortgagor and its affiliates shall not engage in any Drug-Related Activities, and Mortgagor shall not make any payments to Lender from funds derived from Drug-Related Activities. Mortgagor shall provide to Lender, from time to time, within (10) ten days after Lender's request therefor, any information that Lender requests in its reasonable discretion, relating to compliance with this Section 2.4(F). Mortgagor shall include in all Leases and other agreements for use and occupancy of the Property, provisions that (i) prohibit any Controlled Substance Use or Drug-Related Activities on the Property, and (ii) permit the Lender to make physical inspections of the Property upon the request of the Lender.

The term *"Controlled Substances Laws"* means the *"Federal Controlled Substances Act"* (21 U.S.C. §801 et seq.) or any other similar or related federal, state or local law, ordinance, code, rule, regulation or order;

The term *"Controlled Substances"* means marijuana, cannabis or other controlled substances as defined in the Federal Controlled Substances Act or that otherwise are illegal or regulated under any Controlled Substances Laws;

The term *"Controlled Substances Use"* means any cultivation, growth, creation, production, manufacture, sale, distribution, storage, handling, possession or other use of a Controlled Substance in violation of any Controlled Substances Laws.

The provisions of this Section 2.4(F) shall apply notwithstanding any state or local law permitting the Controlled Substances Use or Drug-Related Activities. Notwithstanding any provision in this Mortgage or any other Loan Document evidencing or securing the Obligations to the contrary, no direct or indirect disclosure by Mortgagor to Lender or any person affiliated with Lender, and no knowledge of Lender or any person affiliated with the Lender, of the existence of any Drug Related Activities or Controlled Substance Use on, in or about the Property shall estop Lender or waive any right of Lender to invoke any remedy under the documents and instruments evidencing and/or securing the Obligations for violation of any provision hereof related to the prohibition of any Drug Related Activities or Controlled Substance Use on, in or about the Property. The foregoing shall apply notwithstanding the receipt or execution of an estoppel certificate or subordination, non-disturbance or attornment agreement or other document from or with any tenant of Mortgagor engaged in such prohibited activity.



[redacted]

**2.5 Payments.** The Mortgagor covenants to pay when due: all Federal, state, municipal, real property and other taxes, betterment and improvement assessments and other governmental levies, water rates, sewer charges, insurance premiums and other charges on the Property, this Mortgage or any Obligation secured hereby that could, if unpaid, result in a lien on the Property or on any interest therein. If and when requested by Lender, the Mortgagor shall deposit from time to time with Lender sums determined by Lender to be sufficient to pay when due the amounts referred to in this Section. The Mortgagor shall have the right to contest any notice, lien, encumbrance, claim, tax, charge, betterment assessment or premium filed or asserted against or relating to the Property; provided that it contests the same diligently and in good faith and by proper proceedings and, at Lender's request, provides Lender with adequate cash security, in Lender's reasonable judgment, against the enforcement thereof. The Mortgagor shall furnish to Lender the receipted real estate tax bills or other evidence of payment of real estate taxes for the Property within thirty (30) days prior to the date from which interest or penalty would accrue for nonpayment thereof. The Mortgagor shall also furnish to Lender evidence of all other payments referred to above within fifteen (15) days after written request therefor by Lender. If Mortgagor shall fail to pay such sums, Lender may, but shall not be obligated to, advance such sums. Any sums so advanced by Lender shall be added to the Obligations, shall bear interest at the highest rate specified in any note evidencing the Obligations, and shall be secured by the lien of this Mortgage.

**2.6 Notices; Notice of Default.** The Mortgagor will deliver to Lender, promptly upon receipt of the same, copies of all notices or other documents it receives that affect the Property or its use, or claim that the Mortgagor is in default in the performance or observance of any of the terms hereof or that the Mortgagor or any tenant is in default of any terms of the Leases. The Mortgagor further agrees to deliver to Lender written notice promptly upon the occurrence of any Event of Default hereunder or event that with the giving of notice or lapse of time, or both, would constitute an Event of Default hereunder.

**2.7 Takings.** In case of any condemnation or expropriation for public use of, or any damage by reason of the action of any public or governmental entity or authority to, all or any part of the Property (a *"Taking"*), or the commencement of any proceedings or negotiations that might result in a Taking, the Mortgagor shall immediately give written notice to Lender, describing the nature and extent thereof. Lender may, at its option, appear in any proceeding for a Taking or any negotiations relating to a Taking and the Mortgagor shall immediately give to Lender copies of all notices, pleadings, determinations and other papers relating thereto. The Mortgagor shall in good faith and with due diligence and by proper proceedings file and prosecute its claims for any award or payment on account of any Taking. The Mortgagor shall not settle any such claim without Lender's prior written consent. The Mortgagor shall hold any amounts received with respect to such awards or claims, by settlement, judicial decree or otherwise, in trust for Lender and immediately pay the same to Lender. The Mortgagor authorizes any award or settlement



-- [redacted] 2372

due in connection with a Taking to be paid directly to Lender in amounts not exceeding the Obligations. Lender may apply such amounts to the Obligations in such order as Lender may determine.

**2.8 Insurance Proceeds.** The proceeds of any insurance resulting from any loss with respect to the Property shall be paid to Lender and, at the option of Lender, be applied to the Obligations in such order as Lender may determine; provided, however, that if Lender shall require repair of the Property, Lender may release all or any portion of such proceeds to the Mortgagor for such purpose. Any insurance proceeds paid to the Mortgagor shall be held in trust for Lender and promptly paid to it.

## 3. Certain Rights of Lender

**3.1 Legal Proceedings.** Lender shall have the right, but not the duty, to intervene or otherwise participate in any legal or equitable proceeding that, in Lender's reasonable judgment, might affect the Property or any of the rights created or secured by this Mortgage. Lender shall have such right whether or not there shall have occurred an Event of Default hereunder.

**3.2 Appraisals/Assessments.** Lender shall have the right, at the Mortgagor's sole cost and expense, to obtain appraisals, environmental site assessments or other inspections of the portions of the Property that are real estate at such times as Lender deems necessary or as may be required by applicable law, or its prevailing credit or underwriting policies.

**3.3 Financial Statements.** Lender shall have the right, at the Mortgagor's sole cost and expense, to require delivery of financial statements in form and substance acceptable to Lender from the Mortgagor or any guarantor of any of the Obligations and the Mortgagor hereby agrees to deliver such financial statements and/or cause any such guarantor to so deliver any such financial statement when required by Lender.

**3.4 Leases and Rent Roll.** The Mortgagor shall deliver to Lender (i) during each calendar year and at such other times as Lender shall request a rent roll for the Property, in form acceptable to Lender, listing all tenants and occupants and describing all of the Leases; and (ii) at such times as Lender shall request executed copies of all the Leases.

