**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; *and* | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC; | Case No. 8:26-bk-08030-CPM |
| Debtors. | |

**NOTICE OF FILING REDLINE OF DEBTORS' JOINT FIRST AMENDED PLAN OF LIQUIDATION**

The above-captioned debtors and debtors in possession, by and through their undersigned counsel, attach hereto for filing a redline version of the *Debtors' Joint First Amended Plan of Liquidation*.

***Remainder of Page Left Intentionally Blank***

Dated: September 21, 2026

Respectfully submitted,

**PACK LAW**
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500

By: * /s/ Joseph A. Pack*
Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 21, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will provide notice of such filing to all parties registered to receive electronic notices of filing in this case.

By: */s/ Joseph A. Pack*
Joseph A. Pack

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| ______________________ | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; *and* | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC, | Case No. 8:26-bk-01640-CPM |
| Debtors. | |

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| ______________________ | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; *and* | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC | Case No. 8:26-bk-08030-CPM |
| Debtors. | |

**DEBTORS' JOINT FIRST AMENDED PLAN OF LIQUIDATION**

THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED OR PRELIMINARILY APPROVED BY THE BANKRUPTCY COURT. THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. NOTHING CONTAINED IN THIS CHAPTER 11 PLAN SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE EFFECTIVE DATE OF THIS PLAN ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON ANY OF THE PARTIES HERETO.

PACK LAW
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146

Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*

Dated: September 21, 2026~~September 5, 2026~~

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. DEFINED TERMS AND RULES OF INTERPRETATION ..... 1
A. Defined Terms ..... 1
B. Rules of Interpretation ..... 13
C. Computation of Time ..... 14
D. Governing Law ..... 14
E. Reference to Monetary Figures ..... 14
F. Controlling Document ..... 15
III. UNCLASSIFIED CLAIMS ..... 15
A. Administrative Expense Claims ..... 15
B. Professional Fee Claims ..... 16
C. Priority Tax Claims ..... 16
D. United States Trustee Statutory Fees ..... 17
IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 17
A. Classification of Claims and Interests ..... 17
B. Treatment of Claims and Interests ..... 18
Class 1 - First Mortgage Secured Claims ..... 18
Class 2 – Judgment Lien Claims ..... 20
Class 3 - Municipal Lien Claims ..... 21
Class 4 - Other Secured Claims ..... 22
Class 5 - Priority Non-Tax Claims ..... 23
Class 6 - General Unsecured Claims ..... 23
Class 7 - Subordinated Section 510(b) Claims ..... 24
Class 8 - Intercompany Claims ..... 24
Class 9 - Government Agency and Regulatory Claims ..... 25
Class 10 – Equity Interests ..... 25
C. Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ..... 26
D. Elimination of Vacant Classes ..... 26
E. Controversy Concerning Impairment ..... 26
F. Subordinated Claims ..... 26
V. MEANS FOR IMPLEMENTATION OF THE PLAN ..... 26
A. Substantive Consolidation ..... 26

B. Establishment of Liquidating Trust ........ 27
C. Liquidating Trust Assets ........ 28
D. Election and Contribution of Contributed Claims ........ 28
E. Liquidating Trustee ........ 29
F. Corporate Action ........ 31
G. Section 1146(a) Exemption ........ 31
H. Dissolution of the Creditors' Committee ........ 32
I. Discharge of Examiner ........ 32
VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 32
A. Rejection of Executory Contracts and Unexpired Leases ........ 32
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ........ 33
VII. PROVISIONS GOVERNING DISTRIBUTIONS ........ 33
A. Distribution Record Date ........ 33
B. Method of Payment ........ 34
C. Reserve of Cash Distributions ........ 34
D. Distribution After Allowance ........ 34
E. Delivery of Distributions ........ 34
F. Fractional Dollars; *De Minimis* Distributions ........ 34
G. Excess Funds ........ 35
H. Unclaimed Distributions ........ 35
I. Set-Off ........ 35
J. Maximum Recovery and Postpetition Interest ........ 35
K. Allocation of Distributions Between Principal and Interest ........ 36
L. Prepayment. ........ 36
M. Claims Paid or Payable by Third Parties ........ 36
VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ........ 36
A. Allowance of Claims ........ 36
B. No Distributions Pending Allowance ........ 37
C. Claims Administration ........ 37
D. Estimation of Claims ........ 37
E. Single Satisfaction of Claims ........ 37
F. Time to File Objections to Claims ........ 38
G. Disallowance of Claims ........ 38
H. Distributions After Allowance ........ 38

IX. RELEASES, INJUNCTION AND RELATED PROVISIONS ..... 38
A. Discharge of Debtors ..... 38
B. Releases by Debtors ..... 38
C. Exculpation. ..... 40
D. Preservation of Causes of Action ..... 40
E. Injunction. ..... 41
F. Exclusions from Releases ..... 42
G. Other Exclusions and Limitations on Liability. ..... 43
H. Protections Against Discriminatory Treatment ..... 43
I. Document Retention ..... 43
J. Term of Injunctions or Stays ..... 43
K. Termination of All Employee and Workers' Compensation Benefits. ..... 44
X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ..... 44
A. Conditions Precedent to the Effective Date for the Plan ..... 44
B. Substantial Consummation ..... 44
C. Effect of Failure of Conditions ..... 44
XI. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ..... 45
A. Modification and Amendments ..... 45
B. Effect of Confirmation on Modifications ..... 45
C. Revocation or Withdrawal of Plan ..... 45
XII. RETENTION OF JURISDICTION ..... 45
XIII. MISCELLANEOUS PROVISIONS ..... 47
A. Immediate Binding Effect ..... 47
B. Additional Documents ..... 47
C. Payment of Statutory Fees ..... 47
D. Successors and Assigns ..... 48
E. Notices ..... 48
F. Entire Agreement ..... 49
G. Exhibits ..... 49
H. Non-Severability of Plan Provisions ..... 49
I. Closing of Chapter 11 Cases ..... 49
J. Conflicts ..... 49
K. Rates ..... 50
~~I. INTRODUCTION ..... 1~~

~~II. DEFINED TERMS AND RULES OF INTERPRETATION ........ 1~~
~~A. Defined Terms ........ 1~~
~~B. Rules of Interpretation ........ 11~~
~~C. Computation of Time ........ 12~~
~~D. Governing Law ........ 13~~
~~E. Reference to Monetary Figures ........ 13~~
~~F. Controlling Document ........ 13~~
~~III. UNCLASSIFIED CLAIMS ........ 13~~
~~A. Administrative Expense Claims ........ 13~~
~~B. Professional Fee Claims ........ 14~~
~~C. Priority Tax Claims ........ 15~~
~~D. United States Trustee Statutory Fees ........ 15~~
~~IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ........ 15~~
~~A. Classification of Claims and Interests ........ 15~~
~~B. Treatment of Claims and Interests ........ 16~~
~~Class 1 - First Mortgage Secured Claims ........ 16~~
~~Class 2 – Judgment Lien Claims ........ 18~~
~~Class 3 - Municipal Lien Claims ........ 19~~
~~Class 4 – Other Secured Claims ........ 20~~
~~Class 5 – Priority Non-Tax Claims ........ 21~~
~~Class 6 – General Unsecured Claims ........ 21~~
~~Class 7 – Subordinated Section 510(b) Claims ........ 22~~
~~Class 8 – Intercompany Claims ........ 22~~
~~Class 9 – Government Agency and Regulatory Claims ........ 23~~
~~Class 10 – Equity Interests ........ 23~~
~~C. Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ........ 24~~
~~D. Elimination of Vacant Classes ........ 24~~
~~E. Controversy Concerning Impairment ........ 24~~
~~F. Subordinated Claims ........ 24~~
~~V. MEANS FOR IMPLEMENTATION OF THE PLAN ........ 24~~
~~A. Substantive Consolidation ........ 24~~
~~B. Establishment of Liquidating Trust ........ 25~~
~~C. Liquidating Trust Assets ........ 26~~

~~D. Liquidating Trustee ........ 26~~
~~E. Corporate Action ........ 28~~
~~F. Section 1146(a) Exemption ........ 29~~
~~G. Dissolution of the Creditors' Committee ........ 29~~
~~H. Discharge of Examiner ........ 29~~
~~VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 30~~
~~A. Rejection of Executory Contracts and Unexpired Leases ........ 30~~
~~B. Claims Based on Rejection of Executory Contracts or Unexpired Leases ........ 30~~
~~VII. PROVISIONS GOVERNING DISTRIBUTIONS ........ 31~~
~~A. Distribution Record Date ........ 31~~
~~B. Method of Payment ........ 31~~
~~C. Reserve of Cash Distributions ........ 31~~
~~D. Distribution After Allowance ........ 31~~
~~E. Delivery of Distributions ........ 31~~
~~F. Fractional Dollars; *De Minimis* Distributions ........ 32~~
~~G. Excess Funds ........ 32~~
~~H. Unclaimed Distributions ........ 32~~
~~I. Set-Off ........ 32~~
~~J. Maximum Recovery and Postpetition Interest ........ 33~~
~~K. Allocation of Distributions Between Principal and Interest ........ 33~~
~~L. Prepayment ........ 33~~
~~M. Claims Paid or Payable by Third Parties ........ 33~~
~~VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ........ 34~~
~~A. Allowance of Claims ........ 34~~
~~B. No Distributions Pending Allowance ........ 34~~
~~C. Claims Administration ........ 34~~
~~D. Estimation of Claims ........ 34~~
~~E. Single Satisfaction of Claims ........ 35~~
~~F. Time to File Objections to Claims ........ 35~~
~~G. Disallowance of Claims ........ 35~~
~~H. Distributions After Allowance ........ 35~~
~~IX. RELEASES, INJUNCTION AND RELATED PROVISIONS ........ 36~~
~~A. Discharge of Debtors ........ 36~~
~~B. Releases by Debtors ........ 36~~

~~C. Exculpation. 37~~
~~D. Preservation of Causes of Action 38~~
~~E. Injunction. 39~~
~~F. Exclusions from Releases 40~~
~~G. Other Exclusions and Limitations on Liability. 40~~
~~H. Protections Against Discriminatory Treatment 40~~
~~I. Document Retention 40~~
~~J. Term of Injunctions or Stays 40~~
~~K. Termination of All Employee and Workers' Compensation Benefits. 41~~
~~X. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN 41~~
~~A. Conditions Precedent to the Effective Date for the Plan 41~~
~~B. Substantial Consummation 41~~
~~C. Effect of Failure of Conditions 41~~
~~XI. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN 42~~
~~A. Modification and Amendments 42~~
~~B. Effect of Confirmation on Modifications 42~~
~~C. Revocation or Withdrawal of Plan 42~~
~~XII. RETENTION OF JURISDICTION 42~~
~~XIII. MISCELLANEOUS PROVISIONS 44~~
~~A. Immediate Binding Effect 44~~
~~B. Additional Documents 44~~
~~C. Payment of Statutory Fees 44~~
~~D. Successors and Assigns 45~~
~~E. Notices 45~~
~~F. Entire Agreement 46~~
~~G. Exhibits 46~~
~~H. Non-Severability of Plan Provisions 46~~
~~I. Closing of Chapter 11 Cases 46~~
~~J. Conflicts 46~~
~~K. Rates 46~~

# I. INTRODUCTION

RAD Diversified REIT, Inc. and its debtor affiliates, debtors and debtors in possession in the above-captioned bankruptcy cases, propose this Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. The Plan entails the formation of a post-confirmation trust to (i) administer the remaining assets of the Estates following the Sale of various of the Debtors' assets, which principally consist of any remaining real property assets and litigation claims against a variety of targets, including but not necessarily limited to certain current and former officers and directors and equity owners of the Debtors, and (ii) distribute the proceeds thereof as proposed herein and in the Liquidating Trust Agreement.

The Debtors are the proponents of the Plan. [The Committee has reviewed and approved the Plan and, as set forth in the appended Committee Support Letter, encourages holders of Claims and Interests to vote to "Accept" the Plan.]

