**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | |
| RAD Diversified REIT, Inc.; | Chapter 11<br>Case No. 8:26-bk-01636-CPM |
| RAD Diversified OZ Fund, LP; | *Jointly Administered with*<br>Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; *and* | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC, | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC,<br>Debtors. | Case No. 8:26-bk-08030-CPM |

**METROPOLITAN LIFE INSURANCE COMPANY'S**
**POST-SALE MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(Re: 1431 N 54th St, Philadelphia, PA 19131)**

Metropolitan Life Insurance Company ("Movant"), hereby moves this Court for an Order (i) pursuant to 11 U.S.C. § 362 (d)(1) vacating the automatic stay to permit Movant, its successors and/or assigns, to enforce its mortgage on the property located at 1431 N 54th Street, Philadelphia, PA 19131 ("Property") and (ii) for such other and further relief as is just and proper. In support of this Motion, Movant states as follows:

## I. JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. Further, review is appropriate under 11 U.S.C. §§ 105(a), 362 and other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

## II. STATEMENT OF FACTS

### A. LOAN HISTORY

1. On August 18, 2023, DDH Fund, LLC ("Debtor") executed a promissory note in the principal sum of $130,200.00 (the "Note"). The Note reflects it was indorsed in blank. The Note is secured by a recorded Mortgage executed by Debtor (the "Mortgage") on the real property located at 1431 N 54th Street, Philadelphia, PA 19131 (the "Property"), which is more fully described in the Mortgage, which is recorded in the Public Records of Philadelphia County, Pennsylvania. True and correct copies of the relevant loan documents are attached as **Composite Exhibit A**.

2. The Mortgage was assigned to Metropolitan Life Insurance Company. A true and correct copy of the Recorded Assignment of Mortgage is attached hereto as **Exhibit B**.

3. The aforementioned mortgage gives Movant a first mortgage position on the property legally described as:

**SCHEDULE C**
**LEGAL DESCRIPTION**

Issuing Office File No. COA602423

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements located thereon, if any described according to a Survey thereof made by Joseph Johnson, Esquire, Surveyor and Regulator of the 11th District dated June 3rd, 1898 as follows:

SITUATE on the East side of 54th Street at the distance of 241 feet Northward from Master Street in the 44th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 54th Street 16 feet and extending in length or depth Eastward between lines at right angles to said 54th Street on the North line thereof 69 feet 8-1/8 inches on the South line thereof 69 feet 1-1/8 inches to a 3 feet wide alley 4 feet 6-1/8 inches wide leading Westward into said 54th Street and on the rear end thereof along the West side of said 3 feet wide alley 16 feet and 1/8 of an inch.

TOGETHER with the free and common use, right, liberty and privilege of that portion of said alleys leading Northward and Southward and then Westward into said 54th Street as and for passageways and watercourses at all times hereafter forever in common with the owners, tenants and occupiers bounding thereon and having a right therein.

BEING known as No. 1431 North 54th Street.
Being the same premises which Lillie Mae Sanders by Deed dated 06/20/1991 and recorded 08/05/1991 in Philadelphia County in Deed Book FHS 1916 Page 541 conveyed unto Berry Wilder, in fee.
Being the same premises which Berry Wilder by Deed dated 07/28/2022 and recorded 08/04/2022 in Philadelphia County as Document No. 54080459 conveyed unto RAD Diversified REIT Inc., in fee.

4. The property has not been claimed exempt by Debtor.

## B. PROCEDURAL HISTORY AND LOAN STATUS

5. Prior to the Bankruptcy filing, the loan was the subject of a Mortgage Foreclosure, Case No. 241202182, in the Court of Common Pleas of Philadelphia County, Pennsylvania that resulted in a Judgment in favor of Movant. A copy of the Judgment and associated documents is attached hereto as **Exhibit C**.

6. On June 3, 2025, the property was the subject of a foreclosure sale and was sold to a third party for $144,706.00. A copy of the Pennsylvania Sheriff Sales results are attached hereto as **Exhibit D**.

7. Under Pennsylvania law, the right to redeem property ends at the scheduled Sheriff's Sale.

8. Debtor filed the instant Bankruptcy on March 1, 2026, months after the Sheriff Sale occurred on June 3, 2025. Debtor no longer has a right to redeem the Property and cannot file a Plan that addresses arrears due to Movant.

9. Accordingly, grounds exist to lift the automatic stay.

10. Movant requests that the automatic stay imposed under 11 U.S.C. § 362(a) be modified and terminated for cause in accordance with 11 U.S.C. § 362(d)(1) to permit Movant to pursue its rights under the Mortgage and applicable law, including, without limitation, the recoding of a Sheriff's Deed and/or eviction proceeding

11. Movant hereby seeks attorney fees in the amount of $1,350.00 and costs in the amount of $199.00 that will be incurred in filing this Motion for Relief from the Automatic Stay.

**WHEREFORE**, Movant respectfully requests an Order of this Court vacating the automatic stay and for such other, further and additional relief as to this Court may deem just, proper and equitable.

Respectfully Submitted:

/s/ /s/ Tricia A. Morra

Tricia A. Morra (FLBN 0095989)
Aldridge Pite, LLP
101 East Park Blvd.
Suite 600, Office 23
Plano TX 75074
tmorra@aldridgepite.com
Telephone: (404) 994-7290
Attorney for Secured Creditor

Mailing Address
3333 Camino del Rio South
Suite 225
San Diego, CA 92108

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of the foregoing Post-Sale Motion for Relief from the Automatic Stay to be served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
**(via electronic notice)**
Jessey James Krehl
Pack Law
4649 Ponce de Leon Boulevard
Ste 405
Coral Gables, FL 33146
850-408-9952
jessey@packlaw.com

Joseph A Pack
Pack Law
4649 Ponce de Leon Boulevard
Ste 405
Coral Gables, FL 33146
305-916-4500
Joe@packlaw.com

**DEBTOR**
DDH Fund, LLC
11418 US-19 N.
Port Richey, FL 34688

**UNITED STATES TRUSTEE**
**(via electronic notice)**
Nicole Peair
Timberlake Annex
501 E Polk Street, Suite 1200
Tampa, FL 33602
813-228-2000
Email: Nicole.W.Peair@USdoj.gov

**20 LARGEST UNSECURED CREDITORS LIST:**

Unsecured Creditors' Committee
c/o Greenberg Traurig
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA 30305
elrodj@gtlaw.com
kempd@gtlaw.com

Premiere Networks Inc.
C/O Mcglinchey Stafford
10375 Centurion Pkwy, Ste 420
Jacksonville, FL 32256

Ado Professional Solutions Inc.
4800 Deerwood Campus Pkwy, Bldg 800
Jacksonville, FL 32246

Arneberg, Lora
507 N. Arthur St
New Harmony, IN 47631

Jacar Investments LLC
C/O Savage Villoch Law PLLC
Attn Rovert K Savage, Esq
400 N Tampa St, Ste 2820
Tampa, FL 33602

Hemphill, Steven L
5855 Midnight Pass Rd, Unit 215
Sarasota, FL34242

Boston National LLC
Two Radnor Corporate Center
100 Matsonford Rd.
Radnor, PA 19087

Pbk Architects Inc.
C/O Stream Kim Hicks Wrage & Alfaro PC
Attn: T. Stream, S. Devore
3403 10th St, Ste 700
Riverside, CA 92501

Valet Living, LLC
10150 Highland Manor Dr
Suite 120
Tampa, Fl 33160

PECO
PO Box 37629
Philadelphia, PA 19101

Legno Construction Inc.
Attn: Christiano
3421morrell Ave
Philadelphia, PA 19114

Lowes
1000 Lowes Boulevard
Mooresville, NC 28117

Katz Barsky LLC/KBK Law Group
Attn: Katz, Jeffery
100 S Broad Street, Suite 1205
Philadelphia, PA 19110

American Express card
200 Vesey Street
New York, NY 10285-3106

Veiga Construction And Remodeling LLC
Attn: Veiga, Rojelio
136 Columbia Ave
Phoenixville, PA 19460

Shore To Shore Title LLC
2255 Glades Road Suite 2341a
Boca Raton, FL 33431

Jeffrey Jackson & Associates PLLC
11767 Katy Fwy Suite 813
Houston, TX 77079

and the Local Rule 1007 Parties in Interest List.

Dated: September 25, 2026

/s/ *Tricia A. Morra*
Tricia A. Morra

# ADJUSTABLE RATE PROMISSORY NOTE SECURED BY SECURITY INSTRUMENT

*(5/1 Year ARM – 30-day Average SOFR Index (As Published by the Federal Reserve Bank of New York) – Rate Caps)*

*THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN INTEREST RATE AND MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT THE ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MINIMUM AND MAXIMUM RATES BORROWER MUST PAY.*

Amount: $130,200.00

[redacted]

[redacted]

Date: 08-18-2023

San Francisco, CA

**FOR VALUE RECEIVED,** at the times hereinafter stated,
DDH Fund, LLC, A Delaware Limited Liability Company,
herein called ("**Borrower**") promise(s) to pay to **Kiavi Funding, Inc.**, a Delaware corporation ("**Lender**") or order at the address specified below, or at such place or places as Lender may designate in writing from time to time, the sum of:
One Hundred And Thirty Thousand Two Hundred and 00/100 U.S. Dollars
( $130,200.00 ) (the "**Principal Amount**") with interest at the interest rate set forth below from the date hereof until 09-01-2053 (the "**Maturity Date**").

**SECURITY**: This Promissory Note (the "**Note**") is secured by a FIRST priority Deed of Trust, Mortgage, or Security Deed (the "**Security Instrument**") including an Assignment of Rents and Leases, Security Agreement and Fixture Filing dated of even date herewith on property known as:

1431 N 54TH ST, PHILADELPHIA, PA, 19131, USA,

[redacted] (the "**Property**"). The term "**Loan Documents**" shall have the same meaning as that term in the Security Instrument.

1. **Borrower's Promise to Pay.**

1.1 Loan. In return for a loan that Borrower has received (the "**Loan**"), Borrower promises to pay the Principal Amount, plus interest, to the order of the Lender. Borrower understands that the Lender may transfer this Note.

1.2 Authorization. Lender may conclusively presume that all requests, statements, information, certifications, and representations, whether written or oral, submitted or made by Borrower or any of its agents to the Lender in connection with this Note are true and correct, and the Lender shall be entitled to rely thereon, without investigation or inquiry of any kind by the Lender, in disbursing or releasing the Loan proceeds and taking or refraining from taking any other action in connection with the Loan.

2. **Initial Interest Rate and Payment of Principal and Interest.**

2.1 Interest Rate. Interest will be charged on unpaid principal until the full amount of Principal has been paid. Provided there is no Event of Default, the interest rate for the first sixty (60) months will be 7.750 % per annum. The interest rate the Borrower will pay will change in accordance with Section 3 of this Note. The interest rate required by this Section 2 and Section 3 of this Note is the rate Borrower will pay both before and after any default described in Section 5 of this Note.

2.2 Periodic Payment Date. Unless sooner accelerated, payments due under the Note until the Maturity Date shall be made on the first (1st) calendar day of each month (each a "**Payment Date**") commencing on 10-01-2023. Provided there is no Event of Default or prepayment, each of Borrower's initial sixty (60) monthly payments of principal and interest will be in the amount of U.S. $ 932.77 This amount may change as described in this Note.

2.3 Monthly Payment Changes. Changes in the monthly payment will reflect changes in the unpaid principal of the Loan and in the interest rate that Borrower must pay. The Lender will determine Borrower's new interest rate and the changed



[redacted]

**COMPOSITE EXHIBIT A**

amount of Borrower's monthly payment in accordance with Section 3 of this Note.

2.4 Maturity Date. Unless sooner accelerated, the entire unpaid principal balance of this Note plus all accrued and unpaid interest thereon plus all other obligations owed under this Note shall be due and payable on the Maturity Date.

2.5 Method of Payment and Servicing of Loan. At origination, Borrower shall pay to Lender, for deposit into escrow pursuant to Section 2.1 of the Security Instrument, an amount sufficient to pay a specified number of monthly payments of principal and interest, plus any other amounts required to be paid into escrow pursuant to Section 2.1 of the Security Instrument. The number of periodic payments paid into escrow shall be as set by Lender in its sole discretion, but shall not exceed twelve (12) periodic payments. Lender shall pay the initial specified number of periodic payments from the funds deposited by the Borrower. Subsequent to the period during which periodic payments shall be made from escrow, Borrower will make all payments under the Note by automatically-debited Automated Clearing House (ACH) payment from a business-purpose account to be designated by Borrower at closing, and in accordance with the written instructions provided by Lender to Borrower at closing or from time to time thereafter.

2.6 360-day Year. Interest for each full calendar month during the term of this Note will be calculated on the basis of a three hundred sixty (360) day year consisting of twelve (12) months of thirty (30) days each. Notwithstanding the foregoing, the amount of interest due in the full or partial calendar month at the beginning of the term of this Note will be calculated on the basis of the actual number of days during which the principal balance of this Note is outstanding. Borrower acknowledges and agrees that the calculation of interest on the basis described in the preceding sentences may result in the accrual and payment of interest in amounts greater than those which would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

2.7 Default Rate of Interest. From and after the earlier of either (a) the occurrence of an Event of Default; or (b) the maturity of this Note (whether the stated Maturity Date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest), additional interest on the unpaid principal balance of this Note shall immediately accrue at a rate equal to **ten percent (10%)** per annum. Such interest shall be in addition to the interest specified in Sections 2.1 and 3.3.

2.8 Usury Protection. Notwithstanding anything contained in this Note to the contrary, if collection from Borrower of interest at the foregoing interest rate would be contrary to applicable laws, then the interest rate in effect on any day shall be the highest interest rate which may be collected from Borrower under applicable laws on such day. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower.

2.9 Interest Commencement. Interest on the Principal shall commence on the date Loan proceeds are initially deposited into an escrow for the benefit of Borrower and regardless of the date they are subsequently disbursed therefrom, provided that the period for which interest accrues prior to release of funds from escrow does not exceed **one (1)** day.

2.10 Payment Application. All payments under this Note shall be credited first to charges, fees, costs, and expenses payable by Borrower (**"Borrower Fees"**) under this Note, or in connection with the obligations evidenced by this Note, second to accrued interest then due, thereafter to unpaid principal. For any particular Payment Date, the Lender retains the option to postpone the crediting of payments to Borrower Fees, if and only if the Borrower's payment on such Payment Date, after deducting Borrower Fees, would otherwise be insufficient to pay the accrued interest and unpaid principal due on such Payment Date. If any payment of interest is not made when due, at the option of Lender, such interest payment shall bear interest at the same rate as principal from and after the due date of the interest payment. All payments due under this Note shall be made as provided in Section 2.5. The receipt of any check or other physical item of payment (a **"Payment Item"**) by Lender, at its option, either (a) shall be rejected and not considered a payment or (b) shall not be considered a payment until such Payment Item is honored when presented for payment at the drawee bank or institution, and Lender, at its option, may delay the credit of such payment until such Payment Item is so honored. Upon the occurrence of any Event of Default, the Lender, at its option, shall have the right to apply all payments made under this Note to principal, interest, and other charges, fees, costs and expenses payable by Borrower under this Note or in connection with the Loan in such order and amounts as the Lender may determine in its sole and absolute discretion.

2.11 Initial Loan Fee. Concurrently with or prior to the execution of this Note, Borrower shall pay to the Lender an origination fee (**"Loan Fee"**), as set forth in a final settlement statement or closing disclosure delivered to Borrower. The entire Loan Fee shall be deemed to be fully earned by the Lender as of the interest commencement date set forth in Section 2.9, and no part of the Loan Fee shall be refundable to Borrower, whether or not the principal balance of the Loan is prepaid prior to the Maturity Date.

2.12 Late Charge. Borrower shall immediately pay a late charge equal to 5.0% of such installment of interest and/or principal to Lender to compensate Lender for administrative costs and expenses incurred in connection with such late payment if any installment of interest and/or principal under this Note is not paid within **fifteen (15)** days from the date



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

on which it is due. Borrower agrees that the actual damages suffered by Lender because of any late installment payment are extremely difficult and impracticable to ascertain, and the late charge described in this Section represents a reasonable attempt to fix such damages under the circumstances existing at the time this Note is executed. Lender's acceptance of any late charge shall not constitute a waiver of any of the terms of this Note and shall not affect Lender's right to enforce any of its rights and remedies against any Person liable for payment of this Note.

3. Interest Rate and Monthly Payment Changes

3.1 Change Dates. The interest rate Borrower will pay may change on the first day of 09-01-2028 and on that day every twelfth (12th) month thereafter. Each date on which Borrower's interest rate could change is called a "Change Date."

3.2 The Index. Beginning with the first Change Date, Borrower's interest rate will be based on an Index. The "Index" is a benchmark, known as the 30-day Average SOFR index. The Index is currently published by the Federal Reserve Bank of New York. The most recent Index value available as of the date 45 days before each Change Date is called the "**Current Index**," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating Borrower's interest rate. If the Index is no longer available, the Lender will choose a new index which is based upon comparable information. The Lender will give Borrower notice of this choice.

3.3 Calculation of Changes. Before each Change Date, the Lender will calculate Borrower's new interest rate by adding five percentage points (5%) (the "**Margin**") to the Current Index. The Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 3.4 below, this rounded amount will be Borrower's new interest rate until the next Change Date. The Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the Borrower is expected to owe at the Change Date in full on the Maturity Date at the new interest rate in substantially equal payments. The result of this calculation will be the new amount of the monthly payment until the next Change Date.

3.4 Limits on Interest Rate Changes. The interest rate I am required to pay at the first Change Date will not be greater than 9.75 % or less than 5.75 %. Thereafter, the Borrower's interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2.0%) from the rate of interest Borrower had been paying for the preceding twelve (12) months. The interest rate will never be greater than 12.75 % or less than the Margin.

3.5 Effective Dates of Changes. The Borrower's new interest rate will become effective on each Change Date. The Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of Borrower's monthly payment changes again.

3.6 Notice of Changes. The Lender will deliver or mail to the Borrower a notice of any changes in the interest rate and the amount of the new monthly payment before the effective date of any change. The notice will include information required by law to be given to the Borrower, including the Lender's contact information.



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

4. **Prepayment.**

Borrower may prepay this Note in whole or in part at any time without payment of a prepayment premium. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

[Blank space prior to Section 5 is intentional]

5. **Default and Remedies.**

5.1 Events of Default. Lender, at its option, may declare Borrower to be in default under this Agreement and the other Loan Documents upon the occurrence of any or all of the following events (the declaration of such a default by the Lender shall constitute an **"Event of Default"**):

5.1.1 Payment or Performance. Borrower fails to pay any payment or perform any obligation due under this Note within **ten (10)** days of the date due, or to pay the entirety of the amount due hereunder within **ten (10)** days of the Maturity Date (whether the due date of any such payment is the date expressly set forth herein or is determined by extension, acceleration, or otherwise).

5.1.2 Event of Default. Any Event of Default as defined in the Loan Documents, including any Guaranty.

5.1.3 Breach of Representations or Warranties. Borrower's breach of the representations and warranties in this Note and the other Loan Documents.



[redacted] [redacted]

**COMPOSITE EXHIBIT A**

5.2 Remedies. Upon the Lender's election to declare Borrower to be in default under the Loan Documents pursuant to Section 5.1 above, Borrower shall be deemed to be in default under the Note, and the Lender shall have the right to do any or all of the following without notice or demand (except as required bylaw):

5.2.1 Acceleration. Declare the entire unpaid balance of principal and all accrued and unpaid interest, costs and expenses then due and payable under this Note to be immediately due and payable, even though the time of maturity as expressed herein shall not have arrived. The Lender may withdraw such amount or any portion thereof via automatic payment or ACH, without notice to the Borrower, as provided in the Automatic Payment Authorization Agreement executed by the Borrower.

5.2.2 Declare Default. Declare a default under any or all of Borrower's obligations under this Note, under the Security Instrument or any other obligation owed to Lender under other agreements and to proceed in accordance with Lender's rights and remedies under those agreements.

5.2.3 Foreclose. Foreclose upon any security pledged under any applicable pledge or security agreement and any other collateral securing Borrower's obligations, pursuant to any right or remedy permitted by law, including as set forth under the Security Instrument.

5.2.4 Exercise Other Rights. Exercise any other right or remedy contained in any of Borrower's obligations, including as set forth under the Security Instrument or Automatic Payment Authorization Agreement.

5.2.5 Assign. Collect or assign to any other person, individual or entity (**"Person"**) the right to collect any and all rents, profits or proceeds from the property, collection and assignment of which shall not be impaired by any act of Borrower.

5.2.6 Application. Immediately apply as against any and all amounts due and owing under this Note the balance of any escrowed or held funds, cash or other security then on deposit with the Lender, loan servicer or Trustee held as additional collateral.

