# EXHIBIT A

# SECURED NOTE

## NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE

**$96,000.00**

Date: January 18, 2024
Los Angeles County, California

*Property Address:* *1629 S 55th Street, Philadelphia, Pennsylvania 19143*

FOR VALUE RECEIVED, the undersigned, DDH Fund, LLC, a Delaware limited liability company ("Borrower"), whose address is 256 Eagleview Blvd, # 154, Exton, Pennsylvania 19341, hereby promises to pay to CV3 Financial Services, LLC, a Delaware limited liability company, or order ("Lender"), whose address is 2101 E. El Segundo Blvd., Suite 203, El Segundo, California 90245, the principal sum of Ninety-Six Thousand and 00/100 Dollars ($96,000.00), together with interest on the entire Loan Amount of this Note, as follows:

**1.** **Interest.** Interest on the entire loan amount, including any Lender Retained Funds, will accrue from the date any proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to Eight and 99/100 Percent (8.99%) for the first sixty (60) months ("Initial Interest Rate"). The Initial Interest Rate will change as provided for herein.

**1.1.** **Computation of Interest.** Interest on this Note is computed on a 30/360 basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the entire Loan Amount, multiplied by a month of 30 days. Interest for the odd days before the first full month and any partial month in which the loan is repaid in full is calculated on the basis of the actual days and a 360-day year and shall include the day of payoff. All interest payable under this Note is computed using this method.

**1.2.** **Interest Rate Changes.** The Initial Interest Rate may change on February 1, 2029, and may change on the 1st day of the month every twelve (12) months thereafter to correspond with changes in the Index rate. Each date on which the interest rate may change shall be referred to herein as a "Change Date."

**1.3.** **Index.** Commencing on the first Change Date, the interest rate will be based on an Index. "Index" shall mean the 12 month term Secured Overnight Financing Rate ("SOFR"), which is the compounded averages of the SOFR over rolling 12 month periods, as published by CME Group Benchmark Administration Limited ("SOFR"). Any interest rate change shall be effective at the beginning of the business day on which such change becomes effective. The use of the term shall not constitute a representation of Lender as to a rate of interest that any borrower or class of borrower shall necessarily be entitled. The most recent Index value available as of the date forty-five (45) days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating the interest rate.

If the Index is no longer available, the Lender will choose a new index which is based upon comparable information and shall notify Borrower of this choice.

**1.4.** **Calculation of Changes.** Before each Change Date, Lender shall calculate the interest rate by adding Six and 00/100 Percent (6%) (the "Margin") to the Current Index. Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date.

**1.5.** **Limits on Interest Rate.**



© 2007 Geraci Law [redacted] Reserved.



[redacted]

1.5.1. **Initial Interest Rate Limitation**. The interest rate will not increase or decrease more than Two and 00/100 Percent (2%) from the Initial Interest Rate ("Initial Rate Cap").

1.5.2. **Subsequent Interest Rate Limitation**. For each subsequent Change Date, the interest rate shall not increase or decrease on any single Change Date by more than Two and 00/100 Percent (2%) ("Subsequent Rate Cap") from the previous rate.

1.5.3. **Minimum Interest Rate**. The interest rate will never be less than Six and 00/100 Percent (6%) ("Floor Rate").

1.5.4. **Maximum Interest Rate**. The interest rate will never be greater than Five and 00/100 Percent (5%) above the Initial Interest Rate ("Maximum Interest Rate").

**1.6. Effective Date of Changes.** The new interest rate will become effective on each Change Date and the new payment calculated using the new interest rate will become effective one month after each Change Date.

**2. Payment Obligations.**

**2.1. In General.** Borrower will make a payment each month until the entire indebtedness evidenced by this Note and all accrued and unpaid principal, interest and other charges due hereunder have been paid in full. If Borrower still owes amounts under this Note on February 1, 2054 (the "Maturity Date"), Borrower will pay those amounts in full on that date. Payments due under the Note shall be made in U.S. currency. Lender may charge a non-sufficient funds fee, in Lender's discretion, for each payment that is returned unpaid by the Borrower's bank. This charge may be in addition to any other charges provided for herein. Further, if any check or other instrument received by Lender as payment under the Note or the Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; (d) Electronic Funds Transfer; or (e) wire. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

**2.2. Initial Interest-Only Payments.** Interest-only payments shall be due and payable in consecutive monthly installments commencing with the first payment due on March 1, 2024 and continuing on the first day of every month thereafter for a period of sixty (60) consecutive months.

**2.3. Payments of Principal and Interest.** Beginning on March 1, 2029 and on the first day of every month thereafter, Borrower will make monthly payments of principal and interest amortized over three hundred (300) months.

**2.4. Change in Payment Calculations.** On each Change Date, Lender shall calculate the new interest rate and the adjusted monthly payment amount in accordance with this Note.

**2.5. Delivery of Payments.** Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be a Default under this Note and the Loan Agreement. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

**2.6. Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest thereon under any provision of this Note, the Loan Agreement, or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

**2.7. Other Terms.** This Note is subject to the following additional terms as provided for in the Loan Agreement. See headings in Loan Agreement sections for applicability.

**2.7.1. Insurance and Real Estate Taxes.**



© 2007 Geraci Law [redacted]ts Reserved. 

**3. Late Charge.** Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations. Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain. Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within fifteen (15) days when due, Borrower will pay a late charge equal to the greater of: (a) 10 cents ($0.10) for each dollar ($1.00) that is not paid when due or (b) the maximum charge allowed under Applicable Law which would be a reasonable estimate of expenses so incurred (the "Late Charge"). Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

**4. Default.** On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise), (b) an Event of Default (as defined in the Loan Agreement), or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date. Borrower expressly waives notice of the exercise of this option.

**5. Prepayment.**

**5.1. Prepayment Premium.** Borrower may prepay this Note in whole or in part at any time without penalty. However, if Borrower prepays this Note in whole or in part prior to the Maturity Date, Borrower shall pay a Prepayment Premium ("Prepayment Premium") equal to the following:

(a) If prepayment is made on or before one year from the Date of Advance, Borrower shall pay a fee equal to 3.00% of the amount prepaid.

(b) If prepayment is made after one year from the Date of Advance, and on or before two years from the Date of Advance, Borrower shall pay a fee equal to 2.00% of the amount prepaid.

(c) If prepayment is made after two years from the Date of Advance, and on or before three years from the Date of Advance, Borrower shall pay a fee equal to 1.00% of the amount prepaid.

After three years from the Date of Advance, Borrower may prepay this Note in whole or in part at any time without paying any premium. All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

**5.2. Ability to Pay Prepayment.** Borrower shall have no right to prepay and Lender shall have no duty to accept full or partial prepayment of this Note without Borrower giving Lender thirty (30) days prior written notice of his, her or its intention to prepay this Note. Said notice shall include the amount Borrower intends to repay. Borrower shall pay Lender the principal due under this Note together with (a) any prepayment premium contemplated in this Note and (b) any accrued but yet unpaid interest and fees. Notwithstanding the foregoing, Borrower shall have no right to make, and Lender will not be required to accept, any partial prepayment in an amount that is less than Ten Thousand Dollars ($10,000.00).

**5.3. Prepayment Waivers.** BORROWER ACKNOWLEDGES AND AGREES THAT BORROWER HAS NO RIGHT TO PREPAY THIS NOTE EXCEPT AS PROVIDED IN THIS SECTION. BORROWER FURTHER ACKNOWLEDGES AND AGREES THAT IF THE MATURITY DATE IS ACCELERATED BY LENDER PURSUANT TO THE LOAN DOCUMENTS (INCLUDING, WITHOUT LIMITATION, A JUNIOR LIEN LENDER OF THE PROPERTY), AND BORROWER OR ANY THIRD PERSON THEREAFTER SEEKS TO PAY OFF SUCH ACCELERATED INDEBTEDNESS OR PURCHASE THE PROPERTY AT A FORECLOSURE SALE (WHETHER



© 2007 Geraci Law Firm; All Rights Reserved. 

JUDICIAL OR NON-JUDICIAL), SUCH PAYOFF OR PURCHASE SHALL CONSTITUTE A PREPAYMENT HEREUNDER AND THE PREPAYMENT PREMIUM SET FORTH ABOVE SHALL BE DUE IN THE EVENT PREPAYMENT OCCURS. BY INITIALING BELOW, BORROWER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT BORROWER SHALL PAY THE PREPAYMENT PREMIUM, EVEN IN THE CASE WHERE LENDER HAS ACCELERATED THE MATURITY DATE PURSUANT TO THE LOAN DOCUMENTS; THAT THE CALCULATION OF THE PREPAYMENT PREMIUM IS FAIR AND REASONABLE TO COMPENSATE LENDER FOR THE LOSS WHICH LENDER MAY INCUR AS A RESULT OF PREPAYMENT OF THIS NOTE; THAT BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE OR CLAIM TO HAVE UNDER CALIFORNIA LAW; AND THAT LENDER HAS MADE THE LOAN EVIDENCED BY THIS NOTE IN RELIANCE ON THE AGREEMENTS AND WAIVERS OF BORROWER IN THIS SECTION AND LENDER WOULD NOT HAVE MADE THE LOAN WITHOUT SUCH AGREEMENTS AND WAIVERS.

BORROWER'S INITIALS JL

6. **Interest on Default.** If Borrower is in default under the Loan Documents, then at the sole and absolute discretion of Lender and without notice or opportunity to cure, the entire Loan Amount shall immediately bear an annual interest rate equal to the lesser of (a) Eighteen and 00/100 Percent (18%); or (b) the maximum interest rate allowed by law (the "Default Rate"). The Loan shall accrue interest at the Default Rate only until all defaults are cured and the Loan is reinstated. Borrower acknowledges, understands and agrees that in connection with any default: (i) Lender's risk of nonpayment of the Loan will be materially increased; (ii) Lender's ability to meet its other obligations and to take advantage of other investment opportunities will be adversely impacted; (iii) Lender may need to set aside funds in a loan loss reserve, repurchase the loan from a credit provider or otherwise impair their capital; (iv) Lender may be unable to raise additional funds from investors, credit facilities or other capital sources due to defaults in its portfolio; (v) the value of the Lender's loan will materially decrease and may become unmarketable altogether; (vi) the value of Lender's business enterprise will be reduced; (vii) Lender will incur additional costs and expenses arising from its loss of the use of the amounts due; (viii) the aforementioned list of risks, losses and damages is not exhaustive and Lender will suffer additional exposure to risk, losses and damages not specifically identified above; (ix) it is extremely difficult and impractical to determine such additional costs and expenses; (x) Lender is entitled to be compensated for such additional risks, costs, and expenses; and (xi) the increase to the Default Rate represents a fair and reasonable estimate of the additional risks, costs, and expenses Lender will incur by reason of Borrower's default and the additional compensation Lender is entitled to receive for the harms incurred by Lender due to Borrower's default. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Note (including, without limitation, late charges), the Loan Agreement, or the Security Instrument.

7. **Interest on Interest.** If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

8. **Due-on-Sale.** If Borrower (a) sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance as defined in the Security Instrument), transfers possession, or alienates all or any portion of the Property, or any of Borrower's interest in the Property, or suffers its title to, or any interest in, the Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any



© 2007 Geraci Law [redacted]hts Reserved. 

[redacted]

lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or (b) if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, or (c) if a junior voluntary or involuntary deed of trust or mortgage lien in favor of another lender encumbers the Mortgaged Property (other than a Permitted Encumbrance) without Lender's express prior written consent thereto, which consent may be withheld in Lender's absolute and sole discretion, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**9. Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

**10. Notice.** Any notice required to be provided in this Note shall be given in accordance with the notice requirements provided in the Loan Agreement.

