# Exhibit A

# PROMISSORY NOTE

**THIS NOTE ALSO CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR/BORROWER AND ALLOWS THE CREDITOR/LENDER TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

Loan Number

Property Address:

1943 Ashley Rd
Philadelphia, PA 19138

**Date of this Promissory Note: October 28, 2022**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that the undersigned **RAD Diversified REIT, Inc., a Maryland Corporation** (individually and collectively, the "**Borrower**") has received, the Borrower promises to pay U.S. **$172,000.00** (this amount is called "**Principal**"), plus interest, to the order of **Civic Financial Services, LLC, a California Limited Liability Company** (the "**Lender**") on the following agreements, terms and conditions. The Borrower will make all payments under this Promissory Note (as amended, restated, supplemented or otherwise modified from time to time, this "**Note**") in the form of check or automated clearing house transfer pursuant to Section 3.2(d) of this Note or such other method as the Lender may designate in writing.

## 2. DEFINED TERMS

The following capitalized terms shall have the following meanings:

"**Affiliate**" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"**Approved Budget**" means the budget setting forth all of the direct and indirect costs to be incurred in connection with the Renovations of the Property, as approved by Lender and as described on Schedule B hereto.

**"Bankruptcy Event"** means any of the following events: (a) any Loan Party institutes or consents to the institution of any proceeding under any Debtor Relief Law or makes an assignment for the benefit of creditors; (b) any Loan Party applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer for it or for all or any material part of its property; (c) any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer is appointed without the application or consent of any Loan Party and the appointment continues undischarged or unstayed for 30 calendar days; (d) any proceeding under any Debtor Relief Law relating to any Loan Party or to all or any material part of its property is instituted without the consent of any Loan Party and continues undismissed or unstayed for 30 calendar days, or an order for relief is entered in any such proceeding; (e) any Loan Party becomes unable or admits in writing its inability or fails generally to pay its debts as they become due; or (f) any writ or warrant of attachment or execution or similar process is issued or levied against all or any material part of the property of any Loan Party and is not released, vacated or fully bonded within 30 days after its issue or levy.

**"Borrower Rehab Contribution Amount"** means with respect to the Property, the additional proceeds to be contributed by Borrower that together with the allocated Construction and Renovations Reserve Amount for such Property shall be sufficient to fully and timely complete the Renovations in accordance with the Approved Budget. In the event that Borrower incurs any additional cost or expenses to complete the Renovations, Borrower shall be responsible for the entirety of the increased cost(s) incurred in order to complete the Renovations and shall use its own funds to complete the Renovations. The minimum Borrower Rehab Contribution Amount for the Property is set forth on Schedule A.

**"Business Day"** means any day other than a (a) Saturday, (b) Sunday, (c) day on which Lender is not open for business, or (d) day on which the Federal Reserve Bank of New York is not open for business.

**"Charges"** means all fees, charges and/or any other things of value, if any, contracted for, charged, taken, received or reserved by Lender in connection with the transactions relating to this Note and the other Loan Documents, which are treated as interest under applicable law.

**"Control"** means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. "Controlling" and "Controlled" have meanings correlative thereto. Without limiting the generality of the foregoing, a Person shall be deemed to be Controlled by another Person if such other Person possesses, directly or indirectly, power to vote twenty percent (20%) or more of the securities having ordinary voting power for the election of directors, managing general partners or the equivalent.

**"Construction and Renovations Reserve Amount"** means with respect to the Property, the Loan funds available for construction and renovation purposes (as set forth on Schedule A), said amounts to be disbursed pursuant to the provisions of the Disbursement Agreement.

**"Debtor Relief Laws"** means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief Laws of the United States or other applicable jurisdictions from time to time in effect.

**"Default"** means the occurrence of any event that, but for the giving of notice or the passage of time, or both, would be an Event of Default.

**"Default Rate"** means a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law or (ii) eighteen percent (18%) per annum.

**"Deposit Bank"** means a depository institution insured by the Federal Deposit Insurance Corporation and selected by Lender in its sole discretion.

**"Disbursement Date"** means the date of the disbursement of Loan proceeds hereunder.

**"Disbursement Agreement"** means that certain Disbursement Agreement executed by Borrower as of the date hereof, as the same may from time to time be amended, restated, replaced, substituted, supplemented or otherwise modified in accordance herewith.

"**Event of Default**" shall have the meaning set forth in Section 7.1.

"**First Payment Due Date**": **12/01/2022**.

"**Governmental Authority**" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

"**Guarantor**" means, individually and collectively, any guarantor of the Obligations of Borrower under this Note.

"**Indebtedness**" means the Principal Indebtedness together with interest and all other Obligations and liabilities of Borrower under this Note and the Loan Documents.

"**Interest Rate**" means **9.250%** per annum.

"**Laws**" means, collectively, all international, foreign, Federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration

thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority, in each case whether or not having the force of law.

"**Loan**" means the loan evidenced by this Note.

"**Loan Documents**" means this Note, the Security Instrument, Disbursement Agreement, any guaranty of the Borrower's Obligations under this Note, and all other present and future agreements, documents and instruments executed or to be executed in connection with this Note or any of the foregoing documents, and all extensions, renewals, substitutions, replacements and modifications of any of this Note or any of the foregoing documents.

"**Loan Party**" means the Borrower and the Guarantor, if any.

