**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; *and* | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC; | Case No. 8:26-bk-08030-CPM |
| Debtors. | |

**NOTICE OF FILING REDLINE OF SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTORS' JOINT SECOND AMENDED PLAN OF LIQUIDATION**

The above-captioned debtors and debtors in possession, by and through their undersigned counsel, attach hereto for filing a redline version of the *Second Amended Disclosure Statement for Debtors' Joint Second Amended Plan of Liquidation*.

***Remainder of Page Left Intentionally Blank***

Dated: October 6, 2026

Respectfully submitted,

**PACK LAW**
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500

By: *_/s/ Joseph A. Pack_*
Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtors and Debtors-in-Possession*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will provide notice of such filing to all parties registered to receive electronic notices of filing in this case.

By: *_/s/ Joseph A. Pack_*
Joseph A. Pack

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; *and* | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC | Case No. 8:26-bk-08030-CPM |
| Debtors. | |

**~~FIRST~~SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTORS' JOINT ~~FIRST~~SECOND AMENDED ~~-~~PLAN OF LIQUIDATION**

~~[AFTER CONDITIONAL APPROVAL, THE FOLLOWING WILL BE INSERTED:]~~ THIS IS A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY THE BANKRUPTCY COURT. A HEARING ON THE ADEQUACY OF THIS DISCLOSURE STATEMENT WILL BE HELD FOLLOWING SOLICITATION AND CONCURRENTLY WITH CONFIRMATION OF THE DEBTORS' CHAPTER 11 PLAN. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

PACK LAW
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848
*Counsel to the Debtors and Debtors-in-Possession*

## DISCLAIMER

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure, and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or Entities trading in or otherwise purchasing, selling, or transferring Claims against Debtors should evaluate this Disclosure Statement in light of the purpose for which it was prepared.

To ensure compliance with applicable Internal Revenue Service regulations, holders of Claims and Equity Interests are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in the Plan or this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by Debtors of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

There has been no independent audit of the financial information contained in the Plan or this Disclosure Statement, except as expressly indicated. The Plan and this Disclosure Statement were compiled from information obtained from numerous sources believed to be accurate to the best of Debtors' knowledge, information, and belief.

The Plan and this Disclosure Statement were not filed with the Securities and Exchange Commission or any state authority. As such, neither the Securities and Exchange Commission nor any state authority has passed upon the accuracy, adequacy, or merits of the Plan or transactions contemplated therein. Nothing contained in the Plan or Disclosure Statement, or in any materials related to the solicitation of votes to accept or reject the Plan, constitutes an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

The Plan and Disclosure Statement contain "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

Any projected recoveries to holders of Claims or Equity Interests forecast in the Plan or this Disclosure Statement are based upon the analyses performed by Debtors and their advisors. Although Debtors and their advisors have made every effort to verify the accuracy of the information presented herein, Debtors and their advisors cannot make any representations or warranties regarding the accuracy of the information.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party or be admissible in any proceeding involving Debtors or any other party. The

statements contained herein are made as of the date hereof unless another time is specified. Nothing contained in the Plan or Disclosure Statement shall be deemed or construed to create any implication or assurance that the information contained herein is correct at any time after the date hereof.

This Disclosure Statement, the Plan, the Plan Supplement, and any attachments, exhibits, supplements, and annexes hereto or thereto (collectively, the "Plan Documents") are the *only* documents to be used in connection with the solicitation of votes on the Plan. The Plan Documents may not be relied upon for any purpose other than to determine whether and how to vote on the Plan. Neither the Bankruptcy Court nor Debtors have authorized any person to give any information or to make any representation in connection with the Plan or the solicitation of votes on the Plan, except as contained in the Plan Documents. Any information or representation obtained from any other source may be incomplete, inaccurate, or false, and may not be relied upon in evaluating or determining whether and how to vote on the Plan.

**IMPORTANT NOTICES**

**VOTING. THE DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN IS 5:00 P.M. (PREVAILING EASTERN TIME), ON ~~[____________________],~~ DECEMBER 10, 2026 (THE "VOTING DEADLINE"), UNLESS EXTENDED BY DEBTORS, IN THEIR DISCRETION, OR BY ORDER OF THE BANKRUPTCY COURT. HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN MUST SUBMIT THEIR BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN AND ON THE BALLOT SO THAT DEBTORS ACTUALLY RECEIVE THE BALLOT BEFORE THE VOTING DEADLINE.**

**UNTIMELY BALLOTS AND BALLOTS SUBMITTED BY UNAPPROVED MEANS SHALL NOT BE COUNTED. ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN MAY BE ADDRESSED TO EPIQ AT BALLOTING@EPIQGLOBAL.COM AND REFERENCE "RAD DIVERSIFIED REIT" IN THE SUBJECT LINE.**

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE XIV BELOW, THE PLAN TRANSMITTED HEREWITH, AND THE PLAN SUPPLEMENT BEFORE SUBMITTING BALLOTS IN RESPONSE TO SOLICITATION OF THE PLAN.**

**RECOMMENDATION BY THE DEBTORS.**

**VOTE TO ACCEPT THE PLAN.**

**DEBTORS BELIEVE THAT THE PLAN IS FAIR AND EQUITABLE AND SERVES THE BEST INTERESTS OF CREDITORS AND OTHER PARTIES IN INTEREST BY MAXIMIZING THE VALUE OF THE ESTATES AND THEIR ASSETS FOR THE BENEFIT OF PARTIES IN INTEREST.**

**DEBTORS, THEREFORE, STRONGLY RECOMMEND THAT HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN. TO VOTE ON THE PLAN, HOLDERS OF CLAIMS MUST SUBMIT A BALLOT IN ACCORDANCE WITH THE VOTING PROCEDURES SUCH THAT THE BALLOT IS ACTUALLY RECEIVED BY DEBTORS NO LATER THAN 5:00 P.M. (PREVAILING EASTERN TIME) ON [______________________],DECEMBER 10, 2026.**

**[RECOMMENDATION BY THE COMMITTEE.**

**VOTE TO ACCEPT THE PLAN.]**

**[ENCLOSED HEREWITH IS A LETTER FROM THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS SUPPORTING THE PLAN AND ENCOURAGING ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.].**

## QUESTIONS AND ADDITIONAL INFORMATION

If you would like to obtain copies of this Disclosure Statement, the Plan, the Plan Supplement, or any of the documents attached hereto or referenced herein, or have questions about the solicitation and voting process or Debtors' Chapter 11 Cases generally, please contact the Debtors' undersigned counsel, Pack Law, at joe@packlaw.com and jessey@packlaw.com. You may contact Epiq at balloting@epiqglobal.com if you have questions regarding your Ballot, the Voting Instructions, or the procedures for voting.

Please be aware that Debtors and their professionals are unable to advise any particular creditor or other party in interest regarding the applicability of the Plan to any particular Claim or Equity Interest or the implications thereof to the holder of any particular Claim or Equity Interest. If any creditor or other party in interest has questions regarding the effect or implications of the Plan, such party is encouraged to consult with its counsel.

**Table of Contents**


I. INTRODUCTION ..... 1
II. DEFINED TERMS AND RULES OF INTERPRETATION ..... 3
A. Defined Terms ..... 3
B. Rules of Interpretation ..... 3
C. Computation of Time ..... 4
D. Governing Law ..... 4
E. Reference to Monetary Figures ..... 5
F. Controlling Document ..... 5
III. BACKGROUND ..... 5
A. Nature and History of Debtors' Businesses. ..... 5
B. Debtors' Prepetition Indebtedness. ..... 7
C. Events Precipitating Bankruptcy ..... 8
D. The Chapter 11 Cases ..... 9
1. Appointment of the Creditors' Committee. ..... 9
2. Claims Process and Bar Dates. ..... 9
3. Appointment of the Examiner and the Examiner's Report. ..... 10
4. SEC Settlement. ..... 11
5. Motions for Relief from Stay and Negotiation with Lender Parties. ..... 12
6. Sales of Real Property Owned by Debtors. ..... 12
IV. CONFIRMATION AND VOTING ..... 13
A. Plan Confirmation Hearing ..... 13
B. Requirements for Plan Confirmation. ..... 13
C. Best Interests of the Creditors Test ..... 14
D. Plan Feasibility ..... 14
E. Classification of Claims and Interests ..... 15
F. Impaired Claims or Interests ..... 15
G. Eligibility to Vote on the Plan ..... 16
H. Voting Procedure and Deadlines ..... 16
I. Acceptance of the Plan ..... 17
J. Elimination of Vacant Classes ..... 17
V. THE PLAN; TREATMENT OF CLAIMS AND EQUITY INTERESTS ..... 18
A. Treatment of Unclassified Claims ..... 18
1. Administrative Expense Claims ..... 18
2. Professional Fee Claims ..... 18
3. Priority Tax Claims ..... 19
4. United States Trustee Statutory Fees ..... 20
B. Classification of Claims and Interests; Estimated Recoveries ..... 20
C. Treatment of Claims and Interests ..... 21
Class 1 - First Mortgage Secured Claims ..... 21
Class 2 – Judgment Lien Claims ..... 22
Class 3 - Municipal Lien Claims ..... 24
Class 4 - Other Secured Claims ..... 25
Class 5 - Priority Non-Tax Claims ..... 25
Class 6 - General Unsecured Claims ..... 26
Class 7 - Subordinated Section 510(b) Claims ..... 26

~~Class 8 - Intercompany Claims ..... 27~~
~~Class 9 - Government Agency and Regulatory Claims ..... 27~~
~~Class 10 – Equity Interests ..... 28~~
~~VI. PROVISIONS GOVERNING THE LIQUIDATING TRUST AND TRUSTEE ..... 28~~
~~A. Establishment of Liquidating Trust. ..... 28~~
~~B. Liquidating Trust Assets. ..... 29~~
~~C. Contributed Claims and Voluntary Contribution Election. ..... 29~~
~~1. Explanation of Contributed Claims and Opportunity to Contribute them to the Liquidating Trustee. ..... 29~~
~~2. Election to Contribute Claims. ..... 30~~
~~3. Contribution of Contributed Claims. ..... 30~~
~~4. Considerations for Potential Contributing Claimants. ..... 30~~
~~D. The Liquidating Trustee. ..... 31~~
~~1. Liquidating Trustee as Representative of the Debtors' Estates. ..... 31~~
~~2. Responsibilities and Authority of the Liquidating Trustee. ..... 31~~
~~3. Powers of the Liquidating Trustee. ..... 32~~
~~4. Compensation of Liquidating Trustee. ..... 32~~
~~5. Retention and Payment of Professionals. ..... 33~~
~~6. Initial Liquidating Trust Professionals. ..... 33~~
~~7. Limitation on Liability and Indemnification of the Liquidating Trustee. ..... 33~~
~~VII. OTHER MEANS FOR IMPLEMENTATION OF THE PLAN ..... 33~~
~~A. Substantive Consolidation. ..... 33~~
~~B. Corporate Action. ..... 34~~
~~C. Section 1146(a) Exemption. ..... 34~~
~~VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..... 35~~
~~A. Rejection of Executory Contracts and Unexpired Leases. ..... 35~~
~~B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ..... 36~~
~~IX. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ..... 36~~
~~A. Distribution Record Date ..... 36~~
~~B. Reserve of Cash Distributions ..... 36~~
~~C. Distribution After Allowance ..... 36~~
~~X. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ..... 36~~
~~A. Allowance of Claims. ..... 36~~
~~B. No Distributions Pending Allowance ..... 37~~
~~C. Claims Administration ..... 37~~
~~D. Estimation of Claims. ..... 37~~
~~E. Time to File Objections to Claims ..... 37~~
~~F. Disallowance of Claims ..... 38~~
~~G. Distributions After Allowance ..... 38~~
~~XI. RELEASES, INJUNCTION AND RELATED PROVISIONS ..... 38~~
~~A. Discharge of Debtors ..... 38~~
~~B. Releases by Debtors ..... 38~~
~~C. Exculpation. ..... 39~~
~~D. Preservation of Causes of Action. ..... 40~~
~~1. Vesting of Causes of Action ..... 40~~

2. Preservation of All Causes of Action Not Expressly Settled or Released .................... 40
E. Injunction. ........................................................................................................................ 41
F. Exclusions from Releases ............................................................................................... 42
XII. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ....................... 42
A. Conditions Precedent to the Effective Date of the Plan.................................................... 42
B. Substantial Consummation ............................................................................................... 43
C. Effect of Failure of Conditions .......................................................................................... 43
XIII. RETENTION OF JURISDICTION .................................................................................. 43
XIV. RISKS AND OTHER CONSIDERATIONS.................................................................... 45
A. Bankruptcy Considerations. .............................................................................................. 45
B. Risks Relating to Contributed Claims. .............................................................................. 46
C. No Duty to Update Disclosures. ........................................................................................ 46
D. Alternatives to Confirmation and Consummation of the Plan. ......................................... 46
1. Alternate Plan. ................................................................................................................... 46
2. Chapter 7 Liquidation ........................................................................................................ 46
3. Certain Federal Tax Consequences .................................................................................... 47
4. Consequences to U.S. Holders of Allowed Claims ........................................................... 48
5. U.S. Federal Income Tax Consequences to Non-U.S. Holders of Allowed Claims..... 50
6. Tax Treatment of the Liquidating Trust and U.S. Holders of Beneficial Interests Therein 51
7. FATCA ............................................................................................................................... 53
8. Backup Withholding and Information Reporting .............................................................. 54
XV. RECOMMENDATIONS AND CONCLUSION .............................................................. 54
I. INTRODUCTION .............................................................................................................. 1
II. DEFINED TERMS AND RULES OF INTERPRETATION ............................................. 3
A. Defined Terms ................................................................................................................... 3
B. Rules of Interpretation ....................................................................................................... 3
C. Computation of Time ......................................................................................................... 4
D. Governing Law .................................................................................................................. 4
E. Reference to Monetary Figures .......................................................................................... 5
F. Controlling Document ........................................................................................................ 5
III. BACKGROUND ................................................................................................................ 5
A. Nature and History of Debtors' Businesses. ...................................................................... 5
B. Debtors' Prepetition Indebtedness. .................................................................................... 6
C. Events Precipitating Bankruptcy ........................................................................................ 8
D. The Chapter 11 Cases ........................................................................................................ 9
1. Appointment of the Creditors' Committee. ......................................................................... 9
2. Claims Process and Bar Dates. ............................................................................................ 9
3. Appointment of the Examiner and the Examiner's Report. ............................................... 10
4. SEC Settlement. ................................................................................................................. 11
5. Motions for Relief from Stay and Negotiation with Lender Parties. ................................. 12
6. Sales of Real Property Owned by Debtors. ........................................................................ 12
IV. CONFIRMATION AND VOTING ................................................................................. 13
A. Plan Confirmation Hearing .............................................................................................. 13
B. Requirements for Plan Confirmation. ............................................................................... 13
C. Best Interests of the Creditors Test .................................................................................. 14

D. Plan Feasibility ..... 14
E. Classification of Claims and Interests ..... 15
F. Impaired Claims or Interests ..... 15
G. Eligibility to Vote on the Plan ..... 16
H. Voting Procedure and Deadlines ..... 16
I. Acceptance of the Plan ..... 17
J. Elimination of Vacant Classes ..... 17
V. THE PLAN; TREATMENT OF CLAIMS AND EQUITY INTERESTS ..... 18
A. Treatment of Unclassified Claims ..... 18
1. Administrative Expense Claims ..... 18
2. Professional Fee Claims ..... 18
3. Priority Tax Claims ..... 19
4. United States Trustee Statutory Fees ..... 20
B. Classification of Claims and Interests; Estimated Recoveries ..... 20
C. Treatment of Claims and Interests ..... 21
Class 1 - First Mortgage Secured Claims ..... 21
Class 2 – Judgment Lien Claims ..... 22
Class 3 - Municipal Lien Claims ..... 24
Class 4 - Other Secured Claims ..... 25
Class 5 - Priority Non-Tax Claims ..... 25
Class 6 - General Unsecured Claims ..... 26
Class 7 - Subordinated Section 510(b) Claims ..... 26
Class 8 - Intercompany Claims ..... 27
Class 9 - Government Agency and Regulatory Claims ..... 27
Class 10 – Equity Interests ..... 28
VI. PROVISIONS GOVERNING THE LIQUIDATING TRUST AND TRUSTEE ..... 28
A. Establishment of Liquidating Trust. ..... 28
B. Liquidating Trust Assets. ..... 29
C. Contributed Claims and Voluntary Contribution Election. ..... 29
1. Explanation of Contributed Claims and Opportunity to Contribute them to the Liquidating Trustee. ..... 29
2. Election to Contribute Claims. ..... 30
3. Contribution of Contributed Claims. ..... 30
4. Considerations for Potential Contributing Claimants. ..... 30
D. The Liquidating Trustee. ..... 31
1. Liquidating Trustee as Representative of the Debtors' Estates. ..... 31
2. Responsibilities and Authority of the Liquidating Trustee. ..... 31
3. Powers of the Liquidating Trustee. ..... 32
4. Compensation of Liquidating Trustee. ..... 32
5. Retention and Payment of Professionals. ..... 33
6. Initial Liquidating Trust Professionals. ..... 33
7. Limitation on Liability and Indemnification of the Liquidating Trustee. ..... 33
VII. OTHER MEANS FOR IMPLEMENTATION OF THE PLAN ..... 33
A. Substantive Consolidation. ..... 33
B. Corporate Action. ..... 34
C. Section 1146(a) Exemption. ..... 34

VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ......... 35
A. Rejection of Executory Contracts and Unexpired Leases. ........ 35
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ........ 36
IX. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ........ 36
A. Distribution Record Date ........ 36
B. Reserve of Cash Distributions ........ 36
C. Distribution After Allowance ........ 36
X. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ........ 36
A. Allowance of Claims. ........ 36
B. No Distributions Pending Allowance ........ 37
C. Claims Administration ........ 37
D. Estimation of Claims. ........ 37
E. Time to File Objections to Claims ........ 37
F. Disallowance of Claims ........ 38
G. Distributions After Allowance ........ 38
XI. RELEASES, INJUNCTION AND RELATED PROVISIONS ........ 38
A. Discharge of Debtors ........ 38
B. RESERVED ........ 38
C. Exculpation ........ 38
D. Preservation of Causes of Action ........ 39
1. Vesting of Causes of Action ........ 39
2. Preservation of All Causes of Action Not Expressly Settled or Released ........ 39
E. Injunction. ........ 40
F. Exclusions from Releases ........ 41
XII. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........ 41
A. Conditions Precedent to the Effective Date of the Plan ........ 41
B. Substantial Consummation ........ 42
C. Effect of Failure of Conditions ........ 42
XIII. RETENTION OF JURISDICTION ........ 42
XIV. RISKS AND OTHER CONSIDERATIONS ........ 44
A. Bankruptcy Considerations. ........ 44
B. Risks Relating to Contributed Claims. ........ 44
C. No Duty to Update Disclosures. ........ 45
D. Alternatives to Confirmation and Consummation of the Plan. ........ 45
1. Alternate Plan. ........ 45
2. Chapter 7 Liquidation ........ 45
3. Certain Federal Tax Consequences ........ 45
4. Consequences to U.S. Holders of Allowed Claims ........ 47
5. U.S. Federal Income Tax Consequences to Non-U.S. Holders of Allowed Claims ..... 49
6. Tax Treatment of the Liquidating Trust and U.S. Holders of Beneficial Interests Therein 50
7. FATCA ........ 52
8. Backup Withholding and Information Reporting ........ 53
XV. RECOMMENDATIONS AND CONCLUSION ........ 53

# I. INTRODUCTION

RAD Diversified REIT, Inc. and its above-captioned debtor affiliates ("Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court"), submit this disclosure statement (the "Disclosure Statement") with respect to the *Debtors' Joint ~~First~~Second Amended Plan of Liquidation* dated as of ~~[•],~~October 5, 2026 (the "Plan") and the solicitation of votes thereon in accordance with section 1125 of title 11 of the United States Code,
11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code").

Debtors propose the Plan to administer all assets of Debtors and their bankruptcy estates (the "Estates"). The primary objective of the Plan is to maximize the value of such assets for the benefit of creditors.

