IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

*In re:*

CASE NO. 8:26-BK-01636-CPM
CHAPTER 11

*Jointly Administered with*
Case No. 8:26-bk-01637-CPM
Case No. 8:26-bk-01638-CPM
Case No. 8:26-bk-01639-CPM
Case No. 8:26-bk-01640-CPM

RAD DIVERSIFIED REIT, INC.,

Debtor.

_____________________________________/

**<u>RENEWED MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY</u>**

Civic Real Estate Holdings III, LLC ("Movant") by and through its attorney, hereby moves this Court, pursuant to 11 U.S.C. § 362, for *in rem* relief from the automatic stay with respect to certain real property of the Debtor having an address of 2909 W Fountain Blvd., Tampa, FL 33609 (the "Property"). In further support of this Motion, Movant respectfully states:

1. A petition under Chapter 11 of the United States Bankruptcy Code was filed with respect to the Debtor on March 1, 2026.

2. This Court has jurisdiction to hearing this motion pursuant to 11 U.S.C. § 1334 and 11 U.S.C. § 362.

3. On or about June 23, 2022, the Debtor, by and through its Secretary, Taylor Green, executed and delivered a Promissory Note in the original principal amount of $828,000.00. A copy of the Promissory Note (the "Note") is attached hereto as Exhibit A.

4. Pursuant to that certain Mortgage Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated June 23, 2022 (the "Mortgage") executed by the Debtor by and through the Secretary, and recorded in Official Records of Hillsborough County at Instrument #2022340241, all obligations (collectively, the "Obligations") of the Debtor under

and with respect to the Note and the Mortgage are secured by the Property. A copy of the Mortgage is attached hereto as Exhibit B.

5. The legal description of the Property is

LOT 33 IN BLOCK 7 OF PARKLAND ESTATES SUBDIVISION, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 1, PAGE 156, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA. LESS AND EXCEPT THAT PART OF LOT 33 DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 33, RUN THENCE NORTH 00 DEGREES 27 MINUTES AND 30 SECONDS EAST ALONG THE WESTERLY BOUNDARY OF SAID LOT 33, 110.00 FEET TO THE NORTHERLY BOUNDARY OF SAID LOT 33; THENCE SOUTH 89 DEGREES 32 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY 12.00 FEET, THENCE SOUTH 00 DEGREES 27 MINUTES 30 SECONDS WEST, 94.38 FEET, THENCE SOUTH 54 DEGREES 55 MINUTES 44 SECONDS EAST, 27.40 FEET TO THE SOUTHERLY BOUNDARY OF SAID LOT 33, THENCE NORTH 89 DEGREES 38 MINUTES 10 SECONDS WEST ALONG SAID SOUTHERLY BOUNDARY, 34.55 FEET TO THE POINT OF BEGINNING

Property Address: 2909 W Fountain Blvd., Tampa, FL 33609

6. Movant is the entity entitled to enforce the Note and Mortgage.

7. Debtor initially defaulted under the terms of the Note and Mortgage by failing to make the installment payment due on June 1, 2024, and further subsequently defaulted by failing to pay the full amount due and payable upon maturity of the Note and Mortgage on July 1, 2024.

8. As a result of the default, Movant initiated a foreclosure action on September 17, 2024 in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida ("Circuit Court"); case number 24-CA-007584 ("Foreclosure Case"). A copy of the Foreclosure Case docket is attached hereto as Exhibit C.

9. On August 28, 2025, the Circuit Court entered a Uniform Final Judgment of Foreclosure for Enforcement of Assignment of Rents and Leases and For Breach of Note in the amount of $1,049,035.50 ("Final Judgment"), setting a foreclosure sale date of December 1, 2025. A copy of the Final Judgment is attached hereto as Exhibit D.

10. On December 1, 2025, the foreclosure sale was held and the property sold third-

party to Luminary 813, LLC.

11. After the sale took place, Movant discovered there was a transpositional mistake in the bid amount that was conveyed to undersigned counsel and an Objection to Sale and Motion to Vacate and Reset the Foreclosure Sale ("Objection") was filed on December 2, 2025. A copy of the filed Objection to Sale and Motion to Vacate and Reset Foreclosure Sale is attached hereto as Exhibit E.

12. The Objection was opposed by Luminary 813, LLC, and at the time of the petition filing, Movant was preparing to proceed with a continued hearing on the Objection, but Movant was stayed from resolving the Objection due to the filing of this Bankruptcy case.

13. On March 24, 2026, Movant filed its Motion for In Rem Relief from the Automatic Stay (DE 103) (the "Prior Motion"). The Prior Motion explained that the parties' respective rights in the Property depended upon the Circuit Court's disposition of the Objection. Specifically, if the objection was denied, the Debtor would have no further interest in the Property; however, if the Objection were granted, the Debtor would regain ownership interest in the Property.

14. Following a hearing on April 16, 2026, this Court entered its Order Granting in Part Motion for In Rem Relief from the Automatic stay on May 15, 2026 (DE 470) (the "Prior Stay Relief Order").

15. Pursuant to the Prior Stay Relief Order, the Court granted Movant relief from the automatic stay for the limited purpose of pursuing the pending objection in the Foreclosure Case. The order also authorized the Circuit Court to issue a ruling regarding the Movant's objection.

16. The Circuit Court, granted Movant's Objection on September 17, 2026 which vacated the foreclosure sale. A copy of the Circuit Court's Order is attached hereto as Exhibit F.

17. As a result of the Circuit Court's ruling, the prior foreclosure sale is no longer

effective and the Debtor again holds an ownership interest in the Property. Accordingly, the Property is once again Property of the bankruptcy estate and subject to the automatic stay.

18. The circumstances supporting stay relief identified in Movant's Prior Motion remain applicable. As set forth therein, the estimated market value of the Property is $825,946.00. The basis for such valuation is Hillsborough County Property Appraiser's valuation attached hereto as Exhibit G. The total debt owed to Movant by the Debtor is in excess of $1,192,054.48. As such there is no equity in the Property.

19. Cause exists for relief from the automatic stay for the following reasons:

(a) Movant's interest in the Property is not adequately protected pursuant to 11 U.S.C. §362(d)(1).

(b) There is no equity in the Property, and the Property is not necessary to an effective reorganization pursuant to 11 U.S.C. §362(d)(2)

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1. *In rem* relief from the automatic stay, pursuant to 11 U.S.C. §362 to proceed with the FCL Case including resetting and conducting a foreclosure sale, obtaining possession of the Property to the extent permitted under applicable law, and otherwise exercising its rights and remedies against the Property under the Final Judgment and applicable non-bankruptcy law.

2. That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3. For attorneys' fees and costs incurred in bringing this Motion before the Court to be recoverable in the Circuit Court Foreclosure Case.

4. That the 14-day stay of the order pursuant to Bankruptcy Rule 4001(a)(3) be waived.

5. In the alternative, for the Court to order payment of monthly adequate protection payments with provisions for relief from stay in the event of default in payment of the adequate

protection payments.

6. For such other relief as the Court deems proper.

Respectfully submitted,
HOWARD LAW GROUP

/s/ Matthew Klein________
MATTHEW KLEIN
FLORIDA BAR#: 73529
902 Clint Moore Road, Suite 220
Boca Raton, FL 33487
Telephone: 954-893-7874
Fax: 888-235-0017
Email: matthew@howardlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 15, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to all CM/ECF participants:

Matthew Fornshell, Esq., 250 W St., Suite 700, Columbus, OH 43215
Jessey James Krehl, Esq., 4649 Ponce de Leon Blvd, Ste 405, Coral Gables, FL 33146
Joseph A Pack, Esq., 4649 Ponce de Leon Blvd, Ste 405, Coral Gables, FL 33146
Office of the United States Trustee c/o Nicole Peair, Esq., Timberlake Annex, Suite 1200, 501 E Polk St, Tampa, FL 33602

And a true and correct copy was sent via U.S. First Class Mail to:
RAD Diversified REIT, Inc., 11418 US-19 N., Port Richey, FL 34688

/s/_Matthew Klein_________________

EXHIBIT A

# PROMISSORY NOTE

[redacted]

Property Address:

2909 W Fountain Blvd
Tampa, FL 33609

**Date of this Promissory Note: June 23, 2022**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that the undersigned **RAD Diversified REIT, INC., a Maryland Corporation** (individually and collectively, the "**Borrower**") has received, the Borrower promises to pay U.S. **$828,000.00**, or so much thereof as may be disbursed from time to time (this amount is called "**Principal**"), plus interest on all amounts disbursed from the date of each disbursement until paid, to the order of **Civic Financial Services, LLC, a California Limited Liability Company** (the "**Lender**") on the following agreements, terms and conditions, and in accordance with the terms set forth in the Disbursement Agreement (as defined below). The Borrower will make all payments under this Promissory Note (as amended, restated, supplemented or otherwise modified from time to time, this "**Note**") in the form of check or automated clearing house transfer pursuant to Section 3.4(d) of this Note or such other method as the Lender may designate in writing.

## 2. DEFINED TERMS

The following capitalized terms shall have the following meanings:

"**Affiliate**" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"**Approved Budget**" means the budget setting forth all of the direct and indirect costs to be incurred in connection with the Renovations of the Property, as approved by Lender and as described on Schedule B hereto.

"**Bankruptcy Event**" means any of the following events: (a) any Loan Party institutes or

consents to the institution of any proceeding under any Debtor Relief Law or makes an assignment for the benefit of creditors; (b) any Loan Party applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer for it or for all or any material part of its property; (c) any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer is appointed without the application or consent of any Loan Party and the appointment continues undischarged or unstayed for 30 calendar days; (d) any proceeding under any Debtor Relief Law relating to any Loan Party or to all or any material part of its property is instituted without the consent of any Loan Party and continues undismissed or unstayed for 30 calendar days, or an order for relief is entered in any such proceeding; (e) any Loan Party becomes unable or admits in writing its inability or fails generally to pay its debts as they become due; or (f) any writ or warrant of attachment or execution or similar process is issued or levied against all or any material part of the property of any Loan Party and is not released, vacated or fully bonded within 30 days after its issue or levy.

"**Borrower Rehab Contribution Amount**" means with respect to the Property, the additional proceeds to be contributed by Borrower that together with the allocated Construction and Renovations Amount for such Property shall be sufficient to fully and timely complete the Renovations in accordance with the Approved Budget. In the event that Borrower incurs any additional cost or expenses to complete the Renovations, Borrower shall be responsible for the entirety of the increased cost(s) incurred in order to complete the Renovations and shall use its own funds to complete the Renovations. The minimum Borrower Rehab Contribution Amount for the Property is set forth on Schedule A.

"**Business Day**" means any day other than a (a) Saturday, (b) Sunday, (c) day on which Lender is not open for business, or (d) day on which the Federal Reserve Bank of New York is not open for business.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. "Controlling" and "Controlled" have meanings correlative thereto. Without limiting the generality of the foregoing, a Person shall be deemed to be Controlled by another Person if such other Person possesses, directly or indirectly, power to vote twenty percent (20%) or more of the securities having ordinary voting power for the election of directors, managing general partners or the equivalent.

"**Construction and Renovations Amount**" means with respect to the Property, the Loan funds available for construction and renovation purposes (as set forth on Schedule A), said amounts to be disbursed pursuant to the provisions of the Disbursement Agreement and shall not exceed the Undisbursed Loan Proceeds.

"**Debtor Relief Laws**" means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief Laws of the United States or other applicable jurisdictions from time to time in effect.

"**Default**" means the occurrence of any event that, but for the giving of notice or the passage of time, or both, would be an Event of Default.

"**Default Rate**" means a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law or (ii) eighteen percent (18%) per annum.

"**Deposit Bank**" shall mean shall mean a depository institution insured by the Federal Deposit Insurance Corporation and selected by Lender in its sole discretion.

"**Disbursement Agreement**" means that certain Disbursement Agreement executed by Borrower as of the date hereof, as the same may from time to time be amended, restated, replaced, substituted, supplemented or otherwise modified in accordance herewith.

"**Event of Default**" shall have the meaning set forth in Section 7.1.

"**First Payment Due Date**": **08/01/2022**.

"**Future Disbursement**" shall have the meaning set forth in Section 3.2.

"**Governmental Authority**" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

"**Guarantor**" means, individually and collectively, any guarantor of the Obligations of Borrower under this Note.

"**Indebtedness**" means the Outstanding Principal Balance of the Loan, together with all interest accrued and unpaid thereon and all other Obligations and liabilities of Borrower in respect of the Loan under this Note or any other Loan Document.

"**Initial Disbursement**" means the first disbursement of Loan proceeds to be made hereunder.

"**Initial Disbursement Date**" means the date of the initial disbursement of Loan proceeds hereunder.

"**Interest Rate**" means **7.990%** per annum.

"**Laws**" means, collectively, all international, foreign, Federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial

precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority, in each case whether or not having the force of law.

"**Loan**" shall mean the loan in the original principal amount of **Eight Hundred Twenty-Eight Thousand Dollars and Zero Cents ($828,000.00)**, or so much thereof as may have been advanced hereunder by Lender to Borrower pursuant to this Note and the Disbursement Agreement.

"**Loan Documents**" means this Note, the Security Instrument, Disbursement Agreement, any guaranty of the Borrower's Obligations under this Note, and all other present and future agreements, documents and instruments executed or to be executed in connection with this Note or any of the foregoing documents, and all extensions, renewals, substitutions, replacements and modifications of any of this Note or any of the foregoing documents.

"**Loan Party**" means the Borrower and the Guarantor, if any.

"**Maturity Date**" shall mean the earlier of (i) **July 01, 2024** and (ii) the date on which the Outstanding Principal Balance of this Note and all Obligations hereunder become due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document.

"**Obligations**" means, collectively, each and all of the obligations of the Loan Parties under the Loan Documents, including, but not limited to, Borrower's obligations for payment of the Indebtedness, all transaction costs, Prepayment Premium, late fees and other amounts due or to become due to Lender pursuant to the Loan Documents, and payment of all operating expenses necessary for the operation of the Property and capital expenditures necessary to maintain the Property in accordance with the Loan Documents.

"**Outstanding Principal Balance**" shall mean, as of any date, the outstanding principal balance of the Loan.

"**Payment Due Date**" means the First Payment Due Date and any subsequent date on which a Monthly Payment is due and payable pursuant to Section 3 of this Note.

"**Person**" means any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, Governmental Authority or other entity.

"**Permitted Transfer**" means, provided that no Default or Event of Default shall then exist, a Transfer (of the interest itself, but not any pledge or grant or creation of any lien) of indirect equity interests in Borrower which in the aggregate (i) do not exceed forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower, (ii) do not result in any

Person's interest in Borrower exceeding forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower (other than a Person that owned forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower on the date hereof) and (iii) do not result in a change in Control of Borrower. Borrower shall pay all costs and expenses of Lender in connection with a Transfer.

"**Plans**" mean the plans and specifications for the Renovations which have been submitted to and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

"**Prepayment Premium**" shall mean, in connection with each Prepayment, an amount of interest equal to 6 months' interest on the Outstanding Principal Balance at the Interest Rate less the total of all interest payments received by Lender through and including the prepayment date.

"**Policies**" All insurance required pursuant to Section 3.5 of the Security Instrument.

"**Property**" means the real property described on Schedule A hereto, together with all buildings and other improvements thereon and all personal property owned by Borrower and encumbered by the Security Instrument(s), together with all rights pertaining to such property.

"**Renovations**" means the repairs, renovations and improvements to be made to the Property as shown on the Plans.

"**Reserves**" means, collectively, the Tax Reserve and the Insurance Reserve, each of which shall, individually, be a "Reserve".

"**Security Instrument**" means that certain mortgage, deed of trust or deed to secure debt, as the case may be, assignment of leases and rents, security agreement and fixture filing encumbering the Property, executed by Borrower as of the date hereof, as the same may from time to time be amended, restated, replaced, substituted, supplemented or otherwise modified in accordance herewith.

"**Servicer**" means the entity or entities appointed by Lender from time to time to serve as servicer and/or special servicer of the Loan. If at any time no entity is so appointed, the term "Servicer" shall be deemed to refer to Lender.

"**Stub Interest**" shall mean, with respect to the Initial Disbursement and any Future Disbursement, the amount of interest accruing on the amount of such disbursement from the date of such disbursement through and including the last day of the applicable calendar month, at a rate equal to the Interest Rate, as calculated in accordance with Section 3.3(b).

"**Taxes**" means all real estate and personal property taxes, assessments, fees, taxes on rents or rentals, water rates or sewer rents, facilities and other governmental, municipal and utility district charges or other similar taxes or assessments now or hereafter levied or assessed

or imposed against the Properties or Borrower with respect to the Properties or rents therefrom or that may become liens upon any of the Properties, without deduction for any amounts reimbursable to Borrower by third parties and including any interest, additions to tax or penalties applicable thereto.

"**Transfer**" means any transfer of any kind (including any gift, conveyance, lease, sublease, sale, or lien) with respect to all or any part of or any interest (whether direct or indirect, ownership, beneficial or otherwise, and irrespective of the number of tiers of parties having interests) in the Property or Borrower, or any direct or indirect constituent of Borrower, whether voluntarily or involuntarily and whether directly or indirectly, by operation of law or otherwise. Without limitation.

"**Title Company**" shall mean a national office of a major title insurance company or any successor title company acceptable to Lender and licensed to issue title insurance in the State where the Property is situated.

"**Title Insurance Policy**" shall mean an American Land Title Association mortgagee title insurance policy in form acceptable to Lender issued by the Title Company with respect to the Property and insuring the lien of the Security Instrument.

"**Undisbursed Loan Proceeds**" means, a portion of the Loan proceeds equal to **$140,000.00**, not disbursed to the Borrower on the date hereof, less any amounts to be disbursed to the Borrower pursuant to the Disbursement Agreement.

3. GENERAL LOAN TERMS

3.1 Agreement to Lend and Borrow. Subject to and upon the terms and conditions set forth herein, Lender is lending to Borrower and Borrower is borrowing from Lender the Loan.

3.2 Disbursements. Borrower acknowledges receipt of the Initial Disbursement on the date hereof. Lender shall, from time to time, make additional disbursements of the Undisbursed Loan Proceeds (each, a "Future Disbursement") in accordance with the terms of this Note and the Disbursement Agreement.

3.3 Interest

(a) Interest Rate. Subject to the further provisions of this Note and the Loan Documents, including, without limitation, Section 3.3(c) hereof, interest on the Outstanding Principal Balance and all Obligations under the Loan Documents shall accrue from and including the Initial Disbursement Date to the Maturity Date, at the applicable Interest Rate. Interest will be charged and accrue from the date of the Initial Disbursement and each Future Disbursement by Lender (whether into escrow or otherwise) until the Indebtedness is paid in full.

(b) Interest Calculation. Interest shall be computed on the basis of a 30-day month

and 360-day year and actual days elapsed (which results in more interest being paid than if computed on the basis of a 365 or 366 day year); provided however, for the full or partial calendar month at the beginning of the term of this Note and the month in which the Indebtedness and all other Obligations of the Borrower under this Note are paid in full, interest shall be computed on the basis of a year of 365 or 366 days, as the case may be, and actual days elapsed.

(c) Default Rate. After the occurrence and during the continuance of an Event of Default, the Outstanding Principal Balance and all other portions of the Indebtedness, shall accrue interest at the Default Rate. Interest at the Default Rate shall be paid immediately upon demand, which demand may be made as frequently as Lender shall determine.

3.4 Loan Payments.

(a) Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Initial Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Initial Disbursement Date. If the Initial Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date. The Payment Due Date for the first monthly installment payment under Section 3.4(b) will be the First Payment Due Date set forth in Section 2. Except as provided in this Section 3.4(a), accrued interest will be payable in arrears.

(b) Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, Borrower shall pay to Lender an amount equal to interest only at the Interest Rate on the Outstanding Principal Balance in consecutive monthly installments due and payable on the first day of each calendar month (each a "**Monthly Payment**"). Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any amount added to the Outstanding Principal Balance pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of interest or principal and interest. Notwithstanding anything to the contrary contained herein and subject to the provisions set forth in Section 6 of this Note, upon the occurrence and during the continuance of an Event of Default, Borrower shall no longer have the right to make Monthly Payments at the Interest Rate, but shall instead make payments at the Default Rate.