## 4. Defaults and Remedies

**4.1 Events of Default.** *"Event of Default"* shall mean the occurrence of any one or more of the following events:

(A) default of any liability, obligation, covenant or undertaking of the Mortgagor or any guarantor of the Obligations to Lender, hereunder or otherwise, including, without limitation, failure to pay in full and when due any installment of principal or interest or default of the Mortgagor or any guarantor of the Obligations under any other Loan Document or any other agreement with Lender;



[redacted] 2 3 7

(B) failure by the Mortgagor or any guarantor of the Obligations to perform, observe or comply with any of the covenants, agreements, terms or conditions set forth in this Mortgage or the Loan Documents;

(C) the (i) occurrence of any material loss, theft, damage or destruction of, or (ii) issuance or making of any levy, seizure, attachment, execution or similar process on a material portion of the Property;

(D) receipt by Lender of notice from the Mortgagor or any holder of any subordinate lien on the Property intended to terminate, limit or affect in any manner the indebtedness secured by this Mortgage or the lien priority hereof

(E) failure of the Mortgagor or any guarantor of the Obligations to maintain aggregate collateral security value satisfactory to Lender;

(F) default of any material liability, obligation or undertaking of the Mortgagor or any guarantor of the Obligations to any other party;

(G) any statement, representation or warranty heretofore, now or hereafter made by the Mortgagor or any guarantor of the Obligations in connection with this Mortgage or in any supporting financial statement of the Mortgagor or any guarantor of the Obligations shall be determined by Lender to have been false or misleading in any material respect when made;

(H) if the Mortgagor or any guarantor of the Obligations is a corporation, trust, partnership or limited liability company, the liquidation, termination or dissolution of any such organization, or the merger or consolidation of such organization into another entity, or its ceasing to carry on actively its present business or the appointment of a receiver for its property;

(I) the death of the Mortgagor or any guarantor of the Obligations and, if the Mortgagor or any guarantor of the Obligations is a partnership or limited liability company, the death of any partner or member;

(J) the institution by or against the Mortgagor or any guarantor of the Obligations of any proceedings under the *Bankruptcy Code* 11 USC §101 *et seq.* or any other law in which the Mortgagor or any guarantor of the Obligations is alleged to be insolvent or unable to pay its debts as they mature, or the making by the Mortgagor or any guarantor of the Obligations of an assignment for the benefit of creditors or the granting by the Mortgagor or any guarantor of the Obligations of a trust mortgage for the benefit of creditors;

(K) the service upon Lender of a writ in which Lender is named as trustee of the Mortgagor or any guarantor of the Obligations;

(L) a judgment or judgments for the payment of money shall be rendered against the Mortgagor or any guarantor of the Obligations, and any such judgment shall remain unsatisfied and in effect for any period of thirty (30) consecutive days without a stay of execution;

(M) any levy, lien (including mechanics lien), seizure, attachment, execution or similar process shall be issued or levied on any of the property of the Mortgagor or any guarantor of the Obligations;

(N) the termination or revocation of any guaranty of the Obligations; or

(O) the occurrence of such a change in the condition or affairs (financial or otherwise) of the Mortgagor or any guarantor of the Obligations, or the occurrence of any other event or circumstance, such that Lender, in its sole discretion, deems that it is insecure or that the prospects for timely or full payment or performance of any obligation of the Mortgagor or any guarantor of the Obligations to Lender has been or may be impaired.

**4.2 Remedies.** On the occurrence of any Event of Default Lender may, at any time thereafter, at its option and, to the extent permitted by applicable law, without notice, exercise any or all of the following remedies:

(A) Declare the Obligations due and payable, and the Obligations shall thereupon become immediately due and payable, without presentment, protest, demand or notice of any kind, all of which are hereby expressly waived by the Mortgagor except for Obligations due and payable on demand, which shall be due and payable on demand whether or not an Event of Default has occurred hereunder;

(B) Enter, take possession of, manage and operate the Property (including all personal property and all records and documents pertaining thereto) and any part thereof and exclude the Mortgagor therefrom, take all actions it deems necessary or proper to preserve the Property and operate the Property as a mortgagee in possession with all the powers as could be exercised by a receiver or as otherwise provided herein or by applicable law; provided, however, the entry by Lender upon the Property for any reason shall not cause Lender to be a mortgagee in possession, except upon the express written declaration of Lender;

(C) With or without taking possession, receive and collect all rents, income, issues and profits (*"Rents"*) from the Property (including all real estate and personal property and whether past due or thereafter accruing), including as may arise under the Leases, and the Mortgagor appoints Lender as its true and lawful attorney with the power for Lender in its own name and capacity to demand and collect Rents and take any action that the Mortgagor is authorized to take under the Leases. Lender shall (after payment of all costs and expenses incurred) apply any Rents received by it to the Obligations in such order as Lender determines, or in accordance with any applicable statute, and the Mortgagor agrees that exercise of such rights and disposition of such funds shall not be deemed to cure any default or constitute a waiver of any foreclosure once commenced nor preclude the later commencement of foreclosure for breach thereof. Lender shall be liable to account only for such Rents actually received by Lender. Lessees under the Leases are



[redacted] 2372

hereby authorized and directed, following notice from Lender, to pay all amounts due the Mortgagor under the Leases to Lender, whereupon such lessees shall be relieved of any and all duty and obligation to the Mortgagor with respect to such payments so made;

(D) In addition to any other remedies, to sell the Property or any part thereof or interest therein pursuant to exercise of its power of sale or otherwise at public auction on terms and conditions as Lender may determine, or otherwise foreclose this Mortgage in any manner permitted by law, and upon such sale the Mortgagor shall execute and deliver such instruments as Lender may request in order to convey and transfer all of the Mortgagor's interest in the Property, and the same shall operate to divest all right, title and interest of the Mortgagor in and to the Property. In the event this Mortgage shall include more than one parcel of property or subdivision (each hereinafter called a *"Portion"*), Lender shall, in its sole and exclusive discretion and to the extent permitted by applicable law, be empowered to foreclose upon any such Portion without impairing its right to foreclose subsequently upon any other Portion or the entirety of the Property from time to time thereafter. In addition, Lender may in its sole and exclusive discretion subordinate this Mortgage to one or more Leases for the sole purpose of preserving any such Lease in the event of a foreclosure;

(E) Cause one or more environmental assessments to be taken, arrange for the cleanup of any Hazardous Substances or otherwise cure the Mortgagor's failure to comply with any statute, regulation or ordinance relating to the presence or cleanup of Hazardous Substances, and the Mortgagor shall provide Lender or its agents with access to the Property for such purposes; provided that the exercise of any of such remedies shall not be deemed to have relieved the Mortgagor from any responsibility therefor or given Lender "control" over the Property or cause Lender to be considered to be a mortgagee in possession, "owner" or "operator" of the Property for purposes of any applicable law, rule or regulation pertaining to Hazardous Substances; and

(F) Take such other actions or proceedings as Lender deems necessary or advisable to protect its interest in the Property and ensure payment and performance of the Obligations, including, without limitation, appointment of a receiver (and the Mortgagor hereby waives any right to object to such appointment) and exercise of any of Lender's remedies provided herein or in any other document evidencing, securing or relating to any of the Obligations or available to a secured party under the *Uniform Commercial Code* or any other applicable law.

In addition, the Lender shall have all other remedies provided by applicable law, including, without limitation, the right to pursue a judicial sale of the Property or any portion thereof by deed, assignment or otherwise.