The Plan is accompanied by the Disclosure Statement. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of, among other things, Debtors' historical operations, events leading to the bankruptcy filing, the Sale during the Chapter 11 Cases, and further explanation regarding the terms and potential implications of the Plan.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

# II. DEFINED TERMS AND RULES OF INTERPRETATION

## A. Defined Terms

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"Administrative Expense Claim" means Claims that have been timely filed, pursuant to the deadline and procedures set forth in any bar date order or Plan Confirmation Order, as applicable, or late filed Claims otherwise allowed by Final Order for costs and expenses of administration under sections 503(b), 507(a)(2) or 1114(e)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or costs for services and payments for goods); (b) administrative expense claims Allowed under section 503(b)(9) of the Bankruptcy Code (if any); and (c) Professional Fee Claims.

"Administrative Expense Claim Bar Date" means [DATE] at [TIME] p.m. (prevailing Eastern ~~Standard~~ Time), the deadline for filing requests for allowance and payment of Administrative Expense Claims, other than Professional Fee Claims, established by order of the Bankruptcy Court.

"Allowed" means, with respect to Claims or Equity Interests: (a) any Claim or Equity Interest for which a proof of Claim or Equity Interest was timely filed (or a Claim or Equity Interest

that does not require the filing of a proof of Claim or Equity Interest as provided for under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court); (b) any Claim or Equity Interest which has been or hereafter is listed by Debtors in the Schedules as liquidated in amount and not disputed or contingent and for which no superseding proof of Claim or Equity Interest has been filed; (c) any Claim or Equity Interest allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; and (d) any Claim or Equity Interest that is compromised, settled, or otherwise resolved; *provided* that with respect to any Claim or Equity Interest described in clauses (a) and (b), such Claim or Equity Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Equity Interest, no objection to the allowance was timely filed (including but not limited to, an objection relating to the timeliness of the filing of the proof of claim), or if such timely objection was filed, the Claim or Equity Interest is subsequently Allowed by a Final Order or by compromise, settlement, or other resolution. Notwithstanding anything herein to the contrary, Claims or Equity Interests allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims or Equity Interests for any other purpose.

"Assets" means all tangible and intangible assets of every kind and nature of Debtors and their Estates within the meaning of section 541 of the Bankruptcy Code.

"Avoidance Actions" means all rights to avoid transfers or distributions and recover any such avoided transfers or distributions for the benefit of the Estates or Liquidating Trust, as applicable, under chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code, or under similar or related state or federal statutes and common law, and other similar avoidance claims, rights, and causes of action, whether or not demand has been made or litigation has been commenced as of the Effective Date.

"Ballot" means the ballot on which each holder of a Claim entitled to vote to accept or reject this Plan casts such vote and, where applicable, through which an eligible Holder may separately elect to contribute its Contributed Claims to the Liquidating Trust.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq*., as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time.

"Beneficial Interests" means interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions, other than Professionals or other administrative claimants.

"Beneficiaries" or "Liquidating Trust Beneficiaries" means holders of Beneficial Interests in the Liquidating Trust.

"Business Day" means any day other than a Saturday, Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

"Cash" means legal tender of the United States of America and equivalents thereof.

"Causes of Action" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, suspected or unsuspected, assertable, directly or derivatively, in contract, tort, law, equity, or otherwise. Without limiting the breadth of the foregoing, Causes of Action include: (a) Avoidance Actions, (b) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (c) the right to object to or otherwise contest Claims or Interests; (d) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (e) claims and defenses based on fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) the Retained Causes of Action, Insider Claims, and D&O Claims.

"Chapter 11 Cases" means the bankruptcy cases commenced by the filing of voluntary petitions for relief for the Debtors (other than The Seminar Solution, LLC) on March 1, 2026 (and with respect to The Seminar Solution, LLC, on September 4, 2026), under chapter 11 of the Bankruptcy Code, which are jointly administered in case no. 8:26-bk-01636 and are currently pending in the Bankruptcy Court.

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code. As used herein, "Class [__] Claim(s)" shall refer to the Claims classified into the specified Class of this Plan. For the avoidance of doubt, any non-insider investor in a Debtor shall be deemed for purposes of the Plan to be a Creditor with a Claim against the Debtors in the principal amount of such investment.

"Claims Agent" and "Balloting Agent", as applicable, means Epiq Corporate Restructuring, LLC.

"Claims Register" means the official register of Claims and Interests maintained in the Chapter 11 Cases by the Claims Agent, or such other register, docket, or record of Claims and Interests as may be maintained by or on behalf of the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or the Bankruptcy Court, as the same may be amended, modified, or supplemented from time to time.

"Claims Objection Deadline" means the date that is one hundred and eighty (180) days after the Effective Date or such later date as may be approved by the Bankruptcy Court upon motion of the Liquidating Trustee.

"Class" means any group of substantially similar Claims or Equity Interests classified by this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. As used herein,

"Class" followed by a number (*e.g.*, Class 1, Class 2, etc.) shall refer to the specified Class designated in this Plan.

"Class A Beneficial Interests" means Beneficial Interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions from the Liquidating Trust, until all Class A Beneficial Interests are paid in full.

"Class B Beneficial Interests" means Beneficial Interests in the Liquidating Trust entitling each holder thereof to receive its Pro Rata Share of Distributions from the Liquidating Trust *after* all of the Class A Beneficial Interests are paid in full. All Class B Beneficial Interests shall rank pari passu with one another, without regard to the Class or subclass giving rise to such Class B Beneficial Interests.

"Clerk" means the clerk of the Bankruptcy Court.

"Collateral" means any Asset of the Estates subject to a lien, charge, or other encumbrance to secure the payment or performance of any Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"Contributed Claim" means any direct Cause of Action that any Contributing Claimant has against any Person (other than a Debtor) that had a direct relationship with the Debtors, their predecessors, or respective Affiliates and that harmed such Contributing Claimant in the claimant's capacity as a creditor of the Debtors, including (a) any Cause of Action based on, arising out of, or related to the marketing, sale, and issuance of securities or investments that were offered by the Debtors or their Affiliates, or any Person acting on behalf of the Debtors or their Affiliates; (b) any Cause of Action based on, arising out of, or related to any alleged misrepresentation in connection with any of the Debtors' (or their Affiliates') financial information, business operations, or related internal controls; and (c) any Cause of Action based on, arising out of, or related to any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' (or their Affiliates') conduct prior to the Petition Date; *provided, however*, that Contributed Claims do not include (i) any derivative claims of the Debtors, (ii) any direct claims against the Released Parties, or (iii) any claims that cannot be assigned under applicable law.

"Contributing Claimant" means any Holder of a Claim or Interest that elects through its Ballot, in accordance with the procedures set forth in Article VI.C of the Disclosure Statement, to contribute its Contributed Claims to the Liquidating Trust in order for the Liquidating Trustee to pursue such Contributed Claims for the benefit of Holders of Allowed Claims entitled to receive a distribution under the Plan.

"Creditors' Committee" or "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Chapter 11 Cases on or about March 27, 2026, and the members thereof, as such membership may be amended.

"Creditor" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code. As used herein, "Class [__] Creditor(s)" shall refer to the Creditor(s) holding Allowed Claims classified into the specified Class of this Plan.

"CRO" means, individually and collectively, as applicable, the Chief Restructuring Officer for Debtors, Katie Goodman, and GGG.

"Debtors" means each of RAD Diversified REIT, Inc.; RAD Diversified OZ Fund, LP; DHI Fund, LLC; DHI Holdings, LP; ~~and~~ DDH Fund, LLC; and The Seminar Solution, LLC;~~,~~ debtors and debtors in possession in the above-captioned cases.

"Debtors in Possession" means Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1107 and 1108 of the Bankruptcy Code.

"Disclosure Statement" means the *First Amended Disclosure Statement for the Debtors' First Amended Joint Plan of Liquidation*, including, without limitation, all exhibits, supplements, appendices, and schedules thereto, either in their present form or as the same may be altered, amended, or modified.

"Disputed" means, with respect to any Claim or Interest, one that (a) is or hereafter may be listed on the Schedules as disputed, contingent, or unliquidated, (b) is subject to a timely objection to the allowance of such Claim or Interest, in whole or in part, or (c) is otherwise not an Allowed Claim or Allowed Interest, in whole or in part.

"Disputed Claims Reserve" means the reserve, if any, established by the Liquidating Trustee for the benefit of holders of Disputed Claims.

"Distribution" means any distribution, disbursement or transfer of Assets to holders of Allowed Claims or Beneficiaries under or pursuant to this Plan and/or the Liquidating Trust Agreement.

"Distribution Record Date" means the record date for establishing the holders of Allowed Claims for purposes of making Distributions under the Plan, which date shall be the Effective Date.

"D&O Claims" means Claims and Causes of Action against former and current directors, managers and officers of Debtors; *provided* that D&O Claims shall not include any Claims and Causes of Action against the CRO, the Independent Director, or any Person receiving a release under the Plan.

"D&O Coverage" means the extent of insurance coverage for the Debtors' directors and officers under the D&O Policies.

"D&O Policies" means all applicable liability insurance policies (including primary insurance, excess insurance, or tail insurance policies) of Debtors applicable to or otherwise extending coverage to the directors and officers of Debtors.

"Effective Date" means the date on which the conditions specified in Article X of this Plan have been satisfied or waived in accordance with the terms hereof.

"Entity" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"Equity Interest" or "Interest" means any direct equity, membership, or other ownership interest in Debtors. As used herein, "Class 10 Equity Interest(s)" refers to the Equity Interests classified in the specified Class of this Plan.

"Estates" means the estates of Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

"Examiner" means Maria M. Yip and the firm of Yip Associates.

"Exculpated Parties" means each of the following solely in its capacity as such: (i) Debtors, (ii) Debtors' independent director, Michael Roye, (iii) Debtors' chief restructuring officer, Katie Goodman and GGG, (iv) the Committee and its members, (v) the Examiner, and (vi) the professionals and advisors of the foregoing parties whose retention has been approved by the Bankruptcy Court.

"Exculpation Timeframe" means the period from the Petition Date through and including the Effective Date.

"Executory Contract" means any executory contract or unexpired lease, within the meaning of section 365 of the Bankruptcy Code, to which a Debtor is a party or beneficiary or otherwise constituting an Asset of the Estates, in whole or in part.

"Final Order" means an Order of the Bankruptcy Court, or other court of competent jurisdiction to hear matters or appeals arising from or related to Debtors, the Estates, and/or Chapter 11 Cases, that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, to petition for certiorari, or to move for re-argument or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending; *provided, however,* that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

"First Mortgage Secured Claim" means any Secured Claim against a Debtor or its Estate, or against property of a Debtor or its Estate, arising from or relating to a mortgage, deed of trust, assignment of leases and rents, security agreement, or other consensual Lien or security interest in real property or interests in real property owned by such Debtor or its Estate, including any improvements, fixtures, rents, proceeds, or related Collateral, to the extent that the Holder of such Claim holds a first-priority Lien on such Collateral under applicable non-bankruptcy law, junior only to any valid, perfected, and unavoidable real estate tax liens, municipal liens, or similar governmental liens, if any, that are senior to such Holder's Lien under applicable non-bankruptcy law, including (but not necessarily limited to) those set forth in the First Mortgage Secured Claim Schedule; *provided*, *however*, for purposes of the Plan, each distinct loan or indebtedness giving rise to a First Mortgage Secured Claim shall constitute a single First Mortgage Secured Claim, without regard to the number of parcels or items of Collateral included in the applicable First Mortgage Secured Claim Collateral; *provided further*, that any parcel or item of Collateral that is the subject of a Final Order either (i) granting the Holder relief from the automatic stay or (ii) selling such Collateral and ordering the distribution of such sale proceeds, shall be excluded from

the applicable First Mortgage Secured Claim Collateral for purposes of treatment under the Plan. If, after giving effect to such exclusions, no Collateral remains securing such Claim for treatment under the Plan, such Secured Claim shall not constitute a First Mortgage Secured Claim and shall not be treated in Class 1..

"First Mortgage Secured Claim Collateral" means, with respect to any First Mortgage Secured Claim, all real property, interests in real property, improvements, fixtures, rents, proceeds, and other Collateral that, under applicable non-bankruptcy law and the applicable loan documents, secures the same indebtedness giving rise to such First Mortgage Secured Claim, whether consisting of one or multiple parcels or items of Collateral and whether evidenced by one or more mortgages, deeds of trust, assignments of leases and rents, security agreements, or other security instruments. For the avoidance of doubt, the identification or treatment of multiple parcels or items of Collateral as a single First Mortgage Collateral Package under the Plan or the First Mortgage Secured Claim Schedule shall not create, expand, cross-collateralize, or otherwise alter any Lien or security interest that does not otherwise exist under applicable law.