5.2.7 Guaranty. Make demand on any Guaranty.

5.2.8 Legal Remedies. Exercise any other right or remedy available at law or in equity.

**6. Borrower's Representations and Warranties.** As a material inducement to the Lender's extension of credit to Borrower in connection with the Loan, Borrower warrants and represents to the Lender as follows:

6.1 Authority to Execute Note. Borrower has the full power and authority to execute, deliver and perform its obligations under this Note, and the execution, delivery and performance of this Note has been duly authorized by all requisite action on the part of Borrower. If Borrower is a corporation, partnership, limited liability company, trust or other entity, the Person or Persons signing the Loan Documents on behalf of Borrower are duly authorized to execute the Note and all other documents necessary to consummate the Loan on behalf of Borrower.

6.2 Valid Obligations. The Note is a legal, valid and binding obligation of Borrower, enforceable in accordance with its terms (except as enforcement may be limited by equitable principles and by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to creditors' rights generally).

6.3 No Consents Required. No consent of any other Person and no consent, approval, authorization or other action by or filing with any governmental authority not previously obtained by Borrower is required in connection with the execution, delivery and performance of this Note by Borrower.

6.4 Borrower's Name. Borrower has set forth above its full and correct name, and Borrower does not use any other names or tradenames, except for the tradenames disclosed to Lender in writing.

6.5 Commercial Loan. Borrower represents and warrants that the proceeds of this loan will be used by Borrower only for business purposes. If Borrower is a natural person, Borrower represents and warrants that Borrower does not intend to, and will not, occupy or reside on the Property so long as the Loan remains outstanding. If Borrower is a legal entity, Borrower represents and warrants that no person affiliated with Borrower or affiliated with any owner, member, or general partner of Borrower intends to or will occupy or reside on the Property so long as the Loan remains outstanding.



**COMPOSITE EXHIBIT A**

6.6 Borrower's Warranties. Borrower's warranties and representations set forth in this Section 6 shall be true and correct and deemed made at the time of execution of this Note, shall survive the closing of the Loan, and shall remain true and correct as of the date on which such warranties and representations are given.

6.7 Truth of Loan Application Documents. Borrower certifies that the information Borrower (or Borrower's agent(s)) provided to Lender in connection with Borrower's loan application was true, correct and complete at the time it was provided and remains true, correct and complete as of the date of execution of this Note.

7. **Waivers.** Borrower and all sureties, Guarantors, endorsers and other Persons liable for payment of this Note (a) waive presentment, demand for payment, protest, notice of demand, dishonor, protest and nonpayment, and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of this Note; (b) waive the right to assert any statute of limitations as a defense to the enforcement of this Note to the fullest extent permitted by law; (c) waive the benefits of any applicable law, regulation, or procedure which provides, in substance, that where cross demands for money exist between parties at any point in time when neither demand is barred by the applicable statute of limitations, and an action is thereafter commenced by one such party, the other party may assert the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the claim would at the time of filing the response be barred by the applicable statute of limitations; (d) consent to all extensions and renewals of the time of payment of this Note and to all modifications of this Note by the Lender and Borrower without notice to and without in any way affecting the liability of any Person for payment of this Note; and (e) consent to any forbearance by the Lender and to the release, addition, and substitution of any Person liable for payment of this Note and of any or all of the security for this Note without notice to and without in any way affecting the liability of any Person for payment of this Note.

8. **Attorney Fees, Collection Costs and Impositions.** Borrower agrees to pay all costs, expenses, charges, consultants' fees, expert witness fees, trustee's fees, foreclosure costs, costs of litigation or alternative dispute resolution proceeding (including, without limitation, those incurred prior to the institution of any legal action or judicial or non-judicial proceeding, or in order to quantify or obtain recovery of the amount of such recoverable attorney's fees, costs, or expenses, or in connection with any appeal arising from any such action or proceeding), discovery costs and expenses, and attorney fees ("**Collection Costs**") paid or incurred by Lender, or adjudged due by a court, arbitrator or other tribunal in connection with: (a) the interpretation, collection or enforcement of this Note ( including, without limitation, costs incurred in seeking collection of rents owing from any tenant of the Property), whether or not suit is filed; (b) representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Note or the Security Instrument; (c) actions taken to protect the lien of the Security Instrument or Lender's interests in the Property as Lender; (d) actions taken to enforce any provision of this Note or the Security Instrument; and (e) in defense of any claims brought by Borrower arising from the rights and obligations of the parties under the Loan Documents. Borrower shall be obligated to pay all such Collection Costs, which shall be additional obligations of Borrower hereunder payable on demand, and shall bear interest at the Default Rate from the date of such demand until paid in full. Borrower shall also be obligated to pay for any and all incurred Imposition (as defined in the Security Instrument and including all servicing advances) costs and such obligation shall be payable upon demand. The amount of such Impositions shall be included in the Borrower's principal balance and shall bear interest at the same rate as principal from and after the date of payment of the Imposition by the Lender.

9. **Notice.** Any notice required to be provided in this Note shall be given in writing and shall be sent (a) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (b) by first-class certified United States mail, postage prepaid, return receipt requested; (c) by a nationally recognized overnight courier service, marked for next day business delivery; or (d) by electronic transmission. All notices shall be addressed to the party to whom such notice is to be given at the following address:

| |
|---|
| **Lender Address:** Kiavi Funding, Inc., c/o Loan Servicing,<br>2 Allegheny Center, Nova Tower 2, Suite 200, Pittsburgh, PA 15212<br>**Lender** [redacted] |
| **Borrower Address:** 3110 E GUASTI RD #300, ONTARIO, CA, 91761, USA<br><br>**Borrower Emai**[redacted] |

[redacted]



[redacted]

[redacted]

COMPOSITE EXHIBIT A

or to such other address as a party may designate by written notice to the other. All notices shall be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery, if delivery is attempted by personal service, mail or messenger; (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending; (d) if sent via email, upon electronic delivery unless thereafter there is electronic notice of failed electronic delivery.

10. Applicable Law; Jurisdiction; Venue. The Loan Documents shall be governed by the state law selected in the Security Instrument, and Borrower hereby submits to the exclusive jurisdiction and venue of the Courts specified in the Security Instrument for any and all claims described therein.

11. Time Is of the Essence. Time is of the essence with respect to all obligations of Borrower under this Note.

12. Multiple Interests of Lender. In the event that multiple parties are named as Lender or Beneficiary, or multiple parties hold beneficial interests in this Note or the Security Instrument, a vote of 51% or greater of the beneficial interests will be considered the majority necessary for any decision or action by Lender or Beneficiary under the terms of this Note and the Security Instrument.

13. Entire Agreement. This Note, the Security Instrument (and any and all riders), the Guaranty and any other Loan Document contain the entire agreement concerning the subject matter of the Loan Documents and supersede all prior and contemporaneous negotiations, agreements, statements, understandings, terms, conditions, representations and warranties, whether oral or written, by and among the Lender, Borrower and Guarantors concerning the Loan which is the subject matter of the Loan Documents.

14. No Modifications or Amendments; No Waiver. Except as specified herein, no modification, amendment, change or waiver of any provision of this Note ("Change or Waiver") shall be valid, binding or effective unless it is in writing and signed by the party against whom enforcement of such Change or Waiver is sought. Additionally, a waiver of any provision in one event shall not be construed as a waiver of any other provision at any time, as a continuing waiver, or as a waiver of such provision on a subsequent event.

15. Lender's Acceptance of Payment, Extensions of Time or Forbearance Not a Waiver. The acceptance by Lender, loan servicer or the Trustee of any payment, partial or otherwise, made hereunder, whether paid on or after the time that such payment becomes due as herein set forth, will not establish a custom or constitute a waiver of any of Lender's rights to enforce prompt payment or to enforce any of Lender's rights or any of the obligations of Borrower or any guarantor or endorser set forth in this Note or the Security Instrument, or otherwise provided at law or in equity. Any extension of time granted or tolerated by Lender with respect to any payment due hereunder or other forbearance with respect to the performance of any other term, provision, covenant or agreement of this Note or the Security Instrument, or the taking or releasing of security or collateral for the payment of this Note, or in exercising or failing to exercise any right or power under this Note or the Security Instrument, shall not in any way release or affect the liability of Borrower, or any guarantor or endorser hereof, or any other party obligated to make any payment or render any performance hereunder. If Lender delays in exercising or fails to exercise any of its rights under this Note or the Security Instrument, that delay or failure shall not constitute a waiver of any Lender rights or of any breach, default, or failure of condition hereunder or thereunder. No waiver by Lender of any of its rights or of any such breach, default, or failure of condition shall be effective, unless the waiver is expressly stated in a writing signed by Lender.

16. Remedies Cumulative. All of Lender's rights and remedies under this Note shall be cumulative. Any failure of Lender to exercise any right or remedy under this Note or under any of the loan documents executed by Borrower shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time, thereafter.

17. Severability. If any provision of the Loan Documents shall be held by any court of competent jurisdiction to be unlawful, voidable, void, or unenforceable for any reason, such provision shall be deemed to be severable from and shall in no way affect the validity or enforceability of the remaining provisions of the Loan Documents.

18. Interpretation. Whenever the context of this Note reasonably requires, all words used in the singular shall be deemed tohave been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. The headings to sections of this Note are for convenient reference only and shall not be used in interpreting this Note. For purposes of this Note, (a) the term "including" shall be deemed to mean "including without limitation"; (b) the term "document" shall be deemed to include all written contracts, commitments, agreements, and instruments; and (c) the term "discretion," when applied to any determination, consent, or approval right by the Lender, shall be deemed to mean the Lender's sole but good faith business judgment.

19. Assignment. This Note inures to and binds the heirs, legal representatives, successors, and assigns of Borrower and Lender; provided, however, that Borrower may not assign this Note or any proceeds of it, or assign or delegate any of its rights or obligations



[redacted] [redacted] [redacted]

COMPOSITE EXHIBIT A

without Lender's prior written consent in each instance. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, and/or designate any other Person as the holder hereof, all without notice to or the consent of Borrower.

20. <u>Successors and Assigns</u>. Whenever used herein, the terms "Lender" and "Borrower" shall be deemed to include their respective heirs, personal representatives, and permitted successors and assigns.

21. <u>Cooperation</u>. Borrower acknowledges that Lender and its successors and assigns may (a) sell, transfer, pledge or assign the Security Instrument, the Note, and other Loan Documents to one or more investors as a whole loan, in a rated or unrated public offering or private placement; (b) participate the Loan secured by this Mortgage to one or more investors in a rated or unrated public offering or private placement; (c) deposit the Security Instrument, the Note, and other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets in a rated or unrated public offering or private placement; or (d) otherwise sell or pledge the Loan or interest therein to investors in a rated or unrated public offering or private placement. (The transactions referred to in clauses (a)-(d) are hereinafter referred to as "Secondary Market Transactions.") Borrower shall, at Lender's expense, cooperate in good faith with Lender in effecting any such Secondary Market Transactions and shall cooperate in good faith to implement all requirements reasonably imposed by the participants involved in any Secondary Market Transactions (including, without limitation, a rating agency and/or an institutional purchaser, participant, or investor) including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the rating agency or such other purchasers, pledgees, participants or investors, and addressing such matters as the rating agency or such other purchasers, participants, or investors may require; provided, however, that Borrower shall not be required to modify any documents evidencing or securing the Loan that would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal of the Note, or (iv) any other material terms or covenants of the Loan. Borrower shall provide such information and documents relating to Borrower, the Property, the Leases, and any lessees as Lender or the rating agency or such other purchasers, pledgees, participants, or investors may reasonably request in connection with a Secondary Market Transactions. Lender shall have the right to provide to the rating agency or prospective purchasers, participants, or investors any information in its possession including, without limitation, financial statements relating to Borrower, the Property, and any lessee. Borrower acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus, or other disclosure documents.

22. <u>Loss, Theft, Destruction or Mutilation of Note</u>. In the event of the loss, theft or destruction of this Note, upon Borrower's receipt of a reasonably satisfactory indemnification agreement executed in favor of Borrower by the party who held this Note immediately prior to its loss, theft or destruction, or in the event of the mutilation of this Note upon Lender's surrender to Borrower of the mutilated Note, Borrower shall execute and deliver to such party or Lender, as the case may be, a new promissory note in form and content identical to this Note in lieu of the lost, stolen, destroyed or mutilated Note.

23. <u>Joint and Several Liability.</u>

23.1 <u>Joint and Several</u>. Each Person or party comprising Borrower shall be jointly and severally liable for the obligations of Borrower hereunder. If Borrower consists of more than one Person, the occurrence of any Default or Event of Default with respect to any one or more of such Persons shall constitute a Default or Event of Default, as applicable, and (in the case of an Event of Default) entitle the Lender to exercise its rights and remedies as provided above.

23.2 <u>Married Individuals</u>. Each Borrower who is a married person agrees that the Lender shall have the right to recourse against his or her community property and separate property for any or all obligations to the fullest extent permitted by law.

24. <u>Waiver of Right to Jury Trial</u>. Borrower irrevocably waives all rights to a jury trial in any action, suit, proceeding or counterclaim of any kind directly or indirectly arising out of or in any way relating to this Note, any of the other Loan Documents, or any or all of the real and personal property collateral securing this Note. The jury trial waiver contained in this section is intended to apply, to the fullest extent permitted by law, to any and all disputes and controversies that arise out of or in any way relate to any or all of the matters described in the immediately preceding sentence, including without limitation contract claims, tort claims, and all other common law and statutory claims of any kind. This Note may be filed with any court of competent jurisdiction as borrower's written consent to borrower's waiver of a jury trial.

25. <u>State Specific Provisions</u>. State specific provisions are outlined on Exhibit A (if applicable), attached hereto and incorporated herein.



[redacted] [redacted] [redacted]

COMPOSITE EXHIBIT A

IN WITNESS WHEREOF, Borrower has executed this Adjustable Rate Promissory Note Secured by the Security Instrument effective as of the date first written above.

**Borrower:** DDH Fund, LLC, A Delaware Limited Liability Company

________________________________________

By: Taylor Green, Authorized Signor

________________________________________



**COMPOSITE EXHIBIT A**

# PROMISSORY NOTE

## EXHIBIT "A"

## PENNSYLVANIA SPECIFIC PROVISIONS

Section A.1 Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Exhibit A and the other provisions of this Note, the terms and conditions of this Exhibit A shall control and be binding.

Section A.2 Default Rate of Interest. Section 2.7 of the Note is deleted in its entirety and replaced with the following:

"From and after the earlier of either (a) the occurrence of an Event of Default; or (b) the maturity of this Note (whether the stated Maturity Date of this Note or the maturity date resulting from Lender's acceleration of unpaid principal and interest) subject to additional interest specified in Sections 2.1 and 3.3 shall immediately accrue at a rate equal to the lesser of ten percent (10%) per annum in excess of the Interest Rate set forth in Section 2.1 or twenty-five percent (25%) per annum."

Section A.3 CONFESSION OF JUDGMENT. THE FOLLOWING PARAGRAPH SETS FORTH A WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST BORROWER. IN GRANTING THIS VOLUNTARILY, AND ON THE ADVICE OF ITS SEPARATE COUNSEL, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS WITH RESPECT TO ANY ENTRY OF JUDGMENT UNDER SUCH WARRANT THAT BORROWER MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES, AND THE COMMONWEALTH OF PENNSYLVANIA.

BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF RECORD, OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR FOR BORROWER AT ANY TIME OR TIMES AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT HEREUNDER, IN ANY SUCH COURT IN ANY ACTION BROUGHT AGAINST BORROWER BY LENDER WITH RESPECT TO THE AGGREGATE AMOUNT PAYABLE HEREUNDER, WITH OR WITHOUT DECLARATION FILED, AS OF ANY TERM, AND THEREIN TO CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR ALL SUMS PAYABLE BY BORROWER TO LENDER HEREUNDER, AS EVIDENCED BY AN AFFIDAVIT SIGNED BY A DULY AUTHORIZED DESIGNEE OF LENDER SETTING FORTH SUCH AMOUNT THEN DUE FROM BORROWER TO LENDER, TOGETHER WITH AN ATTORNEYS' COMMISSION EQUAL TO FIVE PERCENT (5%) OF SUCH AMOUNT, BUT NOT LESS THAN TWENTY FIVE THOUSAND DOLLARS ($25,000), WITH COSTS OF SUIT, RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL. IF A COPY OF THIS AGREEMENT, VERIFIED BY AFFIDAVIT, SHALL HAVE BEEN FILED IN SUCH ACTION, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. BORROWER WAIVES THE RIGHT TO ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING ANY ACTION OR CONFESS JUDGMENT THEREIN SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS LENDER SHALL ELECT UNTIL ALL AMOUNTS PAYABLE TO LENDER HEREUNDER SHALL HAVE BEEN PAID IN FULL.

BORROWER HEREBY RELEASES LENDER AND SAID ATTORNEY OR ATTORNEYS FROM ALL PROCEDURAL ERRORS, DEFECTS AND IMPERFECTIONS WHATSOEVER IN ENTERING JUDGMENT BY CONFESSION AS AFORESAID OR IN ISSUING ANY PROCESS OR INSTITUTING ANY PROCEEDINGS RELATING THERETO AND HEREBY WAIVES ALL BENEFIT THAT MIGHT ACCRUE TO BORROWER BY VIRTUE OF ANY PRESENT OR FUTURE LAWS EXEMPTING THE PROPERTY, AND ANY OTHER COLLATERAL FOR THIS NOTE, OR ANY PART OF THE PROCEEDS ARISING FROM ANY SALE OF ANY SUCH PROPERTY, FROM ATTACHMENT, LEVY OR SALE UNDER EXECUTION, OR PROVIDING FOR ANY STAY OF EXECUTION, EXEMPTION FROM CIVIL PROCESS OR EXTENSION OF



**COMPOSITE EXHIBIT A**

TIME, AND AGREES THAT SUCH PROPERTY MAY BE SOLD TO SATISFY ANY JUDGMENT ENTERED ON THIS NOTE OR THE MORTGAGE, IN WHOLE OR IN PART AND IN ANY ORDER AS MAY BE DESIRED BY LENDER.

BORROWER CONFIRMS TO LENDER THAT (I) BORROWER IS, OR IF BORROWER IS A BUSINESS ENTITY, ITS PRINCIPALS ARE, KNOWLEDGEABLE IN BUSINESS MATTERS; (II) THE LOAN IS FOR A BUSINESS PURPOSE AND THE TERMS OF THIS NOTE, INCLUDING THE FOREGOING WARRANT OF ATTORNEY TO CONFESS JUDGMENT, HAVE BEEN NEGOTIATED AND AGREED UPON IN A COMMERCIAL CONTEXT; AND (III) BORROWER HAS FULLY REVIEWED THE AFORESAID WARRANT OF ATTORNEY TO CONFESS JUDGMENT WITH BORROWER'S OWN COUNSEL AND UNDERSTANDS THAT IT IS WAIVING CERTAIN RIGHTS BORROWER WOULD OTHERWISE POSSESS.

**Section A.4** <u>**Borrower Power of Attorney.**</u> Borrower hereby acknowledges and agrees as follows:

(a) This document contains one or more provisions authorizing the Lender to act as Borrower's attorney-in-fact or agent (the "**Power of Attorney**");

(b) The purpose of the Power of Attorney is to give the Lender broad powers to execute and perform Borrower's duties and obligations under documents, confess judgment, handle or sell property, enter into leases, revise leases, endorse checks and otherwise act in the name of the Borrower;

(c) The Power of Attorney is coupled with an interest and, as such, Lender, in exercising any of its rights under the Power of Attorney is not a fiduciary of Borrower. Lender may exercise any of its rights under the Power of Attorney for its sole benefit, without regard to the interests of Borrower;

(d) The Power of Attorney shall in no way be construed as to benefit Borrower or any Guarantor;

(e) Lender shall have no duty to exercise any powers granted by the Power of Attorney for the benefit of Borrower or to otherwise act in Borrower's best interest;

(f) Lender has no, and shall have no duty of loyalty to Borrower;

(g) Lender shall, to the extent exercisable, exercise any and all powers granted by the Power of Attorney for its sole and exclusive benefit;

(h) Any rights Borrower may have under 20 Pa.C.S. §§ 5601 - 5612, as amended (the "**POA Act**") are hereby forever waived and relinquished, to the greatest extent permissible under the POA Act;

(i) Without limiting the generality of the foregoing, (i) the Power of Attorney shall not be construed in accordance with the provisions of the POA Act, and (ii) Lender shall have no duties described in 20 Pa.C.S. § 5601.3(b) of the POA Act and Borrower forever waives and releases Lender from any duties under the POA Act;

(j) The Power of Attorney is irrevocable; and

(k) Borrower has read and understands the Power of Attorney and the powers granted to Lender thereunder.