**11. Assignment.** This Note is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Note. The terms of this Note shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Note cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

**12. Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the Loan, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note, or the Loan Documents, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

**13. Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents (as defined in the Loan Agreement).

**14. Loan Agreement.** This Note is also secured by and is subject to the provisions of that certain Loan and Security Agreement of even date herewith (the "Loan Agreement") between Borrower and Lender, and all Collateral referenced and incorporated in the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Note, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

**15. Counterparts.** This Note may be signed in one or more counterparts, each of which shall be deemed an original. This Note shall be deemed fully executed and effective when all parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

**THIS AGREEMENT MAY BE EXECUTED IN COUNTER-PARTS.**



© 2007 Geraci Law [redacted]hts Reserved. 

[redacted]

[SIGNATURES FOLLOW]



© 2007 Geraci Law [redacted]Rights Reserved.

**BORROWER:**

**DDH FUND, LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: ______________________________
Taylor Green, Authorized Signor



© 2007 Geraci Law [redacted]ghts Reserved. 

## ALLONGE TO SECURED NOTE

This Allonge is to be attached to and made a part of that certain Secured Note dated January 18, 2024 in the original principal amount of Ninety-Six Thousand and 00/100 Dollars ($96,000.00) made by DDH Fund, LLC, a Delaware limited liability company.

Pay to the order of CV3 Alpha Trust, a Delaware statutory trust, WITHOUT RECOURSE.

Dated: January 18, 2024

**ASSIGNOR:**

**CV3 FINANCIAL SERVICES, LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: ____________________
Name: Robert Callaway
Title: Chief Financial Officer

# ALLONGE TO SECURED NOTE

This Allonge is to be attached to and made a part of that certain Secured Note dated January 18, 2024 in the original principal amount of Ninety-Six Thousand and 00/100 Dollars ($96,000.00) made by DDH Fund, LLC, a Delaware limited liability company.

Pay to the order of ________________________, WITHOUT RECOURSE.

Dated: January 18, 2024

**ASSIGNOR:**

**CV3 Alpha Trust, a Delaware statutory trust**
**By: CV3 Financial Services, LLC, in its capacity as Administrator**

By: [signature]
Name: Robert Callaway
Title: Chief Financial Officer

eRecorded in Philadelphia PA Doc Id: 54263082
01/23/2024 11:57 AM Page 1 of 31 Rec Fee: $244.75
Receipt#:
Records Department Doc Code: M

**WHEN RECORDED, RETURN TO:**

CV3 Financial Services, LLC
2101 E. El Segundo Blvd., Suite 203
El Segundo, California 90245

[redacted]

**THIS MORTGAGE IS AN OPEN-END MORTGAGE PURSUANT TO 42 PA.C.S.A. §8143, SECURING PRESENT AND FUTURE ADVANCES UP TO A MAXIMUM PRINCIPAL AMOUNT OF $96,000.00, PLUS ACCRUED INTEREST AND OTHER INDEBTEDNESS AS DESCRIBED IN 42 PA.C.S.A. §8143. THIS MORTGAGE ALSO SECURES ADVANCES DESCRIBED IN 42 PA.C.S.A. §8144.**

## OPEN-END MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT

**Note Amount:** **$96,000.00**
**Property Address:** **1629 S 55th Street, Philadelphia, Pennsylvania 19143**

THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE PENNSYLVANIA UNIFORM COMMERCIAL CODE.

THIS INSTRUMENT IS TO BE INDEXED AS BOTH A MORTGAGE AND A FIXTURE FILING

This Open-End Mortgage, Assignment of Leases and Rents, and Security Agreement (the "Security Instrument" or "Mortgage") is made as of January 18, 2024, among DDH Fund, LLC, a Delaware limited liability company ("Borrower"), whose address is 256 Eagleview Blvd, # 154, Exton, Pennsylvania 19341; and CV3 Financial Services, LLC, a Delaware limited liability company, as mortgagee ("Lender"), whose address is 2101 E. El Segundo Blvd., Suite 203, El Segundo, California 90245.

**TRANSFER OF RIGHTS IN THE PROPERTY**

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower does hereby irrevocably and unconditionally MORTGAGE, GRANT, ASSIGN, REMISE, BARGAIN, SELL, WARRANT, AND CONVEY to and for the benefit of Lender the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Lender, its successors and assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Lender against anyone lawfully claiming it or any part of it; provided,



© 2007 Geraci Law Firm; All Rights Reserved. 

however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Lender, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures, Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property. Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

**DEFINITIONS.**

1. **Definitions**. For purposes of this Security Instrument, each of the following terms shall have the following respective meanings:

**1.1** "**Attorneys' Fees**." Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

**1.2** "**Borrower**."

1.2.1. The named Borrower in this Security Instrument;

1.2.2. The obligor under the Note, whether or not named as Borrower in this Security Instrument; and

1.2.3. Subject to any limitations of assignment as provided for in the Loan Documents, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such Person.

All references to Borrower in the remainder of the Loan Documents shall mean the obligor under the Note.

**1.3** "**Event of Default**." An Event of Default as defined in the Loan Agreement.



© 2007 Geraci Law Firm; All Rights Reserved. 

**1.4** "**Fixtures**." All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located, including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

**1.5** "**Governmental Authority**." Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

**1.6** "**Governmental Requirements**." Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.7** "**Impositions**." All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.8** "**Improvements**." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Lender under this Security Instrument.

**1.9** "**Indebtedness**." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

1.9.1. The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

1.9.2. The Loan Agreement;

1.9.3. This Security Instrument and all other Loan Documents;

1.9.4. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

1.9.5. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the Security Instrument; and

1.9.6. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.



© 2007 Geraci La[redacted]hts Reserved. 

**1.10** **"Land."** The real estate or any interest in it described in Exhibit "A" attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.11** **"Leases."** Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

**1.12** **"Lender."** The named Lender in this Security Instrument and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Security Instrument, whether or not named as Lender in this Security Instrument, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such Person.

**1.13** **"Loan."** The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.14** **"Loan Agreement."** The Loan and Security Agreement given by Borrower evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments thereto.

**1.15** **"Loan Documents."** Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan. Notwithstanding the foregoing, when used in the definitions of Indebtedness and Obligations, and in relation to the discussion of the Obligations and Indebtedness that are secured by this Security Instrument, the term "Loan Documents" specifically excludes any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, each of which are not secured by this Security Instrument.

**1.16** **"Mortgaged Property."** The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as: **1629 S 55th Street, Philadelphia, Pennsylvania 19143**
**Property ID No.: 514194300/28S19 292**

together with:

1.16.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the



© 2007 Geraci Law [redacted]ghts Reserved. 

Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.16.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.16.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.16.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.16.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.16.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.16.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the Loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.16.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit "A" attached to this Security Instrument (the "Leasehold") including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.16.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with



© 2007 Geraci Law Firm; All Rights Reserved. 

the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.16.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

1.16.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.16.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.16.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.16.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.16.15. All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.17** **"Note."** The Secured Note payable by Borrower to the order of Lender in the principal amount of **Ninety-Six Thousand and 00/100 Dollars ($96,000.00), which matures on February 1, 2054,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

**1.18** **"Obligations."** Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Security Instrument whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender



© 2007 Geraci Law Firm; All Rights Reserved. 

whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude any Guaranty and the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and/or any guarantor of the Loan, which is not secured by this Security Instrument.

**1.19** **"Permitted Encumbrances."** At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.20** **"Person."** Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

**1.21** **"Personalty."** All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

**1.22** **"Rents."** All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.23** **"Uniform Commercial Code."** The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.



© 2007 Geraci Law [redacted]ights Reserved. 

**1.24 "Water Rights."** All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Loan Agreement and Note, dated of even date herewith between Borrower and Lender.

## UNIFORM COVENANTS

**2. Repair and Maintenance of Mortgaged Property.** Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment, machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Security Instrument; (d) pay when due all claims for labor performed, services performed, equipment provided and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

**3. Use of Mortgaged Property.** Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument. Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

**4. Condemnation and Insurance Proceeds.**

**4.1 Assignment to Lender.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired. All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract



© 2007 Geraci Law [redacted] ights Reserved. 

or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action. Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property. Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance. Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

**4.2** **<u>Insurance Payments</u>**. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

4.2.1. Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Loan Agreement, the Note, and any other Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment



© 2007 Geraci Law [redacted]ights Reserved. 

and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

4.2.2. If fewer than all conditions (a) through (i) above are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property. If Lender elects under this Section to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) above shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**4.3** <u>**Material Loss Not Covered**</u>. If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**4.4** <u>**Total Condemnation Payments**</u>. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

**4.5** <u>**Partial Condemnation Payments**</u>. All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("Awarded Funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such Awarded Funds and the other equal to the amount by which such Awarded Funds exceed the principal balance of the Note at the time of receipt of such Awarded Funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**4.6** <u>**Cure of Waiver of Default**</u>. Any application of such Awarded Funds or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

**5.** <u>**Taxes and Other Sums Due**</u>. Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety



© 2007 Geraci Law Firm; All Rights Reserved. 

company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 5(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

6. **Leases of Mortgaged Property by Borrower.** At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against Rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against Rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. Any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the



© 2007 Geraci Law [redacted] ights Reserved. 

terms of the Loan Agreement, the Note and this Security Instrument; and upon the occurrence of any such violation, Lender, at Lender's option, may, without prior notice or after any notice or cure period required by law, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

7. **Right to Collect and Receive Rents**. Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of trustee's sale proceedings under this Security Instrument or judicial foreclosure, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorneys' Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.



© 2007 Geraci Law[redacted]ights Reserved. 

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

**8.** **Assignment of Causes of Action, Awards, and Damages.** All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorneys' Fees, incurred by Lender in recovering or collecting any sums under this Section, Lender may apply or release the balance of any funds received by it under this Section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this Section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**9.** **Defense of Security Instrument; Litigation.** Borrower represents and warrants that this Security Instrument creates a first position lien and security interest against the Mortgaged Property. Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents. Despite any other provision of this Security Instrument, Borrower agrees that Lender may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorneys' Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents, and that if Lender elects not to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender, including costs of evidence of title and Attorneys' Fees, in any such action or proceeding in which Lender may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.



© 2007 Geraci Law Firm; All Rights Reserved.

10. **Borrower's Failure to Comply With Security Instrument.** If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Agreement, the Note or this Security Instrument, Lender may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents, Lender being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorneys' Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

11. **Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender at the Default Rate provided in the Note, regardless of whether an Event of Default has occurred, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, shall have the same priority to which the Security Instrument otherwise would be entitled as of the date this Security Instrument is executed and recorded, without regard to the fact that any such future advances may occur after this Security Instrument is executed, and shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

12. **Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

13. **Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement



© 2007 Geraci La[redacted]ights Reserved. v180
Mortgage | Loan N[redacted]

or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

**14.** **<u>Fixture Filing</u>.** This Security Instrument constitutes a financing statement filed as a fixture filing under the Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement. The addresses of Borrower ("Debtor") and Lender ("Secured Party") are set forth on the first page of this Security Instrument.

**15.** **<u>Waiver of Statute of Limitations</u>.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

**16.** **<u>Default</u>.** Any Event of Default, as defined in the Loan Agreement, shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any event which, with any required lapse of time or notice, may constitute an Event of Default, whether or not any such requirement for notice or lapse of time has been satisfied).

**17.** **<u>Acceleration on Transfer or Encumbrance.</u>**

**17.1** **<u>Acceleration on Transfer or Encumbrance of Mortgaged Property</u>.** If Borrower sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance), transfers possession, or alienates all or any portion of the Mortgaged Property, or any of Borrower's interest in the Mortgaged Property, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents. For purposes of this Section "interest in the Mortgaged Property" means any legal or beneficial interest in the Mortgaged Property, including, but not limited to, those beneficial interests transferred in a bond for deed,



© 2007 Geraci Law Firm; All Rights Reserved.

contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

**17.2** **Replacement Personalty.** Notwithstanding anything to the contrary herein, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

**17.3** **Junior Liens.** If Lender consents in writing, in Lender's sole and absolute discretion, the due-on-encumbrance prohibition shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Loan Agreement and the Note). Borrower shall reimburse Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance. Should Borrower fail to obtain Lender's express written consent to any junior voluntary lien, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by this Security Instrument, regardless of any their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**18.** **Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

**19.** **Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan



© 2007 Geraci Law [redacted]ghts Reserved. 

Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this Section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorneys' Fees as Lender may have advanced, for any action taken by Lender under this Section.

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**20.** **Future Advances.** On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

**21.** **Prepayment.** If the Loan Documents provide for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under the Loan Documents and Lender has declared all sums secured by this Security Instrument immediately due and payable.

**22.** **Governing Law; Consent to Jurisdiction and Venue.** This Loan is made by Lender and accepted by Borrower in the State of California except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Mortgaged Property under the Loan Documents shall be governed by and construed according to the laws of the state in which the Mortgaged Property is situated. To the fullest extent permitted by the law of the state in which the Mortgaged Property is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which the Mortgaged Property is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be Los Angeles County, California, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS: ______



© 2007 Geraci Law Firm; All Rights Reserved. 

23. **Taxation of Security Instrument**. In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower. Lender may invoke any remedies permitted by this Security Instrument.

24. **Mechanic's Liens**. Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanic's, laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

25. **Liability for Acts or Omissions**. Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

26. **Notices**. Except for any notice required by Governmental Requirements to be given in another manner, any notice required to be provided in this Security Instrument shall be given in accordance with the Loan Agreement.

27. **Statement of Obligations**. Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

28. **Remedies Are Cumulative**. Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

29. **Obligations of Borrower Joint and Several**. If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

30. **Delegation of Authority**. Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

31. **Funds for Taxes Insurance, and Impositions**. If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender



© 2007 Geraci La[redacted]ights Reserved. 

may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the Impositions as they become due. The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion. These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Impositions under the Loan Documents in such order or priority as Lender shall determine. If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand. If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year. Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

**32. <u>General Provisions.</u>**

**32.1 <u>Successors and Assigns</u>.** This Security Instrument is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Security Instrument. The terms of this Security Instrument shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Security Instrument cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Security Instrument, and may sell or assign participations or other interests in all or any part of this Security Instrument, all without notice to or the consent of Borrower.



© 2007 Geraci Law [redacted]ights Reserved. v180

**32.2 Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

**32.3 Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**32.4 Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**32.5 Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

**33. Dispute Resolution: Waiver of Right to Jury Trial.**

**33.1 ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

**33.2 WAIVER OF RIGHT TO JURY TRIAL.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS: JL

**33.3 PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in the Section above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in the Section above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission of the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in the Section above.

**34. Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the Loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.



© 2007 Geraci Law Firm; All Rights Reserved. 

**35. Loan Agreement.** This Security Instrument is subject to the provisions of the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Security Instrument, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

**36. Condominium and Planned Unit Developments.** If any of the Mortgaged Property includes a unit or units in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") or a Planned Unit Development ("PUD"), the following additional requirements shall be in place.

**36.1 Additional Security.** If the owners association or other entity which acts for the Condominium Project and/or PUD (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Mortgaged Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**36.2 Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's and/or PUD Constituent Documents. The "Constituent Documents" are the: (1) condominium declaration and/or any other document which creates the Condominium Project and or PUD; (2) any by-laws; (3) any code or regulations; (4) articles of incorporation, trust instrument or any equivalent document which create the Owners Association; and (5) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**36.3 Owners Association Policy Proceeds.** If the Owners Association maintains a "master" or "blanket" policy on the Condominium Project or PUD and an event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower.

**36.4 Owners Association Liability Coverage.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**36.5 Consent of Lender.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Mortgaged Property or consent to:

36.5.1. the abandonment and/or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain;

36.5.2. any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

36.5.3. termination of professional management and assumption of self-management of the Owners Association; or

36.5.4. any action which would have the effect of rendering the any insurance coverage maintained by the Owners Association unacceptable to Lender.

**NON-UNIFORM COVENANTS.**

Notwithstanding anything to the contrary elsewhere in this Security Instrument, Borrower and Lender further covenant and agree as follows:



© 2007 Geraci Law [redacted] ghts Reserved. 

**37.** **Default; Acceleration; Remedies.** Upon the occurrence and continuance of any Event of Default beyond all applicable notice, grace and/or cure periods, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Mortgaged Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender to the extent permitted by Applicable Law:

**37.1** Lender may declare the entire unpaid principal balance of the Note to be due and payable immediately (or after any notice or cure period required by law), whereupon the obligations secured hereby shall become immediately due and payable. Thereafter, the Event of Default may be cured only by the payment of the entire Indebtedness.

**37.2** Lender may (i) institute and maintain an action of mortgage foreclosure against any of the Mortgaged Property through judicial proceedings pursuant to the applicable statutes, ordinances, or rules of civil procedure, (ii) institute and maintain an action on the obligations secured hereby, (iii) sell or cause to be sold any of the Mortgaged Property at public sale, and convey the same to the purchaser in accordance with said statutes in a single parcel or in several parcels at the option of Lender, or (iv) take such other action at law or in equity for the enforcement of any document evidencing or securing the obligations secured hereby as the law may allow. Lender may proceed in any such action in accordance with all laws of the Commonwealth of Pennsylvania, including, without limitation, the Pennsylvania Deficiency Judgment Act, 42 Pa. C.S. §8103, to final judgment and execution thereon for all sums due, together with interest on such sums as provided in the Note and the Loan Agreement, all costs of suit and a reasonable attorneys' commission for fees and expenses actually incurred. To the extent permitted by law, interest at a rate equal to the Default Rate shall be due on any judgment obtained by Lender from the date of judgment until actual payment is made of the full amount of the judgment by the Sheriff or otherwise.

**37.3** Lender may, without releasing Borrower from any obligation under any document evidencing or securing the obligations secured hereby or under any lease or waiving any Event of Default: (i) collect any or all of the rents, including any rents past due and unpaid, (ii) perform any obligation or exercise any right or remedy of Borrower under any lease, or (iii) enforce any obligation of any tenant of any of the Mortgaged Property. Lender shall not be obligated to do any of the foregoing, even if Lender may have performed any obligation or exercised any remedy of landlord or have enforced any obligation of a tenant. Lender may exercise any right under this subsection whether or not Lender shall have entered into possession of any of the Mortgaged Property, and nothing contained herein shall be construed as constituting Lender a "mortgagee in possession" unless Lender shall have entered into and shall remain in actual possession of the Mortgaged Property. Borrower hereby authorizes and instructs each and every present and future tenant of any of the Mortgaged Property to pay all rents directly to Lender and to perform all other obligations of that tenant for the direct benefit of Lender as if Lender were the landlord under the lease with that tenant immediately upon receipt of a demand by Lender to make such payment or perform such obligations. No tenant shall have any responsibility to ascertain whether such demand is permitted hereunder or whether an Event of Default shall have occurred; Borrower hereby waives any right, claim or demand it may now or hereafter have against any such tenant by reason of such payment of rents or performance of obligations to Lender; and any such payment or performance to Lender shall discharge the obligations of the tenant to make such payment or performance to Borrower. Borrower agrees to indemnify Lender and hold Lender harmless from any and all liability under any lease and from any and all claims



© 2007 Geraci Law Firm; All Rights Reserved.

and demands which may be asserted against Lender by reason of any alleged obligations to perform any provision of any lease, except as to Lender's own negligence or willful misconduct.

**37.4** Lender may, without releasing Borrower from any obligation under any document evidencing or securing the obligations secured hereby or under any lease or waiving any Event of Default, enter upon and take possession of any of the Mortgaged Property, with or without legal action and by force if necessary, or upon any proper action being commenced for the foreclosure of this Security Instrument, have a receiver appointed without proof of depreciation or inadequacy of the value of the Mortgaged Property or other security or proof of the insolvency of Borrower. Lender or said receiver may manage and operate any of the Mortgaged Property; make, cancel, enforce or modify leases; obtain and evict tenants; establish or change the amount of any rents; and perform any acts which Lender deems proper to protect the security of this Security Instrument. After deduction of all costs and expenses of operation and management of the Mortgaged Property and of collection of the rents (including reasonable Attorneys' Fees actually incurred, administration expenses, management fees and brokers' commissions), Lender may apply the rents received by Lender to the payment of any or all of the following, in such order and amounts as Lender, in its sole discretion, may elect: liens on any of the Mortgaged Property, taxes, claims, insurance premiums, other carrying charges, invoices of persons who have supplied goods or services to or for the benefit of any of the Mortgaged Property, costs and expenses of maintenance, repair, restoration, alteration or improvement of any of the Mortgaged Property, costs and expenses of maintenance, repair, restoration, alteration or improvement of any of the Mortgaged Property, or any amount outstanding on the obligations secured hereby. Lender may, in its sole discretion, determine the method by which, and extent to which, the rents will be collected and obligations of tenants enforced; and Lender may waive or fail to enforce any right or remedy of the landlord under a lease. Lender shall not be accountable for any rents or other sums it does not actually receive. Borrower hereby appoints Lender as its attorney-in-fact to perform all acts which Borrower is required or permitted to perform under any and all leases.

**37.5** Lender may, without releasing Borrower from any obligation under any document evidencing or securing the obligations secured hereby or under any lease or waiving any default, enter upon and take possession of the Mortgaged Property, with or without legal action, and by force if necessary, collect therefrom all rentals (which term shall also include sums payable for use and occupation) and, after deducting all costs of collection and administration expense, apply the net rentals to any one or more of the following items in such manner and in such order of priority as Lender, in Lender's sole discretion, may elect: the payment of any sums due under any prior lien, taxes, water and sewer rents, charges and claims, insurance premiums and all other carrying charges, and to the maintenance, repair or restoration of the Mortgaged Property, or on account of the Secured Obligations; in and for that purpose Borrower hereby assigns to Lender all rentals due and to become due under any lease or leases or rights to use and occupation of the Mortgaged Property hereafter created, as well as all rights and remedies provided in such lease or leases or at law or in equity for the collection of the rentals.

**37.6** Lender may, without proof of depreciation or inadequacy of the value of the Mortgaged Property or other security or proof of the insolvency of Borrower, have a receiver appointed to manage the Mortgaged Property and collect the rents, issues, profits and income therefrom.

**37.7** Subject to any express rights of tenant thereof, Lender may disaffirm and cancel any lease which is subordinate to this Security Instrument at any time before the expiration of sixty (60) days after Lender acquires legal title to the Mortgaged Property by any transfer pursuant to the exercise of a remedy hereunder or otherwise, even though Lender shall have enforced such lease, collected rents thereunder or taken any action that might be deemed by law to constitute an affirmance of the lease. Such disaffirmance



© 2007 Geraci La[redacted]ts Reserved. 

shall be made by notice addressed to the tenant at the Mortgaged Property or, at Lender's option, such other address of the tenant as may be provided in that tenant's lease.

**37.8** Lender may take possession of any of the Property constituting personal property and may sell such property pursuant to the provisions of the applicable Uniform Commercial Code and exercise such other rights and remedies with respect to such property as may be provided by said Code.

**37.9** Lender may apply on account of the obligations secured hereby the balance of the accumulated installment payments made by Borrower for taxes, water and sewer rents and insurance premiums, and all other items for which Lender has made payment, as set forth herein.

**37.10** Upon the acceleration of the maturity of the obligations secured hereby as herein provided, a tender of payment of the amount necessary to satisfy the entire Indebtedness made at any time prior to foreclosure sale by Borrower, its successors or assigns, shall, to the extent permitted by law, constitute an evasion of the prepayment terms of the obligations secured hereby and be deemed to be a voluntary prepayment thereunder, and Lender shall not be obligated to accept any such tender of payment unless such tender of payment includes the additional prepayment premium required under the terms of the prepayment privilege, if any, contained in the Note and the Loan Agreement.