"**Maturity Date**" means the earlier of (i) **November 01, 2024** and (ii) the date on which the unpaid Principal Indebtedness of this Note and all Obligations hereunder become due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document.

"**Obligations**" means, collectively, each and all of the obligations of the Loan Parties under the Loan Documents, including, but not limited to, Borrower's obligations for payment of the Indebtedness, all transaction costs, Prepayment Premium, late fees and other amounts due or to become due to Lender pursuant to the Loan Documents, and payment of all operating expenses necessary for the operation of the Property and capital expenditures necessary to maintain the Property in accordance with the Loan Documents.

"**Payment Due Date**" means the First Payment Due Date and any subsequent date on which a Monthly Payment is due and payable pursuant to Section 3 of this Note.

"**Person**" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.

"**Permitted Transfer**" means, provided that no Default or Event of Default shall then exist, (a) a lease to a residential tenant of the Property in the ordinary course of Borrower's business if, with respect to said lease, (i) it is entered into on an arm's-length basis, (ii) no tenant is an Affiliate, (iii) rental rates and other economic terms, taken as a whole, are at least equivalent to then-existing market rates based on the applicable market or otherwise commercially reasonable, and (iv) it is subject and subordinate to the Security Instrument and contains provisions for the agreement by the tenant(s) thereunder to attorn to Lender and any purchaser at a foreclosure or trustee sale, such attornment to be self-executing and effective upon acquisition of title to the Property by any purchaser at a foreclosure or trustee sale; or (b) a Transfer (of the interest itself, but not any pledge or grant or creation of any lien) of indirect equity interests in Borrower which in the aggregate (i) do not exceed forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower, (ii) do not result in any

Person's interest in Borrower exceeding forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower (other than a Person that owned forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower on the date hereof) and (iii) do not result in a change in Control of Borrower. Borrower shall pay all costs and expenses of Lender in connection with a Transfer.

**"Plans"** means the plans and specifications for the Renovations which have been submitted to and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

**"Prepayment Premium"** means, in connection with each Prepayment, an amount of interest equal to **6** months' interest on the full Principal Indebtedness at the Interest Rate less the total of all interest payments received by Lender through and including the prepayment date.

**"Policies"** means all insurance required pursuant to Section 3.5 of the Security Instrument.

**"Principal Indebtedness"** means the principal balance of the Loan outstanding from time to time.

**"Property"** means the real property described on Schedule A hereto, together with all buildings and other improvements thereon and all personal property owned by Borrower and encumbered by the Security Instrument(s), together with all rights pertaining to such property; and "Property" means an individual property included in the Properties or all Properties collectively, as the context may require.

**"Renovations"** means the repairs, renovations and improvements to be made to the Property as shown on the Plans.

**"Reserves"** means, collectively, the Tax Reserve, the Insurance Reserve, and the Construction and Renovations Reserve, each of which shall, individually, be a "Reserve".

**"Security Instrument"** means that certain mortgage, deed of trust, security deed or line of credit trust deed, as the case may be, assignment of leases and rents, security agreement and fixture filing encumbering the Property, executed by Borrower as of the date hereof, as the same may from time to time be amended, restated, replaced, substituted, supplemented or otherwise modified in accordance herewith.

**"Servicer"** means the entity or entities appointed by Lender from time to time to serve as servicer and/or special servicer of the Loan. If at any time no entity is so appointed, the term "Servicer" shall be deemed to refer to Lender.

**"Taxes"** means all real estate and personal property taxes, assessments, fees, taxes on rents or rentals, water rates or sewer rents, facilities and other governmental, municipal and

utility district charges or other similar taxes or assessments now or hereafter levied or assessed or imposed against the Property or Borrower with respect to the Property or rents therefrom or that may become liens upon any of the Property, without deduction for any amounts reimbursable to Borrower by third parties and including any interest, additions to tax or penalties applicable thereto.

"**Transfer**" means any transfer of any kind (including any gift, conveyance, lease, sublease, sale, or lien) with respect to all or any part of or any interest (whether direct or indirect, ownership, beneficial or otherwise, and irrespective of the number of tiers of parties having interests) in the Property or Borrower, or any direct or indirect constituent of Borrower, whether voluntarily or involuntarily and whether directly or indirectly, by operation of law or otherwise.

## 3. INTEREST AND PAYMENTS

### 3.1 Interest

(a) Interest Rate. Except as set forth in Section 3.1(c) below, interest will be charged and accrue on the outstanding Principal Indebtedness and on all Obligations under the Loan Documents at the Interest Rate. Interest will be charged and accrue from the date of disbursement by Lender (whether into escrow or otherwise) until the Indebtedness is paid in full.

(b) Interest Calculation. Interest shall be computed on the basis of a 30-day month and 360-day year and actual days elapsed (which results in more interest being paid than if computed on the basis of a 365 or 366 day year); provided however, for the full or partial calendar month at the beginning of the term of this Note and the month in which the Principal Indebtedness and all other Obligations of the Borrower under this Note are paid in full, interest shall be computed on the basis of a year of 365 or 366 days, as the case may be, and actual days elapsed.

(c) Default Rate. For so long as any Event of Default is continuing, the Principal Indebtedness and all other portions of the Indebtedness, shall accrue interest at the Default Rate. Interest at the Default Rate shall be paid immediately upon demand, which demand may be made as frequently as Lender shall determine.