The Plan contemplates the creation of a Liquidating Trust on the Effective Date for the purposes of effectuating the liquidation of the Liquidating Trust Assets and distributing the proceeds thereof to the Beneficiaries of the Liquidating Trust. The Liquidating Trust shall be managed by the Liquidating Trustee in accordance with the Liquidating Trust Agreement. The principal responsibilities of the Liquidating Trust and Liquidating Trustee shall be: (i) administering, monetizing, and liquidating the Liquidating Trust Assets, including the Causes of Action, (ii) resolving all Disputed Claims, and (iii) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The Liquidating Trust Assets may also include certain direct Causes of Action voluntarily contributed to the Liquidating Trust by eligible Holders in accordance with the Plan and the election procedures described below (as defined in the Plan as the "Contributed Claims").

In accordance with sections 1122 and 1123(a) of the Bankruptcy Code, the Plan classifies Claims against and Equity Interests in Debtors into the following Classes:

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|---|---|---|---|---|
| 1 | First Mortgage Secured Claims | Impaired | Entitled to Vote | Varies |
| 2 | Judgment Lien Claims | Impaired | Entitled to Vote | Varies |
| 3 | Municipal Lien Claims | Impaired | Entitled to Vote | 100% or Retained Liens |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% or Retained Liens |
| 5 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | 100% |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | TBD |
| 7 | Subordinated Section 510(b) Claims | Impaired | Entitled to Vote | TBD |
| 8 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 9 | Government Agency and Regulatory Claims | Impaired | Entitled to Vote | TBD |
| 10 | Equity Interests | Impaired | Deemed to Reject | 0% |

Claims entitled to specific treatment as a matter of law are not subject to classification under the Bankruptcy Code. The treatment of classified and unclassified Claims is discussed in Article V of this Disclosure Statement.

**ARTICLE IX OF THE PLAN CONTAINS ~~RELEASES,~~ EXCULPATION PROVISIONS~~,~~ AND INJUNCTIONS THAT MAY AFFECT THE RIGHTS OF CREDITORS AND OTHER PARTIES IN INTEREST. ALL PARTIES IN INTEREST ARE ADVISED TO REVIEW THESE PROVISIONS WITH CARE AND, IF SO DESIRED, DISCUSS THE IMPLICATIONS OF THESE PROVISIONS WITH THEIR COUNSEL. IF THE PLAN IS CONFIRMED, THE ~~RELEASES,~~ EXCULPATION PROVISIONS~~,~~ AND INJUNCTIONS DESCRIBED IN ARTICLE IX SHALL BE BINDING AND EFFECTIVE ON THE EFFECTIVE DATE.**

PLEASE TAKE NOTICE of the following dates and deadlines, which govern the voting and confirmation of the Plan:

| Event | Date/Deadline | Description |
|---|---|---|
| Voting Record Date | ~~[•],~~ September 29, 2026 | The date for determining (i) which holders of Claims in the Classes entitled to vote are entitled to vote to accept or reject the Plan, and (ii) whether Claims have been properly assigned or transferred to an assignee under Bankruptcy Rule 3001(e) such that the assignee or transferee, as applicable, can vote to accept or reject the Plan as the holder of a Claim. |
| Entry of Disclosure Statement Order | ~~[•],~~ October 5, 2026 | Date requested by Debtors for the Court, should the Court approve the Disclosure Statement, to enter an order granting such relief (the "Disclosure Statement Order"). |
| Confirmation Hearing Notice Deadline | No later than four Business Days after entry of the Disclosure Statement Order. | Deadline for Debtors to provide notice to all parties listed on Debtors' noticing matrix of the hearing to consider confirmation of the Plan and other related relief (the "Confirmation Hearing Notice Deadline"). |
| Solicitation Deadline | ~~[•], 2026~~ No later than four Business Days after entry of the Disclosure Statement Order. | Deadline for Debtors to distribute, as applicable, (i) Solicitation Package to the holders of Claims entitled to vote to accept or reject the Plan, (ii) Non-Voting Status Notices, and (iii) the Disclosure Statement Order (the "Solicitation Deadline"). |
| Plan Supplement Submission Deadline | ~~[•],~~ December 10, 2026 | Deadline for Debtors to file the Plan Supplement (the "Plan Supplement Deadline"). |
| Rule 3018(a) Motion Deadline | ~~[•],~~ December 10, 2026 | Deadline ("Rule 3018(a) Motion Deadline") for a holder of a disputed, unliquidated or contingent Claim, or Claim of unknown value, to file a motion pursuant to Bankruptcy Rule 3018(a) seeking temporary allowance of such Claim for voting purposes (each a "Rule 3018(a) Motion"). |
| Plan Objection Deadline | ~~[•],~~ December 10, 2026 | Deadline for parties in interest to file objections to (i) final approval of the Disclosure Statement and/or (ii) confirmation of the Plan (the "Plan Objection Deadline"). |
| Voting Deadline | ~~[•],~~ December 10, 2026 | Deadline by which holders of Claims in Classes entitled to vote must submit any ballots voting to accept or reject the Plan pursuant to and in accordance |

| | | |
|---|---|---|
| | | with the Solicitation and Voting Procedures (the "Voting Deadline"). |
| Deadline to File Documents in Support of Plan Confirmation | [•],December 15, 2026 | Deadline for Debtors and other parties in interest to file any papers or other documents in support of final approval of the Disclosure Statement and confirmation of the Plan. |
| Deadline to Respond to Plan Objection(s) | [•],December 15, 2026 | Deadline for Debtors and other parties in interest to file a reply or other response (each, a "Reply" and collectively, the "Replies") to any objections to final approval of the Disclosure Statement and/or confirmation of the Plan (the "Reply Deadline"). |
| Confirmation Hearing | [•],December 17, 2026 at 3:30 p.m. (ET) | The proposed date and time for the hearing at which the Court will consider, among other things, the final approval of the Disclosure Statement and the confirmation of the Plan. Additional information related to the time, date and location of the hearing, and how parties in interest may appear for such hearing, shall be set forth in the Confirmation Hearing Notice. |

## II. DEFINED TERMS AND RULES OF INTERPRETATION

### A. Defined Terms

Terms not defined herein shall have the definitions ascribed to such terms in Article II.A of the Plan.

### B. Rules of Interpretation

For purposes of the Plan and this Disclosure Statement: (1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan; (4) any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or Disclosure Statement, as applicable; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement or this Disclosure Statement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan or this Disclosure Statement, as applicable, in its entirety rather than to a particular portion of the Plan or this Disclosure Statement; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced

in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws; (9) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan or Disclosure Statement; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (14) references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like, as applicable; (15) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (17) with respect to Liquidating Trust Assets, all references to "Debtors" or the "Estates" shall include the "Liquidating Trustee" or "Liquidating Trust," respectively, if such reference pertains to the period following the Effective Date; (18) with respect to Assets of the Estates and Liquidating Trust Assets, all references to the "Liquidating Trustee" or "Liquidating Trust" shall include "Debtors" or the "Estates," respectively, if such reference pertains to the period on or before the Effective Date; and (19) any capitalized term used but not otherwise defined herein shall have the meaning ascribed to that term as used in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

### C. Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. If any deadline established by the Plan shall occur on a day that is not a Business Day, such deadline shall be extended automatically, and without further action or Order, to the next Business Day. Any action to be taken or transaction to be completed on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date, and the Debtors shall retain all necessary authority to take such action or complete such transaction after the Effective Date; *provided* that Debtors, in their discretion, may assign such authority to the Liquidating Trustee.

### D. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents,

instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate or limited liability company governance matters relating to any Debtor shall be governed by the laws of the state of incorporation or formation of such Debtor.

### E. Reference to Monetary Figures

All references in the Plan or this Disclosure Statement to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

### F. Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement with respect to the Plan, the terms of the relevant document in the Plan Supplement with respect to the Plan shall control unless otherwise specified in such Plan Supplement document. In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control. The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan.

## III. BACKGROUND[1]

### A. Nature and History of Debtors' Businesses.

The Debtors are affiliated real-estate investment entities with their principal place of business in Port Richey, Florida. Over a period of years, the Debtors were formed to acquire, manage, renovate or reposition, lease, and sell real property, as well as to engage in educational and consulting services. By the Petition Date, the Debtors' portfolio included more than 300 residential rental properties and vacant residential lots. The portfolio was concentrated in Pennsylvania, Texas, and Florida, with additional properties in New Jersey and other states.

The Debtors were organized at different times and for various, but related, investment purposes. DHI Holdings, LP ("DHI Holdings") was organized as a Delaware limited partnership in 2015 to invest in tax liens and real property and to make "seller-financing" and "hard-money" loans. DDH Fund, LLC ("DDH Fund") and DHI Fund, LLC ("DHI Fund") were initially organized as Delaware limited partnerships in 2016 for substantially similar purposes and were later

[1] Statements made in this Background section are for informational purposes and, in certain cases, draw heavily from the Examiner Report and the Examiner's stated findings and preliminary conclusions. Nothing in this Background section, or elsewhere in this Disclosure Statement, is or should be deemed to be any admission, statement against interest, or other statement to be relied upon or used for any purpose other than as background information in connection with the solicitation of the Plan. The Debtors explicitly disclaim the Examiner Report and do not hereby adopt any statement therein as true or as a statement of the Debtors. For the avoidance of doubt, the Debtors clarify that the Examiner's statements are her own, and the Debtors' inclusion of certain facts presented in the Examiner Report is qualified entirely by the above reservations and limitations.

converted to limited liability companies. RAD Diversified REIT, Inc. ("RAD REIT") was incorporated in Maryland in 2017 to own real property and operate as a real estate investment trust under the Internal Revenue Code. RAD Diversified OZ Fund, LP ("RAD OZ," and together with DHI Holdings, DDH Fund, DHI Fund, and RAD REIT, the "Original Debtors") was organized as a Delaware limited partnership in 2021 to acquire and manage property located in "Qualified Opportunity Zones." The Seminar Solution, LLC ("TSS") was formed as a Nevada limited liability company in 2010 and, according to the Examiner Report, was owned, directly or indirectly, by Brandon "Dutch" Mendenhall and Amy Vaughn. TSS operated educational and consulting programs, including the Inner Circle membership program, and was also referred to as Tax Auction Investors.

RAD REIT became the largest of the Debtors' investment vehicles. Its offering materials generally described a strategy of acquiring single-family residential, multifamily residential, and mixed-use residential-commercial properties. RAD REIT raised capital through offerings conducted under Regulation A and Regulation D of the Securities Act. According to the Examiner Report, offering materials dated in March 2023 reported that RAD REIT had received approximately $73.8 million in gross offering proceeds as of March 15, 2023. That historical gross-proceeds figure reported in the Examiner Report does not represent the amount of cash or net assets held by RAD REIT on the Petition Date.

The Debtors raised capital from individual investors through several vehicles, including secured and unsecured promissory notes, hard-money loan agreements, joint-venture agreements, partnership or membership interests, and other equity investments. Individual investments varied widely from approximately $1,000 to more than $1 million in the aggregate. Most of those investors were individuals, closely held businesses, or self-directed retirement accounts. Certain investors held more than one type of investment, and certain investments were later reflected as transferred or "rolled over" into a different Debtor, affiliated entity, property, or investment product.[2]

The Debtors also operated within a broader group of affiliated entities that engaged in real estate, investment, management, educational, and other activities. Not all of those affiliates commenced bankruptcy cases on the Petition Date. Before the Petition Date, Brandon "Dutch" Mendenhall and Amy Vaughn founded the Debtors and exercised managerial authority over them. In February 2026, the Debtors retained GGG Partners, LLC and designated Katie S. Goodman as Chief Restructuring Officer. The Debtors also appointed Michael T. Roye as an Independent Director and delegated managerial authority concerning the restructuring to independent management.

---

[2] The legal and economic treatment of an investor's interest does not necessarily turn solely on the title of the investment agreement or the manner in which the investment appeared in the Debtors' accounting records. Among other things, the ultimate treatment of an investor-related Claim may depend on the governing agreement, the identity of the contracting entity, the amount actually invested and repaid, whether any asserted lien was properly created and perfected, and the orders entered in the Chapter 11 Cases. Nothing in this Disclosure Statement determines the allowance, amount, priority, secured status, classification, or treatment of any particular investor's Claim or Equity Interest. Nothing herein is or should be deemed or treated as an admission of the Debtors, and these statements are for informational purposes only.

**B. Debtors' Prepetition Indebtedness.**

The Debtors' prepetition capital structure was decentralized and largely property-specific. Most of the Debtors' real properties were subject to one or more mortgages, deeds of trust, assignments of leases and rents, security agreements, or similar instruments securing loans used to acquire, renovate, refinance, or carry the properties. The Debtors dealt with numerous lenders, trustees, and loan servicers, and many of the mortgage loans had been assigned one or more times before the Petition Date. As a result, the Debtors and their advisors undertook a property-by-property review of title records, loan documents, assignments, payoff information, and proofs of claim to identify the current holder and servicer of each loan and the amount and priority of the liens asserted against each property. TSS operated a related educational, consulting, marketing, and similar business and maintained substantial financial relationships with the Original Debtors and other affiliated entities. Among other things, the Examiner reported substantial historical transfers between TSS and the Original Debtors.

In addition to mortgage debt, individual properties were or could be subject to real-estate tax liens, municipal liens, code-enforcement or utility claims, judgment liens, homeowners' association claims, and other secured or priority obligations. The extent to which any particular Claim is secured depends on, among other things, the validity and perfection of the asserted lien, the priority of competing liens, the value of the applicable property, and any rights of setoff or recoupment. Accordingly, a Claim asserted as secured may be secured only in part or may be treated as unsecured if the asserted lien is invalid, avoidable, unperfected, or unsupported by sufficient value.

A substantial portion of the Debtors' alleged obligations arose from capital provided by individual investors. Some investors received promissory notes denominated as secured or unsecured obligations. Others entered into hard-money loan agreements or joint-venture agreements, while still others purchased shares, partnership interests, or membership interests. The validity, amount, priority, and secured or unsecured status of each such Claim remain subject to the Claims reconciliation process, applicable nonbankruptcy law, the Plan, and further order of the Bankruptcy Court. For historical context only, and without characterizing the amount or validity of any Claim, the Examiner reported that the Debtors' internal balance sheets as of December 31, 2025, reflected approximately $22.1 million of joint-venture partnership equity, approximately $3.0 million of hard-money loans, and approximately $29.8 million of promissory notes.[3]

The Debtors also incurred ordinary-course obligations associated with owning and operating a large real-estate portfolio, including property taxes, insurance, utilities, repairs,

[3] These amounts are accounting figures reported in the Examiner's review of certain records, as set forth in the Examiner Report. They do not constitute determinations that the amounts are accurate or that any corresponding Claim is Allowed, secured, entitled to priority, properly asserted against a particular Debtor, or properly characterized as debt rather than equity. The Debtors make no statement or admission with respect to the accuracy or inaccuracy of these amounts, and the Debtors' professionals have not independently audited or reviewed any such statements.

property-management charges, professional fees, litigation expenses, and amounts owed to vendors and service providers. The Debtors' Schedules and the Claims Register, available at the website of the Claims Agent, provide additional information concerning scheduled and asserted Claims. The amounts shown in the Schedules may differ from the amounts asserted in Proofs of Claim, and neither the filing of a Proof of Claim nor the scheduling of a Claim constitutes a final determination that the Claim is Allowed.

Because of the number of properties, investors, lenders, and asserted liens, no single aggregate prepetition-debt figure adequately describes the Debtors' liabilities. The amount ultimately payable under the Plan will depend on the reconciliation and allowance of Claims, the resolution of lien and priority disputes, the value and proceeds of the Debtors' assets, and the treatment provided under the Plan. The Plan separately classifies, among other Claims, first-mortgage secured Claims, judgment-lien Claims, municipal-lien Claims, other secured Claims, priority Claims, general unsecured Claims, subordinated Claims, and intercompany Claims.

### C. Events Precipitating Bankruptcy.

The Debtors' business model required continuing liquidity to service mortgage debt, pay taxes and insurance, maintain and renovate properties, support property-management operations, and fund other carrying costs while properties were marketed, leased, or sold. That liquidity historically came from rental income, property sales, secured borrowing, and new investor capital. In the years preceding the Petition Date, the Debtors' ability to obtain additional financing and investor capital materially declined.

In February 2024, the Securities and Exchange Commission declared an offering statement abandoned, which prevented RAD REIT from continuing to raise funds under that offering statement. In 2025, the Florida Attorney General issued subpoenas to RAD REIT and related entities after receiving investor complaints, and the inquiry and related public statements received substantial media attention. The Debtors and their prepetition management disputed material public allegations concerning the Debtors' operations. The Debtors were also parties to private investor litigation and other disputes. Whatever the ultimate merits of those matters, which have not been adjudicated in these Chapter 11 Cases and which are preserved under the Plan, the resulting publicity and uncertainty impaired investor confidence and further limited the Debtors' access to capital and financing.

In the weeks before the Petition Date, the Debtors retained restructuring professionals to assess their liquidity, property portfolio, books and records, and potential restructuring alternatives. GGG was formally engaged on February 20, 2026, and Katie S. Goodman was designated as the Debtors' CRO. The Debtors also appointed an Independent Director and delegated restructuring-related managerial authority to independent management. Among other things, independent management began evaluating the condition, liens, occupancy, and potential disposition of the Debtors' properties and the feasibility of using property sales and a post-confirmation trust to preserve and realize value.

The Debtors' independent management concluded that chapter 11 protection was necessary to stop further piecemeal loss of property, provide a centralized forum for addressing mortgage and investor Claims, stabilize the collection and use of rents, investigate and preserve potential

claims of the Estates, and conduct an orderly sale and liquidation process. The descriptions above concern the circumstances that led to the filing and are not intended to determine the merits of any regulatory allegation, litigation claim, defense, or potential Cause of Action. All such rights are preserved except as otherwise expressly provided in the Plan or a Final Order. Nothing herein is or shall be treated as an admission of the Debtors, and all statements herein are for background informational purposes only in connection with the solicitation of the Plan and should not be relied upon or considered for any other purpose.

On March 1, 2026, each of the Original Debtors filed a voluntary chapter 11 bankruptcy petition. On September 4, 2026, TSS filed a voluntary chapter 11 bankruptcy petition.

**D. The Chapter 11 Cases**

On the Petition Date, RAD REIT commenced Case No. 8:26-bk-01636-CPM; RAD OZ commenced Case No. 8:26-bk-01637-CPM; DHI Fund commenced Case No. 8:26-bk-01638-CPM; DHI Holdings commenced Case No. 8:26-bk-01639-CPM; and DDH Fund commenced Case No. 8:26-bk-01640-CPM. The Debtors also filed a motion for joint administration and, on March 2, 2026, the Bankruptcy Court entered an order jointly administering the Chapter 11 Cases under the RAD REIT case number [Dkt. Nos. 2 and 7]. On September 4, 2026, TSS commenced Case No. 8:26-bk-08030-CPM. On September 8, 2026, the Bankruptcy Court entered an order directing that TSS's Chapter 11 Case be jointly administered with the Original Debtors' Chapter 11 Cases under the RAD REIT case number [Dkt. No. 1086]. The Debtors have remained in possession of their assets and have managed their affairs as debtors in possession.

**1. Appointment of the Creditors' Committee.**

On March 27, 2026, the United States Trustee filed the Notice of Formation of Unsecured Creditors Committee [Dkt. No. 140]. As initially appointed, the Official Committee of Unsecured Creditors consisted of: (i) Lora Arneberg; (ii) Eric Schrier/Jacar Investments LLC; (iii) Jeffrey E. Thomas; (iv) Jeff Dorr; (v) Valet Living, LLC; (vi) Premiere Networks, Inc.; (vii) Jingjun "Jimmy" Wang; (viii) Steevenson Jolicoeur; and (ix) Steven L. Hemphill.

The Committee selected Greenberg Traurig, LLP as its counsel. The Committee filed its application to employ Greenberg Traurig on May 1, 2026 [Dkt. No. 400], and the Bankruptcy Court approved the retention on June 2, 2026 [Dkt. No. 551]. Since its formation, the Committee and its professionals have participated in the Chapter 11 Cases, including matters concerning the Examiner, use of cash collateral, property sales, the Claims process, and the formulation of the Plan.