(c) Payment on Maturity Date. Borrower shall pay to Lender on the Maturity Date the outstanding Indebtedness, all accrued and unpaid interest (including, without limitation, all unpaid and accrued interest thereon) and all other amounts and Obligations due hereunder and all amounts due under the Loan Documents. A balloon payment will be due upon full repayment of this Note even if this Note is not repaid until the Maturity Date.

(d) ACH Authorization. On each date when the payment of any principal, interest or

fees are due hereunder or under any Loan Document, the Borrower agrees to maintain on deposit in an ordinary checking account maintained by the Borrower with the financial institution identified by the Borrower in a separate automatic payment authorization (as such account shall be designated by the Borrower in a separate automatic payment authorization delivered to the Lender from time to time, the "**Borrower Account**") an amount sufficient to pay such principal, interest or fees in full on such date. The Borrower hereby authorizes the Lender on each Payment Due Date to deduct automatically all principal, interest or fees when due hereunder or under any other Loan Document from the Borrower Account (and if applicable, imposition deposits held by Lender for the purposes of facilitating the paying of Taxes, insurance cost for the Property or other individual impositions by the date on which such amounts come due). The Lender agrees to provide notice to the Borrower of any automatic deduction made pursuant to this provision showing in reasonable detail the amounts of such deduction.

(e) Method and Place of Payment. Except as otherwise specifically provided herein, the Borrower will make all payments required under this Note, without notice and without offset or deduction, at **2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278** or at a different place if required by the Lender, unless such Monthly Payments are drawn directly from the Borrower Account in accordance with Section 3.4(d) of this Note. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in the designated Borrower Account to cover any preauthorized monthly debit from the Borrower Account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $15.00 (but not more than the maximum amount allowed by law) for each such event.

3.5 Late Charges. If the Lender has not received the full amount of any Monthly Payment or other amounts payable under this Note, the Security Instrument or any other Loan Document within the fifteenth (15) calendar day after the date the Monthly Payment or other amount is due, the Borrower will pay a late charge to the Lender. The amount of the charge will be fifteen percent (15%) of such overdue installment payment or other amount due. Borrower will pay this late charge promptly but only once on each late payment. Any amounts payable under the Loan Documents that are not paid on or before the due date shall be deemed delinquent. The Borrower acknowledges that late payment to the Lender of any sums due hereunder will cause the Lender to incur costs not contemplated hereunder, the exact amount of which would be impracticable or extremely difficult to ascertain. Such costs include processing and accounting costs, the expenses incurred and time and effort associated with recovering the delinquent payment, and the loss of timely use of the payment amount. The Borrower and the Lender each agree that the late payment charge described in this Section 3.5 represents a fair and reasonable estimate of the costs the Lender will incur by reason of the late payment. The provisions of this Section 3.5 shall not be construed as extending the time for payment of any amounts due under this Note, and acceptance of a late payment charge by the Lender shall in no event constitute a waiver of the Borrower's Event of Default with respect to the overdue amount nor prevent the Lender from exercising any of its rights and remedies with respect to such Event of Default (including, without limitation, charging interest at the Default Rate set forth below).

3.6 Phased Funding. Lender shall make Future Disbursements of the Undisbursed Loan Proceeds for the purposes of paying for any Renovations relating to the Property pursuant to the terms and conditions set forth in the Disbursement Agreement. Interest shall accrue on amounts advanced commencing as of the day such Future Disbursement is made. Each Future Disbursement will be added to the principal balance and shall constitute a portion of the Indebtedness of the Loan as of the day such Future Disbursement is made. Lender's obligation to make each Future Disbursement shall be subject to the satisfaction of each and every condition set forth in the Disbursement Agreement on the date of each request for such Future Disbursement. No Future Disbursement made prior to or without the fulfillment by Borrower of all of the conditions precedent thereto, whether or not known to Lender, shall not constitute a waiver by Lender of the requirement that all conditions, including the non-performed conditions, shall be required with respect to all Future Disbursements.

3.7 Future Disbursements Generally.

(a) Lender may, in its sole and absolute discretion, cause Future Disbursements to be made on account of Borrower and deposited into the respective Reserve for which the related Future Disbursement has been established, up to, but not exceeding, the unfunded amount of the Undisbursed Loan Proceeds on the date of each Future Disbursement. Borrower shall have no consent or prior notice rights in respect of any Future Disbursement made by Lender in accordance with this Section 3.7, and hereby irrevocably authorizes Lender to (i) make such Future Disbursements, (ii) deduct the amounts specified in Section 3.7(b) below from such Future Disbursements, and (iii) incur the costs, and obtain the endorsements to the Title Insurance Policy.

(b) In connection with each Future Disbursement, Borrower hereby instructs Lender to net fund each Future Disbursement to the related Reserve for which a Future Disbursement has been made, after deducting therefrom (i) Lender's reasonable costs and expenses (including counsel fees) in making such Future Disbursement, (ii) Stub Interest, and (iii) the costs and expenses of obtaining the required endorsement to the Title Insurance Policy. The aggregate amount of all Future Disbursements of the Construction and Renovations Amount shall under no circumstance exceed the Undisbursed Loan Proceeds.

(c) If the Future Disbursement Date is not a Payment Due Date, (i) Borrower shall pay to Lender on such Future Disbursement Date an amount equal to interest only on the disbursement from the Future Disbursement Date up to and excluding the next Payment Due Date, in an amount equal to the Stub Interest and (ii) on each Payment Due Date thereafter, Borrower shall make payments to Lender with respect to such Future Disbursement in accordance with Section 3.4 hereof.

## 4. BORROWER'S RIGHT TO PREPAY

4.1 Voluntary Prepayments.

(a) The Borrower may, upon prior written notice to the Lender, at any time or from time to time, voluntarily prepay the Loan, in whole or in part (each such prepayment of Principal is referred to herein as a "**Prepayment**"); provided that (A) such notice must be in a form acceptable to the Lender and be received by the Lender not later than 11:00 a.m. Pacific Time three (3) Business Days prior to the date of such Prepayment; (B) such notice shall specify the date and amount of such Prepayment; (C) any such Prepayment shall be in a minimum principal amount of $10,000 or, if less, the entire Outstanding Principal Balance; (D) each such Prepayment shall be accompanied by a payment by the Borrower of all accrued interest on the amount prepaid and the Prepayment Premium due with respect to such Prepayment. If such notice is given by the Borrower, the Borrower shall make such Prepayment and the payment amount specified in such notice shall be due and payable on the date specified therein. The Borrower may not designate a payment as a Prepayment if the Borrower has not made all the Monthly Payments due under the Note.

(b) The Lender may apply any Prepayment made by the Borrower hereunder to the accrued and unpaid interest on the Prepayment amount and the Prepayment Premium, before applying any such Prepayment to reduce the Indebtedness outstanding. If the Borrower makes a partial Prepayment of the Loan, there will be no changes in the due dates of the Monthly Payments. Any such partial Prepayment may reduce the amount of the Borrower's Monthly Payments on the Payment Due Date immediately following such partial Prepayment, at which time the Lender shall recalculate the Monthly Payments due under this Note. Lender will notify Borrower in writing of its determination of the adjusted Monthly Payment, which notice shall be conclusive and binding absent manifest error.

(c) [Reserved]

(d) The Borrower waives any right, under California Civil Code Section 2954.10 or otherwise, to prepay any portion of the Outstanding Principal Balance under this Note without paying the Prepayment Premium described in this Note. The Borrower acknowledges that Prepayment of the principal balance of this Note in whole or in part may result in the Lender incurring additional losses, costs, expenses and liabilities, including lost revenue and lost profits. The Borrower therefore agrees to pay the Prepayment Premium on the terms set forth in this Note if any principal amount is prepaid, whether voluntarily or by reason of acceleration, including acceleration upon any sale or other Transfer of any interest in the Property securing this Note in violation of the provisions of this Note or the related Security Instrument. The Borrower further agrees that the Lender's willingness to offer the Interest Rate described above to the Borrower is sufficient and independent consideration, given individual weight by the Lender, for this waiver. The Borrower understands that the Lender would not offer such an interest rate to the Borrower absent this waiver.

## 5. LOAN CHARGES

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection

with this loan exceed the permitted limits, then: (a) the interest or any such loan charge shall be reduced by the amount necessary to reduce the interest or charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to the Borrower. The Lender may choose to make this refund by reducing the principal that the Borrower owes under this Note or by making a direct payment to the Borrower. If a refund reduces Outstanding Principal Balance, the reduction will be treated as a partial Prepayment.

## 6. DEFAULT RATE

Upon the occurrence and during the continuance of an Event of Default, the Interest Rate applicable to the Outstanding Principal Balance and all other Obligations of the Borrower under this Note and the Loan Documents will automatically increase to the Default Rate, and shall be payable upon demand from time to time. Notwithstanding anything to the contrary contained in this Note and the other Loan Documents, with respect to monetary defaults, the Default Rate shall be assessed as follows: If any amount due in respect of the Loan (other than amounts due on the Maturity Date or earlier acceleration) remains past due for thirty (30) days or more, interest on such unpaid amount(s) shall accrue from the date payment is due at the Default Rate and shall be payable on demand by Lender. Should an Event of Default occur with respect to two (2) or more consecutive Monthly Payments and the Borrower remains past due for more than sixty (60) days (i.e., two or more consecutive Monthly Payments are not paid when due), the Loan shall bear interest at the applicable Default Rate for the remainder of the term until the Indebtedness and all other Obligations of the Borrower under this Note and the other Loan Documents are paid in full. From and after the Maturity Date, the unpaid Outstanding Principal Balance and all accrued interest thereon shall continue to bear interest at the Default Rate until and including the date on which the entire Indebtedness and all outstanding Obligations due and owing under the Loan Documents are paid in full. During any period that the Default Rate is in effect the additional interest accruing over and above the Interest Rate provided for in Section 2 shall be immediately due and payable in addition to the regularly scheduled Monthly Payments.

Borrower acknowledges and agrees that the increase from the Interest Rate to the Default Rate represents a fair and reasonable estimate of the additional risks, costs and expenses Lender will incur by reason of Borrower's Default on account of the delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquency on the Loan.

## 7. DEFAULTS

7.1 Events of Default. Each of the following shall constitute an event of default hereunder (each an "**Event of Default**"):

(a) Any failure by Borrower to pay or deposit when due any amount required by this Note or any other Loan Document;

(b) Any failure of Borrower to comply with any other covenant contained in this Note

that calls for the payment of money;

(c) If the payment of all of the Obligations due on the Maturity Date is not paid when due;

(d) The Borrower fails to perform or observe any other covenant or agreement (not specified in Section 7.1(a), 7.1(b), or 7.1(c) above) contained in this Note or any Loan Document on its part to be performed or observed and such failure continues for 10 days;

(e) Any representation, warranty, certification, covenant or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party in this Note, in any other Loan Document, or in any document delivered in connection herewith or therewith shall be incorrect or misleading when made or deemed made;

(f) Any failure of Borrower to maintain in full force and effect all Policies required hereunder or any other Loan Document;

(g) Any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt against any Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(h) The commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of any Property or otherwise materially impair the lien created by the Security Instrument or Lender's interest in any Property;

(i) Material deviations in the work of construction from the Plans (or, where Lender has so designated, from approved shop or working drawings) without the approval of Lender (subject, however, to Borrower's right to make such changes in the work from the Plans as it desires in accordance with this Note and the Disbursement Agreement, so long as Borrower pays for any increase in costs of construction caused by said changes);

(j) A Transfer other than a Permitted Transfer occurs (including without limitation, the creation or existence of any lien as provided in Section 3.20 of the Security Instrument);

(k) The occurrence of any "Default" as defined in any other Loan Document in which a "Default" is defined, including, any breach, "Default" or "Event of Default" under any Loan Document;

(l) If the Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

(m) Borrower (if Borrower is a natural person) or any member, shareholder, partner

or trustee of Borrower (if such member, shareholder, partner or trustee is a natural person), or any Guarantor who is a natural person, dies or becomes incompetent (unless, in the case of the death or incapacity of any member, shareholder or partner of Borrower, the Transfer of such member's, shareholder's or partner's interest in Borrower would have been a Permitted Transfer);

(n) The occurrence of a Bankruptcy Event;

(o) Any Loan Party or any Affiliate thereof (A) fails to make any payment when due (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any indebtedness or guarantee (other than under the Loan Documents) owed or owing to the Lender, or (B) fails to observe or perform any other agreement or condition relating to any such Indebtedness or guarantee owed or owing to the Lender or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event occurs, the effect of which default or other event is to cause, or to permit the Lender to cause, with the giving of notice if required, such Indebtedness to be demanded or to become due (automatically or otherwise) prior to its stated maturity or such guarantee to become payable;

(p) Any breach or default or other similar condition or event (however described) by Borrower or an Affiliate of Borrower under any other loan, note or agreement to which Lender or any Affiliate of Lender is also a party;

(q) Borrower shall be in default under any mortgage or security agreement covering any part of the Property, whether it be superior or junior in Lien to the Security Instrument;

(r) If the Property becomes subject to any mechanic's, materialman's or other lien, which is not removed or bonded over within thirty (30) days of filing, except a lien for taxes not then due and payable; and/or

(s) Except as permitted herein and subject to Lender's prior written consent, the alteration, improvement, demolition or removal of any of the Improvements (as defined in the Security Instrument) without the prior written consent of Lender.

7.2 Remedies.

(a) Acceleration. If an Event of Default has occurred and is continuing, the Indebtedness, entire Outstanding Principal Balance of this Note, any accrued interest, the Prepayment Premium, and all other Obligations of the Borrower under this Note and any other Loan Document, at the option of the Lender, shall immediately become due and payable, without any prior written notice to the Borrower, unless applicable law requires otherwise (and in such case, after any required notice has been given). The Lender may exercise this option to accelerate the Loan regardless of any prior forbearance. In addition, the Lender shall have all rights and remedies afforded to the Lender hereunder and under the other Loan Documents, including, without limitation, application of the Default Rate of Interest in accordance with Section 6,

foreclosure on and/or the power of sale of the Property covered by the Security Instrument, as provided in the Security Instrument, and any rights and remedies available to the Lender at law or in equity. Notwithstanding the foregoing, the occurrence of any Bankruptcy Event shall automatically accelerate this Note and all Obligations under this Note and the other Loan Documents, and this Note and the Obligations under this Note and the other Loan Documents shall be immediately due and payable without written notice or further action by the Lender. Each right and remedy provided in this Note is distinct from all other rights or remedies under this Note or any other Loan Document or afforded by applicable Law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. The Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of additional Default by the Borrower in order to exercise any of its remedies with respect to any Event of Default.

(b) <u>No Waiver by Lender</u>. Any waiver of a Default, Event of Default or forbearance by the Lender in exercising any right or remedy under this Note or any other Loan Document or otherwise afforded by applicable Laws, shall not be a waiver of any other Default or Event of Default or preclude the exercise or failure to exercise of any other right or remedy. Enforcement by the Lender of any security for the Obligations of the Borrower under this Note shall not constitute an election by the Lender of remedies so as to preclude the exercise or failure to exercise of any other right or remedy available to the Lender. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment.

(c) <u>Payment of Lender's Costs and Expenses</u>. The Borrower shall immediately reimburse the Lender for all fees and costs, including reasonable attorneys' fees and experts' fees and costs, incurred by the Lender for: (i) enforcement of this Note, any other Loan Document or any terms hereof or thereof, or the exercise of any rights or remedies hereunder or thereunder and/or at Law, in equity or otherwise, whether or not any action or proceeding is filed; (ii) representation of the Lender in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding under any Debtor Relief Law of or relating to any Loan Party or the Property covered by the Security Instrument; or (iii) representation of the Lender in any action or proceeding relating to the Property covered by the Security Instrument, whether commenced by the Lender or any other Person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings. All such fees and costs shall bear interest until paid at the rate applicable from time to time under this Note.

(d) [Reserved]

## 8. GIVING OF NOTICES

All notices, consents, approvals and requests required or permitted under this Note any Loan Document shall be given in writing by expedited prepaid delivery service, either commercial or United States Postal Service, with proof of delivery or attempted delivery, addressed as follows

(except that any party hereto may change its address and other contact information for purposes hereof at any time by sending a written notice to the other parties to this Agreement in the manner provided for in this Section). A notice shall be deemed to have been given when delivered or upon refusal to accept delivery.

**If to Lender:**

Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278
Attention: Post-Closing
CivicPostClosing@CivicFS.com

**If to Borrower:**

RAD Diversified REIT, INC.
10808 Foothill Blvd #160-347
Rancho Cucamonga, CA 91730
Attention: Brandon Mendenhall
Email: caroline@taxauctioninvestors.com

**With Copy to:**

Fay Servicing
8000 Woodland Center Blvd.
Tampa, FL 33614
Attention: VP of Account Management
CommercialServicing@FayServicing.com

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one Person signs this Note, each Person is jointly, severally, fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount of all Obligations owed. Any Person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any Person who takes over these Obligations, including the Obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each Person individually or against all of such Persons together. This means that any one such Person may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

The Borrower and each other Loan Party hereby waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Lender to demand payment of

amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other Persons that amounts due have not been paid. In addition, without limiting the foregoing, each Loan Party hereby waives diligence, demand, notice of non-payment, protest and notice of protest, and the Borrower and each other Loan Party (a) agrees that the time for performance of any Obligation under this Note may be extended from time to time without notice, (b) consents to the release without notice of any party liable hereon or herefor, (c) consents to the addition without notice of parties liable hereon or herefor, and (d) consents to the acceptance without notice of further security for this Note, including other types of security, all without in any way affecting their liability. Further, each Loan Party waives the right to plead any and all statutes of limitations as a defense to this Note, any guaranty hereof or any agreement to pay the Obligations hereof, or any other Loan Document, in each case to the full extent permitted by law. No provision of this Note or any other Loan Document may be waived or modified orally, it being expressly agreed that any such waiver or modification must be in a writing signed by the Lender.

## 11. UNIFORM SECURED NOTE

The Indebtedness and all Obligations hereunder are secured by, among other things, the Security Instrument and reference is made to the Security Instrument for other rights of Lender as to collateral for the Indebtedness. This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note, protects the Lender from possible losses which might result if the Borrower does not keep the promises made in this Note. That Security Instrument describes how and under what conditions the Borrower may be required to make immediate payment in full of all amounts the Borrower owes under this Note. Some of those conditions are described as follows:

> If all or any part of the Properties or any Interest in the Properties is sold or Transferred, other than a Permitted Transfer (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or Transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable Law. If Borrower fails to pay these sums, Lender may invoke any remedies permitted by the Security Instrument without notice or demand on Borrower.

## 12. LIABILITY; FULL PAYMENT

The Borrower is personally liable for the Indebtedness and all Obligations under this Note. All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim. All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any Taxes, levies, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any Governmental Authority. The Borrower shall indemnify the Lender against any such Taxes, levies, imposts, duties, charges and fees (other than taxes on the income of the Lender imposed by any taxing authority) which may

be assessed against the Lender or claimed or demanded from the Lender in respect of any amount payable by the Borrower hereunder, and against any costs, charges, expenses or liability arising out of or with respect to such assessment, claim or demand, to the full extent permitted by Law.

**13. BUSINESS PURPOSE LOAN; NO OCCUPANCY BY ANY LOAN PARTY**

BORROWER AND EACH OTHER LOAN PARTY WILL USE THE PROCEEDS OF THE LOAN THAT BORROWER HAS RECEIVED UNDER THIS NOTE SOLELY FOR THE PURPOSE OF ACQUIRING OR REFINANCING REAL PROPERTY FOR INVESTMENT PURPOSES, AND BORROWER WARRANTS AND REPRESENTS TO THE LENDER THAT ALL LOAN PROCEEDS WILL BE SOLELY USED TO ACQUIRE OR REFINANCE REAL PROPERTY FOR INVESTMENT PURPOSES, AND THAT NO LOAN PROCEEDS WILL IN ANY EVENT BE USED FOR A CONSUMER, FAMILY OR HOUSEHOLD PURPOSE. BORROWER FURTHER WARRANTS AND REPRESENTS TO LENDER THAT: (A) NEITHER BORROWER NOR ANY OTHER LOAN PARTY NOR ANY LOAN PARTY'S SPOUSE, CHILD, DEPENDENT, OR PARENT WILL AT ANY TIME DURING THE TERM OF THIS NOTE INHABIT THE PROPERTY, AND (B) THE PROPERTY WILL NOT BE THE PRINCIPAL RESIDENCE OR SECONDARY RESIDENCE OF ANY LOAN PARTY OR SPOUSE, CHILD, DEPENDENT, OR PARENT OF ANY LOAN PARTY.