The Mortgagor agrees and acknowledges that the acceptance by the Lender of any payments from either the Mortgagor or any guarantor after the occurrence of any Event of Default, the exercise by the Lender of any remedy set forth herein or the commencement, discontinuance

or abandonment of foreclosure proceedings against the Property shall not waive the Lender's subsequent or concurrent right to foreclose or operate as a bar or estoppel to the exercise of any other rights or remedies of the Lender. The Mortgagor agrees and acknowledges that the Lender, by making payments or incurring costs described herein, shall be subrogated to any right of the Mortgagor to seek reimbursement from any third parties, including, without limitation, any predecessor in interest to the Mortgagor's title or other party who may be responsible under any law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances.

**4.3 ACTION IN EJECTMENT.**

**FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PROPERTY IN THE EVENT OF ANY EVENT OF DEFAULT HEREUNDER, MORTGAGOR HEREBY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN EJECTMENT FOR POSSESSION OF THE PROPERTY, IN FAVOR OF THE LENDER, FOR WHICH THIS MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PROPERTY, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION OR APPEAL. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT SHALL BE DISCONTINUED, OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO MORTGAGOR, THE LENDER SHALL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY. THE LENDER MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS MORTGAGE OR TO ENFORCE ANY OF THE LOAN DOCUMENTS, OR AFTER ENTRY OF JUDGMENT THEREIN OR ON ANY OF THE LOAN DOCUMENTS, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PROPERTY IN WHICH THE LENDER IS THE SUCCESSFUL BIDDER, IT BEING THE UNDERSTANDING OF THE PARTIES THAT THE AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT THEREIN IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS MORTGAGE AND THE OTHER LOAN DOCUMENTS, AND SHALL SURVIVE ANY EXECUTION SALE TO THE LENDER.**

**MORTGAGOR HEREBY RELEASES AND AGREES TO RELEASE LENDER AND SAID ATTORNEYS FROM ALL PROCEDURAL ERRORS AND DEFECTS WHATSOEVER IN ENTERING SUCH JUDGMENT OR JUDGMENTS OR IN CAUSING SUCH WRITS OR PROCESS TO BE ISSUED OR IN ANY PROCEEDING THEREON OR CONCERNING THE SAME, PROVIDED THAT LENDER SHALL HAVE FILED IN SUCH ACTION OR ACTIONS**



-- [redacted] 2372

**AN AFFIDAVIT OR AFFIDAVITS MADE BY SOMEONE ON LENDER'S BEHALF SETTING FORTH THE FACTS NECESSARY TO AUTHORIZE THE ENTRY OF SUCH JUDGMENT OR JUDGMENTS ACCORDING TO THE TERMS OF THIS INSTRUMENT, OF WHICH FACTS SUCH AFFIDAVIT OR AFFIDAVITS SHALL BE PRIMA FACIE EVIDENCE.**

**MORTGAGOR CONFIRMS TO THE LENDER THAT (I) MORTGAGOR IS A BUSINESS ENTITY AND THAT ITS PRINCIPALS ARE KNOWLEDGEABLE IN BUSINESS MATTERS; (II) THE TERMS OF THIS MORTGAGE, INCLUDING THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT, HAVE BEEN NEGOTIATED AND AGREED UPON IN A COMMERCIAL CONTEXT; AND (III) MORTGAGOR HAS FULLY REVIEWED THE AFORESAID WARRANT OF ATTORNEY TO CONFESS JUDGMENT WITH ITS OWN COUNSEL AND IS KNOWINGLY AND VOLUNTARILY WAIVING CERTAIN RIGHTS IT WOULD OTHERWISE POSSESS, INCLUDING BUT NOT LIMITED TO, THE RIGHT TO ANY NOTICE OF A HEARING PRIOR TO THE ENTRY OF JUDGMENT BY THE LENDER PURSUANT TO THE FOREGOING WARRANT.**

**4.4 Advances.** If the Mortgagor fails to pay or perform any of its obligations respecting the Property, Lender may in its sole discretion do so without waiving or releasing Mortgagor from any such obligation. Any such payments may include, but are not limited to, payments for taxes, assessments and other governmental levies, water rates, insurance premiums, maintenance, repairs or improvements constituting part of the Property. Any amounts paid by Lender hereunder shall be, until reimbursed by the Mortgagor, part of the Obligations and secured by this Mortgage, and shall be due and payable to Lender, on demand, together with interest thereon to the extent permitted by applicable law, at the highest rate permitted under any of the notes evidencing the Obligations.

**4.5 Cumulative Rights and Remedies.** All of the foregoing rights, remedies and options (including without limitation the right to enter and take possession of the Property, the right to manage and operate the same, and the right to collect Rents, in each case whether by a receiver or otherwise) are cumulative and in addition to any rights Lender might otherwise have, whether at law or by agreement, and may be exercised separately or concurrently and none of which shall be exclusive of any other. The Mortgagor further agrees that Lender may exercise any or all of its rights or remedies set forth herein without having to pay the Mortgagor any sums for use or occupancy of the Property.

**4.6 Mortgagor's Waiver of Certain Rights.** To the extent permitted by applicable law, the Mortgagor hereby waives the benefit of all present and future laws (i) providing for any appraisal before sale of all or any portion of the Property or (ii) in any way extending the time for the enforcement of the collection of the Obligations or creating or extending a period of redemption from any sale made hereunder.



[redacted]2372

## 5. Miscellaneous

**5.1 Costs and Expenses.** To the extent permitted by applicable law, the Mortgagor shall pay to Lender, on demand, all reasonable expenses (including attorneys' fees and expenses and reasonable consulting, accounting, appraisal, brokerage and similar professional fees and charges) incurred by the Lender in connection with Lender's interpretation, recordation of this Mortgage, exercise, preservation or enforcement of any of its rights, remedies and options set forth in this Mortgage and in connection with any litigation, proceeding or dispute whether arising hereunder or otherwise relating to the Obligations, together with interest thereon to the extent permitted by applicable law, until paid in full by the Mortgagor at the highest rate set forth in any of the notes evidencing the Obligations. Any amounts owed by the Mortgagor hereunder shall be, until paid, part of the Obligations and secured by this Mortgage, and Lender shall be entitled, to the extent permitted by law, to receive and retain such amounts in any action for a deficiency against or redemption by the Mortgagor, or any accounting for the proceeds of a foreclosure sale or of insurance proceeds.

**5.2 Indemnification Regarding Leases.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold Lender and each of its directors, officers, employees, agents and attorneys (each an *"Indemnitee"*) harmless from all losses, damages, claims, costs or expenses (including attorneys' fees and expenses) resulting from the assignment of the Leases and from all demands that may be asserted against such Indemnitees arising from any undertakings on the part of Lender to perform any obligations under the Leases. It is understood that the assignment of the Leases shall not operate to place responsibility for the control or management of the Property upon Lender or any Indemnitee or make them liable for performance of any of the obligations of the Mortgagor under Leases, respecting any condition of the Property or any other agreement or arrangement, written or oral, or applicable law.

**5.3 Indemnification Regarding Hazardous Substances.** The Mortgagor hereby agrees to defend, and does hereby indemnify and hold harmless each Indemnitee from and against any and all losses, damages, claims, costs or expenses, including, without limitation, litigation costs and attorneys' fees and expenses and fees or expenses of any environmental engineering or cleanup firm incurred by such Indemnitee and arising out of or in connection with the Property or resulting from the application of any current or future law, regulation or ordinance relating to the presence or cleanup of Hazardous Substances on or affecting the Property. The Mortgagor agrees its obligations hereunder shall be continuous and shall survive termination or discharge of this Mortgage and/or the repayment of all debts to Lender including repayment of all Obligations.