"First Mortgage Secured Claim Schedule" means the schedule, the initial version of which is attached as Exhibit B to the Disclosure Statement, as amended or supplemented by the Debtors or the Liquidating Trustee, including but not limited to any such amendments or supplements contained in the Plan Supplement, and the operative version of which is incorporated into the Plan as if fully set forth herein. Each numbered entry on the First Mortgage Secured Claim Schedule shall correspond to a single First Mortgage Secured Claim and Class 1 subclass and may identify one or multiple parcels or items of Collateral comprising the applicable First Mortgage Secured Claim Collateral. For the avoidance of doubt, the identification of any Holder, Claim amount, Collateral, value, or other information on the First Mortgage Secured Claim Schedule shall be for informational purposes only and in connection with the Plan and shall not constitute an allowance of any Claim, a determination of the amount or secured status of any Claim, a valuation of any Collateral, a determination of the extent, validity, perfection, or priority of any Lien, or a waiver of any rights, claims, defenses, or objections of the Debtors, the Estates, the Liquidating Trust, or the Liquidating Trustee.

"GGG" means GGG Partners, LLC.

"General Bar Date" means, -except with respect to The Seminar Solution, LLC, July 10, 2026, the deadline for each Person or Entity, including without limitation, individuals, partnerships, corporations, joint ventures and trusts, other than Governmental Units, to file a proof of claim against Debtors for any Claim that arose prior to the Petition Date. With respect to The Seminar Solution, LLC, the term shall carry the same meaning, provided, however, that the date shall be

"General Unsecured Claim" means any Claim against Debtors or the Estates (a) that is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Government Agency and Regulatory Claim, or Subordinated Section 510(b) Claim, or (b) that is determined by the Bankruptcy Court to be a non-priority unsecured Claim; *provided*, for the avoidance of doubt, that General Unsecured Claims include any portion of a Secured Claim exceeding the value of the Estates' interest in the subject Collateral or subject to setoff, as determined pursuant to section 506(a) of the Bankruptcy Code; *provided, further*, that, in the case of a First Mortgage Secured

Claim, any determination of the value of the Collateral for such purpose shall be made by reference to the aggregate value of the applicable First Mortgage Secured Claim Collateral and not separately on a parcel-by-parcel basis; *provided*, *further*, that no Government Agency and Regulatory Claim shall constitute a General Unsecured Claim.

"Government Agency and Regulatory Claim" means any unsecured, nonpriority Claim held by a Governmental Unit, including any Claim arising from or relating to an investigation, subpoena, enforcement action, regulatory proceeding, judgment, settlement, consent order, restitution, disgorgement, reimbursement, damages, civil penalty, fine, cost, fee, or other monetary relief; *provided*, *however*, that a Government Agency and Regulatory Claim shall not include an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, First Mortgage Secured Claim, Judgment Lien Claim, Municipal Lien Claim, Other Secured Claim, Subordinated Section 510(b) Claim, or Intercompany Claim.

"Governmental Unit" shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

"Governmental Unit Bar Date" means August 28, 2026, the deadline for Governmental Units to file a proof of Claim against Debtors for a Claim that arose prior to the Petition Date.

"Holder" means, with respect to a Claim or Equity Interest, the record holder of such Claim or Equity Interest.

"Independent Director" means Michael Roye, as independent director of the Debtors.

"Impaired" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Insider" means any Person or Entity who is an insider of Debtors, as defined in section 101(31) of the Bankruptcy Code and under applicable law, including, without limitation, any current or former officer, director, manager, equity holder, or Affiliate of (i) Debtor or (ii) any of Debtors' Affiliates, or any Person that received a direct or indirect dividend or equity distribution from Debtors.

"Insider Claims" means all Claims and Causes of Action against any Insider of Debtors; *provided, however*, Insider Claims exclude any Claims and Causes of Action against the CRO or Independent Director.

"Insurance Policies" means all insurance policies under which Debtors, or any current or former officer, director, or agent of Debtors, is an insured, additional insured, beneficiary, or otherwise entitled to coverage.

"Intercompany Claim" means any Claim, right to payment, right to reimbursement, right to contribution, right of indemnity, right of subrogation, obligation, liability, debt, account payable, advance, loan, note, guaranty, contract claim, book-entry claim, or other claim or obligation, whether secured or unsecured, fixed or contingent, matured or unmatured, liquidated or unliquidated, disputed or undisputed, legal, equitable, or otherwise, under which any Debtor is or may be liable to: (a) any other Debtor; or (b) any non-Debtor entity that is an Insider or Affiliate

of any Debtor, in each case whether arising before, on, or after the Petition Date and whether reflected in the Debtors' books and records, asserted in a proof of claim, scheduled by any Debtor, or otherwise arising under applicable law. For the avoidance of doubt, an Intercompany Claim shall not include any Claim, Cause of Action, receivable, account, obligation, or other right to payment held by any Debtor against any non-Debtor entity, including any Insider or Affiliate of any Debtor.

"Judgment Lien Claim" means any Secured Claim against a Debtor or its Estate, or against property of a Debtor or its Estate, arising from or relating to a judgment, order, decree, abstract of judgment, transcript of judgment, docketed judgment, recorded judgment lien, or similar judicial lien, to the extent such Claim is Allowed and the Holder thereof holds a valid, perfected, enforceable, and unavoidable Lien on real property or other Collateral owned by such Debtor or its Estate under applicable non-bankruptcy law, junior only to any valid, perfected, and unavoidable real estate tax liens, municipal liens, or similar governmental liens, if any, and any other Liens senior to such Holder's Lien under applicable non-bankruptcy law.

"Lien" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge, right of first refusal or surrender right, or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code.

"Liquidating Trust" means the liquidating or litigation trust to be established on the Effective Date pursuant to and in accordance with the terms of this Plan, the Liquidating Trust Agreement, and the Confirmation Order.

"Liquidating Trust Advisors" means any firm(s) or individual(s) retained by the Liquidating Trustee to serve as ~~a~~ legal counsel or to provide other professional services in connection with the performance of any duties, responsibilities, or obligations under this Plan and the Liquidating Trust Agreement, for the period on or after the Effective Date.

"Liquidating Trust Agreement" means the agreement governing the Liquidating Trust, dated on or about the Effective Date, substantially in the form attached as Exhibit [•] to the Plan Supplement.

"Liquidating Trust Assets" means (a) all Assets of Debtors and the Estates as of the Effective Date, including, without limitation, (i) Cash on hand, (ii) Causes of Action, (iii) Privilege, ~~and~~ and (iv) any rights under the Insurance Policies, including the D&O Policies, or proceeds thereof; and (b) upon the Effective Date, all Contributed Claims.~~.~~

"Liquidating Trustee" means the trustee(s) and/or plan administrator(s) selected by the Committee in consultation with the CRO and identified in the Plan Supplement to act as trustee and administrator of the Liquidating Trust and its assets, and any successor thereto.

"Local Rules" means the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, as amended from time to time.

"Municipal Lien Claim" means any Secured Claim against a Debtor or its Estate, or against real property or interests in real property owned by a Debtor or its Estate, arising from or relating

to any municipal lien, code enforcement lien, utility lien, assessment lien, special assessment, water or sewer charge, sanitation charge, governmental charge, recorded municipal claim, or similar Lien or Claim asserted by any municipality, governmental unit, quasi-governmental authority, homeowners' association, condominium association, or similar entity, to the extent such Claim is secured by real property or interests in real property owned by such Debtor or its Estate and is not entitled to priority under applicable bankruptcy law or applicable non-bankruptcy law.

"Notice of Effective Date" means a notice to be filed with the Bankruptcy Court by Debtors indicating the Effective Date of the Plan.

"Order" means an order, decree, opinion, or judgment of the Bankruptcy Court, or other court of competent jurisdiction, pertaining to Debtors, the Estates, and/or Chapter 11 Cases.

"Other Secured Claims" means Claims (or portions thereof) other than First Mortgage Secured Claims, Judgment Lien Claims, Municipal Lien Claims, and Priority Tax Claims that are secured by a Lien on Collateral that is valid, perfected, and enforceable under applicable law as of the Petition Date.

"Person" shall have the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

"Petition Date" means March 1, 2026, the date on which Debtors (other than The Seminar Solution, LLC) commenced the Chapter 11 Cases.

"Plan Confirmation Date" or "Confirmation Date" means the date on which the Bankruptcy Court enters the Plan Confirmation Order.

"Plan Confirmation Hearing" or "Confirmation Hearing" means the hearing to be held by the Bankruptcy Court to consider approval and confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"Plan Confirmation Order" or "Confirmation Order" means an order entered by the Bankruptcy Court confirming this Plan.

"Plan Documents" means this Plan, the Disclosure Statement, the Plan Supplement, the Liquidating Trust Agreement, and all exhibits and schedules attached to or documents filed in support of any of the foregoing.

"Plan Proponent" means Debtors.

"Plan Supplement" means the appendix of any schedules or exhibits to the Plan, which Debtors shall file with the Bankruptcy Court and serve on necessary parties, and make available publicly on the Claims Agent's website for the Chapter 11 Cases, at least five (5) days prior to the deadline for submission of Ballots to vote to accept or reject the Plan.

"Priority Non-Tax Claim" means unsecured Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims or Priority Tax Claims.

"Priority Tax Claim" means an unsecured Claim, or applicable portion thereof, that is entitled to priority under sections 502(i) or 507(a)(8) of the Bankruptcy Code.

"Privilege" means the attorney-client privilege, work product protections, or other privilege, immunity (including without limitation those related to a common interest or a joint defense with other parties to the extent set forth in such documents), or protections from disclosure of any kind held by Debtors or the Estates as recognized under the Federal Rule of Evidence 501 and all other applicable law.

"Professional" means any Person or Entity employed by Debtors, the Committee, or other Estate representative in the Chapter 11 Cases pursuant to sections 327, 363, or 1103 of the Bankruptcy Code, as applicable, or otherwise pursuant to an Order of the Bankruptcy Court.

"Professional Fee Claim" means a Claim under sections 328, 330(a), 331, and/or 503 of the Bankruptcy Code for compensation of a Professional related to services rendered or expenses incurred in the Chapter 11 Cases.

"Proof of Claim" and "Proof of Interest" mean a proof of Claim or Interest, respectively, filed against any Debtor in the Chapter 11 Cases, including any amended or superseding proof of Claim or Interest, as applicable, together with any supporting documentation submitted therewith.

"Pro Rata Share" means, with respect to any Distribution on account of any Allowed Claim, a percentage represented by a fraction (i) the numerator of which shall be an amount equal to such Claim and (ii) the denominator of which shall be an amount equal to the aggregate amount of Allowed Claims in the same Class as the subject Claim, *provided* that in cases where Pro Rata Share is used in reference to a class of Beneficial Interests in the Liquidating Trust, Pro Rata Share means the portion that such holder's Claim bears to the aggregate amount of all Allowed Claims in all Classes entitled to such Beneficial Interests in the Liquidating Trust, without regard to the separate Plan Class or subclass in which such Claims are classified; *provided, further*, that in no case shall a Beneficial Interest in the Liquidating Trust confer an interest in any assets held by the Liquidating Trust prior to the Distribution of such assets.

"Rejection Damages Claim" means any Claim under section 502(g) of the Bankruptcy Code arising from, or relating to, the rejection of an Executory Contract pursuant to section 365(a) of the Bankruptcy Code by Debtors, as limited, in the case of a rejected employment contract or unexpired lease, by section 502(b) of the Bankruptcy Code.

"Released Party" and "Released Parties" means, individually and collectively, and solely in their capacities as such, (i) Debtors' professionals, which include only: (a) Pack Law as legal counsel to the Debtors, (b) Katie Goodman and GGG as CRO and support staff to Debtors, and (c) Michael Roye as independent director,[1] (ii) Greenberg Traurig, LLP as legal counsel to the

[1] For the avoidance of doubt, only the Professionals set forth in (i), (ii), and (iii) shall be included in the definition of a Released Party. Without limiting the generality of the foregoing, (a) Kho & Patel, Certified Public Accountants, a

Committee, and (iii) the Examiner and her professionals, which specifically include: (a) Maria M. Yip and Yip Associates, and (b) Baker & Hostetler LLP as legal counsel to the Examiner.