**Section A.5** <u>**Married Individuals.**</u> Section 23.2 of the Note is deleted in its entirety and replaced with the following:

"Each Borrower who is a married person agrees that the Lender shall have the right to recourse against his or her jointly owned property and separate property, including any property owned by them as tenants by the entirety, for any or all obligations to the fullest extent permitted by law."



[redacted]
**COMPOSITE EXHIBIT A**

IN WITNESS WHEREOF, Borrower has caused this instrument to be executed as of date indicated on the Note.

**BORROWER:** DDH Fund, LLC, A Delaware Limited Liability Company

______________________________

By: Taylor Green, Authorized Signor

______________________________

COMMONWEALTH OF ~~PENNSYLVANIA~~ CALIFORNIA )
)
COUNTY OF SAN BERNARDINO )

On 8/18/2023, before me, YESENIA MALDONADO, a Notary Public in and for said County and

State, personally appeared TAYLOR GREEN, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) (is/are) subscribed to the within instrument, and acknowledged to me that (he/she/they) executed the same in (his/her/their) authorized capacit(-y/-ies), and that by (his/her/their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public Notary Seal

______________________________
Signature of Notary Public

YESENIA MALDONADO
Notary Public - California
San Bernardino County
Commissi[redacted]
My Comm. Expires Apr 21, 2026

YESENIA MALDONADO
(Printed Name of Notary)

My commission expires: 4/21/26

[redacted]



[redacted]

[redacted]

**COMPOSITE EXHIBIT A**

[redacted]

# ALLONGE

This Allonge is attached to and made part of the Promissory Note dated 08-18-2023, in the principal sum of:

One Hundred And Thirty Thousand Two Hundred and 00/100 U.S. Dollars

($ 130,200.00), executed by:

DDH Fund, LLC, A Delaware Limited Liability Company,

(Borrower) and made payable to the order of **Kiavi Funding, Inc.** (Lender).

Property Address: 1431 N 54TH ST, PHILADELPHIA, PA, 19131, USA

Pay to the order of ______________________________

without recourse.

Dated: AUG 25 2023

**Kiavi Funding, Inc.**

By: ______________________________

Name: Barbara Sweazen

Title: Post Close Team Lead

[redacted]

**COMPOSITE EXHIBIT A**

eRecorded in Philadelphia PA Doc Id: 54229056
09/19/2023 04:14 PM Page 1 of 34 Rec Fee: $223.50
Receipt#: 23-77818
Records Department Doc Code: M

---

# OPEN-END MORTGAGE

THIS MORTGAGE IS AN "OPEN-END MORTGAGE" UNDER 42 PA.C.S.A § 8143 WHICH SECURES FUTURE ADVANCES PLUS ACCRUED BUT UNPAID INTEREST, FEES, COSTS AND EXPENSES, AND ADVANCES MADE AS PROVIDED HEREIN. ALL NOTICES REQUIRED TO BE GIVEN TO LENDER PURSUANT TO 42 PA.C.S.A § 8143 SHALL BE GIVEN AS SET FORTH IN SECTION 6.12 OF THIS MORTGAGE. THIS MORTGAGE ALSO SECURES FUTURE ADVANCES UNDER 42 PA.C.S.A § 8144.

LENDER: KIAVI FUNDING, INC.

BORROWER: DDH Fund, LLC, A Delaware Limited Liability Company

[redacted]

**WHEN RECORDED MAIL TO:**

**Kiavi Funding, Inc.**

**2 Allegheny Center, Nova Tower 2, Suite 200, Pittsburgh, PA 15212**

[redacted]

[redacted]

**COMPOSITE EXHIBIT A**

[redacted]

**CERTIFICATE OF RESIDENCE OF MORTGAGEE**

The undersigned certifies that the precise residence address of Mortgagee is
**Kiavi Funding, Inc.,**

**2 Allegheny Center, Nova Tower 2, Suite 200, Pittsburgh, PA 15212**

Name: Nicholas J. Piscitelli

Title: Agent

[redacted]

[redacted]

**COMPOSITE EXHIBIT A**

# MORTGAGE, ASSIGNMENT OF RENTS AND FIXTURE FILING MIN: [redacted]

THIS MORTGAGE, ASSIGNMENT OF RENTS AND FIXTURE FILING (the "**Mortgage**") is made on 08-18-2023 by:

DDH Fund, LLC, A Delaware Limited Liability Company,

("**Borrower**"), whose address is:
3110 E GUASTI RD #300, ONTARIO, CA, 91761, USA, in favor of **Mortgage Electronic Registration Systems, Inc. ("MERS)** (solely as nominee for Kiavi Funding, Inc. ("**Lender**")), whose address and telephone number are P.O. Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS

## WITNESSETH

WHEREAS, Lender has agreed to provide Borrower with a Loan (the "**Loan**") as evidenced by that certain Promissory Note dated of even date herewith in the amount of $130,200.00 by and between Lender and Borrower (the "**Note**"); and

WHEREAS, Lender is making the Loan in reliance on this Mortgage, and it is a condition precedent to the making of the Loan by Lender that Borrower execute and deliver this Mortgage.

NOW, THEREFORE, in consideration of the foregoing and other benefits accruing to Borrower, the receipt and sufficiency of which are hereby acknowledged, Borrower hereby covenants and agrees with Lender, as follows:

## GRANTING CLAUSES

BORROWER IRREVOCABLY DEEDS, MORTGAGES, GRANTS, CONVEYS, TRANSFERS AND ASSIGNS, WITH POWER OF SALE AND RIGHT OF ENTRY AND POSSESSION WARRANTS, TO **MERS (SOLELY AS NOMINEE FOR LENDER, AND LENDER'S SUCCESSORS AND ASSIGNS) AND TO THE SUCCESSORS AND ASSIGNS OF MERS,** all of Borrower's present and future estate, right, title and interest in and to the following described property (collectively, the "**Property**"):

(A) The real property located in the County of PHILADELPHIA, State of PA, commonly known and having an address of:

1431 N 54TH ST, PHILADELPHIA, PA, 19131, USA

and more particularly described in Exhibit A attached to this Mortgage and incorporated herein by reference (the "**Land**"); and grants to Lender the following:

(B) All Buildings, Fixtures, Easements, Rents and Profits, Development Rights, Water Rights, and Mineral Rights, including without limitation all present and future Leases relating to the foregoing real property and all guaranties and security and security deposits supporting such Leases (as those terms are defined in Article 1 of this Mortgage); and

(C) All of the following related to the assets specified in (A) and (B) above, (i) Books and Records, plans, specifications, surveys (ii) Insurance Policies, title insurance policies, sales contracts, construction contracts, architectural agreements, engineering contracts, service and maintenance contracts, management contracts, and marketing contracts; (iii) work product arising from any such contract or agreement; (iv) all warranties, guaranties,



[redacted] [redacted] [redacted]

COMPOSITE EXHIBIT A

and other similar contract rights and (v) all other tangible personal property located on or used in connection with the forgoing (excluding only Consumer Goods as defined in the Uniform Commercial Code and any personal property of Tenants).

Borrower understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Mortgage, but, if necessary to comply with law or custom MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required or permitted of Lender including, but not limited to, releasing and cancelling this Mortgage.

THIS MORTGAGE SECURES THE FOLLOWING INDEBTEDNESS AND OBLIGATIONS (collectively, the "**Obligations**") in such order of priority as Lender may from time to time elect:

(1) Payment and performance of Borrower's indebtedness and obligations under the Note and this Mortgage (including any amounts required to be escrowed pursuant to Section 2.1 of this Mortgage) and all extensions, renewals, modifications, and replacements thereof; and

(2) Payment and performance of any and all other indebtedness which may hereafter be owing by Borrower to Lender under the Note, this Mortgage or other Loan Documents, however incurred, including but not limited to the attorneys' fees, court costs, witness fees, expert witness fees, collection costs, and costs and expenses paid by Lender (including all servicing advances) in the preservation and enforcement of its rights and remedies under this Mortgage or other Loan Documents; and

(3) To the extent that Lender's rights to recover a deficiency from Borrower are subject to California real property law (including without limitation the provisions of Code of Civil Procedure 580a, 580b, 580d, 580e, 726, 726,5 and 736) Borrower and Lender hereby agree and acknowledge that this Mortgage shall not secure the following obligations which are hereby excluded from the definition of "Obligations": (i) the obligations of Borrower under Section 2.3 of this Mortgage or (ii) any obligations under any other environmental indemnity agreement or (iii) any obligations under any other guaranty or indemnity agreement.

THIS MORTGAGE constitutes (i) a personal property security agreement to the extent that it includes personal property assets hereunder that are not real property assets subject to the applicable real property recording statues (and Borrower hereby grants Lender a security interest in all such personal property assets to secure the Obligations) and (ii) a Fixture filing in accordance with the Article 9 of the Uniform Commercial Code.

## ARTICLE 1

## DEFINITIONS

For purposes of this Mortgage, the following terms shall have the following definitions:

1.1 Books and Records. "Books and Records" means all books and records relating to the design, construction, improvement, development, use, ownership, operation, maintenance, repair, lease, taxation or marketing of the Property whether kept in hard copy or electronic form.

1.2 Buildings. "Buildings" means all buildings, structures and other improvements now existing or hereafter located on the Land.

1.3 Condemnation Claims. "Condemnation Claims" means all claims, actions, causes of action, demands, liens, rights, judgments, settlements, awards, compensation, and damages of every kind and nature which Borrower now has or which may hereafter accrue against any Person, whether arising in tort, by contract or statute, or in any other manner, which in any way directly or indirectly relate to or arise out of any condemnation of the Property or other taking of the Property for public or quasi-public use by eminent domain or to the transfer of the Property in lieu of condemnation or any such taking.



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

**1.4** **Condemnation Proceeds.** "Condemnation Proceeds" means all proceeds, tangible and intangible property resulting from the payment, collection of, recovery on, or other disposition of any or all of the Condemnation Claims.

**1.5** **Covenants and Restrictions.** "Covenants and Restrictions" means all covenants, conditions, restrictions, equitable servitudes, and all other similar matters now or hereafter affecting the Property, including any condominium, planned unit development, or cooperative apartment declaration of covenants, conditions and restrictions, by-laws, articles, rules, and regulations to which Borrower or the Property is subject or bound.

**1.6** **Development Rights.** "Development Rights" means all existing and future development rights, development credits, air rights, and options of any kind relating to the Property.

**1.7** **Easements.** "Easements" means all existing and future easements, rights of way, licenses, and similar rights relating or appurtenant to the Property and all existing and future rights in or to streets, roads, sidewalks, alleys, strips and gores adjoining or used in connection with the Property.

**1.8** **Event of Default.** "Event of Default" means any of the events described in Article 3 of this Mortgage.

**1.9** **Fixtures.** "Fixtures" means all Borrower-owned fixtures, machinery, equipment, building materials, appliances, landscaping, systems, built-in furniture, plumbing, electrical, coverings and other commonly recognized fixtures now or hereafter located in, on, attached or affixed to, or used in connection with the Land or the Buildings, including, but not limited to, all HVAC and utility systems; security and access control equipment; water heaters, showers, bathtubs, tanks, pumps, toilets, sinks, pipes, and other plumbing fixtures and equipment; stoves, ranges, refrigerators, dishwashers, and disposals; laundry equipment; engines, motors, generators, boilers, furnaces, and incinerators; wall, window, and floor coverings, including screens, shades, drapes, and awnings; partitions, doors, windows, cabinets, bookcases, and hardware; chandeliers and other light fixtures; trees, plants and other landscaping; and all attachments, substitutions, accessories, accessions, replacements, improvements, and additions to any or all of the foregoing, all of which shall conclusively be deemed to be part of the Land and Buildings and conveyed by this Mortgage, whether or not affixed or attached to the Land or the Building.

**1.10** **General Partner.** "General Partner" means any Person who is acting as a general partner of a partnership.

**1.11** **Governmental Authorities.** "Governmental Authorities" means all governmental or quasi-governmental authorities, boards, bureaus, agencies, commissions, departments, administrative tribunals, and other instrumentalities, judicial and non-judicial authorities, and public utilities having or exercising jurisdiction over Borrower or the Property.

**1.12** **Governmental Permits.** "Governmental Permits" means all permits, approvals, and authorizations now or hereafter issued by any Governmental Authorities for or in connection with the Property, including grading permits, foundation permits, building permits, tentative subdivision map approvals, zone changes, zone variances, conditional use permits, temporary certificates of occupancy, and final certificates of occupancy.

**1.13** **Governmental Requirements.** "Governmental Requirements" means all existing and future laws, ordinances, rules, regulations, orders, and requirements of any Governmental Authorities applicable to Borrower or the Property, including those respecting the design, construction, improvement, development, use, ownership, operation, maintenance, repair, or marketing of the Property.

**1.14** **Guaranty.** "Guaranty" means the guaranty agreement or agreements executed by any Guarantor.

**1.15** **Guarantor.** "Guarantor" means the Person or Persons, if any, now or hereafter guaranteeing payment of the Note or payment or performance of any or all of the other Obligations.

**1.16** **Impositions.** "Impositions" means all (a) Taxes; (b) Insurance Premiums; (c) gas, electricity, water, sewer, and other utility charges which are incurred for the benefit of the Property or which may become a lien against



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

542250560 Page 6 of 34 09/19/2023 04:14 PM

the Property; (d) assessments, charges, and fees imposed pursuant to any Covenants and Restrictions; (e) assessments, charges and fees payable with respect to any Easements, Water Rights or Development Rights; (f) principal, interest, and other amounts payable in connection with any Liens; and (g) such other taxes, charges, premiums, assessments and impositions relating to the Property, the payment of which Lender determines to be necessary to protect Lender's security for the Obligations.

**1.17** **Improvements.** "Improvements" means the Buildings and Fixtures, collectively.

**1.18** **Insurance Claims.** "Insurance Claims" means all claims, actions, causes of action, demands, liens, rights, judgments, settlements, awards, compensation, and damages of every kind and nature which Borrower now has or which may hereafter accrue against any Person, whether arising in tort, by contract or statute, or in any other manner, which in any way directly or indirectly relate to or arise under any policy of insurance which Borrower maintains with respect to the Property or which Borrower is required to maintain under this Mortgage (collectively, the "Insurance Policies").

**1.19** **Insurance Policies.** "Insurance Policies" means all insurance policies required hereunder, including but not limited to the insurance policies required under Section 2.4 of this Deed of Trust.

**1.20** **Insurance Proceeds.** "Insurance Proceeds" means all proceeds, tangible and intangible property resulting from the payment, collection of, recovery on, or other disposition of any or all of the Insurance Claims.

**1.21** **Insurance Premiums.** "Insurance Premiums" means all premiums and other amounts payable in connection with procuring or maintaining the Insurance Policies.

**1.22** **Leases.** "Leases" means all existing and future rental agreements, leases, licenses, concessions, occupancy agreements, and other similar agreements affecting the Property, including all subleases at any level.

**1.23** **Lender.** "Lender" means Kiavi Funding, Inc., a Delaware corporation. Lender's address is 315 Montgomery Street, 16th Floor, San Francisco, CA 94104.

**1.24** **Liens.** "Liens" means all mortgages, deeds of trust, mechanics' liens, and other liens and encumbrances of every kind and nature, other than this Mortgage, now or hereafter affecting the Property.

**1.25** **Loan Documents.** "Loan Documents" means the Note, this Mortgage (together with any riders), the Guaranty, and all other documents executed by Borrower or any of the Guarantors and delivered to Lender at Lender's request in connection with the Loan, and all extensions, renewals, modifications, and replacements of such documents.

**1.26** **Manager.** "Manager" means any Person who is acting as a manager of a limited liability company, including any member who is acting in such capacity.

**1.27** **MERS.** MERS means Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Mortgage.** MERS is organized and existing under the laws of Delaware.

**1.28** **Mineral Rights.** "Mineral Rights" means all existing and future right, title, and interest in and to all minerals, oil, gas and other hydrocarbon substances in or on the Property.

**1.29** **Person.** "Person" means any natural person or any entity, including any corporation, partnership, joint venture, limited liability company, trust, unincorporated organization, trustee, or Governmental Authority.

**1.30** **Property Claims.** "Property Claims" means all claims, actions, causes of action, demands, liens, rights, judgments, settlements, awards, compensation, and damages of every kind and nature (other than the Insurance Claims and Condemnation Claims) which Borrower now has or which may hereafter accrue against any Person, whether arising in tort, by contract or statute, or in any other manner, which in any way directly or indirectly relate to or arise out of any or all of the following: (a) the Property; (b) any existing or future fact, matter, occurrence, or



[redacted] [redacted]

[redacted]

COMPOSITE
EXHIBIT A

transaction relating to the Property; or (c) the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property.

**1.31** <u>**Property Proceeds**</u>. "Property Proceeds" means all proceeds, tangible and intangible property resulting from the payment, collection of, recovery on, or other disposition of any or all of the Property Claims.

**1.32** <u>**Rents and Profits**</u>. "Rents and Profits" means (i) all existing and future rents, royalties, issues, profits, proceeds, revenues, income and other benefits of the Property, (ii) all Leases, including all security deposits and prepaid rent, (iii) all claims and rights to the payment of damages and other claims arising from any rejection by a tenant of its Lease under the United States Bankruptcy Reform Act of 1978 (11 U.S.C. § 101, et seq.), as amended from time to time, and (iv) all of the landlord's rights in Insurance Proceeds and Condemnation Proceeds of a tenant in respect of the leased premises.

**1.33** <u>**Taxes**</u>. "Taxes" means (a) all taxes, bonds, levies and assessments now or hereafter affecting the Property, including all general and special real and personal property taxes, bonds, and assessments affecting the Property; (b) all other taxes, bonds, levies and assessments which now are or hereafter may become a lien on the Property, including all income, profits, franchise, withholding, and gross receipt taxes; (c) all other charges now or hereafter imposed on or assessed against the Property by any Governmental Authority or arising with respect to the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property; and (d) all taxes, bonds, levies, and assessments now or hereafter imposed by any Governmental Authorities on Lender by reason of their respective interests in the Loan Documents, excluding any franchise, estate, inheritance, income, or similar tax imposed on Lender.

**1.34** <u>**Tenants**</u>. "Tenants" means all tenants and occupants of the Property under the Leases.

**1.35** <u>**Water rights**</u>. "Water rights" means all existing and future water, water rights (whether riparian, appropriative, or otherwise, and whether or not appurtenant), and all water stock relating to the Property.

## <u>ARTICLE 2</u>

## <u>COVENANTS OF BORROWER</u>

**2.1** <u>**Performance of Secured Obligations**</u>. Borrower shall pay and perform each and all of the Obligations in accordance with their respective terms. Borrower shall pay to Lender on the day that payments are due under the Note, until the Note is paid in full, a sum (the "**Funds**") to provide for payment of amounts due for: (a) Taxes related to the Property as required by Lender; and (b) Insurance Premiums required by Lender. These items are called "**Escrow Items**." At origination or at any time during the term of the Loan, Lender may require that community association dues, fees, and assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Mortgage. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under this Mortgage and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with this Mortgage and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 2.1.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under applicable law, and (b) not to exceed the maximum amount a lender can require



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

under applicable law. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under applicable law. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by applicable law.

If there is a surplus of Funds held in escrow, as defined under applicable law, Lender shall account to Borrower for the excess funds in accordance with applicable law. If there is a shortage or deficiency of Funds held in escrow, as defined under applicable law, Lender shall notify Borrower as required by applicable law, and Borrower shall pay to Lender the amount necessary to make up the shortage or deficiency in accordance with applicable law, but in no more than 12 monthly payments.

At origination, Lender may require that an amount sufficient to pay a specified number of periodic payments due under the Note, including principal, interest and monthly payments toward Escrow Items, be escrowed by Borrower. In that event, Lender shall make the specified number of periodic payments from the Funds and such amount shall be treated as Funds hereunder for all appropriate purposes. Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender.