**37.11** In the event of a sale, by foreclosure, power of sale, or otherwise, of less than all of the Mortgaged Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Mortgaged Property unimpaired and without loss of priority. Notwithstanding the provisions of this Section to the contrary, if any Event of Default as described in the Loan Documents shall occur and remain continuing beyond all applicable notice, grace and/or cure periods, the entire unpaid Debt shall be automatically due and payable, without any further notice, demand or other action by Lender.

**37.12** If Lender retains the services of counsel in order to enforce any remedy available to Lender under the Note, this Security Instrument or any of the other Loan Documents, reasonable Attorneys' Fees shall be payable on demand by Borrower to Lender, and Borrower shall also pay on demand the cost of any title search and all other costs incurred by Lender in connection with proceedings to recover any sums due hereunder. Any such amounts not paid promptly on demand shall be added to the outstanding principal amount of the Note, shall bear interest at the Default Rate from the date of such demand until paid in full and shall be secured by this Security Instrument. Borrower shall also pay on demand any reasonable and customary charge of Lender in connection with the cancellation of this Note and/or the satisfaction of this Security Instrument of record. Nothing contained herein shall limit or impair the obligation of Borrower to pay any and all costs and expenses for which Borrower is otherwise liable under the Note, this Security Instrument or any of the other Loan Documents and all costs and expenses provided by law.

**37.13** This instrument is granted upon express condition that if Borrower punctually pays and performs all of the Indebtedness covenants and obligations in accordance with the terms of the Loan Documents and the terms hereof, then this Security Instrument and the estate granted hereby shall cease and become void, except for those provisions hereof which by their terms survive, and the Mortgaged Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Lender in due form at Borrower's cost. No release of this Security Instrument or the lien hereof shall be valid unless executed by Lender.

**37.14** After entry of a judgment on any of the Loan Documents, or a judgment in mortgage foreclosure hereunder, interest shall continue to accrue under the Note and this Security Instrument at the rates set forth in the Note. This Security Instrument shall not, solely for purposes of determining interest payable under the Note, merge with any judgment on any Loan Document or a judgment in mortgage foreclosure under this Security Instrument.



© 2007 Geraci Law [redacted]ghts Reserved. v180

**38. Waiver of Redemption and Reinstatement Rights of Tenants.**

**38.1** Borrower hereby covenants and agrees that it will not at any time apply for, insist upon, plead, avail itself, or in any manner claim or take any advantage of, any appraisement, stay, exemption or extension law or any so-called "Moratorium Law" now or at any time hereafter enacted or in force in order to prevent or hinder the enforcement or foreclosure of this Security Instrument. Without limiting the foregoing:

38.1.1. Borrower, for itself and all Persons who may claim by, through or under Borrower, hereby expressly waives any so-called "Moratorium Law" and any and all rights of reinstatement and redemption, if any, under any order or decree of foreclosure of this Security Instrument, it being the intent hereof that any and all such "Moratorium Laws", and all rights of reinstatement and redemption of Borrower and of all other Persons claiming by, through or under Borrower are and shall be deemed to be hereby waived to the fullest extent permitted by the laws of the Property Jurisdiction;

38.1.2. Borrower shall not invoke or utilize any such law or laws or otherwise hinder, delay or impede the execution of any right, power remedy herein or otherwise granted or delegated to Lender but will suffer and permit the execution of every such right, power and remedy as though no such law or laws had been made or enacted; and

38.1.3. If Borrower is a trust, Borrower represents that the provisions of this Section (including the waiver of reinstatement and redemption rights) were made at the express direction of Borrower's beneficiaries and the persons having the power of direction over Borrower, and are made on behalf of the trust estate of Borrower and all beneficiaries of Borrower, as well as all other persons mentioned above.

**38.2** Lender shall have the right to foreclose subject to the rights of any tenant or tenants of the Mortgaged Property having an interest in the Mortgaged Property prior to that of Lender. The failure to join any such tenant or tenants of the Mortgaged Property as party defendant or defendants in any such civil action or the failure of any decree of foreclosure and sale to foreclose their rights shall not be asserted by Borrower as a defense in any civil action instituted to collect the Indebtedness, or any part thereof or any deficiency remaining unpaid after foreclosure and sale of the Mortgaged Property, any statute or rule of law at any time existing to the contrary notwithstanding.

**39. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs unless Pennsylvania law provides otherwise. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Pennsylvania law.

**40. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Mortgaged Property, this Security Instrument shall be a purchase money mortgage, and Lender is entitled to all of the rights and benefits thereof including the benefits of 42 Pa. C.S.A. § 8141, as amended.

**41. Powers of Attorney.** Borrower acknowledges and agrees that (a) any power of attorney set forth in this Security Instrument and any of the other Loan Documents is made in connection with a commercial transaction, (b) Lender's exercise of the authority granted in the power of attorney would be in accordance with Borrower's reasonable expectations, and (c) Lender does not and, in regards to this Security Instrument, the Loan or any of the other Loan Documents, shall not have any of the duties to Borrower set forth in 20 Pa.C.S.A.§5601.3(b).

**42. Waiver of Right of Offset.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action,



© 2007 Geraci La[redacted]ghts Reserved. v180
Mortgage | Loan N[redacted]

counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives, to the fullest extent permitted by Governmental Requirements, the benefits any rights to offset under Pennsylvania law.

43. **Security for Future Advances.** This Security Instrument is intended to be eligible for all of the benefits of the provisions of the Statutes of the Commonwealth of Pennsylvania as pertain to the securing of future advances (including, without limitation, 42 Pa.C.S. §§8143-8144), but to the extent that any rule or law would grant greater protection to Lender or greater priority for the lien of the Security Instrument as it secures any advance, such rule or law shall prevail. All future advances, whether such advances are obligatory, optional or both and whether made before or after default or maturity or other similar event, shall be secured by this Security Instrument to the same extent as if such future advances were made contemporaneously with the execution of this Security Instrument, even though no advance may have been made at the time of execution of this Security Instrument and even though no indebtedness is outstanding at the time any advance is made. Any lien attaching to the Mortgaged Property after the date hereof shall be under, subject and subordinate to all indebtedness, including, without limitation, future advances (regardless of when made) secured hereby. This Security Instrument shall also secure, in addition to the maximum principal amount specified herein, disbursements and other advances made for the payment of taxes, assessments, maintenance, care, protection or insurance on the Mortgaged Property, for the discharge of liens having priority over the lien of this Security Instrument, for the curing of waste of the Mortgaged Property, for indemnification obligations regarding environmental liabilities of the Mortgaged Property, and for service charges and expenses incurred by reason of an Event of Default hereunder, including, without limitation, late charges, Attorneys' Fees and court costs, together with interest on all such disbursements at the rate then in effect under the Note, and all other charges, disbursements, advances, costs and expenses now or hereafter permitted by law. The preference and priority of the lien of this Security Instrument shall extend to any and all modifications of this Security Instrument, except to the extent expressly limited by applicable law. Notwithstanding the foregoing, Lender shall have no obligation to make any disbursements or advance any sums as a result of this Section.

[SIGNATURES FOLLOW]



© 2007 Geraci Law [redacted] Rights Reserved. 

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date first written above.

**BORROWER:**

**DDH FUND, LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: ______________________________
Taylor Green, Authorized Signor

Certification of Lender's Address

The undersigned hereby certifies that
Lender's mailing address is:

CV3 Financial Services, LLC
2101 E. El Segundo Blvd., Suite 203
El Segundo, California 90245

By: / Agent
**Simone Cummings-Long / Agent**



© 2007 Geraci [redacted]ights Reserved.

**[Acknowledgment in a representative capacity:]**

STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO : SS

This record was acknowledged before me on 1-18-2024 by Taylor Green as Authorized Signer who represent that ______ [~~he,~~ she, or ~~they~~] is/are authorized to act on behalf of DDH Fund LLC.

Signature of notarial officer: Yasmin B

YASMIN BHOLAT
Notary Public - California
San Bernardino County
Commission # 2416153
My Comm. Expires Sep 29, 2026

Title of Office: NOTARY Public

My Commission Expires: Sept 29, 2026



© 2007 Geraci[redacted]hts Reserved.
Mortgage | Lo[redacted] v180

EXHIBIT "A"
LEGAL PROPERTY DESCRIPTION

The Land is described as follows:

All the following described real estate, situated in the City of Philadelphia and the State of Pennsylvania known and described as follows, to wit:

All that certain lot or piece of ground with the messuage or tenement thereon erected.

Situate on the Northeasterly side of Fifty-Fifth Street at the distance of two hundred eighty-five feet Northwestwardly from the Northwesterly side of Greenway Avenue in the Fifty-First (formerly the Fortieth Ward) of the City of Philadelphia.

Containing in front or breadth on the said Fifty-Fifth Street fifteen feet and extending of that width in length or depth Northeastwardly sixty-five feet to a certain three feet wide alley which runs Northwestwardly to another alley leading into Fifty-Fifth Street and Southeastwardly into Greenway Avenue.

Together with the free and common use, right, liberty and privilege of the aforesaid alleys as and for alleyways, passageways and watercourses at all times hereafter, forever.

Being known as No. 1629 South Fifty Fifth Street.

Parcel ID: 514194300

Being all and the same lands and premises conveyed to DDH Fund LP by Eugene Gilbert, Jr and Pearl Gilbert in a Deed dated 11/17/2021 and recorded 01/19/2022 in Document Number 53949457, in the Land Records of Philadelphia, PA.



© 2007 Geraci Law [redacted]ghts Reserved. v180
Mortgage | Loan No. [redacted]

**RIDER TO SECURITY INSTRUMENT RE SURVIVAL EVENT**

THIS RIDER TO SECURITY INSTRUMENT RE SURVIVAL EVENT ("Rider") is entered into as of January 18, 2024, and is by and among DDH Fund, LLC, a Delaware limited liability company("Borrower"); to and for the benefit of CV3 Financial Services, LLC, a Delaware limited liability company ("Lender").

**RECITALS**

**A.** Borrower has obtained or will obtain a mortgage loan from Lender as evidenced by that certain Loan and Security Agreement of even date, executed by Borrower (the "Loan Agreement") and that certain Secured Note of even date, executed by Borrower (the "Note"), which are secured by the Collateral identified in the Loan Agreement. The Loan Agreement, Note, any Security Instrument, and Security Agreements are collectively referred to herein as the "Loan Documents" which evidence the "Loan."

**AGREEMENT**

NOW, THEREFORE, in consideration of Lender agreeing to make the Loan to Borrower, and other valuable consideration, the receipt and sufficiency of which is acknowledged, Borrower agrees as follows:

**1.** **Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents.

**2.** **Effect of Survival Events.**

**(a)** **Borrower Obligations**. Both before and after any Survival Event, Borrower shall:

(i) Maintain, repair and restore the Mortgaged Property and take the other actions required by Section 2 (**Repair and Maintenance of Mortgaged Property**) of the Security Instrument;

(ii) Pay the amounts and take the actions required by Section 4 (**Condemnation and Insurance Proceeds**), inclusive of subsections, of the Security Instrument, as well as permit collection and application of all proceeds thereunder;

(iii) Promptly pay taxes and other sums as required in Section 5 (**Taxes and Other Sums Due**) of the Security Instrument;

(iv) Treat any amounts expended by Lender under Section 7 (**Right to Collect and Receive Rents**) of the Security Instrument as additional debt of Borrower, including the accrual of interest at the rate stated in the Note on all such amounts;

(v) Permit the collection and payment of all proceeds as required by Section 8 (**Assignment of Causes of Action, Awards, and Damages**) of the Security Instrument;

(vi) Pay the amounts and take the actions required by Section 9 (**Defense of Security Instrument; Litigation**) of the Security Instrument;

(vii) Treat any amounts expended by Lender under Section 11 (**Sums Advanced to Bear Interest and to Be Secured by Security Instrument**) of the Security Instrument as additional debt of Borrower, including the accrual of interest at the rate stated in the Note on all such amounts;

(viii) Pay the amounts and take the actions required by Section 13 (**Uniform Commercial Code Security Agreement**) of the Security Instrument;



© 2007 Geraci Law Firm; All Rights Reserved.