### 3.2 Loan Payments.

(a) Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Disbursement Date. If the Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date. The Payment Due Date for the first monthly installment payment under Section 3.2(b) will be the First Payment Due Date set forth in Section 2. Except as provided in this Section 3.2(a), accrued interest will be payable in arrears.

(b) Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, accrued interest only shall be payable by Borrower in consecutive monthly installments due and payable on the first day of each calendar month (each a "**Monthly Payment**"). Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any amount added to principal pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of interest or principal and interest.

(c) Payment on Maturity Date. Borrower shall pay to Lender on the Maturity Date all outstanding Principal Indebtedness, all accrued and unpaid interest and all other amounts and Obligations due under the Loan Documents. A balloon payment will be due upon full repayment of this Note even if this Note is not repaid until the Maturity Date.

(d) ACH Authorization. On each date when the payment of any principal, interest or fees are due hereunder or under any Loan Document, the Borrower agrees to maintain on deposit in an ordinary checking account maintained by the Borrower with the financial institution identified by the Borrower in a separate automatic payment authorization (as such account shall be designated by the Borrower in a separate automatic payment authorization delivered to the Lender from time to time, the "**Borrower Account**") an amount sufficient to pay such principal, interest or fees in full on such date. The Borrower hereby authorizes the Lender on each Payment Due Date to deduct automatically all principal, interest or fees when due hereunder or under any other Loan Document from the Borrower Account (and if applicable, imposition deposits held by Lender for the purposes of facilitating the paying of Taxes, insurance cost for the Properties or other individual impositions by the date on which such amounts come due). The Lender agrees to provide notice to the Borrower of any automatic deduction made pursuant to this provision showing in reasonable detail the amounts of such deduction.

(e) Method and Place of Payment. Except as otherwise specifically provided herein, the Borrower will make all payments required under this Note, without notice and without offset or deduction, at **2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278** or at a different place if required by the Lender, unless such Monthly Payments are drawn directly from the Borrower Account in accordance with Section 3.2(d) of this Note. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in the designated Borrower Account to cover any preauthorized monthly debit from the Borrower Account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $15.00 (but not more than the maximum amount allowed by law) for each such event.

3.3 Late Charges. If the Lender has not received the full amount of any Monthly Payment or other amounts payable under this Note, the Security Instrument or any other Loan Document within the fifteenth (15) calendar day after the date the Monthly Payment or other

amount is due, the Borrower will pay a late charge to the Lender. The amount of the charge will be fifteen percent (15%) of such overdue installment payment or other amount due. Borrower will pay this late charge promptly but only once on each late payment. Any amounts payable under the Loan Documents that are not paid on or before the due date shall be deemed delinquent. The Borrower acknowledges that late payment to the Lender of any sums due hereunder will cause the Lender to incur costs not contemplated hereunder, the exact amount of which would be impracticable or extremely difficult to ascertain. Such costs include processing and accounting costs, the expenses incurred and time and effort associated with recovering the delinquent payment, and the loss of timely use of the payment amount. The Borrower and the Lender each agree that the late payment charge described in this Section 3.3 represents a fair and reasonable estimate of the costs the Lender will incur by reason of the late payment. The provisions of this Section 3.3 shall not be construed as extending the time for payment of any amounts due under this Note, and acceptance of a late payment charge by the Lender shall in no event constitute a waiver of the Borrower's Event of Default with respect to the overdue amount nor prevent the Lender from exercising any of its rights and remedies with respect to such Event of Default (including, without limitation, charging interest at the Default Rate set forth below).

## 4. BORROWER'S RIGHT TO PREPAY

4.1 Voluntary Prepayments.

(a) The Borrower may, upon prior written notice to the Lender, at any time or from time to time, voluntarily prepay Principal in whole or in part (each such prepayment of Principal is referred to herein as a "**Prepayment**"); provided that (A) such notice must be in a form acceptable to the Lender and be received by the Lender not later than 11:00 a.m. Pacific Time three (3) Business Days prior to the date of such Prepayment; (B) such notice shall specify the date and amount of such Prepayment; (C) any such Prepayment shall be in a minimum principal amount of $10,000 or, if less, the entire Principal then outstanding; (D) each such Prepayment shall be accompanied by a payment by the Borrower of all accrued interest on the amount prepaid and the Prepayment Premium due with respect to such Prepayment. If such notice is given by the Borrower, the Borrower shall make such Prepayment and the payment amount specified in such notice shall be due and payable on the date specified therein. The Borrower may not designate a payment as a Prepayment if the Borrower has not made all the Monthly Payments due under the Note.

(b) The Lender may apply any Prepayment made by the Borrower hereunder to the accrued and unpaid interest on the Prepayment amount and the Prepayment Premium, before applying any such Prepayment to reduce the Principal Indebtedness outstanding. If the Borrower makes a partial Prepayment of the Principal, there will be no changes in the due dates of the Monthly Payments. Any such partial Prepayment may reduce the amount of the Borrower's Monthly Payments on the Payment Due Date immediately following such partial Prepayment, at which time the Lender shall recalculate the Monthly Payments due under this Note. Lender will notify Borrower in writing of its determination of the adjusted Monthly Payment, which notice shall be conclusive and binding absent manifest error.