**2. Claims Process and Bar Dates.**

a. Schedules and Statements. The Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs in their respective Chapter 11 Cases. RAD OZ filed its Schedules and Statements on April 22, 2026 [Dkt. No. 15 in Case No. 8:26-bk-01637-CPM], and DHI Fund filed its Schedules and Statements on April 22, 2026 [Dkt. No. 14 in Case No. 8:26-bk-01638-CPM]. DHI Holdings filed its Schedules and Statements on April 27, 2026 [Dkt. No. 18 in Case No. 8:26-bk-01639-CPM], and DDH Fund filed its Schedules and

Statements on April 27, 2026 [Dkt. No. 38 in Case No. 8:26-bk-01640-CPM]. RAD REIT filed its Schedules and Statements, other than Schedules D and H, on May 4, 2026 [Dkt. No. 405], and filed Schedules D and H on May 7, 2026 [Dkt. No. 424]. TSS filed its Schedules and Statements together with its petition. The Schedules and Statements remain subject to amendment as permitted by the Bankruptcy Rules and orders of the Bankruptcy Court.

b. Meeting of Creditors. The meeting of creditors under section 341(a) of the Bankruptcy Code for the Original Debtors commenced on April 29, 2026. The meeting was continued to permit further examination and was concluded on May 20, 2026. The meeting of creditors for TSS has been scheduled for [DATE].

c. Bar Dates. The Bankruptcy Court entered an agreed order extending the deadline for non-governmental creditors to file Proofs of Claim against the Original Debtors through and including July 10, 2026 [Dkt. No. 479] (the "General Bar Date"). The General Bar Date has passed. Subject to the terms of the applicable bar-date orders and Bankruptcy Rules, a creditor that was required to file a Proof of Claim by the General Bar Date but failed to do so may be barred from asserting that Claim or receiving a Distribution under the Plan. The deadline for Governmental Units to file Proofs of Claim is August 28, 2026 (the "Governmental Unit Bar Date"). Separate bar dates have been established as to TSS, including (i) November 13, 2026 as the deadline for non-governmental creditors to file Proofs of Claim against TSS, and (ii) March 3, 2027 as the deadline for governmental units to file Proofs of Claim against TSS. The applicability of any bar date to a particular Person or Claim, and the consequences of any late filing, are governed by the applicable orders, the Bankruptcy Code, the Bankruptcy Rules, and any further order of the Bankruptcy Court.

d. Administrative Expense Claims Bar Date. The Administrative Expense Claims Bar Date shall be the date and time established by the Confirmation Order or another order of the Bankruptcy Court. Notice of that deadline, the Persons required to file a request for allowance of an Administrative Expense Claim, any exceptions to the filing requirement, and the consequences of failing to comply will be provided in accordance with the applicable order.

**3. Appointment of the Examiner and the Examiner's Report.**

On March 26, 2026, the United States Trustee filed an unopposed motion to appoint a chapter 11 examiner [Dkt. No. 121]. The Bankruptcy Court granted the motion on April 1, 2026 [Dkt. No. 167]. On April 2, 2026, the United States Trustee filed an application seeking approval of Maria M. Yip as Examiner [Dkt. No. 176], and the Bankruptcy Court approved Ms. Yip's appointment on April 8, 2026 [Dkt. No. 195].

The Examiner's authorized investigation included, among other subjects: (i) cash inflows and outflows involving investors, lenders, the Debtors, and non-Debtor entities; (ii) the appropriate

characterization of certain transactions as debt or equity; (iii) the valuation and characterization of investment "rollovers"; (iv) the use and transfer of the Debtors' assets and cash during the four years preceding the Petition Date; and (v) the origination, receipt, and repayment of investments involving REIT interests, joint ventures, hard-money loans, and related investment programs. The Examiner and her professionals reviewed bank records, accounting records, tax records, SEC filings, investor documents, property records, deposition transcripts, and other materials obtained from the Debtors, governmental agencies, financial institutions, and other sources.

On June 8, 2026, the Examiner filed her Examiner's Report [Dkt. No. 575].[4] The Examiner stated that the Report contained preliminary observations based on the information available at that time and that additional document collection and analysis remained ongoing. The Examiner also stated that outstanding subpoenas and information requests could result in additional information that might supplement or modify matters discussed in the Report.

The Examiner's Report speaks for itself; the Debtors do not adopt the statements in the Examiner's Report in whole or in part, and any and all statements made regarding the Examiner's Report and/or its contents herein are solely for background informational purposes. Its filing did not adjudicate any Claim, defense, property interest, lien, transaction, or Cause of Action. The Debtors do not adopt each or any factual characterization, inference, legal conclusion, or recommendation contained in the Examiner's Report. The Plan preserves the authority of the representative of the applicable Estate(s) to review the Examiner's materials, continue appropriate investigation, pursue or resolve Causes of Action of the Estates, and object to Claims, subject to the Plan and further orders of the Bankruptcy Court.

**4. SEC Settlement.**

On September 15, 2026, RAD Diversified REIT, Inc. filed its *Motion to Approve Settlement with the United States Securities and Exchange Commission Pursuant to Bankruptcy Rule 9019 and for Related Relief* [Dkt. No. 1112] (the "SEC Settlement Motion"), seeking approval of a compromise with the United States Securities and Exchange Commission (the "SEC") in connection with the civil enforcement action styled *Securities and Exchange Commission v. RAD Diversified REIT, Inc., Brandon "Dutch" Mendenhall, Amy Vaughn, and The Seminar Solution, LLC*, Case No. 8:26-cv-2186-KKM-LSG, pending in the United States District Court for the Middle District of Florida. The proposed settlement provides, among other things, for RAD REIT to consent, without admitting the allegations of the SEC's complaint except as to jurisdiction, to entry of a judgment imposing certain permanent injunctive relief and establishing the procedures governing any subsequent request by the SEC for disgorgement. The proposed settlement does not fix any amount of disgorgement or otherwise determine the allowance, classification, priority, or treatment of any Claim asserted by the SEC against any Debtor, all of which remain subject to the applicable claims-allowance process, any further orders of the Bankruptcy Court, and the terms of the Plan. The Debtors believe that the settlement will materially narrow the issues in dispute with the SEC, reduce the expense and uncertainty associated with continued litigation, and permit the Debtors to focus estate resources on the

[4] At the time of the Examiner's appointment, investigation, and filing of the Examiner Report, TSS had not commenced a chapter 11 case and was therefore treated and described in the Examiner Report as a "Non-Debtor Affiliate." TSS's subsequent commencement of its Chapter 11 Case does not alter the historical terminology used in the Examiner Report.

administration of the Chapter 11 Cases. Absent a timely objection, the Debtors expect the SEC Settlement Motion to be granted on or around October 12, 2026.

**5. Motions for Relief from Stay and Negotiation with Lender Parties.**

Because most of the Debtors' properties were separately financed and because mortgage loans had different holders, servicers, collateral values, and documentation, issues involving mortgage lenders have been addressed primarily on a property-by-property basis. Early in the Chapter 11 Cases, the Debtors filed an emergency motion seeking authority to use cash collateral, principally rents generated by mortgaged properties, to pay expenses necessary to protect and administer the portfolio [Dkt. No. 50]. The requested relief included replacement liens and other adequate-protection measures for parties asserting interests in the rents.

The Bankruptcy Court granted interim authority to use cash collateral and conducted a series of continued hearings while the Debtors and affected lenders exchanged information and negotiated the terms on which rents could be used. The interim arrangements generally were intended to permit payment of expenses such as insurance, taxes, utilities, maintenance, and other costs necessary to preserve the affected properties, while reserving the parties' rights concerning the validity, priority, amount, and extent of asserted liens.

Mortgage lenders and servicers also filed numerous motions seeking relief from the automatic stay, *in rem* relief, or adequate protection concerning individual properties or groups of properties. The Debtors filed responses where appropriate, and the parties addressed the motions through contested hearings, agreed orders, withdrawal of motions, continuances, and arrangements connecting stay relief to an orderly sale process. The Bankruptcy Court's rulings have included grants of relief, partial grants, denials, agreed relief, and continuances for further negotiation or disposition activity.

**6. Sales of Real Property Owned by Debtors.**

From the outset of the Chapter 11 Cases, the Debtors, through independent management, anticipated that maximizing value would require the sale of certain properties and the transfer of remaining assets to a post-confirmation trust. The Debtors and their advisors therefore began evaluating each property's estimated value, liens, occupancy, condition, carrying costs, and marketability to determine whether the property should be maintained temporarily, sold through a negotiated transaction, included in an auction process, surrendered pursuant to an agreement with a lender, or otherwise administered.

Beginning in April 2026, the Debtors filed a series of motions under section 363 of the Bankruptcy Code seeking authority to sell properties free and clear of liens, Claims, encumbrances, and interests, subject to approved bidding procedures and other protections. Early sale proceedings included properties in Pennsylvania and 1611 West Sales Yard Road in Emmett, Idaho [Dkt. Nos. 396 and 390]. The Debtors thereafter brought additional properties and property groups to market, including numerous residential properties in Florida, New Jersey, and Pennsylvania, as well as groups of vacant lots and other residential properties. The Bankruptcy Court entered bidding-procedure or sale-related orders in connection with the sale efforts, and additional sale proceedings remained pending as the portfolio review continued.

As of the date hereof, the Debtors have filed notices reporting auction results for certain properties, which are available at the website of the Claims Agent. Under the typical sale structure, valid lien claims and other interests are paid or satisfied from the sale proceeds, or the related liens and interests attach to the proceeds in the manner provided by the applicable sale order. Net proceeds remaining after payment of approved closing costs, taxes, senior liens, and other authorized amounts become property of the applicable Estate and are administered in accordance with the Plan. The sales are intended to avoid unnecessary carrying costs and foreclosure losses, expose the properties to the market, and convert a geographically dispersed real-estate portfolio into funds that can be administered more efficiently for creditors and other stakeholders. Each sale remains subject to the applicable order, satisfaction of closing conditions, and any rights reserved in the approved sale documents.

## IV. CONFIRMATION AND VOTING

### A. Plan Confirmation Hearing

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on approval and confirmation of the Plan. On [•], 2026, the Bankruptcy Court entered an order scheduling the Plan Confirmation Hearing for ~~[•],~~**December 17, 2026 at ~~_:00 _.~~3:30 p.m. (prevailing Eastern Time)**, to consider, among other things, final approval of the Disclosure Statement and confirmation of the Plan under sections 1125 and 1129 of the Bankruptcy Code [Dkt. No. __]. Notice of the Plan Confirmation Hearing will be provided to all known holders of Claims and Equity Interests, and other parties in interest. The Plan Confirmation Hearing may be adjourned from time to time by Debtors without further notice, except for an announcement of the adjourned date made at the Plan Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to confirmation of the Plan and approval of the Disclosure Statement on a final basis must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against Debtors, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon the following parties by no later than ~~[•],~~**December 10, 2026 at ~~_:~~5:00 ~~_.~~p.m. (prevailing Eastern Time)** through the CM/ECF system, with courtesy copies by email to: (i) counsel for Debtors at the contact information on the first page of the Plan; (ii) counsel for the Committee; (iii) the Office of the United States Trustee for Region 21, and (iv) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan. **UNLESS AN OBJECTION TO APPROVAL AND CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO APPROVE THE DISCLOSURE STATEMENT AND CONFIRM THE PLAN.**

### B. Requirements for Plan Confirmation.

The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code. Among the requirements for confirmation is that the Plan be (i) accepted by all impaired Classes of Claims and Equity Interests or, if rejected by an impaired Class, that the Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class and (ii) feasible. The Bankruptcy Court must also find, among other things, that:

- the Plan has classified Claims and Equity Interests in a permissible manner;
- the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and
- the Plan has been proposed in good faith.

## C. Best Interests of the Creditors Test

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of liquidating Debtors' Estates would include the expenses incurred during the Chapter 11 Cases and allowed by the Bankruptcy Court in the chapter 7 cases. The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11 administrative, priority, and unsecured claims. Like a chapter 7 trustee, the Liquidating Trustee will have the power to retain professionals. Unlike professionals retained by a chapter 7 trustee, professionals retained by the Liquidating Trustee do not require Bankruptcy Court approval of their retention or fees. A chapter 7 trustee and newly retained professionals would face a learning curve that could increase costs and delay Distributions compared with the timing of Distributions under the Plan. Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions. Accordingly, a portion of the Cash that will be available for Distribution to holders of Allowed Claims would instead be paid to the chapter 7 trustee. Nevertheless, like a chapter 7 trustee, the Liquidating Trustee also will be paid fees for his or her services.

Accordingly, as demonstrated in the liquidation analysis, which is attached hereto as **Exhibit A**, Debtors believe that in a chapter 7 liquidation, holders of Claims would receive less than they would receive under the Plan. There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that the Bankruptcy Court would accept Debtors' conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

## D. Plan Feasibility

Pursuant to section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the proposed plan, unless such liquidation or reorganization is proposed under the plan. Pursuant to the Plan, Debtors' Assets are being transferred to the Liquidating Trust. These Assets will be liquidated and distributed to holders of Allowed Claims pursuant to the terms of the Plan. Therefore, as this is a liquidating plan, the Bankruptcy Court's confirmation of the Plan will not be followed by liquidation other than the liquidation proposed under the Plan, or by any further financial reorganization; accordingly, Debtors submit that the Plan is feasible.

### E. Classification of Claims and Interests

Section 1122 of the Bankruptcy Code requires that a plan place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Plan creates separate Classes to treat the Claims against and Equity Interests in Debtors. Debtors believe that the Plan's classification places substantially similar Claims or Equity Interests in the same Class and thus meets the requirements of section 1122 of the Bankruptcy Code.

**EXCEPT AS SET FORTH IN THE PLAN OR UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019(A), UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The classification of Claims and Equity Interests and the nature of Distributions to members of each Class are summarized herein. Debtors believe that the consideration, if any, provided under the Plan to holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Equity Interests. The Bankruptcy Court, however, must find that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of holders of Claims or Equity Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

### F. Impaired Claims or Interests

Pursuant to section 1126 of the Bankruptcy Code, only the holders of Claims in Classes "Impaired" by the Plan and receiving a Distribution under the Plan may vote on the Plan. Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the holders of such Claims or Equity Interests treated in such Class. The holders of Claims or Equity Interests not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. The holders of Claims or Equity

Interests in any Class that will not receive any Distribution or retain any property pursuant to the Plan are deemed to reject the Plan and do not have the right to vote.

Under the Plan, Classes 1, 2, 3, 6, 7, 8, 9, and 10 are Impaired and holders of Allowed Claims in Classes 1, 2, 3, 6, 7, and 9 are entitled to vote on the Plan.

### G. Eligibility to Vote on the Plan

Unless otherwise ordered by the Bankruptcy Court, only holders of Allowed Claims in Classes 1, 2, 3, 6, 7, and 9 may vote on the Plan. To vote on the Plan, you must hold an Allowed Claim in Class 1, 2, 3, 6, 7, or 9 or be the holder of a Claim that has been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).

### H. Voting Procedure and Deadlines

For a Ballot to count, it must be (1) properly completed, dated, and executed and (2) delivered to the Balloting Agent at one of the following addresses: (i) if by First Class mail, RAD Diversified REIT, c/o Epiq Ballot Processing, P.O. Box 4422, Beaverton, OR 97076-4422; (ii) if by hand delivery or overnight delivery, RAD Diversified REIT, c/o Epiq Ballot Processing, 10300 SW Allen Boulevard, Beaverton, OR 97005; or (iii) if by electronic ballot, by using the electronic balloting service by visiting https://dm.epiq11.com/radd, clicking on the "E-Ballot" link under the Case Actions section of the website, and following the instructions to submit your Ballot. Unless submitting electronically, holders of Claims entitled to vote on the Plan must submit the original Ballot bearing the holographic signature of the holder's authorized representative, not a facsimile or copy.

Ballots must be received by Debtors on or before ~~[•],~~December 10, 2026 at ~~:~~5:00 ~~.~~p.m. (prevailing Eastern Time). Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Balloting Agent. Any Ballot that is timely received, executed, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan.

*Separate Contributed Claim Election*. Certain Ballots will also provide an eligible Holder with a separate, voluntary election to contribute any Contributed Claims held by such Holder to the Liquidating Trust. The election to contribute Contributed Claims is separate and independent from the Holder's vote to accept or reject the Plan, and making or declining to make the Contributed Claim election will not affect the tabulation of such Holder's vote. The consequences of making such election are described in Article VI.C below.

The following rules shall govern the tabulation of the Ballots in determining whether the Plan has been accepted or rejected by a particular Class of Claims:

a. any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan;

b. any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

c. any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

d. any Ballot cast for a Claim designated or determined to be unliquidated, contingent, or disputed or as zero or unknown in amount and for which no Rule 3018(a) Motion has been filed by the 3018(a) Motion Deadline will not be counted;

e. any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance and rejection of the Plan will not be counted;

f. any Ballot received after the Voting Deadline will not be counted;

g. any Ballot not bearing an original signature will not be counted (for the avoidance of doubt, the electronic signature on a Ballot submitted and signed electronically by using the electronic balloting service established by the Balloting Agent shall constitute an original signature); and

h. any Ballot submitted by facsimile, e-mail or other electronic communication will not be counted, *provided however* that a Ballot may be submitted electronically by using the electronic balloting service established by Debtors.

### I. Acceptance of the Plan

As a Creditor, your acceptance of the Plan is important. For the Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting in each Impaired Class of Claims must vote to accept the Plan. At least one impaired Class of Claims, excluding the votes of insiders, must actually vote to accept the Plan. Debtors strongly urge holders of Claims in Classes 1, 2, 3, 6, 7, and 9 to vote to accept the Plan; however, holders of Claims and Interests in Classes 4, 5, 8, and 10 are not entitled to vote on the Plan. Electing to refrain from voting or voting to reject the Plan will not preclude a creditor from receiving a Distribution under the Plan to which it is entitled; *provided* that the Plan is confirmed.

### J. Elimination of Vacant Classes

Any Class of Claims or Equity Interests that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed eliminated from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

# V. THE PLAN; TREATMENT OF CLAIMS AND EQUITY INTERESTS

## A. Treatment of Unclassified Claims

### 1. Administrative Expense Claims

Unless otherwise agreed by the holder of an Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash as follows: (a) if Allowed prior to the Effective Date, on the Effective Date or as soon as practicable thereafter, but in no event later than 30 days after the Effective Date; (b) if Allowed on or after the Effective Date, as soon as practicable after the date such Claim is Allowed, but in no event later than 30 days after the date such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such holder and Debtors, if agreed before the Effective Date, or the Liquidating Trustee, if agreed after the Effective Date; or (d) at such time and upon such terms as ordered by the Bankruptcy Court. The Liquidating Trust shall be responsible for the payment of any Allowed Administrative Expense Claims not paid in full on the Effective Date, which amount shall be paid from Liquidating Trust Assets; *provided* that holders of Allowed Administrative Expense Claims shall not constitute Beneficiaries of the Liquidating Trust solely on account of the right to payment of an Allowed Administrative Expense Claim from the Liquidating Trust after the Effective Date.

Unless previously Allowed by Final Order of the Bankruptcy Court or agreement of Debtors, holders of Administrative Expense Claims accruing from the Petition Date through and including the Effective Date, other than Professional Fee Claims, shall file with the Bankruptcy Court and serve on Debtors, and, if filed following the Effective Date, the Liquidating Trustee, requests for allowance of such Administrative Expense Claims, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable Order of the Bankruptcy Court, no later than the Administrative Expense Claim Bar Date.

Holders of Administrative Expense Claims that do not file and serve a motion for allowance of such Administrative Expense Claim(s) by the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting an Administrative Expense Claim against Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or their respective assets and properties, and any Administrative Expense Claims shall be deemed disallowed as of the Effective Date without the need for any notice, objection, or other action from the Debtors or the Liquidating Trustee, as applicable, or any action or approval by the Bankruptcy Court. For the avoidance of doubt, a Proof of Claim asserting an Administrative Expense Claim (other than 503(b)(9) Claims) does not constitute a motion or request for allowance and payment of an Administrative Expense Claim, and as such, shall not be regarded or entitled to treatment as an actual or informal proof of claim or request for allowance of any Administrative Expense Claim.