**14. GOVERNING LAW; SUBMISSION TO JURISDICTION; JURY TRIAL WAIVER AND JUDICIAL REFERENCE**

**(A) Governing Law; Submission to Jurisdiction**

This Note shall be governed by and construed under the internal laws of the State of California, without regard to conflict of law provisions. The Borrower and Lender each irrevocably submit and consent to jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of, or relating to the Loan, this Note and the other Loan Document, and consent to service of process by any means allowed by California or federal law.

**(B) Waiver of Jury Trial**

TO THE FULLEST EXTENT PERMITTED BY LAW, THE BORROWER AND LENDER EACH HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN, THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE (OTHER THAN ANY ACTION IN RESPECT OF THE CREATION, PERFECTION OR ENFORCEMENT OF A LIEN OR SECURITY INTEREST CREATED PURSUANT TO ANY LOAN DOCUMENTS NOT GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA); THE BORROWER AND LENDER EACH HEREBY AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION,

OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY TO THE FULLEST EXTENT PERMITTED BY LAW. THE BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH THE BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE THE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

**(C) Judicial Reference**

IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1 ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE (PROVIDED, HOWEVER, THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO JUDICIAL REFERENCE SHALL BE APPLICABLE WITH RESPECT TO ANY ACTION IN RESPECT OF THE FORECLOSURE OF THE SECURITY INSTRUMENT). PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 AND 640 TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. THE BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH THE BORROWER AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

## 15. LOAN RESERVES

15.1 Tax Reserve. Unless waived by Lender in writing, Borrower shall deposit with Lender (i) on the Initial Disbursement Date an amount sufficient to pay all Taxes by the 30th day prior to the date they come due, assuming subsequent monthly fundings on Payment Due Dates of one-twelfth (1/12) of projected annual Taxes, plus (ii) on each Payment Due Date, an amount equal to one-twelfth (1/12) of the Taxes that Lender estimates will be payable during the next ensuing twelve (12) months (the "**Tax Reserve**"). At Lender's discretion, at origination, Borrower shall deposit with Lender additional amounts to be held in the Tax Reserve and applied towards the payment of Taxes that will be payable during the life of the Loan. If Lender makes such election, it shall be noted on the settlement statement at closing. If at any time Lender reasonably

determines that the amount in the Tax Reserve will not be sufficient to accumulate (upon payment of subsequent monthly amounts in accordance with the provisions of this Note) the full amount of all installments of Taxes by the date on which such amounts come due, then Lender shall notify Borrower of such determination and Borrower shall increase its monthly deposit to the Tax Reserve by the amount that Lender reasonably estimates is sufficient to achieve such accumulation. Borrower shall provide Lender with copies of all tax bills relating to the Property promptly after Borrower's receipt thereof. Provided that no Event of Default has occurred and is continuing, Lender shall release funds from the Tax Reserve to pay Taxes due, subject to such conditions as Lender may reasonably require, including that Lender shall have received Tax bills for the same not less than thirty (30) days before the due dates thereof.

15.2 Insurance Reserve. Unless waived by Lender in writing, Borrower shall deposit with Lender on the Initial Disbursement Date an amount sufficient to pay all insurance costs for the Property that Lender estimates will be payable for the ensuing twelve (12) months and thereafter on each Payment Due Date one-twelfth (1/12) of the insurance premiums that Lender reasonably estimates will be payable during the ensuing twelve (12) months for renewal or replacement of the Policies upon the expiration thereof (the "**Insurance Reserve**"). At Lender's discretion, at origination, Borrower shall deposit with Lender additional amounts to be held in the Insurance Reserve and applied towards the payment of insurance premiums that will be payable during the life of the Loan. If Lender makes such election, it shall be noted on the settlement statement at closing If at any time Lender reasonably determines that the amount in the Insurance Reserve will not be sufficient to pay the insurance premiums becoming due, Lender may so notify Borrower, and then commencing with the first Payment Due Date thereafter, the monthly deposits to the Insurance Reserve shall be increased by the amount that Lender estimates is sufficient to make up the deficiency at least thirty (30) days prior to expiration of the Policies. Provided no Event of Default has occurred and is continuing, Lender shall release funds in the Insurance Reserve to pay insurance premiums due with respect to the Policies, subject to such conditions as Lender may reasonably require, including that Lender shall have received invoices for the same not less than thirty (30) days before the due dates thereof.

15.3 [Reserved]

15.4 [Reserved]

15.5 Reserve Funds Generally. Any funds remaining in the Reserves (other than earnings or interest thereon) after the Obligations have been paid in full shall be returned to Borrower. Borrower shall not be entitled to any earnings or interest on funds deposited into the Reserves.

15.6 Security Interest. As security for the Obligations, Borrower hereby grants to Lender a continuing first-priority security interest in each Reserve and all amounts at any time contained therein and the proceeds thereof and will take all actions necessary to maintain in favor of Lender a perfected first priority security interest therein, including filing UCC-1 financing statements and continuations thereof.

## 16. OFAC; ANTI-MONEY LAUNDERING

16.1 USA PATRIOT Act. The Lender hereby notifies the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it is required to obtain, verify and record information that identifies the Borrower and each other Loan Party, which information includes the name and address of the Borrower and each other Loan Party and other information that will allow the Lender to identify the Borrower and each other Loan Party in accordance with the Act. The Borrower and each other Loan Party shall, promptly following a request by the Lender, provide all documentation and other information that the Lender requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Act.

16.2 OFAC Representations. Neither the Borrower, nor any other Loan Party, nor, to the knowledge of the Borrower, any director, officer, employee, agent, affiliate or representative thereof, is an individual or entity that is, or is owned or controlled by one or more individuals or entities that are (i) currently the subject or target of any sanction administered or enforced by the United States Government (including without limitation, OFAC), the United Nations Security Council, the European Union, Her Majesty's Treasury ("**HMT**") or other relevant sanctions authority ("**Sanctions**"), (ii) included on the List of Specially Designated Nationals maintained by the Office of Foreign Assets Control of the United States Department of the Treasury ("**OFAC**") or HMT's Consolidated List of Financial Sanctions Targets, or any similar list enforced by any other relevant sanctions authority or (iii) located, organized or resident in any country or territory to the extent that such country or territory itself is the subject of any Sanction. The Borrower has conducted its businesses in compliance in all material respects with all applicable Sanctions and have instituted and maintained policies and procedures designed to promote and achieve compliance with such Sanctions.

16.3 Representation re Anti-Corruption Laws. The Borrower has conducted its business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, and other applicable anti-corruption legislation in other jurisdictions and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws.

16.4 Covenant re Anti-Corruption Laws. The Borrower shall conduct its businesses in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, and other applicable anti-corruption legislation in other jurisdictions and with all applicable Sanctions, and maintain policies and procedures designed to promote and achieve compliance with such laws and Sanctions.

## 17. SALE OF NOTE AND SECONDARY MARKET TRANSACTION

The Borrower understands that the Lender may assign, sell, pledge, securitize or transfer

this Note or any interest (including, without limitation, participation interests) in this Note (each such sale, assignment, participation and/or securitization, a "**Secondary Market Transaction**") at any time and from time to time without notice to, or the consent of, the Borrower. The Lender or anyone who takes this Note in connection with a Secondary Market Transaction and who is entitled to receive payments under this Note is called the "**Note Holder.**" The Borrower may not assign or transfer its rights or obligations under this Note without the prior written consent of the Note Holder, which the Note Holder may give or refuse in its sole and absolute discretion. This Note binds the Borrower and its successors, permitted assigns, heirs, administrators and executors, and inures to the benefit of the Note Holder and its successors, assigns, participants, heirs, administrators and executors. The Borrower shall (A) do anything necessary to comply with the reasonable requirements of the Note Holder or provide, or cause to be provided, to the Note Holder within ten (10) days of the request, at Borrower's cost and expense, such further documentation or information as the Note Holder may reasonably require, in order to enable the Note Holder to consummate a Secondary Market Transaction; (B) confirm that the Borrower is not in Default under this Note or any other Loan Document or in observing any of the covenants or agreements contained in this Note or any other Loan Document (or, if the Borrower is in Default, describing such Default in reasonable detail); and (C) execute and deliver to the Lender such other documentation, including any amendments, corrections, deletions or additions to this Note as is reasonably required by the Note Holder.

**18. [RESERVED]**

**19. SERVICER**

Lender may delegate any and all rights and obligations of Lender under the Note and the other Loan Documents to the Servicer upon notice by Lender to Borrower, whereupon any notice or consent from the Servicer to Borrower, and any action by Servicer on Lender's behalf, shall have the same force and effect as if Servicer were Lender.

**20. CONSTRUCTION**

Any reference in this Note to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Note or to a Section or Article of this Note. Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Note includes the plural and use of the plural includes the singular. As used in this Note, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation. Whenever Borrower's knowledge is implicated in this Note or the phrase "to Borrower's knowledge" or a similar phrase is used in this Note, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation. Unless otherwise provided in this Note, if Lender's or the Note Holder's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action

or decision shall be made in Lender's or the Note Holder's sole and absolute discretion. All references in this Note to a separate instrument or agreement shall include such instrument or agreement as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time pursuant to the applicable provisions thereof. "Lender may" or "Note Holder may" shall mean at Lender's or Note Holder's sole discretion, but shall not be an obligation. If there are multiple Borrowers, "Borrower" means all and any one or more of them.

**21. FINAL DOCUMENTS; NO ORAL AGREEMENTS**

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE LOAN PARTIES AND THE LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE LOAN PARTIES AND THE LENDER.

**22. TIME IS OF THE ESSENCE**

The Borrower agrees that, with respect to each and every obligation and covenant contained in this Note, time is of the essence.

**23. NOTICE – TAXES**

AS THIS NOTE IS SECURED BY A MORTGAGE, FLORIDA DOCUMENTARY STAMP TAXES AND NONRECURRING INTANGIBLE TAXES ARE BEING PAID IN CONNECTION WITH THIS NOTE, AS REQUIRED BY FLORIDA LAW, AND EVIDENCE OF SUCH PAYMENT SHALL BE AFFIXED TO THE MORTGAGE.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

IN WITNESS WHEREOF, this Note has been duly executed by the Borrower as of the day and year first above written.

**BORROWER:**

RAD Diversified REIT, INC., a Maryland Corporation

By: ______________________________
Name: Taylor Green
Title: Secretary

Address:

10808 Foothill Blvd #160-347
Rancho Cucamonga, CA 91730
Attention: Brandon Mendenhall

[redacted]

# ALLONGE

BORROWER(S): RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION,
BY: TAYLOR GREEN

PROPERTY ADDRESS(ES): 2909 W FOUNTAIN BLVD, TAMPA, FL 33609

ORIGINATING LENDER: CIVIC FINANCIAL SERVICES, LLC

ORIG. LOAN AMOUNT: $828,000.00

[redacted]

NOTE DATE: 06/23/2022

PAY TO THE ORDER OF:

**CIVIC REAL ESTATE HOLDINGS III, LLC**

WITHOUT RECOURSE:

**CIVIC FINANCIAL SERVICES, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**

BY: FAY SERVICING, LLC
ITS: ATTORNEY-IN-FACT

BY: ______________________

NAME: BRETT GERNON
TITLE: ASSISTANT SECRETARY

Instrument #: 2022340241, Pg 1 of 41, 7/8/2022 3:43:24 PM INT. TAX PD (F.S. 199) $1656.00, DOC TAX PD (F.S. 201.08) $2898.00, Deputy Clerk: O Cindy Stuart, Clerk of the Circuit Court Hillsborough County

ORIGINAL

EXHIBIT B

**PREPARED BY, RECORDING REQUESTED BY AND WHEN RECORDED, RETURN TO:**

Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278

[redacted]

TO BE RECORDED IN THE MORTGAGE RECORDS OF Hillsborough COUNTY, FLORIDA

[redacted]

**MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $833,513.10, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

NOTICE TO RECORDER:

FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT OF $ 2898.00 AND NONRECURRING INTANGIBLE TAX IN THE AMOUNT OF $ 1656.00 ARE BEING PAID IN CONNECTION WITH THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $828,000.00 SECURED HEREBY.

# MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

[redacted]

This MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the **"Security Instrument"**) dated as of **June 23, 2022**, is executed by **RAD Diversified REIT, INC., a Maryland Corporation organized and existing under the laws of Maryland, ("Borrower")**, whose address for all purposes hereunder is **10808 Foothill Blvd #160-347, Rancho Cucamonga, CA 91730,** to and for the benefit of **Civic Financial Services, LLC, a California Limited Liability Company** (together with all of its successors and assigns, **"Lender"**), whose address for all purposes hereunder is **2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278.**

## WITNESSETH:

A. This Security Instrument is given to secure a loan (the "Loan") in the maximum principal sum of **Eight Hundred Twenty-Eight Thousand Dollars and Zero Cents ($828,000.00)** or so much thereof as may have been disbursed and evidenced by that certain Promissory Note dated the date hereof made by Borrower to Lender.

B. Borrower desires to secure the payment of the outstanding principal amount of the Loan outstanding from time to time together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan under the Note and the other Loan Documents (as defined in the Note) and the performance of all of its Obligations under the Note and the other Loan Documents.

C. This Security Instrument is given pursuant to the Note, and payment, fulfillment and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Note and the related documents, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument.

**NOW THEREFORE,** in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by Borrower:

## 1. Definitions

Capitalized terms used and not specifically defined herein have the meanings given to such

terms in the Note. All terms used and not specifically defined herein, but which are otherwise defined by the UCC, shall have the meanings assigned to them by the UCC. The following terms, when used in this Security Instrument, shall have the following meanings:

"**Applicable Law**" means, collectively, all international, foreign, federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority, in each case whether or not having the force of law.

"**Community Association Dues, Fees, and** Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners' association or similar organization.

"**Condemnation Action**" means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Property, whether direct or indirect.

"**Default**" has the meaning set forth in the Note.

"**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

"**Escrow Items**" has the meaning set forth in Section 3.3 of this Security Instrument.

"**Event of Default**" has the meaning set forth in the Note.

"**Fixtures**" means all Goods that are so attached or affixed to the Land or the Improvements as to constitute a fixture under the laws of the Property Jurisdiction.

"**Future Advances**" has the meaning set forth in Section 8 of this Security Instrument.

"**Goods**" means all of Borrower's present and hereafter acquired right, title and interest in all goods which are used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements, including inventory; furniture; furnishings; machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors;

pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; exercise equipment; supplies; tools; books and records (whether in written or electronic form); websites, URLs, blogs, and social network pages; computer equipment (hardware and software); and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements.

**"Improvements"** has the meaning set forth in Section 2 of this Security Instrument.

**"Indebtedness"** has the meaning set forth in the Note.

**"Land"** has the meaning set forth in Section 2 of this Security Instrument.

**"Leases"** means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Property, or any portion of the Property, and all modifications, extensions or renewals thereof.

**"Lien"** means any claim or charge against property for payment of a debt or an amount owed for services rendered, including any mortgage, deed of trust, deed to secure debt, security interest, tax lien, any materialman's or mechanic's lien, or any lien of a governmental authority, including any lien in connection with the payment of utilities, or any other encumbrance.

**"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges (including, without limitation, any Prepayment Premium (as defined in the Note)) and late charges due under the Note, any costs, fees and expenses payable by the Borrower under the Note and all sums due under this Security Instrument, plus interest.

**"Loan Documents"** has the meaning set forth in the Note.

**"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**"Note"** means the promissory note signed by Borrower in favor of Lender and dated **June 23, 2022**, as amended, restated, supplemented or otherwise modified from time to time. The Note states that Borrower owes Lender a maximum principal amount of **Eight Hundred Twenty-Eight Thousand Dollars and Zero Cents** (US **$828,000.00**) plus interest; Borrower has promised to pay interest on this debt and all amounts advanced thereunder in regular monthly installments and to pay the debt in full not later than **July 01, 2024.**

**"Permitted Encumbrance"** means only (i) the easements, restrictions and other matters listed in a schedule of exceptions to coverage in the title policy received and accepted by Lender on or about the date of this Security Instrument with respect to the Property, (ii) taxes for the current tax year that are not yet due and payable, (iii) statutory Liens such as carriers', warehousemen's, mechanics', materialmen's, repairmen's or other like Liens arising in the ordinary course of business which are not overdue for a period of more than thirty (30) days or

which are being contested in good faith and by appropriate proceedings diligently conducted, but only so long as (A) Lender determines that adequate reserves with respect thereto are maintained on the books of the Borrower and (B) in Lender's opinion, such proceedings operate to prevent the enforcement of the Lien while those proceedings are pending, and (iv) such other encumbrances as Lender may permit (in a separate writing) in its sole and absolute discretion.

**"Personalty"** has the meaning set forth in Section 2 of this Security Instrument.

**"Property"** has the meaning set forth in Section 2 of this Security Instrument.

**"Property Jurisdiction"** means the jurisdiction in which the Land is located.

**"Rents"** means all rents (whether from residential or non-residential space), revenues and other income from the Land or the Improvements, including subsidy payments received from any sources, including payments under any "Housing Assistance Payments Contract" or other rental subsidy agreement (if any), parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due, past due, or to become due, and tenant security deposits.

**"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

☐ Condominium Rider
☐ Planned Unit Development Rider
☐ Revocable Trust Rider
☐ Other: Non-Recourse Rider
☐ Other:
☐ Other:

**"Secured Obligations"** has the meaning set forth in Section 2 of this Security Instrument.

**"Security Instrument"** means this document, which is dated **June 23, 2022**, together with all Riders to this document, as amended, restated, supplemented or otherwise modified from time to time.

**"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**"UCC"** means the Uniform Commercial Code in effect in the Property Jurisdiction, as amended from time to time.

**"UCC Collateral"** means any or all of that portion of the Property in which a security interest may be granted under the UCC and in which Borrower has any present or hereafter acquired right, title or interest.

**2. Transfer of Rights in the Property**

This Security Instrument secures to Lender:

(a) the repayment of the Loan Indebtedness, and all amendments, restatements,

renewals, extensions and modifications of the Note;

(b) the payment of such additional sums, or Future Advances (whether or not obligatory) with interest thereon as may be hereafter advanced or borrowed from the Lender, its successors or assigns, by the Borrower as evidenced by the Note the terms thereof secured by this Security Instrument (it being contemplated by Borrower and Lender that such future indebtedness may be incurred);

(c) the performance of each and every of Borrower's covenants, obligations, promises and agreements under this Security Instrument, the Note and the other Loan Documents (all of the foregoing obligations described in clauses (a) , (b) and (c) above are referred to in this Security Instrument as the **"Secured Obligations"**). To the extent permitted by Applicable Law, any sums hereafter advanced by or borrowed from Borrower, its successors or assigns, shall have the same priority as the original sums advanced by Lender and secured hereby.

For this purpose, Borrower irrevocably and unconditionally mortgages, grants, warrants and conveys to Lender, with power of sale and right of entry and possession, all of the Borrower's present and hereafter acquired right, title and interest in and to all of the following:

(i) the property located in the State of Florida, County of Hillsborough described in **Exhibit A** attached hereto (which is incorporated herein by this reference) (the **"Land"**), which currently has the address of:

2909 W Fountain Blvd
Tampa, FL 33609

(ii) all of the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements, facilities, and additions and other construction on the Land (the **"Improvements"**);

(iii) all Goods, accounts, choses of action, chattel paper, documents, general intangibles (including software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land (the **"Personalty"**);

(iv) all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(v) all insurance policies relating to the Property (and any unearned premiums) and all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Personalty, or any other part of the Property, whether or not Borrower obtained the insurance pursuant to Lender's requirements;

(vi) all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Personalty, or any other part of the Property, including any awards or settlements resulting from (1) any Condemnation Actions, (2) any damage to the Property caused by governmental action that does not result in a Condemnation Action, or (3) the total or partial taking of the Land, the Improvements, the Personalty, or any other part of the Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(vii) all contracts, options and other agreements for the sale of the Land, the Improvements, the Personalty, or any other part of the Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(viii) all Leases and Lease guaranties, letters of credit and any other supporting obligation for any of the Leases given in connection with any of the Leases, and all Rents;

(ix) all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Property;

(x) deposits in an amount sufficient to accumulate with Lender the entire sum required to pay the Escrow Items when due;

(xi) all Reserves (as defined in the Note);

(xii) all refunds or rebates of Escrow Items by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Security Instrument is dated);

(xiii) all tenant security deposits related to the Property;

(xiv) all products and replacements of any of the foregoing, and all cash and non-cash proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; and

(xv) all of Borrower's right, title and interest in the oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on the Property and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized.