**5.4 Indemnitee's Expenses.** If any Indemnitee is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Mortgage or the Property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use thereof by the Mortgagor or other person or entity, then the Mortgagor shall indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee



[redacted] 2372

in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. The within indemnification shall survive payment of the Obligations, and/or any termination, release or discharge executed by Lender in favor of the Mortgagor.

**5.5 Waivers.** The Mortgagor waives notice of nonpayment, demand, presentment, protest or notice of protest of the Obligations and all other notices, consents to any renewals or extensions of time of payment thereof, and generally waives any and all suretyship defenses and defenses in the nature thereof. No delay or omission of Lender in exercising or enforcing any of its rights, powers, privileges, remedies, immunities or discretion (all of which are hereinafter collectively referred to as *"Lender's Rights and Remedies"*) hereunder shall constitute a waiver thereof; and no waiver by Lender of any default of the Mortgagor hereunder or of any demand shall operate as a waiver of any other default hereunder or of any other demand. No term or provision hereof shall be waived, altered or modified except with the prior written consent of Lender, which consent makes explicit reference to this Mortgage. Except as provided in the preceding sentence, no other agreement or transaction, of whatsoever nature, entered into between Lender and the Mortgagor at any time (whether before, during or after the effective date or term of this Mortgage) shall be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under this Mortgage (nor shall anything in this Mortgage be construed as a waiver, modification or limitation of any of Lender's Rights and Remedies under any such other agreement or transaction) but all Lender's Rights and Remedies not only under the provisions of this Mortgage but also under any such other agreement or transaction shall be cumulative and not alternative or exclusive, and may be exercised by Lender at such time or times and in such order of preference as Lender in its sole discretion may determine.

**5.6 Waiver of Homestead.** To the maximum extent permitted under applicable law, the Mortgagor hereby waives and terminates any homestead rights and/or exemptions respecting the Property under the provisions of any applicable homestead laws, including without limitation, Title 42, Section 8123, of the *Pennsylvania Consolidated Statutes Annotated.*

**5.7 Joint and Several.** If there is more than one Mortgagor, each of them shall be jointly and severally liable for payment and/or performance of all obligations secured by this Mortgage and the term *"Mortgagor"* shall include each as well as all of them.

**5.8 Severability.** If any provision of this Mortgage or portion of such provision or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, the remainder of this Mortgage (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby.

**5.9 Complete Agreement.** This Mortgage and the other Loan Documents constitute the entire agreement and understanding between and among the parties hereto relating to the subject matter hereof, and supersede all prior proposals, negotiations, agreements and understandings among the parties hereto with respect to such subject matter.

**5.10 Binding Effect of Agreement.** This Mortgage shall run with the land and be binding upon and inure to the benefit of the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and shall remain in full force and effect (and Lender shall be entitled to rely thereon) until all Obligations are fully and indefeasibly paid. Lender may transfer and assign this Mortgage and deliver any collateral to the assignee, who shall thereupon have all of the rights of Lender; and Lender shall then be relieved and discharged of any responsibility or liability with respect to this Mortgage and such collateral. Except as expressly provided herein or in the other Loan Documents, nothing, expressed or implied, is intended to confer upon any party, other than the parties hereto, any rights, remedies, obligations or liabilities under or by reason of this Mortgage or the other Loan Documents.

**5.11 Notices.** Any notices under or pursuant to this Mortgage shall be deemed duly received and effective if delivered in hand to any officer or agent of Mortgagor or Lender, or if mailed by registered or certified mail, return receipt requested, addressed to Mortgagor or Lender at the address set forth in this Mortgage or as any party may from time to time designate by written notice to the other party.

**5.12 Governing Law.** This Mortgage shall be governed by the laws of the Commonwealth of Pennsylvania.

**5.13 Reproductions.** This Mortgage and all documents which have been or may be hereinafter furnished by the Mortgagor to Lender may be reproduced by Lender by any photographic, photostatic, microfilm, xerographic or similar process, and any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding (whether or not the original is in existence and whether or not such reproduction was made in the regular course of business).

**5.14 Jurisdiction and Venue.** The Mortgagor irrevocably submits to the nonexclusive jurisdiction of any Federal or state court sitting in Pennsylvania, over any suit, action or proceeding arising out of or relating to this Mortgage. The Mortgagor irrevocably waives, to the fullest extent it may effectively do so under applicable law, any objection it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in any such court and any claim that the same has been brought in an inconvenient forum. The Mortgagor hereby consents to process being served in any such suit, action or proceeding (i) by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to the Mortgagor's address set forth herein or such other address as has been provided in writing to Lender and (ii) in any other manner permitted by law, and agrees that such service shall in every respect be deemed effective service upon the Mortgagor.



[redacted] 2372

**5.15 JURY WAIVER.**

MORTGAGOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, AND AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS MORTGAGE THE OBLIGATIONS, ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREE NOT TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE, OR HAS NOT BEEN WAIVED. MORTGAGOR CERTIFIES THAT NEITHER LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

**5.16 Purchase Money Mortgage.** To the extent all or any part of the Obligations secured by this Mortgage were used in whole or in part to fund the acquisition of all or any part of the Property, this Mortgage shall be a *"purchase money mortgage"* within the meaning of *42 Pa. C.S.A.* Sec. 8141 and shall be accorded the lien priority provided for therein.

**Signatures.** Executed under seal as of July 30, 2021. This is a contract under seal and may be enforced under *42 Pa.C.S.* Section 5529(b).

**Mortgagor**

**DDH FUND, LP**
*a Delaware limited partnership*

DDH CAPITAL MANAGEMENT, LLC
*a Florida limited liability company, General Partner*

[signature] 7/30/2021

**Brandon Mendenhall** **Date**
*Manager*

______________________________
*Witness*



[redacted]

**Acknowledgment**

Commonwealth of ~~Pennsylvania~~ of Nevada

County of Clark

On 7/30/2021, before me, Don Erron Sams Jr the undersigned officer, personally appeared Brandon Mendenhall, who acknowledged himself/~~herself~~/~~themselves~~ to be the Manager of DDH CAPITAL MANAGEMENT, LLC, General Partner of DDH FUND, LP, a Delaware limited partnership on behalf of the limited partnership, and that he/~~she~~/~~they~~, as such Manager, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the DDH FUND, LP by himself/~~herself~~/~~themselves~~ as Manager of DDH CAPITAL MANAGEMENT, LLC, General Partner of DDH FUND, LP, a Delaware limited partnership on behalf of the limited partnership.

In witness whereof I hereunto set my hand and official seal.