"Retained Causes of Action" means any and all Causes of Action constituting, in whole or in part, Assets of the Estates as of the Effective Date, including, without limitation, all existing or potential Causes of Action identified or described on Exhibit [•] to the Plan Supplement, that have not been expressly waived, released, settled, adjudicated to final judgment, or otherwise resolved prior to the Effective Date or under the terms of the Plan, and any and all counterclaims, compulsory or otherwise, to any claims or causes of action brought against Debtors, the Estates, or the Liquidating Trust.

"Sale" means the sale of any Assets of the Estates to a purchaser pursuant to a Final Order of the Bankruptcy Court authorizing the sale of such Assets pursuant to section 363 of the Bankruptcy Code.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs filed by Debtors pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b), as such schedules or statements may be amended or supplemented from time to time.

"Secured Claim" means a Claim: (a) secured by a Lien on collateral, which Lien is valid, perfected and enforceable, to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

"Solicitation Procedures Order" means an order entered by the Bankruptcy Court [Dkt. No. [•]] approving the Disclosure Statement and the solicitation of votes on the Plan.

"Statutory Fees" means any and all fees payable to the U.S. Trustee pursuant to section 1930 of title 28 of the United States Code and any interest thereupon.

"Subordinated Section 510(b) Claims" means any unsecured Claim that is subordinated to General Unsecured Creditors under section 510 of the Bankruptcy Code or other legal or equitable principles; *provided*, *however*, that a Government Agency and Regulatory Claim shall not constitute a Subordinated Section 510(b) Claim solely by reason of the treatment or subordination provided under the Plan.

"Surcharge Amount" means 15% of the winning bid for the sale of the Collateral comprising the applicable First Mortgage Secured Claim Collateral or securing the Class 2 Claim, up to a maximum $30,000.00 in Cash for such First Mortgage Secured Claim; *provided*, *however*, that in the event the winning bid or winning bids ~~is~~are not sufficient to pay, as applicable, the Class 1 or Class 2 Claim in full or the Holder of such Class 1 or Class 2 Claim acquires the Collateral by credit bid, the maximum amount is $15,000.00 in Cash.

Professional Corporation; (b) KPMG, LLP; (c) CrowdCheck Law LLP; (d) Dodson Robinette PLLC dba Crowdfunding Lawyers; (e) Deal Maker Securities, LLC; (f) Entoro Securities, LLC; (g) Alden Investment Group, Inc. f/k/a J. Alden Associates, Inc.; (h) SalemBridge Advisors, LLC; and/or (i) any other unnamed professional retained by the Debtors or their affiliates shall not be included in this definition of a Released Party.

"Unclaimed Distribution" means a Distribution that is not claimed by a holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

"Unclaimed Distribution Deadline" means the date that is three (3) months from the date of the subject Distribution.

"Unimpaired" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

"U.S. Trustee" or "United States Trustee" means the Office of the United States Trustee assigned to the Middle District of Florida, Tampa Division.

"Voting Deadline" means [•], 2026, at 5:00 p.m. (prevailing Eastern ~~Standard~~ Time).

"Voting Procedures" means the procedures approved by the Bankruptcy Court for voting to accept or reject the Plan.

### B. Rules of Interpretation

For purposes of the Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws; (9) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) the words "include" and "including," and

variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (15) any effectuating provisions may be interpreted in a manner that is consistent with the overall purpose and intent of the Plan; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (17) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (18) with respect to Liquidating Trust Assets, all references to "Debtors" or the "Estates" shall include the "Liquidating Trustee" or "Liquidating Trust," respectively, if such reference pertains to the period following the Effective Date; (19) with respect to Assets of the Estates and Liquidating Trust Assets, all references to the "Liquidating Trustee" or "Liquidating Trust" shall include "Debtors" or the "Estates," respectively, if such reference pertains to the period on or before the Effective Date; and (20) any capitalized term used but not otherwise defined herein shall have the meaning ascribed to that term as used in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C. Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. If any deadline established by the Plan shall occur on a day that is not a Business Day, such deadline shall be extended automatically, and without further action or Order, to the next Business Day. Any action to be taken or transaction to be completed on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date, and the Debtors shall retain all necessary authority to take such action or complete such transaction after the Effective Date; *provided* that Debtors, in their discretion, may assign such authority to the Liquidating Trustee.

**D. Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate or limited liability company governance matters relating to Debtors shall be governed by the laws of the state of incorporation or formation of Debtors.

**E. Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F. Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement with respect to the Plan, the terms of the relevant document in the Plan Supplement with respect to the Plan shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

## III. UNCLASSIFIED CLAIMS

### A. Administrative Expense Claims

Unless otherwise agreed by the holder of an Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash as follows: (a) if Allowed prior to the Effective Date, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date; (b) if Allowed on or after the Effective Date, as soon as practicable after the date such Claim is Allowed, but in no event later than 30 days after the date such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and Debtors, if agreed before the Effective Date, or the Liquidating Trustee, if agreed after the Effective Date; or (d) at such time and upon such terms as ordered by the Bankruptcy Court. The Liquidating Trust shall be responsible for the payment of any Allowed Administrative Expense Claims not paid in full on the Effective Date, which amount shall be paid from Liquidating Trust Assets; *provided* that holders of Allowed Administrative Expense Claims shall not constitute Beneficiaries of the Liquidating Trust solely on account of the right to payment of an Allowed Administrative Expense Claim from the Liquidating Trust after the Effective Date.

Unless previously Allowed by Final Order of the Bankruptcy Court or agreement of Debtors, holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on Debtors, and, if filed following the Effective Date, the Liquidating Trustee, requests for allowance of such Administrative Expense Claims, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable Order of the Bankruptcy Court, no later than the Administrative Expense Claim Bar Date.

Holders of Administrative Expense Claims that do not file and serve a motion for allowance of such Administrative Expense Claim(s) by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting an Administrative Expense Claim against Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or their respective assets and properties, and any Administrative Expense Claims shall be deemed

disallowed as of the Effective Date without the need for any notice, objection, or other action from the Debtors or the Liquidating Trustee, as applicable, or any action or approval by the Bankruptcy Court. For the avoidance of doubt, a Proof of Claim asserting an Administrative Expense Claim (other than 503(b)(9) Claims) does not constitute a motion or request for allowance and payment of an Administrative Expense Claim, and as such, shall not be regarded or entitled to treatment as an actual or informal proof of claim or request for allowance of any Administrative Expense Claim.

**B. Professional Fee Claims**

On the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable Professional, Debtors, on or before the Effective Date, or the Liquidating Trustee, after the Effective Date, shall pay all unpaid amounts approved by the Bankruptcy Court owing to such Professional on account of an Allowed Professional Fee Claim. No later than 30 days after the Effective Date, unless extended for good cause, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; *provided* that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities in the ordinary course of business for services rendered and expenses incurred after the Effective Date without further Bankruptcy Court order. Objections to any Professional Fee Claim must be filed and served on counsel to the Debtors, Committee (if extant), and Liquidating Trustee, and the subject Professional no later than fourteen (14) days after such Professional Fee Claim is filed with the Bankruptcy Court, and must be set forth in writing and state with specificity the particular billing entry(ies), fee(s), or cost(s) subject to the objection and the basis for the objection to the subject billing entry, fee, or cost. If no timely objection is filed, the Professional may lodge an order with the Bankruptcy Court granting final approval of the Professional Fee Claim. If a timely objection is filed, the Professional shall set the matter for hearing on no less than seven (7) days' notice to the Debtors, Committee (if extant), Liquidating Trust, the United States Trustee, and the objecting party.

The Liquidating Trust shall pay any Professional Fee Claims allowed after the Effective Date no later than three (3) days after the Order allowing such Professional Fee Claims becomes a Final Order. The Liquidating Trustee shall pay such Allowed Professional Fee Claims from the Liquidating Trust Assets and shall retain sufficient Cash in the Liquidating Trust for such purpose. Professional Fee Claims allowed on or prior to the Effective Date shall be paid either (i) by the Debtors on the Effective Date, if deemed practicable by the Debtors, or (ii) by the Liquidating Trust within ten (10) days after the Effective Date.

The entitlement to or receipt of any Distributions from the Liquidating Trust on account of an Allowed Professional Fee Claim shall not render the holder(s) of such Allowed Professional Fee Claim(s) Beneficiaries of the Liquidating Trust.

Notwithstanding the foregoing, Liquidating Trust Advisors, even if formerly Professionals, shall be entitled to payment from the Liquidating Trust for fees and expenses incurred in service of the Liquidating Trust on or after the Effective Date, subject solely to the procedures and requirements for such compensation established in the Liquidating Trust Agreement.

**C. Priority Tax Claims**

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by Debtors, if on the Effective Date, or the Liquidating Trust, if after the Effective Date, from Assets of the Estates or Liquidating Trust Assets, respectively.

### D. United States Trustee Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, and any applicable interest thereon, that are due and payable as of the Effective Date shall be paid in full in Cash by the Debtors or the Liquidating Trustee on the Effective Date. For the avoidance of doubt, the U.S. Trustee shall not be required to file a request or motion for allowance of an Administrative Expense Claim to establish its entitlement to statutory fees.

## IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. Classification of Claims and Interests

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class, and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class, and (ii) such Allowed Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

The following table (a) designates the Classes of Claims against and Interests in Debtors and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan, and (b) estimates the potential Distribution (stated as a percentage of the Allowed Claim or Allowed Interest) to holders of Allowed Claims and Interests in the subject Class.[2]

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|---|---|---|---|---|
| 1 | First Mortgage Secured Claims | Impaired | Entitled to Vote | Varies |
| 2 | Judgment Lien Claims | Impaired | Entitled to Vote | Varies |

[2] Please be aware that the estimates of potential distributions are forward-looking statements. All forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. Additionally, the recovery of many Classes of Claims or Interests, if any, is subject to a variety of factors both known and unknown, and accordingly various Classes in the estimated recovery column merely indicated "TBD" which means "to be determined," because the Debtors cannot at present estimate the recoveries to such Class.

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|---|---|---|---|---|
| 3 | Municipal Lien Claims | Impaired | Entitled to Vote | 100% or Retained Liens |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% or Retained Liens |
| 5 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | 100% |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | TBD |
| 7 | Subordinated Section 510(b) Claims | Impaired | Entitled to Vote | TBD |
| 8 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 9 | Government Agency and Regulatory Claims | Impaired | Entitled to Vote | TBD |
| 10 | Equity Interests | Impaired | Deemed to Reject | 0% |

## B. Treatment of Claims and Interests

The holders of classified Claims and Interests against Debtors shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

**Class 1 - First Mortgage Secured Claims**

*a.* *Classification*: Class 1 consists of all First Mortgage Secured Claims. Each First Mortgage Secured Claim, determined on a loan-by-loan basis and without regard to the number of parcels or items of Collateral comprising its applicable First Mortgage Secured Claim Collateral, shall be classified into separate subclasses of Class 1 (*e.g.*, Class 1-1~~A~~, Class 1-2~~B~~, Class 1-3~~C~~, *etc.*) for purposes under the Plan.~~.~~

*b.* *Treatment*: Except to the extent that a Holder of an Allowed First Mortgage Secured Claim agrees to less favorable treatment, and provided the aggregate value of the First Mortgage Secured Claim Collateral securing such Allowed First Mortgage Secured Claim does not exceed the Allowed First Mortgage Secured Claim, each Holder of an Allowed First Mortgage Secured Claim shall receive, with respect to the entire applicable First Mortgage Secured Claim Collateral and pursuant to a single election applicable to such Claim and First Mortgage Secured Claim Collateral, one of the following treatments~~at the option of such Holder, one of the following treatments with respect to the Collateral securing such Allowed First Mortgage Secured Claim~~:

1. *Surcharged Sale of Collateral.* The entire First Mortgage Secured Claim Collateral securing such Allowed First Mortgage Secured Claim shall be sold by the Liquidating Trust at auction or other sale process approved by the Bankruptcy Court or otherwise authorized under the Plan. The Liquidating Trust may market and sell the parcels or items of Collateral comprising the applicable First Mortgage Secured Claim Collateral together or separately, in one or more transactions, in its reasonable discretion; provided that all such parcels or items shall remain subject to the same Surcharged Sale election and shall not thereby be treated as separate Class 1 Claims or subclasses. From the proceeds of such sale, the Liquidating Trust shall first receive and retain the Surcharge Amount. The remaining net proceeds shall thereafter be distributed first to Holders of Liens against such Collateral that are senior to such Allowed First Mortgage Secured Claim, if any, in the order of their respective priority under applicable non-bankruptcy law, then to the Holder of such Allowed First Mortgage Secured Claim until such Allowed First Mortgage Secured Claim is paid in full or such net proceeds are exhausted, and thereafter to Holders of any junior Liens against such Collateral in the order of their respective priority under applicable non-bankruptcy law, subject in all respects to the rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest; or

2. *Surrender of Collateral.* The entire First Mortgage Secured Claim Collateral securing such Allowed First Mortgage Secured Claim shall be transferred to the Holder of such Allowed First Mortgage Secured Claim, or its designee, subject to all Liens, Claims, encumbrances, and other interests against such Collateral, with such Liens, Claims, encumbrances, and other interests retaining the same extent, validity, perfection, enforceability, and priority as existed on the Petition Date, subject in all respects to any rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest.