2.2 **Preservation of the Property**. Borrower (a) shall maintain the Property in good condition and repair; (b) shall promptly repair and restore in a good and workmanlike manner any part of the Property which may be damaged or destroyed, whether or not any Insurance Proceeds are adequate to pay for the cost of such repair and restoration; (c) shall comply and cause the Property to comply with the provisions of all Insurance Policies; (d) shall comply and cause the Property to comply with all Governmental Requirements; (e) shall comply and cause the Property to comply with all Covenants and Restrictions; (f) shall maintain in effect all Governmental Permits; (g) shall not initiate, join in or consent to any change in the zoning, general plan, specific plan, or any other land use classification affecting the Property or any Covenant or Restriction without the prior written consent of Lender; (h) shall not remove, demolish, improve, add to, or alter the Improvements (excluding non-structural alterations which preserve or increase the value of the Property, alterations required by Governmental Requirements and alterations approved by Lender) or change the character or use of the Property without the prior written consent of Lender; (i) shall not commit or permit any waste respecting the Property or impairment of the Property; (j) shall not abandon the Property; (k) shall not commit or permit any act upon the Property in violation of any Governmental Requirements; (l) shall promptly complete in a good and workmanlike manner, and shall pay, when due, all claims for labor performed and for materials furnished in connection with, Improvements which Borrower commences to construct on the Land; and (m) shall paint, cultivate, irrigate, fertilize, fumigate, prune, maintain and do all other acts, in a timely and proper manner, which from the character or use of the Property may be necessary or appropriate to preserve, protect and maintain the value of the Property. Borrower hereby recognizes and acknowledges that the condition and appraisal of the Property and all relevant documents relating to the Property are important and necessary for Lender to protect its position as secured creditor (whether or not Borrower is a debtor in bankruptcy, receivership, liquidation, credit restructuring case or proceeding under state or Federal or bankruptcy law). Therefore, Borrower hereby agrees: (a) to promptly provide to Lender all documents and filings reasonably requested by Lender which relate to (i) the Property, (ii) its condition, (iii) any operations related thereto. (iv) the maintenance thereof, (v) any taxes or assessments thereon, (vi) any insurance therefor, (vii) any liens, claims or interests thereon asserted by third parties, (viii) any leases thereof, and (ix) any rents or profits arising therefrom; (b) to provide Lender or its agents upon two days' notice with reasonable opportunity to conduct an internal and external appraisal of the Property and to cooperate with any reasonable requests in connection with such appraisal; and (c) to coordinate with Lender to take the foregoing actions on an expedited basis on not more than **one** day's notice in the event the Borrower should become a debtor in any bankruptcy, receivership, liquidation or credit restructure case or proceeding under state or Federal bankruptcy law.



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

**Hazardous Substances.** As used in this Section 2.3, (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means Federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

2.3 **Insurance.** Borrower shall keep the Improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, landlord liability including rent loss coverage, earthquakes and floods, for which Lender requires insurance. Each of the Insurance Policies, including the amounts, form, coverage, deductibles, insurer and loss payable and cancellation provisions, shall be acceptable to Lender and the insurance company providing coverage must have rating of at least "B" or better in the latest edition of "Best's Insurance Guide," must be licensed to do business in the state in which the property is located, and must be licensed to transact the lines of insurance required in this transaction. Without limiting any of the terms of this Section, (i) each of the Insurance Policies shall provide that it may be canceled or modified only upon not less than thirty (30) days prior written notice to Lender; and (ii) the fire and extended coverage and other casualty insurance policies which Borrower is required to maintain under this Mortgage shall contain a mortgagee's loss payable endorsement acceptable to Lender naming Lender as loss payee and shall be written with liability in an amount equal to the lesser of (x) the original principal amount of the Loan and (y) the full replacement cost of the Improvements. Borrower shall provide evidence to Lender of all required insurance hereunder on or before the closing of the Loan.

2.4 **Insurance Policies.** Within thirty (30) days after closing of the Loan, Borrower shall deliver to Lender the originals of all Insurance Policies together with receipts for the full payment of all Insurance Premiums, and Lender shall have the right to hold such policies as long as any Obligations are outstanding. Lender shall not be liable or responsible for the suitability, adequacy, enforceability, validity, amount, form, or content of any Insurance Policies, the solvency of any insurer, or the collection of any Insurance Proceeds, and Borrower shall at all times have full responsibility for all of such matters. Not later than thirty (30) days prior to the expiration of each of the Insurance Policies, Borrower shall deliver to Lender a policy or policies renewing or extending the expiring Insurance Policies together with written evidence showing payment of the Insurance Premiums for such policies. If Borrower fails to deliver any of the Insurance Policies to Lender in accordance with this Mortgage, or if any of the Insurance Policies is canceled, Lender, without notice to or demand upon Borrower, shall have the right to obtain such insurance in such form, content and amount and with such insurer as Lender determines to be necessary or appropriate to protect its interest. Without limiting any other provision of this Mortgage, all premiums and other costs and expenses paid or



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

incurred by Lender in connection with Lender's obtaining any Insurance Policies under this Section shall be payable by Borrower to Lender on Lender's demand. Lender shall not be obligated to obtain or maintain any policy of insurance with respect to the Property. All Insurance Policies relating to the Property and all unearned Insurance Premiums shall automatically inure to the benefit of and be deemed to be assigned to the grantee of the Property at any judicial or nonjudicial foreclosure sale under this Mortgage or by any deed in lieu of foreclosure under this Mortgage.

**2.5** <u>**Assignment of Insurance Claims and Proceeds**</u>. To secure the Obligations, Borrower grants, transfers, and assigns to Lender the Insurance Claims and Insurance Proceeds.

**2.6** <u>**Assignment of Condemnation Claims and Proceeds and Other Claims**</u>. To secure the Obligations, Borrower grants, transfers, and assigns to Lender the Condemnation Claims, Condemnation Proceeds, Property Claims, and Property Proceeds.

**2.7** <u>**Payment of Proceeds**</u>. Borrower shall cause all Insurance Proceeds, Condemnation Proceeds and Property Proceeds (collectively, the "Proceeds") to be paid or delivered directly to Lender. Lender shall at all times have the right but not the obligation (a) to demand, collect, accept, receive and give receipts for any and all of the Proceeds; and (b) to direct any Person to pay or deliver any or all of the Proceeds directly to Lender. Nothing contained in this Mortgage shall be deemed to obligate Lender to make any inquiry as to the sufficiency of any Proceeds received by Lender. If for any reason Borrower receives any Proceeds, Borrower shall immediately pay, assign, endorse or deliver such Proceeds to Lender in the original form in which received by Borrower and shall not commingle such Proceeds with any of Borrower's other funds or property.

**2.8** <u>**Prosecution and Settlement of Claims**</u>. Prior to the occurrence of any Event of Default, Borrower shall have a license to prosecute and enforce the Insurance Claims, Condemnation Claims, and Property Claims (collectively, the "Claims"). Lender shall at all times have the right to appear in, defend, and prosecute any action or proceeding arising out of or relating to any or all of the Claims if Lender determines that such action is necessary or appropriate to protect Lender's interest in connection with the Obligations. Upon the occurrence of an Event of Default, Borrower's license to prosecute and enforce the Claims shall be revoked. Following such revocation, Lender, at its option, shall have the exclusive right to prosecute and enforce any or all of the Claims to the extent provided in Lender's notice of revocation and to compromise, adjust, settle or dismiss any or all of the Claims, whether or not Lender has taken possession of the Property. Without Lender's prior written consent, Borrower shall not (a) sell, transfer, pledge, hypothecate or otherwise dispose of or abandon any or all of the Claims; or (b) compromise, adjust, settle, or dismiss any or all of the Claims.

**2.9** <u>**Title Policy**</u>. Upon recordation of this Mortgage, Borrower shall cause the Lender to be furnished with a lender's policy of title insurance acceptable to Lender (a) written in an amount equal to the principal amount of the Loan; (b) issued by a title insurance company acceptable to the Lender; (c) showing title to the Property to be vested in a manner acceptable to the Lender; (d) containing a legal description of the Property satisfactory to the Lender; (e) insuring this Mortgage as a first lien on the Property, subject only to such exceptions as have been approved in writing by the Lender; (f) containing such title insurance endorsements as may be required by the Lender; and (g) otherwise acceptable to the Lender in form and substance, including the policy revision date. Within five (5) business days after the Lender's request from time to time, Borrower, at its expense, shall furnish the Lender with such additional title insurance endorsements as the Lender may require insuring the continuing first priority of this Mortgage. Borrower shall at all times cooperate with the Lender and its title insurer and provide the Lender's title insurer with such information as such title insurer may request or require in order to provide the Lender with the policies and endorsements described in this Section.

**2.10** <u>**Subordinate Mortgages**</u>. Borrower shall not grant or permit any other Lien on the Property ("**Subordinate Mortgage**") without Lender's prior written consent. To obtain Lender's written consent, which Lender may withhold for any reason in its discretion, Borrower must first deliver to Lender a written agreement, acceptable to Lender, executed by the holder of the Subordinate Mortgage which provides that (a) the Subordinate Mortgage is and shall at all times remain unconditionally subject and subordinate to this Mortgage; (b) if any action or proceeding is commenced to foreclose the Subordinate Mortgage, no Tenant under any Lease shall be named as a defendant in such action or proceeding, nor shall such action or proceeding terminate any Lease, without Lender's prior written consent; (c) all Rents and Profits, whether collected directly by the holder of the Subordinate Mortgage or through a



COMPOSITE EXHIBIT A

receiver, shall be applied first to the Obligations, second to the payment of the Impositions, and thereafter to payment of maintenance and operating costs relating to the Property; and (d) the holder of the Subordinate Mortgage shall give written notice to Lender not later than ten (10) days prior to commencing any judicial or nonjudicial action or proceeding to foreclose the Subordinate Mortgage.

**2.11** **Permitted Leasing; Assignment of and Compliance with Leases.** Notwithstanding Section 3.12 below, Borrower shall have the right to enter into Leases in the ordinary course of Borrower's business without Lender's prior written consent, provided that all of the following conditions are satisfied with respect to any such Lease or modification thereto: (a) the term of such Lease, including any extension or renewal options, does not exceed a total of five (5) years; (b) the form used for such Lease represents a commercially reasonable residential lease form or has been approved in writing by Lender prior to Borrower's execution of the Lease; (c) such Lease is unconditionally subordinate to this Mortgage and contains an attornment provision consistent with Section 2.13 below; (d) no Event of Default has occurred and is continuing at the time of Borrower's execution of such Lease; (e) Borrower provides Lender with an accurate and complete copy of such Lease within ten (10) business days after such Lease is executed by Borrower; (f) Borrower does not collect rent for more than one (1) month in advance; and (g) Borrower does not in any other manner impair Lender's rights with respect to or interest in the Rents and Profits. Upon Lender's request, Borrower shall execute, acknowledge and deliver to Lender an absolute and unconditional assignment acceptable to Lender of all of Borrower's interest in all Leases and all guaranties of and security for the Tenants' respective obligations under the Leases. Borrower shall perform and discharge all obligations of the lessor under the Leases in accordance with the terms thereof and shall diligently enforce all remedies available to Borrower in a commercially reasonable manner and in compliance with all applicable laws in the event of a default by the Tenant under any Lease.

**2.12** **Attornment at Lender's Option.** Each Tenant who enters into a Lease for the Property after the date of recordation of this Mortgage (each such Lease is referred to as a "Subordinate Lease") and who has not entered into a written non-disturbance and attornment agreement with Lender shall be deemed to have agreed to attorn to Lender and accept Lender as the landlord under its Lease on the terms of this Section. Without limiting the foregoing, at Lender's request, Borrower shall obtain written acknowledgement from each Tenant of the Property of Lender's rights under each Subordinated Lease. Upon an Event of Default, or if Lender acquires title to the Property by judicial or nonjudicial foreclosure under this Mortgage or by deed in lieu of foreclosure under this Mortgage, Lender, at its option, shall have the right to require any or all Tenants under Subordinate Leases to attorn to and accept Lender as the landlord under such Tenant's Subordinate Lease (the "Attornment Option") by giving written notice to such Tenant within thirty (30) days after the date on which Lender acquires title to the Property (the "Acquisition Date"). If Lender exercises the Attornment Option with respect to any Subordinate Lease, such attornment shall be effective and self-operative as of the Acquisition Date without the execution of any further documents on the part of the Tenant, Lender, or any other party, and the Tenant under the Subordinate Lease shall be bound to Lender under all of the terms, covenants, and conditions of the Subordinate Lease for the remaining balance of the term thereof, with the same force and effect as if Lender were the landlord under such Lease. Whether or not Lender exercises its Attornment Option with respect to any Subordinate Lease, Lender (a) shall not be liable for any act or omission of any prior landlord under any Subordinate Lease, including Borrower; (b) shall not be subject to any offset, defense, or claim which any Tenant may have against any prior landlord under any Subordinate Lease, including Borrower; (c) shall not be obligated (i) to return any security deposit now or hereafter paid by any Tenant; (ii) to return any prepaid rent or other amounts prepaid by any Tenant; or (iii) to grant any Tenant a credit for any such security deposit, prepaid rent or other prepaid amounts (excluding monthly rent and other charges which have not been prepaid for more than one month in advance), except to the extent, if any, that Lender has actually and unconditionally received such security deposit, prepaid rent or other prepaid amounts; and (d) shall not be obligated to complete the construction of any or all Improvements. Without limiting the terms of this Section, upon Lender's request, each Tenant under a Subordinate Lease shall execute and deliver to Lender any document which Lender determines to be necessary or appropriate to evidence such Tenant's attornment to Lender on the terms of this Section, including a new lease with Lender on the same terms and conditions as the Subordinate Lease for a term equal to the unexpired term of the Subordinate Lease. Nothing contained in this Section shall be deemed to obligate Lender to recognize any Subordinate Lease or accept an attornment by any Tenant upon Lender's acquisition of title to the Property. If Lender elects not to exercise the Attornment Option within the time period specified in this Section with respect to any Subordinate Lease, such Subordinate Lease and all of the rights, privileges and powers of the Tenant thereunder shall automatically terminate and shall be of no further force or effect from and after the Acquisition Date.



[redacted] [redacted] [redacted]

COMPOSITE EXHIBIT A

2.13 **No Liability by Lender.** Nothing contained in this Mortgage shall be deemed to obligate Lender to prosecute or enforce any or all of the Claims nor shall Lender have any liability or responsibility for any failure or delay by Lender in prosecuting or enforcing any or all of the Claims or to collect any or all of the Proceeds. Borrower shall at all times have the right to determine and follow its own policies and practices in the conduct of its business, subject to the terms and conditions of the Loan Documents.

2.14 **Application of Proceeds.** Lender, at its option, shall have the right (a) to apply any or all Proceeds received by Lender to any or all of the Obligations in such order and manner as Lender shall determine, whether or not such Obligations are then due and payable and without regard to the adequacy or impairment of the security for the Obligations; (b) to release any or all of the Proceeds received by Lender for payment of the costs of repair or reconstruction of the Property on such terms and conditions as may be acceptable to Lender; or (c) to release any or all of the Proceeds received by Lender to Borrower on such terms and conditions as may be acceptable to Lender. To the extent it is determined that Lender has applied payments in any order prohibited by any Governmental Authority, Lender shall refund to Borrower any fees and/or interest associated with the misapplication of payments. Acceptance of such refund by Borrower shall be deemed sufficient remedy and Borrower will have no right to seek further claims or damages from Lender.

2.15 **Release of Proceeds for Reconstruction.** Without limiting the generality of Section 2.15 above, if Lender elects to release any Proceeds for repair or reconstruction of the Property, at Lender's option, such release shall be conditioned on Borrower's satisfaction of the following conditions within one hundred and twenty (120) days after the occurrence of the damage requiring the repair or reconstruction: (a) Borrower's deposit with Lender of such funds in addition to the Proceeds as Lender determines to be necessary to pay all direct and indirect costs relating to the repair or reconstruction of the Property; (b) the establishment of a procedure acceptable to Lender for Lender's disbursement of the Proceeds; (c) Lender's receipt and approval of final plans and specifications and a cost breakdown for the repair or reconstruction of the Property; (d) Lender's receipt and approval of (i) a general construction contract for the repair or reconstruction of the Property executed by Borrower and a contractor acceptable to Lender; and (ii) payment and performance bonds written on such general contractor issued by a surety acceptable to Lender; (e) evidence acceptable to Lender that (i) the repair and reconstruction of the Property can be completed and a final and unconditional certificate of occupancy for the Property can be issued not later than thirty (30) days before the maturity date of the Note; (ii) upon completion of the repair or reconstruction of the Property, the income from the Property will be sufficient to pay all Impositions, operating expenses of the Property and installment payments due in connection with the Loan; (iii) leases acceptable to Lender will be in effect or remain in effect upon completion of the repair or reconstruction of the Property; (iv) upon completion of the repair or reconstruction of the Property, the fair market value of the Property will be at least as great as it was prior to the date on which the damage or condemnation occurred as shown in an appraisal acceptable to Lender; (v) there has been no adverse change in the financial condition of Borrower or any Guarantors since the date of this Mortgage; and (vi) no Event of Default exists; and (f) such additional conditions as Lender may establish.

2.16 **Taxes and Impositions.** Unless required to be escrowed with Lender pursuant to Section 2.1 of this Mortgage, Borrower (a) shall pay all Taxes at least ten (10) days before delinquency; and (b) shall pay all other Impositions when due. Upon Lender's request, Borrower shall deliver to Lender receipts and such other substantiating documentation as may be required by Lender to evidence payment of all Impositions by Borrower in accordance with this Section.

2.17 **Absolute Assignment of Rents and Profits.**

(a) **Absolute Assignment.** Borrower absolutely, irrevocably and unconditionally grants, transfers and assigns to Lender all Rents and Profits. Prior to the occurrence of an Event of Default, Borrower shall have a license to collect and retain on the terms of this Section 2.18 all Rents and Profits as they become due and payable. Upon the occurrence of an Event of Default, Borrower's license to collect the Rents and Profits shall automatically be revoked without notice to Borrower. Following such revocation, Lender shall be entitled to collect and retain all Rents and Profits, whether or not Lender has taken possession of the Property, and Borrower shall immediately pay, deliver or cause to be delivered to Lender any Rents and Profits then held or thereafter collected by Borrower. All Rents and Profits collected by or on behalf of Lender may be applied by Lender to the Obligations in such order and amounts as Lender may determine. If Lender elects to seek the appointment of a receiver following the occurrence of an Event of Default, Borrower irrevocably and unconditionally consents to the appointment of a receiver



[redacted] [redacted]

[redacted]

COMPOSITE
EXHIBIT A

without regard to the adequacy of the security for any of the Obligations. Notwithstanding anything to the contrary contained in this Mortgage, the assignment of Rents and Profits contained in this Section is an absolute assignment and not an assignment as security. Neither the assignment of Rents and Profits contained in this Section nor any action taken by Lender to collect the Rents and Profits shall be deemed to make Lender a mortgagee-in- possession of the Property or shall be deemed to render Lender directly or indirectly liable or responsible for (i) the use, control, condition, care, operation, occupancy, management, repair, or leasing of the Property; (ii) the production of Rents and Profits from the Property; or (iii) to the extent permitted under applicable law, the performance or observance of any or all of Borrower's duties, obligations, representations, or warranties under any Leases or other agreements relating to the Rents and Profits. Lender shall have no responsibility or liability of any kind for any failure or delay by Lender in enforcing any of the terms or conditions of this Section 2.18. Without limiting the foregoing, this assignment of Rents and Profits shall not operate to place on Lender any obligation or liability for: (a) any waste committed on the Property by Tenants or any other parties; (b) any dangerous or defective condition of the Property (including, without limitation, the presence of any Hazardous Substances); or (c) any negligence in the management, upkeep, repair or control of the Property resulting in injury or death to any tenant or any other party or any loss of personal property. Borrower, for itself and any party claiming under or through Borrower, hereby releases and discharges Lender from any such liability to the fullest extent permitted by law.

**(b)** **<u>Applications of Rents and Profits Prior to Revocation of License</u>.** Borrower shall apply the Rents and Profits to the payment of all reasonable and necessary operating costs and expenses of the Property, installment payments due in connection with the Loan, payment of Impositions, and a reasonable reserve for future reasonable and necessary expenses, repairs and replacements relating to the Property before using the Rents and Profits for any other purpose which does not directly benefit the Property.

**(c)** **<u>Notices to Tenants</u>.** Upon revocation of the license described in Section 2.18(a) above, Borrower irrevocably authorizes and directs all Tenants under the Leases to comply with any notice or demand by Lender for payment to Lender of any Rents and Profits or for the performance of any of the Tenant's other respective obligations under the Leases, regardless of any conflicting demand by Borrower or notice by Borrower to any Tenant that Lender's demand is invalid or wrongful. No Tenant shall have any duty to inquire as to whether any default by Borrower has occurred under the Loan Documents in connection with any notice or demand by Lender under this Section. Without limiting the foregoing, at any time on or after Lender's demand for the Rents and Profits, Borrower agrees that each Tenant may rely on Lender's notice without inquiring further as to Lender's right to receive the Rents and Profits, and that no Tenant shall be liable to Borrower for any amounts which are actually paid to Lender in response to such a notice. Borrower shall not interfere with, and shall cooperate with, Lender's collection of the Rents and Profits. Lender shall be obligated to account only for Rents and Profits actually collected or received by Lender, and Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to lease after an event of default.