(ix) Promptly pay when due all amounts and take the actions required in Section 24 (**Mechanic's Liens**) of the Security Instrument;

(x) Promptly perform all obligations under the Condominium Project's and/or PUD Constituent Documents required in Section 34.2 (**Obligations**) of the Security Instrument;

(xi) Pay any Attorney's Fees and Costs under the Loan Documents, including, but not limited to Section 8.12 of the Loan Agreement (**Attorney Fees**) and Section 35.12 of the Security Instrument;

(xii) If the Security Instrument is on a leasehold, comply with all the provisions of the lease;

**(b)** **Remedies.** Both before and after any Survival Event, Lender shall may enforce any and all remedies under the Loan Documents, including, but not limited to those provided in the Remedies section of the Loan Agreement, and Applicable Law, at its option and without prior demand.

**3.** **Survival of Obligations.** For avoidance of doubt, and regardless of whether a particular provision in the Loan Documents references a "Survival Event," the obligations of Borrower and the rights and remedies of Lender thereunder and under any other Loan Documents shall continue after and survive the entry of a judgment under the Loan Documents or otherwise, or the occurrence of any other Survival Event described in the Loan Documents; it being the intention of the parties hereto that such rights, remedies, and obligations, including but not limited to the obligations of Borrower to perform any covenants in the Loan Documents shall not merge into or be extinguished by such judgment nor be extinguished by the occurrence of any other Survival Event, but shall continue in effect until the Secured Obligations have been fully paid and satisfied.

**4.** **Loan Agreement.** This Rider is subject to the provisions of the Loan Agreement, which is incorporated herein.

IN WITNESS WHEREOF, Borrower has executed this Agreement as of the date first written above by and through their duly authorized representatives.

**BORROWER:**

**DDH FUND, LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: ____________________________
Taylor Green, Authorized Signor



© 2007 Geraci La[redacted]hts Reserved. 

# GUARANTY

THIS GUARANTY ("Guaranty") is entered into and effective as of January 18, 2024, and is by and among Brandon Mendenhall, whose address for purposes of this Guaranty is 256 Eagleview Blvd, # 154, Exton, Pennsylvania 19341 ("Guarantor"); and CV3 Financial Services, LLC, a Delaware limited liability company ("Lender"), whose address for purposes of this Guaranty is 2101 E. El Segundo Blvd., Suite 203, El Segundo, California 90245, and is delivered to and in favor of Lender, its successors and assigns.

To induce Lender to make the Loan to DDH Fund, LLC, a Delaware limited liability company ("Borrower"), which Guarantor acknowledges that Lender would not do without this Guaranty, and for other valuable consideration, the receipt and adequacy of which are hereby acknowledged, Guarantor agrees as follows:

**1. Guaranty.**

**1.1 Guaranty of Obligations.** Guarantor guarantees to Lender, its successors, and assigns the full and faithful payment of all amounts owed and performance of each and every one of the obligations, responsibilities, and undertakings to be carried out, performed, or observed by Borrower under the Loan Agreement, the Note, the Security Agreement, any other agreement that now or later secures repayment of the Note, any other agreement that Guarantor now or later states is guaranteed, and any other agreement that Guarantor or Borrower signs in connection with the Loan obtained by Borrower. All these documents are collectively referred to as the "Loan Documents," which Loan Documents evidence the "Loan." The obligations guaranteed are referred to as the "Guaranteed Obligations."

**1.2 Guaranty of Borrower's Performance.** If at any time Borrower, or its successors or permitted assigns, fails, neglects or refuses to pay when due amounts or perform when due any of its obligations, responsibilities, or undertakings as expressly provided under the terms and conditions of the Loan Documents, Guarantor shall pay such amounts or perform or cause to be performed such obligations, responsibilities, or undertakings as required under the terms and conditions of the Loan Documents.

**2. Absolute.** This Guaranty is irrevocable, absolute, present, and unconditional. The obligations of Guarantor under this Guaranty shall not be affected, reduced, modified, or impaired on the happening from time to time of any of the following events, whether or not with notice to (except as notice is otherwise expressly required) or the consent of Guarantor:

**2.1 Failure to Give Notice.** The failure to give notice to Guarantor of the occurrence of a default under the terms and provisions of this Guaranty or the Loan Documents;

**2.2 Modifications or Amendments.** The modification or amendment, whether material or otherwise, of any obligation, covenant, or agreement set forth in this Guaranty or Loan Documents;

**2.3 Lender's Failure to Exercise Rights.** Any failure, omission, delay by, or inability by Lender to assert or exercise any right, power, or remedy conferred on Lender in this Guaranty or the Loan Documents, including the failure to execute on collateral held for this Guaranty or the Loan Documents;

**2.4 Release of Security.** Any release of any real or personal property or other security now held or to be held by Lender for the performance of the Guaranteed Obligations;

**2.5 Borrower's Termination.** A termination, dissolution, consolidation, or merger of Borrower with or into any other entity;

**2.6 Borrower's Bankruptcy.** The voluntary or involuntary liquidation, dissolution, sale, or other disposition of all or substantially all of Borrower or its affiliate's assets, the marshalling of Borrower or its affiliate's assets and liabilities, the receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors, or readjustment of, or other similar proceedings affecting Borrower, Guarantor, their affiliates, or any of the assets of either Borrower or Guarantor, or their affiliates;



© 2007 Geraci Law Firm; All Rights Reserved. 

2.7 **Lender's Assignment of Rights.** The assignment of any right, title, or interest of Lender in this Guaranty or the Loan Documents to any other person; or

2.8 **Extent of Guarantor's Obligations.** Any other cause or circumstance, foreseen or unforeseen, whether similar or dissimilar to any of the foregoing; it being the intent of Guarantor that its obligations under this Guaranty shall not be discharged, reduced, limited, or modified except by (a) payment of amounts owing pursuant to this Guaranty and/or Loan Documents (and then only to the extent of such payment or payments); and (b) full performance of obligations under this Guaranty and/or Loan Documents (and then only to the extent of such performed or discharged obligation or obligations).

2.9 **Exercise of Lender Rights.** Any action of Lender authorized herein.

3. **Additional Credit.** Additional credit under the Loan Documents may be granted from time to time at Borrower's request and without further authorization from or notice to Guarantor and shall automatically be deemed part of the Guaranteed Obligations. Lender need not inquire into Borrower's power or the authority of its members, officers, or agents acting or purporting to act on its behalf. Each credit granted to Borrower under the Loan Documents shall be deemed to have been granted at Guarantor's insistence and request and in consideration of, and in reliance on, this Guaranty.

4. **Guaranty of Payment.** Subject to the limitations provided herein, Guarantor's liability on this Guaranty is a guaranty of payment and performance, not of collectability.

5. **Cessation of Liability.** Guarantor's liability under this Guaranty shall not in any way be affected by the cessation of Borrower's liability for any reason other than full performance of all the obligations under the Loan Documents, including, without limitation, any and all obligations to indemnify Lender.

6. **Authorization of Lender.** Guarantor authorizes Lender, without notice or demand and without affecting its liability under this Guaranty, and without consent of Guarantor or prior notice to Guarantor, to:

6.1 **Modify Loan Documents.** Make any modifications to the Loan Documents;

6.2 **Assign Guaranty.** Assign the Loan Documents and this Guaranty;

6.3 **Modify Security.** Take, hold, or release security for the performance of the Guaranteed Obligations with the consent of the party providing such security;

6.4 **Additional Guarantors.** Accept or discharge, in whole or in part, additional guarantors;

6.5 **Order of Sale.** Direct the order and manner of any sale of all or any part of security now or later held under the Loan Documents or this Guaranty, and also bid at any such sale to the extent allowed by law; and

6.6 **Application of Proceeds.** Apply any payments or recovery from Borrower, Guarantor, or any source, and any proceeds of any security, to Borrower's obligations under the Loan Documents in such manner, order, and priority as Lender may elect, whether or not those obligations are guaranteed by this Guaranty or secured at the time of such application.

7. **Lender's Rights on Borrower's Default.** Guarantor agrees that on Borrower's default Lender may elect to nonjudicially or judicially foreclose against all or part of the real or personal property securing Borrower's obligations, or accept an assignment of any such security in lieu of foreclosure, or compromise or adjust any part of such obligations, or make any other accommodation with Borrower or Guarantor, or exercise any other remedy against Borrower or any security. No such action by Lender shall release or limit Guarantor's liability to Lender, even if the effect of that action is to deprive Guarantor of the right to collect reimbursement from Borrower or any other person for any sums paid to Lender or bar or prejudice Guarantor's rights of subrogation, contribution, or indemnity against Borrower or any other person. Without limiting the foregoing, it is understood and agreed that, on any foreclosure or assignment in lieu of foreclosure of any security held by Lender, such security shall no longer exist and that any right that Guarantor might otherwise have, on full payment of the Borrower's obligations by Guarantor to Lender, to participate in any such security or to be subrogated to any rights of Lender with respect to any such security shall be nonexistent; nor shall Guarantor be deemed to have any right, title, interest, or claim under any circumstances in or to any real or personal property held by Lender or any third party following any



© 2007 Geraci Law Firm; All Rights Reserved. 

foreclosure or assignment in lieu of foreclosure of any such security. Guarantor again specifically acknowledges and waives the above as more specifically provided for herein.

**8.** **Effect of Borrower's Bankruptcy.** The liability of Guarantor under this Guaranty shall in no way be affected by:

**8.1** **Release of Borrower.** Release or discharge of Borrower in any creditor proceeding, receivership, bankruptcy, or other release or discharge of Borrower, for any reason;

**8.2** **Modification of Borrower's Liability.** Impairment, limitation, or modification of Borrower's liability or the estate, or of any remedy for the enforcement of Borrower's liability, which may result from the operation of any present or future provision of the Bankruptcy Code (Title 11 of the United States Code, as amended; 11 U.S.C. §§ 101-1330) or any bankruptcy, insolvency, state or federal debtor relief statute, any other statute, or from the decision of any court;

**8.3** **Rejection of Debt.** Rejection or disaffirmance of the Indebtedness, or any portion of the Indebtedness, in any such proceeding;

**8.4** **Cessation of Borrower's Liability.** Cessation, from any cause whatsoever, whether consensual or by operation of law, of Borrower's liability to Lender resulting from any such proceeding; or

**8.5** **Modification and Replacement of Guaranteed Obligation.** If the Guaranteed Obligations are restructured or replaced in connection with a bankruptcy proceeding or case, Guarantor shall remain liable as guarantor of such restructured or replaced obligation.

**9.** **Subordination.** Until the Guaranteed Obligations have been paid or otherwise discharged in full, Guarantor subordinates any and all liability or indebtedness of Borrower owed to Guarantor to the obligations of Borrower to Lender that arise under the Guaranteed Obligations.

**10.** **Application of Payments.** With or without notice to Guarantor, Lender, in its sole and absolute discretion may:

**10.1** **Priority of Payments.** Apply any or all payments or recoveries from Borrower, from Guarantor, or from any other guarantor or endorser under this or any other instrument, or realized from any security, in such manner, order, or priority as Lender sees fit, to the indebtedness of Borrower to Lender under the Loan Documents, whether such indebtedness is guaranteed by this Guaranty or is otherwise secured or is due at the time of such application; and

**10.2** **Refund to Borrower.** Refund to Borrower any payment received by Lender on any indebtedness guaranteed in this Guaranty, and payment of the amount refunded is fully guaranteed. Any recovery realized from any other guarantor under this or any other instrument shall be first credited on that portion of the indebtedness of Borrower to Lender that exceeds the maximum liability, if any, of Guarantor under this Guaranty.