(c) (Reserved)

(d) The Borrower waives any right, under California Civil Code Section 2954.10 or otherwise, to prepay any portion of the Outstanding Principal Balance under this Note without paying the Prepayment Premium described in this Note. The Borrower acknowledges that Prepayment of the principal balance of this Note in whole or in part may result in the Lender incurring additional losses, costs, expenses and liabilities, including lost revenue and lost profits. The Borrower therefore agrees to pay the Prepayment Premium on the terms set forth in this Note if any principal amount is prepaid, whether voluntarily or by reason of acceleration, including acceleration upon any sale or other Transfer of any interest in the Property securing this Note in violation of the provisions of this Note or the related Security Instrument. The Borrower further agrees that the Lender's willingness to offer the Interest Rate described above to the Borrower is sufficient and independent consideration, given individual weight by the Lender, for this waiver. The Borrower understands that the Lender would not offer such an interest rate to the Borrower absent this waiver.

## 5. LOAN CHARGES

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) the interest or any such loan charge shall be reduced by the amount necessary to reduce the interest or charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to the Borrower. The Lender may choose to make this refund by reducing the principal that the Borrower owes under this Note or by making a direct payment to the Borrower. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. DEFAULT RATE

Upon the occurrence and during the continuance of an Event of Default, the Interest Rate applicable to the entire Principal Indebtedness and all other Obligations of the Borrower under this Note and the Loan Documents will automatically increase to the Default Rate, and shall be payable upon demand from time to time. Notwithstanding anything to the contrary contained in this Note and the other Loan Documents, with respect to monetary defaults, the Default Rate shall be assessed as follows: If any amount due in respect of the Loan (other than amounts due on the Maturity Date or earlier acceleration) remains past due for thirty (30) days or more, interest on such unpaid amount(s) shall accrue from the date payment is due at the Default Rate and shall be payable on demand by Lender. Should an Event of Default occur with respect to two (2) or more consecutive Monthly Payments and the Borrower remains past due for more than sixty (60) days (i.e., two or more consecutive Monthly Payments are not paid when due), the Loan shall bear interest at the applicable Default Rate for the remainder of the term until the Indebtedness is paid in full. From and after the Maturity Date, the unpaid Principal Balance and all accrued interest thereon shall continue to bear interest at the Default Rate until and including

the date on which the entire Principal balance and all outstanding Obligations due and owing under the Loan Documents are paid in full. During any period that the Default Rate is in effect the additional interest accruing over and above the Interest Rate provided for in Section 2 shall be immediately due and payable in addition to the regularly scheduled Monthly Payments.

Borrower acknowledges and agrees that the increase from the Interest Rate to the Default Rate represents a fair and reasonable estimate of the additional risks, costs and expenses Lender will incur by reason of Borrower's Default on account of the delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquency on the Loan.

## 7. DEFAULTS

7.1 Events of Default. Each of the following shall constitute an event of default hereunder (each an **"Event of Default"**):

(a) Any failure by Borrower to pay or deposit when due any amount required by this Note or any other Loan Document;

(b) Any failure of Borrower to comply with any other covenant contained in this Note that calls for the payment of money;

(c) (Reserved)

(d) The Borrower fails to perform or observe any other covenant or agreement (not specified in Section 7.1(a), or 7.1(b) above) contained in this Note or any Loan Document on its part to be performed or observed and such failure continues for 10 days;

(e) Any representation, warranty, certification, covenant or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party in this Note, in any other Loan Document, or in any document delivered in connection herewith or therewith shall be incorrect or misleading when made or deemed made;

(f) Any failure of Borrower to maintain in full force and effect all Policies required hereunder or any other Loan Document;

(g) Any exercise by the holder of any debt instrument secured by a mortgage, deed of trust, security deed or line of credit trust deed against any Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(h) The commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of any Property or otherwise materially impair the lien created by the Security Instrument or Lender's interest in any Property;

(i) Material deviations in the work of construction from the Plans (or, where Lender has so designated, from approved shop or working drawings) without the approval of Lender (subject, however, to Borrower's right to make such changes in the work from the Plans as it desires in accordance with this Note and the Disbursement Agreement, so long as Borrower pays for any increase in costs of construction caused by said changes);

(j) A Transfer other than a Permitted Transfer occurs (including without limitation, the creation or existence of any lien as provided in Section 3.20 of the Security Instrument);

(k) The occurrence of any "Default" as defined in any other Loan Document in which a "Default" is defined, including, any breach, "Default" or "Event of Default" under any Loan Document;

(l) If the Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

(m) Borrower (if Borrower is a natural person) or any member, shareholder, partner or trustee of Borrower (if such member, shareholder, partner or trustee is a natural person), or any Guarantor who is a natural person, dies or becomes incompetent (unless, in the case of the death or incapacity of any member, shareholder or partner of Borrower, the Transfer of such member's, shareholder's or partner's interest in Borrower would have been a Permitted Transfer);

(n) The occurrence of a Bankruptcy Event;

(o) Any Loan Party or any Affiliate thereof (A) fails to make any payment when due (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any indebtedness or guarantee (other than under the Loan Documents) owed or owing to the Lender, or (B) fails to observe or perform any other agreement or condition relating to any such Indebtedness or guarantee owed or owing to the Lender or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event occurs, the effect of which default or other event is to cause, or to permit the Lender to cause, with the giving of notice if required, such Indebtedness to be demanded or to become due (automatically or otherwise) prior to its stated maturity or such guarantee to become payable; or

(p) Any breach or default or other similar condition or event (however described) by Borrower or an Affiliate of Borrower under any other loan, note or agreement to which Lender or any Affiliate of Lender is also a party.