### 2. Professional Fee Claims

On the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order approving the final fee applications of the applicable Professional, Debtors, on or before the

Effective Date, or the Liquidating Trustee, after the Effective Date, shall pay all unpaid amounts approved by the Bankruptcy Court owing to such Professional on account of an Allowed Professional Fee Claim. No later than 30 days after the Effective Date, unless extended for good cause, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date; *provided* that the Liquidating Trustee may pay retained Liquidating Trust Advisors, Professionals or other Entities in the ordinary course of business for services rendered and expenses incurred after the Effective Date without further Bankruptcy Court order. Objections to any Professional Fee Claim must be filed and served on counsel to the Debtors, Committee (if extant), and Liquidating Trustee, and the subject Professional no later than fourteen (14) days after such Professional Fee Claim is filed with the Bankruptcy Court, and must be set forth in writing and state with specificity the particular billing entry(ies), fee(s), or cost(s) subject to the objection and the basis for the objection to the subject billing entry, fee, or cost. If no timely objection is filed, the Professional may lodge an order with the Bankruptcy Court granting final approval of the Professional Fee Claim. If a timely objection is filed, the Professional shall set the matter for hearing on no less than seven (7) days' notice to the Debtors, Committee (if extant), Liquidating Trust, the United States Trustee, and the objecting party.

The Liquidating Trust shall pay any Professional Fee Claims allowed after the Effective Date no later than three (3) days after the Order allowing such Professional Fee Claims becomes a Final Order. The Liquidating Trustee shall pay such Allowed Professional Fee Claims from the Liquidating Trust Assets and shall retain sufficient Cash in the Liquidating Trust for such purpose. Professional Fee Claims allowed on or prior to the Effective Date shall be paid either (i) by the Debtors on the Effective Date, if deemed practicable by the Debtors, or (ii) by the Liquidating Trust within ten (10) days after the Effective Date.

The entitlement to or receipt of any Distributions from the Liquidating Trust on account of an Allowed Professional Fee Claim shall not render the holder(s) of such Allowed Professional Fee Claim(s) Beneficiaries of the Liquidating Trust.

Notwithstanding the foregoing, Liquidating Trust Advisors, even if formerly Professionals, shall be entitled to payment from the Liquidating Trust for fees and expenses incurred in service of the Liquidating Trust on or after the Effective Date, subject solely to the procedures and requirements for such compensation established in the Liquidating Trust Agreement.

### 3. Priority Tax Claims

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each holder of an Allowed Priority Tax Claim will be paid an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code, in Cash by Debtors, if on the Effective Date, or the Liquidating Trust, if after the Effective Date, from Assets of the Estates or Liquidating Trust Assets, respectively.

### 4. United States Trustee Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930, and any applicable interest thereon, that are due and payable ~~as of the Effective Date~~on the applicable statutory deadline until the case is closed, dismissed, or converted shall be paid in full in Cash by the Debtors or the Liquidating Trustee on the Effective Date. For the avoidance of doubt, the U.S. Trustee shall not be required to file a request or motion for allowance of an Administrative Expense Claim to establish its entitlement to statutory fees.

## B. Classification of Claims and Interests; Estimated Recoveries

The Classes of Claims and Interests listed below classify Claims and Interests for all purposes, including voting on, and distributions pursuant to, the Plan in accordance with sections 1122 and 1123(a) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that (i) the Claim or Interest is an Allowed Claim or Interest and qualifies within the description of that Class, and it shall be deemed classified in a different Class to the extent that it qualifies within the description of such different Class, and (ii) such Allowed Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

The following table (a) designates the Classes of Claims against and Interests in Debtors and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) presumed to accept or deemed to reject the Plan, and (b) estimates the potential Distribution (stated as a percentage of the Allowed Claim or Allowed Interest) to holders of Allowed Claims and Interests in the subject Class.[5]

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|---|---|---|---|---|
| 1 | First Mortgage Secured Claims | Impaired | Entitled to Vote | Varies |
| 2 | Judgment Lien Claims | Impaired | Entitled to Vote | Varies |
| 3 | Municipal Lien Claims | Impaired | Entitled to Vote | 100% or Retained Liens |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept | 100% or Retained Liens |
| 5 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | 100% |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote | TBD |
| 7 | Subordinated Section 510(b) Claims | Impaired | Entitled to Vote | TBD |
| 8 | Intercompany Claims | Impaired | Deemed to Reject | 0% |
| 9 | Government Agency and Regulatory Claims | Impaired | Entitled to Vote | TBD |

[5] Please be aware that the estimates of potential distributions are forward-looking statements. All forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. Additionally, the recovery of many Classes of Claims or Interests, if any, is subject to a variety of factors both known and unknown, and accordingly various Classes in the estimated recovery column merely indicated "TBD" which means "to be determined," because the Debtors cannot at present estimate the recoveries to such Class.

| Class | Claim or Interest | Status | Voting Rights | Est. Recovery |
|---|---|---|---|---|
| 10 | Equity Interests | Impaired | Deemed to Reject | 0% |

**C. Treatment of Claims and Interests**

The holders of classified Claims and Interests against Debtors shall receive the treatment described below in full and final satisfaction of such Claim or Interest.

**Class 1 - First Mortgage Secured Claims**

*A.* *Classification*: Class 1 consists of all First Mortgage Secured Claims. Each First Mortgage Secured Claim, determined on a loan-by-loan basis and without regard to the number of parcels or items of Collateral comprising its applicable First Mortgage Secured Claim Collateral, shall be classified into separate subclasses of Class 1 (*e.g.,* Class 1-1, Class 1-2, Class 1-3, *etc*.) for purposes under the Plan.

*B.* *Treatment*: Except to the extent that a Holder of an Allowed First Mortgage Secured Claim agrees to less favorable treatment, and provided the aggregate value of the First Mortgage Secured Claim Collateral securing such Allowed First Mortgage Secured Claim does not exceed the Allowed First Mortgage Secured Claim, each Holder of an Allowed First Mortgage Secured Claim shall receive, with respect to the entire applicable First Mortgage Secured Claim Collateral and pursuant to a single election applicable to such Claim and First Mortgage Secured Claim Collateral, one of the following treatments:

1. *Surcharged Sale of Collateral.* The entire First Mortgage Secured Claim Collateral securing such Allowed First Mortgage Secured Claim shall be sold by the Liquidating Trust at auction or other sale process approved by the Bankruptcy Court or otherwise authorized under the Plan. The Liquidating Trust may market and sell the parcels or items of Collateral comprising the applicable First Mortgage Secured Claim Collateral together or separately, in one or more transactions, in its reasonable discretion; provided that all such parcels or items shall remain subject to the same Surcharged Sale election and shall not thereby be treated as separate Class 1 Claims or subclasses. From the proceeds of such sale, the Liquidating Trust shall first receive and retain the Surcharge Amount. The remaining net proceeds shall thereafter be distributed first to Holders of Liens against such Collateral that are senior to such Allowed First Mortgage Secured Claim, if any, in the order of their respective priority under applicable non-bankruptcy law, then to the Holder of such Allowed First Mortgage Secured Claim until such Allowed First Mortgage Secured Claim is paid in full or such net proceeds are exhausted, and thereafter to Holders of any junior Liens against such Collateral in the order of their respective priority under

applicable non-bankruptcy law, subject in all respects to the rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest; or

2. *Surrender of Collateral.* The entire First Mortgage Secured Claim Collateral securing such Allowed First Mortgage Secured Claim shall be transferred to the Holder of such Allowed First Mortgage Secured Claim, or its designee, subject to all Liens, Claims, encumbrances, and other interests against such Collateral, with such Liens, Claims, encumbrances, and other interests retaining the same extent, validity, perfection, enforceability, and priority as existed on the Petition Date, subject in all respects to any rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest.

Notwithstanding the foregoing, if the aggregate value of the applicable First Mortgage Secured Claim Collateral exceeds the amount of the Allowed First Mortgage Secured Claim, such First Mortgage Secured Claim Collateral shall be sold pursuant to subparagraph (b)(1) supra, and the Holder of the Allowed First Mortgage Secured Claim shall not have the right to elect surrender of the Collateral. For the avoidance of doubt, the treatment provided in this section shall apply separately with respect to each collection of First Mortgage Secured Claim Collateral securing each Allowed First Mortgage Secured Claim, and nothing herein shall be deemed to consolidate, cross-collateralize, alter, enhance, prime, subordinate, or otherwise modify any Lien, Claim, encumbrance, or other interest in or against any Collateral except as expressly provided in the Plan or the Confirmation Order.

C. *Voting*: Class 1 is Impaired under the Plan. Holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan. For the avoidance of doubt, a Holder's vote to accept or reject the Plan shall not constitute an election between the Surcharged Sale and Surrender treatments described above.

**Class 2 – Judgment Lien Claims**

*a.* *Classification*: Class 2 consists of all Judgment Lien Claims. Each Judgment Lien Claim shall be classified into separate subclasses of Class 2 (*e.g.,* Class 2-1, Class 2-2, Class 2-3, *etc.*) for purposes under the Plan.

*b.* *Treatment*: Except to the extent that a Holder of an Allowed Judgment Lien Claim agrees to less favorable treatment, or the Debtor or Liquidating Trustee, as applicable, proposes to pay the Allowed Judgment Lien Claim in full, each Holder of an Allowed Judgment Lien Claim shall receive, at the option of such Holder, one of the following

treatments with respect to Collateral securing such Allowed Judgment Lien Claim:

1. *Surcharged Sale of Collateral.* The Liquidating Trust shall designate one or more parcels or items of Collateral securing such Allowed Judgment Lien Claim, in its sole discretion, for sale by auction or other sale process approved by the Bankruptcy Court or otherwise authorized under the Plan. From the proceeds of such sale(s), the Liquidating Trust shall first receive and retain the Surcharge Amount in connection with the sale of each piece of Collateral. The remaining net proceeds shall thereafter be distributed first to Holders of Liens against such Collateral that are senior to such Allowed Judgment Lien Claim, if any, in the order of their respective priority under applicable non-bankruptcy law, then to the Holder of such Allowed Judgment Lien Claim until such Allowed Judgment Lien Claim is paid in full or such net proceeds are exhausted, and thereafter to Holders of any junior Liens against such Collateral in the order of their respective priority under applicable non-bankruptcy law, subject in all respects to the rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest; or

2. *Surrender of Collateral.* The Liquidating Trust shall designate one or more parcels or items of Collateral securing such Allowed Judgment Lien Claim, in its sole discretion, for transfer to the Holder of such Allowed Judgment Lien Claim, or its designee. Any such Collateral shall be transferred subject to all Liens, Claims, encumbrances, and other interests against such Collateral, with such Liens, Claims, encumbrances, and other interests retaining the same extent, validity, perfection, enforceability, and priority as existed on the Petition Date, subject in all respects to any rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest.

For the avoidance of doubt, if an Allowed Judgment Lien Claim is secured by more than one parcel or item of Collateral, the Liquidating Trust shall have the sole right to determine which parcel or item of Collateral, or combination of parcels or items of Collateral, shall be sold or transferred in satisfaction or partial satisfaction of such Allowed Judgment Lien Claim, and the Holder of such Allowed Judgment Lien Claim shall have no right to require the sale or transfer of any particular Collateral except as otherwise ordered by the Bankruptcy Court. Nothing herein shall be deemed to consolidate, cross-collateralize, alter, enhance, prime, subordinate, or otherwise modify any Lien, Claim, encumbrance, or other interest in or against any Collateral except as expressly provided in the Plan or the Confirmation Order.

c. *Voting*: Class 2 is Impaired under the Plan. Holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 - Municipal Lien Claims**

a. *Classification:* Class 3 consists of all Municipal Lien Claims. Each Municipal Lien Claim shall be classified into separate subclasses of Class 3 (*e.g.,* Class 3-1, Class 3-2, Class 3-3, *etc.*) for purposes under the Plan.

b. *Treatment*: Except to the extent that a Holder of an Allowed Municipal Lien Claim agrees to less favorable treatment, each Holder of an Allowed Municipal Lien Claim shall receive one of the following treatments, as applicable, with respect to the Collateral securing such Allowed Municipal Lien Claim:

1. *Payment from Surcharged Sale Proceeds.* To the extent the Collateral securing such Allowed Municipal Lien Claim is sold pursuant to the treatment of First Mortgage Secured Claims or Judgment Lien Claims under Class 1 or Class 2, as applicable, such Allowed Municipal Lien Claim shall be paid in full from the proceeds of the sale of such Collateral, after payment to the Liquidating Trust of the Surcharge Amount and in accordance with the relative priority of Liens against such Collateral under applicable non-bankruptcy law, subject in all respects to the rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest; or

2. *Retention of Liens upon Surrender of Collateral.* To the extent the Collateral securing such Allowed Municipal Lien Claim is transferred or surrendered pursuant to the treatment of First Mortgage Secured Claims or Judgment Lien Claims under Class 1 or Class 2, as applicable, the Holder of such Allowed Municipal Lien Claim shall retain its Lien, if any, on such Collateral, with such Lien retaining the same extent, validity, perfection, enforceability, and priority as existed on the Petition Date, subject in all respects to any rights, claims, defenses, and objections of the Debtors, the Estates, the Liquidating Trust, or any other party in interest.

For the avoidance of doubt, nothing herein shall entitle any Holder of a Municipal Lien Claim to any distribution from the Liquidating Trust or any Debtor or Estate other than from the proceeds of the Collateral securing such Allowed Municipal Lien Claim, if such Collateral is sold, or retention of its Lien against such Collateral, if such Collateral is transferred or surrendered. Nothing herein shall be deemed to enhance, prime, reclassify, or otherwise modify the extent, validity, perfection,

enforceability, or priority of any Municipal Lien Claim except as expressly provided in the Plan or the Confirmation Order.

c. *Voting*: Class 3 is Impaired under the Plan. Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

**Class 4 - Other Secured Claims**

*a.* *Classification:* Class 4 consists of any Other Secured Claims against the Debtors.

*b.* *Treatment*: Each Holder of an Allowed Other Secured Claim, as determined by the Debtors or the Liquidating Trust, as applicable, shall receive, at the Liquidating Trust's election:

*1.* payment in full in Cash in an amount equal to its Allowed Other Secured Claim with a distribution from the Liquidating Trust Assets; or

*2.* the Liquidating Trust's interest in the Collateral securing such Holder's Allowed Other Secured Claim; or

*3.* such other treatment agreed to by the Holder of such Allowed Other Secured Claim and the Debtors or the Liquidating Trust, as applicable.

*c.* *Voting*: Class 4 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

**Class 5 - Priority Non-Tax Claims**

*a.* *Classification:* Class 5 consists of any Priority Non-Tax Claims against the Debtors.

*b.* *Treatment*: Each Holder of an Allowed Priority Non-Tax Claim, as determined by the Debtors or the Liquidating Trust, as applicable, shall receive:

*1.* payment by the Liquidating Trust of the amount of such Holder's Allowed Class 5 Claim on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), and (B) fifteen Business Days following the date such Claim is Allowed by non-appealable order. The Cash payment shall be in exchange for and in full satisfaction and discharge of the Holder's Allowed Priority Non-Tax Claim; or

*2.* such other treatment on account of such Allowed Priority Non-Tax Claim as determined by the Debtors or the Liquidating Trust, as applicable, as agreed to in writing by such Holder of such Allowed Priority Non-Tax Claim.

*c.* *Voting*: Class 5 is Unimpaired under the Plan. Holders of Allowed Priority Non-Tax Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan.

**Class 6 - General Unsecured Claims**

*a.* *Classification:* Class 6 consists of all Allowed General Unsecured Claims against Debtors.

*b.* *Treatment:* On the Effective Date, holders of Allowed General Unsecured Claims shall receive a Pro Rata Share of the Class A Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 6 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class A Beneficial Interests upon allowance of its Class 6 Claim by Final Order of the Bankruptcy Court.

Holders of Class A Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of the Plan, including provisions governing the treatment of Disputed Claims.

*c.* *Voting:* Class 6 is Impaired under the Plan. Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 - Subordinated Section 510(b) Claims**

*a.* *Classification:* Class 7 consists of all Allowed Subordinated Section 510(b) Claims against Debtors.

*b.* *Treatment:* On the Effective Date, holders of Allowed Subordinated Section 510(b) Claims shall receive a Pro Rata Share of the Class B Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim; *provided* that if any Class 7 Claims are Disputed Claims on the Effective Date, the holder of such Claim shall receive its Pro Rata Share of the Class B Beneficial Interests upon allowance of its Class 7 Claim by

Final Order of the Bankruptcy Court. Class B Beneficial Interests are subordinate to Class A Beneficial Interests in the Liquidating Trust.

Following the payment in full of all Allowed Claims in Classes 1-6, holders of Class B Beneficial Interests in the Liquidating Trust shall be entitled to a Pro Rata Share of any Distributions from the Liquidating Trust per the terms of the Liquidating Trust Agreement and Confirmation Order; *provided, however*, that such entitlement shall be subject to the terms and provisions of the Plan, including provisions governing the treatment of Disputed Claims.

*c.* *Voting:* Class 7 is Impaired under the Plan. Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan.

**Class 8 - Intercompany Claims**

*a.* *Classification:* Class 8 consists of any Intercompany Claims.

b. *Treatment:* Class 8 Claims will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and no Holder of a Class 8 Claim will receive any distribution on account of such Class 8 Claim.

c. *Voting:* Class 8 is Impaired. Each Holder of a Class 8 Claim is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan.

**Class 9 - Government Agency and Regulatory Claims**

*a.* *Classification:* Class 9 consists of all Allowed Government Agency and Regulatory Claims. Each Governmental Unit holding one or more Government Agency and Regulatory Claims shall constitute a separate subclass of Class 9, including, by way of example, Class 9-A, Class 9-B, Class 9-C, and so forth. All Government Agency and Regulatory Claims held by the same Governmental Unit shall be included in the same subclass unless otherwise agreed in writing by such holder and the Debtors or the Liquidating Trustee, as applicable, or otherwise ordered by the Bankruptcy Court. Each Class 9 subclass shall constitute a separate Class for purposes of voting, determining acceptance or rejection of the Plan, and Confirmation. References in the Plan to "Class 9" shall include all Class 9 subclasses collectively unless the context requires otherwise. If substantive consolidation is not approved, the foregoing classification shall apply separately under each applicable Debtor sub-plan.

b. *Treatment:* On the Effective Date, each holder of an Allowed Government Agency and Regulatory Claim shall receive its Pro Rata Share of the Class B Beneficial Interests in the Liquidating Trust in full and final satisfaction, settlement, release, and extinguishment of such Claim;

provided that, if any Class 9 Claim is a Disputed Claim on the Effective Date, the holder of such Claim shall receive the Class B Beneficial Interests attributable to such Claim only upon the allowance of such Claim by Final Order or other resolution in accordance with the Plan. Class B Beneficial Interests issued on account of Allowed Class 9 Claims shall rank pari passu with all other Class B Beneficial Interests and shall be subordinate to the Class A Beneficial Interests issued on account of Allowed Class 6 General Unsecured Claims. No Distribution shall be made on account of any Class 9 Claim unless and until all Allowed Class 6 General Unsecured Claims have been paid in full through Distributions on the Class A Beneficial Interests.

c. *Voting:* Class 9 (and each subclass of Class 9) is Impaired under the Plan. Holders of Allowed Claims in each Class 9 subclass are entitled to vote to accept or reject the Plan. Acceptance or rejection of the Plan shall be determined separately for each Class 9 subclass in accordance with section 1126(c) of the Bankruptcy Code.

**Class 10 – Equity Interests**

*a.* *Classification:* Class 10 consists of all Allowed Equity Interests in Debtors.

*b.* *Treatment:* On the Effective Date, all Equity Interests in Debtors shall be cancelled and no holders of Equity Interests shall receive a recovery on account of such Interest.

*c.* *Voting:* Class 10 is Impaired under the Plan. Holders of Allowed Class 10 Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, holders of Allowed Class 10 Equity Interests are not entitled to vote to accept or reject the Plan.