All of the foregoing property described in clauses (i) through (xv) above is referred to in

this Security Instrument as the "**Property**".

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, warrant and convey the Property and that the Property is unencumbered, except for encumbrances of record as of the date hereof. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record as of the date hereof. Borrower hereby releases, relinquishes, and waives, to the fullest extent allowed by Applicable Law, all rights and benefits, if any, under and by virtue of the homestead exemption laws of the Property Jurisdiction, if applicable.

WITHOUT LIMITING THE FOREGOING, to secure to Lender the payment and performance of the Secured Obligations, Borrower hereby pledges, assigns, and grants to Lender a continuing security interest in the UCC Collateral. This Security Instrument constitutes a security agreement and a financing statement under the UCC. This Security Instrument also constitutes a financing statement pursuant to the terms of the UCC with respect to any part of the Property that is or may become a Fixture under Applicable Law, and will be recorded as a "fixture filing" in accordance with the UCC. Borrower hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest without the signature of Borrower. If an Event of Default (as defined in the Note) has occurred and is continuing, Lender shall have the remedies of a secured party under the UCC or otherwise provided at law or in equity, in addition to all remedies provided by this Security Instrument and in any Loan Document (as defined in the Note). Lender may exercise any or all of its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability or validity of Lender's other remedies. For purposes of the UCC, the debtor is Borrower and the secured party is Lender. As of the date hereof, the name, address, and organizational ID of the debtor is set forth after Borrower's signature below (for the Borrower) and on the first page of this Security Instrument (for the Lender) which are the addresses from which information on the security interest may be obtained.

Borrower represents and warrants that: (1) Borrower maintains its chief executive office at the location set forth after Borrower's signature below, and Borrower will notify Lender in writing of any change in its chief executive office not less than ten (10) days prior to such change; (2) Borrower is the record owner of the Property; (3) Borrower's state of incorporation, organization, or formation, if applicable, is as set forth on Page 1 of this Security Instrument, and Borrower will notify Lender in writing of any change in its state of incorporation, organization, or formation not less than ten (10) days prior to such change; (4) Borrower's exact legal name is as set forth on Page 1 of this Security Instrument, and Borrower will notify Lender in writing of any change in its name not less than ten (10) days prior to such change; (5) Borrower is the owner of the UCC Collateral subject to no Liens, charges or encumbrances other than the Lien hereof and the Permitted Encumbrances; (6) the UCC Collateral will not be removed from the Property without the consent of Lender; and (7) no financing statement covering any of the UCC Collateral or any proceeds thereof is on file in any public office except pursuant hereto.

All property of every kind acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the Lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the Lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Security Instrument and to comply with the rerecording requirements of the UCC.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**3. Uniform Covenants**

Borrower and Lender covenant and agree as follows:

**3.1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**

Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges (including, without limitation, any Prepayment Premium (as defined in the Note)) and late charges due under the Note, and any costs, fees and expenses payable by the Borrower under the Note or this Security Instrument. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3 of this Security Instrument. Payments due under the Note and this Security Instrument shall be made in U.S. currency in the manner provided under the Note. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.13 of this Security Instrument. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. In Lender's sole and absolute discretion, Lender may apply such payments at the time such payments are accepted or hold such payments until Borrower makes another payment sufficient to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such payments or return them to Borrower, in Lender's sole and absolute discretion. In any event, (a) Lender shall not be obligated to pay the Borrower any interest on unapplied payments or funds, and (b) if not

earlier applied or returned, such payments or funds will be applied to the outstanding obligations under the Note immediately prior to foreclosure in any manner or order determined by Lender in its sole and absolute discretion. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**3.2 Application of Payments or Proceeds**

Except as otherwise described in this Section 3.2, voluntary prepayments shall be applied as described in the Note. If at any time Lender receives, from Borrower or otherwise, any payment in respect of the Loan that is less than all amounts due and payable at such time, then Lender may apply such payment to amounts then due and payable in any manner and in any order determined by Lender or hold in suspense and not apply such payment at Lender's election in its sole and absolute discretion. Neither Lender's acceptance of a payment that is less than all amounts then due and payable, nor Lender's application of, or suspension of the application of, such payment, shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such payment to the Loan, Borrower's obligations under the Note and the other Loan Documents shall remain unchanged.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Monthly Payments.

**3.3 Funds for Escrow Items**

Borrower shall pay to Lender on each Payment Due Date under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a Lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 15.2 of the Note and Section 3.5. These items described in the immediately preceding sentence are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the

amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount, and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.13 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds then held by Lender.

**3.4 Charges; Liens**

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property, all leasehold payments or ground rents on the Property, if any, and all Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3. Borrower shall promptly discharge any Lien on the Property other than Permitted Encumbrances. If Lender determines that any part of the Property is subject to a Lien other than Permitted Encumbrances, Lender may give Borrower a notice identifying the Lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the Lien. Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**3.5 Property Insurance**

Borrower shall keep the Improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an

objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become additional Indebtedness of Borrower secured by this Security Instrument. These amounts shall bear interest at the Interest Rate set forth in the Note from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied to the Secured Obligations, whether or not then due, in any manner and order determined by Lender in its sole and absolute discretion.

If Borrower fails to give notice to the Lender or the insurance carrier of an event of loss

in a timely manner, abandons the Property or fails to file, negotiate or settle any available insurance claim or related matter in a timely manner, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 10 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 10-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 4.1 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in respect of the Property, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**3.6 Preservation, Maintenance and Protection of the Property; Inspections**

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**3.7 Borrower's Loan Application**

Borrower shall be in Default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

**3.8 Protection of Lender's Interest in the Property and Rights Under this Security Instrument**

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or any other Loan Document, or (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy (or under other Debtor Relief Laws), probate, for

condemnation or forfeiture, for enforcement of a Lien on the Property or to enforce laws or regulations, including but not limited to Environmental Laws), or (c) Borrower has permitted the Property to remain vacant, or (d) then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (i) paying any sums secured by a Lien on the Property; (ii) entering upon the Property to make repairs or secure the Property; (iii) obtaining (or force-placing) the insurance required by the Loan Documents (iv) appearing in court; and (v) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding (or any other proceeding under any other Debtor Relief Law). Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument and shall be added to, and become part of, the Principal balance of the Indebtedness, be immediately due and payable. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. The provisions of this Section 3.8 shall not be deemed to obligate or require Lender to incur any expense or take any action.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**3.9 Assignment of Miscellaneous Proceeds; Forfeiture**

(a) To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b) If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest

or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied to the Secured Obligations, whether or not then due, in any manner or order determined by the Lender in its sole and absolute discretion.

(c) In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d) In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e) In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f) If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 10 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "**Opposing Party**" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

(g) Borrower shall be in Default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(h) All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied to the Secured Obligations, whether or not then due, in any manner or order determined by the Lender in its sole and absolute discretion.

**3.10 Borrower Not Released; Forbearance By Lender Not a Waiver**

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**3.11 Joint and Several Liability; Co-signers; Successors and Assigns Bound**

Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.17) and benefit the successors and assigns of Lender.

**3.12 Loan Charges**

Lender may charge Borrower fees for services performed in connection with Borrower's Default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection

with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**3.13 Notices**

All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**3.14 Governing Law; Severability; Rules of Construction**

EXCEPT AS EXPRESSLY SET FORTH IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF CALIFORNIA (WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES) SHALL GOVERN ALL MATTERS RELATING TO THIS SECURITY INSTRUMENT, THE NOTE PROVISIONS INCORPORATED HEREIN BY REFERENCE, AND ALL OF THE INDEBTEDNESS AND OBLIGATIONS ARISING HEREUNDER OR THEREUNDER; PROVIDED, HOWEVER, THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT TO THIS SECURITY INSTRUMENT SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE LAND IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF CALIFORNIA SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF THIS SECURITY

INSTRUMENT AND ALL OF THE OBLIGATIONS ARISING HEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS SECURITY INSTRUMENT, AS THIS SECURITY INSTRUMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA TO THE EXTENT SET FORTH IN THIS PARAGRAPH.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**3.15 Borrower's Copy**

Borrower shall be given one copy of the Note and of this Security Instrument.

**3.16 Transfer of the Property or a Beneficial Interest in Borrower**

Borrower shall not permit or suffer any Transfer to occur other than a Permitted Transfer in accordance with the terms of the Note. The occurrence of any Transfer other than a Permitted Transfer shall constitute an Event of Default. As used in this Section 3.16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or Transferred (other than a Permitted Transfer) without Lender's prior written consent, Lender shall require immediate payment in full of all sums secured by this Security Instrument. If Borrower fails to pay these sums, Lender may invoke any remedies permitted by this Security Instrument without notice or demand on Borrower.

**3.17 Sale of Note; Change of Loan Servicer; Notice of Grievance**

The Note or a partial interest in the Note (together with this Security Instrument) can be sold by the Lender one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "**Loan Servicer**") that collects all payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any

other information required by Applicable Law in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

The Borrower may not commence or join any judicial action (as either an individual litigant or the member of a class) that arises from the Lender's actions pursuant to this Security Instrument or that alleges that the Lender has breached any provision of, or any duty owed by reason of, this Security Instrument, until the Borrower has notified the Lender (with such notice given in compliance with the requirements of Section 3.13) of such alleged breach and afforded the Lender hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

**3.18 Hazardous Substances**

As used in this Section 3.18: (a) "**Hazardous Substances**" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "**Environmental Law**" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "**Environmental Cleanup**" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "**Environmental Condition**" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create

any obligation on Lender for an Environmental Cleanup.

**3.19 Use of Property; Compliance with Law**

Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body or Governmental Authority applicable to the Property.

**3.20 Liens**

Other than Permitted Encumbrances, Borrower shall not allow any Lien, whether inferior or superior to the Security Instrument, to exist, attach or be perfected against the Property. Borrower acknowledges that the grant, creation or existence of any Lien on the Property (other than the Lien of this Security Instrument) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the Lien of this Instrument, is a "Transfer" which constitutes an Event of Default.

**3.21 [Reserved]**

**3.22 Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession**

Borrower absolutely and unconditionally assigns and transfers to Lender all of the Leases and Rents, regardless of to whom the Rents of the Property are payable. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, until an Event of Default has occurred and is continuing, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay amounts then due and payable under the other Loan Documents and to pay the current costs and expenses of managing, operating and maintaining the Property, including utilities, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower. This assignment of Leases and Rents constitutes a present, outright, immediate, continuing and absolute assignment and not an assignment for additional security only. This assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or otherwise impose any obligation upon Lender. Lender shall have no responsibility on account of this assignment for the control, care, maintenance, management or repair of the Property, for any dangerous or defective condition of the

Property, or for any negligence in the management, upkeep, repair or control of the Property. Borrower agrees to execute and deliver to Lender such additional instruments, in form and substance satisfactory to Lender, as may hereafter be reasonably requested by Lender to further evidence and confirm such assignment.

If an Event of Default has occurred and is continuing: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property, without the necessity of Lender entering upon and taking control of the Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument in the manner and order determined by the Lender in its sole and absolute discretion; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security, and if Lender elects to seek the appointment of a receiver for the Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by Applicable Law; (vii) Lender shall have the right to enforce all of the rights and remedies of an assignee under California Civil Code Section 2938; (viii) Lender shall have the immediate and continuing right, power and authority, either in person or by agent, without bringing any action or proceeding, or by a receiver appointed by a court, without the necessity of taking possession of the Property in its own name, and without the need for any other authorization or action by Borrower or Lender, in addition to and without limiting any of Lender's rights and remedies hereunder, under the Note and any other Loan Documents and as otherwise available at law or in equity: (1) to notify any tenant or other person that the Leases have been assigned to Lender and that all Rents are to be paid directly to Lender, whether or not Lender has commenced or completed foreclosure or taken possession of the Property; (2) to settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents or other obligations in, to and under the Leases; (3) to demand, sue for, collect, receive, and enforce payment of Rents, including those past-due and unpaid and other rights under the Leases, prosecute any action or proceeding, and defend against any claim with respect to the Leases and Rents; (4) to enter upon, take possession of and operate the Property whether or not foreclosure under this Security Instrument has been instituted and without applying for a receiver; (5) to lease all or any part of the Property; and/or (6) to perform any and all obligations of Borrower under the Leases and exercise any and all rights of Borrower therein contained to the full extent of Borrower's rights

and obligations thereunder.

At Lender's request, Borrower shall deliver a copy of this Security Instrument to each tenant under a Lease and to each manager and managing agent or operator of the Property, and Lender shall have the continuing right to do so. Borrower irrevocably directs any tenant, manager, managing agent, or operator of the Property, without any requirement for notice to or consent by Borrower, to comply with all demands of Lender under this Section 3.22 and to turn over to Lender on demand all Rents that it receives. Borrower hereby acknowledges and agrees that payment of any Rents by a person to Lender as hereinabove provided shall constitute payment by such person, as fully and with the same effect as if such Rents had been paid to Borrower. Neither the enforcement of any of the remedies under this Section 3.22 nor any other remedies or security interests afforded to Lender under the Loan Documents, at law or in equity shall cause Lender to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise. Borrower shall, and hereby agrees to indemnify Lender for, and to hold Lender harmless from and against, any and all claims, liability, expenses, losses or damages that may or might be asserted against or incurred by Lender solely by reason of Lender's status as an assignee pursuant to the assignment of Leases and Rents contained herein, but excluding any claim to the extent caused by Lender's gross negligence or willful misconduct. Should Lender incur any such claim, liability, expense, loss or damage, the amount thereof, including all actual expenses and reasonable fees of attorneys, shall constitute Secured Obligations secured hereby, and Borrower shall reimburse Lender therefor within ten (10) days after demand.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become Indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this Section 3.22.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a Default occurs. Any application of Rents shall not cure or waive any Default or Event of Default or invalidate any other right or remedy of Lender. This assignment of Leases and Rents shall terminate when all the sums secured by the Security Instrument are paid in full.

**3.23 Pledge of Monies Held**

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as Reserves pursuant to the Note and as further provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.9 above, as additional security

for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other Loan Documents, until expended or applied as provided in this Security Instrument. It is hereby acknowledged and agreed that Borrower has granted Lender a security interest in the Reserves pursuant to the Note and as further provided in Section 3.3 above. At any time an Event of Default has occurred and is continuing, all such monies may be applied by the Lender to the Secured Obligations, whether or not then due, in any manner or order determined by the Lender in its sole and absolute discretion.

**3.24 Other Loan Documents**

Any breach or default by Borrower or any Affiliate of Borrower under the Note and the other obligations stated in the other Loan Documents specifically relating to the Loan evidenced by the Note shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

**4. Non-Uniform Covenants**

Borrower and Lender further covenant and agree as follows:

**4.1 Default; Acceleration; Remedies**

(a) **Remedies.** If an Event of Default has occurred and is continuing, Lender may, at Lender's election, take such action permitted at law or in equity, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and to the Property, including but not limited to, any or all of the following rights, remedies and recourses each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(i) Acceleration. Declare the Secured Obligations to be immediately due and payable, without further notice, presentment, protest, notice of intent to accelerate, notice of acceleration, demand or action of any nature whatsoever (each of which hereby is expressly waived by Borrower), whereupon the same shall become immediately due and payable.

(ii) Entry on Property. Enter the Property and take exclusive possession thereof and of all books, records and accounts relating thereto. If Borrower remains in possession of the Property after the occurrence and during the continuance of an Event of Default and without Lender's prior written consent, Lender may invoke any legal remedies to dispossess Borrower.

(iii) Operation of Property. Whether or not a receiver has been appointed pursuant to this Security Instrument, hold, lease, develop, manage, operate, control and otherwise use the Property upon such terms and conditions as Lender may deem reasonable under the circumstances (making such repairs, alterations, additions and improvements and taking other actions, from time to time, as Lender deems reasonably necessary or desirable), exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including the right to make, cancel, enforce or modify leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents, and apply all Rents and other amounts collected by Lender in connection therewith in accordance with the provisions

of Section 4.1(g).

(iv) Foreclosure and Sale. Institute proceedings for the complete foreclosure of this Security Instrument, either by judicial action or by exercise of the STATUTORY POWER OF SALE or otherwise, in which case the Property may be sold for cash or credit in one or more parcels or in several interests or portions and in any order or manner in accordance with applicable law governing foreclosures. At any such sale by virtue of any judicial proceedings or any other legal right, remedy or recourse including power of sale, the title to and right of possession of any such property shall pass to the purchaser thereof, and to the fullest extent permitted by law, Borrower shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold and such sale shall be a perpetual bar both at law and in equity against Borrower, and against all other persons claiming or to claim the property sold or any part thereof, by, through or under Borrower. Lender may be a purchaser at such sale and if Lender is the highest bidder, may credit the portion of the purchase price that would be distributed to Lender against the Secured Obligations in lieu of paying cash. At any such sale (A) whether made under the power herein contained, the UCC, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, including power of sale, it shall not be necessary for Lender or Lender's agent to be physically present at or to have constructive possession of the Property (Borrower shall deliver to Lender or Lender's agent any portion of the Property not actually or constructively possessed by Lender immediately upon demand by Lender), and the title to and right of possession of any such property shall pass to the purchaser thereof, as completely as if Lender or Lender's agent had been actually present and delivered to purchaser at such sale, (B) each instrument of conveyance shall contain a general warranty of title, binding upon Borrower, (C) each recital contained in any instrument of conveyance shall conclusively establish the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Secured Obligations, advertisement and conduct of such sale in the manner provided herein and otherwise by law, (D) any prerequisites to the validity of such sale shall be conclusively presumed to have been performed, and (E) the receipt of sale shall be a sufficient discharge to the purchaser or purchasers for his/her/their purchase money and no such purchaser or purchasers, or his/her/their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication thereof. With respect to any notices required or permitted under the UCC, Borrower agrees that ten (10) business days' prior written notice shall be deemed commercially reasonable.

(v) Receiver. Prior to, concurrently with, or subsequent to the institution of foreclosure proceedings, make application to a court of competent jurisdiction for, and (to the extent permitted by applicable law) obtain from such court as a matter of strict right and without notice to Borrower or anyone claiming under Borrower or regard to the value of the Property or the solvency or insolvency of Borrower or the adequacy of any collateral for the repayment of the Secured Obligations or the interest of Borrower therein, the appointment of a receiver or receivers of the Property, and Borrower irrevocably consents to such appointment. Any such receiver or receivers shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Property upon such

terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Section 4.1(g).

(vi) Other. Exercise all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity (including an action for specific performance of any covenant contained in the Loan Documents, or a judgment on the Note either before, during or after any proceeding to enforce this Security Instrument).

(b) **Separate Sales.** In connection with the exercise by Lender of its rights and remedies hereunder, the Property may be sold in one or more parcels and in such manner and order as Lender in its sole discretion, may elect, subject to applicable law; the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

(c) **Remedies Cumulative, Concurrent and Nonexclusive.** Lender shall have all rights, remedies and recourses granted in the Loan Documents and available at law or equity (including the UCC), which rights (a) shall be cumulative and concurrent and shall be in addition to every other remedy so provided or permitted, (b) may be pursued separately, successively or concurrently against Borrower, or against the Property, or against any one or more of them, at the sole discretion of Lender, (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. No action by Lender in the enforcement of any rights, remedies or recourses under the Loan Documents or otherwise at law or equity shall be deemed to cure any Event of Default.

(d) **Release of and Resort to Collateral.** Lender may release, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate Lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the Lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior Lien and security interest in and to the Property. For payment of the Secured Obligations, Lender may resort to any other security in such order and manner as Lender may elect.