*Notary Public*

DON ERRON SAMS JR
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 19-10011-01
My Appt. Expires 11-6-2023

Don Erron Sams Jr
*(Print Name)*

My commission expires: 11-6-2023



[redacted]2377

EXHIBIT "A"

**Property Description**

See Legal Description attached hereto and made a part thereof



[redacted] 2 3 7

**EXHIBIT A**
**LEGAL DESCRIPTION**

Issuing Office File No. AM5490

LL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, ereditaments and appurtenances, situate in Upper Darby Township, County of Delaware and State of ennsylvania, and described according to a Survey thereof made 10/26/1928 as follows, to wit:

EGINNING at the intersection of the Northwesterly side of Kirklyn Avenue (50 feet wide) and the outhwesterly side of West Chester Pike (67 feet wide).
ONTAINING in front or breadth on the said West Chester Pike 20 feet and extending of that width in ngth or depth Southwestwardly between parallel lines at right angles with the said West Chester Pike, e Southeasterly line thereof extending along the Northwesterly side of Kirklyn Avenue, 130 feet.

EING 9000 West Chester Pike

EXHIBIT "B"

Permitted Encumbrances

None



-- [redacted] 2372

# EXHIBIT "D"

# DO NOT DETACH

| | |
|---|---|
| 10154226-0021H<br><br>**Instrument Number: 2022062402**<br>**Volume/Page:** RECORD BK 6877 PG 5032<br>**Recorded Date: 12/12/2022 3:33:33 PM** | **Robert A. Auclair, Esq.**<br>Delaware County Recorder of Deeds<br>Government Center, Room 107<br>201 W. Front Street<br>Media, PA 19063<br>610-891-4152 |
| **Transaction Number:** 951865<br>**Collected By:** kiddk<br>**Document Type:** ASSIGNMENTS<br>**Document Page Count:** : 2 | **Return To (Ingeo):**<br>Velocity Commercial Capital |
| **Parcel ID:** 16-08-02813-00 | |
| **Fees:**<br>RECORDING FEES: $37.50<br>COUNTY IMPROVEMENT FUND: $5.00<br>JCS/ATJ FEE: $40.25<br>WRIT TAX: $0.50<br><br>**Total Fees:** $83.25<br><br>**Amount Paid:** $83.25<br><br>**Amount Due:** $0.00 | **Instrument Number:** 2022062402<br>**Volume/Page:** RECORD BK 6877 PG 5032<br>**Recorded Date:** 12/12/2022 3:33:33 PM |

**OFFICIAL RECORDING COVER PAGE**

**DO NOT DETACH**

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT

NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has been corrected. The document data always supersedes the cover page.

If an error on the cover page appears on our website after review please let our office know.

COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

**Record and Return To:**
Velocity Commercial Capital
30699 Russell Ranch Rd Suite 295
Ste 295
Westlake Village, CA 91362
Parcel Tax ID: **16-08-02813-00**
Property Address:
**9000 West Chester**
**Pike Upper Darby, PA**
**19082**
Loan #: **6723072372**

## ASSIGNMENT OF Open-End Mortgage, Commercial Mortgage, Security Agreement and Assignment of Leases and Rents

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Velocity Commercial Capital, LLC, a California Limited Liability Company , 30699 Russell Ranch Rd Ste 295, Westlake Village, California 91362,** by these presents does convey, assign, and transfer and set over to:

**U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3,**
**191 South LaSalle Street, 7th Floor Chicago, IL 60603,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$258,750.00** is recorded in the State of **PENNSYLVANIA,** County of **Delaware** Official Records, dated **07/30/2021** and recorded as Instrument No. **2021072811**

Original Mortgagor: **Ddh Fund Lp**
Original Mortgagee: **Velocity Commercial Capital, LLC, a California Limited Liability Company**
Municipality: **Upper Darby Township**
Date: **12/09/2022.**

**Velocity Commercial Capital, LLC, a California Limited Liability Company**

By: ______________________________
Name: **Travis Baum**
Title: **Post-Closing Manager**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF **California**
COUNTY OF **Los Angeles** } s.s.

On **12/09/2022,** before me, **Jason Conchas Jara,** Notary Public, personally appeared **Travis Baum,** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

JASON CONCHAS JARA
Notary Public - California
Los Angeles County
Commission # 2402016
My Comm. Expires Apr 25, 2026

Notary Public: **Jason Conchas Jara**
My Commission Expires: **04/25/2026**
Commission #: **2402016**

I do certify that the precise address of is **191 South LaSalle Street, 7th Floor, Chicago, IL 60603**

Attested By:

**Travis Baum**, **Post-Closing Manager**

# EXHIBIT "E"

**PRAECIPE FOR WRIT OF EXECUTION—(MORTGAGE FORECLOSURE)**
**P.R.C.P. 3180-3183**

**IN THE COURT OF COMMON PLEAS OF**
**DELAWARE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br><br>v.<br><br>DDH FUND, LP, a Delaware limited partnership<br>Defendant(s) | Civil Action No. : CV-2025-001332<br><br>PRAECIPE FOR WRIT OF EXECUTION (MORTGAGE FORECLOSURE) |

TO THE PROTHONOTARY:

Issue Writ of Execution in the above matter:

| | |
|---|---|
| Judgment Amount ...................................................... | $281,726.36 |
| Interest from June 7, 2025 at the Per Month rate of $1,447.84 until Judgment is paid in full .................... | $11,582.72 |
| Total .......................................................................... | $293,309.08 plus costs |

***s/ Steven P. Kelly, Esq.***
Steven P. Kelly, Esq.
PA Attorney ID No.308573
Attorney for Plaintiff

**IN THE COURT OF COMMON PLEAS OF**
**DELAWARE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br><br>v.<br><br>DDH FUND, LP, a Delaware limited partnership<br>Defendant(s) | Civil Action No. CV-2025-001332 |

Premises: 9000 West Chester Pike, Upper Darby, PA 19082-2606
UPI/Parcel No.: 16-08-02813-00

**WRIT OF EXECUTION**
**(MORTGAGE FORECLOSURE)**

**Filed:**

***s/ Steven P. Kelly, Esq.***
Steven P. Kelly, Esq.
PA Attorney ID No. 308573
Attorney for Plaintiff

**WRIT OF EXECUTION—(MORTGAGE FORECLOSURE)**
**P.R.C.P. 3180 to 3183 and Rule 3257**

**IN THE COURT OF COMMON PLEAS OF**
**DELAWARE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br><br>v.<br><br>DDH FUND, LP, a Delaware limited partnership<br>Defendant(s) | Civil Action No. :<br>CV-2025-001332<br><br>WRIT OF EXECUTION<br>(MORTGAGE FORECLOSURE) |

**COMMONWEALTH OF PENNSYLVANIA** :

: **S.S.** :

**COUNTY OF DELAWARE** :

TO THE SHERIFF OF DELAWARE COUNTY:

To satisfy the judgment, interest and costs in the above matter you are directed to levy upon and sell the following described property:

9000 West Chester Pike, Upper Darby, PA 19082-2606 (see full legal description attached)

| | |
|---|---|
| Judgment Amount ..................................................... | $281,726.36 |
| Interest from June 7, 2025 at the Per Month rate of $1,447.84 until Judgment is paid in full .................. | $11,582.72 |
| Total ............................................................................ | $293,309.08 plus costs |

Dated:________________________
(SEAL)

________________________________
Prothonotary, Common Pleas Court of
Delaware County, PA

By: ____________________________
Deputy

No. CV-2025-001332

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**

U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3
Plaintiff

v.