Notwithstanding the foregoing, if the aggregate value of the applicable First Mortgage Secured Claim Collateral exceeds the amount of the Allowed First Mortgage Secured Claim, ~~the~~ such First Mortgage Secured Claim Collateral shall be sold pursuant to subparagraph (b)(1) supra, and the Holder of the Allowed First Mortgage Secured Claim shall not have the right to elect surrender of the Collateral. For the avoidance of doubt, the treatment provided in this section shall apply separately with respect to each ~~parcel or item of~~collection of First Mortgage Secured Claim Collateral securing ~~an~~ each Allowed First Mortgage Secured Claim, and nothing herein shall be deemed to consolidate, cross-collateralize, alter, enhance, prime, subordinate, or otherwise modify any Lien, Claim, encumbrance, or other interest in or

against any Collateral except as expressly provided in the Plan or the Confirmation Order.

c. *Voting*: Class 1 is Impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan. For the avoidance of doubt, a Holder's vote to accept or reject the Plan shall not constitute an election between the Surcharged Sale and Surrender treatments described above.

**Class 2 – Judgment Lien Claims**

*a.* *Classification*: Class 2 consists of all Judgment Lien Claims. Each Judgment Lien Claim shall be classified into separate subclasses of Class 2 (*e.g.,* Class 2-1A, Class 2-2B, Class 2-3C, *etc.*) for purposes under the Plan.

*b.* *Treatment*: Except to the extent that a Holder of an Allowed Judgment Lien Claim agrees to less favorable treatment, or the Debtor or Liquidating Trustee, as applicable, proposes to pay the Allowed Judgment Lien Claim in full, each Holder of an Allowed Judgment Lien Claim shall receive, at the option of such Holder, one of the following treatments with respect to Collateral securing such Allowed Judgment Lien Claim:

1. *Surcharged Sale of Collateral.* The Liquidating Trust shall designate one or more parcels or items of Collateral securing such Allowed Judgment Lien Claim, in its sole discretion, for sale by auction or other sale process approved by the Bankruptcy Court or otherwise authorized under the Plan. From the proceeds of such sale(s), the Liquidating Trust shall first receive and retain the Surcharge Amount in connection with the sale of each piece of Collateral. The remaining net proceeds shall thereafter be distributed first to Holders of Liens against such Collateral that are senior to such Allowed Judgment Lien Claim, if any, in the order of their respective priority under applicable non-bankruptcy law, then to the Holder of such Allowed Judgment Lien Claim until such Allowed Judgment Lien Claim is paid in full or such net proceeds are exhausted, and thereafter to Holders of any junior Liens against such Collateral in the order of their respective priority under applicable non-bankruptcy law, subject in all respects to the rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest; or

2. *Surrender of Collateral.* The Liquidating Trust shall designate one or more parcels or items of Collateral securing such Allowed Judgment Lien Claim, in its sole discretion, for transfer to the Holder of such Allowed Judgment Lien Claim, or its designee. Any

such Collateral shall be transferred subject to all Liens, Claims, encumbrances, and other interests against such Collateral, with such Liens, Claims, encumbrances, and other interests retaining the same extent, validity, perfection, enforceability, and priority as existed on the Petition Date, subject in all respects to any rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest.

For the avoidance of doubt, if an Allowed Judgment Lien Claim is secured by more than one parcel or item of Collateral, the Liquidating Trust shall have the sole right to determine which parcel or item of Collateral, or combination of parcels or items of Collateral, shall be sold or transferred in satisfaction or partial satisfaction of such Allowed Judgment Lien Claim, and the Holder of such Allowed Judgment Lien Claim shall have no right to require the sale or transfer of any particular Collateral except as otherwise ordered by the Bankruptcy Court. Nothing herein shall be deemed to consolidate, cross-collateralize, alter, enhance, prime, subordinate, or otherwise modify any Lien, Claim, encumbrance, or other interest in or against any Collateral except as expressly provided in the Plan or the Confirmation Order.

*c.* *Voting*: Class 2 is Impaired under the Plan. Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 - Municipal Lien Claims**

*a.* *Classification:* Class 3 consists of all Municipal Lien Claims. Each Municipal Lien Claim shall be classified into separate subclasses of Class 3 (*e.g.,* Class 3-1~~A~~, Class 3-2~~B~~, Class 3-3~~C~~, *etc.*) for purposes under the Plan.

*b.* *Treatment*: Except to the extent that a Holder of an Allowed Municipal Lien Claim agrees to less favorable treatment, each Holder of an Allowed Municipal Lien Claim shall receive one of the following treatments, as applicable, with respect to the Collateral securing such Allowed Municipal Lien Claim:

*1. Payment from Surcharged Sale Proceeds.* To the extent the Collateral securing such Allowed Municipal Lien Claim is sold pursuant to the treatment of First Mortgage Secured Claims or Judgment Lien Claims under Class 1 or Class 2, as applicable, such Allowed Municipal Lien Claim shall be paid in full from the proceeds of the sale of such Collateral, after payment to the Liquidating Trust of the Surcharge Amount and in accordance with the relative priority of Liens against such Collateral under applicable non-bankruptcy law, subject in all respects to the rights, claims,

defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest; or

2. *Retention of Liens upon Surrender of Collateral.* To the extent the Collateral securing such Allowed Municipal Lien Claim is transferred or surrendered pursuant to the treatment of First Mortgage Secured Claims or Judgment Lien Claims under Class 1 or Class 2, as applicable, the Holder of such Allowed Municipal Lien Claim shall retain its Lien, if any, on such Collateral, with such Lien retaining the same extent, validity, perfection, enforceability, and priority as existed on the Petition Date, subject in all respects to any rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest.

For the avoidance of doubt, nothing herein shall entitle any Holder of a Municipal Lien Claim to any distribution from the Liquidating Trust or any Debtor or Estate other than from the proceeds of the Collateral securing such Allowed Municipal Lien Claim, if such Collateral is sold, or retention of its Lien against such Collateral, if such Collateral is transferred or surrendered. Nothing herein shall be deemed to enhance, prime, reclassify, or otherwise modify the extent, validity, perfection, enforceability, or priority of any Municipal Lien Claim except as expressly provided in the Plan or the Confirmation Order.

c. *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 - Other Secured Claims**

*a.* *Classification:* Class 4 consists of any Other Secured Claims against the Debtors.

*b.* *Treatment*: Each Holder of an Allowed Other Secured Claim, as determined by the Debtors or the Liquidating Trust, as applicable, shall receive, at the Liquidating Trust's election:

*1.* payment in full in Cash in an amount equal to its Allowed Other Secured Claim with a distribution from the Liquidating Trust Assets; or

*2.* the Liquidating Trust's interest in the Collateral securing such Holder's Allowed Other Secured Claims; or

*3.* such other treatment agreed to by the Holder of such Allowed Other Secured Claim and the Debtors or the Liquidating Trust, as applicable.

*c.* *Voting*: Class 4 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

**Class 5 - Priority Non-Tax Claims**

*a.* *Classification:* Class 5 consists of any Priority Non-Tax Claims against the Debtors.

*b.* *Treatment*: Each Holder of an Allowed Priority Non-Tax Claim, as determined by the Debtors or the Liquidating Trust, as applicable, shall receive:

*1.* payment by the Liquidating Trust of the amount of such Holder's Allowed Class 5 Claim on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), and (B) fifteen Business Days following the date such Claim is Allowed by non-appealable order. The Cash payment shall be in exchange for and in full satisfaction and discharge of the Holder's Allowed Priority Non-Tax Claim; or

*2.* such other treatment on account of such Allowed Priority Non-Tax Claim as determined by the Debtors or the Liquidating Trust, as applicable, as agreed to in writing by such Holder of such Allowed Priority Non-Tax Claim.

*c.* *Voting*: Class 5 is Unimpaired under the Plan. Holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

**Class 6 - General Unsecured Claims**

*a.* *Classification:* Class 6 consists of all Allowed General Unsecured Claims against Debtors.

*b.* *Treatment:* On the Effective Date, holders of Allowed General Unsecured Claims shall receive a Pro Rata Share of the Class A Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 6 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class A Beneficial Interests upon allowance of its Class 6 Claim by Final Order of the Bankruptcy Court.

Holders of Class A Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of this Plan, including provisions governing the treatment of Disputed Claims.

*c.* *Voting:* Class 6 is Impaired under the Plan. Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 - Subordinated Section 510(b) Claims**

*a.* *Classification:* Class 7 consists of all Allowed Subordinated Section 510(b) Claims against Debtors.

*b.* *Treatment:* On the Effective Date, holders of Allowed Subordinated Section 510(b) Claims shall receive a Pro Rata Share of the Class B Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 7 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class B Beneficial Interests upon allowance of its Class 7 Claim by Final Order of the Bankruptcy Court. Class B Beneficial Interests are subordinate to Class A Beneficial Interests in the Liquidating Trust.

Following the payment in full of all Allowed Claims in Classes 1-6, holders of Class B Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of this Plan, including provisions governing the treatment of Disputed Claims.

*c.* *Voting:* Class 7 is Impaired under the Plan. Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan.

**Class 8 - Intercompany Claims**

*a.* *Classification:* Class 8 consists of any Intercompany Claims.

b. *Treatment:* Class 8 Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and no Holder of a Class 8 Claim will receive any distribution on account of such Class 8 Claim.

c. *Voting:* Class 8 is Impaired. Each Holder of a Class 8 Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

**Class 9 - Government Agency and Regulatory Claims**

a. *Classification:* Class 9 consists of all Allowed Government Agency and Regulatory Claims. Each Governmental Unit holding one or more Government Agency and Regulatory Claims shall constitute a separate subclass of Class 9, including, by way of example, Class 9-A, Class 9-B, Class 9-C, and so forth. All Government Agency and Regulatory Claims held by the same Governmental Unit shall be included in the same subclass unless otherwise agreed in writing by such holder and the Debtors or the Liquidating Trustee, as applicable, or otherwise ordered by the Bankruptcy Court. Each Class 9 subclass shall constitute a separate Class for purposes of voting, determining acceptance or rejection of the Plan, and Confirmation. References in the Plan to "Class 9" shall include all Class 9 subclasses collectively unless the context requires otherwise. If substantive consolidation is not approved, the foregoing classification shall apply separately under each applicable Debtor sub-plan.

b. *Treatment:* On the Effective Date, each holder of an Allowed Government Agency and Regulatory Claim shall receive its Pro Rata Share of the Class B Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; provided that, if any Class 9 Claim is a Disputed Claim on the Effective Date, the holder of such Claim shall receive the Class B Beneficial Interests attributable to such Claim only upon the allowance of such Claim by Final Order or other resolution in accordance with the Plan. Class B Beneficial Interests issued on account of Allowed Class 9 Claims shall rank pari passu with all other Class B Beneficial Interests and shall be subordinate to the Class A Beneficial Interests issued on account of Allowed Class 6 General Unsecured Claims. No Distribution shall be made on account of any Class 9 Claim unless and until all Allowed Class 6 General Unsecured Claims have been paid in full through Distributions on the Class A Beneficial Interests.

c. *Voting:* Class 9 (and each subclass of Class 9) is Impaired under the Plan. Holders of Allowed Claims in each Class 9 subclass are entitled to vote to accept or reject the Plan. Acceptance or rejection of the Plan shall be determined separately for each Class 9 subclass in accordance with section 1126(c) of the Bankruptcy Code.