**2.18** **<u>Request for Lender's Consent to Transfers</u>.** Except as otherwise permitted under this Mortgage, Borrower shall not cause or permit any Prohibited Transfer of the legal or beneficial ownership of the Property, Borrower or Guarantor without Lender's prior written consent, which may be withheld in Lender's sole and absolute discretion. The term "**Prohibited Transfer**" shall mean any action by which either (a) Equity Interests in Borrower or (b) the legal or equitable title to the Property, or any part thereof, or (c) the cash flow from the Property or any portion thereof, are sold, assigned, transferred, hypothecated, pledged or otherwise encumbered or dispose of, in each case (a), (b) or (c) whether undertaken, directly or indirectly, or occurring by operation of law or otherwise, including, without limitation, the sale, conveyance, assignment, grant of an option with respect to, mortgage, deed in trust, pledge, grant of a security interest in, or any other transfer, as security or otherwise, of the Property. The term "**Equity Interests**" shall mean (i) partnership interests (whether general or limited) in an entity which is a partnership; (ii) membership interests in an entity which is a limited liability company; or (iii) the shares or stock interests in an entity which is a corporation. All requests by Borrower for Lender's consent to transfers under Section 3.12 below (a) shall specifically describe the transaction with respect to which Lender's consent is requested; (b) shall be delivered to Lender not less than fifteen (15) days before Borrower proposes to take the action with respect to which Lender's consent is requested; and (c) shall be accompanied by complete and accurate copies of all documents relating to the transaction with respect to which Lender's consent is requested, including financial statements and other information regarding the proposed transferee. Borrower acknowledges and agrees that Lender's right to withhold its consent, in its sole and absolute discretion, to any or all of the events described in Section 3.12 below is based, in part, on the fact



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

that Borrower's particular financial condition, credit history, character, experience, ability and expertise, as represented by Borrower to Lender, were material and important factors in Lender's decision to make the Loan, and that Lender will continue to rely on such matters to ensure satisfactory compliance with the Loan Documents during the entire term of the Loan. If Lender, in its sole and absolute discretion, consents to any of the transfers described in Section 3.12 below, such consent shall not be deemed to release Borrower or any other Person liable for payment or performance of the Obligations, and Borrower and such Persons shall continue to remain liable for payment and performance of the Obligations in accordance with the terms of the Loan Documents, unless expressly released pursuant to a further written agreement signed by Lender.

**2.19** **Fixtures.** Notwithstanding Section 3.12 below, Borrower may from time to time replace any Fixtures constituting a part of the Property in the ordinary course of Borrower's business, provided that (a) the replacement property for such Fixtures is at least equivalent in value, character, and quality to the Fixtures being replaced; (b) Borrower has good and marketable title to such replacement property free and clear of all liens, claims, and interests other than the lien of this Mortgage; and (c) this Mortgage shall constitute a first lien on such replacement Property.

**2.20** **Notice of Certain Matters.** Borrower shall promptly notify Lender in writing of (i) any claim, demand, right, or Lien relating to the Property which may be adverse to the lien of this Mortgage; (ii) any material loss, depreciation, or adverse change in the value of the Property and any other occurrence which may materially and adversely affect Lender's lien on the Property; (iii) any material adverse change in Borrower's ability to perform any or all of the Obligations; (iv) any event or condition which constitutes an Event of Default; and (v) any dispute between Borrower and any Governmental Authority relating to the Property which may have a material adverse effect on the Property.

**2.21** **Inspection.** Lender shall have the right at all reasonable times (a) upon reasonable prior written or telephonic notice (except that no such notice shall be required in the case of an emergency or any inspection limited to the public areas or common areas of the Property) to enter upon and inspect the Property, including any entry which Lender determines is necessary or appropriate in connection with enforcing or exercising any right, remedy or power available to or conferred on Lender under the Loan Documents; (b) to contact any Person to verify any information provided or disclosed by Borrower to Lender; and (c) to release such information regarding the Property, Borrower, or the Obligations as Lender may determine to be necessary or appropriate in connection with enforcing or exercising any right, remedy or power available to or conferred on Lender under the Loan Documents. Lender shall have no obligation or duty to inspect the Property, and all such inspections by Lender shall be for Lender's sole benefit and not for the benefit of Borrower or any other Person.

**2.22** **Defense of Actions and Protection of Security by Borrower.** Borrower shall appear in and defend any action or proceeding commenced by any Person other than Lender which affects or which Lender determines may affect any or all of the following: (a) the Property; (b) the Insurance Claims, Condemnation Claims, or Property Claims; (c) Lender's or Borrower's respective rights and obligations under the Loan Documents; (d) the Obligations; or (e) any other transaction or matter which affects Lender by reason of its interest in the Property. Borrower shall promptly commence and diligently prosecute all actions and proceedings which are necessary or appropriate or which Lender determines may be necessary or appropriate to do any or all of the following: (i) prevent any damage, destruction, or injury to the Property; (ii) enforce or recover upon the Insurance Claims, Condemnation Claims or Property Claims or collect the Insurance Proceeds, Condemnation Proceeds, or Property Proceeds; or (iii) to preserve, protect, maintain, and defend the Property and Lender's lien thereon.

**2.23** **Enforcement of Covenants and Restrictions.** If any of the Covenants and Restrictions apply to Persons owning or occupying real property which is adjacent to or in the vicinity of the Property, Borrower shall diligently enforce the Covenants and Restrictions against such Persons if (a) such Persons have breached their obligations under the Covenants and Restrictions; and (b) such breach has not been cured by such Persons within ninety (90) days after a request by Lender to Borrower to enforce the Covenants and Restrictions.

**2.24** **Further Assurances.** Upon Lender's request, Borrower shall execute, acknowledge and deliver to Lender such further documents and agreements and take such further actions as Lender may reasonably require from time to time to effectuate or carry out the purposes of the Loan Documents or to evidence, perfect, maintain, preserve or protect Lender's lien on the Property, including Borrower's execution of security agreements, assignments,



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

financing statements, and continuation financing statements. Upon Lender's request, Borrower shall execute, acknowledge and deliver to Lender an assignment acceptable to Lender of such additional rights, privileges, Governmental Permits, and documents relating to the Property as Lender may reasonably determine to be necessary or appropriate in connection with the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property.

## ARTICLE 3

## EVENTS OF DEFAULT

Lender, at its option, shall have the right to declare Borrower to be in default under this Mortgage and the other Loan Documents upon the occurrence of any or all of the following events:

**3.1** **Payment of Note and Other Monetary Obligations Under Loan Documents.** If (a) an Event of Default occurs under the terms of the Note; or (b) Borrower fails to perform any of its other obligations under the Loan Documents or under any other document with Lender requiring the payment of money to Lender or any third Person within ten (10) days after the date on which such indebtedness or monetary obligation is due.

**3.2** **Performance of Non-Monetary Obligations Under Loan Documents.** If Borrower breaches or otherwise fails to perform any of its non-monetary obligations to Lender or any third Person under any of the Loan Documents or under any other document with Lender when due.

**3.3** **Misrepresentation.** If any request, statement, information, certification, or representation, whether written or oral, submitted or made by Borrower to Lender in connection with the Loan is false or misleading in any material respect.

**3.4** **Insolvency of Borrower.** If (a) a petition is filed by or against Borrower under the federal bankruptcy laws or any other applicable federal or state bankruptcy, insolvency or similar law; (b) a receiver, liquidator, trustee, custodian, sequestrator, or other similar official is appointed to take possession of Borrower or the Property, or Borrower consents to such appointment; (c) Borrower makes an assignment for the benefit of creditors; provided, however, that Borrower shall have thirty (30) days within which to cause any involuntary bankruptcy proceeding to be dismissed or the involuntary appointment of any receiver, liquidator, trustee, custodian, or sequestrator to be discharged. The cure provision contained in this Section shall be in lieu of, and not in addition to, any and all other cure provisions contained in the Loan Documents.

**3.5** **Performance of Obligations to Senior Lien Holders or Third Persons.** If (i) Borrower fails to pay any of its indebtedness or to perform any of its obligations under any agreement between Borrower and any other Person who holds a Lien senior to this Mortgage when due; or (ii) Borrower fails to pay any of its indebtedness or to perform any of its obligations when due under any other material document between Borrower and any other Person.

**3.6** **Attachment.** If all or any material part of the assets of Borrower or Guarantor are attached, seized, subjected to a writ or levied upon by any court process and Borrower fails to cause such attachment, seizure, writ or levy to be fully released or removed within sixty (60) days after the occurrence of such event. The cure provision contained in this Section shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

**3.7** **Injunctions.** If a court order is entered against Borrower enjoining the conduct of all or part of its business and Borrower fails to cause such injunction to be fully stayed, dissolved or removed within sixty (60) days after such order is entered. The cure provision contained in this Section shall be in lieu of, and not in addition to, any and all other cure periods contained in the Loan Documents.

**3.8** **Dissolution.** The dissolution, liquidation, or termination of existence of Borrower or any of Borrower's General Partners or Managers.

**3.9** **Impairment of Priority.** If (i) the priority of this Mortgage or Lender's security interest under any



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

of the other agreements securing any or all of the Obligations is impaired for any reason; or (ii) the value of the Property has deteriorated, declined or depreciated as a result of any intentional tortious act or omission by Borrower.

**3.10** <u>Condemnation</u>. If all or any material part of the Property is transferred to any Governmental Authority as a result of any condemnation proceeding or action with respect to all or any material part of the Property.

**3.11** <u>Failure to Repair Casualty</u>. If there is an uninsured casualty with respect to the Property and Borrower (a) fails to commence repairs and reconstruction of the Property within ninety (90) days after such damage; or (b) thereafter fails to diligently prosecute such repairs and reconstruction to completion.

**3.12** <u>Sales, Transfers and Changes of Control</u>. If any one of the following events occurs without Lender's prior written consent, which may be withheld in Lender's sole and absolute discretion:

**(a)** the sale, conveyance, transfer, mortgage, encumbrance, lease (except as permitted under this Mortgage) and (ii) the conveyance or transfer of any part or any interest in the Property to a revocable family trust affiliated with Borrower, provided that such conveyance or transfer is solely for estate planning purposes), or alienation of all or any part of the Property or any interest in the Property, whether voluntary or involuntary, or Borrower's grant of any option or agreement to effect any such transaction.

**(b)** if Borrower or any General Partner or Manager of Borrower is a partnership, the admission, withdrawal, retirement or removal of any General Partner of Borrower or any of Borrower's General Partners or Managers, or the sale or transfer of more than forty-nine percent (49%) of the beneficial interests in Borrower or any of Borrower's General Partners or Managers.

**(c)** if Borrower or any General Partner or Manager of Borrower is a corporation, the sale or transfer of an aggregate of more than forty-nine percent (49%) of any class of stock in such corporation or the issuance by such corporation of additional stock to any Person who is not a shareholder in such corporation as of the date of this Mortgage.

**(d)** if Borrower or any General Partner or Manager of Borrower is a limited liability company, the appointment, withdrawal, retirement or removal of any Manager of Borrower or any of Borrower's General Partners or Managers or the sale or transfer of more than forty-nine percent (49%) of the beneficial interests in Borrower or any of Borrower's General Partners or Managers.

**(e)** if Borrower or any General Partner or Manager of Borrower is an individual, the death or incompetency of such Person, except where applicable law limits or prohibits Lender's declaration of a default based on such occurrences; provided, however, that Lender shall not declare an Event of Default to exist based solely on the death or mental incompetence of any individual Borrower, General Partner, or Manager if, within ninety (90) days after the occurrence of such event, a substitute is appointed, and Lender determines that the financial condition, credit history, character, experience, ability and expertise of such substitute is otherwise acceptable.

**3.13** <u>Default by Guarantor</u>. If Guarantor fails to pay any of its indebtedness or perform any of its obligations under the Guaranty when due or the revocation, limitation or termination or attempted revocation, limitation or termination of any of the obligations of Guarantor under the Guaranty, except in accordance with the express written terms of the Guaranty.

**3.14** <u>Misrepresentation by Guarantor</u>. If any request, statement, information, certification, or representation, whether written or oral, submitted or made by Guarantor to Lender in connection with the Loan or any other extension of credit by Lender to Borrower or such Guarantor is false or misleading in any material respect.

**3.15** <u>Cross-Default</u>. If Borrower, or any Affiliated Borrower (as hereinafter defined), fails to pay any of its indebtedness or to perform any of its obligations as to any other loan or loans or any other obligation owed to Lender when due. As used in this Section, "Affiliated Borrower" means, any borrower (individual or entity) directly or indirectly controlling, controlled by, or under common control with, Borrower, and "control" means an ownership interest equal to or greater than 10% of the entity or the ability to direct the management or affairs of that entity,



COMPOSITE
EXHIBIT A

whether through ownership, by contract or otherwise.

**ARTICLE 4**

**REMEDIES**

Upon Lender's election to declare Borrower to be in default under this Mortgage and the other Loan Documents pursuant to Article 3 above, Borrower shall be deemed to be in default under this Mortgage and the other Loan Documents, and Lender shall have the following rights and remedies:

**4.1** **Entry by Lender.** Lender shall have the right (a) to enter, take possession of, and manage, operate and lease the Property; (b) to take possession of any or all Books and Records; (c) to collect any or all Rents and Profits, whether or not Lender has taken possession of the Property; and (d) to take any or all actions which Lender determines to be necessary or appropriate in connection therewith or to preserve, protect, maintain and defend the Property and Lender's lien thereon, including (i) the exercise and enforcement of all of Borrower's rights under any or all of the Leases; (ii) the termination, acceptance of a surrender, modification or amendment of any or all of the Leases; (iii) the execution of new Leases on such terms and conditions as Lender determines to be appropriate; and (iv) the repair, alteration, improvement or completion of the Property in such manner and to such extent as Lender determines to be necessary or appropriate. As a mortgagee-in-possession of the Property, Lender shall have all rights and remedies permitted by law or in equity to a mortgagee-in-possession, including, without limitation, the right to charge Borrower the fair and reasonable rental value for Borrower's use and occupation of any part of the Property that may be occupied or used by Borrower and the right to exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise (including, without limitation, the right to make, cancel, enforce or modify any Lease, obtain and evict tenants, and demand, sue for, collect and receive all Rents and Profits of the Property). If Lender elects to take possession of the Property or to take any or all of the other actions described in this Section by court process, Borrower irrevocably and unconditionally agrees that a receiver may be appointed by a court for such purpose pursuant to Section 4.5 below.

**4.2** **Judicial Action.** Lender shall have the right to commence an action or proceeding to foreclose this Mortgage and to enforce any or all of the terms of the Loan Documents, including specific performance of the covenants of Borrower under this Mortgage.

**4.3** **Foreclosure by Power of Sale.**

**(a)** **Declaration and Notice of Default.** Lender shall have the right (i) to cause the Property to be sold under the power of sale contained in this Mortgage in any manner permitted by applicable law; and (ii) to deliver to Borrower a written notice of default and election to cause the Property to be sold. Upon the expiration of such period of time after delivery of such notice of default and election to sell and the giving of such notice of sale as may then be required by law, and without the necessity of any demand on Borrower, Lender or any designated sheriff or clerk, at the time and place specified in the notice of sale, shall sell the Property at public auction to the highest bidder for cash in U.S. Dollars payable at the time of sale. Lender or any obligee, creditor, or the holder or holders of the Note or Loan Documents may bid and purchase at such sale.

**(b)** **Postponements; Multiple Parcels.** To the extent permitted by law, Lender may, from time to time, postpone any sale hereunder by public announcement at the time and place noticed for such sale or may, in its discretion, give a new notice of sale. If the Property consists of several lots, parcels or items of property, Lender shall have the exclusive right (i) to designate the order in which such lots, parcels or items shall be offered for sale or sold; and (ii) to elect to sell such lots, parcels or items through a single sale, through two or more successive sales, or in any other manner Lender determines to be in its best interest. Any Person, including Borrower and Lender, may purchase at any sale under this Mortgage, and Lender shall have the right to purchase at any such sale by crediting upon the bid price the amount of all or any part of the Obligations. If Lender determines to sell the Property in more than one sale, Lender may, at its option, cause such sales of the Property to be conducted simultaneously or successively, on the same day or on such different days or times and in such order as Lender may determine, and no such sale shall terminate or otherwise affect the lien of this Mortgage on any part of the Property that has not been sold until all



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

Obligations have been paid in full.

(c) Costs of Sale; Incomplete, Defective or Irregular Sales. Borrower shall pay all costs, fees, and expenses of all sales of the Property under this Mortgage, including the costs, fees, and expenses (including attorneys' fees) of Lender, together with interest thereon at the interest rate applicable to principal under the Note. A sale of less than all of the Property or any defective or irregular sale under this Mortgage shall not exhaust, impair or otherwise affect the power of sale contained in this Mortgage, and subsequent sales of the Property may be made under this Mortgage until all Obligations have been satisfied or until the entire Property has been sold without defect or irregularity. .

4.4 Application of Sale Proceeds. Lender shall apply the proceeds of the sale or sales in the following order of priority: (a) first, to payment of all expenses of such sale or sales and all costs, expenses, fees, and liabilities of Lender, including attorneys' fees, costs of other evidence of title; (b) second, to all amounts advanced or disbursed by Lender under any of the terms of this Mortgage which have not then been repaid, together with interest thereon at the rate applicable to principal under the Note; (c) third, to the payment of all other Obligations in such order and amounts as Lender determines; and (d) the remainder, if any, to the Person or Persons legally entitled thereto.

4.5 Appointment of a Receiver. Lender shall have the absolute and unconditional right to apply to any court having jurisdiction and obtain the appointment of a receiver or receivers of the Property, and Borrower irrevocably and unconditionally consents to such appointment and agrees that Lender shall have the right to obtain such appointment (a) without notice to Borrower or any other Person; (b) without regard to the value of the Property or any other collateral securing the Obligations; and (c) without acceleration of the Obligations or commencement of foreclosure proceedings under this Mortgage. Any such receiver or receivers shall have the usual powers and duties of receivers in similar cases and all powers and duties necessary or appropriate to exercise the rights of Lender as provided in this Mortgage.

4.6 Protection of Lender's Security. Lender, without obligation to do so and without notice to or demand on Borrower, and without releasing Borrower from any of its Obligations or waiving Lender's rights under the Loan Documents, shall have the right to perform any Obligation which Borrower has breached in such manner, at such time, and to such extent as Lender determines to be necessary or appropriate to preserve, protect, maintain and defend the Property and Lender's lien thereon.

4.7 Assembly of Property. Upon Lender's request, Borrower shall assemble and make available to Lender at the location of the Land all Property which has been removed from or which is not located on the Land.

4.8 Rescission of Notice of Default. Prior to the conduct of any sale under the power of sale contained in this Mortgage, Lender, at its option, shall have the right to rescind any notice of default and election to sell the Property. Lender's rescission of any notice of default and election to sell pursuant to this Section or under applicable law shall not constitute or be construed as a waiver of any Event of Default or impair, prejudice or otherwise affect (a) Lender's right to record a new notice of default and election to sell the Property based on the same or any other Event of Default; or (b) Lender's rights and remedies in connection with the Obligations.

4.9 Exercise of Rights Under Other Loan Documents and Laws. Lender shall have the right to exercise any or all rights and remedies which Lender may have under any or all of the other Loan Documents and all other applicable law, including without limitation the applicable Uniform Commercial Code as it relates to such personal property assets as are encumbered under this Agreement (collectively, "Article 9 Collateral"), including, without limitation, (i) the right to take possession of Article 9 Collateral located on the Property and to take such other measures as Lender deems necessary for the care, protection and preservation of the Property, and (ii) the right to require that Borrower, at its expense, assemble all Article 9 Collateral and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Article 9 Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) days prior to such action, shall constitute reasonable notice to Borrower. Lender shall not have any obligation to clean-up or otherwise prepare the Article 9 Collateral for sale.

4.10 Continuing Recourse Liability. Notwithstanding any contractual or statutory defense to, or



[redacted] [redacted]

[redacted]

COMPOSITE
EXHIBIT A

prohibition of, (x) continuing liability on the Loan or the Note or the other Loan Documents or (y) liability for any deficiency remaining on the Loan, the Note and or any other Loan Document after foreclosure upon any item of Property (collectively "Deficiency Defense"), Borrower hereby agrees, to the extent not prohibited by applicable law, that:

**(a)** Borrower shall continue to be liable for, and shall be subject to full recourse liability for, all amounts owed under the Loan, the Note or any other Loan Documents if any of the following conditions occur:

(i) (1) the commencement of a case by Borrower or against Borrower by any person or entity other than Lender or any person or entity affiliated with Lender under Title 11 of the United States Code (11 U.S.C. §§101, et seq.) or any successor statute (the "**Bankruptcy Code**") or under any other law governing any federal or state bankruptcy, insolvency, reorganization, or other similar proceeding (collectively, a "**Bankruptcy Proceeding**"), or (2) the consent of the Borrower to any Bankruptcy Proceeding; or (3) the failure of Borrower to oppose in good faith and to the maximum extent permitted by law such involuntary Bankruptcy Proceeding; or (4) if any involuntary Proceeding is filed, the failure of Borrower to promptly stipulate to entry of an order granting Lender relief from the "automatic stay" under 11 U.S.C, 342 to proceed with a foreclosure of the Property, or (5) any collusion by Borrower with other creditors to cause, assist, or support such involuntary Bankruptcy Proceeding.