**11.** **Claims in Bankruptcy.** Guarantor shall file all claims against Borrower in any bankruptcy or other proceeding in which the filing of claims is required or allowed by law on any indebtedness of Borrower to Guarantor, and shall assign to Lender all rights of Guarantor on any such indebtedness. If Guarantor does not file any such claim, Lender, as attorney-in-fact for Guarantor, is authorized to do so in Guarantor's name, or, in Lender's discretion, to assign the claim and to file a proof of claim in the name of Lender's nominee. In all such cases, whether in bankruptcy or otherwise, the person or persons authorized to pay such claim shall pay to Lender the full amount of any such claim, and, to the full extent necessary for that purpose, Guarantor assigns to Lender all of Guarantor's rights to any such payments or distributions to which Guarantor would otherwise be entitled.

**12.** **Representations and Warranties if Guarantor is an Entity.** If Guarantor is an entity, Guarantor represents and warrants to Lender that:

**12.1** **Legal Status.** Guarantor (a) is duly organized, validly existing under, and in good standing with, the laws of the state in which it is domiciled and in the state in which the property secured the Loan is located in; (b) has all requisite power, and has all material governmental licenses, authorizations, consents, and approvals necessary to own its assets and carry on its business as now being or as proposed



© 2007 Geraci Law Firm; All Rights Reserved.

to be conducted; and (c) is qualified to do business in the state in which any property securing the loan is located in.

12.2 **No Breach.** Neither the execution and delivery of this Guaranty nor compliance with its terms and provisions shall conflict with or result in a breach of, or require any consent under, the organizational documents of Guarantor, or any agreement or instrument by which Guarantor is bound.

12.3 **Authority and Power.** Guarantor has all necessary power and authority to execute, deliver, and perform its obligations under this Guaranty. Guarantor's execution, delivery, and performance of this Guaranty has been duly authorized by all necessary action on its part; and this Guaranty has been duly and validly executed and delivered by Guarantor and constitutes its legal, valid, and binding obligation, enforceable against Guarantor in accordance with its terms. Guarantor shall, concurrently with the execution of this Guaranty, deliver to Lender a copy of a resolution of Guarantor's managing member(s), if a limited liability company, or board of directors and/or shareholders, if a corporation, authorizing or ratifying execution of this Guaranty.

12.4 **Financial Statements**. All financial information furnished or to be furnished to Lender is or will be true and correct, does or will fairly represent the financial condition of Guarantor, and was or will be prepared in accordance with generally accepted accounting principles ("GAAP").

12.5 **Claims and Proceedings.** There are no claims, actions, proceedings, or investigations pending against Guarantor.

13. **Representations and Warranties if Guarantor is an Individual.** If Guarantor is an individual, Guarantor represents and warrants to Lender that:

13.1 **Legal Status.** Guarantor has all requisite power and has all material governmental licenses, authorizations, consents, and approvals necessary to carry on his business as now being or as proposed to be conducted.

13.2 **No Breach.** Neither the execution and delivery of this Guaranty nor compliance with its terms and provisions shall conflict with or result in a breach of, or require any consent under any agreement or instrument by which Guarantor is bound.

13.3 **Authority and Power.** This Guaranty has been duly and validly executed and delivered by Guarantor and constitutes its legal, valid, and binding obligation, enforceable against Guarantor in accordance with its terms.

13.4 **Financial Statements**. All financial information furnished or to be furnished to Lender is or will be true and correct, does or will fairly represent the financial condition of Guarantor, and was or will be prepared in accordance with generally accepted accounting principles ("GAAP").

13.5 **Claims and Proceedings.** There are no claims, actions, proceedings, or investigations pending against Guarantor.

14. **Information Not Required.** Guarantor represents that Guarantor is fully aware of Borrower's financial condition and operation and is in a position by virtue of his, her, or its relationship to Borrower to obtain all necessary financial and operational information concerning Borrower. Lender need not disclose to Guarantor any information about:

14.1 **Loan Documents.** The Loan Documents or any modification of them, and any action or non-action in connection with them;

14.2 **Other Guaranteed Obligations**. Any other obligation guaranteed in this Guaranty;

14.3 **Borrower's Financial Condition.** The financial condition or operation of Borrower; or

14.4 **Other Guarantors.** Any other guarantors.

15. **Notice.** Except for any notice required by Governmental Requirements to be given in another manner, (a) all notices required or permitted by this Guaranty shall be in writing; (b) each notice to Guarantor shall be sent (i) for personal delivery by a delivery service that provides a record of the date of delivery, the individual to whom delivery was made, and the address where delivery was made; (ii) by certified United States mail, postage prepaid, return receipt requested; or (iii) by nationally recognized overnight delivery service, marked for next-business-day delivery; and (c) all notices shall be addressed to



© 2007 Geraci Law Firm; All Rights Reserved. 

the appropriate party at its address stated on Page 1 of this Guaranty or such other addresses as may be designated by notice given in compliance with this provision. Notices will be deemed effective on the earliest of (a) actual receipt; (b) rejection of delivery; or (c) if sent by certified mail, the third day on which regular United States mail delivery service is provided after the day of mailing or, if sent by overnight delivery service, on the next day on which such service makes next-business-day deliveries after the day of sending.

**16.** **No Waiver Upon Lender's Lack of Enforcement.** No failure or delay by Lender, or its successors and assigns, in exercising any right, power, or privilege under this Guaranty shall operate as a waiver; nor shall any single or partial exercise of any right, power, or privilege preclude any other or further such exercise or the exercise of any other right, power, or privilege.

**17.** **Governing Law; Consent to Jurisdiction and Venue.** This Guaranty is made by Lender and accepted by Guarantor in the State of California except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Real Property Collateral under the Loan Documents shall be governed by and construed according to the laws of the state in which each Real Property Collateral is situated. To the fullest extent permitted by the law of the state in which each Real Property Collateral is situated, the law of the State of California shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which each Real Property Collateral is situated). The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Real Property Collateral, shall be Los Angeles County, California, or the applicable federal district court that covers said County, and Guarantor submits to personal jurisdiction in that forum for any and all purposes. Guarantor waives any right Guarantor may have to assert the doctrine of forum non conveniens or to object to such venue.

DS
BM
GUARANTOR'S INITIALS: ______

**18.** **Advice of Counsel.** Guarantor expressly declares that it knows and understands the contents of this Guaranty and has either consulted or had the opportunity to consult with an attorney as to its form and content.

**19.** **Attorney Fees.** Guarantor agrees to pay the following costs, expenses, and Attorneys' Fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and Attorneys' Fees paid or incurred in connection with the collection or enforcement of the Loan Documents, whether or not suit is filed; (b) reasonable costs, expenses, and Attorneys' Fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under the Loan Documents; (c) reasonable costs, expenses, and Attorneys' Fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as Attorneys' Fees in any action to enforce payment of the Loan Documents or any part of it.

In addition to the aforementioned fees, costs, and expenses, Lender shall be entitled to its Attorneys' Fees, and all other fees, costs, and expenses incurred in any post-judgment proceedings to collect or enforce any judgment. This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of this Guaranty into any judgment on this Guaranty.

**20.** **Assignability.** This Guaranty shall be binding on Guarantor and Guarantor's heirs, representatives, successors and assigns and shall inure to the benefit of Lender, its successors and assigns, and their successors and assigns and respective personal representatives, successors, and assigns according to the context of this Guaranty. Guarantor shall not have the right to assign the obligations in this Guaranty.



© 2007 Geraci Law Firm; All Rights Reserved.

Lender may assign its rights under this Guaranty in connection with an assignment of all or part of the Guaranteed Obligation. Notice is hereby waived as to any such assignment by Lender.

**21. Revival of Guaranty.** If a claim ("Claim") is made on Lender at any time (whether before or after payment or performance in full of any Guaranteed Obligation, and whether such claim is asserted in a bankruptcy proceeding or otherwise) for repayment or recovery of any amount or other value received by Lender (from any source) in payment of, or on account of, any Guaranteed Obligation, and if Lender repays such amount, returns value or otherwise becomes liable for all or part of such Claim by reason of (a) any judgment, decree, or order of any court or administrative body or (b) any settlement or compromise of such Claim, Guarantor shall remain severally liable to Lender for the amount so repaid or returned or for which Lender is liable to the same extent as if such payments or value had never been received by Lender, despite any termination of this Guaranty or the cancellation of any note or other document evidencing any Guaranteed Obligation.

**22. Captions.** The captions and section headings appearing in this Guaranty are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this Guaranty.

**23. Severability.** If any provision in this Guaranty is invalid and unenforceable in the jurisdiction whose law is applied to this Guaranty or in any particular context, then, to the fullest extent permitted by law, (a) the other provisions shall remain in full force and effect in such jurisdiction or context and shall be liberally construed in favor of Lender in order to carry out the parties' intentions as nearly as possible, and (b) the invalidity or unenforceability of any provision in that jurisdiction or context shall not affect the validity or enforceability of such provision in any other jurisdiction.

**24. Waivers.** Without limiting any other provision of this Guaranty or any other Loan Document.

**24.1 Waiver of Rights to Require Lender to Act.** Guarantor waives the right to require Lender to:

24.1.1. Proceed against Borrower or any other person;
24.1.2. Proceed or exhaust any security held from any person;
24.1.3. Proceed against any other guarantor; or
24.1.4. Pursue any other remedy available to Lender.

**24.2 Waivers Until Obligation Is Repaid.** Until the Guaranteed Obligations have been paid or otherwise discharged in full:

24.2.1. Guarantor waives all rights of subrogation, indemnity, any rights to collect reimbursement from Borrower, and any right to enforce any remedy that Lender now has, or may have, against Borrower.

24.2.2. Guarantor waives any benefit of, and any right to participate in, any security now or later held by Lender.

24.2.3. Guarantor waives any defense it may have now or in the future based on any election of remedies by Lender that destroys Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, and Guarantor acknowledges that it shall be liable to Lender even though Guarantor may well have no such recourse against Borrower.

24.2.4. Guarantor waives notice of (a) acceptance and reliance on this Guaranty; (b) notice of renewal, extension, or modification of any Guaranteed Obligation under this Guaranty; and (c) notice of default or demand in the case of default.

24.2.5. Guarantor waives any right or defense it may now or hereafter have based on (a) Lender's full or partial release of any party who may be obligated to Lender; (b) Lender's full or partial release or impairment of any collateral for the Guaranteed Obligations; and (c) the modification or extension of the Guaranteed Obligations.

24.2.6. Guarantor waives any and all suretyship defenses now or later available to it under the law governing this Guaranty.



© 2007 Geraci Law Firm; All Rights Reserved.

24.2.7. Without limiting the generality of any other waiver or provision of this Guaranty, Guarantor waives, to the maximum extent such waiver is permitted by law, any and all benefits or defenses arising directly or indirectly under the law governing this Guaranty.

24.2.8. Guarantor waives any statute of limitation affecting liability under this Guaranty or the enforceability of this Guaranty and further waives any defense that might otherwise exist because of the expiration of the statute of limitations on the Loan Documents.

24.2.9. Guarantor waives any duty of Lender to disclose to Guarantor any facts Lender may now know or later learn about Borrower or Borrower's financial condition regardless of whether Lender has reason to believe that any such facts materially increase the risk beyond that which Guarantor intends to assume, or has reason to believe that such facts are unknown to Guarantor, or has a reasonable opportunity to communicate such facts to Guarantor, it being understood and agreed that Guarantor is fully responsible for and is capable of being and keeping informed of Borrower's financial condition and of all circumstances bearing on the risk of nonpayment of any indebtedness guaranteed under this Guaranty.