7.2 Remedies.

(a) Acceleration. If an Event of Default has occurred and is continuing, the

Indebtedness, entire unpaid principal balance of this Note, any accrued interest, the Prepayment Premium, and all other Obligations of the Borrower under this Note and any other Loan Document, at the option of the Lender, shall immediately become due and payable, without any prior written notice to the Borrower, unless applicable law requires otherwise (and in such case, after any required notice has been given). The Lender may exercise this option to accelerate regardless of any prior forbearance. In addition, the Lender shall have all rights and remedies afforded to the Lender hereunder and under the other Loan Documents, including, application of the Default Rate of Interest in accordance with Section 6, foreclosure on and/or the power of sale of the Property covered by the Security Instrument, as provided in the Security Instrument, and any rights and remedies available to the Lender at law or in equity. Notwithstanding the foregoing, the occurrence of any Bankruptcy Event shall automatically accelerate this Note and all Obligations under this Note and the other Loan Documents, and this Note and the Obligations under this Note and the other Loan Documents shall be immediately due and payable without written notice or further action by the Lender. Each right and remedy provided in this Note is distinct from all other rights or remedies under this Note or any other Loan Document or afforded by applicable Law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. The Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of additional Default by the Borrower in order to exercise any of its remedies with respect to any Event of Default.

(b) No Waiver by Lender. Any waiver of a Default, Event of Default or forbearance by the Lender in exercising any right or remedy under this Note or any other Loan Document or otherwise afforded by applicable Laws, shall not be a waiver of any other Default or Event of Default or preclude the exercise or failure to exercise of any other right or remedy. Enforcement by the Lender of any security for the Obligations of the Borrower under this Note shall not constitute an election by the Lender of remedies so as to preclude the exercise or failure to exercise of any other right or remedy available to the Lender. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment.

(c) Payment of Lender's Costs and Expenses. The Borrower shall immediately reimburse the Lender for all fees and costs, including reasonable attorneys' fees (including, but not limited to, those related to bankruptcy, insolvency and appellate proceedings) and experts' fees and costs, incurred by the Lender for: (i) enforcement of this Note, any other Loan Document or any terms hereof or thereof, or the exercise of any rights or remedies hereunder or thereunder and/or at Law, in equity or otherwise, whether or not any action or proceeding is filed; (ii) representation of the Lender in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding under any Debtor Relief Law of or relating to any Loan Party or the Property covered by the Security Instrument; or (iii) representation of the Lender in any action or proceeding relating to any individual Property and/or all or any of the other Properties covered by the Security Instrument, whether commenced by the Lender or any other Person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings. All such fees and costs shall bear interest until paid at the rate

applicable from time to time under this Note.

(d) **Confession of Judgment**

**IF THE BORROWER FAILS TO PAY WHEN DUE ANY PRINCIPAL OR INTEREST HEREUNDER, OR THERE OTHERWISE EXISTS AN EVENT OF DEFAULT, THEN, THE BORROWER HEREBY ACKNOWLEDGES THAT HE WILL THEREBY BE JUSTLY INDEBTED TO THE LENDER, AND HEREBY AUTHORIZES ANY ATTORNEY DESIGNATED BY LENDER, OR ITS DESIGNEE, AS HIS ATTORNEY-IN-FACT TO APPEAR FOR THE BORROWER AND ANY GUARANTORS HEREOF, AND IN HIS NAME, TO CONFESS JUDGMENT AGAINST HIM, BEFORE THE CLERK/PROTHONOTARY OF THE COURT OF PHILADELPHIA, PENNSYLVANIA, OR ANY OTHER JURISDICTION THAT PERMITS THE ENTRY OF JUDGMENT BY CONFESSION, IN THE DEFAULT BALANCE OF $172,000.00, LESS ANY PAYMENTS MADE BY THE BORROWER HEREUNDER PRIOR THERETO, PLUS INTEREST ACCRUING THEREON AS SET FORTH HEREIN UNTIL PAID, PLUS REASONABLE ATTORNEY'S FEES, TO PROSECUTE AND COLLECT THE BALANCE OWED. THE BORROWER HEREBY EXPRESSLY ACKNOWLEDGES THAT ANY ATTORNEY DESIGNATED BY THE LENDER HAS THE POWER OF ATTORNEY NECESSARY TO CONFESS JUDGMENT AGAINST THE BORROWER AS SET FORTH HEREIN, BY SWORN AFFIDAVIT.**

______________________________

**BORROWER INITIALS**

## 8. GIVING OF NOTICES

All notices, consents, approvals and requests required or permitted under this Note any Loan Document shall be given in writing by expedited prepaid delivery service, either commercial or United States Postal Service, with proof of delivery or attempted delivery, addressed as follows (except that any party hereto may change its address and other contact information for purposes hereof at any time by sending a written notice to the other parties to this Agreement in the manner provided for in this Section 8). A notice shall be deemed to have been given when delivered or upon refusal to accept delivery.