## VI. PROVISIONS GOVERNING THE LIQUIDATING TRUST AND TRUSTEE

### A. Establishment of Liquidating Trust.

On the Effective Date, the Liquidating Trust will be established and all Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust.

The Liquidating Trust shall be established for the purpose of liquidating the Liquidating Trust Assets, maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, and making distributions in accordance with the Plan to the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d). The Liquidating Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust.

**B. Liquidating Trust Assets.**

On the Effective Date, any and all rights and interests of Debtors or the Estates in or to the Liquidating Trust Assets shall vest in the Liquidating Trust, which shall include: (i) all Cash on hand on the Effective Date, *except* for any funds Debtors require to pay amounts due on the Effective Date; (ii) all Insider Claims; (iii) all D&O Claims; (iv) any claims against any person or party (including third-party professionals) relating to any D&O Claim, or any Insider Claim; (v) all Retained Causes of Action; and (vi) all Contributed Claims that are contributed to the Liquidating Trust pursuant to the Plan.

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be transferred free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided in the Plan. Once transferred to the Liquidating Trust, Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets, or the Liquidating Trust. For all federal income tax purposes, all parties (including, without limitation, Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) will treat the transfer of assets to the Liquidating Trust in accordance with the terms of the Plan as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

**C. Contributed Claims and Voluntary Contribution Election.**

**1. Explanation of Contributed Claims and Opportunity to Contribute them to the Liquidating Trustee.**

Contributed Claims, as described more fully in the Plan, are any direct causes of action that Holders of Claims or Interests may have against persons or entities other than the Debtors whose prepetition acts or omissions harmed such Holders in their capacity as creditors of the Debtors. These Contributed Claims include, but are not limited to, any causes of action arising out of: (a) the marketing, sale, and issuance of securities or other investment opportunities that at any point were offered by or through any of the Debtors; (b) the alleged misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; or (c) any alleged failure to disclose, or actual or attempted cover up or obfuscation of, any of the Debtors' conduct prior to the Petition Date. For instance, a Contributed Claim may include a Creditor's claim directly against Mr. Brandon "Dutch" Mendenhall alleging that Mr. Mendenhall made various public misrepresentations that induced the Creditor to invest funds through the Debtors' investment platform. Contributed Claims *do not, however, include* (i) any derivative claims of the Debtors (e.g., a claim where the principal harm was against the Debtors, which indirectly harmed the Contributed Claimant), (ii) any direct claims against the ~~Released~~Exculpated Parties, or (iii) any claims that cannot be assigned under applicable law.

Any Holder of a Claim or Interest entitled to receive a Ballot can elect through its Ballot to contribute such Holder's Contributed Claims to the Liquidating Trust in order for the

Liquidating Trustee to prosecute such Causes of Action for the benefit of Holders of Allowed Claims entitled to receive proceeds under the Plan.

By contributing a potential Contributed Claim, a Contributing Claimant (the person who contributed such Contributed Claim) is expressly irrevocably assigning and relinquishing its separate right to prosecute or receive any recovery on account of such Contributed Claim separate from its entitlement (if any) to receive a Pro Rata Share of proceeds as a Creditor under the Plan.

Any election to contribute Contributed Claims to the Liquidating Trust is irrevocable. That means that once any Holders makes the election to contribute its Contributed Claims, they may not rescind that election. To complete the contribution of Contributed Claims to the Liquidating Trust, each Contributing Claimant will execute appropriate documentation reasonably requested by the Liquidating Trustee. Finally, any Contributing Claimant that contributes its Contributed Claims will not be able to direct the actions of the Liquidating Trust with respect to such Contributed Claims.

**2. Election to Contribute Claims.**

Because aggregating all Contributed Claims may enable the pursuit and settlement of such litigation claims in a more efficient and effective manner, each Holder of a Claim or Interest may agree, by electing on its Ballot, to contribute its Contributed Claims to the Liquidating Trust for the Liquidating Trustee to prosecute, comprise, or settle for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan on behalf of the Holders of Claims entitled to receive a distribution under the Plan. By electing such option on its Ballot, each Contributing Claimant agrees that, subject to the occurrence of the Effective Date and the appointment of the Liquidating Trustee, it will be deemed, without further action, (i) to have irrevocably contributed its Contributed Claims to the Liquidating Trust, and (ii) to have agreed to execute any documents reasonably requested by the Liquidating Trustee to memorialize and effectuate such contribution.

**3. Contribution of Contributed Claims.**

On the Effective Date, all Contributed Claims will be irrevocably contributed to the Liquidating Trust to prosecute, compromise, or settle for the benefit of the Liquidating Trust Beneficiaries in accordance with the Plan on behalf of the Holders of Claims entitled to receive a distribution under the Plan and shall thereafter be Causes of Action for all purposes. No Person may rely on the absence of a specific reference in the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, or any other document as any indication that the Liquidating Trust will or will not pursue any and all available Contributed Claims against such Person. The Liquidating Trustee shall have, retain, reserve, and be entitled to assert all Contributed Claims fully to the same extent that the Contributing Claimants could have asserted such claims prior to the Effective Date. For the avoidance of doubt, the Contributed Claims shall not include the rights of any of the Contributing Claimants to receive the distributions under the Plan on account of their Claims or Interests and shall not include any claims that cannot be assigned under applicable law.

**4. Considerations for Potential Contributing Claimants.**

The Debtors and the Committee believe that most Contributing Claimants will likely benefit from contributing their Contributed Claims due to the time and cost likely required to resolve such Causes of Action. At the same time, however, the Debtors recognize that certain potential Contributing Claimants may benefit from retaining their claims. For example, a potential Contributing Claimant who is not entitled to any distribution under the Plan cannot benefit from contributing a claim. Similarly, the Liquidating Trustee shall have no obligation or duty to the Contributing Claimants independent of their entitlement to a share of the proceeds of any recovery as a Creditor with an Allowed Claim under the Plan, and the Liquidating Trustee may determine that pursuing a Contributed Claim does not serve the best interests of the Holders of Allowed Claims under the Plan as a whole. Put another way, the singular objective of the Liquidating Trustee is to maximize the total assets available for distribution to Holders of Allowed Claims and not to pursue every potential cause of action.

The Debtors and the Committee believe that the Liquidating Trustee is uniquely qualified to resolve the Contributed Claims in a manner that maximizes the recovery on such claims because the Liquidating Trustee has: (a) visibility into a large number of Claims; (b) substantial experience as a liquidating fiduciary with extensive experience litigating claims; and (c) access to resources to pursue the Contributed Claims, if determined to be in the best interests of creditors. While the Debtors believe that Contributed Claims will serve to benefit the Debtors' stakeholders in the aggregate, including the Contributing Claimants, the Debtors cannot make a recommendation as to whether it is in the best interest of a particular Contributing Claimant to contribute a particular Claim. The Debtors recommend that potential Contributing Claimants consult their own counsel concerning their ability to prosecute, compromise, settle, or otherwise resolve (and the potential benefits, risks, and consequences of contributing or retaining) their potential Contributed Claims.

## D. The Liquidating Trustee.

### 1. Liquidating Trustee as Representative of the Debtors' Estates.

From and after the Effective Date, the Liquidating Trustee shall act as the representative of the Estates for all purposes, including specifically, pursuant to section 1123(b)(3) of the Bankruptcy Code, for the purpose of retaining and enforcing any claims or interests of the Estates, including any rights pursuant to the Plan and any sale orders, and any Causes of Action in accordance with the best interests of and for the benefit of the Liquidating Trust Beneficiaries.

The Liquidating Trustee, as identified in the Plan Supplement, shall have all rights, powers, authorities, obligations, and other responsibilities assigned thereto under the Plan and Liquidating Trust Agreement, effective on the Effective Date of the Plan. Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order and the Liquidating Trust Agreement.

### 2. Responsibilities and Authority of the Liquidating Trustee.

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include the following: (a) preserving and liquidating the Liquidating Trust Assets and making distributions to the Beneficiaries in accordance with the provisions of the Plan, the Liquidating Trust Agreement, and any applicable Orders;

(b) administering and paying taxes, including, among other things, (i) filing tax returns, and (ii) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (c) retaining and paying professionals in connection with the Liquidating Trustee's performance of its duties under the Plan and the Liquidating Trust Agreement; (d) distributing information statements as required for federal income tax and other applicable tax purposes; (e) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (f) making distributions to holders of Allowed Administrative Expense Claims and Professional Fee Claims, to the extent such Claims are not paid in full on the Effective Date; (g) making distributions to holders of Allowed Claims in accordance with the Plan and Liquidating Trust Agreement; (h) administering, investigating, pursuing, prosecuting, resolving, compromising, settling, selling, or abandoning third-party claims assigned, purchased, or otherwise transferred to the Liquidating Trust; and (i) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, or an applicable Order(s) of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions and purpose of the Plan, the Liquidating Trust Agreement, or any applicable Orders. In addition, after the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court and submit to the United States Trustee regular post-confirmation quarterly disbursement reports, on or before the twentieth (20th) day of each of January, April, July, and October, as appropriate, until the Chapter 11 Cases are closed, converted, or dismissed, whichever happens earlier.

**3. Powers of the Liquidating Trustee.**

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include the following: (a) the power to invest funds of the Liquidating Trust, and withdraw, make Distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with the Plan and the Liquidating Trust Agreement; (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (c) the power to pursue, prosecute, resolve, compromise and settle any Causes of Action against any other Person or Entity without notice to or approval from the Bankruptcy Court, including any and all derivative actions pending or otherwise existing on behalf of Debtors or the Estates as of the Effective Date; (d) the power to object to Claims and Interests, including, without limitation, the power to seek subordination or recharacterization of Claims by objection, motion, or adversary proceeding, as applicable; (e) the power to enforce any Order approving a Sale, the Confirmation Order, or any other Order of the Bankruptcy Court; and (f) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, or any Order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions or purpose(s) of the Plan.

**4. Compensation of Liquidating Trustee.**

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions, and rights set forth in the Plan, the Confirmation Order, and the Liquidating Trust Agreement. Neither the Liquidating Trustee nor any professional retained by the Liquidating Trust shall be required to file a fee application to receive compensation.

#### 5. Retention and Payment of Professionals.

The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals and agents to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

#### 6. Initial Liquidating Trust Professionals.

The Liquidating Trustee, as identified in the Plan Supplement, shall act with the assistance of counsel and other professionals as he, she, or it shall engage in accordance with the Plan and the Liquidating Trust Agreement. The engagement and compensation of professionals for the Liquidating Trustee for services rendered on or after the Effective Date shall be governed in all respects by the terms of the Plan, the Liquidating Trust Agreement, and the Confirmation Order.

#### 7. Limitation on Liability and Indemnification of the Liquidating Trustee.

The Liquidating Trustee and his, her, or its consultants or professionals shall be entitled to indemnification and advancement from the Liquidating Trust against any losses, liabilities, expenses (including reasonable attorneys' fees and disbursements), damages, taxes, suits, or claims that the Liquidating Trustee or its consultants or professionals may incur or sustain by reason of being or having been the Liquidating Trustee or a consultant or professional of the Liquidating Trustee for performing any functions incidental to such service; *provided, however*, the foregoing shall not relieve the Liquidating Trustee or his, her, or its consultants or professionals (the "Trustee Indemnified Parties") from liability which is finally judicially determined to have arisen solely from the gross negligence or willful misconduct of the Trustee Indemnified Parties.

## VII. OTHER MEANS FOR IMPLEMENTATION OF THE PLAN

### A. Substantive Consolidation.

The Plan proposes, and Confirmation shall constitute a request for, the substantive consolidation of all of the Debtors and their Estates for all purposes associated with Confirmation, consummation, distributions, and implementation of the Plan. If substantive consolidation is granted, on and after the Effective Date, all Assets and liabilities of the Debtors and their Estates shall be deemed merged and treated as Assets and liabilities of a single consolidated Estate, all Claims filed or asserted against any Debtor shall be deemed asserted against such consolidated Estate, all duplicate Claims and Interests shall be eliminated, and all guarantees, cross-guarantees, Intercompany Claims, and Interests among the Debtors shall be deemed eliminated, cancelled, and extinguished, in each case solely for purposes of the Plan and distributions thereunder; *provided, however*, that notwithstanding such substantive consolidation, Secured Claims shall remain secured by the Collateral securing such Secured Claims as of the Effective Date, subject to the terms of the Plan, the Confirmation Order, and applicable law.

Notwithstanding the foregoing, if the Bankruptcy Court does not approve substantive consolidation of all of the Debtors and their Estates, then the Plan shall be deemed to constitute,

automatically and without further action by any Person or Entity, a separate sub-plan for each Debtor. In such event, the classification, treatment, voting, distributions, and other provisions of the Plan shall apply separately with respect to each Debtor and its Estate, and the Plan shall constitute a separate chapter 11 plan of liquidation for each Debtor; *provided, however*, that the Debtors, the Liquidating Trustee, and the Liquidating Trust, as applicable, shall be authorized to make such non-material modifications, allocations, and implementing adjustments as are necessary or appropriate to give effect to such separate sub-plans, subject to the terms of the Plan, the Confirmation Order, and applicable law.

Nothing in the Plan, the Confirmation Order, the request for substantive consolidation, or any failure of the Bankruptcy Court to grant substantive consolidation of all of the Debtors and their Estates shall impair, waive, release, prejudice, or otherwise limit any rights, claims, defenses, or Causes of Action held by the Debtors or their Estates as of the Effective Date, all of which shall vest in the Liquidating Trust to the extent provided in the Plan. Without limiting the foregoing, the Liquidating Trust shall retain and may exercise all rights held by the Debtors or their Estates as of the Effective Date to seek consolidation, further consolidation, or substantive consolidation of one or more Debtor or non-Debtor entities, whether in the Chapter 11 Cases, an adversary proceeding, contested matter, or any other proceeding, subject in all respects to applicable law and further order of any court of competent jurisdiction.

**B. Corporate Action.**

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trust) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Debtors' Estates.

Upon the Effective Date or as soon as reasonably practicable thereafter, after taking all actions provided for under the Plan, the Debtors shall be deemed to have been dissolved and terminated.

Upon the Effective Date or as soon as reasonably practicable thereafter, the existing boards of directors and managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, shareholders, and members and any and all remaining officers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders of such Debtor, or the officers and directors of such Debtor. The directors, managers, officers, and trustees of the Debtors and the Liquidating Trust, as applicable, shall be authorized to execute, deliver, file, or record such contracts, instruments, and other agreements or documents and take such other actions as they may deem necessary or appropriate in their sole discretion to implement the provisions of the Plan.

**C. Section 1146(a) Exemption.**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from the Debtors to the Liquidating Trust or to any other person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest in the Debtors or the Liquidating Trust; (b) any Sale of Assets of the Estates, whether approved before or after the Effective Date; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Rejection of Executory Contracts and Unexpired Leases.

The Plan shall constitute a motion to reject all Executory Contracts not previously rejected pursuant to an order of the Bankruptcy Court unless (i) otherwise set forth in the Plan Supplement or (ii) expressly assumed by Debtors under the Plan, and Debtors shall have no further obligation thereunder. The entry of the Plan Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a finding that the rejection thereof is in the best interest of Debtors, their Estates and all parties in interest in the Chapter 11 Cases. The foregoing information shall be included in the notice of entry of the Plan Confirmation Order.

Notwithstanding the foregoing, to the extent any Insurance Policies are deemed to be Executory Contracts, (i) Debtors do not seek to reject the Insurance Policies through this general rejection provision and (ii) the Insurance Policies shall be assumed by Debtors pursuant to the Plan. Nothing in the Plan, the Confirmation Order, or the Liquidating Trust Agreement alters or shall alter the rights and obligations of Debtors (and the Estates) and Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies or shall modify the coverage or benefits provided thereunder or the terms and conditions thereof or diminishes or impairs the enforceability of the Insurance Policies. All of Debtors' rights and their Estates' rights under any Insurance Policy to which Debtors and/or Debtors' Estates may be beneficiaries shall vest with the

Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries and all of the beneficiaries of such policies.

### B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.

Claims created by the rejection of any Executory Contracts pursuant to the Plan, or the expiration or termination of any Executory Contracts prior to the Effective Date, must be filed with the Bankruptcy Court and served on Debtors no later than thirty (30) days after service of notice of entry of the Plan Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims. Any Claims arising from the rejection of an Executory Contract for which proofs of Claim are not timely filed will be forever barred from assertion against Debtors, their Estates, the Liquidating Trust, and their respective successors and assigns, and their respective assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. Unless otherwise ordered by the Bankruptcy Court, all timely filed Rejection Damages Claims shall be treated as General Unsecured Claims in Class 6 and shall be subject to the provisions of the Plan.

## IX. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### A. Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by Debtors or their agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or Equity Interests. Debtors and the Liquidating Trustee shall have no obligation to recognize an ownership transfer of any Claims or Equity Interests occurring after the Distribution Record Date. Debtors and the Liquidating Trustee, or any party responsible for making Distributions, shall be entitled to recognize and deal with for all purposes under the Plan only with those holders of record stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### B. Reserve of Cash Distributions

On any date that Distributions are to be made under the terms of the Plan, Debtors or the Liquidating Trustee, or their respective agents, as applicable, shall hold in reserve Cash equal to the amount that would be distributed on such date to holders of Disputed Claims, if each such Disputed Claim were an Allowed Claim.

### C. Distribution After Allowance

Debtors shall make any and all Distributions paid, or to be paid, on or before the Effective Date. The Liquidating Trustee shall make any and all Distributions paid, or to be paid, after the Effective Date, including, without limitation, Distributions on account of Claims related to Professionals and costs of the Estates, even if the holders of such Claims do not constitute Beneficiaries of the Liquidating Trust.

## X. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

### A. Allowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses Debtors had immediately before the Effective Date. No Claim shall be deemed an Allowed Claim unless and until such Claim is Allowed under the Plan or under any Order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), when such order becomes a Final Order.

### B. No Distributions Pending Allowance

If an objection to a Claim, or a portion thereof, is filed, no Distribution(s) shall be made on account of such Claim, or the applicable portion thereof, unless and until such Disputed Claim becomes an Allowed Claim.

### C. Claims Administration

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the authority to: (1) file, withdraw, or litigate to judgment objections to Claims; (2) settle, compromise, or otherwise resolve Disputed Claims without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the applicable Claims Register to reflect any settlements, compromises or Final Orders resolving Disputed Claims or the fact that any Claim has been paid or satisfied, or any Proof of Claim that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), in each case without any further notice to or action, order, or approval by the Bankruptcy Court. The Liquidating Trustee shall be primarily responsible for reconciling and objecting to General Unsecured Claims in accordance with the Plan.

### D. Estimation of Claims

Before or after the Effective Date, Debtors or the Liquidating Trustee, as applicable, may, at any time and for any reason, request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to such Claim or during any appeal relating to such objection.

Notwithstanding any provision in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or that otherwise has not yet been resolved by a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that any contingent, unliquidated, or Disputed Claim is estimated, or deemed estimated, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and Debtors or the

Liquidating Trustee, as applicable, may elect to pursue a supplemental proceeding to object to any allowance of such Claim.

### E. Time to File Objections to Claims

The Debtors or the Liquidating Trustee, as applicable, to the extent permitted pursuant to the Plan or section 502(a) of the Bankruptcy Code, shall file and serve objections to any Claims no later than the Claims Objection Deadline; *provided, however*, that upon notice and hearing, the Court may extend the Claims Objection Deadline upon a showing that such extension serves the best interests of the Estates or Liquidating Trust, as applicable; *provided* that any motion to extend the Claims Objection Deadline shall be filed on or before the Claims Objection Deadline then in effect. The filing of a motion to extend the Claims Objection Deadline shall be deemed to automatically extend the Claims Objection Deadline until such motion is resolved by Final Order of the Bankruptcy Court.

### F. Disallowance of Claims

Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, from that Person have been turned over or paid to the Liquidating Trustee. If an action to recover any avoidable transfer is commenced prior to the Effective Date, the Claims held by such Persons shall be deemed estimated at zero dollars ($0.00).