(e) **Waiver of Redemption, Notice and Marshaling of Assets.** To the fullest extent permitted by law, Borrower hereby irrevocably and unconditionally waives and releases (a) all benefit that might accrue to Borrower by virtue of any present or future statute of limitations or "moratorium law" or other law or judicial decision exempting the Property or any part thereof, or any part of the proceeds arising from any sale of any such property, from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption reinstatement (to the extent permitted by law) or extension of time for payment, (b) any right to a marshaling of assets or a sale in inverse order of alienation, and (c) any and all rights it may have to require that the Property be sold as separate tracts or units in the event of foreclosure.

(f) **Discontinuance of Proceedings.** If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and,

in such an event, Borrower and Lender shall be restored to their former positions with respect to the Secured Obligations, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default that may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

(g) **Application of Proceeds**. Except as otherwise provided in the Loan Documents and unless otherwise required by applicable law, the proceeds of any sale of, and the Rents and other amounts generated by the holding, leasing, management, operation or other use of the Property, shall be applied by Lender (or the receiver, if one is appointed) in the following order or in such other order as Lender shall determine in its sole discretion: (a) to all fees, costs and expenses incurred by the Lender in enforcing the Loan Documents, including, but not limited to, reasonable attorneys' fees; (b) to the Secured Obligations, whether or not then due, in any order or manner determined by the Lender; and (c) any excess to the Person or Persons legally entitled to it.

(h) **Occupancy After Foreclosure.** The purchaser at any foreclosure sale pursuant to Section 4.1(a)(iv) shall become the legal owner of the Property. All occupants of the Property shall, at the option of such purchaser, become tenants of the purchaser at the foreclosure sale and shall deliver possession thereof immediately to the purchaser upon demand. It shall not be necessary for the purchaser at said sale to bring any action for possession of the Property other than the statutory action of forcible detainer in any court having jurisdiction over the Property.

(i) **Additional Advances and Disbursements; Costs of Enforcement.** If an Event of Default is continuing, Lender shall have the right, but not the obligation, to cure such Event of Default in the name and on behalf of Borrower. All sums advanced and expenses incurred at any time by Lender under this Section, or otherwise under this Security Instrument or any of the other Loan Documents or applicable law, shall bear interest from the date that such sum is advanced or expense incurred, to and including the date of reimbursement, computed at the Default Rate (as defined in the Note), and all such sums, together with interest thereon, shall constitute additions to the Secured Obligations and shall be secured by this Security Instrument and Borrower covenants and agrees to pay them to the order of Lender promptly upon demand.

(j) **No Lender in Possession.** Neither the enforcement of any of the remedies under this Section 4, the assignment of the Leases and Rents under Section 3.22, nor any other remedies afforded to Lender under the Loan Documents, at law or in equity shall cause Lender to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

This Section 4.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Exhibit B attached hereto.

**4.2 Reconveyance**

Upon payment of all sums secured by this Security Instrument, Lender shall reconvey

the Property, without warranty, to the person legally entitled to it and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable. This Section 4.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section Exhibit B attached hereto.

**4.3 Statement of Obligation Fee**

Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**4.4 Use of Property**

BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

**5. State Specific Provisions**

The provisions of **Exhibit B** attached hereto are hereby incorporated by reference as though set forth in full herein.

**6. Obligations and Reliance; Further Assurances**

**6.1 Obligations and Reliance**

(a) **Relationship of Borrower and Lender.** The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

(b) **No Reliance on Lender.** The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c) **No Lender Obligations.** By accepting or approving anything required to be

observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d) **Reliance.** Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other Loan Documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

**6.2 Further Assurances**

(a) **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

(b) **Further Acts, etc.** Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this

Security Instrument, or for complying with all Applicable Law. Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 6.2(b). To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

(c) **Changes in Tax, Debt Credit and Documentary Stamp Laws**

(1) If any Law is enacted or adopted or amended after the date of this Security Instrument which deducts the Secured Obligations from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Secured Obligations or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the Secured Obligations immediately due and payable.

(2) Borrower will not claim or demand or be entitled to any credit or credits on account of the Secured Obligations for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Secured Obligations. If such claim, credit or deduction shall be required by Law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the Secured Obligations immediately due and payable.

(3) If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

(d) **Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower will issue (or cause to be issued), in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or

mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

**7. Indemnification; Waivers**

**7.1 Indemnification**

(a) **General Indemnification.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note. Any amounts payable to Lender by reason of the application of this Section 7.1(a) shall become immediately due and payable and shall bear interest at the rate of interest set forth in the Note from the date loss or damage is sustained by Lender until paid in full.

(b) The term "**Losses**" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, and amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term "**Indemnified Parties**" shall mean (i) Lender, (ii) any prior owner or holder of the Note, (iii) any servicer or prior servicer of the Loan, (iv) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (v) the heirs, legal representatives, successors and assigns of each of the foregoing.

(c) **Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents.

(d) **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.** Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other

professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

**7.2 Waivers**

(a) **Waiver of Counterclaim.** Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the Loan Documents, or any of Borrower's obligations thereunder.

(b) **Marshalling and Other Matters.** To the extent permitted by law, Borrower hereby expressly waives:

> (1) the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and
>
> (2) any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all Persons to the extent permitted by Applicable Law.

(c) **Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender to Borrower and (b) with respect to matters for which Lender is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

(d) **Waiver of Statute of Limitations.** Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Secured Obligations or performance of its other obligations under this Security Instrument, the Note and the other Loan Documents.

(e) **Sole Discretion of Lender.** Wherever pursuant to this Security Instrument, the Note or any other Loan Document, (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f) **WAIVER OF RIGHT TO TRIAL BY JURY.** BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION,

PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

(g) **JUDICIAL REFERENCE.** NOTWITHSTANDING SECTION 7.2(F) HEREOF TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER AND LENDER HEREBY EXPRESSLY AGREE TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1 ANY CLAIM, DEMAND, ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE (PROVIDED, HOWEVER, THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO JUDICIAL REFERENCE SHALL BE APPLICABLE WITH RESPECT TO ANY ACTION IN RESPECT OF THE FORECLOSURE OF THE SECURITY INSTRUMENT). PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 AND 640 TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. BORROWER AND LENDER ACKNOWLEDGE AND AGREE THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

## 8. Future Advance

In addition to the Indebtedness, this Security Instrument shall (to the extent allowed by Applicable Law) also secure payment of the principal, interest and other charges due on all future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Property) or any entity controlled by Borrower or Guarantor unless the Note evidencing such loan or advance specifically states that it is not secured by this Instrument (**"Future Advances"**), including all extensions, renewals and modifications of any such Future Advance.

## 9. Miscellaneous Provisions

**9.1 Commercial Purposes**

Borrower represents and warrants to Lender that the Loan is for commercial purposes, and not for personal, household or consumer purposes. Borrower hereby waives, to the fullest extent permitted by Applicable Law, the benefits of California Civil Code Sections 2924.5, 2924.6, 2937, 2948.5, 2954.8, and 2954.9.

**9.2 No Oral Change**

This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the Borrower and Lender.

**9.3 Liability**

If Borrower consists of more than one Person, the obligations and liabilities of each such Person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

**9.4 Inapplicable Provisions**

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

**9.5 Duplicate Originals; Counterparts**

This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

**9.6 Time is of the Essence**

Borrower agrees that, with respect to each and every obligation and covenant contained in this Security Instrument, time is of the essence.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWER:**

RAD Diversified REIT, INC., a Maryland Corporation

By: Taylor Green

Name: Taylor Green

Title: Secretary

Date: 6/28/2022

Address:

10808 Foothill Blvd #160-347
Rancho Cucamonga, CA 91730
Attention: Brandon Mendenhall

[redacted]

**Exhibit A**
**Legal Description**

Lot 33 in Block 7 of PARKLAND ESTATES SUBDIVISION, according to the map or Plat thereof as recorded in Plat Book 1, Page 156, of the Public Records of Hillsborough County, Florida. Less and except that part of Lot 33 described asfollows: Beginning at the Southwest corner of said Lot 33, run thence North 00 degrees 27 minutes and 30 seconds East along the Westerly boundary of said Lot 33, 110.00 feet to the Northerly boundary of said Lot 33; thence South 89 degrees 32 minutes 30 seconds East, along said boundary 12.00 feet, thence South 00 degrees 27 minutes 30 seconds West, 94.38 feet, thence South 54 degrees 55 minutes 44 seconds East, 27 .40 feet to the Southerly boundary of said Lot 33, thence North 89 degrees 38 minutes 10 seconds West along said Southerly boundary, 34.55 feet to the point of beginning.

| APN | ADDRESS |
|---|---|
| [redacted] | 2909 W Fountain Blvd<br>Tampa, FL 33609 |

**Exhibit B**

**State Specific Provisions – Florida**

THIS EXHIBIT B is attached to and made a part of that certain Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of **June 23, 2022** (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "**Security Instrument**"), executed and delivered by **RAD Diversified REIT, INC., a Maryland Corporation organized and existing under the laws of Maryland**, mortgagor for all purposes hereunder (individually or collectively as the context requires, together with their permitted successors and permitted assigns, "**Borrower**"), for the benefit of **Civic Financial Services, LLC, a California Limited Liability Company**, beneficiary for all purposes hereunder (together with all its successors and assigns, "**Lender**"). This Exhibit B is hereby incorporated by reference into and made a part of the Security Instrument as if fully set forth therein. All provisions and terms of the Security Instrument not otherwise amended or modified herein shall remain in full force and effect, and all definitions contained in the Security Instrument shall have the same meanings for purposes of this Exhibit B, except as otherwise specifically defined or modified hereby. In the event of any inconsistencies between the terms and provisions of this Exhibit B and the terms and provision of the other Sections and Articles of the Security Instrument, the terms and provisions of this Exhibit B shall govern and control.

The representations, warranties and covenants in this Exhibit B shall be continuing representations, warranties and covenants that shall be deemed to be made by Borrower throughout the term of the Loan, until paid in full.

(a) **Remedies Not Exclusive; Waiver**. Lender shall have all powers, rights and remedies under Applicable Law whether or not specifically or generally granted or described in this Security Instrument. Nothing contained herein shall be construed to impair or to restrict such powers, rights and remedies or to preclude any procedures or process otherwise available to trustees or beneficiaries under security instruments in the State of California. Lender shall be entitled to enforce the payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Security Instrument or other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, Lien, assignment or otherwise. Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice or in any manner affect Lender's right to realize upon or enforce any other rights or security now or hereafter held by Lender. Lender shall be entitled to enforce this Security Instrument and any other rights or security now or hereafter held by Lender in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Every power or remedy given by any of this Security Instrument to Lender, or to which Lender may be otherwise entitled,

may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Lender, and Lender may pursue inconsistent remedies. By exercising or by failing to exercise any right, option or election hereunder, Lender shall not be deemed to have waived any provision hereof or to have released Borrower from any of the obligations secured hereby unless such waiver or release is in writing and signed by Lender. The waiver by Lender of Borrower's failure to perform or observe any term, covenant or condition referred to or contained herein to be performed or observed by Borrower shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Borrower to perform or observe the same or any other such term, covenant or condition referred to or contained herein, and no custom or practice which may develop between Borrower and Lender during the term hereof shall be deemed a waiver of or in any way affect the right of Lender to insist upon the performance by Borrower of the obligations secured hereby in strict accordance with the terms hereof. Borrower hereby further releases and waives all rights under and by virtue of the Florida homestead exemption laws.

(b) **Usury.** It is the intention of the parties hereto to comply with the usury laws of applicable governmental authorities; accordingly, it is agreed that, notwithstanding any provision to the contrary in the Note, this Security Instrument, or any of the other Loan Documents, no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by law. In determining the maximum rate allowed, Lender may take advantage of any state or federal law, rule, or regulation in effect from time to time which may govern the maximum rate of interest which may be charged. If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for, in the Note, this Security Instrument, or in any of the other Loan Documents, then in such event: (i) the provisions of this Section 2 of Exhibit B shall govern and control; (ii) neither Borrower nor its heirs, personal representatives, successors, or assigns or any other party liable for the payment thereof, shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount permitted by law; (iii) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal amount of the Note or refunded to Borrower; and (iv) the Interest Rate shall be automatically reduced to the maximum lawful contract rate allowed under the applicable usury laws.

(c) **Assignment of Leases and Rents.** The assignments of Leases and Rents contained in this Security Instrument are intended to provide Lender with all the rights and remedies of lenders pursuant to Section 697.07 of the Florida Statutes, as may be amended from time to time. However, in no event shall this reference diminish, alter, impair, or affect any other rights and remedies of Lender, including but not limited to, the appointment of a receiver, nor shall any provision in this Section diminish, alter, impair or affect any rights or powers of the receiver in law or equity or as set forth herein. In addition, this assignment shall be fully operative without regard to value of the Property or without regard to the adequacy of the Property to serve as security for the obligations owed by Borrower to Lender, and shall be in addition to any rights arising under Section 697.07, Florida Statutes. Further, except for the notices required hereunder, if any, Borrower waives any notice of default or demand for turnover of rents by Lender, together with any rights under Section 697.07, Florida Statutes, to apply to a court to deposit the Rents into the registry of the court or such other depository as

the court may designate.

(d) **Future Advances.** Lender may from time to time, in Lender's discretion, make optional future or additional advances ("Future Advances") to Borrower, except that at no time shall the unpaid principal balance of all indebtedness secured by the lien of this Security Instrument, including Future Advances, be greater than an amount equal to two hundred percent (200%) of the original principal amount of the Note plus accrued interest and amounts disbursed by Lender under this Security Instrument or the Loan Agreement or any other provision of this Security Instrument that treats a disbursement by Lender as being made under this Security Instrument or the Loan Agreement. All Future Advances shall be made, if at all, within twenty (20) years after the date of this Security Instrument, or within such lesser period that may in the future be provided by law as a prerequisite for the sufficiency of actual or record notice of Future Advances as against the rights of creditors or subsequent purchasers for value. Borrower shall, immediately upon request by Lender, execute and deliver to Lender a promissory note evidencing each Future Advance together with a notice of such Future Advance in recordable form. All promissory notes evidencing Future Advances shall be secured, pari passu, by the Lien of this Security Instrument, and each reference in this Security Instrument or the Loan Agreement to the Note shall be deemed to be a reference to all promissory notes evidencing Future Advances.

(e) **Indemnity; Expenses.** Borrower will pay or reimburse the Lender for all reasonable attorneys' fees, costs and expenses incurred by Lender in any suit, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting the secured indebtedness, this Security Instrument or the interest created herein, or the Property or any appeal thereof, including, but not limited to, activities related to enforcement of the remedies of Lender, activities related to protection of Lender's collateral, any foreclosure action or exercise of the power of sale, any condemnation action involving the Property or any action to protect the security hereof, any bankruptcy or other insolvency proceeding commenced by or against Borrower, and any such amounts paid or incurred by the Lender shall be added to the secured indebtedness and shall be secured by this Security Instrument. The agreements of this subsection shall expressly survive in perpetuity satisfaction of this Security Instrument and repayment of the secured indebtedness, any release, reconveyance, discharge of foreclosure of this Security Instrument, conveyance by deed in lieu of foreclosure, sale, and any subsequent transfer of the Property.

(f) **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

(g) **Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

(h) **Foreclosure.**

(1) Judicial Sale. In the event of a judicial sale pursuant to a foreclosure decree, it is understood and agreed that Lender or its assigns may become the

purchaser of the Property or any part thereof.

(2) Foreclose on Portion of the Property. Lender may, by following the procedures and satisfying the requirements prescribed by applicable law, foreclosure on only a portion of the Property and, in such event, said foreclosure shall not affect the Lien of this Security Instrument on the remaining portion of the Property.

[redacted]

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

The foregoing instrument was acknowledged before me by means of ☒ physical presence OR ☐ online notarization, this 6-28-2022, by
(Date)

Taylor Green

(Name(s) of Person(s) Acknowledging)

as ____________________
*(Type(s) of authority, e.g., officer, trustee, attorney in fact)*

of ____________________
*(Name of party on behalf of whom instrument was executed)*

He/She/They: ☐ is/are personally known to me OR ☒ has/have produced

CA Drivers License

*(Type(s) of Identification)*

as identification.

SUSAN TUSING
Notary Public - California
Los Angeles County
Commission # 2257362
My Comm. Expires Oct 1, 2022

Susan [signature]

Signature of Notary Public

Susan Tusing

Name of Notary Typed, Printed, or Stamped

Notary Public – State of California

Commission No. 2257362

(NOTARY SEAL)

See attached

MORTGAGE
FLORIDA NOTARY ACKNOWLEDGEMENT

# CALIFORNIA ALL-PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angells

On 6-28-22 before me, Susan Tusing Notary Public, personally appeared Taylor Green who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ ~~is/are~~ subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity~~(ies)~~, and that by his/her/their signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SUSAN TUSING
Notary Public - California
Los Angeles County
Commission # 2257362
My Comm. Expires Oct 1, 2022

Susan [signature]

Signature of Notary Public

## OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

Mortgage, Assignment of Leases
(Title or description of attached document)

and Rents, Security Agreement
(Title or description of attached document continued)

Number of Pages 39 Document Date 6-28-22

and Fixture Filing
(additional information)

Document prepared by: J. Scott
Recording Requested By, and
When Recorded Please Return To:
Civic Financial Services, LLC
2015 Manhattan Beach Blvd., Suite 106
Redondo Beach, CA 90278
[redacted]

Parcel ID: 117882-0000

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF MORTGAGE

For value received, the undersigned hereby grants, assigns and transfers to

**Civic Real Estate Holdings III, LLC**
2015 Manhattan Beach Blvd., Suite 106
Redondo Beach, CA 90278

all beneficial interest under that certain MORTGAGE dated 06/23/2022 executed by RAD Diversified REIT, INC., a Maryland Corporation, Borrower(s), to Civic Financial Services, LLC, as Originating Lender, in the original principal amount of $828,000.00, recorded on 07/08/2022 as Instrument No. 2022340241 of Official Records in the office of the County Recorder of Hillsborough County, State of Florida (hereinafter, the "MORTGAGE"), together with the Promissory Note secured by said MORTGAGE and also all rights accrued or to accrue under said MORTGAGE and Promissory Note.