DDH FUND, LP, a Delaware limited partnership
Defendant(s)

Premises: 9000 West Chester Pike, Upper Darby, PA 19082-2606
UPI/Parcel No.: 16-08-02813-00

---

**WRIT OF EXECUTION**
**(MORTGAGE FORECLOSURE)**

---

| | | |
|---|---|---|
| Prothy Paid | $ | ____________________ |
| Writ, Ret. & Sat. | $ | ____________________ |
| Total Cost: | $ | ____________________ |

***s/ Steven P. Kelly, Esq.***
Steven P. Kelly, Esq.
PA Attorney ID No. 308573
Attorney for Plaintiff

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, hereditaments and appurtenances, situate in Upper Darby Township, County of Delaware and State of Pennsylvania, and described according to a Survey thereof made 10/26/1928 as follows, to wit:

BEGINNING at the intersection of the Northwesterly side of Kirklyn Avenue (50 feet wide) and the Southwesterly side of West Chester Pike (67 feet wide).
CONTAINING in front or breadth on the said West Chester Pike 20 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said West Chester Pike, the Southeasterly line thereof extending along the Northwesterly side of Kirklyn Avenue, 130 feet.

BEING 9000 West Chester Pike

BEING Folio No. 16-08-022813-00

Premises being: 9000 West Chester Pike, Upper Darby, PA 19082-2606

Parcel No. 16-08-02813-00

**BEING** the same premises which Edward McLoughlin by Deed dated August 2, 2021 and recorded in the Office of Recorder of Deeds of Delaware County on September 23, 2021 at Book 6744, Page 5263 as Instrument 2021072810 granted and conveyed unto DDH FUND, LP.

FILED
11-04-2025 12:30 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

**WRIT OF EXECUTION—(MORTGAGE FORECLOSURE)**
**P.R.C.P. 3180 to 3183 and Rule 3257**

**IN THE COURT OF COMMON PLEAS OF**
**DELAWARE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br><br>v.<br><br>DDH FUND, LP, a Delaware limited partnership<br>Defendant(s) | Civil Action No. :<br>CV-2025-001332<br><br>WRIT OF EXECUTION<br>(MORTGAGE FORECLOSURE) |

**COMMONWEALTH OF PENNSYLVANIA** :

: **S.S.** :

**COUNTY OF DELAWARE** :

TO THE SHERIFF OF DELAWARE COUNTY:

To satisfy the judgment, interest and costs in the above matter you are directed to levy upon and sell the following described property:

9000 West Chester Pike, Upper Darby, PA 19082-2606 (see full legal description attached)

| | |
|---|---|
| Judgment Amount | $281,726.36 |
| Interest from June 7, 2025 at the Per Month rate of $1,447.84 until Judgment is paid in full | $11,582.72 |
| Total | $293,309.08 plus costs |

Dated: 11/5/25
(SEAL)

Prothonotary, Common Pleas Court of Delaware County, PA

By: ____________ Deputy

COSTS
OJS $ 30.00
JUDG. FEE $ 331.25
SAT. $ 10.20

ISSUED
11-05-2025 09:34 AM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

STERN & EISENBERG, PC
1581 MAIN STREET, SUITE 200
THE SHOPS AT VALLEY SQUARE
WARRINGTON, PA 18976
TELEPHONE: (215) 572-8111
FACSIMILE: (215) 572-5025
(COUNSEL FOR PLAINTIFF)

**IN THE COURT OF COMMON PLEAS OF PENNSYLVANIA**
**FOR DELAWARE COUNTY**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br>v.<br>DDH FUND, LP, a Delaware limited partnership<br>Defendant | Civil Action No. : CV-2025-001332<br><br><br>MORTGAGE FORECLOSURE |

**AFFIDAVIT PURSUANT TO RULE 3129.1**

I, the undersigned attorney for Plaintiff in the above caption, set forth as of the date the Praecipe for the Writ of Execution was filed, the following information concerning the real property located at **9000 West Chester Pike, Upper Darby, PA 19082-2606:**

1. Name and address of Owner(s) or Reputed Owner(s):

    DDH FUND, LP, a Delaware limited partnership
    16192 Coastal Highway
    Lewes, DE 19958

    DDH FUND, LP, a Delaware limited partnership
    9000 West Chester Pike
    Upper Darby, PA 19082-2606

    DDH FUND, LP, a Delaware limited partnership
    c/o Jeffrey Katz, Esquire
    100 South Broad Street, Suite 1208
    Philadelphia, PA 19110

2. Name and address of Defendant in the judgment:

    DDH FUND, LP, a Delaware limited partnership
    16192 Coastal Highway
    Lewes, DE 19958

    DDH FUND, LP, a Delaware limited partnership
    9000 West Chester Pike
    Upper Darby, PA 19082-2606

DDH FUND, LP, a Delaware limited partnership
c/o Jeffrey Katz, Esquire
100 South Broad Street, Suite 1208
Philadelphia, PA 19110

3. Name and last known address of every judgment creditor whose judgment is a record lien on the real property to be sold:

N/A

4. Name and address of the last recorded holder of every mortgage of record:

N/A

5. Name and address of every other person who has any record lien on the property:

Southwest Delaware County Municipal Authority
1, Gamble Lane
Aston, PA 19014

Delaware County Domestic Relations
201 W. Front Street
Media, PA 19063

Delaware County Tax Claim Bureau
201 W. Front Street
Government Center, Ground Floor
Media, PA 19063

PA Department of Revenue
P.O. Box 280601
Harrisburg, PA 17128

6. Name and address of every other person who has any record interest in the property and whose interest may be affected by the sale:

N/A

7. Name and address of every other person of whom the plaintiff has knowledge who has any interest in the property which may be affected by the sale:

Delaware County Domestic Relations
2nd & Orange Streets
Curran Building
Media, PA 19063

PA Department of Revenue
Bureau of Individual Taxes
P.O. Box 280601
Harrisburg, PA 17128-0502

Tenant(s)/Occupant(s)
9000 West Chester Pike
Upper Darby, PA 19082-2606

Delaware County Tax Claim Bureau
201 W. Front Street
Government Center, Ground Floor
Media, PA 19063

I verify that the statements made in this affidavit are true and correct to the best of my personal knowledge or information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

STERN & EISENBERG, PC

By: ***s/ Steven P. Kelly, Esq.***
Steven P. Kelly, Esq.
Attorney for Plaintiff

STERN & EISENBERG, PC
1581 MAIN STREET, SUITE 200
THE SHOPS AT VALLEY SQUARE
WARRINGTON, PA 18976
TELEPHONE: (215) 572-8111
FACSIMILE: (215) 572-5025
(COUNSEL FOR PLAINTIFF)

**IN THE COURT OF COMMON PLEAS OF PENNSYLVANIA**
**FOR DELAWARE COUNTY**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br>v.<br><br>DDH FUND, LP, a Delaware limited partnership<br>Defendant | Civil Action No. : CV-2025-001332<br><br>MORTGAGE FORECLOSURE |

**NOTICE OF SHERIFF'S SALE OF REAL PROPERTY**

TO: DDH FUND, LP, a Delaware limited partnership
16192 Coastal Highway
Lewes, DE 19958

DDH FUND, LP, a Delaware limited partnership
9000 West Chester Pike
Upper Darby, PA 19082-2606

DDH FUND, LP, a Delaware limited partnership
c/o Jeffrey Katz, Esquire
100 South Broad Street, Suite 1208
Philadelphia, PA 19110

Your real estate at 9000 West Chester Pike, Upper Darby, PA 19082-2606 is scheduled to be sold at the Delaware County Sheriff's Sale at County Council Meeting Room, Government Center Building, Front Street & Veterans Square, Media, PA 19063 (location of sale) on February 20, 2026 at 11:00 AM to enforce the court judgment of $281,726.36 obtained by U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3 against you.