**Class 10 – Equity Interests**

a. *Classification:* Class 10 consists of all Allowed Equity Interests in Debtors.

b. *Treatment:* On the Effective Date, all Equity Interests in Debtors shall be cancelled and no holders of Equity Interests shall receive a recovery on account of such Interest.

c. *Voting:* Class 10 is Impaired under the Plan. Holders of Allowed Class 10 Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, holders of Allowed Class 10 Equity Interests are not entitled to vote to accept or reject the Plan.

### C. Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims entitled to vote on the Plan. For purposes of this Section, each ~~Class 9~~ subclass for any Class divided into subclasses shall constitute a separate Class. Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests. Debtors reserve the right to modify the Plan in accordance with Article XI of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

### D. Elimination of Vacant Classes

Any Class or subclass that does not have a Claim or Interest in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for all purposes.

### E. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### F. Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Liquidating Trust shall reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## V. MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Substantive Consolidation

The Plan proposes, and Confirmation shall constitute a request for, the substantive consolidation of all of the Debtors and their Estates for all purposes associated with Confirmation, consummation, distributions, and implementation of the Plan. If substantive consolidation is granted, on and after the Effective Date, all Assets and liabilities of the Debtors and their Estates shall be deemed merged and treated as Assets and liabilities of a single consolidated Estate, all

Claims filed or asserted against any Debtor shall be deemed asserted against such consolidated Estate, all duplicate Claims and Interests shall be eliminated, and all guarantees, cross-guarantees, Intercompany Claims, and Interests among the Debtors shall be deemed eliminated, cancelled, and extinguished, in each case solely for purposes of the Plan and distributions thereunder; *provided, however*, that notwithstanding such substantive consolidation, Secured Claims shall remain secured by the Collateral securing such Secured Claims as of the Effective Date, subject to the terms of the Plan, the Confirmation Order, and applicable law.

Notwithstanding the foregoing, if the Bankruptcy Court does not approve substantive consolidation of all of the Debtors and their Estates, then the Plan shall be deemed to constitute, automatically and without further action by any Person or Entity, a separate sub-plan for each Debtor. In such event, the classification, treatment, voting, distributions, and other provisions of the Plan shall apply separately with respect to each Debtor and its Estate, and the Plan shall constitute a separate chapter 11 plan of liquidation for each Debtor; *provided, however*, that the Debtors, the Liquidating Trustee, and the Liquidating Trust, as applicable, shall be authorized to make such non-material modifications, allocations, and implementing adjustments as are necessary or appropriate to give effect to such separate sub-plans, subject to the terms of the Plan, the Confirmation Order, and applicable law.

Nothing in the Plan, the Confirmation Order, the request for substantive consolidation, or any failure of the Bankruptcy Court to grant substantive consolidation of all of the Debtors and their Estates shall impair, waive, release, prejudice, or otherwise limit any rights, claims, defenses, or Causes of Action held by the Debtors or their Estates as of the Effective Date, all of which shall vest in the Liquidating Trust to the extent provided in the Plan. Without limiting the foregoing, the Liquidating Trust shall retain and may exercise all rights held by the Debtors or their Estates as of the Effective Date to seek consolidation, further consolidation, or substantive consolidation of one or more Debtor or non-Debtor entities, whether in the Chapter 11 Cases, an adversary proceeding, contested matter, or any other proceeding, subject in all respects to applicable law and further order of any court of competent jurisdiction.

**B. Establishment of Liquidating Trust**

On the Effective Date, the Liquidating Trust will be established and all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust.

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, and making distributions in accordance with this Plan to the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.

**C. Liquidating Trust Assets**

On the Effective Date, any and all rights and interests of Debtors or the Estates in or to the Liquidating Trust Assets shall vest in the Liquidating Trust, which shall include: (i) all Cash on hand on the Effective Date, *except* for any funds Debtors require to pay amounts due on the Effective Date; (ii) all Insider Claims; (iii) all D&O Claims; (iv) any claims against any person or party (including third-party professionals) relating to any D&O Claim, or any Insider Claim; ~~and~~ (v) all Retained Causes of Action; and (vi) all Contributed Claims that are contributed to the Liquidating Trust pursuant to the Plan.~~.~~

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be transferred free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided in this Plan. Once transferred to the Liquidating Trust, Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of this Plan as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

Notwithstanding that Contributed Claims are not property of the Debtors or Estates before their contribution, each Contributed Claim shall, upon the Effective Date and pursuant to the voluntary election made by the applicable Contributing Claimant, be irrevocably transferred and contributed to the Liquidating Trust and thereafter constitute a Liquidating Trust Asset.

**D. Election and Contribution of Contributed Claims**

Any Holder of a Claim or Interest entitled to receive a Ballot can elect through its Ballot to contribute such Holder's Contributed Claims to the Liquidating Trust in order for the Liquidating Trustee to prosecute such Causes of Action for the benefit of Holders of Allowed Claims entitled to receive proceeds under the Plan. By contributing a potential Contributed Claim, a Contributing Claimant (the person who contributed such Contributed Claim) is expressly irrevocably assigning and relinquishing its separate right to prosecute or receive any recovery on account of such Contributed Claim separate from its entitlement (if any) to receive a Pro Rata Share of proceeds as a Creditor under the Plan. By electing such option on its Ballot, each Contributing Claimant agrees that, subject to the occurrence of the Effective Date and the appointment of the Liquidating Trustee, it will be deemed, without further action, (i) to have irrevocably contributed its Contributed Claims to the Liquidating Trust, and (ii) to have agreed to execute any documents reasonably requested by the Liquidating Trustee to memorialize and effectuate such contribution.

On the Effective Date, all Contributed Claims will be irrevocably contributed to the Liquidating Trust to prosecute, compromise, or settle for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan and shall thereafter be Causes of Action for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or any other document as any indication

that the Liquidating Trust will or will not pursue any and all available Contributed Claims against such Person. The Liquidating Trustee shall have, retain, reserve, and be entitled to assert all Contributed Claims fully to the same extent that the Contributing Claimants could have asserted such claims prior to the Effective Date. For the avoidance of doubt, the Contributed Claims shall not include the rights of any of the Contributing Claimants to receive the distributions under the Plan on account of their Claims or Interests and shall not include any claims that cannot be assigned under applicable law.

**~~D.~~E. Liquidating Trustee**

1. *Liquidating Trustee as Representative of the Debtors' Estates*. From and after the Effective Date, the Liquidating Trustee shall act as the representative of the Estates for all purposes, including specifically, pursuant to section 1123(b)(3) of the Bankruptcy Code, for the purpose of retaining and enforcing any claims or interests of the Estates, including any rights pursuant to the Plan and any sale orders, and any Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust Beneficiaries.

The Liquidating Trustee, as identified in the Plan Supplement, shall have all rights, powers, authorities, obligations, and other responsibilities assigned thereto under the Plan and Liquidating Trust Agreement, effective on the Effective Date of the Plan. Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

2. *Responsibilities and Authority of the Liquidating Trustee*. The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include the following: (a) preserving and liquidating the Liquidating Trust Assets and making distributions to the Beneficiaries in accordance with the provisions of this Plan, the Liquidating Trust Agreement, and any applicable Orders; (b) administering and paying taxes, including, among other things, (i) filing tax returns, and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (c) retaining and paying professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (d) distributing information statements as required for federal income tax and other applicable tax purposes; (e) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (f) making distributions to holders of Allowed Administrative Expense Claims and Professional Fee Claims, to the extent such Claims are not paid in full on the Effective Date; (g) making distributions to holders of Allowed Claims in accordance with the Plan and Liquidating Trust Agreement; (h) administering, investigating, pursuing, prosecuting, resolving, compromising, settling, selling, or abandoning ~~adjudicating~~ third-party claims assigned, purchased, or otherwise transferred to the Liquidating Trust; and (i) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or an applicable Order(s) of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions and purpose of this Plan, the Liquidating Trust Agreement, or any applicable Orders. In addition, after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation quarterly disbursement reports,

on or before the twentieth (20th) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Cases are closed, converted, or dismissed, whichever happens earlier.

3. *Powers of the Liquidating Trustee*. The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include the following: (a) the power to invest funds of the Liquidating Trust, and withdraw, make Distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (c) the power to pursue, prosecute, resolve, compromise and settle any Causes of Action against any other Person or Entity without notice to or approval from the Bankruptcy Court, including any and all derivative actions pending or otherwise existing on behalf of Debtors or the Estates as of the Effective Date; (d) the power to object to Claims and Interests, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (e) the power to enforce any Order approving a Sale, the Confirmation Order, or any other Order of the Bankruptcy Court; and (f) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or any Order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions or purpose(s) of this Plan.

4. *Compensation of Liquidating Trustee*. The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in this Plan, the Confirmation Order, and the Liquidating Trust Agreement. Neither the Liquidating Trustee nor any professional retained by the Liquidating Trust shall be required to file a fee application to receive compensation.

5. *Retention and Payment of Professionals*. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

6. *Initial Liquidating Trust Professionals*. The Liquidating Trustee, as identified in the Plan Supplement, shall act with the assistance of counsel and other professionals as he, she, or it shall engage in accordance with this Plan and the Liquidating Trust Agreement. The engagement and compensation of professionals for the Liquidating Trustee for services rendered on or after the Effective Date shall be governed in all respects by the terms of this Plan, the Liquidating Trust Agreement, and the Confirmation Order.

7. *Limitation on Liability and Indemnification of the Liquidating Trustee*. The Liquidating Trustee and his, her, or its consultants or professionals shall be entitled to indemnification and advancement from the Liquidating Trust against any losses, liabilities, expenses (including reasonable attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or its consultants or professionals may incur or sustain by reason of being or having been ~~a~~the Liquidating Trustee or a consultant~~s~~ or professional~~s~~ of the Liquidating Trustee for performing any functions incidental to such service; *provided, however*, the foregoing shall not relieve the Liquidating Trustee or his, her, or its consultants or professionals (the "Trustee

Indemnified Parties") from liability which is finally judicially determined to have arisen solely from the gross negligence or willful misconduct of the Trustee Indemnified Parties.

8. *Examiner Documents and Reports*. The Examiner shall provide the Liquidating Trustee with copies of, or access to, all documents (including interview notes and transcripts) and reports gathered and prepared by the Examiner and her professionals in connection with the Chapter 11 Cases.

### ~~E.~~F. Corporate Action

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

Upon the Effective Date or as soon as reasonably practicable thereafter, after taking all actions provided for under the Plan, the Debtors shall be deemed to have been dissolved and terminated.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing boards of directors and managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any and all remaining officers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders of such Debtor, or the officers and directors of such Debtor. The directors, managers, officers, and trustees of the Debtors and the Liquidating Trust, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of this Plan.

The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable nonbankruptcy law.

### ~~F.~~G. Section 1146(a) Exemption

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtors to the Liquidating Trust or to any other person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest in the Debtors or the Liquidating Trust; (b) any Sale of Assets of the Estates, whether approved before or after the Effective Date; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other

instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**~~G.~~H. Dissolution of the Creditors' Committee**

On the Effective Date, the Committee shall be deemed dissolved and its members shall be deemed released from their duties, responsibilities and obligations.

On the Effective Date, the Professionals retained by the Committee shall be deemed to have completed their services as Professionals to the Committee. Through the Effective Date as provided for in this Plan, the Committee's Professionals shall be able to file final applications for reasonable compensation and reimbursement of expenses. Notwithstanding anything in this Section, the Committee shall have standing and a right to be heard following the dissolution of the Committee solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order. Any fees and expenses shall be paid from the Liquidating Trust Assets. The Professionals to the Committee may be retained by the Liquidating Trustee.

**~~H.~~I. Discharge of Examiner**

On the Effective Date, and to the extent such discharge has not occurred sooner by Court order, the Examiner shall be discharged from her duties, responsibilities and obligations, except as otherwise set forth herein.

On the Effective Date, the Professionals retained by the Examiner shall be deemed to have completed their services as Professionals to the Examiner. Through the Effective Date as provided for in this Plan, the Examiner and her Professionals shall be able to file final applications for reasonable compensation and reimbursement of expenses. Notwithstanding anything in this Section, the Examiner and her Professionals shall have standing and a right to be heard following her discharge solely with respect to (a) Professional Fee Claims and (b) any appeals of the Confirmation Order. Any fees and expenses shall be paid from the Liquidating Trust Assets. The Examiner and her Professionals may be retained by the Liquidating Trustee.

## VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A. Rejection of Executory Contracts and Unexpired Leases.**

This Plan shall constitute a motion to reject all Executory Contracts not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise set forth in the Plan Supplement or (ii) expressly assumed by Debtors under this Plan, and Debtors shall have no further obligation thereunder. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a finding that the rejection thereof is in the best interest of Debtors, their Estates and all parties in interest in the Chapter 11 Cases. The foregoing information shall be included in the notice of entry of the Plan Confirmation Order.

Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be Executory Contracts, (i) Debtors do not seek to reject the Insurance Policies through this general rejection provision and (ii) the Insurance Policies shall be assumed by Debtors pursuant to this Plan. Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement alters or shall alter the rights and obligations of Debtors (and the Estates) and Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies or shall modify the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. All of Debtors' rights and their Estates' rights under any Insurance Policy to which Debtors and/or Debtors' Estates may be beneficiaries shall vest with the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

### B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Claims created by the rejection of any Executory Contracts pursuant to this Plan, or the expiration or termination of any Executory Contracts prior to the Effective Date, must be filed with the Bankruptcy Court and served on Debtors no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims. Any Claims arising from the rejection of an Executory Contract for which proofs of Claim are not timely filed will be forever barred from assertion against Debtors, their Estates, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Unless otherwise ordered by the Bankruptcy Court, all timely filed Rejection Damages Claims shall be treated as General Unsecured Claims in Class 6 and shall be subject to the provisions of this Plan.

## VII. PROVISIONS GOVERNING DISTRIBUTIONS

### A. Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. Debtors and the Liquidating Trustee shall have no obligation to recognize an ownership transfer of any Claims or Equity Interests occurring after the Distribution Record Date. Debtors and the Liquidating Trustee, or any party responsible for making Distributions, shall be entitled to recognize and deal with for all purposes under the Plan only with those holders of record

stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### B. Method of Payment

Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or an electronic wire or ACH transfer.

### C. Reserve of Cash Distributions

On any date that Distributions are to be made under the terms of the Plan, Debtors or the Liquidating Trustee, or their respective agents, as applicable, shall hold in reserve Cash equal to the amount that would be distributed on such date to holders of Disputed Claims, if each such Disputed Claim were an Allowed Claim.

### D. Distribution After Allowance

Debtors shall make any and all Distributions paid, or to be paid, on or before the Effective Date. The Liquidating Trustee shall make any and all Distributions paid, or to be paid, after the Effective Date, including, without limitation, Distributions on account of Claims related to Professionals and costs of the Estates, even if the holders of such Claims do not constitute Beneficiaries of the Liquidating Trust.

### E. Delivery of Distributions

Except as provided herein, Distributions to holders of Allowed Claims shall be made: (i) at the addresses set forth on the respective proofs of Claim filed by such holders; (ii) at the addresses set forth on any written notices of address changes delivered to the Claims Agent after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules, or, if not reflected in the Schedules, then in other records of Debtors as of the Distribution Record Date, if no proof of Claim is filed and the Liquidating Trustee or Debtors have not received a written notice of a change of address.

If the Distribution to the holder of any Claim is returned to Debtors or the Liquidating Trustee as undeliverable, no further Distributions shall be made to such holder unless and until Debtors or the Liquidating Trustee, as applicable, are notified in writing of such holder's then current address. The Liquidating Trustee shall retain any undeliverable Distribution(s) until the earlier of (i) such time as a Distribution becomes deliverable and (ii) such undeliverable Distribution becomes an Unclaimed Distribution. Undeliverable Distributions shall revert to the Liquidating Trust. The Liquidating Trustee shall not have an obligation to update or correct the contact information for recipients of undeliverable Distributions.

### F. Fractional Dollars; *De Minimis* Distributions

Notwithstanding any other provision of the Plan to the contrary, (a) Debtors and the Liquidating Trust shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar

(up or down), with half dollars ($0.50) being rounded down; and (b) Debtors and the Liquidating Trust shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $25,000, in which case such Distributions shall be deferred to the next Distribution, (ii) if the amount to be distributed to a holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such holder, or (iii) if the amount of the final Distribution to such holder is $50.00 or less; *provided, however*, that the Debtors or the Liquidating Trustee, as applicable, may elect in their sole discretion to make Distributions even if no duty exists to do so.

**G. Excess Funds**

After final Distributions have been made from the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash in the Liquidating Trust is $15,000 or less, the Liquidating Trustee may donate such amount to charity; *provided* that the charity shall be unrelated to Debtors, the Committee and its members, the Liquidating Trustee, the Liquidating Trust Advisors, and their respective professionals.

**H. Unclaimed Distributions**

Any Cash or other property to be distributed under the Plan shall revert to the Liquidating Trust if it is not claimed by the Beneficiary within three (3) months after the date of such Distribution. If such Cash or other property is not claimed on or before such date, the Distribution made to such Beneficiary shall be deemed to be reduced to zero and such returned, undeliverable, or unclaimed Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Liquidating Trust. All Unclaimed Distributions shall revert to the Liquidating Trust and the intended recipient of such Distribution(s) shall be deemed to have waived and released any and all rights to such Distribution(s) and any other Distribution(s) under the Plan.

**I. Set-Off**

Except as otherwise provided herein, Debtors or the Liquidating Trustee, as applicable, retain the right to reduce any Claim by way of setoff in accordance with Debtors' books and records without further Order of the Bankruptcy Court. Rights of setoff and recoupment, if any, held by any Entity or Person are preserved for the purpose of asserting such rights as a defense to any Claims or Causes of Action of Debtors, the Estates, or the Liquidating Trustee, and regardless of whether such Entity or Person is the holder of an Allowed Claim.

**J. Maximum Recovery and Postpetition Interest**

Except as may be expressly provided herein, interest shall not accrue on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date. No Claim shall be Allowed to the extent it is for postpetition interest or other similar charges, except to the extent permitted for holders of Secured Claims under section 506(b) of the Bankruptcy Code.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim.

**K. Allocation of Distributions Between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid prepetition interest.

**L. Prepayment.**

Except as otherwise provided herein or in the Liquidating Trust Agreement or the Plan Confirmation Order, Debtors and the Liquidating Trustee, as applicable, shall have the right to prepay, without penalty, all or any portion of an Allowed Claim.

**M. Claims Paid or Payable by Third Parties**

1. *Claims Paid by Third Parties*. If a holder of a Claim receives a payment or other satisfaction of its Claim other than through the Debtors and/or the Liquidating Trustee on account of such Claim, such Claim shall be reduced by the amount of such payment or satisfaction without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, and if the Claim was paid or satisfied in full other than through the Debtors and/or the Liquidating Trustee, then such Claim shall be disallowed and any recovery in excess of a single recovery in full shall be paid over to the Liquidating Trustee without a Claim objection having to be f~~F~~iled and without any further notice to or action, order, or approval of the Bankruptcy Court. To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment or satisfaction from a party that is not the Debtors and/or the Liquidating Trustee on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Debtors or the Liquidating Trustee (as applicable), to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

2. *Claims Payable by Third Parties*. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policies. To the extent that one or more of the Debtors' insurers agree to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

**A. Allowance of Claims**

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses Debtors had immediately before the Effective Date. No Claim shall be deemed an Allowed Claim unless and until such Claim is Allowed under the Plan or under any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), when such order becomes a Final Order.

**B. No Distributions Pending Allowance**

If an objection to a Claim, or a portion thereof, is filed, no Distribution(s) shall be made on account of such Claim, or the applicable portion thereof, unless and until such Disputed Claim becomes an Allowed Claim.

**C. Claims Administration**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) file, withdraw, or litigate to judgment objections to Claims; (2) settle, compromise, or otherwise resolve Disputed Claims without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the applicable Claims Register to reflect any settlements, compromises or Final Orders resolving Disputed Claims or the fact that any Claim has been paid or satisfied, or ~~that~~ any Proof of Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), in each case without any further notice to or action, order, or approval by the Bankruptcy Court. The Liquidating Trustee shall be primarily responsible for reconciling and objecting to General Unsecured Claims in accordance with the Plan.

**D. Estimation of Claims**

Before or after the Effective Date, Debtors or the Liquidating Trustee, as applicable, may, at any time and for any reason, request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to such Claim or during any appeal relating to such objection.

Notwithstanding any provision in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or that otherwise has not yet been resolved by a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that any contingent, unliquidated, or Disputed Claim is estimated, or deemed estimated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and Debtors or the Liquidating Trustee, as applicable, may elect to pursue a supplemental proceeding to object to any allowance of such Claim.

**E. Single Satisfaction of Claims**

Holders of Allowed Claims may assert such Claims against the Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the

applicable Class of Claims against the Debtors based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

### F. Time to File Objections to Claims

The Debtors or the Liquidating Trustee, as applicable, to the extent permitted pursuant to this Plan or section 502(a) of the Bankruptcy Code, shall file and serve objections to any Claims no later than the Claims Objection Deadline; *provided, however*, that upon notice and hearing, the Court may extend the Claims Objection Deadline upon a showing that such extension serves the best interests of the Estates or Liquidating Trust, as applicable; *provided* that any motion to extend the Claims Objection Deadline shall be filed on or before the Claims Objection Deadline then in effect. The filing of a motion to extend the Claims Objection Deadline shall be deemed to automatically extend the Claims Objection Deadline until such motion is resolved by Final Order of the Bankruptcy Court.

### G. Disallowance of Claims

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, from that Person have been turned over or paid to the Liquidating Trustee. If an action to recover any avoidable transfer is commenced prior to the Effective Date, the Claims held by such Persons shall be deemed estimated at zero dollars ($0.00).

### H. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order allowing a Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the holder of such Claim the Distribution (if any) to which such holder is entitled, without interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## IX. RELEASES, INJUNCTION AND RELATED PROVISIONS

### A. Discharge of Debtors

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Debtors shall not be entitled to a discharge.

### B. Releases by Debtors

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released by Debtors, their Estates, the Liquidating Trustee, and the Liquidating Trust (as applicable) from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of Debtors, their Estates, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of Debtors, that Debtors, their Estates, the Liquidating Trustee, or the Liquidating Trust (as applicable), that such Person or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, Debtors, the Estates, Debtors' in- or out-of-court restructuring efforts, Debtors' intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Debtors and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Plan Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Subsection do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, including any such obligations created in connection with the restructuring, or (ii) any Retained Causes of Action, including but not limited to (a) all Insider Claims; (b) all D&O Claims; (c) any claims against any person or party (including third-party professionals) relating to any D&O Claim or any Insider Claim. Nothing in this Subsection shall be deemed to release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be solely the result of such Released Party's gross negligence, fraud, or willful misconduct.**

**Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Debtors set forth in this Subsection, which includes by reference each of the related provisions and definitions contained herein, and, furthermore, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the**

**Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of Debtors and the Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to Debtors or the Estates asserting any Claim or Cause of Action released pursuant to such releases.**

**C. Exculpation.**

**The Exculpated Parties shall neither have nor incur any liability to any Person or Entity, including the Exculpated Parties, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Liquidating Trust Agreement, the Chapter 11 Cases, the Disclosure Statement, the Plan, or any other Plan Document, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the post-petition debtor-in-possession financing approved by the Bankruptcy Court, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including, without limitation, those that Debtors, Liquidating Trustee, or any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of Debtors or the Estates; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Exculpated Party that solely results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted gross negligence, fraud, a violation of criminal law, or willful misconduct. Notwithstanding anything provided herein, the foregoing provisions of this Subsection shall have no effect on the liability of any Person or Entity that is solely the result of actions or omissions that occurred prior to or after the Exculpation Timeframe or the rights of any Person or Entity to enforce the Plan or other agreements or documents delivered under or in connection with the Plan.**

**D. Preservation of Causes of Action**

**1. Vesting of Causes of Action**

Except as otherwise provided in this Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trust, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date.

Except as otherwise provided in this Plan, the Plan Confirmation Order, or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action conveyed to the Liquidating Trust, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in any adversary proceeding.