(ii) Guarantor joins or consents to any Bankruptcy Proceeding for Borrower or opposes any stipulation or motion seeking to grant Lender relief from the "automatic stay" under 11 U.S.C 342 to proceed with a foreclosure of the Property.

(iii) Borrower makes a transfer of any interest in the Borrower or in the Property or makes or allows to exist an encumbrance on the Property or on an interest in the Borrower,
(1) that is not expressly permitted pursuant to the terms, conditions, and provisions of the Loan Documents and (2) that is not cured within thirty (30) days after written notice from the Lender.

**(b)** Borrower shall continue to be liable for, and shall be subject to full recourse liability for, all amounts owed under the Loan, the Note and the other Loan Documents <u>minus</u> any recovery the Lender is successful in collecting on any title insurance policy it holds in connection with the Property (in the event that the Lender is prevented from acquiring title to the Property after the occurrence of an Event of Default) because of the failure of the Borrower's title to the Property under applicable federal, state, or local laws due to the commission of a criminal act by the Borrower or an affiliate of the Borrower as a result of which the applicable governmental entity is entitled to (under such applicable law) and does, take title to the Property.

**(c)** Borrower shall continue to be liable for, and shall be subject to full recourse liability for, all damages and losses incurred by Lender directly or indirectly arising out of or relating to any of the following: (1) fraud or misrepresentation by Borrower in connection with or relating to the Loan; (2) waste or willful mismanagement by Borrower with respect to any or all of the Property; (3) the application by Borrower of the Loan proceeds in any manner or for any purpose other than as specified in or required by the Loan Documents; (4) the removal or disposition by Borrower of any or all of the Property in violation of any of the terms of any of the Loan Documents; (5) any failure by Borrower to pay any Impositions in accordance with the Loan Documents, (6) the misapplication or misappropriation by Borrower of Insurance Proceeds (7) failure to deliver to Lender condemnation proceeds, insurance proceeds, or other proceeds of the Property or other similar proceeds, funds or payments, or other benefits of all or part of any collateral; (8) the misapplication or misappropriation of any Rents and Profits, prepaid rents, security deposits and similar sums paid to Borrower or any other Person in connection with any or all Leases of any part of the Property in violation of the terms of the Loan Documents; (9) recovery of amounts, damages, costs and expenses, including without limitation attorneys' fees, owing or payable to the Lender by Borrower relating to certain environmental matters or under any secured or unsecured indemnity agreement relating to Hazardous Substances executed by Borrower in connection with the Loan, including without limitation under (A) any Environmental Indemnity Agreement executed by Borrower in connection with the Loan;
and (B) all terms of the Loan Documents which constitute "environmental provisions" under applicable law



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

(including without limitation California Code of Civil Procedure Section 726.5 and 736, as such Section may be amended from time to time, respectively); and (10) all amounts owing to the Lender by Borrower under any other indemnification provision contained in the Loan Documents or with respect to claims asserted by any third Person against the Lender or liabilities incurred by the Lender with respect to any third Person, which claims or liabilities directly or indirectly result from or arise out of any act or omission of Borrower or from the occupancy or use of all or part of the Property by Borrower prior to Lender's acquisition of title to such Property.

**(d)** To the extent not prohibited by applicable law, Borrower hereby waives any and all rights and protections of the Deficiency Defenses.

## ARTICLE 5

## WARRANTIES AND REPRESENTATIONS

**5.1** **Warranties and Representations.** As a material inducement to Lender's extension of credit to Borrower in connection with the Loan, Borrower warrants and represents to Lender as follows:

**(a)** **Qualifications.** Borrower is qualified to do business in the jurisdiction in which the Property is located.

**(b)** **Litigation.** To the best of Borrower's knowledge, there are no actions, suits, proceedings or investigations pending or threatened against or affecting Borrower or the Property in any court or before any other Governmental Authorities that could reasonably be expected to have a material adverse effect on Borrower's ability to repay the Loan or on the value of the Property, nor does Borrower know of any basis for any such action, suit, proceeding or investigation.

**(c)** **Ownership.** Upon recordation of this Mortgage, Borrower will be the sole legal and beneficial owner of, and will have good and marketable title to, the Property and all other collateral which is the subject of the Loan Documents.

**(d)** **Liens.** To the best of Borrower's knowledge, there are no Liens, claims, encroachments, Covenants and Restrictions, Leases, Easements, or other rights affecting the Property which would not be disclosed by a customary search of the records relating to the Land of the county recorder for the county in which the Property is located, except for such matters as have been specifically disclosed by Borrower to and approved in writing by Lender prior to the date of recordation of this Mortgage.

**(e)** **Condition.** The Property is and will be in good condition and repair without any material defects known to Borrower.

**(f)** **Property Compliance.** The Property is and will be in compliance with all Governmental Requirements in all material respects.

**(g)** **Borrower Compliance.** Borrower shall comply with all Governmental Requirements, except to the extent that failure to comply therewith would not have a material adverse effect on its ability to fulfill its Obligations or otherwise fully comply with the Loan Documents.

**(h)** **Damage.** The Property is free from material casualty or termite damage.

**(i)** **Condemnation.** To the best of Borrower's knowledge, there is no condemnation, zoning change, or other proceeding or action pending, threatened or contemplated by any Governmental Authority which would in any way affect the Property.

**(j)** **Commercial Loan.** Borrower represents and warrants that the proceeds of this loan will



[redacted] [redacted]

[redacted]

COMPOSITE
EXHIBIT A

be used by Borrower only for business purposes. If Borrower is a natural person, Borrower represents and warrants that Borrower does not intend to, and will not, occupy or reside on the Property so long as the Loan remains outstanding. If Borrower is a legal entity, Borrower represents and warrants that no person affiliated with Borrower, or affiliated with any officer, member or manager of Borrower, intends to or will occupy or reside on the Property so long as the Loan remains outstanding.

**(k)** Arms-Length Transaction. Borrower represents and warrants that Borrower is operating at arms-length with, and has no material interest in, all parties to the Loan transaction, including the seller(s), any assignor(s) of the purchase and sale agreement for the Property, any loan broker or real estate agent(s), settling agent(s), escrow and title companies, insurance agent(s) or companies, or others, except for any relationship Borrower has disclosed to Lender and which Lender has approved in writing.

**(l)** Leases. Borrower represents and warrants that all Leases that Borrower enters into subject to this Mortgage are at arms-length, comply with all of Borrower's obligations under this Mortgage and complies with all applicable laws and regulations.

**5.2** Continuing Warranties and Representations. The warranties and representations contained in this Article 5 shall be true and correct as of the date of recordation of this Mortgage, shall survive the closing of the Loan, and shall remain true and correct as of the date on which such warranties and representations aregiven.

## ARTICLE 6

## MISCELLANEOUS

**6.1** Lender Statement; Certain Charges. With respect to (a) any statement, accounting, or similar information requested by Borrower or any other Person; or (b) any other document furnished to Borrower or any other Person by Lender at Borrower's request, Lender shall have the right to charge the maximum amount then permitted by law or, if there is no such maximum, Lender's customary charge for providing such statement, accounting, or other information. Borrower shall pay Lender its customary charge for any other service rendered by Lender in connection with the Loan or the Property, including the issuance of a request for full or partial reconveyance of this Mortgage, transmitting Loan proceeds to an escrow holder and changing Lender's records relating to the Obligations, and consenting to the change or creation of any map, plat or easement related to the Property.

**6.2** Execution of Instruments by Lender. Without notice to or affecting the liability of Borrower or any other Person for the payment or performance of the Obligations, without affecting the lien or priority of this Mortgage or Lender's rights and remedies under the Loan Documents, and without liability to Borrower or any other Person, Lender shall have the right, at any time and from time to time, to do any one or more of the following:
(a) release any part of the Property from the lien of this Mortgage; (b) consent in writing to the making of any map or plat relating to the Property; (c) join in or consent to the granting of any Easement affecting the Property; and
(d) execute any extension agreement relating to any or all of the Obligations, any document subordinating the lien of this Mortgage to any other Lien or document, or any other document relating to the Property, Obligations, or Loan Documents.

**6.3** Late Charges. If any installment payment under the Note is not paid when due, Borrower shall pay any late charge provided for in the Note.

**6.4** Requests by Borrower for Approvals by Lender. All requests by Borrower for Lender's consent to or approval of any transaction or matter requiring Lender's consent or approval under the Loan Documents (a) shall be made by Borrower in writing (inclusive of electronic delivery); (b) shall specifically describe the transaction or matter with respect to which Lender's consent or approval is requested; (c) shall be accompanied by such information and documentation as Lender may require in connection with such request; and (d) shall be delivered to Lender not less than fifteen (15) days before Borrower proposes to take the action or effect the transaction with respect to which Lender's consent or approval is requested, unless a different period of time is expressly provided for in the Loan Documents.



**COMPOSITE EXHIBIT A**

6.5 Approvals by Lender. Whenever (a) the terms of the Loan Documents grant Lender the right to consent to or approve any transaction or matter; (b) Lender is authorized or empowered under the Loan Documents to make a determination with respect to any transaction or matter; or (c) the Loan Documents provide that any document or other item must be approved by or acceptable to Lender, then except as otherwise expressly provided in the Loan Documents, (i) Lender shall have the right to grant or withhold such approval or consent and make such determination in its sole and absolute discretion; and (ii) the form and substance of such document or other item must be satisfactory to Lender in its sole and absolute discretion. Whenever the terms of the Loan Documents require Lender's consent to or approval of any transaction, matter, or document, such consent or approval shall not be deemed to be effective unless it is set forth in a written instrument executed by Lender. Borrower shall pay Lender's customary fee for such approvals as required by Section 6.1 above.

6.6 Transfers by Borrower Without Lender's Consent; No Release of Borrower. The following provisions shall apply if Borrower sells the Property to a third Person either (i) without Lender's consent; or (ii) with Lender's consent in a transaction in which Borrower is not released from liability under the Loan Documents:

(a) No Release of Borrower. No such action by Borrower nor any assumption of any or all of the Obligations by any transferee of the Property ("Transferee") shall be deemed to release Borrower or any other Person, including Guarantor, from any liability under the terms of the Loan Documents, and Borrower and such Persons shall remain liable to Lender for the payment and performance of all of their respective obligations under the Loan Documents.

(b) Actions Without Borrower's Consent. Borrower agrees that Lender may do any one or all of the following without notice to or the consent of Borrower and without affecting Lender's rights or remedies against Borrower: (i) accelerate, accept partial payment of, compromise, settle, renew, extend the time for payment or performance of, or refuse to enforce any of Borrower's Obligations to Lender under or in connection with this Mortgage or any of the other Loan Documents; (ii) grant any indulgence or forbearance to the Transferee or any other Person under or in connection with any or all of the Loan Documents; (iii) release, waive, substitute or add any or all collateral securing payment of any or all of the Obligations; (iv) release, substitute or add any one or more endorsers or guarantors of any or all of the Obligations; (v) amend, supplement, alter or change in any respect whatsoever any term or provision of the Loan Documents or any other agreement relating to the Obligations; and (vi) exercise any right or remedy with respect to the Obligations or any collateral securing the Obligations, notwithstanding any effect on or impairment of Borrower's subrogation, reimbursement or other rights against the Transferee.

(c) Waivers. Borrower waives all rights which it may have (i) to require Lender to exhaust its rights and remedies against the Transferee, any other Person, or any collateral securing any or all of the Obligations before pursuing its rights and remedies against Borrower; (ii) to require Lender to exercise any right or power or to pursue any remedy which Lender may have under the Loan Documents or applicable law before pursuing its rights and remedies against Borrower; and (iii) to assert any defense to Lender's enforcement of its rights and remedies against Borrower based on an election of remedies by Lender or the manner in which Lender exercises any remedy which destroys, diminishes or interferes with any or all of Borrower's subrogation, reimbursement or other rights against the Transferee.

6.7 Defense of Actions and Protection of Security by Lender. Whether or not an Event of Default has occurred, Lender shall have the right, but not the obligation, to appear in and defend any action or proceeding, whether commenced by or against Borrower, any of the Guarantors, or any other Person, which affects or which Lender determines may affect any or all of the following: (a) the Property; (b) the Insurance Claims, Condemnation Claims, or Property Claims; (c) Lender's, or Borrower's respective rights and obligations under the Loan Documents; (d) the Obligations; or (e) any other transaction or matter which affects Lender by reason of its interest in the Property. Lender shall have the right, but not the obligation, to commence and prosecute any action or proceeding which Lender determines to be necessary or appropriate to do any or all of the following: (i) prevent any damage, destruction, or injury to the Property; (ii) enforce or recover upon the Insurance Claims, Condemnation Claims, or Property Claims or collect the Insurance Proceeds, Condemnation Proceeds, or Property Proceeds pursuant to this Mortgage; (iii) preserve, protect, maintain, and defend the Property and Lender's lien thereon; or (iv) enforce or exercise any right, remedy or power available to or conferred on Lender under the Loan Documents or applicable law. Lender shall



[redacted] [redacted]

[redacted]

COMPOSITE EXHIBIT A

have the right to discontinue, suspend or dismiss any such action or proceeding which has been commenced by Lender at any time.

**6.8** Expenses. Lender shall have the right to incur and pay all costs, fees, expenses, and liabilities that Lender determines to be necessary or appropriate in connection with any or all of the following matters (the "Reimbursable Costs"): (a) the exercise of any or all of Lender's rights and remedies under the Loan Documents, (b) the enforcement of any or all of the Obligations or any other obligation of any Person liable to Lender in connection with the Loan, whether or not any legal action or proceeding is commenced by Lender; (c) the preservation, protection, maintenance, or defense of the Property or Lender's lien thereon; (d) the sale or disposition of the Property or any other collateral securing any or all of the Obligations; (e) the defense of any action or proceeding commenced by Borrower or Guarantor; or (f) the commencement and prosecution of any action or proceeding by Lender with respect to any or all of the matters described in this Section or in Section 6.7 above, including an action for relief from any stay, injunction, or similar order or enactment arising under any Federal or state bankruptcy, insolvency or similar law. Without limiting the terms of this Section, Lender shall have the right to do any or all of the following in connection with any of the matters described in this Section, and all costs, fees, expenses, and liabilities incurred or paid in connection therewith shall constitute Reimbursable Costs: (1) select, retain, and consult with attorneys, accountants, appraisers, contractors, brokers, architects, engineers and such other experts, consultants, advisors and third Persons as Lender determines to be necessary or appropriate; (2) settle, purchase, compromise or pay any or all claims, demands, and Liens; and (3) obtain title insurance coverage relating to the Property which Lender determines to be necessary or appropriate.

**6.9** Taxes Imposed on Lender. If, after the date of this Mortgage, any Governmental Requirements are enacted for the purpose of taxing any lien on the Property or changing in any way the laws for the taxation of mortgages or debts secured by mortgages, so as to impose on Lender payment of all or part of any Taxes assessed against the Property, then prior to the due date of such Taxes, Borrower shall pay all such Taxes and agree to pay such Taxes when levied or assessed against the Property or Lender.

**6.10** Payment by Borrower. All Reimbursable Costs and all other costs, fees, expenses and liabilities incurred or paid by Lender under any other provision of the Loan Documents or under applicable law in connection with the Obligations or the Property (a) shall be payable by Borrower to Lender on Lender's demand; (b) shall constitute additional indebtedness of Borrower to Lender; (c) shall be secured by this Mortgage; and (d) shall bear interest from the date of expenditure at the rate of interest applicable to principal under the Note. Nothing contained in this Mortgage shall be deemed to obligate Lender (i) to incur any costs, fees, expenses, or liabilities; (ii) to make any appearances in or defend any action or proceeding; or (iii) to commence or prosecute any action or proceeding relating to any matter.

**6.11** No Third Party Beneficiaries. The Loan Documents are entered into for the sole protection and benefit of Lender and Borrower and their respective permitted successors and assigns. No other Person shall have any rights or causes of action under the Loan Documents.

**6.12** Notices. All notices and demands by Lender to Borrower under this Mortgage and the other Loan Documents shall be in writing and shall be effective on the earliest of (a) personal delivery to Borrower; (b) electronic delivery to Borrower addressed to Borrower at the e-mail address provided to Lender by Borrower; (c) two (2) days after deposit in first-class or certified United States mail, postage prepaid, addressed to Borrower at the address set forth in this Mortgage; and (d) one (1) business day after deposit with a reputable nationally recognized overnight delivery service, delivery charges prepaid, addressed to Borrower at the address set forth in this Mortgage; provided, however, that notwithstanding anything to the contrary contained in this Section, service of any notice of default or notice of sale provided or required by law shall, if mailed, be deemed effective on the date of mailing. All notices and demands by Borrower to Lender under this Mortgage shall be in writing and shall be effective on actual receipt by Lender at Lender's address set forth in this Mortgage; provided, however, that non-receipt of any such notice or demand by Lender as a result of Lender's refusal to accept delivery or Lender's failure to notify Borrower of Lender's change of address shall be deemed receipt by Lender. Borrower's and Lender's respective addresses set forth in this Mortgage may be changed by written notice given to the other party in accordance with this Section. If Borrower consists of more than one Person, service of any notice or demand on any one of such Persons by Lender shall be effective service on Borrower for all purposes.



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

**6.13** **Performance of Covenants.** Borrower shall perform and comply with all of its obligations under this Mortgage at Borrower's sole cost and expense.

**6.14** **Severability; Savings Clause.** If any provision of the Loan Documents shall be held by any court of competent jurisdiction to be unlawful, voidable, void, or unenforceable for any reason, such provision shall be deemed to be severable from and shall in no way affect the validity or enforceability of the remaining provisions of the Loan Documents. Notwithstanding anything to the contrary contained in the Note or any of the other Loan Documents, the interest and other amounts paid or agreed to be paid to the Lender in consideration of the Loan evidenced by the Note (such interest and other amounts are referred to collectively as "**Interest**") shall not exceed the maximum rate permitted under applicable usury laws. If, for any reason, the Interest exceeds the maximum rate permitted under applicable usury laws, then (a) all excess Interest amounts previously collected by the Lender shall be credited against the principal balance of the Note or, at the Lender's option, to any other principal indebtedness of Borrower to Lender arising out of the Loan evidenced by the Note; (b) if the Note and all such other indebtedness have been paid in full, such excess amounts shall be refunded by the Lender to Borrower; and (c) the provisions of the Note shall automatically be deemed to be reformed and the amount of Interest payable hereunder shall automatically be deemed to be reduced, without the execution of any further documents by Borrower or Lender, so as to provide for the payment of Interest in an amount equal to, but not exceeding, the maximum rate permitted under applicable usury laws. All consideration paid to Lender which constitutes Interest under applicable usury laws shall be amortized, prorated, allocated, or otherwise apportioned throughout the term of the Note so that, to the extent possible, the rate of interest on the principal amount of the Note does not exceed the maximum rate permitted under applicable usury laws.

**6.15** **Interpretation.** Whenever the context of the Loan Documents reasonably requires, all words used in the singular shall be deemed to have been used in the plural, and the neuter gender shall be deemed to include the masculine and feminine gender, and vice versa. For purposes of this Mortgage, all references to the Property or Improvements shall be deemed to refer to all or any part of the Property or Improvements, respectively. The headings to sections of this Mortgage are for convenient reference only, and they do not in any way define or limit any of the terms of this Mortgage and shall not be used in interpreting this Mortgage.

**6.16** **Time of the Essence.** Time is of the essence in the performance of each provision of the Loan Documents by Borrower.

**6.17** **Amendments.** The Loan Documents (excluding the Guaranty) may be modified only by written agreement signed by Lender and Borrower.

**6.18** **Entire Agreement.** The Loan Documents contain the entire agreement concerning the subject matter of the Loan Documents and supersede all prior and contemporaneous negotiations, agreements, statements, understandings, terms, conditions, representations and warranties, whether oral or written, between Lender and Borrower concerning the Loan which are the subject matter of the Loan Documents.

**6.19** **No Waiver by Lender.** No waiver by Lender of any of its rights or remedies in connection with the Obligations or of any of the terms or conditions of the Loan Documents shall be effective unless such waiver is in writing and signed by Lender. Without limiting the generality of this Section, (a) no delay or omission by Lender in exercising any of its rights or remedies in connection with the Obligations shall constitute or be construed as a waiver of such rights or remedies; (b) no waiver by Lender of any default by Borrower under the Loan Documents or consent by Lender to any act or omission by Borrower shall constitute or be construed as a waiver of or consent to any other or subsequent default, act or omission by Borrower; (c) no acceptance by Lender of any late payment or late or defective performance of any of the Obligations by Borrower shall constitute a waiver by Lender of the right to require prompt payment and performance strictly in accordance with the Loan Documents with respect to any other payment or performance of any of the Obligations; (d) no acceptance by Lender of any payment or performance following any notice of default which has been given or recorded by Lender shall constitute a waiver of Lender's right to proceed with the exercise of its remedies with respect to any Obligations which have not been paid or performed in full; (e) no acceptance by Lender of any partial payment or performance shall constitute a waiver by Lender of any of its rights or remedies relating to any Obligations which have not been paid or performed in full; and (f) no application of Rents



[redacted] [redacted]

[redacted]

COMPOSITE
EXHIBIT A

and Profits, Insurance Proceeds, Condemnation Proceeds or Property Proceeds to any of the Obligations shall constitute or be construed as a waiver by Lender or cure of any Event of Default or impair, prejudice, invalidate or otherwise affect any action by Lender in response to such default.