24.2.10. Guarantor waives all notices to Guarantor.

24.2.11. Without limiting the generality of any other waiver or provision of this Guaranty, Guarantor waives, to the maximum extent such waiver is permitted by law, any and all benefits or defenses arising directly or indirectly under any one or more of (a) California Civil Code §§ 2799, 2808, 2809, 2810, 2815, 2819, 2820, 2821, 2822, 2838, 2839, 2845, 2846, 2847, 2848, 2849, 2850, 2899, and 3433; (b) Chapter 2 of Title 14 of the California Civil Code; (c) California Code of Civil Procedure §§580a, 580b, 580c, 580d, and 726; (d) California Commercial Code §3605 or (e) any rights identified in *Union Bank* v. *Gradsky*, 265 Cal. App. 2d 40 (1968).

**25.** **Arbitration.** Concurrently herewith, Borrower and Guarantor shall execute that certain Arbitration Agreement whereby Borrower, Guarantor, and Lender agree to arbitrate any disputes to resolve any Claims (as defined in the Arbitration Agreement).

**26.** **Joint and Several.** If this Guaranty is issued by more than one party or if any other party guarantees the obligations of Borrower, the obligations of Guarantor and any others under this Guaranty shall be joint and several.

**27.** **Entire Agreement.** This Guaranty embodies the entire agreement and understanding between Guarantor and Lender pertaining to the subject matter of this Guaranty, and supersedes all prior agreements, understandings, negotiations, representations, and discussions, whether verbal or written, of the parties, pertaining to that subject matter. Guarantor is not relying on any representations, warranties, or inducements from Lender that are not expressly stated in this Guaranty.

**28.** **Further Assurances.** Guarantor shall promptly and duly execute and deliver to Lender such further documents and assurances and take such further action as Lender may from time to time reasonably request, including, without limitation, any amendments to this Guaranty to establish and protect the rights, interests, and remedies created or intended to be created in favor of Lender.

**29.** **Gender; Singular Includes Plural.** As used in this Guaranty, the singular includes the plural, and the masculine includes the feminine and neuter, and vice versa, if the context so requires.

**30.** **Nonwaiver.** No provision of this Guaranty or right of Lender under this Guaranty can be waived, nor can Guarantor be released from its obligations under this Guaranty except by a writing duly executed by an authorized representative of Lender.

**31.** **Continuing Liability.** Guarantor shall continue to be liable under this Guaranty despite the transfer by Borrower of all or any portion of the property encumbered by the Loan Documents.

**32.** **Time Is of the Essence.** Time is of the essence under this Guaranty and any amendment, modification, or revision of this Guaranty.

**33.** **Cumulative Rights.** The extent of Guarantor's liability and all rights, powers, and remedies of Lender under this Guaranty, and under any other agreement now or at any future time in force between Lender and Guarantor, shall be cumulative and not alternative, and such rights, powers, and remedies shall



© 2007 Geraci Law Firm; All Rights Reserved.

be in addition to all rights, powers, and remedies given to Lender by law. This Guaranty is in addition to and exclusive of the guaranty of any other guarantor of any indebtedness of Borrower to Lender.

34. **WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN DOCUMENTS. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. GUARANTOR AND, BY ITS ACCEPTANCE OF THE BENEFITS OF THE LOAN, BORROWER EACH (A) ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR BORROWER AND LENDER TO ENTER INTO A BUSINESS RELATIONSHIP, THAT BORROWER AND LENDER HAVE ALREADY RELIED ON THIS WAIVER BY ENTERING INTO THE LOAN OR ACCEPTING ITS BENEFITS, AS THE CASE MAY BE, AND THAT EACH SHALL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS, AND (B) FURTHER WARRANTS AND REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THE LOAN AGREEMENT OR THE NOTE.

35. **Separation of Parties**. Guarantor is separate and distinct from Borrower. Borrower and Guarantor were solely responsible for all corporate structuring and Lender had no role in the corporate structuring of Borrower and/or Guarantor. Borrower and Guarantor have provided independent financial statements to Lender and Lender has relied on such financial statements in making loan to Borrower.

36. **Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents, each executed of even date herewith.

37. **Community Property.** If Guarantor (or any Guarantor, if more than one) is a married person, and the state of residence of Guarantor or Guarantor's spouse ("Guarantor Spouse") is a community property jurisdiction, then each of the following apply:

**37.1** Guarantor (or each such married Guarantor, if more than one) agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all Guarantor's separate property and against the marital community property of Guarantor and Guarantor Spouse.

**37.2** If Guarantor Spouse is not also a Guarantor of the Loan, Guarantor certifies that none of the assets shown on his or her financial statements submitted to Lender for purposes of underwriting the Loan were either (i) Guarantor Spouse's individual property, or (ii) community property under the sole management, control, and disposition of Guarantor Spouse.

**37.3** If Guarantor Spouse is not also a Guarantor of this loan and Guarantor or Guarantor Spouse's state of residence is Alaska, Arizona, Idaho, Louisiana, Nevada, New Mexico, Washington, or Wisconsin, Guarantor has caused Guarantor Spouse to acknowledge this Guaranty as required on the signature page of this Guaranty.

38. **Loan Agreement.** This Guaranty is subject to the provisions of the Loan Agreement, which is incorporated herein.

39. **Security for Guaranty.** This Guaranty is not secured by any Collateral (including but not limited to Real Property Collateral) which may secure the Loan, unless the Guarantor(s) are explicitly identified within the subject Security Agreement which also specifically, and separately, states that such Security Agreement secures the Guaranteed Obligations herein.



© 2007 Geraci Law Firm; All Rights Reserved.

[SIGNATURES FOLLOW]



© 2007 Geraci Law Firm: All Rights Reserved.

IN WITNESS WHEREOF, Guarantor has executed and delivered this Guaranty as of the date first written above.

**GUARANTOR:**

**BRANDON MENDENHALL**

Brandon Mendenhall

Brandon Mendenhall, an individual



© 2007 Geraci Law Firm; All Rights Reserved.

eRecorded in Philadelphia PA Doc Id: 54232105
03/25/2024 01:21 PM Page 1 of 4 Rec Fee: $242.75
Receipt#:
Records Department Doc Code: A

**WHEN RECORDED, RETURN TO:**

CV3 Financial Services, LLC
2101 East El Segundo Blvd. Ste #203,
El Segundo, CA 90245

[redacted]

**ASSIGNMENT OF MORTGAGE**

For value received, the undersigned, CV3 Financial Services, LLC, a Delaware Limited Liability Company (CFL License No. 60DBO-183355), having an address at 2101 E. El Segundo Blvd., Suite 203, El Segundo, California 90245 ("Assignor"), hereby grants, assigns and transfers to CV3 Alpha Trust, a Delaware statutory trust, having an address of 2101 East El Segundo Blvd. Ste #203, El Segundo, CA 90245 ("Assignee"), all of the undersigned's rights, title and interest due or to become due in and to that certain Open-End Mortgage, Assignment of Leases and Rents, and Security Agreement, together with that certain Secured Note in the amount of $96,000.00, each dated January 18, 2024, executed by DDH Fund, LLC, a Delaware limited liability company ("Borrower"), in favor of CV3 Financial Services, LLC, a Delaware limited liability company, which was recorded on January 23, 2024, as Instrument Number 54263082 in the Recorder's Office of the County of Philadelphia, State of Pennsylvania (the "Mortgage"), against:

The real property located in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania, described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF,

commonly known as 1629 S 55th Street, Philadelphia, Pennsylvania 19143 (the "Mortgaged Property");

Together with all of Assignor's rights, title and interest in and to the Secured Note therein described or referred to, the money due and to become due with interest, and all rights to accrue under said Mortgage, and all Loan Documents (as defined in the Loan Agreement) executed concurrently therewith.

The undersigned Assignor has independently and contemporaneously executed that certain Allonge to Secured Note assigning and transferring to Assignee, all of the Assignor's right, title and interest in and to the Secured Note which is secured by the Mortgage.

**[SIGNATURES FOLLOW]**



© 2007 Geraci Law Firm; All Rights Reserved

Dated: 01/22/2024

**ASSIGNOR:**

**CV3 FINANCIAL SERVICES, LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By:
Name: Robert Callaway
Title: Chief Financial Officer

Certification of Lender's Address

The undersigned hereby certifies that
Lender's mailing address is:

CV3 Financial Services, LLC
2101 East El Segundo Blvd. Ste #203,
El Segundo, CA 90245

By:
Robert Callaway



© 2007 Geraci Law Firm; All Rights Reserved.

**[Acknowledgment in an individual capacity:]**

STATE OF ________________ :
: SS
COUNTY OF ______________ :

This record was acknowledged before me on __________ by ________________________________.

Signature of notarial officer: ______________________

Title of Office: ____________

My Commission Expires:

**[Acknowledgment in a representative capacity:]**

STATE OF California :
: SS
COUNTY OF Los Angeles :

This record was acknowledged before me on 01/22/2024 by Robert Callaway as Chief Financial Officer who represent that he [he, she, or they] is/are authorized to act on behalf of CV3 Financial Services.

Signature of notarial officer: ______________________

BRENDA FERNANDEZ
Notary Public - California
Los Angeles County
Commission # 2398270
My Comm. Expires Mar 24, 2026

Title of Office: ____________

My Commission Expires: March 24,2026



© 2007 Geraci Law Firm; All Rights Reserved.

## EXHIBIT "A"

## LEGAL DESCRIPTION OF PROPERTY

THE LAND IS DESCRIBED AS FOLLOWS:

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATED IN THE CITY OF PHILADELPHIA AND THE STATE OF PENNSYLVANIA KNOWN AND DESCRIBED AS FOLLOWS, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE MESSUAGE OR TENEMENT THEREON ERECTED.

SITUATE ON THE NORTHEASTERLY SIDE OF FIFTY-FIFTH STREET AT THE DISTANCE OF TWO HUNDRED EIGHTY-FIVE FEET NORTHWESTWARDLY FROM THE NORTHWESTERLY SIDE OF GREENWAY AVENUE IN THE FIFTY-FIRST (FORMERLY THE FORTIETH WARD) OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID FIFTY-FIFTH STREET FIFTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHEASTWARDLY SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY WHICH RUNS NORTHWESTWARDLY TO ANOTHER ALLEY LEADING INTO FIFTY-FIFTH STREET AND SOUTHEASTWARDLY INTO GREENWAY AVENUE.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID ALLEYS AS AND FOR ALLEYWAYS, PASSAGEWAYS AND WATERCOURSES AT ALL TIMES HEREAFTER, FOREVER.

BEING KNOWN AS NO. 1629 SOUTH FIFTY FIFTH STREET.

PARCEL ID: 514194300

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO DDH FUND LP BY EUGENE GILBERT, JR AND PEARL GILBERT IN A DEED DATED 11/17/2021 AND RECORDED 01/19/2022 IN DOCUMENT NUMBER 53949457, IN THE LAND RECORDS OF PHILADELPHIA, PA.



© 2007 Geraci Law Firm; All Rights Reserved.

eRecorded in Philadelphia PA Doc Id: 54464852
09/08/2025 07:56 AM Page 1 of 4 Rec Fee: $245.75
Receipt#:
Records Department Doc Code: A

**WHEN RECORDED, RETURN TO:**

CV3 Alpha Trust
2101 East El Segundo Blvd. Ste #203,
El Segundo, CA 90245

Loan No
Property ID No.: 514194300/28S19 292

CORRECTIVE ASSIGNMENT OF MORTGAGE

This Corrective Assignment of Mortgage is being recorded to replace the previously recorded Assignment recorded on 6/10/2025 as Doc ID: 54432711 to correct the assignee that was recorded in error.