**If to Lender:**

Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278
Attention: Post-Closing
CivicPostClosing@CivicFS.com

**If to Borrower:**

RAD Diversified REIT, Inc.
7 St. Paul Street, Suite 820

Baltimore, MD 21202
Attention: Brandon Mendenhall
Email: loans@raddiversified.com

**With Copy to:**

Fay Servicing
8000 Woodland Center Blvd.
Tampa, FL 33614
Attention: VP of Account Management
CommercialServicing@FayServicing.com

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one Person signs this Note, each Person is jointly, severally, fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount of all Obligations owed. Any Person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any Person who takes over these Obligations, including the Obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each Person individually or against all of such Persons together. This means that any one such Person may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

The Borrower and each other Loan Party hereby waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other Persons that amounts due have not been paid. In addition, without limiting the foregoing, each Loan Party hereby waives diligence, demand, notice of non-payment, protest and notice of protest, and the Borrower and each other Loan Party (a) agrees that the time for performance of any Obligation under this Note may be extended from time to time without notice, (b) consents to the release without notice of any party liable hereon or herefor, (c) consents to the addition without notice of parties liable hereon or herefor, and (d) consents to the acceptance without notice of further security for this Note, including other types of security, all without in any way affecting their liability. Further, each Loan Party waives the right to plead any and all statutes of limitations as a defense to this Note, any guaranty hereof or any agreement to pay the Obligations hereof, or any other Loan Document, in each case to the full extent permitted by law. No provision of this Note or any other Loan Document may be waived or modified orally, it being expressly agreed that any such waiver or modification must be in a writing signed by the Lender.

**11. UNIFORM SECURED NOTE**

The Indebtedness and all Obligations hereunder are secured by, among other things, the

Security Instrument and reference is made to the Security Instrument for other rights of Lender as to collateral for the Indebtedness. This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note, protects the Lender from possible losses which might result if the Borrower does not keep the promises made in this Note. That Security Instrument describes how and under what conditions the Borrower may be required to make immediate payment in full of all amounts the Borrower owes under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or Transferred, other than a Permitted Transfer (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or Transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable Law. If Borrower fails to pay these sums, Lender may invoke any remedies permitted by the Security Instrument without notice or demand on Borrower.

**12. LIABILITY; FULL PAYMENT**

The Borrower is personally liable for the Indebtedness and all Obligations under this Note. All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim. All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any Taxes, levies, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any Governmental Authority. The Borrower shall indemnify the Lender against any such Taxes, levies, imposts, duties, charges and fees (other than taxes on the income of the Lender imposed by any taxing authority) which may be assessed against the Lender or claimed or demanded from the Lender in respect of any amount payable by the Borrower hereunder, and against any costs, charges, expenses or liability arising out of or with respect to such assessment, claim or demand, to the full extent permitted by Law.

**13. BUSINESS PURPOSE LOAN; NO OCCUPANCY BY ANY LOAN PARTY**

BORROWER AND EACH OTHER LOAN PARTY WILL USE THE PROCEEDS OF THE LOAN THAT BORROWER HAS RECEIVED UNDER THIS NOTE SOLELY FOR THE PURPOSE OF ACQUIRING OR REFINANCING REAL PROPERTY FOR INVESTMENT PURPOSES, AND BORROWER WARRANTS AND REPRESENTS TO THE LENDER THAT ALL LOAN PROCEEDS WILL BE SOLELY USED TO ACQUIRE OR REFINANCE REAL PROPERTY FOR INVESTMENT PURPOSES, AND THAT NO LOAN PROCEEDS WILL IN ANY EVENT BE USED FOR A CONSUMER, FAMILY OR HOUSEHOLD PURPOSE. BORROWER FURTHER WARRANTS AND REPRESENTS TO LENDER THAT: (A) NEITHER BORROWER NOR ANY OTHER LOAN PARTY NOR ANY LOAN PARTY'S SPOUSE, CHILD, DEPENDENT, OR PARENT WILL AT ANY TIME DURING THE TERM OF THIS NOTE INHABIT THE PROPERTY, AND (B) THE PROPERTY

WILL NOT BE THE PRINCIPAL RESIDENCE OR SECONDARY RESIDENCE OF ANY LOAN PARTY OR SPOUSE, CHILD, DEPENDENT, OR PARENT OF ANY LOAN PARTY.

**14. GOVERNING LAW; SUBMISSION TO JURISDICTION; JURY TRIAL WAIVER AND JUDICIAL REFERENCE**

**(A) Governing Law; Submission to Jurisdiction**

This Note shall be governed by and construed under the internal laws of the State of California, without regard to conflict of law provisions. The Borrower and Lender each irrevocably submit and consent to jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of, or relating to the Loan, this Note and the other Loan Document, and consent to service of process by any means allowed by California or federal law.

**(B) Waiver of Jury Trial**

TO THE FULLEST EXTENT PERMITTED BY LAW, THE BORROWER AND LENDER EACH HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN, THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE (OTHER THAN ANY ACTION IN RESPECT OF THE CREATION, PERFECTION OR ENFORCEMENT OF A LIEN OR SECURITY INTEREST CREATED PURSUANT TO ANY LOAN DOCUMENTS NOT GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA); THE BORROWER AND LENDER EACH HEREBY AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY TO THE FULLEST EXTENT PERMITTED BY LAW. THE BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH THE BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE THE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

**(C) Judicial Reference**

IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1 ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE (PROVIDED, HOWEVER,

THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO JUDICIAL REFERENCE SHALL BE APPLICABLE WITH RESPECT TO ANY ACTION IN RESPECT OF THE FORECLOSURE OF THE SECURITY INSTRUMENT). PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 AND 640 TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. THE BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH THE BORROWER AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