### G. Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order allowing a Disputed Claim becomes a Final Order, the Liquidating Trustee shall provide to the holder of such Claim the Distribution (if any) to which such holder is entitled, without interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## XI. RELEASES, INJUNCTION AND RELATED PROVISIONS

### A. Discharge of Debtors

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Debtors shall not be entitled to a discharge.

### B. ~~Releases by Debtors~~

**~~Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is hereby released by Debtors, their Estates, the Liquidating Trustee, and the Liquidating Trust (as applicable)~~**

~~**from any and all Claims, Causes of Action, Avoidance Actions, obligations, suits, judgments, damages, demands, losses, liabilities, and remedies whatsoever (including any derivative claims, asserted or assertable on behalf of Debtors, their Estates, the Liquidating Trustee, or the Liquidating Trust), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, accrued or unaccrued, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, including any derivative claims, asserted or that could be asserted on behalf of Debtors, that Debtors, their Estates, the Liquidating Trustee, or the Liquidating Trust (as applicable), that such Person or its estate, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, Debtors, the Estates, Debtors' in- or out-of-court restructuring efforts, Debtors' intercompany transactions, any Avoidance Actions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between Debtors and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, or any restructuring, contract, instrument, document, release, or other agreement or document (including any legal opinion regarding any such transaction, contract, instrument, document, release, or other agreement or the reliance by any Released Party on the Plan or the Plan Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Documents and any related agreements, instruments, and other documents, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of confirmation, the pursuit of consummation, the solicitation of votes with respect to the Plan, the administration and implementation of the Plan, including the issuance or distribution of any property pursuant to the Plan, the Plan Documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Subsection do not release (i) any post-Effective Date obligations of any Person or Entity under the Plan, including any such obligations created in connection with the restructuring, or (ii) any Retained Causes of Action, including but not limited to (a) all Insider Claims; (b) all D&O Claims; (c) any claims against any person or party (including third-party professionals) relating to any D&O Claim or any Insider Claim. Nothing in this Subsection shall be deemed to release any Released Party from any Claims or Causes of Action that are found, pursuant to a Final Order, to be solely the result of such Released Party's gross negligence, fraud, or willful misconduct.**~~

~~**Entry of the Plan Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases by Debtors set forth in this Subsection, which includes by reference each of the related provisions and definitions contained herein, and, furthermore, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims and Causes of Action released by such releases; (3) in the best interests of Debtors and the Estates; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing;**~~

~~**and (6) a bar to Debtors or the Estates asserting any Claim or Cause of Action released pursuant to such releases.**~~

**C. RESERVED**

**D. Exculpation**~~.~~

**The Exculpated Parties shall neither have nor incur any liability to any Person or Entity, including the Exculpated Parties, for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or arising during the Exculpation Timeframe related in any way to the Liquidating Trust Agreement, the Chapter 11 Cases, the Disclosure Statement, the Plan, or any other Plan Document, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the post-petition debtor-in-possession financing approved by the Bankruptcy Court, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including, without limitation, those that Debtors, Liquidating Trustee, or any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of Debtors or the Estates; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Exculpated Party that solely results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted gross negligence, fraud, a violation of criminal law, or willful misconduct. Notwithstanding anything provided herein, the foregoing provisions of this Subsection shall have no effect on the liability of any Person or Entity that is solely the result of actions or omissions that occurred prior to or after the Exculpation Timeframe or the rights of any Person or Entity to enforce the Plan or other agreements or documents delivered under or in connection with the Plan.**

**E. Preservation of Causes of Action**

**1. Vesting of Causes of Action**

Except as otherwise provided in the Plan or the Plan Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any and all Causes of Action and Avoidance Actions that are Liquidating Trust Assets are reserved for, assigned to, and shall become property of the Liquidating Trust, and the Liquidating Trustee shall be vested with any and all rights and standing to commence, prosecute, and resolve such Causes of Action, on the Effective Date.

Except as otherwise provided in the Plan, the Plan Confirmation Order, or the Liquidating Trust Agreement, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action conveyed to the Liquidating Trust, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in any adversary proceeding.

### 2. Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against any Person or Entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Plan Confirmation Order), Debtors expressly reserve such Cause of Action, including all Causes of Action to be transferred by Debtors to the Liquidating Trust pursuant to the Plan and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Plan Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Plan Confirmation Order or any other Final Order (including the Plan Confirmation Order). In addition, the Liquidating Trust reserves the right to pursue or adopt any claims or causes of action alleged in any lawsuit in which Debtors or the Committee are defendants or interested parties, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Furthermore, in the pursuit of an Avoidance Action, Debtors, the Liquidating Trust, the Liquidating Trustee, and/or their assignees shall certify in writing in any demand, claim, complaint, and other effort to collect on an Avoidance Action in compliance with section 547(b) of the Bankruptcy Code.

The failure of Debtors to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release by Debtors of such claim, cause of action, right of action, suit or proceeding. IT IS THE EXPRESS INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION OF THE DEBTORS, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE LIQUIDATING TRUST AND THE DEBTORS' CREDITORS. **No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Liquidating Trustee will not pursue any available Causes of Action against them.**

Notwithstanding the foregoing, Debtors have made a good faith effort to identify and disclose all known Causes of Action. A schedule identifying Debtors' known Causes of Action to be transferred to and retained by the Liquidating Trust shall be attached to the Plan Supplement.

For the avoidance of doubt, upon the Effective Date, each Contributed Claim shall constitute a Liquidating Trust Asset and a Cause of Action of the Liquidating Trust for purposes of the Plan, and the Liquidating Trustee shall have the exclusive right to investigate, prosecute, settle, compromise, sell, abandon, or otherwise resolve such Contributed Claim, subject to the terms of the Plan and Liquidating Trust Agreement. Each provision of the Plan that applies to a Cause of Action applies in full force and effect to a Contributed Claim.

### F. Injunction.

**Except as otherwise specifically provided in the Plan or the Plan Confirmation Order, all Persons who have held, hold, or may hold Claims against or Equity Interests in Debtors and any successors, assigns or representatives of such Person shall be precluded and permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind against any of the assets to be distributed under the Plan, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order with respect to any of the assets**

**to be distributed under the Plan, and (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any of the assets to be distributed under the Plan. Except as otherwise expressly provided for in the Plan, with respect to obligations issued pursuant to the Plan, or to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim, all Persons are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released hereby, from: (i) commencing or continuing in any manner any action or other proceeding of any kind against any of the Liquidating Trust, the Liquidating Trustee, or their successors and assigns, and their assets and properties; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any of the Liquidating Trust, the Liquidating Trustee, their successors and assigns, and their assets and properties; (iii) creating, perfecting, or enforcing any encumbrance of any kind against any of the Liquidating Trust, the Liquidating Trustee, or the property or estate of the Liquidating Trust; (iv) asserting any right of subrogation against any of the Liquidating Trust, the Liquidating Trustee, or against the property or estate of the Liquidating Trust; or (v) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.**

**Notwithstanding any provision in the Plan or the Plan Confirmation Order to the contrary, nothing contained in the Plan or the Plan Confirmation Order shall (i) extinguish, impact, or release any right of setoff, recoupment, or subrogation of any kind (a) held by any Creditor which is asserted in a timely filed proof of claim or objection to the Plan, or pursuant to section 503(b)(1)(D) of the Bankruptcy Code, or (b) that is or may be asserted as an affirmative defense or other defense to a Cause of Action or Claim asserted by Debtors or the Liquidating Trust against such creditor or vendor; or (ii) affect the applicability of 26 U.S.C. § 7421(a).**

**Notwithstanding any provision in the Plan or the Plan Confirmation Order, nothing in the Plan or the Confirmation Order shall enjoin, release, discharge, or otherwise impair any Governmental Unit from exercising its governmental, police, enforcement, or regulatory authority as to any non-Debtor, including the authority to investigate, commence or continue an action or proceeding, determine liability, or enforce nonmonetary relief; *provided*, *however*, that any right to payment constituting a Claim shall be subject to the classification, treatment, Distribution, and injunction provisions of the Plan, and no Governmental Unit may enforce or collect any such Claim from the Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee, or the Liquidating Trust Assets except as expressly provided in the Plan and the Confirmation Order.**

**G. Exclusions from Releases**

Notwithstanding anything contained in the Plan, except with respect to the ~~Released~~Exculpated Parties, no release or exculpation shall be granted to (i) any current or former officers, managers or directors; (ii) any current or former statutory or non-statutory insiders; (iii) any Person or Entity that is subject to any Claims or Causes of Action of the Liquidating Trust; and (iv) any other affiliated person or entity that the Debtors or the Committee may determine has liability to the Debtors (collectively the "Non-Released Parties").

## XII. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. Conditions Precedent to the Effective Date of the Plan

The following are conditions precedent to the Effective Date of the Plan that must be satisfied or waived (as provided below):

a. The Plan Confirmation Order, which shall be in a form acceptable to Debtors and the Committee, shall have been entered by the Bankruptcy Court, and shall become a Final Order;

b. The Plan Confirmation Order shall be in full force and effect;

c. The Liquidating Trust Agreement, in a form and substance acceptable to Debtors and the Committee, shall have been fully executed and the Liquidating Trust shall have been formed;

d. The final version of all schedules, documents, and Plan exhibits, including a Plan Supplement, shall have been filed;

e. All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan shall have been effected or executed and delivered; and

f. All Liquidating Trust Assets shall have been transferred to and/or vested in the Liquidating Trust.

Notwithstanding the foregoing, Debtors and the Committee may waive the occurrence of any condition precedent to the Effective Date. Any such written waiver of a condition precedent set forth in this Section may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action, other than proceeding to consummate the Plan.

### B. Substantial Consummation

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### C. Effect of Failure of Conditions

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any claims by Debtors or any other Person, or any Claims or Interests by any holders thereof; (ii) prejudice in any manner the rights of Debtors, any holder of Claims or Interests, or any other Person; or (iii) constitute an admission, acknowledgment, offer or undertaking by Debtors, any holder of Claims or Interests, or any other Person in any respect.

## XIII. RETENTION OF JURISDICTION

After the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all Persons and Entities with respect to all matters related to the Chapter 11 Cases, Debtors, the Estates, the Liquidating Trust, and the Plan as is legally permissible, including, but not limited to, jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Expense Claim and Professional Fee Claim and the resolution of any objections to the allowance or priority of any Claims or Interests;

2. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3. resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which any Debtor is party or with respect to which Debtors may be liable, and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement;

5. hear and determine any motions, adversary proceedings, mediations, contested or litigated matters, applications involving Debtors, and any other matters that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date, including any Causes of Action of the Liquidating Trust;

6. hear and determine disputes (i) arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, or the Liquidating Trust Agreement or (ii) arising out of or related to the issuance of any subpoenas or requests for examination pursuant to Bankruptcy Rule 2004 issued before or after the entry of the Plan Confirmation Order relating to the subject matter of any Causes of Action;

7. enter such orders as may be necessary or appropriate to implement, interpret, enforce or consummate the provisions of the Plan, the Confirmation Order, the Liquidating Trust Agreement and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8. issue and enforce injunctions and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9. enforce all Orders previously entered by the Bankruptcy Court;

10. resolve any cases, controversies, suits or disputes with respect to the exculpation, injunctions, releases, and other provisions contained in the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such exculpation, injunction, release and other provisions;

11. enter and implement such orders, as necessary or appropriate, if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

12. resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Plan Confirmation Order, the Liquidating Trust Agreement or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement;

13. enter an order and/or a final decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases; and

14. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of Debtors for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the transactions contemplated by the Plan, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases.

Notwithstanding anything contained herein to the contrary, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permitted by applicable law, to adjudicate Causes of Action of the Liquidating Trust and to hear and determine disputes concerning Causes of Action of the Liquidating Trust, including any motions to compromise or settle such Causes of Action of the Liquidating Trust or disputes relating thereto. Despite the foregoing, if the Liquidating Trustee chooses to pursue any Cause of Action in another court of competent jurisdiction, the Liquidating Trustee will have authority to bring such action.

## XIV. RISKS AND OTHER CONSIDERATIONS

### A. Bankruptcy Considerations.

Although Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes. In addition, the occurrence of the Effective Date is conditioned on the satisfaction (or waiver) of the conditions precedent specified herein, and there can be no assurance that such conditions will be satisfied or waived.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims and Equity Interests encompasses Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

While Debtors believe that there are sufficient Liquidating Trust Assets to make Distributions to Liquidating Trust Beneficiaries, there can be no assurance that the Liquidating

Trust Assets will be sufficient to pay all expenses of administering the Liquidating Trust or make Distributions to the Liquidating Trust Beneficiaries.

**B. Risks Relating to Contributed Claims.**

A Holder electing to contribute a Contributed Claim will surrender control over the investigation, prosecution, settlement, or disposition of that claim and will not retain any right to a separate recovery on account thereof. The Liquidating Trustee will have no obligation to pursue any particular Contributed Claim and may determine that prosecution or continued prosecution is not economical or otherwise not in the best interests of the Liquidating Trust Beneficiaries. Any recovery will become property of the Liquidating Trust and will be distributed in accordance with the Plan rather than solely to the Contributing Claimant. There can be no assurance that any Contributed Claim will result in a recovery.

**C. No Duty to Update Disclosures.**

Debtors have no duty to update the information contained in the Plan or this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless Debtors are required to do so pursuant to an Order of the Bankruptcy Court. Delivery of the Plan and this Disclosure Statement after the date hereof does not imply that the information contained herein remains unchanged.

**D. Alternatives to Confirmation and Consummation of the Plan.**

**1. Alternate Plan**

If the Plan is not confirmed, Debtors or any other party in interest (if, pursuant to section 1121 of the Bankruptcy Code, Debtors have not filed a plan within the time period prescribed under the Bankruptcy Code) could attempt to formulate and propose a different plan. Such a plan likely would result in additional costs, including, among other things, additional professional fees or potential asserted substantial contribution claims, all of which would likely constitute Administrative Expense Claims (subject to allowance). Debtors believe that the Plan provides for an orderly and efficient liquidation of Debtors' remaining assets and enables creditors to realize the best return under the circumstances.

**2. Chapter 7 Liquidation**

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 Cases could be converted to a liquidation case under chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed, pursuant to applicable provisions of chapter 7 of the Bankruptcy Code, to liquidate the assets of Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. Debtors believe that liquidation under chapter 7 of the Bankruptcy Code of Debtors' remaining assets would result in a substantial reduction in the value to be realized by holders of Claims as compared with Distributions contemplated under the Plan. This is so because a chapter 7 liquidation would require the appointment of a trustee, which would require substantial additional expenses (including the costs associated with the trustee's

retention of attorneys and other professionals) and would delay the orderly liquidation of Debtors' Assets, thereby lowering recoveries to such holders of Claims. Consequently, Debtors believe that confirmation of the Plan will provide a substantially greater return to holders of Claims than would liquidation under chapter 7 of the Bankruptcy Code. A copy of Debtors' liquidation analysis is attached to this Disclosure Statement.

### 3. Certain Federal Tax Consequences

**THE FOLLOWING DISCUSSION SUMMARIZES CERTAIN MATERIAL U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO CERTAIN U.S. HOLDERS OF ALLOWED CLAIMS. THIS SUMMARY DOES NOT ADDRESS THE FEDERAL INCOME TAX CONSEQUENCES TO HOLDERS OF CLAIMS WHO ARE UNIMPAIRED, DEEMED TO HAVE REJECTED THE PLAN IN ACCORDANCE WITH THE PROVISIONS OF SECTION 1126(G) OF THE BANKRUPTCY CODE, OR HOLDERS WHOSE CLAIMS ARE ENTITLED TO PAYMENT IN FULL IN CASH.**

This summary is based on the Internal Revenue Code, existing and proposed Treasury Regulations, judicial decisions, and published administrative rules and pronouncements of the IRS as in effect on the date hereof, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the U.S. federal income tax consequences described below.

Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan. This discussion does not address foreign, state, or local tax consequences of the Plan, nor does it purport to address all of the U.S. federal income tax consequences of the Plan to special classes of taxpayers (e.g., small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, controlled foreign corporations, tax-exempt organizations, retirement plans, individual retirement and other tax-deferred accounts, states or their subdivisions or integral parts, other governmental entities, holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, holders of Claims whose functional currency is not the U.S. dollar, dealers in securities or foreign currency, traders that mark-to-market their securities, persons subject to the alternative minimum tax or the "Medicare" tax on unearned income, persons who use the accrual method of accounting and report income on an "applicable financial statement," and persons holding Claims that are part of a straddle, hedging, constructive sale, or conversion transaction). In addition, this discussion does not address U.S. federal taxes other than income taxes.

*Tax Consequences of Contributing Contributed Claims*. No opinion or other disclosure is provided herein regarding the federal, state, local, or other tax consequences to any Holder arising from the contribution of a Contributed Claim to the Liquidating Trust. The tax consequences of any such contribution may vary depending upon the particular facts and circumstances of the contributing Holder and the nature of the applicable Contributed Claim. Any Holder considering whether to contribute a Contributed Claim should consult its own tax advisor regarding the tax consequences of making such contribution.

For purposes of this discussion, a "U.S. Holder" is a beneficial owner of a Claim or a Beneficiary of the Liquidating Trust that is, for U.S. federal income tax purposes:

1. an individual citizen or resident of the United States;

2. a corporation, or other entity taxable as a corporation, created or organized in or under the laws of the United States, any state therein or the District of Columbia;

3. an estate, the income of which is subject to U.S. federal income taxation regardless of its source; or

4. a trust if a court within the United States is able to exercise primary supervision over its administration and one or more "United States persons" (as defined in the Internal Revenue Code) have the authority to control all substantial decisions of the trust or otherwise if the trust has a valid election in effect under current Treasury regulations to be treated as a United States person.

A "Non-U.S. Holder" is any holder that is not a U.S. Holder or a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity.

The following discussion generally assumes that the Plan will be treated as a plan of liquidation of Debtors for U.S. federal income tax purposes, and that all Distributions to holders of Claims will be taxed accordingly.

**THE SUMMARY CONTAINED IN THIS ARTICLE XIV IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR TAX PLANNING OR FOR ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLAN.**

#### 4. Consequences to U.S. Holders of Allowed Claims

Pursuant to the Plan, various U.S. Holders of an Allowed Claim will receive, in full and final satisfaction of its applicable Claim, a Beneficial Interest in the Liquidating Trust, as described in Article V. As discussed below, each U.S. Holder of an Allowed Claim that receives a Beneficial Interest will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner of, an undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust.

a. Realization and Recognition of Gain or Loss. In general, a U.S. Holder of an Allowed Claim will recognize gain or loss with respect to its Allowed Claim in an amount equal to the difference between (i) the sum of the amount of any Cash and the fair market value of its

undivided interest in the Liquidating Trust Assets consistent with its economic rights in the trust received in respect of its Claim (other than any consideration attributable to a Claim for accrued but unpaid qualified stated interest) and (ii) the adjusted tax basis of the Claim exchanged therefor. A U.S. Holder's adjusted tax basis in a Claim will be its cost increased by the amount of original issue discount ("OID") and market discount previously taken into account and reduced by the amount of amortizable bond premium previously amortized with respect to the Claim and any Cash payments on the Claim other than payments of qualified stated interest. Pursuant to the Plan, the Liquidating Trustee will in good faith value the assets transferred to the Liquidating Trust, and all parties to the Liquidating Trust (including U.S. Holders of Allowed Claims receiving Beneficial Interests) must consistently use such valuation for all U.S. federal income tax purposes. To the extent that a portion of the Allowed Claim, as applicable, is allocable to accrued but unpaid qualified stated interest, the U.S. Holder will recognize ordinary interest income, except to the extent previously included in income by a U.S. Holder under its method of accounting.

In the event of the subsequent disallowance of any Disputed Claim or the reallocation of undeliverable Distributions, it is possible that a U.S. Holder of a previously Allowed Claim may receive additional Distributions in respect of its Claim. Accordingly, it is possible that the recognition of any loss realized by a U.S. Holder with respect to an Allowed Claim may be deferred until all Claims are Allowed or Disallowed. Alternatively, it is possible that a U.S. Holder will have additional gain in respect of any additional Distributions received.