Property Address: 2909 W Fountain Blvd, Tampa, FL 33609

**Dated: August 29, 2024**

**Civic Financial Services, LLC, a California limited liability company**
By: Fay Servicing, LLC
Its: Attorney-in-fact

By: ______________________
Name: Brett Gernon
Title: Assistant Secretary

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of Texas ) ss
County of Dallas )

On August 29, 2024, before me, Dekendrick Ganison, Notary Public, personally appeared Brett Gernon, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________
Dekendrick Ganison

DEKENDRICK GANISON
Notary Public, State of Texas
Comm. Expires 05-27-2025
Notary ID 128287218

EXHIBIT C

# Case Information

Return to search results

Icon Keys | Summary | Parties | Events
Judgments | Case Options & Payments | Hearings
Financial | File Location | Related Cases

Filter Events Dates: From MM/DD/YYYY To MM/DD/YYYY Filter

250 entries per page

Search:

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | 65 | 07/17/2026 | 07/17/2026 | RESPONSE IN OPPOSITION TO | PLAINTIFF'S OBJECTION TO SALE AND MOTION TO VACATE AND RESET FORECLOSURE SALE AND REQUEST TO CONFIRM SALE | | |
| | 64 | 06/28/2026 | 06/28/2026 | NOTICE OF HEARING | 07/20/2026 10:15 AM ZOOM | | |
| | 63 | 06/25/2026 | 06/25/2026 | NOTICE OF FILING | RECORDED ORDER GRANTING IN PART MOTION FOR IN REM RELIEF FROM THE AUTOMATIC | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | | | | | STAY - ATTACHED | | |
| | 62 | 03/06/2026 | 03/06/2026 | NOTICE OF CANCELLING HEARING | | | |
| | 61 | 03/06/2026 | 03/06/2026 | SUGGESTION OF BANKRUPTCY | | | |
| | 60 | 03/05/2026 | 03/05/2026 | BANKRUPTCY | | | |
| | 59 | 03/05/2026 | 03/05/2026 | SUGGESTION OF BANKRUPTCY | | | |
| | 58 | 03/05/2026 | 03/05/2026 | EXHIBIT | | | |
| | 57 | 02/17/2026 | 02/19/2026 | NOTICE OF HEARING | MARCH 11, 2026, AT 10:30AM - PLAINTIFF'S OBJECTION TO SALE AND MOTION TO VACATE AND RESET FORECLOSURE SALE | | |
| | 56 | 01/21/2026 | 01/22/2026 | ORDER | REQUIRING LIMITED PRODUCTION | | |
| | 55 | 01/08/2026 | 01/08/2026 | AFFIDAVIT | | | |
| | 54 | 12/08/2025 | 12/08/2025 | NOTICE OF CHANGE OF ADDRESS OF COUNSEL | | | |
| | 53 | 12/05/2025 | 12/08/2025 | NOTICE OF HEARING | PLTFS OBJECTION TO SALE AND MOTION TO VACATE & | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | | | | | RESET FORECLOSURE SALE, JANUARY 15 2026 AT 2:30PM VIA ZOOM | | |
| | 52 | 12/04/2025 | 12/04/2025 | RESPONSE IN OPPOSITION TO | | | |
| | 51 | 12/02/2025 | 12/02/2025 | OBJECTION TO SALE | AND MOTION TO VACATE AND RESET FORECLOSURE SALE | | |
| | 50 | 12/02/2025 | 12/02/2025 | NOTICE OF APPEARANCE | | | |
| | 49 | 12/01/2025 | 12/01/2025 | CERTIFICATE OF SALE | | | |
| | 48 | 12/01/2025 | 12/01/2025 | DEPOSIT IN MORTGAGE FORECLOSURE ACCOUNT | BALANCE PAID $556,112.70 CLERK FEE $8,724.00 + DOC STAMPS $4,067.70 | | |
| | 47 | 12/01/2025 | 12/01/2025 | Fee Worksheet | . | | |
| | 46 | 12/01/2025 | 12/01/2025 | BID INFORMATION SHEET | . | | |
| | 45 | 12/01/2025 | 12/01/2025 | DEPOSIT IN MORTGAGE FORECLOSURE ACCOUNT | GOOD FAITH DEPOSIT $29,055.00 | | |
| | 44 | 10/17/2025 | 10/17/2025 | PROOF OF PUBLICATION NOTICE OF SALE | BUSINESS OBSERVER | | |
| | 43 | 10/07/2025 | 10/07/2025 | NOTICE OF SALE | BUSINESS OBSERVER | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | 41 | 08/28/2025 | 08/29/2025 | FINAL JUDGMENT OF FORECLOSURE | | | |
| | 42 | 08/28/2025 | 08/29/2025 | Per FJ / Order Assignment of Bid Authorized | | | |
| | 40 | 08/14/2025 | 08/19/2025 | NOTICE OF FILING | ATTACHED: ORIGINAL NOTE AND MORTGAGE (MAILED TO CLERK FROM PLNTFF 8/13/25) | | |
| | 39 | 08/12/2025 | 08/12/2025 | AFFIDAVIT OF COMPLIANCE WITH FORECLOSURE PROCEDURES | | | |
| | 38 | 07/23/2025 | 07/24/2025 | NOTICE OF HEARING | PLTFS MOTION FOR FINAL SUMMARY JUDGMENT OF FORECLOSURE, FOR ENFORCEMENT OF ASSIGNMENT OF RENTS & LEASES & FOR BREACH OF NOTE, AUGUST 25 2025 AT 1:45PM VIA ZOOM | | |
| | 37 | 07/16/2025 | 07/16/2025 | AFFIDAVIT AS TO ATTORNEY FEES | | | |
| | 36 | 07/16/2025 | 07/16/2025 | AFFIDAVIT OF ATTORNEY'S | | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | | | | FEES AND COSTS | | | |
| | 35 | 07/16/2025 | 07/16/2025 | AFFIDAVIT AS TO INDEBTEDNESS | | | |
| | 34 | 05/23/2025 | 05/27/2025 | STIPULATION AND ORDER FOR SUBSTITUTION OF COUNSEL | ORDER GRANTING JOINT STIPULATION FOR THE SUBSTITUTION OF COUNSEL FOR PLAINTIFF | | |
| | 33 | 05/23/2025 | 05/23/2025 | NOTICE OF HEARING | NOTICE OF HEARING ON 07/21/25 AT 1:45 PM VIA ZOOM | | |
| | 32 | 03/21/2025 | 03/21/2025 | STIPULATION FOR COUNSEL SUBSTITUTION | | | |
| | 31 | 03/21/2025 | 03/21/2025 | NOTICE OF APPEARANCE | - AND DESIGNATION OF E-MAIL ADDRESS | | |
| | 30 | 02/07/2025 | 02/10/2025 | ORDER GRANTING MOTION TO - FOR | ENFORCEMENT OF ASSIGNMENT OF RENTS AND LEASES | | |
| | 29 | 01/29/2025 | 01/29/2025 | NOTICE OF APPEARANCE | | | |
| | 28 | 01/22/2025 | 01/24/2025 | NOTICE OF HEARING | NOTICE OF VIRTUAL HEARING 03/26/25 AT 1:30 PM VIA ZOOM | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | 27 | 01/22/2025 | 01/24/2025 | NOTICE OF HEARING | NOTICE OF VIRTUAL HEARING 01/29/25 AT 10:30 AM VIA ZOOM | | |
| | 25 | 11/01/2024 | 11/01/2024 | DEFAULT ENTERED BY CLERK | | | |
| | 24 | 10/27/2024 | 10/27/2024 | MOTION FOR SUMMARY JUDGMENT | | | |
| | 23 | 10/27/2024 | 10/27/2024 | MOTION TO - FOR | ENFORCEMENT OF ASSIGNMENT OF RENTS AND LEASES | | |
| | 22 | 10/27/2024 | 10/27/2024 | NOTICE OF DROPPING UNNAMED PARTIES | | | |
| | 21 | 10/27/2024 | 10/27/2024 | Signature Page For Clerk's Default | | | |
| | 20 | 10/27/2024 | 10/27/2024 | MOTION FOR DEFAULT BY CLERK | | | |
| | 26 | 10/27/2024 | 11/04/2024 | NOTICE OF DROPPING UNNAMED PARTY | | | |
| | 19 | 09/25/2024 | 10/02/2024 | ALIAS SUMMONS RETURNED NOT SERVED | UNKNOWN PARTY IN POSSESSION #2 | | |
| | 18 | 09/25/2024 | 10/02/2024 | 20 DAYS SUMMONS RETURNED SERVED | RAD DIVERSIFIED REIT INC, | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | | | | | SEPTEMBER 23, 2024 | | |
| | 17 | 09/25/2024 | 10/02/2024 | ALIAS SUMMONS RETURNED NOT SERVED | UNKNOWN PARTY IN POSSESSION #1 | | |
| | 16 | 09/18/2024 | 09/18/2024 | Streamlined Differentiated Case Management Order | | | |
| | 15 | 09/18/2024 | 09/18/2024 | LIS PENDENS (RECORDABLE) | | | |
| | 14 | 09/18/2024 | 09/18/2024 | E-FILED SUMMONS ISSUED | | | |
| | 13 | 09/18/2024 | 09/18/2024 | E-FILED SUMMONS ISSUED | | | |
| | 12 | 09/18/2024 | 09/18/2024 | E-FILED SUMMONS ISSUED | | | |
| | 11 | 09/17/2024 | 09/17/2024 | E-FILED REQUEST FOR SUMMONS TO BE ISSUED | | | |
| | 10 | 09/17/2024 | 09/17/2024 | E-FILED REQUEST FOR SUMMONS TO BE ISSUED | | | |
| | 9 | 09/17/2024 | 09/17/2024 | E-FILED REQUEST FOR SUMMONS TO BE ISSUED | | | |
| | 8 | 09/17/2024 | 09/17/2024 | REQUEST FOR DIVISION ASSIGNMENT (E-FILING) | | | |

| Select | Document Index | Clock-In Event Date | Event Creation Date | Event Description | Comment | Image | Certi |
|---|---|---|---|---|---|---|---|
| | 7 | 09/17/2024 | 09/17/2024 | Certification of Original Note Possession FS702.015(4) | | | |
| | 6 | 09/17/2024 | 09/17/2024 | COMPLAINT | | | |
| | 5 | 09/17/2024 | 09/17/2024 | LIS PENDENS | | | |
| | 4 | 09/17/2024 | 09/17/2024 | VALUE OF MORTGAGE FORECLOSURE REAL PROPERTY CLAIM FORM | | | |
| | 3 | 09/17/2024 | 09/17/2024 | CIVIL COVER SHEET | | | |
| | 2 | 09/17/2024 | 09/17/2024 | Streamlined Differentiated Case Management Applies | | | |
| | 1 | 09/17/2024 | 09/17/2024 | File Home Location - Electronic | | | |

Showing 1 to 65 of 65 entries

First page Previous page 1

Next page Last page

If no Icons Appear under the Image Column, click here to order copies of documents

Indicates document is ready to be viewed

Displays additional event information

Indicates document needs redaction review prior to public viewing

Indicates document is undergoing redaction

Indicates document is sealed by the Court Order or Confidential by Court rule. Image cannot be viewed

Click to purchase electronically certified copies of documents

Image Pending Review

If no image appears, there is either no image available or the document has not been converted to an electronic image.

---

Exit Case Details

© 2026- Hillsborough County Clerk of Court and Comptroller
V=20260903.1

[redacted]

EXHIBIT D

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY FLORIDA

CIVIC REAL ESTATE HOLDINGS III, LLC,
Plaintiff,

v.

RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION,
Defendant.

CIRCUIT CIVIL DIVISION

CASE NO.: 24-CA-007584

**UNIFORM FINAL JUDGMENT OF FORECLOSURE FOR ENFORCEMENT OF ASSIGNMENT OF RENTS AND LEASES AND FOR BREACH OF NOTE**

*(Effective July 22, 2019)*

**THIS ACTION** was heard before this Honorable Court on August 25, 2025, upon Plaintiff, CIVIC REAL ESTATE HOLDINGS III, LLC's ("Plaintiff") Motion for Summary Final Judgment of Mortgage Foreclosure for Enforcement of Assignment of Rents and Leases and for Breach of Note (the "Motion"). The Court, having reviewed the Motion, the affidavits filed in support of said Motion, the relevant case law, the pleadings, the Clerk's docket, and all other relevant filings, finding no affidavits filed by the Defendants in opposition to the Motion, and having heard argument of counsel for Plaintiff and Defendant, RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, hereby finds that there are no genuine issues of material fact that preclude the entry of summary judgment in favor of Plaintiff in this case. The Court further makes the following findings of fact and conclusions of law:

a) Defendant RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION (the "Borrower"), executed the Note and Mortgage that are the subject of this action. The Note and Mortgage shall hereinafter be referred to as the "Loan Documents." The original Loan Documents were filed by the Plaintiff in support of its Motion and the Court has confirmed receipt of same.

b) Plaintiff is in possession of the original Note and, as such, Plaintiff is the holder and owner of the Note and entitled to enforce the Loan Documents.

c) The Borrower defaulted on the Loan Documents by failing to make the payment due on July 1, 2024, and all subsequent payments. Subsequently, the Loan Documents matured on July 1, 2024, and the Borrower failed to pay the full amount due upon maturity; same is supported by Plaintiff's business records and its Affidavit of Indebtedness filed in support of the Motion.

d) The Borrower was sent a notice of default in compliance with the subject Mortgage; said notice was addressed to Subject Property address and the notice address of record, as defined below, and was sent via first class and certified mail. As such, the Court finds that Plaintiff has performed all conditions precedent to acceleration of the Loan Documents and the filing the instant action.

e) The Court further finds that the amounts due and owing to Plaintiff, as outlined in its affidavits filed in support of the Motion, are true and accurate and that Plaintiff is entitled to same.

f) There is no record evidence to support any allegations to the contrary.

IT IS ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment is GRANTED. Service of process has

Exhibit "A"

been duly and regularly obtained over RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, defendant.

2. **<u>VALUE OF CLAIM.</u> At the initiation of this action, in accordance with section 28.241(1)(a)2.b., Florida Statutes (effective for actions filed on and after June 1, 2009), plaintiff estimated the amount in controversy of the claim to be $<u>828,000.00</u>. In accordance with section 28.241(1)(a)2.c., Florida Statutes, the court identifies the actual value of the claim to be $<u>1,034,515.50</u>. For any difference between the estimated amount in controversy and the actual value of the claim that requires the filing fee to be adjusted, the clerk shall adjust the filing fee. In determining whether the filing fee needs to be adjusted, the following graduated filing fee scale in section 28.241(1)(a)2.d., Florida Statutes, controls:**

| | |
|---|---|
| **$400** | **Value of claim less than or equal to $50,000 with 5 defendants or less** |
| **$905** | **Value of claim greater than $50,000 but less than $250,000 with 5 defendants or less** |
| **$1,905** | **Value of claim $250,000 or greater with 5 defendants or less** |

**If an excess filing fee was paid, the clerk shall provide a refund of the excess fee. If an additional filing fee is owed, the plaintiff shall pay the additional fee prior to the judicial sale. If any additional filing fee owed is not paid prior to the judicial sale, the clerk shall cancel the judicial sale without further order of the court.**

3. **Amounts Due and Owing.** There is due and owing to the Plaintiff the following:

| | |
|---|---|
| Unpaid Principal Balance on Note and Mortgage | $828,000.00 |
| Accrued Interest at 7.999% from May 1, 2025 through June 6, 2025 | $72,757.82 |
| Accrued Interest at 7.999% from June 7, 2025 through August 25, 2025 (per diem: <u>$414.00</u>) | $33,120.00 |
| Default Interest Accrued | $77,338.38 |
| Escrow Advances | $26,860.72 |
| Interest on Escrow Advance | $1,594.27 |
| Late Charges | $551.31 |
| Corporate Advances | $30.00 |
| NSF Charges | $439.00 |
| Attorney`s Fees | $5,825.00 |
| Attorney`s Costs | $2,519.00 |
| **GRAND TOTAL DUE** | **$1,049,035.50** |

4. **<u>Interest.</u>** The total sum referenced in Paragraph 3 shall bear interest from this date forward at the rate of interest set forth in section 55.03, Florida Statutes.

5. **Lien on Property.** Plaintiff, whose address is c/o Fay Servicing, LLC, Attn Payments, 1601 LBJ Freeway, Suite 150, Farmers Branch, TX 75234, holds a lien for the total sum specified in Paragraph 3 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to sections 718.116 or 720.3085, Florida Statutes. Plaintiff's lien encumbers the subject property located in Hillsborough County, Florida and described as:

LOT 33 IN BLOCK 7 OF PARKLAND ESTATES SUBDIVISION, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 1, PAGE 156, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA. LESS AND EXCEPT THAT PART OF LOT 33 DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 33, RUN THENCE NORTH 00 DEGREES 27 MINUTES AND 30 SECONDS EAST ALONG THE WESTERLY BOUNDARY OF SAID LOT 33, 110.00 FEET TO THE NORTHERLY BOUNDARY OF SAID LOT 33; THENCE SOUTH 89 DEGREES 32 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY 12.00 FEET, THENCE SOUTH 00 DEGREES 27 MINUTES 30 SECONDS WEST, 94.38 FEET, THENCE SOUTH 54 DEGREES 55 MINUTES 44 SECONDS EAST, 27.40 FEET TO THE SOUTHERLY BOUNDARY OF SAID LOT 33, THENCE NORTH 89 DEGREES 38 MINUTES 10 SECONDS WEST ALONG SAID SOUTHERLY BOUNDARY, 34.55 FEET TO THE POINT OF BEGINNING

including the buildings, appurtenances, and fixtures located thereon.

Property Address: 2909 W Fountain Blvd, Tampa, FL 33609
(the "Subject Property").

6. **Sale of Property.** If the total sum with interest at the rate described in Paragraph 4 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property to the highest bidder for cash at public sale on **December 1, 2025**, at 10:00 A.M. after having first given notice as required by section 45.031, Florida Statutes. The judicial sale will be conducted electronically online at the following website: http://www.hillsborough.realforeclose.com. At least three (3) days prior to the sale, plaintiff must pay the costs associated with the Notice of Publication. The party or their attorney shall be responsible for preparing, in accordance with section 45.031(2), Florida Statutes, and submitting the Notice of Sale to a legal publication. The original Notice of Sale and Proof of Publication must be filed with the Clerk of the Circuit Court at least 24 hours prior to the scheduled sale date.

7. **Court Costs.** Plaintiff shall advance all subsequent required costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. *If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.*

8. **Additional Expenses, Fees and Costs.** If, subsequent to the entry of this final judgment, but prior to the actual sale date of the property, plaintiff incurs additional

expenses, fees or costs to protect its interest in the property after entry of this judgment including, but not limited to, real estate taxes, hazard insurance, property preservation, or other necessary costs, plaintiff may, by written motion served on all parties, seek to amend this final judgment to include such additional expenses, fees and costs. Such additional expenses, fees and costs shall be added to the "total sum due" in Paragraph 3 and shall be paid from the distribution of proceeds of the sale. A motion to amend the final judgment to include additional expenses, fees and costs must be filed not later than 15 days after entry of the judgment, pursuant to Florida Rule of Civil Procedure 1.530(g).

9. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate, *unless the property is purchased by a third party bidder*; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff in Paragraph 3, less the items paid, plus interest at the rate prescribed in Paragraph 4 from this date to the date of the sale; and by retaining any remaining amount—the "surplus proceeds"—pending further Order of this court.

10. **Right of Redemption / Right of Possession.** On filing the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property and defendant's right of redemption as prescribed by section 45.0315, Florida Statutes, shall be terminated, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. Upon the filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property.

11. **Attorneys' Fees.**

The court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 3 hours were reasonably expended by plaintiff's counsel and that an hourly rate of $275.00 - $330.00 is appropriate. PLAINTIFF'S COUNSEL CERTIFIES THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The court finds that there are no reduction or enhancement factors for consideration by the court pursuant to *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985).

The requested attorney's fee is a flat rate fee that the firm's client has agreed to pay in this matter. Given the amount of fee requested and the labor expended, the court finds that a lodestar analysis is not necessary and that the flat fee is reasonable.

12. **Claims to Surplus Funds/Proceeds.**

A. **Generally**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

The funds remaining after payment of all disbursements required by Paragraph 3 and Paragraph 7 of this final judgment and shown on the certificate of disbursement are "surplus funds."

B. **Claim by Subordinate Lienholder**

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, IF ANY, YOU MUST FILE A CLAIM WITH THE CLERK **NO LATER THAN THE DATE THAT THE CLERK REPORTS THE FUNDS AS UNCLAIMED**. IF YOU FAIL TO FILE A TIMELY CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

A subordinate lienholder is the holder of a subordinate lien *as shown on the face of the pleadings* as an encumbrance on the property. A subordinate lienholder includes, but is not limited to, a subordinate mortgage, judgment, tax warrant, assessment lien, or construction lien. A subordinate lienholder not shown on the face of the pleadings is not entitled to the surplus if it did not intervene in the action within 30 days after the recording of the notice of lis pendens. If your lien was paid in full from the proceeds of the sale, you have no claim to the surplus. One year after the sale, any surplus remaining with the Clerk of the Court must be remitted to the Department of Financial Services, as provided in section 45.032(3)(c), Florida Statutes.

C. **Claim by Owner of Record**

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED.

PLEASE CHECK WITH THE CLERK OF THE COURT AT 813-276-8100 **WITHIN TEN (10) DAYS AFTER THE SALE** TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT BAY AREA LEGAL SERVICES, 1302 N. 19TH STREET, SUITE 400, TAMPA, FLORIDA 33605-5230, TELEPHONE NUMBER, 813-232-1343, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE HILLSBOROUGH COUNTY BAR ASSOCIATION REFERRAL SERVICE AT 813-221-7780 FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

The property owner is the owner of record who appears to be the owner(s) of the foreclosed

property *on the date of the filing of the lis pendens*. To make a claim to the surplus, an owner of record may use the form provided at section 45.032(3)(a), Florida Statutes. One year after the sale, any surplus remaining with the Clerk of the Court must be remitted to the Department of Financial Services, as provided in section 45.032(3)(c), Florida Statutes. After the surplus has been remitted to the Department of Financial Services, the owner of record, or the beneficiary of a deceased owner of record, must make a claim with the Department for the surplus pursuant to section 717.124, Florida Statutes.