**NOTICE OF OWNER'S RIGHTS**
**YOU MAY BE ABLE TO PREVENT THIS SHERIFF'S SALE**

To prevent this Sheriff's Sale you must take **immediate action:**

1. The sale will be canceled if you pay to Stern & Eisenberg, PC the back payments, late charges, costs and reasonable attorney's fees due. To find out how much you must pay, you may call Stern & Eisenberg, PC, at telephone number (215) 572-8111.

2. You may be able to stop the sale by filing a petition asking the Court to strike or open the judgment, if the judgment was improperly entered. You may also ask the Court to postpone the sale for good cause.

3. You may also be able to stop the sale through other legal proceedings.

You may need an attorney to assert your rights. The sooner you contact one, the more chance you will have of stopping the sale. (See notice on page two on how to obtain an attorney.)

**YOU MAY STILL BE ABLE TO SAVE YOUR PROPERTY AND YOU HAVE OTHER RIGHTS EVEN IF THE SHERIFF'S SALE DOES TAKE PLACE.**

1. If the Sheriff's Sale is not stopped, your property will be sold to the highest bidder. You may find out the price bid by calling Stern & Eisenberg, PC, at telephone number (215) 572-8111.

2. You may be able to petition the Court to set aside the sale if the bid price was grossly inadequate compared to the value of your property.

3. The sale will go through only if the buyer pays the Sheriff the full amount due in the sale. To find out if this has happened you may call Stern & Eisenberg, PC, at telephone number (215) 572-8111.

4. If the amount due from the buyer is not paid to the Sheriff, you will remain the owner of the property as if the sale never happened.

5. You have a right to remain in the property until the full amount due is paid to the Sheriff and the Sheriff gives a deed to the buyer. At that time, the buyer may bring legal proceedings to evict you.

6. You may be entitled to a share of the money which was paid for your house. A Schedule of distribution of the money bid for your house will be filed by the Sheriff on a date specified by the Sheriff no later than 30 days after the sale date. This Schedule will state who will be receiving that money. The money will be paid out in accordance with this schedule unless exceptions (reasons why the proposed distribution is wrong) are filed with the Sheriff within ten (10) days after the date of filing of said schedule. You should check with the Sheriff's Office by calling **(610) 891-4296** to determine the actual date of filing of said schedule.

7. You may also have other rights and defenses, or ways of getting your house back, if you act immediately after the sale.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE LISTED BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

Delaware County Bar Association (Lawyer Referral)
Lawyers` Reference Service
Front & Lemon Streets
Media, PA 19063
(610) 566-6625

STERN & EISENBERG, PC
1581 MAIN STREET, SUITE 200
THE SHOPS AT VALLEY SQUARE
WARRINGTON, PA 18976
TELEPHONE: (215) 572-8111
FACSIMILE: (215) 572-5025
(COUNSEL FOR PLAINTIFF)

**IN THE COURT OF COMMON PLEAS OF PENNSYLVANIA**
**FOR DELAWARE COUNTY**

| | |
|---|---|
| U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3<br>Plaintiff<br>v. | Civil Action No. : CV-2025-001332 |
| DDH FUND, LP, a Delaware limited partnership<br>Defendant | MORTGAGE FORECLOSURE |

RE: PREMISES: **9000 West Chester Pike, Upper Darby, PA 19082-2606**

Dear Sir or Madam:

Please be advised that I represent the above creditor that has a judgment against the above Defendant(s). As a result of a default, the above referenced premises, also described on the attached sheet, will be sold by the Sheriff of Delaware County on **February 20, 2026 at 11:00 AM** at County Council Meeting Room, Government Center Building, Front Street & Veterans Square, Media, PA 19063 (subject to change without further notice).

The sale is being conducted pursuant to the judgment in the amount of $281,726.36 together with interest, costs and such other allowed amounts, thereon entered in the above-matter in favor of the Plaintiff against the above-named Defendant who is/are also the real owner of said premises. I have discovered that you may have a lien and/or interest in the premises to be sold. This notice is given so that you can protect your interest, if any, and/or the lien you have on the premises. If you have any questions regarding the type of lien or effect of the Sheriff Sale upon your lien, we urge you to CONTACT YOUR ATTORNEY, as we are not permitted to give you legal advice.

A Schedule of distribution will be filed by the Sheriff on a date specified by the Sheriff no later than 30 days after the sale date and the distribution will be made in accordance with the schedule unless exceptions are filed thereto within ten (10) days thereafter.

STERN & EISENBERG, PC

By: ***s/ Steven P. Kelly, Esq.***
Steven P. Kelly, Esq.
Attorney for Plaintiff

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, hereditaments and appurtenances, situate in Upper Darby Township, County of Delaware and State of Pennsylvania, and described according to a Survey thereof made 10/26/1928 as follows, to wit:

BEGINNING at the intersection of the Northwesterly side of Kirklyn Avenue (50 feet wide) and the Southwesterly side of West Chester Pike (67 feet wide).
CONTAINING in front or breadth on the said West Chester Pike 20 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said West Chester Pike, the Southeasterly line thereof extending along the Northwesterly side of Kirklyn Avenue, 130 feet.

BEING 9000 West Chester Pike

BEING Folio No. 16-08-022813-00

Premises being: 9000 West Chester Pike, Upper Darby, PA 19082-2606

Parcel No. 16-08-02813-00

**BEING** the same premises which Edward McLoughlin by Deed dated August 2, 2021 and recorded in the Office of Recorder of Deeds of Delaware County on September 23, 2021 at Book 6744, Page 5263 as Instrument 2021072810 granted and conveyed unto DDH FUND, LP.

FILED
11-04-2025 12:30 PM
OFFICE OF JUDICIAL SUPPORT
DELAWARE COUNTY, PA

# EXHIBIT "F"

# DO NOT DETACH

10362428-0006P

**Instrument Number: 2026032263**
**Volume/Page:** RECORD BK 7154 PG 2685
**Recorded Date: 08/18/2026 12:53:18 PM**

**Robert A. Auclair, Esq.**
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063
610-891-4152

**Transaction Number:** 1098475
**Collected By:** kiddk
**Document Type:** DEED
**Document Page Count:** : 4

**Return To (Mail):**
STERN & EISENBERG PC
1581 MAIN ST
SUITE 200
WARRINGTON, PA 18976

**Parcel ID:** 16-08-02813-00

| **Fees:** | |
|---|---|
| RECORDING FEES: | $37.50 |
| AFFORDABLE HOUSING FEE: | $18.00 |
| COUNTY IMPROVEMENT FUND: | $5.00 |
| ACT 152 FEE: | $15.00 |
| JCS/ATJ FEE: | $41.25 |
| WRIT TAX: | $0.50 |
| **Total Fees:** | $117.25 |
| **Amount Paid:** | $117.25 |
| **Amount Due:** | $0.00 |