**2. Preservation of All Causes of Action Not Expressly Settled or Released**

Unless a Cause of Action against any Person or Entity is expressly waived, relinquished, released, compromised, or settled in this Plan or any Final Order (including the Plan Confirmation Order), Debtors expressly reserve such Cause of Action, including all Causes of Action to be transferred by Debtors to the Liquidating Trust pursuant to this Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, this Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order). In addition, the Liquidating Trust reserves the right to pursue or adopt any claims or causes of action alleged in any lawsuit in which Debtors or the Committee are defendants or interested parties, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Furthermore, in the pursuit of an Avoidance Action, Debtors, the Liquidating Trust, the Liquidating Trustee, and/or their assignees shall certify in writing in any demand, claim, complaint, and other effort to collect on an Avoidance Action in compliance with section 547(b) of the Bankruptcy Code.

The failure of Debtors to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by Debtors of such claim, cause of action, right of action, suit or proceeding. IT IS THE EXPRESS INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Liquidating Trustee will not pursue any available Causes of Action against them.**

Notwithstanding the foregoing, Debtors have made a good faith effort to identify and disclose all known Causes of Action. A schedule identifying Debtors' known Causes of Action to be transferred to and retained by the Liquidating Trust shall be attached to the Plan Supplement.

For the avoidance of doubt, upon the Effective Date, each Contributed Claim shall constitute a Liquidating Trust Asset and a Cause of Action of the Liquidating Trust for purposes of the Plan, and the Liquidating Trustee shall have the exclusive right to investigate, prosecute, settle, compromise, sell, abandon, or otherwise resolve such Contributed Claim, subject to the terms of the Plan and Liquidating Trust Agreement. Each provision of the Plan that applies to a Cause of Action applies in full force and effect to a Contributed Claim.

**E. Injunction.**

**Except as otherwise specifically provided in the Plan or the Plan Confirmation Order, all Persons who have held, hold, or may hold Claims against or Equity Interests in Debtors and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan. Except as otherwise expressly provided for in this Plan, with respect to obligations issued pursuant to this Plan, or to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against any of the Liquidating Trust, the Liquidating Trustee, or their successors and assigns, and their assets and properties; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (iii) creating, perfecting, or enforcing any encumbrance of any kind against any of the Liquidating Trust, the Liquidating Trustee, or the property or estate of the Liquidating Trust; (iv) asserting any right of subrogation against any of the Liquidating Trust, the Liquidating Trustee, or against the property or estate of the Liquidating Trust; or (v) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.**

**Notwithstanding any provision in this Plan or the Plan Confirmation Order to the contrary, nothing contained in this Plan or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any Creditor which is asserted in a timely filed proof of claim or objection to this Plan, or pursuant to section 503(b)(1)(dD) of the Bankruptcy Code, or (b) that is or may be asserted as an affirmative defense or other defense to a Cause of Action or Claim asserted by Debtors or the Liquidating Trust against such creditor or vendor; or (ii) affect the applicability of 26 U.S.C. § 7421(a).**

**Notwithstanding any provision in this Plan or the Plan Confirmation Order, nothing in the Plan or the Confirmation Order shall enjoin, release, discharge, or otherwise impair any Governmental Unit from exercising its governmental, police, enforcement, or regulatory authority as to any non-Debtor, including the authority to investigate, commence or continue an action or proceeding, determine liability, or enforce nonmonetary relief; *provided, however*, that any right to payment constituting a Claim shall be subject to the classification, treatment, Distribution, and injunction provisions of the Plan, and no Governmental Unit may enforce or collect any such Claim from the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or the Liquidating Trust Assets except as expressly provided in the Plan and the Confirmation Order.**

**F. Exclusions from Releases**

Notwithstanding anything contained in this Plan, except with respect to the Released Parties, no release or exculpation shall be granted to (i) any current or former officers, managers or directors; (ii) any current or former statutory or non-statutory insiders; (iii) any Person or Entity that is subject to any Claims or Causes of Action of the Liquidating Trust; and (iv) any other affiliated person or entity that the Debtors or the Committee may determine has liability to the Debtors (collectively the "Non-Released Parties").

For the avoidance of doubt, except with respect to Claims or Causes of Action against Released Parties or otherwise released, enjoined, or barred under the Plan or applicable law, nothing in the Plan shall be construed to release or enjoin a direct Cause of Action retained by a Holder solely because such Holder did not elect to contribute such Cause of Action to the Liquidating Trust.

### G. Other Exclusions and Limitations on Liability.

Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Plan Confirmation Order, including, without limitation, the exculpation provision contained in Article IX of this Plan, shall (a) modify, release or otherwise limit the liability of any Person or Entity not specifically released or exculpated hereunder, including, without limitation, any Person or Entity that is otherwise liable under theories of vicarious or other derivative liability or that is a non-Debtor third-party guarantor of any obligation of the Debtors, or (b) affect the ability of the Internal Revenue Service to pursue any non-Debtor entity to the extent allowed by non-bankruptcy law for any liabilities that are related to any federal income tax liabilities that are owed by Debtors or the Estates.

### H. Protections Against Discriminatory Treatment

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Persons shall not discriminate against Debtors or the Liquidating Trustee, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, Debtors or the Liquidating Trustee, as applicable, or another Person with whom Debtors or the Liquidating Trustee, as applicable, have been associated, solely because Debtors have been debtors under the Bankruptcy Code, were insolvent before the commencement of or during the Chapter 11 Cases, or did not pay a debt in accordance with the Plan.

### I. Document Retention

On and after the Effective Date, Debtors or the Liquidating Trustee, or their designee, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented.

### J. Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court in effect on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until

the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### K. Termination of All Employee and Workers' Compensation Benefits.

Except as otherwise provided in the Liquidating Trust Agreement, all existing employee benefit plans and workers' compensation benefits not previously expired or terminated by Debtors or assigned by Debtors, if any, will be deemed terminated on the Effective Date.

## X. <u>CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN</u>

### A. Conditions Precedent to the Effective Date for the Plan

The following are conditions precedent to the Effective Date of the Plan that must be satisfied or waived (as provided below):

a. The Plan Confirmation Order, which shall be in a form acceptable to Debtors and the Committee, shall have been entered by the Bankruptcy Court, and shall become a Final Order;

b. The Plan Confirmation Order shall be in full force and effect;

c. The Liquidating Trust Agreement, in a form and substance acceptable to Debtors and the Committee, shall have been fully executed and the Liquidating Trust shall have been formed;

d. The final version of all schedules, documents, and Plan exhibits, including a Plan Supplement, shall have been filed;

e. All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan shall have been effected or executed and delivered; and

f. All Liquidating Trust Assets shall have been transferred to and/or vested in the Liquidating Trust.

Notwithstanding the foregoing, Debtors and the Committee may waive the occurrence of any condition precedent to the Effective Date. Any such written waiver of a condition precedent set forth in this Section may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action, other than proceeding to consummate this Plan.

### B. Substantial Consummation

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### C. Effect of Failure of Conditions

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by Debtors or any other Person, or any Claims or Interests by any holders thereof; (ii) prejudice in any manner the rights of Debtors, any holder of Claims or Interests, or any other Person; or (iii) constitute an admission, acknowledgment, offer or undertaking by Debtors, any holder of Claims or Interests, or any other Person in any respect.

## XI. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A. Modification and Amendments

Subject to the limitations contained in this Plan, Debtors, in consultation with the Committee, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, and subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, to amend or modify this Plan prior to the Effective Date, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code.

### B. Effect of Confirmation on Modifications

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan following the solicitation of votes thereon are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation.

### C. Revocation or Withdrawal of Plan

Debtors reserve the right to revoke or withdraw this Plan, prior to the entry of the Plan Confirmation Order and to file subsequent chapter 11 plans. If Debtors revoke or withdraw this Plan, or if the Effective Date does not occur within one-hundred and eighty (180) days after entry of the Confirmation Order, then: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts effected by this Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, Debtors or any other Entity; (b) prejudice or alter in any manner the rights of Debtors or any other Entity; or (c) constitute an admission of any sort by Debtors or any other Entity.

## XII. RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all Persons and Entities with respect to all matters related to the Chapter 11 Cases, Debtors, the Estates, the Liquidating Trust, and this Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any objections to the allowance or priority of any Claims or Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

~~3.~~1. resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which any Debtor is party or with respect to which Debtors may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

~~4.~~2. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Liquidating Trust Agreement;

~~5.~~3. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving Debtors, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date, including any Causes of Action of the Liquidating Trust;

~~6.~~4. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, or the Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of any Causes of Action;

~~7.~~5. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of this Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with this Plan, the Plan Supplement, or the Disclosure Statement;

~~8.~~6. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Effective Date or enforcement of this Plan, except as otherwise provided in this Plan;

~~9.~~7. enforce all Orders previously entered by the Bankruptcy Court;

~~10.~~8. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in this Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

~~11.~~9. enter and implement such orders, as necessary or appropriate, if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

~~12.~~10. resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Plan Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement;

~~13.~~11. enter an order and/or a final decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases; and

~~14.~~12. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of Debtors for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permitted by applicable law, to adjudicate Causes of Action of the Liquidating Trust and to hear and determine disputes concerning Causes of Action of the Liquidating Trust, including any motions to compromise or settle such Causes of Action of the Liquidating Trust or disputes relating thereto. Despite the foregoing, if the Liquidating Trustee chooses to pursue any Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action.

## XIII. MISCELLANEOUS PROVISIONS

### A. Immediate Binding Effect

Subject to Article X and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon Debtors and the Liquidating Trustee, as applicable, and any and all holders of Claims against and Equity Interests in Debtors (irrespective of whether their Claims or Interests are Allowed or whether they have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor counterparties to the Executory Contracts.

### B. Additional Documents

On or before the Effective Date, Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### C. Payment of Statutory Fees

All fees due and payable by the Estates pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by Debtors on the Effective Date. After the Effective Date, the Liquidating Trustee shall be responsible for paying Quarterly Fees when due and payable. Debtors and the Liquidating Trustee, as applicable, shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Chapter 11 Cases being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Expense Claim in the Chapter 11 Cases, and shall not be treated as providing any release under the Plan.

**D. Successors and Assigns**

The rights, benefits, and obligations of any Person or Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

**E. Notices**

Any pleading, notice or other document required by this Plan to be served on or delivered to Debtors, the Committee, or Liquidating Trustee shall be sent by first-class U.S. mail, postage prepaid, to:

| | |
|---|---|
| To the Debtors: | RAD Diversified REIT, Inc., *et al*.<br>c/o Katie Goodman, GGG Partners<br>2870 Peachtree Rd., Suite 502<br>Atlanta, GA 30305<br><br>With a copy to:<br><br>Pack Law<br>Attn: Joseph A. Pack (joe@packlaw.com)<br>Lynn Welter Sherman (lynn@packlaw.com)<br>Jessey J. Krehl (jessey@packlaw.com)<br>4649 Ponce de Leon Blvd., Suite 405<br>Coral Gables, Florida 33146 |
| To the Committee: | Greenberg Traurig, LLP<br>Attn: John D. Elrod (elrodj@gtlaw.com)<br>Ari Newman (newmanar@gtlaw.com)<br>Terminus 200<br>3333 Piedmont Road NE, Suite 2500<br>Atlanta, GA 30305 |
| To the Examiner: | Maria M. Yip<br>YIP Associates<br>9200 S. Dadeland Blvd., Suite 316<br>Miami, FL 33156<br><br>With a copy to: |

| | |
|---|---|
| | Baker & Hostetler LLP<br>Attn: Elizabeth A. Green (egreen@bakerlaw.com)<br>Andrew Layden (alayden@bakerlaw.com)<br>SunTrust Center, Suite 2300<br>200 South Orange Avenue<br>Orlando, FL 32801-3432 |
| To the Liquidating Trust: | [TBD] |

**F. Entire Agreement**

Except as otherwise indicated, the Plan, the Plan Supplement, and other Plan Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subjects covered thereby, all of which have become merged and integrated into the Plan and the Confirmation Order.

**G. Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as applicable, as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the relevant portion of the Plan Supplement shall control.

**H. Non-Severability of Plan Provisions**

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of Debtors; and (iii) non-severable and mutually dependent.

**I. Closing of Chapter 11 Cases**

Debtors shall, promptly after the full administration of the Chapter 11 Cases, and with the consent of the Liquidating Trustee, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

**J. Conflicts**

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement or any other Order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control. In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

## K. Rates

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

Dated: September 21, 2026

Respectfully submitted,

**PACK LAW**
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500

By: *__/s/ Joseph A. Pack__*
Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*