**6.20** __Waivers by Borrower__. Borrower waives presentment, demand for payment, protest, notice of demand, dishonor, protest and non-payment, and all other notices and demands in connection with the delivery, acceptance, performance, default under, and enforcement of the Loan Documents. Borrower waives the right to assert any statute of limitations as a defense to the enforcement of any or all of the Loan Documents to the fullest extent permitted by law. Without limiting the generality of the immediately preceding sentence, in the event of Borrower's payment in partial satisfaction of any or all of the Obligations, Lender shall have the sole and exclusive right and authority to designate the portion of the Obligations that is to be satisfied.

**6.21** __Waiver of Marshalling__. Borrower and all Persons holding a Lien affecting the Property who have actual or constructive notice of this Mortgage waive (a) all rights to require marshalling of assets or liens in the event of Lender's exercise of any of its rights and remedies under this Mortgage, including any judicial or nonjudicial foreclosure sale of the Property; (b) all rights to require Lender to exhaust its rights and remedies against any other collateral securing any or all of the Obligations before pursuing its rights and remedies under this Mortgage; and (c) all rights to require Lender to exercise any other right or power or to pursue any other remedy which Lender may have under any document or applicable law before pursuing its rights and remedies under this Mortgage.

**6.22** __Waiver of Subrogation__. Borrower waives all rights to recover against Lender for any loss or damage incurred by Borrower from any cause which is insured under any of the Insurance Policies, except that the foregoing waiver of subrogation shall not be effective with respect to any Insurance Policy if the coverage under such policy would be materially reduced or impaired as a result of such waiver. Borrower shall use its best efforts to obtain Insurance Policies which permit the waiver of subrogation contained in this Section.

**6.23** __Cumulative Remedies__. No right or remedy of Lender under this Mortgage or the other Loan Documents shall be exclusive of any other right or remedy under the Loan Documents or to which Lender may be entitled. Lender's rights and remedies under the Loan Documents are cumulative and in addition to all other rights and remedies which Lender may have under any other document with Borrower and under applicable law. Lender shall have the right to exercise any one or more of its rights and remedies in connection with the Obligations at Lender's option and in its sole and absolute discretion, without notice to Borrower or any other Person (except as otherwise expressly required by law or under the Loan Documents), and in such order as Lender may determine in its sole and absolute discretion. If Lender holds any collateral in addition to the Property for any of the Obligations, Lender, at its option, shall have the right to pursue its rights or remedies with respect to such other collateral either before, contemporaneously with, or after Lender's exercise of its rights or remedies with respect to the Property. Upon the occurrence of an Event of Default, Lender, at its option, shall have the right to offset against any debt or monies due from Lender to Borrower against all or part of the Obligations.

**6.24** __Subrogation to Lien Rights__. If any or all of the proceeds of the Note are directly or indirectly used to pay any outstanding Lien against the Property, or if Lender pays or discharges any Lien pursuant to any of the terms of the Loan Documents or under applicable law, Lender shall be subrogated to all rights and liens held by the holder of such Lien, regardless of whether such Lien is reconveyed.

**6.25** __Joint and Several Liability__. Each Person signing this Mortgage as Borrower shall be jointly and severally liable to Lender for the performance of Borrower's obligations under the Loan Documents. If Borrower consists of more than one Person, the occurrence of any Event of Default with respect to any one or more of such Persons shall constitute an Event of Default and entitle Lender to exercise its rights and remedies under Article 4 of this Mortgage.

**6.26** __Sale of Loan Documents__. Lender shall have the right to do any or all of the following at any time without prior notice to or the consent of Borrower or any other Person: (a) to sell, transfer, pledge or assign any or all of Loan Documents, or any or all servicing rights with respect thereto; (b) to sell, transfer, pledge or assign participations in the Loan Documents ("**Participations**"); and (c) to issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "**Securities**").



[redacted] [redacted]

[redacted]

COMPOSITE
EXHIBIT A

Lender is authorized to forward or disclose to each purchaser, transferee, pledgee, assignee, servicer, participant, or investor in such Participations or Securities (collectively, the "**Investor**") or any Rating Agency rating such Securities, each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Loan and to Borrower or any Guarantor as Lender determines to be necessary or desirable. Upon Lender's request, Borrower shall reasonably cooperate with Lender in connection with any of the transactions contemplated by this Section. Notwithstanding anything to the contrary contained in this Mortgage or any of the other Loan Documents, from and after the date of any sale, transfer or assignment of the Note and other Loan Documents by Lender or upon any realization of a pledge by a pledgee, the cross-default provision contained in Section 3.15 of this Mortgage shall terminate and shall be of no further force or effect.

**6.27** **Applicable Law; Jurisdiction; Venue.** The Loan Documents shall be governed by and construed under the laws of the state of California (without giving effect to any state's conflict of law principles), except that the exercise of remedies against the Property shall be governed by the laws of the state in which the Property is located. All payments made pursuant to the Loan Documents are to be made to the Lender in California in which state the last act occurred to make the Note effective between the parties. Borrower agrees that the courts of the State of California and Federal District Courts located in San Francisco County, California, shall have exclusive jurisdiction and venue of any action or proceeding directly or indirectly arising out of or related to the negotiation, execution, delivery, performance, breach, enforcement or interpretation of the Loan Documents (except for foreclosure proceedings, which shall proceed in the state in which the Property is located and according to the laws of that state), regardless of how any claim, counterclaim or defense in any such action or proceeding is characterized. Borrower irrevocably consents to the personal jurisdiction and venue of such courts, and to the service of process in the manner provided for the giving of notices in this Mortgage. Borrower waives all objections to such jurisdiction and venue, including all objections that are based upon inconvenience or the nature of the forum.

**6.28** **Successors.** Subject to the restrictions contained in the Loan Documents, the Loan Documents shall be binding upon and inure to the benefit of Lender and Borrower and their respective permitted successors and assigns.

**6.29** **Power of Attorney.** Borrower irrevocably appoints Lender, with full power of substitution, as Borrower's attorney-in-fact, coupled with an interest, with full power, in Lender's own name or in the name of Borrower to take any or all of the actions specified in Article 4 above with respect to the Property. Lender shall have the right to exercise the power of attorney granted in this Section directly or to delegate all or part of such power to one or more agents of Lender. Nothing contained in this Mortgage shall be construed to obligate Lender to act on behalf of Borrower as attorney-in-fact.

**6.30** **Indemnification.** Borrower shall indemnify and hold Lender and its officers, directors, agents, employees, representatives, shareholders, affiliates, successors and assigns (collectively, the "Indemnified Parties") harmless from and against any and all claims, demands, damages, liabilities, actions, causes of action, suits, costs, and expenses, including attorneys' fees and costs, arising directly or indirectly out of or relating to any or all of the following: (a) Borrower's breach of any of its Obligations or warranties under the Loan Documents; (b) any act or omission by Borrower, including in Borrower's capacity as a landlord under any Lease; (c) any act or omission by a contractor, architect or any other Person providing labor, services, materials or equipment in connection with the design, construction, improvement, development, use, ownership, operation, maintenance, repair or marketing of the Property; (d) Borrower's use and occupancy of the Property or any other activity or thing allowed or suffered by Borrower to be done on or about the Property; (e) any claims for commissions, finder's fees or brokerage fees arising out of the Loan or the transactions contemplated by the Loan Documents; and (f) Lender's exercise of any or all of Lender's rights or remedies under the Loan Documents in accordance with the terms thereof, except in the case of negligence or intentional tortious conduct of such Indemnified Party which such Indemnified Party is determined by the final judgment of a court of competent jurisdiction to have committed.

**6.31** **State Specific Provisions.** State specific provisions are outlined on Exhibit B (if applicable), attached hereto and incorporated herein.

[the remainder of this page intentionally left blank]

[redacted]



[redacted]

[redacted]

COMPOSITE EXHIBIT A

IN WITNESS WHEREOF, Borrower has caused this Mortgage to be executed as of the day and year first written above.

**BORROWER:** DDH Fund, LLC, A Delaware Limited Liability Company

________________________________________

By: Taylor Green, Authorized Signor

________________________________________

**NOTE: ALL SIGNATURES ON THIS MORTGAGE MUST BE NOTARIZED**

[redacted] [redacted] [redacted]

**COMPOSITE EXHIBIT A**

54225056 Page 28 of 34 09/19/2023 04:14 PM

State CALIFORNIA
~~COMMONWEALTH~~ OF ~~PENNSYLVANIA~~ )
)
COUNTY OF SAN BERNARDINO )

On 8/18/2023, before me, YESENIA MALDONADO, a Notary Public in and for said County and State, personally appeared TAYLOR GREEN ☆, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) (is/are) subscribed to the within instrument, and acknowledged to me that (he/she/they) executed the same in (his/her/their) authorized capacit(-y/-ies), and that by (his/her/their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

☆ - Authorized Signor - DDH Fund, LLC

WITNESS my hand and official seal.

Notary Public Notary Seal

YESENIA MALDONADO
Notary Public - California
San Bern[redacted]
Commiss[redacted]
My Comm. Expires Apr 21, 2026

[signature]
Signature of Notary Public

YESENIA MALDONADO
(Printed Name of Notary)

My commission expires: 4/21/26



COMPOSITE EXHIBIT A

# MORTGAGE

## EXHIBIT "B"

## PENNSYLVANIA SPECIFIC PROVISIONS

**6.31 Pennsylvania State-Specific Provisions.**

(a) Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Section 6.31 and the other provisions of this Mortgage, the terms and conditions of this Section 6.31 shall control and be binding.

(b) Advances. Lender shall have the right, but not the obligation, to make protective advances with respect to the Property for the payment of taxes, assessments, insurance premiums, repairs, maintenance and other costs incurred in the protection of the Property as contemplated by 42 Pa.C.S. § 8144, and such protective advances, together with interest thereon from the date of each such advance until it is repaid in full, shall be secured by this Mortgage to the fullest extent and with the highest priority contemplated by 42 Pa.C.S. §§ 8143 and 8144.

(c) Mineral Rights. Section 1.28 of the Mortgage is deleted and the following is inserted in lieu thereof:

> "Mineral Rights" means all existing and future right, title and interest in and to all minerals, oil, gas and other hydrocarbon substances in or on or under the Property, including, but not limited to, all of Borrower's right, title and interest in and to any oil, gas or mineral lease or other oil, gas or mineral agreement, together with all of Borrower's right, title and interest in and to any royalties, rents, bonuses, damage payments or other revenues arising under any such oil, gas or mineral lease or other agreement.

(d) Judicial Action. Section 4.2 of the Mortgage is amended by the addition of the following additional term with respect to foreclosure, all of which terms are deemed incorporated into the Mortgage as if set forth fully in their entirety:

> (i) Lender may institute proceedings for the complete foreclosure of the Mortgage, in which case the Property may be sold, subject to applicable law, for cash or credit in one or more parcels. With respect to any notices required or permitted under the UCC, Borrower agrees that ten (10) days' prior written notice shall be deemed commercially reasonable. At any such sale by virtue of any judicial proceedings or any other legal right, remedy or recourse, the title to and right of possession of any such property shall pass to the purchaser thereof, and to the fullest extent permitted by law, Borrower shall be completely and irrevocable divested of all of Borrower's right, title, interest, claim, equity, equity of redemption, and demand whatsoever, either at law or in equity, in and to the property sold and such sale shall be a perpetual bar both at law and in equity against Borrower, and against all other Persons claiming or to claim the property sold or any part thereof, by, through or under Borrower, subject to all applicable statutory rights of redemption under applicable law. Lender may be a purchaser at such sale and if Lender is the highest bidder, Lender may credit the portion of the purchase price that would be distributed to Lender against the Obligations in lieu of paying cash. In the event the Mortgage is foreclosed by judicial action, appraisement of the Property is waived.



COMPOSITE
EXHIBIT A

(ii) Upon the completion of any sale or sales made by Lender under or by virtue of Article 4 of the Mortgage, Lender, or any officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the properties, interests and rights sold. Lender is hereby irrevocably appointed the true and lawful attorney of Borrower, in its name and stead, to make all the necessary conveyances, assignments, transfers and deliveries of any part of the Property and rights so sold, and for that purpose Lender may execute all necessary instruments of conveyance, assignment and transfer and may substitu te one or more persons with like power, Borrower hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Borrower if so requested by Lender, shall ratify and confirm any such sale or sales by executing and delivering to Lender or to such purchaser or purchasers all such instruments as may be advisable, in the reasonable judgment of Lender, for the purpose and as may be designated in such request. Any such sale or sales made under or by virtue of this Article 4, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever at law or in equity, of Borrower in and to the properties, interests and rights so sold, and shall be a perpetual bar both at law and in equity against Borrower and against all Persons claiming or who may claim the same, or any part thereof, from, through or under Borrower.

(iii) Upon any sale, whether under the power of sale hereby given or by virtue of judicial proceedings, it shall not be necessary for Lender, or any public officer acting under execution or order of court, to have present or constructive possession of any of the Property.

(iv) The recitals contained in any conveyance made by Lender to any purchaser at any sale made pursuant hereto or under applicable law shall be full evidence of the matters therein stated, and all prerequisites to such sale shall be presumed to have been satisfied and performed.

(v) To the extent permitted by law, any such sale or sales made under or by virtue of the Mortgage, whether under the power of sale hereby granted and conferred, or under or by virtue of any judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all of the estate, right, title, interest, claim and demand whatsoever, either by law or in equity, of Borrower in and to the properties, interests and rights so sold, and shall be a perpetual bar, both at law and in equity, against Borrower, its successors and assigns, and against any and all Persons claiming or who may claim the same, or any part thereof; from, through or under Borrower and its successors or assigns.

(vi) The receipt by Lender of the purchase money paid at any such sale, or the receipt of any other Person authorized to receive the same, shall be sufficient discharge therefor to any purchaser of the property, or any part thereof, sold as aforesaid, and no such purchaser, or his representatives, grantees or assigns, after paying such purchase money and receiving such receipt, shall be bound (i) to see to the application of such purchase money or any part thereof upon or for any trust or purpose of the Mortgage, (ii) by the misapplication or nonapplication of any such purchase money, or any part thereof, or (iii) to inquire as to the authorization, necessity, expediency or regularity of any such sale.

(vii) In case the liens or security interests hereunder, or by the exercise of any other right or power, shall be foreclosed by Lender's sale or by other judicial or non-judicial action, the purchaser at any such sale shall receive, as an incident to its ownership, immediate possession of the property purchased, and if Borrower or Borrower's successors shall hold possession of said property, or any part thereof, subsequent to foreclosure, Borrower or Borrower's successors shall be considered as tenants at sufferance of the purchaser at foreclosure sale, and anyone occupying the property after demand made for possession thereof shall be guilty of forcible detainer and shall be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages by reason thereof are hereby expressly waived.



COMPOSITE
EXHIBIT A

(viii) Any expenses incurred by Lender in prosecuting, resetting or settling the claim of Lender shall become an additional Obligation of Borrower hereunder.

(e) **CONFESSION OF JUDGMENT FOR POSSESSION.**

(i) FOR THE PURPOSE OF PROCURING POSSESSION OF THE PROPERTY, UPON THE OCCURRENCE OF AN EVENT OF DEFAULT, BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA, DESIGNATED BY LENDER, AS ATTORNEY FOR BORROWER AND ALL PERSONS CLAIMING UNDER COURT OF COMPETENT JURISDICTION A PRAECIPE FOR WRIT OF SUMMONS OR A COMPLAINT PROVIDING FOR CONFESSION OF JUDGMENT IN EJECTMENT FOR POSSESSION OF THE PROPERTY AND TO APPEAR FOR AND CONFESS JUDGMENT AGAINST BORROWER, AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH BORROWER, FOR THE RECOVERY BY LENDER OF POSSESSION OF THE PROPERTY, WITHOUT ANY STAY OF EXECUTION, FOR WHICH THE MORTGAGE, OR A COPY THEREOF VERIFIED BY AFFIDAVIT, SHALL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY BE ISSUED FORTHWITH, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER, BORROWER HEREBY RELEASING AND AGREEING TO RELEASE LENDER AND SAID ATTORNEYS FROM ALL ERRORS AND DEFECTS WHATSOEVER OF ANY NATURE IN ENTERING ANY SUCH JUDGMENT OR IN CAUSING ANY SUCH WRIT OR PROCESS TO BE ISSUED. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED THE SAME SHALL BE DISCONTINUED OR POSSESSION OF THE PROPERTY SHALL REMAIN IN OR BE RESTORED TO THE BORROWER, LENDER SHALL HAVE THE RIGHT FOR THE SAME EVENT OF DEFAULT OR ANY SUBSEQUENT EVENT OF DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS AS ABOVE PROVIDED TO RECOVER POSSESSION OF THE PROPERTY. LENDER MAY BRING SUCH ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF FORECLOSURE PROCEEDINGS UPON THIS MORTGAGE, OR AFTER JUDGMENT THEREON OR AFTER SALE OF THE PROPERTY BY THE SHERIFF.

(ii) BORROWER ACKNOWLEDGES THAT BORROWER HAS HAD THE ASSISTANCE OF COUNSEL IN THE REVIEW AND EXECUTION OF THE MORTGAGE AND THIS EXHIBIT "B" AND FURTHER ACKNOWLEDGES THAT THE MEANING AND EFFECT OF THE FOREGOING CONFESSION OF JUDGMENT HAVE BEEN FULLY EXPLAINED TO BORROWER BY SUCH COUNSEL.

(f) **Borrower Power of Attorney.** Borrower hereby acknowledges and agrees as follows:

(i) This document contains one or more provisions authorizing the Lender to act as Borrower's attorney-in-fact or agent (the "**Power of Attorney**");

(ii) The purpose of the Power of Attorney is to give the Lender broad powers to execute and perform Borrower's duties and obligations under documents, confess judgment, handle or sell property, enter into leases, revise leases, endorse checks and otherwise act in the name of the Borrower;

(iii) The Power of Attorney is coupled with an interest and, as such, Lender, in exercising any of its rights under the Power of Attorney is not a fiduciary of Borrower. Lender may exercise any of its rights under the Power of Attorney for its sole benefit, without regard to the interests of Borrower;

(iv) The Power of Attorney shall in no way be construed as to benefit Borrower or any Guarantor;

(v) Lender shall have no duty to exercise any powers granted by the Power of Attorney for the benefit of Borrower or to otherwise act in Borrower's best interest;

(vi) Lender has no, and shall have no duty of loyalty to Borrower;



[redacted] [redacted] [redacted]

COMPOSITE
EXHIBIT A

(vii) Lender shall, to the extent exercisable, exercise any and all powers granted by the Power of Attorney for its sole and exclusive benefit;

(viii) Any rights Borrower may have under 20 Pa.C.S. §§ 5601 - 5612, as amended (the "**POA Act**") are hereby forever waived and relinquished, to the greatest extent permissible under the POA Act;

(ix) Without limiting the generality of the foregoing, (i) the Power of Attorney shall not be construed in accordance with the provisions of the POA Act, and (ii) Lender shall have no duties described in 20 Pa.C.S. § 5601.3(b) of the POA Act and Borrower forever waives and releases Lender from any duties under the POA Act;

(x) The Power of Attorney is irrevocable; and

(xi) Borrower has read and understands the Power of Attorney and the powers granted to Lender thereunder.

(g) **Default and Interest**. If any payment due hereunder, or under the Note, or the other Loan Documents, is not paid when due, either at stated or accelerated maturity or pursuant to any of the terms hereof or thereof, then and in such event, Borrower shall pay interest thereon from and after the date on which such payment first becomes due at the interest rate provided for in the Note and such interest shall be due and payable, on demand, at such rate until the entire amount due is paid to Lender, whether or not any action shall have been taken, or proceeding commenced, to recover the same or to foreclose this Mortgage. Nothing in this Section or in any other provision of this Mortgage shall constitute an extension of the time of payment of the debt. After entry of a judgment on any of the Loan Documents, or a judgment in mortgage foreclosure hereunder, interest shall continue to accrue under the Note and the Loan Documents at the rates set forth therein. This Mortgage shall not, solely for purposes of determining interest payable under the Note, merge with any judgment on any Loan Document or a judgment in mortgage foreclosure under this Mortgage.