For value received, the undersigned, CV3 Alpha Trust, a Delaware statutory trust, having an address at 2101 E. El Segundo Blvd., Suite 203, El Segundo, California 90245 ("Assignor"), hereby grants, assigns and transfers to * - See Below, having an address of ** - See Below ("Assignee"), all of the undersigned's rights, title and interest due or to become due in and to that certain Open-End Mortgage, Assignment of Leases and Rents, and Security Agreement, together with that certain Secured Note in the amount of $96,000.00, each dated January 18, 2024, executed by DDH Fund, LLC, a Delaware limited liability company ("Borrower"), in favor of CV3 Financial Services, LLC, a Delaware limited liability company, which was recorded on January 23, 2024, as Instrument Number 54263082 in the Recorder's Office of the County of Philadelphia, State of Pennsylvania (the "Mortgage"), against:

The real property located in the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania, described as follows:

SEE EXHIBIT "A," ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF,

commonly known as 1629 S 55th Street, Philadelphia, Pennsylvania 19143 (the "Mortgaged Property");

Together with all of Assignor's rights, title and interest in and to the Secured Note therein described or referred to, the money due and to become due with interest, and all rights to accrue under said Mortgage, and all Loan Documents (as defined in the Loan Agreement) executed concurrently therewith.

The undersigned Assignor has independently and contemporaneously executed that certain Allonge to Secured Note assigning and transferring to Assignee, all of the Assignor's right, title and interest in and to the Secured Note which is secured by the Mortgage.

**[SIGNATURES FOLLOW]**

* - U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of Saluda Grade Loan Trust I

** - 500 Delaware Avenue, 11th Floor, Wilmington, DE 19801



© 2007 Geraci Law Firm; All Rights Reserved.

Dated: 01/22/2024

**ASSIGNOR:**

**CV3 Alpha Trust, a Delaware statutory trust**
**By: CV3 Financial Services, LLC, in its capacity as Administrator**

By: ______________________
Name: Robert Callaway
Title: Chief Financial Officer

Certification of Lender's Address

The undersigned hereby certifies that
Lender's mailing address is:

CV3 Financial Services, LLC
2101 East El Segundo Blvd. Ste #203,
El Segundo, CA 90245

By: ______________________
Robert Callaway



© 2007 Geraci Law Firm; All Rights Reserved. v180
Assignment of Mortgage
Loan Nc

**[Acknowledgment in an individual capacity:]**

STATE OF ________________ :
: SS
COUNTY OF ______________ :

This record was acknowledged before me on _________ by ______________________________.

Signature of notarial officer: ______________________

Title of Office: ____________

My Commission Expires:

**[Acknowledgment in a representative capacity:]**

STATE OF California :
: SS
COUNTY OF Los Angeles :

This record was acknowledged before me on 01/22/2024 by Robert Callaway as Chief Financial Officer who represent that he [he, she, or they] is/are authorized to act on behalf of CV3 Financial Officer

Signature of notarial officer: ______________________

BRENDA FERNANDEZ
Notary Public - California
Los Angeles County
Commission # 2398270
My Comm. Expires Mar 24, 2026

Title of Office: ____________

My Commission Expires: March 24,2026



© 2007 Geraci Law Firm; All Rights Reserved. 

## EXHIBIT "A"

## LEGAL DESCRIPTION OF PROPERTY

THE LAND IS DESCRIBED AS FOLLOWS:

ALL THE FOLLOWING DESCRIBED REAL ESTATE, SITUATED IN THE CITY OF PHILADELPHIA AND THE STATE OF PENNSYLVANIA KNOWN AND DESCRIBED AS FOLLOWS, TO WIT:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE MESSUAGE OR TENEMENT THEREON ERECTED.

SITUATE ON THE NORTHEASTERLY SIDE OF FIFTY-FIFTH STREET AT THE DISTANCE OF TWO HUNDRED EIGHTY-FIVE FEET NORTHWESTWARDLY FROM THE NORTHWESTERLY SIDE OF GREENWAY AVENUE IN THE FIFTY-FIRST (FORMERLY THE FORTIETH WARD) OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID FIFTY-FIFTH STREET FIFTEEN FEET AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH NORTHEASTWARDLY SIXTY-FIVE FEET TO A CERTAIN THREE FEET WIDE ALLEY WHICH RUNS NORTHWESTWARDLY TO ANOTHER ALLEY LEADING INTO FIFTY-FIFTH STREET AND SOUTHEASTWARDLY INTO GREENWAY AVENUE.

TOGETHER WITH THE FREE AND COMMON USE, RIGHT, LIBERTY AND PRIVILEGE OF THE AFORESAID ALLEYS AS AND FOR ALLEYWAYS, PASSAGEWAYS AND WATERCOURSES AT ALL TIMES HEREAFTER, FOREVER.

BEING KNOWN AS NO. 1629 SOUTH FIFTY FIFTH STREET.

PARCEL ID: 514194300

BEING ALL AND THE SAME LANDS AND PREMISES CONVEYED TO DDH FUND LP BY EUGENE GILBERT, JR AND PEARL GILBERT IN A DEED DATED 11/17/2021 AND RECORDED 01/19/2022 IN DOCUMENT NUMBER 53949457, IN THE LAND RECORDS OF PHILADELPHIA, PA.



© 2007 Geraci Law Firm; All Rights Reserved.

[redacted]

**eRecorded in Philadelphia PA Doc Id: [illegible]**
**01/09/2026 02:11 PM Page 1 of 3 Rec Fee: $246.75**
**Receipt#:**
**Records Department Doc Code: A**

RECORD & RETURN TO:
Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
Case No.:

Property Address: 1629 South 55th Street, Philadelphia, PA 19143
Assessor's Property Tax Parcel/Account Number: **51-4194300**
Municipality: Philadelphia

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of SG Alternative Title Trust 2025-NPL1** (the "Assignor"), whose address is **500 Delaware Avenue, 11th Floor, Wilmington, DE 19801**hereby grants, transfers, and assigns and sets over to **U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of Saluda Grade Loan Trust I** (the "Assignee"), whose address is **1011 Centre Rd Suite 203 Wilmington DE 19805**, all of the Assignor's rights, title and beneficial interest in and to that certain Mortgage dated January 18, 2024, and given by DDH Fund, LLC to CV3 Financial Services, LLC, in the amount of $96,000.00 which Mortgage encumbers the real property known as 1629 South 55th Street, Philadelphia, PA 19143 (Assessor's Property Tax Parcel/Account Number: **51-4194300**), and which Mortgage was recorded on January 23, 2024, as Instrument Number 54263082 in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania. The real property encumbered by the Security Instrument is described as stated at Exhibit "A" herein.

IN WITNESS WHEREOF, **Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of SG Alternative Title Trust 2025-NPL1** has duly executed this instrument on the date set forth below:

Dated: 12/29/2025

Fay Servicing, LLC, as attorney-in-fact for, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of SG Alternative Title Trust 2025-NPL1 Loan Trust I

By: ____________________

Name: Brad Hartung

Title: Authorized Signatory

STATE OF ~~TEXAS~~ New York )
) ss.
COUNTY OF ~~DALLAS~~ New York )

On the 29 day of December in the year 2025 before me, the undersigned, a Notary Public in and for said State, personally appeared Brad Hartung, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in ~~DALLAS~~ New York County.

WITNESS my hand and official seal,

____________________

Notary Public: Tyler Ketchersde

Notary Expires: 10-10-2027

TYLER KETCHERSIDE
Notary Public - State of New York
NO. 01KE0014345
Qualified in New York County
My Commission Expires Oct 10, 2027

I hereby certify that the address of the within named Assignee, **U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of Saluda Grade Loan Trust I, is 1011 Centre Rd Suite 203 Wilmington DE 19805**

____________________

Signatory Name: Brad Hartung

Signatory Title: Authorized Signatory

**EXHIBIT "A"**

All the following described real estate, situated in the City of Philadelphia and the State of Pennsylvania known and described as follows, to wit:

All that certain lot or piece of ground with the messuage or tenement thereon erected.

Situate on the Northeasterly side of Fifty-Fifth Street at the distance of two hundred eighty-five feet Northwestwardly from the Northwesterly side of Greenway Avenue in the Fifty-First (formerly the Fortieth Ward) of the City of Philadelphia.

Containing in front or breadth on the said Fifty-Fifth Street fifteen feet and extending of that width in length or depth Northeastwardly sixty-five feet to a certain three feet wide alley which runs Northwestwardly to another alley leading into Fifty-Fifth Street and Southeastwardly into Greenway Avenue.

Together with the free and common use, right, liberty and privilege of the aforesaid alleys as and for alleyways, passageways and watercourses at all times hereafter, forever.

Being known as No. 1629 South Fifty Fifth Street.

Parcel ID: 514194300

**eRecorded in Philadelphia PA Doc Id: 54592950**
**08/27/2026 01:03 PM Page 1 of 3 Rec Fee: $246.75**
**Receipt#: 26-74525**
**Records Department Doc Code: A**

When Recorded Return To:
Assignments and Lien Release
Title Clearing and Escrow
1601 LBJ Freeway Suite 150
Farmers Branch, TX 75234

---

**CORPORATE ASSIGNMENT OF MORTGAGE**

**Philadelphia, Pennsylvania**
**Fay Servicing#: ***

Date of Assignment: August 21st, 2026

Assignor: U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of Saluda Grade Loan Trust I, By Fay Servicing, LLC, as Attorney In Fact
Assignee: Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee of SG Alternative Title Trust 2026-NPL1

I hereby certify the precise address of the within named Assignee is 1601 LBJ Freeway, Suite 150, FARMERS BRANCH, TX 75234.

Executed By: DDH FUND, LLC To: CV3 Financial Services, LLC
Dated: 01-18-2024 Recorded: 01-23-2024 as Instrument/Document: 54263082 In the County of Philadelphia, State of Pennsylvania.

Property Address: 1629 S 55TH STREET, PHILADELPHIA, PA 19143 in the City of PHILADELPHIA

Legal: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

I do certify that the precise address of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee of SG Alternative Title Trust 2026-NPL1 is 1601 LBJ Freeway, Suite 150, FARMERS BRANCH, TX 75234
Attested By:

[signature]

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $96,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 3

U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of Saluda Grade Loan Trust I, By Fay Servicing, LLC, as Attorney In Fact
On August 21st, 2026

By:______________________
Veronica Talley, Assistant Secretary

(This area for corporate seal)

STATE OF Texas
COUNTY OF Dallas

On August 21st, 2026, before me, Angel Perez, a Notary Public in and for Dallas in the State of Texas, personally appeared Veronica Talley, Assistant Secretary of U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee of Saluda Grade Loan Trust I, By Fay Servicing, LLC, as Attorney In Fact , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Angel Perez
My Commission Expires
6/18/2029
Notary ID

______________________
Angel Perez
Notary Expires: 6/18/2029

**Exhibit A**

1629 South 55th Street
City of Philadelphia, PA 19143
*Tax Parcel(s) 51-4194300, City of Philadelphia, Philadelphia County*

All the following described real estate, situated in the City of Philadelphia and the State of Pennsylvania known and described as follows, to wit:

All that certain lot or piece of ground with the messuage or tenement thereon erected.

Situate on the Northeasterly side of Fifty-Fifth Street at the distance of two hundred eighty-five feet Northwestwardly from the Northwesterly side of Greenway Avenue in the Fifty-First (formerly the Fortieth Ward) of the City of Philadelphia.

Containing in front or breadth on the said Fifty-Fifth Street fifteen feet and extending of that width in length or depth Northeastwardly sixty-five feet to a certain three feet wide alley which runs Northwestwardly to another alley leading into Fifty-Fifth Street and Southeastwardly into Greenway Avenue.

Together with the free and common use, right, liberty and privilege of the aforesaid alleys as and for alleyways, passageways and watercourses at all times hereafter, forever.

Being known as No. 1629 South Fifty Fifth Street.

Being all and the same lands and premises conveyed to DDH Fund LP by Eugene Gilbert, Jr and Pearl Gilbert in a Deed dated 11/17/2021 and recorded 01/19/2022 in Document Number 53949457, in the Land Records of Philadelphia, PA.