**15. LOAN RESERVES**

15.1 Tax Reserve. Unless waived by Lender in writing, Borrower shall deposit with Lender (i) on the Disbursement Date an amount sufficient to pay all Taxes by the 30th day prior to the date they come due, assuming subsequent monthly fundings on Payment Due Dates of one-twelfth (1/12) of projected annual Taxes, plus (ii) on each Payment Due Date, an amount equal to one-twelfth (1/12) of the Taxes that Lender estimates will be payable during the next ensuing twelve (12) months (the "**Tax Reserve**"). At Lender's discretion, at origination, Borrower shall deposit with Lender additional amounts to be held in the Tax Reserve and applied towards the payment of Taxes that will be payable during the life of the Loan. If Lender makes such election, it shall be noted on the settlement statement at closing. If at any time Lender reasonably determines that the amount in the Tax Reserve will not be sufficient to accumulate (upon payment of subsequent monthly amounts in accordance with the provisions of this Note) the full amount of all installments of Taxes by the date on which such amounts come due, then Lender shall notify Borrower of such determination and Borrower shall increase its monthly deposit to the Tax Reserve by the amount that Lender reasonably estimates is sufficient to achieve such accumulation. Borrower shall provide Lender with copies of all tax bills relating to the Property promptly after Borrower's receipt thereof. Provided that no Event of Default has occurred and is continuing, Lender shall release funds from the Tax Reserve to pay Taxes due, subject to such conditions as Lender may reasonably require, including that Lender shall have received Tax bills for the same not less than thirty (30) days before the due dates thereof.

15.2 Insurance Reserve. Unless waived by Lender in writing, Borrower shall deposit with Lender on the Disbursement Date an amount sufficient to pay all insurance costs for the Property that Lender estimates will be payable for the ensuing twelve (12) months and thereafter on each Payment Due Date one-twelfth (1/12) of the insurance premiums that Lender reasonably estimates will be payable during the ensuing twelve (12) months for renewal or replacement of

the Policies upon the expiration thereof (the "**Insurance Reserve**"). At Lender's discretion, at origination, Borrower shall deposit with Lender additional amounts to be held in the Insurance Reserve and applied towards the payment of insurance premiums that will be payable during the life of the Loan. If Lender makes such election, it shall be noted on the settlement statement at closing If at any time Lender reasonably determines that the amount in the Insurance Reserve will not be sufficient to pay the insurance premiums becoming due, Lender may so notify Borrower, and then commencing with the first Payment Due Date thereafter, the monthly deposits to the Insurance Reserve shall be increased by the amount that Lender estimates is sufficient to make up the deficiency at least thirty (30) days prior to expiration of the Policies. Provided no Event of Default has occurred and is continuing, Lender shall release funds in the Insurance Reserve to pay insurance premiums due with respect to the Policies, subject to such conditions as Lender may reasonably require, including that Lender shall have received invoices for the same not less than thirty (30) days before the due dates thereof.

15.3 Construction and Renovations Reserve. Borrower shall deposit with Lender on the Disbursement Date, the Construction and Renovations Reserve Amount for each Property set forth on Schedule A, which funds will be transferred into an account at the Deposit Bank to hold such funds (the "**Construction and Renovations Reserve**"), for the purpose of paying for the cost of the Renovations to the Properties as approved by Lender and consistent with the Approved Budget, said amounts to be disbursed pursuant to the provisions of the Disbursement Agreement.

15.4 (Reserved)

15.5 Reserve Funds Generally. Any funds remaining in the Reserves (other than earnings or interest thereon) after the Obligations have been paid in full shall be returned to Borrower. Borrower shall not be entitled to any earnings or interest on funds deposited into the Reserves.

15.6 Security Interest. As security for the Obligations, Borrower hereby grants to Lender a continuing first-priority security interest in each Reserve and all amounts at any time contained therein and the proceeds thereof and will take all actions necessary to maintain in favor of Lender a perfected first priority security interest therein, including filing UCC-1 financing statements and continuations thereof.

## 16. OFAC; ANTI-MONEY LAUNDERING

16.1 USA PATRIOT Act. The Lender hereby notifies the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it is required to obtain, verify and record information that identifies the Borrower and each other Loan Party, which information includes the name and address of the Borrower and each other Loan Party and other information that will allow the Lender to identify the Borrower and each other Loan Party in accordance with the Act. The Borrower and each other Loan Party shall, promptly following a request by the Lender, provide all documentation and

other information that the Lender requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Act.

16.2 OFAC Representations. Neither the Borrower, nor any other Loan Party, nor, to the knowledge of the Borrower, any director, officer, employee, agent, affiliate or representative thereof, is an individual or entity that is, or is owned or controlled by one or more individuals or entities that are (i) currently the subject or target of any sanction administered or enforced by the United States Government (including without limitation, OFAC), the United Nations Security Council, the European Union, Her Majesty's Treasury (**"HMT"**) or other relevant sanctions authority (**"Sanctions"**), (ii) included on the List of Specially Designated Nationals maintained by the Office of Foreign Assets Control of the United States Department of the Treasury (**"OFAC"**) or HMT's Consolidated List of Financial Sanctions Targets, or any similar list enforced by any other relevant sanctions authority or (iii) located, organized or resident in any country or territory to the extent that such country or territory itself is the subject of any Sanction. The Borrower has conducted its businesses in compliance in all material respects with all applicable Sanctions and have instituted and maintained policies and procedures designed to promote and achieve compliance with such Sanctions.

16.3 Representation re Anti-Corruption Laws. The Borrower has conducted its business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, and other applicable anti-corruption legislation in other jurisdictions and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws.