After the Effective Date, a U.S. Holder's share of any collections received on the assets of the Liquidating Trust (other than as a result of the subsequent disallowance of Disputed Claims or the reallocation of undeliverable Distributions) should not be included, for U.S. federal income tax purposes, in the U.S. Holder's amount realized in respect of its Allowed Claim but should be separately treated as amounts realized in respect of such U.S. Holder's ownership interest in the underlying assets of the Liquidating Trust.

Subject to the market discount rules discussed below, if gain or loss is recognized, such gain or loss may be long-term capital gain or loss if the Allowed Claim disposed of is a capital asset in the hands of the U.S. Holder and has been held for more than one year. The deduction for capital losses is subject to limitations. Each U.S. Holder of an Allowed Claim should consult its tax advisor to determine whether gain or loss recognized by such U.S. Holder will be long-term capital gain or loss and the specific tax effect thereof on such U.S. Holder. The character of any gain or loss may depend on, among other things, the origin of the U.S. Holder's Allowed Claim, when the U.S. Holder receives payment in respect of such Allowed Claim, whether the U.S. Holder reports income using the accrual or cash method of tax accounting, whether the U.S. Holder acquired its Allowed Claim at a discount, whether the U.S. Holder has taken a bad debt deduction with respect to such Allowed Claim, and/or whether (as intended and herein assumed) the Plan implements the liquidation of the Debtors for U.S. federal income tax purposes.

In general, a U.S. Holder's aggregate tax basis in its undivided interest in the Liquidating Trust Assets will equal the fair market value of such interest at the time of receipt increased by its share of Debtors' liabilities to which such assets remain subject upon transfer to the Liquidating Trust, and a U.S. Holder's holding period generally will begin the day following establishment of the Liquidating Trust.

b. Distributions to U.S. Holders in Respect of Accrued Interest. In general, the gross amount of payments received (whether stock, Cash, or other property) by a U.S. Holder of a debt instrument in satisfaction of accrued qualified stated interest will be taxable to the U.S. Holder as ordinary interest income (if not previously included in the U.S. Holder's gross income under the U.S. Holder's normal method of accounting). Conversely, a U.S. Holder generally recognizes a deductible loss to the extent any accrued qualified stated interest was previously included in its gross income and is not paid in full. The amount of payments received by a U.S. Holder may include withholding tax imposed on the payment, if any, at the withholding tax rate applicable to the U.S. Holder. Subject to generally applicable restrictions and conditions, withholding tax paid at the appropriate rate applicable to the U.S. Holder generally will be treated as foreign income tax eligible (i) for credit against a U.S. Holder's U.S. federal income tax liability, or (ii) at the election of such U.S. Holder, for deduction in computing such U.S. Holder's taxable income (provided that the U.S. Holder elects to deduct, rather than credit, all foreign income taxes paid or accrued for the relevant taxable year). Ordinarily, interest will constitute income from sources without the United States for foreign tax credit purposes. Such income generally will constitute "passive category income" or, in the case of certain U.S. Holders, "general category income." The calculation of foreign tax credits and, in the case of a U.S. Holder that elects to deduct foreign taxes, the availability of such deduction, involves the application of rules that depend on a U.S. Holder's particular circumstances. U.S. Holders should consult their tax advisors regarding the availability of foreign tax credits or deductions in their particular situations.

Pursuant to Article VII, except as otherwise required by law (as reasonably determined by the Debtors or the Liquidating Trustee, as applicable), Distributions with respect to an Allowed Claim will be allocated first to the principal portion of such Allowed Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any. However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes. U.S. Holders are urged to consult their own tax advisor regarding the allocation of consideration received under the Plan, as well as the deductibility of accrued but unpaid qualified stated interest and the character of any loss claimed with respect to accrued but unpaid qualified stated interest previously included in gross income for U.S. federal income tax purposes.

c. Market Discount Considerations for U.S. Holders. Under the "market discount" provisions of sections 1276 through 1278 of the Internal Revenue Code, some or all of any gain realized by a U.S. Holder exchanging the debt instruments constituting its Allowed Claim may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on the debt instruments constituting the exchanged Allowed Claim (unless the U.S. Holder elected to include market discount in income as it accrued).

In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the U.S. Holder's initial tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest or (b) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a de minimis amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

### 5. U.S. Federal Income Tax Consequences to Non-U.S. Holders of Allowed Claims

a. Gain Realized. Subject to the discussion below under "Backup Withholding and Information Reporting," any gain realized by a Non-U.S. Holder on the exchange of its Claim generally will not be subject to U.S. federal income taxation, unless (a) the Non-U.S. Holder is an individual who was present in the United States for a hundred and eighty-three (183) days or more during the taxable year in which the exchange occurs and certain other conditions are met or (b) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and if an income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States).

If the first exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such Non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during the taxable year of the exchange. If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain in the same manner as a U.S. Holder. In addition, if such a Non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30% (or at a reduced rate or exemption from tax under an applicable income tax treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

U.S. Holders and Non-U.S. Holders should consult their tax advisors regarding the U.S. tax consequences of receiving consideration in exchange for its Claim.

### 6. Tax Treatment of the Liquidating Trust and U.S. Holders of Beneficial Interests Therein

a. Classification of the Liquidating Trust. The Liquidating Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes (other than in respect of any portion of the Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as discussed below). In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust will be structured with the intention of complying with such general criteria.

Pursuant to the Plan, and in conformity with Revenue Procedure 94-45, all parties (including, without limitation, Debtors, the Liquidating Trustee, and U.S. Holders of Beneficial Interests) shall treat the transfer of Liquidating Trust Assets to the Liquidating Trust as (1) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to U.S. Holders of Beneficial Interests (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of Liquidating Trust Assets in exchange for the Beneficial Interests. Accordingly, unless definitive guidance to the contrary is issued, U.S. Holders of Beneficial Interests shall be treated for U.S. federal income tax purposes as the grantors and owners of their respective shares of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed

Claims). While the following discussion assumes that the Liquidating Trust would be so treated for U.S. federal income tax purposes, no ruling will be requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the U.S. federal income tax consequences to the Liquidating Trust and the U.S. Holders of Claims could vary from those discussed herein.

b. General Tax Reporting by the Liquidating Trust and U.S. Holders of Beneficial Interests. For all U.S. federal income tax purposes, all parties must treat the Liquidating Trust as a grantor trust of which the U.S. Holders of Beneficial Interests are the owners and grantors, and treat the U.S. Holders of Beneficial Interests as the direct owners of an undivided interest in the Liquidating Trust Assets (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. The Liquidating Trustee will file tax returns for the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The Liquidating Trustee also shall annually send to each U.S. Holder of a Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) among the U.S. Holders of Beneficial Interests will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, and, if applicable, other than assets allocable to Disputed Claims) to the U.S. Holders of Beneficial Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating Distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets for purposes of allocating taxable income and loss shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

As soon as reasonably practicable after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets. All parties to the Liquidating Trust (including, without limitation, Debtors, the Liquidating Trustee, and U.S. Holders of Beneficial Interests) must consistently use such valuation for all U.S. federal income tax purposes. The valuation will be made available, from time to time, as relevant for tax reporting purposes.

Taxable income or loss allocated to U.S. Holders of Beneficial Interests should be treated as income or loss with respect to such holder's undivided interest in the Liquidating Trust Assets, and not as income or loss with respect to its prior Allowed Claim. The character of any income

and the character and ability to use any loss may depend on the particular circumstances of the U.S. Holders of the Beneficial Interests.

The U.S. federal income tax obligations of a U.S. Holder with respect to its Beneficial Interest are not dependent on the Liquidating Trust distributing any Cash or other proceeds. Thus, a U.S. Holder may incur a U.S. federal income tax liability with respect to its allocable share of the Liquidating Trust's income even if the Liquidating Trust does not make a concurrent Distribution to the U.S. Holder. In general, other than in respect of Cash retained on account of Disputed Claims and Distributions resulting from undeliverable Distributions (the subsequent distribution of which still relates to a U.S. Holder's Allowed Claim), a distribution of Cash by the Liquidating Trust will not be separately taxable to the U.S. Holders of Beneficial Interests since the beneficiary is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the Cash was earned or received by the Liquidating Trust). U.S. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of Cash originally retained by the Liquidating Trust on account of Disputed Claims.

The Liquidating Trustee will comply with all applicable governmental withholding requirements. Thus, in the case of any Holders of Beneficial Interests that are not U.S. Holders, the Liquidating Trustee may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is interest and the source of the income under U.S. federal income tax rules). However, the taxation of Non-U.S. Holders of Beneficial Interests is complex and Non-U.S. Holders of Beneficial Interests should consult their tax advisors.

c. Tax Reporting for Assets Allocable to Disputed Claims. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of an IRS private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee (A) may elect to treat any Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims (i.e., a Disputed Claims Reserve) as a "disputed ownership fund" governed by Treasury Regulations Section 1.468B-9, if applicable, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes. Accordingly, if a "disputed ownership fund" election is made with respect to a Disputed Claims Reserve, such reserve will be subject to tax annually on a separate-entity basis on any net income earned with respect to the Liquidating Trust Assets (including any gain recognized upon the disposition of such assets). All Distributions from such reserves (which Distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by U.S. Holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, Debtors, the Liquidating Trustee and the U.S. Holders of Beneficial Interests) will be required to report for tax purposes consistently with the foregoing. A Disputed Claims Reserve will be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets. In the event, and to the extent, any Cash in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets of such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets of the Disputed Claims Reserve may be sold to pay such taxes.

### 7. FATCA

Under U.S. tax rules known as the Foreign Account Tax Compliance Act ("FATCA"), "withholdable payments" received by a Non-U.S. Holder will generally be subject to a 30% U.S. withholding tax if the holder is not FATCA compliant, or holds its Claim through a foreign financial institution that is not FATCA compliant. Additionally, although FATCA withholding may also apply to gross proceeds of a disposition of property of a type that can produce U.S.-source interest or dividends, certain Treasury Regulations or proposed Treasury Regulations may suspend withholding on such gross proceeds payments. FATCA withholding may apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding tax.

In order to be treated as FATCA compliant, a Non-U.S. Holder must provide certain documentation (usually an IRS Form W-8BEN or W-8BEN-E) containing information about its identity, its FATCA status, and if required, its direct and indirect U.S. owners. These requirements may be modified by the adoption or implementation of an intergovernmental agreement between the United States and another country or by future Treasury Regulations. Documentation that holders provide in order to be treated as FATCA compliant may be reported to the IRS and other tax authorities, including information about a holder's identity, its FATCA status, and if applicable, its direct and indirect U.S. owners. Holders should consult their own tax advisers about how information reporting and the possible imposition of withholding tax under FATCA may apply to transactions contemplated by the Plan.

### 8. Backup Withholding and Information Reporting

Distributions to certain U.S. Holders of Allowed Claims under the Plan generally will be subject to information reporting requirements. In addition, certain U.S. Holders may be subject to backup withholding in respect of such amounts if they do not provide their taxpayer identification numbers to the person from whom they receive payments. Non-U.S. Holders may be required to comply with applicable certification procedures to establish that they are not U.S. Holders in order to avoid the application of such information reporting requirements and backup withholding. The amount of any backup withholding from a payment to a U.S. or Non-U.S. Holder may be allowed as a credit against the Holder's U.S. federal income tax liability and may entitle the Holder to a refund, provided that the required information is timely furnished to the IRS.

In addition, Treasury Regulations generally require disclosure by a U.S. Holder on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. U.S. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the U.S. Holder's tax returns.

## XV. RECOMMENDATIONS AND CONCLUSION

Debtors submit that the Plan and liquidation proposed therein serve the best interests of the Estates and their stakeholders by efficiently and effectively administering the assets of the Estates,

and in so doing, maximizing the value of such assets for the benefit of holders of Beneficial Interests.

###

**Exhibit A**
**Liquidation Analysis**

**METHODOLOGY, ASSUMPTIONS, LIMITATIONS, AND RESERVATIONS**

The following Liquidation Analysis (the "**Liquidation Analysis**") has been prepared by the Debtors for purposes of evaluating and disclosing the estimated recoveries that creditors may receive under the Plan as compared with the estimated recoveries that creditors might receive in a hypothetical liquidation of the Debtors under chapter 7 of the Bankruptcy Code. The Liquidation Analysis is necessarily based upon numerous estimates, assumptions, judgments, and presently available information. **The Liquidation Analysis and the information contained therein is not a prediction, guaranty, or representation of actual results under either the Plan or a hypothetical chapter 7 liquidation.** Actual results could vary, potentially materially, from those reflected herein.

**1.** ***Purpose and Comparative Nature of Analysis.*** The Liquidation Analysis is intended solely to provide a reasonable, good-faith comparison between estimated recoveries under the Plan and estimated recoveries in a hypothetical chapter 7 liquidation for purposes including section 1129(a)(7) of the Bankruptcy Code. The amounts reflected in the Liquidation Analysis should not be interpreted as representations concerning the amount, timing, or certainty of any actual Distribution under the Plan or in a chapter 7 case.

**2.** ***Hypothetical Chapter 7 Scenario.*** The chapter 7 analysis necessarily assumes a hypothetical conversion of the Chapter 11 Cases and appointment of a chapter 7 trustee. No chapter 7 trustee has been appointed, and no chapter 7 trustee has reviewed, adopted, approved, or agreed with the assumptions contained in the Liquidation Analysis. A chapter 7 trustee could make materially different decisions concerning the timing, manner, marketing, disposition, or retention of Assets; litigation strategy; Claims objections; professional retention; settlements; or other matters affecting recoveries.

**3.** ***Property Values and 75% Liquidation Adjustment.*** The real-property sale values reflected in the Liquidation Analysis generally incorporate an assumption that property will realize approximately **75% of the applicable estimated property value**, representing a 25% liquidation adjustment. The 75% assumption is reflected in both the Chapter 11 and Chapter 7 scenarios and is intended to account generally for the risks associated with liquidation timing, marketing, condition, execution, and forced or accelerated dispositions. In particular, the use of a 75% assumption should ***not*** be construed as a representation that property sold pursuant to the Plan necessarily would sell at a price as low as the amount assumed in the Liquidation Analysis, or that property sold in a hypothetical chapter 7 case necessarily would achieve a price as high as the amount assumed therein. Depending upon market conditions, marketing periods, purchaser interest, property condition, transaction structure, and other circumstances, actual sale prices in either scenario may be materially higher or lower.

**4.** ***Chapter 11 Transfer-Tax/Documentary-Stamp Assumption.*** For purposes of the Liquidation Analysis, the Plan scenario assumes that gross economic value realized from real-property sales may be approximately 5% greater than an otherwise comparable transaction outside the Plan context, based upon the assumed economic benefit associated with the purchaser not being required to bear documentary stamp or similar transfer taxes in connection with a qualifying transfer under the Plan. This is an assumption and not a representation that every transfer will qualify for an exemption, that an exemption will produce a 5% benefit, or that the entire economic

benefit of any exemption necessarily will be reflected in the purchase price. Actual pricing will depend upon the terms of each transaction and negotiations with the applicable purchaser.

**5. *Estimated Encumbrances.*** Encumbrances reflected in the Liquidation Analysis are estimates derived from numerous available sources, including, without limitation, the Debtors' Schedule D, filed Proofs of Claim and supporting documentation, motions for relief from the automatic stay, motions for adequate protection, related court filings, and the Debtors' books and records. Such sources may use different calculation dates, may include or exclude accrued interest, fees, escrow advances, protective advances, default charges, or other amounts, and may contain inconsistent or incomplete information. Accordingly, the amount shown as an encumbrance should not be treated as an admission concerning the existence, amount, validity, extent, perfection, enforceability, or priority of any Lien or Claim. The Debtors and the Liquidating Trustee reserve all rights with respect thereto.

**6. *Multiple-Property Loans and Collateral Packages.*** Certain indebtedness may be secured by multiple parcels or items of Collateral. To the extent practicable, the Liquidation Analysis seeks to account for such indebtedness on a loan or Collateral-package basis rather than counting the same indebtedness independently against each parcel. The actual scope of Collateral securing any Claim is governed by the applicable loan documents, applicable non-bankruptcy law, and Orders of the Bankruptcy Court.

**7. *Estimated Commissions, Closing Costs, and Other Costs of Sale.*** The Liquidation Analysis includes estimates for commissions, transaction costs, transfer-related costs, carrying costs, and/or similar sale expenses where applicable. Such amounts are estimates only. Actual costs could differ based upon the manner and timing of sale, purchaser negotiations, broker arrangements, title matters, taxes, property condition, litigation, closing requirements, or other circumstances.

**8. *Class 1 Surcharge Assumption.*** The Liquidation Analysis includes an estimated recovery attributable to the Surcharge Amount applicable to certain Class 1 Collateral under the Plan. The Liquidation Analysis assumes that Holders entitled to make an applicable election will elect the Surcharged Sale treatment with respect to approximately 33% by value of the Class 1 properties or Collateral packages that are estimated to be "underwater." This assumption is inherently speculative. The percentage of Holders ultimately entitled to make an election may differ from that presently estimated, and the percentage of eligible Holders actually electing a Surcharged Sale may be substantially greater or less than 33%. For modeling purposes only, the pool of General Unsecured Claims in the Plan scenario is increased by the Surcharge Amounts received in light of potential increased deficiency claims after payment of First Mortgage Secured Claims in the event of a Surcharged Sale election. Moreover, the identity and value of the applicable Collateral, the amount of Allowed Class 1 Claims, and the availability of any particular election remain subject to the Plan, the Confirmation Order, Claims reconciliation, valuation issues, and other applicable determinations. Accordingly, the Surcharge Amount should not be understood as an estimate of a guaranteed recovery to the Liquidating Trust.

**9. *Chapter 7 Professional Fees and Administrative Costs.*** The hypothetical chapter 7 scenario assumes greater incremental professional fees and administrative expenses than the Plan scenario. Among other reasons, a newly appointed chapter 7 trustee and the trustee's retained professionals would be required to become familiar with the Debtors' businesses, Assets, liabilities, Claims, litigation, real-property portfolio, historical transactions, books and records, and the substantial record developed during the Chapter 11 Cases. The chapter 7 trustee and newly retained professionals would not begin with the same institutional knowledge accumulated by the

Debtors, their current management, the CRO, and existing estate professionals during these Chapter 11 Cases. The estimated chapter 7 professional expenses are nevertheless only estimates. Actual chapter 7 fees could be higher or lower, and the analysis does not represent that any particular fee level necessarily would be incurred or approved.

**10.** ***Chapter 7 Trustee Compensation*****.** To the extent the Liquidation Analysis includes estimated statutory compensation for the hypothetical chapter 7 trustee, such amount is an estimate based upon the assumed distributions and the compensation provisions applicable under the Bankruptcy Code. Actual trustee compensation would depend upon actual amounts disbursed, the scope of the trustee's services, orders of the Bankruptcy Court, and other applicable considerations.

**11.** ***Timing of Liquidation and Recoveries*****.** The Liquidation Analysis necessarily makes assumptions concerning the timing of sales, Claims reconciliation, litigation, distributions, and administration. Actual timing could differ materially. Delays could result in additional property taxes, insurance, utilities, maintenance, security expenses, professional fees, interest or other carrying costs and could positively or negatively affect property values and recoveries.

**12.** ***Unsecured Claims Pool and Limited Reconciliation Assumptions*****.** The estimated unsecured Claims pool reflected in the Liquidation Analysis incorporates certain anticipated reductions based solely upon limited reconciliation adjustments, including the removal or adjustment of:

- untimely filed Claims;
- withdrawn Claims;
- duplicate Claims, including Claims superseded by an amended or otherwise controlling Claim where identified; and
- contingent, unliquidated, or disputed Claims reflected only on the Debtors' Schedules where the creditor did not file a Proof of Claim.

Except for those limited assumptions, the estimated Claims pool does not incorporate substantive, merits-based Claims objections or reductions that might otherwise be available to the Debtors, a chapter 7 trustee, or the Liquidating Trustee.

**13.** ***No Prediction of Claims-Objection Success*****.** The inclusion of any anticipated adjustment to the Claims pool is not a representation or guaranty that the Debtors, a chapter 7 trustee, or the Liquidating Trustee would successfully object to or disallow any particular Claim on the basis identified in the Liquidation Analysis. Conversely, the failure to assume a reduction for a particular Claim does not mean that such Claim is valid, Allowed, correctly classified, or immune from objection. The Debtors and the Liquidating Trustee expressly reserve all rights to object to Claims on substantive, procedural, equitable, contractual, statutory, or other grounds, even where no reduction for such objection is reflected in this Liquidation Analysis.