D. **Claim by Grantee or Assignee of Property Owner**

If you are an assignee of the rights of the owner of record, you must prove entitlement to the surplus funds in accordance with section 45.033, Florida Statutes.

E. **Claim by Plaintiff**

Plaintiff/Mortgagee is not entitled to surplus funds/proceeds. Any additional expenses, fees and costs incurred subsequent to entry of the final judgment, but prior to the sale, must be added to the "total sum due" pursuant to Paragraph 8, and are not payable from the surplus proceeds.

STATUTORY REQUIRED LANGUAGE ABOVE, IN ACCORDANCE WITH SECTION 45.031, FLORIDA STATUTES, IS IN ALL CAPITAL LETTERS.

13. **Assignment.** *The plaintiff may assign the judgment and credit bid by the filing of an assignment prior to the issuance of the certificate of title without further order of the court.*

14. **Jurisdiction Retained.** The court retains jurisdiction of this action to enter further orders or judgments that are proper, including, without limitation, *orders amending this final judgment in accordance with Paragraph 8, orders disbursing the surplus proceeds, orders of reforeclosure, orders authorizing writs of possession and an award of attorney's fees, to enter deficiency judgments if the borrower has not been discharged in bankruptcy, and to enforce the adequate protection ordered, if applicable.*

15. Count II of the Complaint for Assignment of Leases and Rents is also hereby **GRANTED**. Based on the Borrower's breach of the Loan Documents and the relevant terms of the Mortgage regarding the assignment of leases and rents, it is hereby ordered that:

i. *Within ten (10) days from the entry of this judgment*, the Borrower shall provide to Plaintiff, through its counsel, with copies of any and all current leases given by the Borrower and/or any of its agents with regard to the Subject Property and formally assign any and all such leases to the Plaintiff;

ii. *Within ten (10) days from the entry of this judgment,* the Borrower shall transfer any and all security deposits currently held by the Borrower and/or any of its agents with regard to the aforementioned leases to Plaintiff in a check made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

iii. *Within ten (10) days from the entry of this judgment*, the Borrower shall provide Plaintiff, through its counsel, with a complete accounting of all revenues and/or rents received by

the Borrower and/or any of its agents with regard to the Subject Property since the default/maturity date on June 1, 2024;

iv. *Within ten (10) days from the entry of this judgment*, the Borrower shall turnover all revenues and/or rents received by the Borrower and/or any of its agents with regard to the Subject Property since the default/maturity date on June 1, 2024 in a check made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

v. The Borrower shall continue to turnover all revenues and/or rents hereinafter received by the Borrower and/or any of its agents with regard to the Subject Property through the issuance of the Certificate of Sale after the Subject Property is sold pursuant to this judgment in a check made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

vi. From the date of entry of this judgment through the issuance of the Certificate of Sale after the Subject Property is sold pursuant to this judgment the Borrower and any other tenants residing in the Subject Property, shall make all future rent payments directly to Plaintiff, through its agent, with checks made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

vii. Any monies received by Plaintiff in accordance herewith, with the exception of any security deposits transferred, shall be applied to the Grand Total Due and credited accordingly prior to the public sale of the Subject Property.

IT IS ORDERED in Tampa, Hillsborough County, Florida, on Electronically Conformed 8/28/2025 Helene Daniel.

________________________________
THE HONORABLE HELENE L. DANIEL
Circuit Judge

Copies furnished to:

Evan R. Raymond, Esq.
HOWARD LAW
E-Mail: Pleadings@howardlaw.com
Counsel for Plaintiff

Philip G. Dragonetti, Esq.
McFARLAND, GOULD, LYONS, SULLIVAN & HOGAN, P.A.
E-Mail: pdasst@mglegalteam.com
Counsel for Defendant, RAD Diversified REIT, INC., a Maryland Corporation

EXHIBIT E

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY FLORIDA

CIVIC FINANCIAL SERVICES, LLC,
Plaintiff,

v.

RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, *et al.*,
Defendants.
_______________________________________/

CIRCUIT CIVIL DIVISION

CASE NO.: 24-CA-007584

**PLAINTIFF'S OBJECTION TO SALE AND MOTION TO VACATE AND RESET FORECLOSURE SALE**

**COMES NOW**, CIVIC FINANCIAL SERVICES, LLC by and through its undersigned counsel, and requests this Honorable Court enter an Order granting Plaintiff's Objection to Sale and re-scheduling the sale of the subject property and, in support, states as follows:

**Position Summary**

The foreclosure sale must be vacated because Plaintiff's bid was the product of a clear transpositional mistake in the bidding instructions. This error occurred in direct connection with the sale and produced an unintended and materially reduced bid. Florida law is clear that a judicial sale may be set aside for "surprise, accident, or mistake," and that an inadequate price is not required to obtain relief. *Arsali v. Chase Home Fin. LLC*, 121 So. 3d 511, 516–17 (Fla. 2013); *Arlt v. Buchanan*, 190 So. 2d 575, 577 (Fla. 1966). Further, the Court may set aside a sale due to unilateral mistake by the party seeking to set it aside. *Long Beach Mortg. Corp. v. Bebble*, 985 So. 2d 611, 613–15 (Fla. 4th DCA 2008). Because Plaintiff acted promptly upon discovering the clerical transposition and the error directly affected the conduct and outcome of the sale, equity requires that the sale be vacated and reset.

**Relevant Facts**

1. This is an action seeking to foreclose a mortgage on real property in Hillsborough County, Florida.

2. On or about August 28, 2025, this Honorable Court entered a Uniform Final Judgment of Foreclosure for Enforcement of Assignment of Rents and Leases and for Breach of Note scheduling a sale date of December 1, 2025. A copy of the Final Judgment is attached hereto as *Exhibit "A."*

3. The Final Judgment was in the amount of $1,049,035.50.

4. The foreclosure bid communicated by the Plaintiff to its counsel was $190,800.00.

5. On or about December 01, 2025, the foreclosure sale was held and the property sold third-party to Luminary 813, LLC for $581,100.00. A copy of the Clerk issued Certificate of Sale is attached hereto as *Exhibit "B."*

6. After the sale took place, Plaintiff discovered there was a mistake in the bid amount that it conveyed to its counsel. See Affidavit of Andrew Prokop, attached hereto as *Exhibit "C."*

7. Plaintiff intended to ask its counsel to bid $910,800.00. It transposed the first two numbers.

8. Plaintiff objects to the sale due to the mistake in the foreclosure bid.

9. The Final Judgment amount is significantly more than what the property sold for at the foreclosure action.

10. On December 1, 2025, counsel for Plaintiff reached out to the Registered Agent for the Third-Party Purchaser and informed him of the mistake in the bid amount and intention to object and vacate the foreclosure sale.

**Legal Argument**

A foreclosure sale may be vacated where the plaintiff's bid was the product of a transpositional mistake in the bidding instructions, resulting in an unintended and materially lower bid. Here, the principles of equity require that the sale be vacated and reset. This was not a systemic issue for which Plaintiff should shoulder the burden, it was mere human error.

A judicial foreclosure sale may be vacated on "any or all" adequate equitable grounds, including mistake in the conduct of the sale. *Arsali v. Chase Home Fin. LLC*, 121 So. 3d 511, 516–17 (Fla. 2013) (reaffirming that "surprise, accident, or mistake imposed on the complainant" is a valid basis to set aside a sale and rejecting any rule requiring proof of inadequate bid price); *Arlt v. Buchanan*, 190 So. 2d 575, 577 (Fla. 1966) ("Mere inadequacy of price is not enough, but when the inadequacy is gross and is shown to result from any mistake … equity will act."). Importantly, *Arsali* clarifies that inadequate price is not required; the trial court's equitable power is triggered by the mistake itself. 121 So. 3d at 517.

Florida courts evaluate objections by examining whether the mistake occurred in the conduct of the sale, produced an inequitable result, and whether the objecting party acted promptly and in good faith. See § 45.031(5), Fla. Stat. (objections must be based on sale-related grounds). "In addition to those cases involving a problem with the mechanics of a foreclosure sale, the supreme court also approved the setting aside of a sale where the "mistake" or "accident" that occurred was a unilateral one, the fault of the person seeking to set aside the sale." *Long Beach Mortg. Corp. v. Bebble*, 985 So. 2d 611, 614 (Fla. 4th DCA 2008).

Here, the Plaintiff's bid resulted from a transpositional error in the bidding instructions; the first two numbers of the intended bid were inadvertently reversed before being communicated to counsel. That is a routine bidding "mistake" recognized as an adequate equitable ground under

*Arsali* and *Arlt*. The error occurred before and in direct connection with the sale, and it produced an unintended and materially reduced bid**.** Florida courts consistently treat mistaken bid entries as sale-related "mistakes" within the meaning of *Arsali*'s equitable standard. cf. *Alberts v. Fed. Home Loan Mortg. Corp.*, 673 So. 2d 158, 159–60 (Fla. 4th DCA 1996) (affirming order setting aside a sale where lender's agent misunderstood bid instructions and bid $18,995 instead of $118,955); *Long Beach Mortg. Corp. v. Bebble*, 985 So. 2d 611, 613–15 (Fla. 4th DCA 2008) (reversing refusal to vacate sale where miscommunications caused lender's representative to enter a drastically incorrect bid).

Under *Arsali*, Plaintiff need not show that the sale price was "grossly inadequate" to obtain relief; the mistake alone is a sufficient equitable basis where, as here, the error occurred through a clerical transposition made in good faith. 121 So. 3d at 517 ("Proof of an inadequate bid price is not a necessary requirement."). Even if price inadequacy were required, the disparity created by a transposed bid qualifies as precisely the type of unfair result that courts have long remedied. See *Arlt*, 190 So. 2d at 577 (equity intervenes when an inadequate price results from mistake). Plaintiff also acted promptly: immediately after learning of the erroneous bid post-sale, Plaintiff advised counsel and sought corrective relief, satisfying the diligence requirement that supports equitable intervention. Further, Plaintiff's counsel acted diligently in reaching out to the Registered Agent for the Third-Party Purchaser to alert them to the mistake and the corrective course of action sought by Plaintiff.

Plaintiff's error was a clerical error, not a failure of supervision or care. Here, the Court's discretion should be exercised to set aside the sale because the error was unintentional, promptly raised, and directly caused the unintended bid which resulted in a dramatically lower recovery of the amount it is intitled to for Plaintiff.

**<u>Conclusion</u>**

Because the foreclosure sale resulted from a clear transpositional mistake in the bidding instructions, which is a sale-related "mistake" recognized by the Florida Supreme Court as a valid equitable basis for relief, the Court should vacate the sale and reset it under its authority in *Arsali*, *Arlt*, and § 45.031(5), Florida Statutes.

Re-scheduling the foreclosure sale will not prejudice any party to this suit.

**WHEREFORE**, Plaintiff, CIVIC FINANCIAL SERVICES, LLC, respectfully requests that this Honorable Court enter an Order granting Plaintiff's Objection to Sale and re-scheduling the foreclosure sale in this action, the award of its attorney's fees and costs, and for any and all other relief deemed fair and equitable under the circumstances.

**<u>CERTIFICATE OF CONFERRAL</u>**

I certify that on December 1st and 2nd, prior to filing this motion, the Managing Attorney at my office discussed the relief requested in this motion with the Third-Party Purchaser and they indicated they did not agree with the relief requested in this motion.

Respectfully submitted,

**HOWARD LAW**
902 Clint Moore Road, Suite 220
Boca Raton, FL 33487
Telephone: (954) 893-7874
Facsimile: (888) 235-0017
Designated Service E-Mail:
Pleadings@HowardLaw.com

By: *<u>/s/ Ashley M. Elmore Drew</u>*
Ashley M. Elmore Drew, Esq.
Florida Bar No.: 87236
E-Mail: AED@HowardLaw.com
Ashland R. Medley, Esq.
Florida Bar No.: 89578
Matthew B. Klein, Esq.
Florida Bar No.: 73529
E-Mail: Matthew@HowardLaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via U.S. Mail or E-Mail to those parties listed below on this 2nd day of December, 2025.

Philip G. Dragonetti, Esq.
McFARLAND, GOULD, LYONS, SULLIVAN & HOGAN, P.A.
1659 Achieva Way, Suite #128
Dunedin, FL 34698
E-Mail: pdasst@mglegalteam.com
Counsel for Defendant, RAD Diversified REIT, INC., a Maryland Corporation

Luminary 813, LLC
1925 E 6th Avenue, Suite 10
Tampa, FL 33605
*Third-Party Purchaser*

By: *\/s/ Ashley M. Elmore Drew*
Ashley M. Elmore Drew, Esq.
Florida Bar No.: 87236
E-Mail: AED@HowardLaw.com
Ashland R. Medley, Esq.
Florida Bar No.: 89578
Matthew B. Klein, Esq.
Florida Bar No.: 73529
E-Mail: Matthew@HowardLaw.com

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY FLORIDA

CIVIC REAL ESTATE HOLDINGS III, LLC,
Plaintiff,

v.

RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION,
Defendant.

CIRCUIT CIVIL DIVISION

CASE NO.: 24-CA-007584

**UNIFORM FINAL JUDGMENT OF FORECLOSURE FOR ENFORCEMENT OF ASSIGNMENT OF RENTS AND LEASES AND FOR BREACH OF NOTE**

*(Effective July 22, 2019)*

**THIS ACTION** was heard before this Honorable Court on August 25, 2025, upon Plaintiff, CIVIC REAL ESTATE HOLDINGS III, LLC's ("Plaintiff") Motion for Summary Final Judgment of Mortgage Foreclosure for Enforcement of Assignment of Rents and Leases and for Breach of Note (the "Motion"). The Court, having reviewed the Motion, the affidavits filed in support of said Motion, the relevant case law, the pleadings, the Clerk's docket, and all other relevant filings, finding no affidavits filed by the Defendants in opposition to the Motion, and having heard argument of counsel for Plaintiff and Defendant, RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, hereby finds that there are no genuine issues of material fact that preclude the entry of summary judgment in favor of Plaintiff in this case. The Court further makes the following findings of fact and conclusions of law:

a) Defendant RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION (the "Borrower"), executed the Note and Mortgage that are the subject of this action. The Note and Mortgage shall hereinafter be referred to as the "Loan Documents." The original Loan Documents were filed by the Plaintiff in support of its Motion and the Court has confirmed receipt of same.

b) Plaintiff is in possession of the original Note and, as such, Plaintiff is the holder and owner of the Note and entitled to enforce the Loan Documents.

c) The Borrower defaulted on the Loan Documents by failing to make the payment due on July 1, 2024, and all subsequent payments. Subsequently, the Loan Documents matured on July 1, 2024, and the Borrower failed to pay the full amount due upon maturity; same is supported by Plaintiff's business records and its Affidavit of Indebtedness filed in support of the Motion.

d) The Borrower was sent a notice of default in compliance with the subject Mortgage; said notice was addressed to Subject Property address and the notice address of record, as defined below, and was sent via first class and certified mail. As such, the Court finds that Plaintiff has performed all conditions precedent to acceleration of the Loan Documents and the filing the instant action.

e) The Court further finds that the amounts due and owing to Plaintiff, as outlined in its affidavits filed in support of the Motion, are true and accurate and that Plaintiff is entitled to same.

f) There is no record evidence to support any allegations to the contrary.

IT IS ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment is GRANTED. Service of process has

Exhibit "A"

been duly and regularly obtained over RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, defendant.

2. **VALUE OF CLAIM. At the initiation of this action, in accordance with section 28.241(1)(a)2.b., Florida Statutes (effective for actions filed on and after June 1, 2009), plaintiff estimated the amount in controversy of the claim to be $828,000.00. In accordance with section 28.241(1)(a)2.c., Florida Statutes, the court identifies the actual value of the claim to be $1,034,515.50. For any difference between the estimated amount in controversy and the actual value of the claim that requires the filing fee to be adjusted, the clerk shall adjust the filing fee. In determining whether the filing fee needs to be adjusted, the following graduated filing fee scale in section 28.241(1)(a)2.d., Florida Statutes, controls:**

| | |
|---|---|
| **$400** | **Value of claim less than or equal to $50,000 with 5 defendants or less** |
| **$905** | **Value of claim greater than $50,000 but less than $250,000 with 5 defendants or less** |
| **$1,905** | **Value of claim $250,000 or greater with 5 defendants or less** |

**If an excess filing fee was paid, the clerk shall provide a refund of the excess fee. If an additional filing fee is owed, the plaintiff shall pay the additional fee prior to the judicial sale. If any additional filing fee owed is not paid prior to the judicial sale, the clerk shall cancel the judicial sale without further order of the court.**

3. **Amounts Due and Owing.** There is due and owing to the Plaintiff the following:

| | |
|---|---|
| Unpaid Principal Balance on Note and Mortgage | $828,000.00 |
| Accrued Interest at 7.999% from May 1, 2025 through June 6, 2025 | $72,757.82 |
| Accrued Interest at 7.999% from June 7, 2025 through August 25, 2025 (per diem: $414.00) | $33,120.00 |
| Default Interest Accrued | $77,338.38 |
| Escrow Advances | $26,860.72 |
| Interest on Escrow Advance | $1,594.27 |
| Late Charges | $551.31 |
| Corporate Advances | $30.00 |
| NSF Charges | $439.00 |
| Attorney`s Fees | $5,825.00 |
| Attorney`s Costs | $2,519.00 |
| **GRAND TOTAL DUE** | **$1,049,035.50** |

4. **Interest.** The total sum referenced in Paragraph 3 shall bear interest from this date forward at the rate of interest set forth in section 55.03, Florida Statutes.

5. **<u>Lien on Property.</u>** Plaintiff, whose address is c/o Fay Servicing, LLC, Attn Payments, 1601 LBJ Freeway, Suite 150, Farmers Branch, TX 75234, holds a lien for the total sum specified in Paragraph 3 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to sections 718.116 or 720.3085, Florida Statutes. Plaintiff's lien encumbers the subject property located in Hillsborough County, Florida and described as:

LOT 33 IN BLOCK 7 OF PARKLAND ESTATES SUBDIVISION, ACCORDING TO THE MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 1, PAGE 156, OF THE PUBLIC RECORDS OF HILLSBOROUGH COUNTY, FLORIDA. LESS AND EXCEPT THAT PART OF LOT 33 DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 33, RUN THENCE NORTH 00 DEGREES 27 MINUTES AND 30 SECONDS EAST ALONG THE WESTERLY BOUNDARY OF SAID LOT 33, 110.00 FEET TO THE NORTHERLY BOUNDARY OF SAID LOT 33; THENCE SOUTH 89 DEGREES 32 MINUTES 30 SECONDS EAST, ALONG SAID BOUNDARY 12.00 FEET, THENCE SOUTH 00 DEGREES 27 MINUTES 30 SECONDS WEST, 94.38 FEET, THENCE SOUTH 54 DEGREES 55 MINUTES 44 SECONDS EAST, 27.40 FEET TO THE SOUTHERLY BOUNDARY OF SAID LOT 33, THENCE NORTH 89 DEGREES 38 MINUTES 10 SECONDS WEST ALONG SAID SOUTHERLY BOUNDARY, 34.55 FEET TO THE POINT OF BEGINNING

including the buildings, appurtenances, and fixtures located thereon.

Property Address: <u>2909 W Fountain Blvd, Tampa, FL 33609</u>
(the "Subject Property").

6. **<u>Sale of Property.</u>** If the total sum with interest at the rate described in Paragraph 4 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property to the highest bidder for cash at public sale on **<u>December 1, 2025</u>**, at 10:00 A.M. after having first given notice as required by section 45.031, Florida Statutes. The judicial sale will be conducted electronically online at the following website: http://www.hillsborough.realforeclose.com. At least three (3) days prior to the sale, plaintiff must pay the costs associated with the Notice of Publication. The party or their attorney shall be responsible for preparing, in accordance with section 45.031(2), Florida Statutes, and submitting the Notice of Sale to a legal publication. The original Notice of Sale and Proof of Publication must be filed with the Clerk of the Circuit Court at least 24 hours prior to the scheduled sale date.