**Instrument Number:** 2026032263
**Volume/Page:** RECORD BK 7154 PG 2685
**Recorded Date:** 08/18/2026 12:53:18 PM

**OFFICIAL RECORDING COVER PAGE**

**DO NOT DETACH**

THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has been corrected. The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Sheriff's Deed

# Know all Men by these Presents

THAT, I, **SIDDIQ KAMARA** Sheriff of the County of DELAWARE

In the Commonwealth of Pennsylvania, for and in consideration of the sum of

One________________________________________________ ($1.00)

dollar to me in hand paid, do hereby grant and convey to U.S. Bank National Association, as Trustee for Velocity Commercial Capital Trust 2021-3

## DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected, hereditaments and appurtenances, situate in Upper Darby Township, County of Delaware and State of Pennsylvania, and described according to a Survey thereof made 10/26/1928 as follows, to wit:

BEGINNING at the intersection of the Northwesterly side of Kirklyn Avenue (50 feet wide) and the Southwesterly side of West Chester Pike (67 feet wide).
CONTAINING in front or breadth on the said West Chester Pike 20 feet and extending of that width in length or depth Southwestwardly between parallel lines at right angles with the said West Chester Pike, the Southeasterly line thereof extending along the Northwesterly side of Kirklyn Avenue, 130 feet.

BEING 9000 West Chester Pike

Premises being: 9000 West Chester Pike, Upper Darby, PA 19082-2606

Parcel No. 16-08-02813-00

**BEING** the same premises which Edward McLoughlin by Deed dated August 2, 2021 and recorded in the Office of Recorder of Deeds of Delaware County on September 23, 2021 at Book 6744, Page 5263 as Instrument 2021072810 granted and conveyed unto DDH FUND, LP.

The same having been sold by me to the said grantee, on the 20th day of February Anno Domini two thousand and twenty-six after due advertisement, according to the law, under and by virtue of a writ of Execution issued-Decree entered* on the 5th day of November Anno Domini two thousand and twenty-five out of the Court of Common Pleas Delaware County as of Term, two thousand and twenty-five number 001332 at the suit of U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3 v. DDH FUND, LP, a Delaware limited partnership.

In Witness whereof, I have hereunto affixed by signature,

this 17 day of August Anno Domini two thousand and Twenty Twenty Six

SEALED AND DELIVERED
IN THE PRESENCE OF

SIDDIQ KAMARA, Sheriff

*Eliminate which not applicable

Commonwealth of Pennsylvania

ss.

County of Delaware

On this, the 17th day of August 2026, before me

the undersigned Officer, personally appeared Siddiq Kamara
Sheriff of the County of Delaware, known to me (or satisfactorily proven) to be the person described in the foregoing instrument, and acknowledged that he executed the same in the capacity therein stated and for the purposes therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

Mary J. Walk
Prothonotary

Writ No. 25-001332

# Deed = Poll

SIDDIQ KAMARA *Sheriff*

TO

U.S. Bank National Association, as Trustee for Velocity Commercial Capital Trust 2021-3

U.S. Bank National Association, as Trustee for Velocity Commercial Capital Loan Trust 2021-3
v. : 25-001332
DDH FUND, LP, a Delaware limited partnership

Premises:
9000 West Chester Pike
Upper Darby Twp., PA

Stern & Eisenberg PC
1581 Main St Ste 200
The Shops @ Valley Sq
Warrington PA 18976

The SK of the within-named Grantee is
c/o Velocity Commercial Capital
2945 Townsgate Road, Suite #110
Westlake Village, CA 91361
On behalf of the Grantee

SK

pennsylvania DEPARTMENT OF REVENUE (EX) MOD 06-19 (FI)

1830019105

# REV-183

BUREAU OF INDIVIDUAL TAXES
PO BOX 280603
HARRISBURG, PA 17128-0603

## REALTY TRANSFER TAX STATEMENT OF VALUE

COMPLETE EACH SECTION

| RECORDER'S USE ONLY | |
|---|---|
| State Tax Paid | 0 |
| Book 7154 | Page 2605 |
| Instrument Number | 202603 2263 |
| Date Recorded | 08/18/2026 |

## SECTION I — TRANSFER DATA

| | | | |
|---|---|---|---|
| Date of Acceptance of Document | | | |
| Grantor(s)/Lessor(s)<br>Delaware County Sheriff | Telephone Number<br>(610) 891-4296 | Grantee(s)/Lessee(s)<br>U.S. Bank National Association, as Trustee for Velocity Commercial Capital Trust 2021-3 | Telephone Number |
| Mailing Address<br>201 W. Front Street, Room 101, County Courthouse | | Mailing Address<br>2945 Townsgate Road, Suite #110 | |
| City<br>Media | State PA / ZIP Code 19063 | City<br>Westlake Village | State CA / ZIP Code 91361 |

## SECTION II — REAL ESTATE LOCATION

| | | |
|---|---|---|
| Street Address<br>9000 West Chester Pike | City, Township, Borough<br>Upper Darby | |
| County<br>Delaware | School District<br>Upper Darby | Tax Parcel Number<br>16-08-02813-00 |

## SECTION III — VALUATION DATA

Was transaction part of an assignment or relocation? ☐ YES ☒ NO

| | | |
|---|---|---|
| 1. Actual Cash Consideration<br>$1.00 | 2. Other Consideration<br>+ 0.00 | 3. Total Consideration<br>=$1.00 |
| 4. County Assessed Value<br>$156,100.00 | 5. Common Level Ratio Factor<br>x $1.74 | 6. Computed Value<br>= $271,614.00 |

## SECTION IV — EXEMPTION DATA – Refer to instructions for exemption status.

| | | |
|---|---|---|
| 1a. Amount of Exemption Claimed<br>$271,614.00 | 1b. Percentage of Grantor's Interest in Real Estate<br>100% | 1c. Percentage of Grantor's Interest Conveyed<br>100% |

**2. Fill in the Appropriate Oval Below for Exemption Claimed.**

- ☐ Will or intestate succession, ______________________ (Name of Decedent) (Estate File Number)
- ☐ Transfer to a Trust, (attach complete copy of trust agreement and all amendments.)
- ☐ Transfer from a trust. (Attach complete copy of trust agreement and all amendments.)
- ☐ Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)
- ☐ Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)
- ☑ Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of mortgage and note/assignment.)
- ☐ Corrective or confirmatory deed. (Attach complete copy of the deed to be corrected or confirmed.)
- ☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)
- ☐ Other (Provide a detailed explanation of exemption claimed. If more space is needed attach additional sheets.)

## SECTION V — CORRESPONDENT INFORMATION – All inquiries may be directed to the following person:

| | | | |
|---|---|---|---|
| Name<br>Steven P. Kelly, Esquire | | Telephone Number<br>[redacted]-8111 | |
| Mailing Address<br>1581 Main Street, Ste. 200, The Shops at Valley Square | City<br>Warrington | State<br>PA | ZIP Code<br>18976 |

Under penalties of law, I declare that I have examined this statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| | |
|---|---|
| Signature of Correspondent or Responsible Party | Date<br>5/8/26 |

FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.