(h) **Purchase Money Mortgage**. If all or part of the sums secured by this Mortgage are lent to Borrower to acquire title to the Property, this Mortgage is hereby declared to be a purchase money mortgage.



COMPOSITE
EXHIBIT A

IN WITNESS WHEREOF, Borrower has caused this instrument to be executed as of date indicated on the Mortgage.

**BORROWER:** DDH Fund, LLC, A Delaware Limited Liability Company

[signature]
By: Taylor Green, Authorized Signor

________________________________________

State CALIFORNIA
~~COMMONWEALTH~~ OF ~~PENNSYLVANIA~~ )
)
COUNTY OF SAN BERNARDINO )

On 8/18/2023, before me, YESENIA MALDONADO, a Notary Public in and for said County and State, personally appeared Taylor Green, Authorized Signor - DDH Fund, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) (is/are) subscribed to the within instrument, and acknowledged to me that (he/she/they) executed the same in (his/her/their) authorized capacit(-y/-ies), and that by (his/her/their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public Notary Seal

[signature]
Signature of Notary Public

YESENIA MALDONADO
(Printed Name of Notary)

[redacted]



[redacted]

[redacted]

COMPOSITE
EXHIBIT A

Commonwealth
LAND TITLE INSURANCE COMPANY

## SCHEDULE C
## LEGAL DESCRIPTION

Issuing Office File No. COA602423

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements located thereon, if any described according to a Survey thereof made by Joseph Johnson, Esquire, Surveyor and Regulator of the 11th District dated June 3rd, 1898 as follows:

SITUATE on the East side of 54th Street at the distance of 241 feet Northward from Master Street in the 44th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 54th Street 16 feet and extending in length or depth Eastward between lines at right angles to said 54th Street on the North line thereof 69 feet 8-1/8 inches on the South line thereof 69 feet 1-1/8 inches to a 3 feet wide alley 4 feet 6-1/8 inches wide leading Westward into said 54th Street and on the rear end thereof along the West side of said 3 feet wide alley 16 feet and 1/8 of an inch.

TOGETHER with the free and common use, right, liberty and privilege of that portion of said alleys leading Northward and Southward and then Westward into said 54th Street as and for passageways and watercourses at all times hereafter forever in common with the owners, tenants and occupiers bounding thereon and having a right therein.

BEING known as No. 1431 North 54th Street.
Being the same premises which Lillie Mae Sanders by Deed dated 06/20/1991 and recorded 08/05/1991 in Philadelphia County in Deed Book FHS 1916 Page 541 conveyed unto Berry Wilder, in fee.
Being the same premises which Berry Wilder by Deed dated 07/28/2022 and recorded 08/04/2022 in Philadelphia County as Document No. 54080459 conveyed unto RAD Diversified REIT Inc., in fee.



**COMPOSITE EXHIBIT A**

eRecorded in Philadelphia PA Doc Id: 54351776
10/15/2024 10:41 AM Page 1 of 3 Rec Fee: $242.75
Receipt#: 24-82355
Records Department Doc Code: A

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
[redacted]

[redacted]

FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH [redacted]

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR KIAVI FUNDING, INC., ITS SUCCESSORS AND ASSIGNS** located at **11819 MIAMI ST SUITE 100, OMAHA, NE 68164** or **P.O. Box 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over without recourse, representation or warranty, expressed or implied unto **METROPOLITAN LIFE INSURANCE COMPANY** located at **ONE METLIFE WAY, WHIPPANY, NJ 07981**, Assignee, its successors and assigns, that certain Mortgage described below.

Said Mortgage dated **AUGUST 18, 2023** executed by **DDH FUND, LLC**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR KIAVI FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, in the amount of **$130,200.00** and recorded on **SEPTEMBER 19, 2023** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **54225056**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **1431 N 54TH ST, PHILADELPHIA, PA 19131**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on OCT 0 7 2024.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR KIAVI FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**

**ANGIE FAY CHAPMAN, VICE PRESIDENT**

[redacted]



[redacted]

**EXHIBIT B**

STATE OF **SOUTH CAROLINA** COUNTY OF **GREENVILLE** ) ss.
On OCT 0 7 2024, before me,Nikita Thompson, Supervisor personally appeared **ANGIE FAY CHAPMAN** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR KIAVI FUNDING, INC., ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Nikita Thompson, Supervisor COMM. EXP. 8/21/33 )
NOTARY PUBLIC

NIKITA THOMPSON
NOTARY PUBLIC
MY COMMISSION EXPIRES 08/21/2033
STATE OF SOUTH CAROLINA

I do hereby certify that the precise address of the Assignee Residence is:
**METROPOLITAN LIFE INSURANCE COMPANY, ONE METLIFE WAY, WHIPPANY, NJ 07981**

**ANGIE FAY CHAPMAN, VICE PRESIDENT**

[redacted]



**EXHIBIT B**

[redacted]

Commonwealth
LAND TITLE INSURANCE COMPANY

**SCHEDULE C**
**LEGAL DESCRIPTION**

Issuing Office File No. COA602423

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements located thereon, if any described according to a Survey thereof made by Joseph Johnson, Esquire, Surveyor and Regulator of the 11th District dated June 3rd, 1898 as follows:

SITUATE on the East side of 54th Street at the distance of 241 feet Northward from Master Street in the 44th Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 54th Street 16 feet and extending in length or depth Eastward between lines at right angles to said 54th Street on the North line thereof 69 feet 8-1/8 inches on the South line thereof 69 feet 1-1/8 inches to a 3 feet wide alley 4 feet 6-1/8 inches wide leading Westward into said 54th Street and on the rear end thereof along the West side of said 3 feet wide alley 16 feet and 1/8 of an inch.

TOGETHER with the free and common use, right, liberty and privilege of that portion of said alleys leading Northward and Southward and then Westward into said 54th Street as and for passageways and watercourses at all times hereafter forever in common with the owners, tenants and occupiers bounding thereon and having a right therein.

BEING known as No. 1431 North 54th Street.
Being the same premises which Lillie Mae Sanders by Deed dated 06/20/1991 and recorded 08/05/1991 in Philadelphia County in Deed Book FHS 1916 Page 541 conveyed unto Berry Wilder, in fee.
Being the same premises which Berry Wilder by Deed dated 07/28/2022 and recorded 08/04/2022 in Philadelphia County as Document No. 54080459 conveyed unto RAD Diversified REIT Inc., in fee.

[redacted]



**EXHIBIT B**

Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case [redacted]

Filed and Attested by the Office of Judicial Records 18 FEB 2025 12:20 pm I. LOWELL

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff | NO.: 241202182 |
| | CIVIL ACTION |
| vs. | MORTGAGE FORECLOSURE |
| DDH FUND LLC, Defendant | |

## PRAECIPE FOR *IN REM* JUDGMENT FOR FAILURE TO ANSWER AND ASSESSMENT OF DAMAGES

TO THE PROTHONOTARY, CIVIL DIVISION:

Kindly enter judgment in mortgage foreclosure in favor of Plaintiff, Metropolitan Life Insurance Company, and against Defendant, **DDH Fund LLC**, for its failure to file an Answer to Plaintiff's Complaint within 20 days from service thereof and for foreclosure and sale of the mortgage premises as described in Plaintiff's Complaint, and assess damages as follows:

| | |
|---|---|
| Amount claimed in Complaint | $140,549.19 |
| Interest from December 19, 2024 through February 18, 2025 (62 days) at $27.44 *per diem* | $1,701.28 |
| Sub Total | $142,250.47 |
| Costs to be added | $__________ |
| Interest to accrue at 6% from Judgment Entry Date to Sale | |

Case ID: 241202182

EXHIBIT C

I certify that written Notice of the Intention to file the Praecipe for Judgment was mailed to the party against whom judgment is to be entered and to his/her/their attorney of record, if any, after the default occurred and at least ten (10) days prior to the date of the filing of this Praecipe for Judgment. A copy of the Notice(s) of Intention to File Praecipe for Entry of *in rem* Judgment Pursuant to Pa. R. 237.1 is/are attached.

Date: February 18, 2025

/s/ Timothy A. Cirino
Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
Attorney for Plaintiff
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
(T) (212) 471-5100
(F) (212) 471-5150

AND NOW, ___________, 20___, Judgment is entered in favor of Plaintiff and against Defendant, **DDH Fund LLC**, in Mortgage Foreclosure and damages are assessed as above in the sum of $142,250.47, plus ongoing interest and costs.

_________________________________
PROTHONOTARY, CIVIL DIVISION

Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case N[redacted]

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

----------------------------------------------------------------x

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | NO.: 241202182 |
| Plaintiff | CIVIL ACTION |
| vs. | |
| | MORTGAGE FORECLOSURE |
| DDH FUND LLC, | |
| Defendant | |

----------------------------------------------------------------x

**AFFIDAVIT OF NON-MILITARY SERVICE**

The undersigned counsel has performed a search of the records maintained by the Department of Defense, Defense Manpower Data Center, and states that, upon information and belief, the Defendant are not in the Military or Naval Service of the United States or its Allies, or otherwise within the provisions of the Servicemembers Civil Relief Act, as amended.

This statement is made subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Date: February 18, 2025

/s/ Timothy A. Cirino
Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
Attorney for Plaintiff
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
(T) (212) 471-5100
(F) (212) 471-5150

Case ID: 241202182

**EXHIBIT C**

FRIEDMAN VARTOLO LLP
A Limited Liability Partnership formed in the State of New York
1325 Franklin Avenue, Suite 160, Garden City, NY 11530
Telephone: (212) 471-5100 | Facsimile: (212) 471-5150

February 18, 2025

**Loan Number**: [redacted]
**Firm Case Numb**[redacted]
**Docket Number**: 241202182
**Mortgaged Premises**: 1431 North 54th Street, Philadelphia, PA 19131
**Borrower(s)**: DDH Fund LLC

# **SCRA Search Not Performed**

Please note the SCRA search was not performed on 02/18/2025 for DDH Fund LLC as the party is a corporation.

**FRIEDMAN VARTOLO LLP**
A Limited Liability Partnership formed in the State of New York
Attorneys for Plaintiff

S/Timothy A. Cirino
Timothy A. Cirino, Esq.

EXHIBIT C

Case ID: 241202182

Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case [redacted]

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

---------------------------------------------------------------x

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | NO.: 241202182 |
| Plaintiff | CIVIL ACTION |
| vs. | MORTGAGE FORECLOSURE |
| DDH FUND LLC, | |
| Defendant | |

---------------------------------------------------------------x

**NOTICE**

Pursuant to the requirements of Pennsylvania Rule of Civil Procedure 236 of the Supreme Court of Pennsylvania, you are hereby notified that a Judgment has been entered against you in the above-captioned proceeding as indicated below.

__X__ Judgment *in rem* by Default

_____ Money Judgment

_____ Judgment in Replevin

_____ Judgment for Possession

_____ Judgment in Award of Arbitration

_____ Judgment on Verdict

_____ Judgment on Court Findings

Case ID: 241202182

**EXHIBIT C**

Dana Marks, Esq. (205165)
Timothy A. Cirino, Esq. (326340)
Robert Flacco, Esq. (325024)
Perry Russell, Esq. (334517)
Ian Yorke, Esq. (334633)
Danielle Johnson, Esq. (334703)
Andrew Kravitz, Esq. (80142)
Friedman Vartolo LLP
A Limited Liability Partnership formed in the State of New York
1628 John F Kennedy Boulevard, Suite 1810
Philadelphia, PA 19103
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case No[redacted]

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
CIVIL DIVISION

----------------------------------------------------------------x

METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff — NO.: 241202182

vs. — **MORTGAGE FORECLOSURE**

DDH FUND LLC, Defendant

----------------------------------------------------------------x

January 22, 2025

DDH Fund LLC
16192 Coastal Highway
Lewes, DE 19958

DDH Fund LLC
256 Eagle View Boulevard, # 154
Exton, PA 19341

DDH Fund LLC
1431 North 54th Street
Philadelphia, PA 19131

**IMPORTANT NOTICE**

**YOU ARE IN DEFAULT BECAUSE YOU HAVE FAILED TO ENTER A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILE IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. UNLESS YOU ACT WITHIN TEN DAYS FROM THE DATE OF THIS NOTICE, A JUDGMENT MAY BE ENTERED AGAINST YOU WITHOUT A HEARING AND YOU MAY LOSE YOUR PROPERTY OR OTHER IMPORTANT RIGHTS.**

**EXHIBIT C**

Case ID: 241202182

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone (215) 238-1701

**NOTIFICACION IMPORTANTE**

**USTED ESTÁ EN DEFECTO PORQUE USTED NO HA PODIDO ENTRAR EN UN ASPECTO ESCRITO, PERSONALMENTE O MEDIANTE ABOGADO Y ARCHIVO POR ESCRITO ANTE EL TRIBUNAL SUS DEFENSAS U OBJECIONES A LAS ALEGACIONES EXPUESTAS EN SU CONTRA. A MENOS QUE USTED ACTÚA DENTRO DE LOS DIEZ DÍAS SIGUIENTES A LA FECHA DE ESTA NOTIFICACIÓN, LA RESOLUCIÓN PODRÁ SER EN SU CONTRA SIN UNA AUDIENCIA Y USTED PUEDE PERDER SU PROPIEDAD U OTROS DERECHOS IMPORTANTES.**

**USTED DEBE TOMAR ESTE TRABAJO CON SU ABOGADO A LA VEZ. SI USTED NO TIENE UN ABOGADO, VAYA A O LLAMAR POR TELÉFONO A LA OFICINA SE ESTABLECE A CONTINUACIÓN. ESTA OFICINA PUEDE PROPORCIONARLE INFORMACIÓN SOBRE LA CONTRATACIÓN DE UN ABOGADO.**

**SI USTED NO PUEDE PERMITIRSE EL LUJO DE CONTRATAR A UN ABOGADO, ESTA OFICINA PUEDE SER CAPAZ DE PROPORCIONARLE INFORMACIÓN ACERCA DE LAS AGENCIAS QUE PUEDEN OFRECER SERVICIOS LEGALES A PERSONAS CON DERECHO A UNA TARIFA REDUCIDA O NINGUNA CUOTA.**

Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone (215) 238-1701

Signature: /s/ Timothy A. Cirino
Timothy A. Cirino, Esq. (326340)

SERVICE LIST:

DDH Fund LLC
16192 Coastal Highway
Lewes, DE 19958

DDH Fund LLC
256 Eagle View Boulevard Suite 154
Exton, PA 19341

DDH Fund LLC
1431 North 54th Street
Philadelphia, PA 19131

Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
T: (212) 471-5100
F: (212) 471-5150
Attorneys for Plaintiff
Firm Case [redacted]

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | NO.: 241202182 |
| Plaintiff | CIVIL ACTION |
| vs. | |
| | MORTGAGE FORECLOSURE |
| DDH FUND LLC, | |
| Defendant | |

**CERTIFICATE OF COMPLIANCE**

The undersigned attorney for Plaintiff certifies that the Praecipe for Judgment for Failure to Answer and Assessment of Damages and related documents complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Date: February 18, 2025

/s/ Timothy A. Cirino
Timothy A. Cirino, Esq. (326340)
**FRIEDMAN VARTOLO LLP**
Attorney for Plaintiff
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
(T) (212) 471-5100
(F) (212) 471-5150

**EXHIBIT C**

bid4assets
A GovDeals Marketplace

Follow us:

Keyword Auction ID# GO

ASSET HOUND®
Your online property search starts here!
Advanced search

Sign up for Weekly Email Alerts

Real Estate > Other > Al [redacted]

# Philadelphia County, PA Sheriff Sale: 1431 NORTH 54TH STREET




DUE DILIGENCE

| | |
|---|---|
| **Seller Name:** | PhilaForeclosures |
| **Rating:** | Not Applicable |
| **Location:** | 1431 NORTH 54TH STREET<br>PHILADELPHIA, PA 19131 |

**Asset was sold for $144,706**

| | |
|---|---|
| Number of Bids: | 3 |
| *Winning Bid:* | $144,706 |
| *Winner:* | j***o |
| *Minimum Bid:* | $10,800 |
| Your Bid Status: | Log in to view status |
| *Reserve:* | **Met!** |
| Status: | Sold |
| Auction Started: | 06-03-25 10:00 AM ET |
| Auction Closed: | 06-03-25 01:40 PM ET |
| Bid Increment: | $1,000 |
| *Overtime Period:* | 5 minutes |
| Source: | Government |
| Deposit Required: | $5,035<br>— See Instructions BIDDEPOSIT |
| Page Views: | 174 |

VIEW OTHER FORECLOSURES

## ASSET INFORMATION

Deposit Requirement

- A single $5,035.00 deposit (includes a $35 nonrefundable processing fee) is required to participate in the 06-03-2025 Philadelphia County Sheriff sale.
- Deposits must be received by Bid4Assets no later than 4:00PM ET (1:00 PT) Tuesday, May 27th
- Click here to place your deposit.

Disclaimers

- Philadelphia County Sheriff's Office retains the right to reject any and all bids for any reason.
- Philadelphia County Sheriff's Office may withdraw this property from the auction at any time before or during the sale.
- Philadelphia County Sheriff's Office reserves the right to cancel the sale of a property at any time prior to the issuance of the deed.

**EXHIBIT D**

SUBJECT TO MORTGAGE

**PLEASE NOTE: This property is subject to mortgage**

## ITEM SPECIFICS - PARCEL INFORMATION

| Parcel Information | |
|---|---|
| **OPA** | [redacted] |
| **Address** | 1431 NORTH 54TH STREET<br>PHILADELPHIA, PA 19131 |

| Other Properties | |
|---|---|
| **County** | Philadelphia |
| **Sheriff Number** | [redacted] |
| **Attorney** | FRIEDMAN VARTOLO LLP |
| **Debt Amount** | $142,250.00 |
| **Plaintiff** | METROPOLITAN LIFE INSURANCE COMPANY |
| **Book/Writ** | 2506-365 |
| **Address** | 1431 NORTH 54TH STREET PHILADELPHIA PA 19131 |
| **Sale Type** | MORTGAGE FORECLOSURE |
| **Property Description** | 1431 NORTH 54TH STREET PHILADELPHIA PA 19131<br>Property Data for [redacted]<br>Ward: 44TH<br>Sale Type: MORTGAGE FORECLOSURE<br>Court Case #: 241202182 |

## ALL SELLER-RELATED DUE DILIGENCE — (VIEW RELATED AUCTIONS)

The due diligence items below apply to all related auctions from this seller.

**General Sale Information**

Terms of Sale

Bidder Instructions

## ASSET DESCRIPTION

**EXHIBIT D**

The Sheriff's Office of Philadelphia County, PA, is conducting an auction with the following details:

Sheriff #[redacted]
Book/Writ: 2506-365
Auction Date: 2025-06-03
Plaintiff: METROPOLITAN LIFE INSURANCE COMPANY
Address: 1431 NORTH 54TH STREET PHILADELPHIA PA 19131
More Info:
1431 NORTH 54TH STREET PHILADELPHIA PA 19131
Property Data for OPA[redacted]
Ward: 44TH
Sale Type: MORTGAGE FORECLOSURE
Court Case #: 241202182

Attorney: FRIEDMAN VARTOLO LLP
[redacted]

## BIDDING REQUIREMENTS

To bid on this auction, all bidders are required to become qualified by placing a deposit. The deposit of the winning bidder is automatically transferred to the seller at the end of the auction. If the winning bidder fails to perform on any auction, the entire BidDeposit will be forfeited to the seller. Non-winning bidder deposit refunds are mailed within ten (10) business days after the close of the auction. This deposit cannot be applied to other auctions. To find out more about the BidDeposit requirement, click here.

## SETTLEMENT REQUIREMENTS

Purchaser shall pay the balance of 10% of the total purchase price of all auctions won by 5:00 PM ET on the first (1st) business day following the Auction. Purchaser shall have 15 calendar days from the auction date to pay the remaining balance. Payments shall be made to Bid4Assets. No exceptions will be made. If the payment policy is not adhered to the winning bidder will forfeit their deposit to the Philadelphia County Sheriff's Office and may be banned from future sales.

Please view the Terms of Sale for more information.

bid4assets
A GovDeals Marketplace

ABOUT US
CONTACT US
JOBS
COURTHOUSE STEPS®

NEED TO KNOW
Privacy Policy
Terms of Service

FOR SELLERS
Sell an Asset
Sheriff's Sales
County Government Sellers
Seller Help

FOR BUYERS
Weekly Email Alert
Rate a Seller
Video Tutorials
Buyer Help

USEFUL LINKS
My Account/Login
Have Property to Sell?
Testimonials
Submit a Testimonial
Give Us Your Feedback

BID4ASSETS.com® is a registered trademark of Bid4Assets, Inc.
Where Great Deals Click™; Bid4Assets™; Copyright © 1999-2026 ALL RIGHTS RESERVED Bid4Assets, Inc.

**EXHIBIT D**