16.4 Covenant re Anti-Corruption Laws. The Borrower shall conduct its businesses in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, and other applicable anti-corruption legislation in other jurisdictions and with all applicable Sanctions, and maintain policies and procedures designed to promote and achieve compliance with such laws and Sanctions.

## 17. SALE OF NOTE AND SECONDARY MARKET TRANSACTION

The Borrower understands that the Lender may assign, sell, pledge, securitize or transfer this Note or any interest (including, without limitation, participation interests) in this Note (each such sale, assignment, participation and/or securitization, a **"Secondary Market Transaction"**) at any time and from time to time without notice to, or the consent of, the Borrower. The Lender or anyone who takes this Note in connection with a Secondary Market Transaction and who is entitled to receive payments under this Note is called the **"Note Holder."** The Borrower may not assign or transfer its rights or obligations under this Note without the prior written consent of the Note Holder, which the Note Holder may give or refuse in its sole and absolute discretion. This Note binds the Borrower and its successors, permitted assigns, heirs, administrators and executors, and inures to the benefit of the Note Holder and its successors, assigns, participants, heirs, administrators and executors. The Borrower shall (A) do anything necessary to comply with

the reasonable requirements of the Note Holder or provide, or cause to be provided, to the Note Holder within ten (10) days of the request, at Borrower's cost and expense, such further documentation or information as the Note Holder may reasonably require, in order to enable the Note Holder to consummate a Secondary Market Transaction; (B) confirm that the Borrower is not in Default under this Note or any other Loan Document or in observing any of the covenants or agreements contained in this Note or any other Loan Document (or, if the Borrower is in Default, describing such Default in reasonable detail); and (C) execute and deliver to the Lender such other documentation, including any amendments, corrections, deletions or additions to this Note as is reasonably required by the Note Holder.

**18. (RESERVED)**

**19. SERVICER**

Lender may delegate any and all rights and obligations of Lender under the Note and the other Loan Documents to the Servicer upon notice by Lender to Borrower, whereupon any notice or consent from the Servicer to Borrower, and any action by Servicer on Lender's behalf, shall have the same force and effect as if Servicer were Lender.

**20. CONSTRUCTION**

Any reference in this Note to an "Exhibit" or a "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Note or to a Section or Article of this Note. Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Note includes the plural and use of the plural includes the singular. As used in this Note, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation. Whenever Borrower's knowledge is implicated in this Note or the phrase "to Borrower's knowledge" or a similar phrase is used in this Note, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation. Unless otherwise provided in this Note, if Lender's or the Note Holder's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action or decision shall be made in Lender's or the Note Holder's sole and absolute discretion. All references in this Note to a separate instrument or agreement shall include such instrument or agreement as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time pursuant to the applicable provisions thereof. "Lender may" or "Note Holder may" shall mean at Lender's or Note Holder's sole discretion, but shall not be an obligation. If there are multiple Borrowers, "Borrower" means all and any one or more of them.

**21. (RESERVED)**

## 22. FINAL DOCUMENTS; NO ORAL AGREEMENTS

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE LOAN PARTIES AND THE LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE LOAN PARTIES AND THE LENDER.

## 23. TIME IS OF THE ESSENCE

The Borrower agrees that, with respect to each and every obligation and covenant contained in this Note, time is of the essence.

[Remainder of Page Intentionally Blank; Signature Page Follows]

**BY SIGNING BELOW, BORROWER ACKNOWLEDGES THIS DOCUMENT INCLUDES, AND AGREES TO THE TERMS OF, A CONFESSION OF JUDGMENT.**

IN WITNESS WHEREOF, this Note has been duly executed by the Borrower as of the day and year first above written.

**BORROWER:**

RAD Diversified REIT, Inc., a Maryland Corporation

By: ______________________________
Name: Taylor Green
Title: Secretary

Address:

7 St. Paul Street, Suite 820
Baltimore, MD 21202
Attention: Brandon Mendenhall

Organizational ID:

**Schedule A**

| Address & Property ID | Loan Amount | Construction and Renovations Reserve Amount | Borrower Rehab Contribution Amount | Total Budget |
|---|---|---|---|---|
| 1943 Ashley Rd<br>Philadelphia, PA, 19138<br><br>ID: | $172,000.00 | $52,000.00 | $46,190.40 | $98,190.40 |

**Schedule B**

Approved Budget

See Attached Final Approved Rehab Feasibility / Budget

# ALLONGE

| | |
|---|---|
| BORROWER(S): | RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, BY: TAYLOR GREEN |
| PROPERTY ADDRESS: | 1943 ASHLEY RD, PHILADELPHIA, PA 19138 |
| ORIGINATING LENDER: | CIVIC FINANCIAL SERVICES, LLC |
| ORIG. LOAN AMOUNT: | $172,000.00 |
| LOAN #: | |
| NOTE DATE: | 10/28/2022 |

PAY TO THE ORDER OF:
**MAV 1, A DELAWARE STATUTORY TRUST**

WITHOUT RECOURSE:

**CIVIC FINANCIAL SERVICES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**
BY: CIVIC VENTURES, LLC, A DELAWARE LIMITED LIABILITY COMPANY
ITS: MANAGER

BY: ______________________

NAME: THOMAS FRENCH
TITLE: MANAGER, DEFAULT ASSETS
CIVIC FINANCIAL SERVICES, LLC