**14.** ***Potential Additional Claims Reductions Not Modeled*****.** Because the Claims analysis generally does not incorporate merits-based objections, the actual Allowed unsecured Claims pool may ultimately be lower than the amount reflected in the Liquidation Analysis. Conversely, Claims presently estimated, disputed, contingent, unliquidated, subject to amendment, or otherwise unresolved may ultimately be Allowed in amounts that result in a higher Claims pool.

**15.** ***Causes of Action and Litigation Recoveries*****.** The Liquidation Analysis does not assign any affirmative value to Causes of Action, litigation claims, avoidance actions, insurance rights, or other contingent or unliquidated Assets, and such Assets are therefore modeled at a value of zero in both the Plan scenario and the hypothetical chapter 7 scenario. The designation of such Assets as "Unknown" is not intended to indicate that they have no value, but rather that any potential

recovery is presently too uncertain to quantify reliably. To the extent recoveries are ultimately realized from any such Assets, the value available for distribution may be greater than reflected in the Liquidation Analysis, and the resulting recoveries to creditors may correspondingly increase. The Liquidation Analysis assumes, solely for comparative purposes, that the value of such Assets would be approximately the same in the Plan scenario and the hypothetical chapter 7 scenario. Litigation and other contingent recoveries are inherently uncertain and depend upon, among other things, liability, defenses, collectability, cost, duration, insurance coverage, appeals, settlement posture, and other factual and legal considerations.

**16.** ***Chapter 7 Trustee May Pursue Different Strategies*****.** A hypothetical chapter 7 trustee would have independent fiduciary duties and discretion and could determine to pursue, settle, abandon, sell, prosecute, or decline to pursue Assets or Causes of Action differently from the Debtors or the Liquidating Trustee. The Liquidation Analysis necessarily cannot predict such decisions and therefore assumes a reasonable hypothetical liquidation methodology solely for comparative purposes.

**17.** ***Taxes and Tax Consequences*****.** The Liquidation Analysis does not purport to constitute a comprehensive analysis of federal, state, or local tax consequences arising from implementation of the Plan or a chapter 7 liquidation. Actual tax liabilities, tax attributes, transfer taxes, income or gain recognition, and other tax consequences could affect recoveries differently from the assumptions used herein.

**18.** ***Intercompany and Substantive-Consolidation Assumptions*****.** The Liquidation Analysis assumes substantive consolidation, elimination of duplicative intercompany liabilities, and other treatment contemplated by the Plan, and those assumptions are made solely for purposes of modeling implementation of the Plan. A hypothetical chapter 7 liquidation, particularly if substantive consolidation were not approved, could require additional entity-by-entity accounting, allocation of Assets and liabilities, resolution of intercompany Claims, and administrative expense that is not susceptible to precise estimation.

**19.** ***No Assurance as to Priority or Distribution Waterfalls*****.** The estimated recoveries reflected in the Liquidation Analysis depend upon assumptions regarding the amount and priority of secured, administrative, priority, unsecured, subordinated, and other Claims. Actual recoveries could change materially if Claims are reclassified, subordinated, disallowed, allowed in different amounts, determined to be secured by different Collateral, or entitled to different priority than presently assumed.

**20.** ***Rounding and Simplifying Assumptions*****.** Certain amounts may be rounded, grouped, estimated, or simplified for presentation. As a result, totals may not equal the sum of individual components in every instance, and minor mathematical differences may result from rounding. Such differences do not reflect substantive assumptions concerning entitlement or recovery.

**21.** ***Information Continues to Develop*****.** The Liquidation Analysis is based upon information available as of its preparation date. The Debtors continue to reconcile Claims, investigate Assets and liabilities, evaluate property values and Liens, resolve pending sales and stay-relief matters, and otherwise administer the Estates. Subsequent events may render assumptions reflected herein inaccurate or obsolete. The Debtors reserve the right to amend, supplement, or revise the Liquidation Analysis as additional or better information becomes available.

**22.** ***No Admission; Reservation of Rights*****.** Neither the preparation, filing, dissemination, nor use of the Liquidation Analysis constitutes an admission by the Debtors, their Estates, the Liquidating Trust, or the Liquidating Trustee concerning any Asset, liability, Claim, Lien, valuation, priority, Cause of Action, legal conclusion, or factual matter. **All rights, Claims,**

**Causes of Action, objections, defenses, setoffs, recoupment rights, valuation positions, and other rights of the Debtors, the Estates, the Liquidating Trust, and the Liquidating Trustee are expressly reserved.**

**THE LIQUIDATION ANALYSIS IS A COMPARATIVE ESTIMATE PREPARED FOR PURPOSES OF THE PLAN AND IS NOT AN APPRAISAL, FORECAST, OR GUARANTY OF ACTUAL RESULTS. ALL PROPERTY VALUES, CLAIM AMOUNTS, ENCUMBRANCES, COSTS, SURCHARGE RECOVERIES, CLAIMS-POOL REDUCTIONS, AND OTHER INPUTS ARE ESTIMATES OR MODELING ASSUMPTIONS AND MAY DIFFER MATERIALLY FROM ACTUAL RESULTS. NOTHING HEREIN CONSTITUTES AN ADMISSION OR BINDING DETERMINATION OF THE VALUE OF ANY ASSET, THE AMOUNT OR ALLOWANCE OF ANY CLAIM, THE VALIDITY OR PRIORITY OF ANY LIEN, OR THE RECOVERY AVAILABLE TO ANY CREDITOR. ALL AMOUNTS ARE IN UNITED STATES DOLLARS.**

| | Chapter 11 Plan Scenario | Chapter 7 Liquidation |
|---|---|---|
| Aggregate Estimated Sale Proceeds | 38,418,188 | 36,588,750 |
| Less: Sale Commissions | (2,305,091) | (2,195,325) |
| Less: Encumbrances | (12,636,349) | (12,636,349) |
| Plus: Surcharge Amounts Received | 544,919 | – |
| Plus: Causes of Action | Unknown | Unknown |
| Less: Chapter 7 Trustee Fees | | (1,097,663) |
| Less: Professional Fees | (500,000) | (750,000) |
| Less: Chapter 11 Administrative Expenses | (1,500,000) | (1,500,000) |
| Less: Asserted Priority Claims | (7,734,814) | (7,734,814) |
| Net to Available for Distribution | 14,286,852 | 10,674,600 |
| General Unsecured Creditors Pool | 147,595,598 | 147,050,679 |
| Percent Recovery (Estimated) | 9.7% | 7.3% |

## Exhibit B
## First Mortgage Secured Claim Schedule

**THE INFORMATION SET FORTH IN THE SCHEDULE ATTACHED HERETO IS PROVISIONAL, NON-BINDING, PROVIDED SOLELY TO ASSIST HOLDERS IN REVIEWING AND VOTING ON THE PLAN, AND IN ALL RESPECTS SUBJECT TO THE DISCLOSURES, LIMITATIONS, AND RESERVATION OF RIGHTS SET FORTH BELOW. NO TREATMENT ELECTION IS BEING REQUESTED OR MADE AT THIS TIME. INCLUSION IN OR OMISSION FROM THIS SCHEDULE DOES NOT ALLOW OR DISALLOW ANY CLAIM, DETERMINE CLASS 1 STATUS, FIX ANY CLAIM AMOUNT OR COLLATERAL VALUE, DETERMINE THE EXISTENCE OR SCOPE OF ANY LIEN OR COLLATERAL PACKAGE, OR OTHERWISE BIND THE DEBTORS, THE ESTATES, THE LIQUIDATING TRUST, OR THE LIQUIDATING TRUSTEE. HOLDERS MUST REVIEW THE PLAN AND SOLICITATION MATERIALS AND TIMELY IDENTIFY AND VOTE THEIR APPLICABLE CLAIMS IN ACCORDANCE WITH THE SOLICITATION PROCEDURES ORDER.**

**IMPORTANT NOTICE, DISCLOSURES, LIMITATIONS, AND RESERVATION OF RIGHTS:**

**1.** ***Informational Purpose Only; No Treatment Election.*** The First Mortgage Secured Claim Schedule (the "**Schedule**") is provided **solely for informational and solicitation purposes** to assist Holders or potential Holders of First Mortgage Secured Claims in reviewing the Plan, the Disclosure Statement, the Ballot applicable to such Holder, and the Debtors' presently available information concerning the potential classification of Claims in Class 1. **The Schedule is not, and shall not be construed as, a request for, notice of, or opportunity to make any election between the Surcharged Sale or Surrender treatments provided under the Plan. No such treatment election is being made or requested in connection with solicitation of the Plan or by submission of a Ballot.** Any election concerning the treatment of an Allowed First Mortgage Secured Claim shall be made only at the time and in the manner provided by the Plan, Confirmation Order, or other applicable procedures established by the Bankruptcy Court.

**2.** ***Schedule Does Not Determine Claims, Collateral, Values, or Treatment.*** Nothing contained in the Schedule, including any identification, omission, description, estimate, calculation, grouping, classification, Holder name, possible Holder name, attorney name, loan or property number, Collateral address, Claim amount, value, reduction factor, estimated liquidation value, estimated equity, or other information, constitutes or shall be deemed an admission, stipulation, agreement, adjudication, determination, representation, or concession by the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, or any other party concerning any matter set forth therein. Without limiting the foregoing, the Schedule does not determine the existence, allowance, amount, secured status, classification, validity, extent, perfection, enforceability, or priority of any Claim or Lien; the identity of the proper Holder of any Claim; the identity or extent of any Collateral; the value of any Collateral; the existence or amount of any equity or deficiency; or the treatment to which any Claim ultimately may be entitled.

**3.** ***No Valuation Admission.*** All amounts identified in columns relating to estimated property value, liquidation value, equity, or similar concepts are **non-binding estimates prepared solely to provide Holders with general information potentially useful in evaluating the Plan and their vote**. They are not stipulations of value, determinations under section 506(a) of the Bankruptcy Code, liquidation analyses for any particular property or loan, or representations as to the price that could be obtained in any sale. The Debtors and the Liquidating Trustee expressly reserve the right to assert that the value of any Collateral is higher or lower than any amount shown in the Schedule and to rely upon different valuation methodologies, valuation dates, appraisals, broker price opinions, market information, testimony, or other evidence in any subsequent proceeding.

**4.** ***No Admission as to Claim Amount.*** Any amount identified as an "Estimated First Mortgage Secured Claim," loan balance, payoff, debt amount, Claim amount, or similar figure is provisional and informational only. Such amount may have been derived from a filed Proof of Claim, the Debtors' Schedules, a motion for relief from stay or adequate protection, a foreclosure or other court filing, the Debtors' books and records, lender-supplied information, or another available source and **does not constitute an Allowed Claim or an admission as to the amount of any Claim**. The Debtors, the Estates, the Liquidating Trust, and the Liquidating Trustee reserve all rights to object to, reconcile, reduce, reclassify, subordinate, disallow, estimate, or otherwise challenge any Claim or portion thereof on any available basis. The Plan separately provides for the allowance and administration of Claims and does not treat inclusion in this Schedule as allowance.

**5.** ***Numerous and Potentially Inconsistent Sources.*** The Schedule has been compiled from numerous sources of information believed to be potentially relevant, including, without limitation, the Debtors' Schedule D and other Schedules and Statements, filed Proofs of Claim and supporting documents, motions for relief from the automatic stay and motions for adequate protection, orders and hearing proceeding memoranda appearing on the Bankruptcy Court docket, loan and mortgage information reflected in the Debtors' books and records, broker price opinions, appraisals and valuation information described in court filings, governmental property records, tax and assessment records, publicly available sources, information supplied by creditors or their professionals, and other available information. **The use of any particular source does not constitute an endorsement or adoption of that source or the information contained therein.** Different sources may contain different names, balances, collateral descriptions, values, dates, or other information, and no effort to reconcile such differences for purposes of this informational Schedule shall constitute a binding determination of the correct information.

**6.** ***Holder/Possible Holder Identification Is Provisional.*** The column titled "Holder/Possible Holder" reflects the Debtors' best presently available information concerning the Person or Entity that may hold or assert the applicable Claim. The identification of a Person or Entity in that column does not constitute an admission that such Person or Entity is the legal, beneficial, record, or otherwise proper Holder of the applicable Claim or Lien; possesses standing to enforce any note, mortgage, deed of trust, assignment, or other instrument; has established an effective assignment or chain of title; or is otherwise entitled to treatment under the Plan. Conversely, the omission of a Person or Entity from the Schedule does not constitute a determination that such Person or Entity does not possess a Claim or other rights.

**7.** ***Counsel Identification Is Informational Only.*** The column titled "Counsel of Record/Possible Counsel of Record" reflects counsel identified from the Bankruptcy Court docket or other available information and, in some instances, may be based upon counsel having appeared for a similarly named Holder, servicer, trustee, trust, assignee, affiliated entity, or other potentially related party. **Listing an attorney or law firm does not establish, represent, or imply the existence, continuation, scope, or nature of any attorney-client, agency, servicing, fiduciary, or other representative relationship**, and the Debtors make no representation that any identified attorney is authorized to receive notice, cast a vote, make an election, or otherwise act on behalf of any particular Holder with respect to the Claim identified in the Schedule.

**8.** ***Loan/Property Numbers Are Administrative Identifiers Only.*** The "Loan / Property No." designations are administrative and bookkeeping identifiers assigned for purposes of organizing the Schedule, solicitation, and administration of the Plan. Such identifiers **do not create a Claim, Lien, loan, Collateral interest, Class, subclass, right to vote, or entitlement to treatment**, and do not constitute an agreement concerning the validity, extent, perfection, enforceability, priority, or ownership of any Claim or Lien. The existence and scope of any underlying indebtedness and Collateral rights are determined by the applicable loan documents and applicable law, and whether such Claim qualifies as a First Mortgage Secured Claim is determined under the terms of the Plan. A Claim that otherwise qualifies for treatment in Class 1 shall not fail to qualify solely because it was inadvertently omitted, misidentified, or differently numbered in the Schedule, subject in all respects to the Plan, applicable law, and any applicable Order of the Bankruptcy Court.

**9.** ***Inclusion Does Not Establish a Class 1 Claim.*** **The inclusion of a Claim, Holder, loan, or property in the Schedule does not, standing alone, establish that the associated Claim is a First Mortgage Secured Claim or is entitled to treatment in Class 1.** The Plan defines First Mortgage Secured Claims by reference to the nature and priority of the applicable consensual Lien and expressly excludes from Class 1 treatment certain Collateral affected by relief from stay or sale orders. Among other things, and subject to the precise terms of the Plan as may be amended, Collateral that is the subject of an applicable Final Order granting relief from the automatic stay or selling such Collateral and ordering distribution of the sale proceeds may be excluded from Class 1 treatment. **The Schedule must therefore be read together with the Plan and applicable Orders of the Bankruptcy Court, and the Schedule shall not supersede or modify them.**

**10.** ***Omission Does Not Negate a Class 1 Claim.*** Conversely, omission of a Claim, loan, parcel, Holder, or Collateral package from the Schedule does not constitute a determination that no First Mortgage Secured Claim exists or that the Holder is not entitled to assert a Claim or seek treatment under the Plan. The Debtors may amend, supplement, correct, reorganize, renumber, add to, or remove entries from the Schedule as additional information becomes available or circumstances change, subject to the Plan, the Solicitation Procedures Order, the Confirmation Order, and applicable law. The Plan itself contemplates that the First Mortgage Secured Claim Schedule may be amended or supplemented.

**11.** ***No Creation or Elimination of Cross-Collateralization.*** The Schedule is intended, where reasonably ascertainable, to present one entry for each distinct loan or indebtedness together with the parcel or parcels believed to comprise the Collateral package securing that indebtedness. The grouping of multiple parcels in a single Schedule entry **does not create, impose, expand, or admit cross-**

**collateralization**, and the listing of parcels in separate entries does not sever, release, narrow, or otherwise eliminate cross-collateralization that otherwise exists. Neither the inclusion nor omission of any particular parcel from a listed Collateral package modifies the scope of the Collateral securing any indebtedness. The existence and extent of cross-collateralization, and the Collateral securing each Claim, shall be determined by the governing loan and security documents, applicable non-bankruptcy law, the Plan, and any applicable Order of the Bankruptcy Court.

**12. *Estimated Equity Is Not Net Sale Proceeds or Expected Recovery.*** Any "estimated equity" or similar calculation appearing in the Schedule is merely arithmetic based upon the provisional Claim amount and provisional value assumptions displayed in the Schedule. **Such calculation is not an estimate or representation of net sale proceeds or the amount that any Holder, junior lienholder, Estate, or Liquidating Trust would receive.** Among other things, such calculations may not account for real estate taxes, municipal liens, senior Liens, disputed Liens, transaction expenses, transfer expenses, commissions, carrying costs, the Surcharge Amount, professional fees, interest, adequate protection payments, postpetition amounts, credits, releases, offsets, or other amounts that could affect actual proceeds or recoveries.

**13. *"RESERVED" Entries Have No Substantive Effect.*** Any row, field, loan/property number, or provisional subclass bearing the designation "RESERVED" has been retained solely for internal numbering, bookkeeping, administrative continuity, or future amendment purposes. A RESERVED designation does not identify or create a Claim, Holder, loan, Collateral package, First Mortgage Secured Claim, Class 1 subclass, voting right, treatment right, or other substantive right.

**14. *No Waiver; Full Reservation of Rights.*** The Debtors, the Estates, the Liquidating Trust, and the Liquidating Trustee expressly reserve **all rights, remedies, claims, Causes of Action, objections, defenses, setoffs, recoupment rights, valuation rights, lien challenges, claim objections, avoidance rights, and other rights under the Bankruptcy Code, applicable non-bankruptcy law, the Plan, the Confirmation Order, and otherwise** with respect to every Claim, Lien, Holder, Collateral package, parcel, value, amount, priority, and other matter referenced or omitted from the Schedule. Nothing in the Schedule shall constitute a waiver of any such right or shift any burden of proof or persuasion otherwise applicable to any party.

**15. *Holders Must Independently Identify Their Claims and Collateral.*** Each Holder is responsible for reviewing its own books and records, loan documents, Proofs of Claim, assignments, Collateral documents, Bankruptcy Court filings, the Plan, Disclosure Statement, Ballot, and Solicitation Procedures Order and for **independently identifying each Claim it holds or may hold, the applicable Collateral, the appropriate Class or subclass, and its right, if any, to vote on the Plan**. Holders should not rely exclusively upon the Schedule to determine whether they possess a Claim or how such Claim should be classified.

**16. *Information May Change.*** The Schedule reflects information available to the Debtors **as of the date identified herein** and is subject to continuing review and revision. Claims may be amended, transferred, withdrawn, satisfied, released, or objected to; Collateral may be sold or released; relief from stay may be granted; additional Liens or priorities may be identified; property values may change; and additional documents or information may become available. Accordingly, the Debtors and, following the Effective Date, the Liquidating Trustee reserve the right to amend or supplement the Schedule and are under no obligation to preserve any preliminary information, grouping, estimate, numbering convention, or designation contained in an earlier version.

**17.** ***No Reliance or Third-Party Rights.*** The Schedule is not intended to provide legal, financial, tax, investment, valuation, title, or other professional advice to any Holder or other Person. No Person should rely upon the Schedule for any purpose other than the limited informational purpose described above. **No third-party beneficiary rights are created by the Schedule**, and no Holder or other Person shall acquire any substantive or procedural right by reason of the inclusion, omission, characterization, numbering, or description of information therein.

**18.** ***Plan and Solicitation Materials Must Be Reviewed as a Whole.*** The Schedule is only one component of the solicitation materials. **Holders should review the Plan, Disclosure Statement, Solicitation Procedures Order, Ballot and Ballot instructions in their entirety before voting.** Capitalized terms used but not otherwise defined in these disclosures should have the meanings given to them in the Plan. Nothing in these disclosures or the Schedule modifies the terms of the Plan.