7. **<u>Court Costs.</u>** Plaintiff shall advance all subsequent required costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. *If a third party bidder is the purchaser, the third party bidder must pay the documentary stamps attached to the certificate of title in addition to the bid.*

8. **<u>Additional Expenses, Fees and Costs.</u>** If, subsequent to the entry of this final judgment, but prior to the actual sale date of the property, plaintiff incurs additional

expenses, fees or costs to protect its interest in the property after entry of this judgment including, but not limited to, real estate taxes, hazard insurance, property preservation, or other necessary costs, plaintiff may, by written motion served on all parties, seek to amend this final judgment to include such additional expenses, fees and costs. Such additional expenses, fees and costs shall be added to the "total sum due" in Paragraph 3 and shall be paid from the distribution of proceeds of the sale. A motion to amend the final judgment to include additional expenses, fees and costs must be filed not later than 15 days after entry of the judgment, pursuant to Florida Rule of Civil Procedure 1.530(g).

9. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate, *unless the property is purchased by a third party bidder*; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff in Paragraph 3, less the items paid, plus interest at the rate prescribed in Paragraph 4 from this date to the date of the sale; and by retaining any remaining amount—the "surplus proceeds"—pending further Order of this court.

10. **Right of Redemption / Right of Possession.** On filing the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property and defendant's right of redemption as prescribed by section 45.0315, Florida Statutes, shall be terminated, except as to claims or rights under chapter 718 or chapter 720, Florida Statutes, if any. Upon the filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property.

11. **Attorneys' Fees.**

The court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 3 hours were reasonably expended by plaintiff's counsel and that an hourly rate of $275.00 - $330.00 is appropriate. PLAINTIFF'S COUNSEL CERTIFIES THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF. The court finds that there are no reduction or enhancement factors for consideration by the court pursuant to *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985).

The requested attorney's fee is a flat rate fee that the firm's client has agreed to pay in this matter. Given the amount of fee requested and the labor expended, the court finds that a lodestar analysis is not necessary and that the flat fee is reasonable.

12. **Claims to Surplus Funds/Proceeds.**

A. **Generally**

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THIS FINAL JUDGMENT.

The funds remaining after payment of all disbursements required by Paragraph 3 and Paragraph 7 of this final judgment and shown on the certificate of disbursement are "surplus funds."

B. **<u>Claim by Subordinate Lienholder</u>**

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, IF ANY, YOU MUST FILE A CLAIM WITH THE CLERK **<u>NO LATER THAN THE DATE THAT THE CLERK REPORTS THE FUNDS AS UNCLAIMED</u>**. IF YOU FAIL TO FILE A TIMELY CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

A subordinate lienholder is the holder of a subordinate lien *as shown on the face of the pleadings* as an encumbrance on the property. A subordinate lienholder includes, but is not limited to, a subordinate mortgage, judgment, tax warrant, assessment lien, or construction lien. A subordinate lienholder not shown on the face of the pleadings is not entitled to the surplus if it did not intervene in the action within 30 days after the recording of the notice of lis pendens. If your lien was paid in full from the proceeds of the sale, you have no claim to the surplus. One year after the sale, any surplus remaining with the Clerk of the Court must be remitted to the Department of Financial Services, as provided in section 45.032(3)(c), Florida Statutes.

C. **<u>Claim by Owner of Record</u>**

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED.

PLEASE CHECK WITH THE CLERK OF THE COURT AT 813-276-8100 **<u>WITHIN TEN (10) DAYS AFTER THE SALE</u>** TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT BAY AREA LEGAL SERVICES, 1302 N. 19TH STREET, SUITE 400, TAMPA, FLORIDA 33605-5230, TELEPHONE NUMBER, 813-232-1343, TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE HILLSBOROUGH COUNTY BAR ASSOCIATION REFERRAL

SERVICE AT 813-221-7780 FOR ASSISTANCE, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

The property owner is the owner of record who appears to be the owner(s) of the foreclosed

property *on the date of the filing of the lis pendens*. To make a claim to the surplus, an owner of record may use the form provided at section 45.032(3)(a), Florida Statutes. One year after the sale, any surplus remaining with the Clerk of the Court must be remitted to the Department of Financial Services, as provided in section 45.032(3)(c), Florida Statutes. After the surplus has been remitted to the Department of Financial Services, the owner of record, or the beneficiary of a deceased owner of record, must make a claim with the Department for the surplus pursuant to section 717.124, Florida Statutes.

D. **Claim by Grantee or Assignee of Property Owner**

If you are an assignee of the rights of the owner of record, you must prove entitlement to the surplus funds in accordance with section 45.033, Florida Statutes.

E. **Claim by Plaintiff**

Plaintiff/Mortgagee is not entitled to surplus funds/proceeds. Any additional expenses, fees and costs incurred subsequent to entry of the final judgment, but prior to the sale, must be added to the "total sum due" pursuant to Paragraph 8, and are not payable from the surplus proceeds.

STATUTORY REQUIRED LANGUAGE ABOVE, IN ACCORDANCE WITH SECTION 45.031, FLORIDA STATUTES, IS IN ALL CAPITAL LETTERS.

13. **Assignment.** *The plaintiff may assign the judgment and credit bid by the filing of an assignment prior to the issuance of the certificate of title without further order of the court.*

14. **Jurisdiction Retained.** The court retains jurisdiction of this action to enter further orders or judgments that are proper, including, without limitation, *orders amending this final judgment in accordance with Paragraph 8, orders disbursing the surplus proceeds, orders of reforeclosure, orders authorizing writs of possession and an award of attorney's fees, to enter deficiency judgments if the borrower has not been discharged in bankruptcy, and to enforce the adequate protection ordered, if applicable.*

15. Count II of the Complaint for Assignment of Leases and Rents is also hereby **GRANTED**. Based on the Borrower's breach of the Loan Documents and the relevant terms of the Mortgage regarding the assignment of leases and rents, it is hereby ordered that:

i. *Within ten (10) days from the entry of this judgment*, the Borrower shall provide to Plaintiff, through its counsel, with copies of any and all current leases given by the Borrower and/or any of its agents with regard to the Subject Property and formally assign any and all such leases to the Plaintiff;

ii. *Within ten (10) days from the entry of this judgment,* the Borrower shall transfer any and all security deposits currently held by the Borrower and/or any of its agents with regard to the aforementioned leases to Plaintiff in a check made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

iii. *Within ten (10) days from the entry of this judgment*, the Borrower shall provide Plaintiff, through its counsel, with a complete accounting of all revenues and/or rents received by

the Borrower and/or any of its agents with regard to the Subject Property since the default/maturity date on June 1, 2024;

iv. *Within ten (10) days from the entry of this judgment*, the Borrower shall turnover all revenues and/or rents received by the Borrower and/or any of its agents with regard to the Subject Property since the default/maturity date on June 1, 2024 in a check made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

v. The Borrower shall continue to turnover all revenues and/or rents hereinafter received by the Borrower and/or any of its agents with regard to the Subject Property through the issuance of the Certificate of Sale after the Subject Property is sold pursuant to this judgment in a check made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

vi. From the date of entry of this judgment through the issuance of the Certificate of Sale after the Subject Property is sold pursuant to this judgment the Borrower and any other tenants residing in the Subject Property, shall make all future rent payments directly to Plaintiff, through its agent, with checks made payable to "BSI Financial Services," mailing same to BSI Financial Services at 4200 Regent Blvd., Suite B200, Irving, CA 75063 (The check should reference the Subject Property address);

vii. Any monies received by Plaintiff in accordance herewith, with the exception of any security deposits transferred, shall be applied to the Grand Total Due and credited accordingly prior to the public sale of the Subject Property.

IT IS ORDERED in Tampa, Hillsborough County, Florida, on Electronically Conformed 8/28/2025 Helene Daniel.

THE HONORABLE HELENE L. DANIEL
Circuit Judge

Copies furnished to:

Evan R. Raymond, Esq.
HOWARD LAW
E-Mail: Pleadings@howardlaw.com
Counsel for Plaintiff

Philip G. Dragonetti, Esq.
McFARLAND, GOULD, LYONS, SULLIVAN & HOGAN, P.A.
E-Mail: pdasst@mglegalteam.com
Counsel for Defendant, RAD Diversified REIT, INC., a Maryland Corporation

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY**
**GENERAL CIVIL DIVISION**

CIVIC REAL ESTATE HOLDINGS III, LLC — CASE NUMBER: 24-CA-007584
Plaintiff

vs

RAD DIVERSIFIED REIT, INC et al — Division H
Defendant

## CERTIFICATE OF SALE

The undersigned Clerk of the Court certifies that notice of public sale of the property described in the Order or Final Judgment was published in the **BUSINESS OBSERVER**, a newspaper circulated in Hillsborough County, Florida. On 12/01/2025, the property was offered for public sale to the highest and best bidder for cash. The highest and best bid received for the property was submitted by **LUMINARY 813, LLC.** 1925 E 6TH AVE, STE 10 TAMPA, FL 33605, to whom the property was sold. The proceeds of the sale are retained for distribution in accordance with the Order or Final Judgment.

WITNESS my hand and the seal of this court on 1st day of December, 2025.

**VICTOR D. CRIST**
**CLERK OF THE COURT**

24-CA-007584,12/1/2025 2:12:14 PM

**Jennifer Taylor, AS DEPUTY CLERK**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Certificate of Sale has been furnished to all named parties by U.S. Mail or Email on 1st day of December, 2025.

**VICTOR D. CRIST**
**CLERK OF THE COURT**

24-CA-007584, 12/1/2025 2:12:14 PM

**Jennifer Taylor, AS DEPUTY CLERK**

Exhibit "B"

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY FLORIDA

CIVIC FINANCIAL SERVICES, LLC,
Plaintiff,

CIRCUIT CIVIL DIVISION

CASE NO.: 24-CA-007584

v.

RAD DIVERSIFIED REIT, INC., A MARYLAND CORPORATION, *et al.*,
Defendants.
_______________________________________/

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S OBJECTION TO SALE**

STATE OF FLORIDA
COUNTY OF PALM BEACH

Before me, the undersigned authority, personally appeared Andrew Prokop, who being duly sworn, deposes and states:

1. My name is Andrew Prokop. I am over the age of eighteen, am competent to make this affidavit, and have personal knowledge of the matters stated herein.
2. I am employed as a Post-Judgment/Sales Paralegal with Howard Law, counsel for the Plaintiff in this action. I have held this position for two years and six months. I am authorized to make this statement and I make it based on my personal knowledge.
3. As part of my regular work activities, I am regularly responsible for foreclosure sale bidding, including receiving client bid instructions and entering bids on the online foreclosure sale platform.
4. On November 25, 2025, I received written bidding instructions from the Plaintiff. The instructions stated a maximum bid of $190,800.00 for the foreclosure sale scheduled December 1, 2025 at 10:00 AM.
5. At the time I received those instructions, I understood them to be accurate and complete.
6. On November 25, 2025, based on the instructions I received, I entered a bid of "$190,800.00" on behalf of the Plaintiff. I entered the bid early due to the Thanksgiving holiday. This bid was accepted by the online foreclosure sale system and was the final bid entered for the Plaintiff.



Exhibit "C"

7. After the sale concluded, on December 1, 2025, at 1:29 PM, I received communication from Plaintiff advising that the bid amount they had provided was mistaken. Plaintiff informed me that the first two digits of the intended bid amount had been inadvertently transposed and that the correct intended bid should have been "$910,900.00"

8. At the time of receiving this corrected information, the foreclosure sale had already closed, no further bids could be entered, and Plaintiff's bid could not be modified.

9. The bid I placed for the Plaintiff was therefore the direct result of a transpositional error made by the Plaintiff in providing the bid amount. The mistake was not intentional, and I placed the bid in good faith reliance on the instructions I had been given.

10. Immediately upon learning of the error, I notified the attorney responsible for the file so that corrective action could be taken.

11. The facts set forth above are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

Andrew Prokop
Affiant

STATE OF FLORIDA
COUNTY OF PALM BEACH

Sworn to (or affirmed) and subscribed before me by means of physical presence this 2nd day of December 2025 by ANDREW PROKOP, who is personally known to me.

Notary Public, State of Florida
(Print, Type, or Stamp Commissioned Name of Notary Public)

Commission No.: ____________
My Commission Expires: ____________

BARBARA ALFONSO
MY COMMISSION # HH 456077
EXPIRES: October 19, 2027

[Notary Seal]

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

CIVIC FINANCIAL SERVICES, LLC

Plaintiff, Case No.: 24-CA-007584

vs.

RAD DIVERSIFIED REIT, INC.,
A MARYLAND CORPORATION, et al.

Defendants.
_______________________________________/

**ORDER GRANTING PLAINTIFF'S OBJECTION TO SALE AND MOTION TO VACATE FORECLOSURE SALE**

**THIS CAUSE** having come before the Court on July 20, 2026 on Plaintiff's CIVIC REAL ESTATE HOLDINGS III, LLC ("CIVIC") Objection to Sale and Motion to Vacate and Reset Foreclosure Sale [Doc #51], and the Court having heard argument of the Parties, having reviewed the file and Third-Party Purchaser's, LUMINARY 813, LLC ("LUMINARY") Response in Opposition [Doc #52] and Supplemental Response in Opposition [Doc#65], and the Court being otherwise duly advised, it is hereby,

**ORDERED AND ADJUDGED:**

1. Plaintiff's Objection to Sale and Motion to Vacate and Reset Foreclosure Sale is **SUSTAINED AND RELIEF IS GRANTED, IN PART,** as follows.
2. The December 1, 2025 foreclosure sale to Third-Party Purchaser, LUMINARY, is **VACATED.**
3. LUMINARY is to be made whole and sustain no financial loss as a result of the vacatur of the foreclosure sale.
4. Therefore, the Clerk is **DIRECTED** to promptly **RETURN** to LUMINARY the purchase funds, in the amount of $581,100.00, deposited by LUMINARY in connection with the foreclosure sale.
5. In addition to the purchase price, LUMINARY also paid $12,791.70 in Clerk's fees and charges in connection with the foreclosure sale, consisting of $8,724.00 in registry fees and $4,067.70 in documentary stamp charges.
6. The Clerk of the Court is **DIRECTED** to promptly **REFUND** to LUMINARY all of the documentary stamp charges in the amount of $4,067.70.

7. To the extent permitted by the Bankruptcy Court, Plaintiff, CIVIC, **SHALL** reimburse LUMINARY $8,724 for registry fees.
8. The Court **DECLINES** to grant LUMINARY statutory interest in connection with its argument that it has been deprived of the loss of use of its funds.
9. Plaintiff's request to reset Property for sale is **DENIED.**
10. Because the Certificate of Sale has been **VACATED**, the Property **SHALL** return to the jurisdiction of the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, in Case No. 8:26-bk-01636-CPM, and no further action concerning the Property shall be taken in this foreclosure action unless and until authorized by further order of the Bankruptcy Court.
11. Plaintiff **SHALL** promptly notify counsel for the Debtors of this ruling and seek such further relief or direction from the Bankruptcy Court as may be appropriate.

**DONE AND ORDERED** in Hillsborough County, Florida.

Electronically Conformed 9/17/2026
Helene Daniel

The Honorable Judge Helene Daniel
CIRCUIT COURT JUDGE

**SERVICE LIST**

Judah L. Solomon, Esq.
HOWARD LAW
Judah@howardlaw.com
Pleadings@howardlaw.com
*Counsel for Plaintiff, CIVIC FINANCIAL SERVICES, LLC*

Philip G. Dragonetti, Esq.
MCFARLAND, GOULD, LYONS, SULLIVAN & HOGAN, P.A.
pdasst@mglegalteam.com
*Counsel for Defendant, RAD Diversified REIT, INC.*

Matthew J. Mincone, Esq.
MINCONE LAW GROUP, P.A.
mmincone@avidlawyers.com
service@avidlawyers.com
*Counsel for Third-Party Purchaser, Luminary 813, LLC*

Bob Henriquez
Hillsborough County Property Appraiser

https://www.hcpafl.org/
15th Floor County Ctr.
601 E. Kennedy Blvd, Tampa, Florida 33602-4932
Ph: (813) 272-6100

[redacted]




## Owner Information

| | |
|---|---|
| **Owner Name** | RAD DIVERSIFIED REIT INC |
| **Mailing Address** | 10808 FOOTHILL BIVD 160 347<br>RANCHO CUCAMONGA, CA 91730 |
| **Site Address** | 2909 W FOUNTAIN BLVD, TAMPA |
| **PIN** | A-27-29-18-3Q1-000007-00033.0 |
| [redacted] | [redacted] |
| **Prior PIN** | |
| [redacted] | [redacted] |
| **Tax District** | TA - TAMPA |
| **Property Use** | 0100 SINGLE FAMILY R |
| **Plat Book/Page** | 10/72 |
| **Neighborhood** | 203009.00 \| Parkland/St Andrews Area |
| **Subdivision** | 3Q1 \| PARKLAND ESTATES REVISED PLAT |

## Value Summary

| Taxing District | Market Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| County | $818,576 | $818,576 | $0 | $818,576 |
| Public Schools | $818,576 | $818,576 | $0 | $818,576 |
| Municipal | $818,576 | $818,576 | $0 | $818,576 |
| Other Districts | $818,576 | $818,576 | $0 | $818,576 |

Note: This section shows Market Value, Assessed Value, Exemptions, and Taxable Value for taxing districts. Because of changes in Florida Law, it is possible to have different assessed and taxable values on the same property. For example, the additional $25,000 Homestead Exemption and the non-homestead CAP do not apply to public schools, and the Low Income Senior Exemption only applies to countywide and certain municipal millages.

## Sales Information

| Book / Page | Instrument | Month | Year | Type Inst | Qualified or Unqualified | Vacant or Improved | Price |
|---|---|---|---|---|---|---|---|
| | 2022340240 | 06 | 2022 | WD | Qualified | Improved | $860,000 |
| 22091 / 0226 | 2013318824 | 02 | 2013 | CD | Unqualified | Improved | $100 |
| 21732 / 0154 | 2013095156 | 02 | 2013 | WD | Unqualified | Improved | $104,000 |
| 11283 / 0147 | 2001403904 | 10 | 2001 | QC | Unqualified | Improved | $100 |
| 8705 / 1799 | 97234049 | 09 | 1997 | WD | Qualified | Improved | $200,000 |
| 6255 / 0429 | 91083248 | 04 | 1991 | WD | Unqualified | Vacant | $100 |
| 5991 / 0978 | 90116724 | 05 | 1990 | WD | Unqualified | Improved | $40,000 |

## Building Information

### Building 1

| | |
|---|---|
| **Type** | 01 \| SINGLE FAMILY |
| **Year Built** | 1993 |

### Building 1 Construction Details

| Element | Code | Construction Detail |
|---|---|---|
| Class | C | Concrete Block |
| Exterior Wall | 7 | Masonry Frm: Stucco |
| Roof Structure | 3 | Gable or Hip |
| Roof Cover | 6 | Tile |
| Interior Walls | 5 | Drywall |
| Interior Flooring | 5 | Wood |
| Interior Flooring | 8 | Carpet |
| Heat/AC | 2 | Central |
| Architectural Style | 5 | Contemporary |
| Condition | 3 | Average |
| Bedrooms | 4.0 | |
| Bathrooms | 4.0 | |
| Stories | 2.0 | |
| Units | 1.0 | |




### Building 1 subarea

| Area Type | Gross Area | Heated Area | Depreciated Value |
|---|---|---|---|
| BAS | 154 | 154 | $31,512 |
| FGR | 462 | | $47,268 |
| TWO | 2,002 | 2,002 | $389,196 |
| **Totals** | **2,618** | **2,156** | **$467,976** |

## Extra Features

| OB/XF Code | Description | Building | Year On Roll | Length | Width | Units | Value |
|---|---|---|---|---|---|---|---|
| 0595 | FIREPLACE | 1 | 1993 | 0 | 0 | 1.00 | $4,879 |
| 0080 | WALK BRICK | 1 | 2023 | 0 | 0 | 300.00 | $5,180 |

## Land Information

| Use Code | Description | Zone | Front | Depth | Land Type | Total Land Units | Land Value |
|---|---|---|---|---|---|---|---|
| REW2 | Res SF Class 52 | PD | 63.00 | 110.00 | SE \| SF LOTS W/ EFF SIZE | 6,930.00 | $340,540 |

## Legal Description

PARKLAND ESTATES REVISED PLAT LOT 33 LESS BEG AT SW COR OF SAID LOT RUN N 110 FT THN E 12 FT THN S 94.38 FT THN S 54 DEG 55 MIN 44 SEC E 27.40 FT THN W 34.55 FT TO POB BLOCK 7