UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: RAD Diversified REIT, Inc.
Case No. 8:26-bk-01636-CPM

# EXHIBIT A

Note and Endorsement / Allonge

# COMMERCIAL FIXED RATE PROMISSORY NOTE (this "Note")

**November 08, 2022**
Date

**$260,000.00**

**29 W Logan Street, Philadelphia, PA 19144**
Property Address

On the date set forth above (the "Effective Date"), for value received, **RAD Diversified REIT, Inc.**, a Maryland Corporation having an address at 4115 W Spruce Street, Suite 205 Tampa, FL 33607 ("Borrowers") unconditionally promise to pay to the order of **TVC Funding III, LLC**, a Delaware limited liability company, its successors and/or assigns ("Lender") as provided for in that certain mortgage, deed of trust or security instrument dated the 08 day of November 2022, between Borrowers and Lender (the "Agreement"), (i) the principal amount of Two Hundred Sixty Thousand Dollars and Zero Cents ($260,000.00) (the "Loan") and (ii) interest on the full principal amount from the date of this Note until maturity at a rate of interest equal to Eight Percent (8.000%) unless stated otherwise. The maximum principal amount of the Loan from the Effective Date to the Maturity Date shall bear interest at a fixed rate of Eight Percent (8.000%) per annum until paid or as otherwise stated. All payments of both principal and interest shall be payable to Lender at 7550 Wisconsin Ave, 10th Floor, Bethesda, MD 20814, or such other place as Lender may designate in writing. The Lender or anyone who subsequently takes this Note or any portion of this Note by assignment or any other transfer is called a "Note Holder" and any assignment or transfer to a Note Holder may be evidenced by a note or may be noteless, at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Lender any such documents as Borrower and/or Lender may require to confirm such assignment or other transfer, evidence the indebtedness, and/or to otherwise effectuate such assignment or other transfer including, without limitation, original replacement notes in form and substance satisfactory to Lender and payable to the order of Lender and/or a Note Holder in an aggregate principal amount equal to the stated principal amount of the Loan.

The principal of this Note and all accrued and unpaid interest is payable on, or before, **December 1, 2052** (the "Maturity Date"). Additionally, monthly payments on the full maximum principal in the amount of **One Thousand Nine Hundred Seven Dollars and Seventy-Nine Cents ($1,907.79) shall be made monthly, in arrears, starting January 1, 2023 and on or before the 1st day of each succeeding month until the Maturity Date or until the Note is satisfied in full including accrued interest and any other fees assessable (the "Monthly Interest Payment").** Payments of both principal and interest are to be made in lawful money of the United States of America in immediately available funds.

**PAYMENT ESCROW RESERVE.** On the Effective Date, Borrower shall deposit into an escrow account established and held by the Lender, the amount of **$9,090.36** ("Reserve"), which Reserve shall be held by Lender as additional cash collateral for Loan. So long as no Event of Default has occurred and is continuing, on the first day of each month commencing on January 1, 2023 Lender shall (i) advance from the Reserve an amount equal to the lesser of (a) $2,272.59 and (b) the remaining balance of the Reserve, and (ii) apply such amount to the Monthly Payment due. Commencing with payment due on May 1, 2023, Borrower will be responsible for sending the Monthly Payment directly to Lender as required per terms of this Note. Notwithstanding the foregoing, (y) upon the occurrence of an Event of Default (as defined below), Lender shall apply amounts on deposit in the Reserve to the outstanding principal balance of the



[redacted]

Loan, and (z) if the Loan is prepaid in full prior to the initial Maturity Date, all amounts in the Reserve shall be applied to the outstanding principal balance of the Loan.

**PREPAYMENT.** In the event of prepayment, in whole or in part, prior to the Maturity Date a prepayment penalty rate may apply as stated in the prepayment rider attached hereto as Exhibit "A". Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: TVC Funding III, LLC, 7550 Wisconsin Ave, 10th Floor, Bethesda, MD 20814.

**LATE CHARGE.** If the Lender has not received the full amount of any Monthly Interest Payment by the end of fifteen (15) calendar days after the date it is due, Borrower will pay a late charge to the Lender and be considered in default. The amount of the late charge will be 5% of the overdue payment. Borrower will pay this late charge promptly but only once on each late payment.

**INTEREST AFTER DEFAULT.** After the occurrence of an Event of Default as defined below (subject to any applicable cure or grace periods, if any), and at the option of the Lender, the legal rate of interest shall increase to eighteen percent (18%) or the highest rate allowed under applicable law per annum, whichever is less (the "Default Rate"). Such Default Rate shall be curable at the Lender's sole discretion provided the Event of Default has been cured. The Default Rate shall continue to accrue after judgment until the Note is paid in full if allowed under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any Monthly Interest Payment or any other payment when due under this Note, including but not limited to, to the payment in full of the outstanding principal due under this Note and all accrued and unpaid interest and fees due on the Maturity Date.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the Related Documents as defined in the Agreement aforementioned or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, or a trustee or receiver is appointed for Borrower or for all or a substantial portion of the assets of Borrower, or Borrower makes a general assignment for the benefit of Borrower's creditors, or Borrower files for bankruptcy, or an involuntary bankruptcy petition is filed against Borrower and such involuntary petition remains undismissed for sixty (60) days.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings,



[redacted]

whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Note. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership or Transfer.** Any change in ownership of fifty-one (51%) or more of Borrower. Borrower sells, leases, or otherwise disposes of all or substantially all of its property, assets, or business, or if Borrower ceases any of its business operations, dissolves, or commences reorganization. If all or any part of the Collateral as defined below or any interest in the Collateral is sold or transferred.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in Monthly Interest Payment or any other payment due, is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15)days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon an Event of Default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest, together with all other applicable fees, costs and charges, if any, immediately due and payable, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Subject to any limits under applicable law, upon default, Borrower agrees to pay Lender's reasonable attorneys' fees and all of Lender's other collection expenses, whether or not there is a lawsuit, including without limitation legal expenses for bankruptcy proceedings. Borrower further agrees to pay these attorneys' fees and expenses even if incurred after the date of any judgment Lender may obtain and agrees that the obligation will survive the entry of, and not be merged into, any judgment.

**JURY WAIVER. LENDER AND BORROWER EACH HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH LENDER OR BORROWER MAY BE PARTIES, ARISING OUT OF, OR IN ANY WAY PERTAINING TO, THIS NOTE. IT IS AGREED THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND BORROWER, AND LENDER**



[redacted]

**AND BORROWER EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER REPRESENTS THAT BORROWER HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.**

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania without regard to its conflicts of law provisions.**

**CONFESSED JUDGMENT. BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS ANY ATTORNEY OR THE PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA, OR ELSEWHERE, TO APPEAR AT ANY TIME FOR BORROWER AFTER A DEFAULT UNDER THIS NOTE AND WITH OR WITHOUT COMPLAINT FILED, CONFESS OR ENTER JUDGMENT AGAINST BORROWER FOR THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE AND ALL ACCRUED INTEREST, LATE CHARGES AND ANY AND ALL AMOUNTS EXPENDED OR ADVANCED BY LENDER RELATING TO ANY COLLATERAL SECURING THIS NOTE, TOGETHER WITH COSTS OF SUIT, AND AN ATTORNEY'S COMMISSION OF TEN PERCENT (10%) OF THE UNPAID PRINCIPAL BALANCE AND ACCRUED INTEREST FOR COLLECTION, BUT IN ANY EVENT NOT LESS THAN FIVE HUNDRED DOLLARS ($500) ON WHICH JUDGMENT OR JUDGMENTS ONE OR MORE EXECUTIONS MAY ISSUE IMMEDIATELY; AND FOR SO DOING, THIS NOTE OR A COPY OF THIS NOTE VERIFIED BY AFFIDAVIT SHALL BE SUFFICIENT WARRANT. THE AUTHORITY GRANTED IN THIS NOTE TO CONFESS JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ANY EXERCISE OF THAT AUTHORITY, BUT SHALL CONTINUE FROM TIME TO TIME AND AT ALL TIMES UNTIL PAYMENT IN FULL OF ALL AMOUNTS DUE UNDER THIS NOTE. BORROWER HEREBY WAIVES ANY RIGHT BORROWER MAY HAVE TO NOTICE OR TO A HEARING IN CONNECTION WITH ANY SUCH CONFESSION OF JUDGMENT AND STATES THAT EITHER A REPRESENTATIVE OF LENDER SPECIFICALLY CALLED THIS CONFESSION OF JUDGMENT PROVISION TO BORROWER'S ATTENTION OR BORROWER HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL.**

**LIEN/SET OFF.** Borrower hereby gives the Note Holder hereof a lien and right of set off for all of Borrower's liabilities to the Note Holder hereof or Lender upon and against all deposits, credits, and other property of Borrower now or hereafter in the possession or control of the Note Holder hereof, or in transit to it, excepting however, funds held in trust by Borrower.

**PURPOSE OF LOAN.** Borrower represents and warrants that the proceeds of this Note are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Borrower acknowledges that Lender is making this Loan to Borrower in reliance upon the above representation by Borrower. The above representation by Borrower will survive the closing of this Note and repayment of amounts due to Lender hereunder.

**COLLATERAL.** Borrower acknowledges this Note is secured by among other things the following collateral described in the security instrument listed herein: a Mortgage, Deed of Trust or Security Instrument to Lender on real property located in **Philadelphia County, Commonwealth of Pennsylvania** ("Collateral"). The Real Property or its address is commonly known as 29 W Logan



[redacted]

Street, Philadelphia, PA 19144.

**CONSENT TO JURISDICTION.** Borrower irrevocably submits to the jurisdiction of any state or federal court sitting in the State of Maryland over any suit, action, or proceeding arising out of or relating to this Note. Borrower irrevocably waives, to the fullest extent permitted by law, any objection that Borrower may now or hereafter have to the laying of venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action, or proceeding brought in any such court has been brought in an inconvenient forum. Final judgment in any such suit, action, or proceeding brought in any such court shall be conclusive and binding upon Borrower and may be enforced in any court in which Borrower is subject to jurisdiction by a suit upon such judgment provided that service of process is effected upon Borrower as provided in this Note or as otherwise permitted by applicable law.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any term, clause, or provision hereof shall be adjudged to be invalid or unenforceable by a court of appropriate jurisdiction, the validity and enforceability of the remainder shall not affected thereby and each such term, clause, or provision shall be valid and enforceable to the fullest extent permitted by law. Borrower does not agree or intend to pay, and Lender does not agree or intend to contract for, charge, collect, take, reserve or receive (collectively referred to herein as "charge or collect"), any amount in the nature of interest or in the nature of a fee for this Note, which would in any way or event (including demand, prepayment, or acceleration) cause Lender to charge or collect more for this Note than the maximum Lender would be permitted to charge or collect by federal law or the law of the State of Maryland (as applicable). Any such excess interest or unauthorized fee shall, instead of anything stated to the contrary, be applied first to reduce the principal balance of this Note, and when the principal has been paid in full, be refunded to Borrower. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.



[redacted]

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

**THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

**BORROWER:**
RAD Diversified REIT, Inc.

______________________________ (SEAL)
Name: Taylor Green
Title: Corporate Secretary

[Sign Original Only]



[redacted]

**EXHIBIT "A"**
**NOTE PREPAYMENT RIDER**

Borrower(s): RAD Diversified REIT, Inc.

Property Address: 29 W Logan Street Philadelphia , PA 19144

This Prepayment Rider (the "Prepayment Rider") is made this 08 day of November 2022, and is incorporated into and shall be deemed to amend and supplement the Note of the same date given by the undersigned borrower ("Borrower(s)") to secure repayment in favor of TVC Funding III, LLC ("Lender").

**ADDITIONAL COVENANTS**. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

**A. PREPAYMENT CHARGE**

The note provides for the payment of prepayment charge as follows:

**BORROWERS RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount under the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**A Prepayment may carry a charge**, which will be calculated in accordance with the following schedule:

- If within SIXTY (60) months following the date the loan was made I make a Prepayment, I will pay a Prepayment charge in an amount not the exceed any of the following amounts:
  - FIVE percent (5.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the first twelve-month period immediately following the date the loan was made;
  - FOUR percent (4.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the second twelve-month period immediately following the date the loan was made;
  - THREE percent (3.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the third twelve-month period immediately following the date the loan was made.
  - TWO percent (2.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the fourth twelve-month period immediately following the date the loan was made;
  - ONE percent (1.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the fifth twelve-month period immediately following the date the loan was made.



[redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

**RAD Diversified REIT, Inc.**

_________________________ (SEAL)

Name: Taylor Green

Title: Corporate Secretary



[redacted]

# ALLONGE TO NOTE

Statement of Purpose: This Note Allonge is attached to and made a part of the Note, for the purpose of Noteholder Endorsement to evidence a transfer of interest.

TERMS OF THE NOTE

| | |
|---|---|
| Note Date | 11/8/2022 |
| Borrower(s): | Brandon Mendenhall |
| | RAD DIVERSIFIED REIT INC |
| Original Lender: | TVC Funding III, LLC |
| Original Loan Amount: | $ 260000 |
| Property Address: | 29 W Logan Street, Philadelphia, PA 19144 |
| Loan Number(s): | [redacted] |
| Client / Investor: | Temple View Capital |

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE**

TVC Funding III, LLC

by: NewRez LLC d/b/a Shellpoint Mortgage Servicing, as attorney in fact

Angie Fay Chapman, Vice President

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: RAD Diversified REIT, Inc.
Case No. 8:26-bk-01636-CPM

# EXHIBIT B

Recorded Mortgage and Riders

eRecorded in Philadelphia PA Doc Id: 54421147
11/16/2022 01:25 PM Page 1 of 24 Rec Fee: $244.75
Receipt#[redacted]
Records Department Doc Code: M

Parcel Identification Number:[redacted]

**WHEN RECORDED MAIL TO:**
**TVC Funding III, LLC**
**7550 Wisconsin Ave, 10th Floor**
**Bethesda, MD 20814**

**SEND TAX NOTICES TO:**
**TVC Funding III, LLC**
**7550 Wisconsin Ave, 10th Floor**
**Bethesda, MD 20814**
[redacted]

FOR RECORDER'S USE ONLY

# MORTGAGE

**MAXIMUM** LIEN. This Mortgage shall secure unpaid loan advances made after this Mortgage is **recorded. The unpaid principal balance of advances exclusive of interest and other extensions of credit secured by the Mortgage made for the payment of taxes, assessments, maintenance charges, insurance premiums and costs incurred for the protection of the mortgaged premises shall not exceed at any one time $260,000.00.**

**Amount Secured Hereby: $260,000.00**

**THIS MORTGAGE dated November 08, 2022, is made and executed between RAD Diversified REIT, Inc., whose address is 4115 W Spruce Street, Suite 205, Tampa, FL 33607 (referred to below as "Grantor") and TVC Funding III, LLC, whose address is 7550 Wisconsin Ave, 10th Floor, Bethesda, MD 20814(referred to below as "Lender").**

**GRANT** OF **MORTGAGE. For valuable consideration, Grantor** grants, bargains, sells, conveys, assigns, transfers, releases, confirms and mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all streets, lanes, alleys, passages, and ways; all easements, rights of way, all liberties, privileges, tenements, hereditaments, and appurtenances thereunto belonging or anywise made appurtenant hereafter, and the reversions and remainders with respect thereto; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located Philadelphia County, Commonwealth of Pennsylvania:**

**SEE EXHIBIT "A" ATTACHED**



[redacted]

**HERETO AND MADE A PART HEREOF**

**The Real Property or its address is commonly known as 29 W Logan Street, Philadelphia, PA 19144.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF 1, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's Obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other



[redacted]

person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve theProperty.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest



[redacted]

in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Pennsylvania law.

**ESCROW, TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Funds for Escrow Items.** Grantor may be required to pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Mortgage, Deed of Trust or Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender; and (d) mortgage insurance premiums, if any, or any sums payable by Grantor to Lender in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Impounds." At origination or at any time during the term of the Note, Lender may require that community association dues, fees, and assessments, if any, be escrowed by Grantor, and such dues, fees and assessments shall be an Escrow Impound. Grantor shall promptly furnish to Lender all notices of amounts to be paid under this section. Grantor shall pay Lender the Funds for Escrow Impounds.

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances



[redacted]

satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of fifteen (15) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for



[redacted]

insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; or (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default. Grantor's Obligation to Lender for all such expenses shall survive the entry of any mortgage foreclosure judgment.

**WARRANTY; DEFENSE OF** TITLE. The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election



[redacted]

341271147 Page 7 of 24 11/18/2022 01:25 PM

require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all actual costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as



[redacted]

941271147 Page 8 of 24 11/18/2022 01:25 PM

required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ADDITIONAL AUTHORIZATIONS.** The following provisions relating to further assurances and additional authorizations are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's Obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Additional Authorizations.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably authorizes Lender to make, execute, deliver, file, record and do all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph. It is understood that nothing set forth herein shall require Lender to take any such actions.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the Obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or



[redacted]

misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of any Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:



[redacted]

**Accelerate Indebtedness.** Lender shall have the right at its option, after giving such notices as required by applicable law, to declare the entire Indebtedness immediately due and payable.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably authorizes Lender to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the Obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the earnings, revenues, Rents, issues, profits and income from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness as a strict right. This right shall be without regard to, and without the necessity of proving (i) the inadequacy of the security for the repayment of the Grantor's Indebtedness; (ii) the insolvency of Grantor or any other person or entity who may be legally or equitably liable to pay money secured hereby and Grantor and each such person or entity shall be deemed to have waived such proof and to have consented to the appointment of a receiver; or (iii) the filing of a notice of default; and the Grantor consents to such appointment. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by the Lender shall not disqualify a person from serving as receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Possession of the Property.** For the purpose of procuring possession of the Property, Grantor hereby authorizes and empowers any attorney of any court of record in the Commonwealth of Pennsylvania or elsewhere, as attorney for Lender and all persons claiming under or through Lender, to sign an agreement for entering in any competent court an amicable action in ejectment for possession of the Property and to appear for and confess judgment against Grantor, and against all persons claiming under or through Grantor, for the recovery by Lender of possession of the Property, without any stay of execution, for which this Mortgage, or a copy of this Mortgage verified by affidavit, shall be a sufficient warrant; and thereupon a writ of possession may be issued forthwith, without any prior writ or proceeding whatsoever.

**Nonjudicial Sale.** If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.



[redacted]

**Deficiency Judgment.** Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Unless otherwise required by applicable law, reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an Obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.



[redacted]

**TRANSERABILITY.**

(a) Notwithstanding anything to the contrary in this Mortgage, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Lender may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (y) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as a Lender hereunder, and (z) the assigning Lender shall be relieved of its obligations hereunder with respect to the assigned portion of Indebtedness and other Obligations. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct Obligations of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, collateral and/or Related Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Related Document.

(b) Any assignment pursuant to subsection (a) above or any other provision of this Mortgage may be evidenced by a note or may be noteless, at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Borrower and/or Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Note.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Mortgage and each Related Document on behalf of the Lenders, subject to the terms of any co-lending agreement. Borrower may rely conclusively on the actions of Agent to bind the Lenders, notwithstanding that the particular action in question may, pursuant to this Agreement or any co-lending agreement be subject to the consent or direction of some or all of the Lenders. Lender may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement. Upon such appointment, such successor Agent shall have the sole and exclusive authority to execute and perform this Mortgage and each Related Document on behalf of itself, as Agent for itself and the Lenders, subject to the terms of any co-lending agreement.

**NOTICES.** Unless otherwise provided by applicable law, any notice required to be given under this Mortgage shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless



[redacted]

otherwise provided by applicable law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law. With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Pennsylvania.** In **all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Maryland without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender** in the **State of Maryland.**

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's Obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending



[redacted]

provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successor Interests.** The terms of this Mortgage shall be binding upon Grantor, and upon Grantor's heirs, personal representatives, successors, and assigns, and shall be enforceable by Lender and its successors and assigns.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury. All parties to this Mortgage hereby waive the right to any jury trial** in **any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means RAD Diversified REIT, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means RAD Diversified REIT, Inc..

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or



[redacted]

pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Lender.** The word "Lender" means TVC Funding III, LLC, its successors and assigns.

**Guaranty.** Shall mean that certain personal guaranty, if any, dated as of even date herewith from Guarantor to Lender.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Person.** Shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

**Indebtedness.** Means, for Borrower and/or Guarantor, without duplication, all present and future indebtedness, whether direct or contingent, funded or unfunded, evidenced by or arising under this Agreement with respect to the Note, or under any other Related Document, together with interest thereon and all other sums due to Lender in respect of the Note under any Related Documents (including sums added to the principal balance of the Note in accordance with the terms of any Related Documents and all other charges, fees, costs and expenses payable pursuant to any Related Documents).

**Obligations.** Means the Indebtedness and all other obligations (other than payment of the Indebtedness) of Borrower or Guarantor under any of the Related Documents.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 08, 2022, **in the original principal amount of $260,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is 12/01/2052.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.



[redacted]

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Riders.** Means all Riders to this Mortgage, Deed of Trust or Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| | Adjustable Rate Rider | | Condominium Rider |
| | Second Home Rider | | Balloon Rider |
| | Planned Unit Development Rider | X | Prepayment |
| X | 1-4 Family Rider | | Biweekly Payment Rider |

**Related Documents.** The words "Related Documents" mean this Mortgage, Deed of Trust or Security Instrument and all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness by Borrower and/or Guarantor in connection with the Note.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.**

Witnesses:

**GRANTOR:**
**RAD Diversified REIT, Inc.**

By: ______________________ (Seal)
By: Taylor Green
Title: Corporate Secretary

_____________________________



[redacted]

## CERTIFICATE OF RESIDENCE

I hereby certify, that the precise address of the mortgagee, TVC Funding III, LLC, herein is as follows:
**7550 Wisconsin Ave, 10th Floor, Bethesda, MD 20814**

Attorney or Agent for Mortgagee



[redacted]

**CORPORATE ACKNOWLEDGMENT**

Commonwealth of ~~Pennsylvania~~ CALIFORNIA
County of SAN BERNARDINO

On this, the 08 day of November 2022, before me YVONNE ANN MENDEZ the undersigned Notary Public, personally appeared **Taylor Green,** who acknowledged himself/herself to be the Corporate Secretary of RAD Diversified REIT, Inc., a Corporation, and that he/she as such, being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing the name of the company by himself/herself as Corporate Secretary.

**In witness whereof, I hereunto set my hand and official seal.**

YVONNE ANN MENDEZ
Notary Public - California
San Bernardino County
Commission # 2401795
My Comm. Expires Apr 23, 2026

Yvonne Ann Mendez

Notary Public in and for the State of CALIFORNIA



[redacted]

**1-4 FAMILY RIDER**
**(Assignment of Rents)**

Borrower(s): RAD Diversified REIT, Inc.

Property Address: 29 W Logan Street Philadelphia, PA 19144

THIS 1-4 FAMILY RIDER is made this 08 day of November 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to TVC Funding III, LLC (the "Lender") of the same date and covering the Property described in the Security Instrument and located at 29 W Logan Street Philadelphia, PA 19144.

**1-4 FAMILY COVENANTS**. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by the Security Instrument and all other Related Documents.

**E. BORROWER'S OCCUPANCY.** Borrower does not intend to occupy, establish, and use the Property as Borrower's principal residence. The property shall be used solely for business or commercial purposes.

**F. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing



[redacted]

leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until an Event of Default. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument.
Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.



[redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

________________________ (SEAL)
Name: Taylor Green
Title: Corporate Secretary



[redacted]

**PREPAYMENT RIDER**

Borrower(s): RAD Diversified REIT, Inc.

Property Address: 29 W Logan Street Philadelphia, PA 19144

This Prepayment Rider (the "Prepayment Rider") is made this 08 day of November 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "security instrument") of the same date given by the undersigned borrower ("Borrower(s)") to secure repayment of the Borrower(s) promissory note (the "Note") in favor of TVC Funding III, LLC ("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at 29 W Logan Street Philadelphia, PA 19144.

**ADDITIONAL COVENANTS**, In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PREPAYMENT CHARGE**

The note provides for the payment of prepayment charge as follows:

**BORROWERS RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount under the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**A Prepayment may carry a charge**, which will be calculated in accordance with the following schedule:

- **For notes with a thirty-year (360) month term:** If within SIXTY (60) months following the date the loan was made I make a Prepayment, I will pay a Prepayment charge in an amount not the exceed any of the following amounts:
  - FIVE percent (5.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the first twelve-month period immediately following the date the loan was made;
  - FOUR percent (4.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the second twelve-month period immediately following the date the loan was made;
  - THREE percent (3.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the third twelve-month period immediately following the date the loan was made.
  - TWO percent (2.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the fourth twelve-month period immediately following the date the loan was made;
  - ONE percent (1.00%) of the Principal loan amount remaining on the date of Prepayment if the Prepayment is made within the fifth twelve-month period immediately following the date the loan was made.



[redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

**RAD Diversified REIT, Inc.**

_______________ (SEAL)

Name: Taylor Green

Title: Corporate Secretary



[redacted]

## Exhibit A Legal Description

All that certain lot or piece of ground with the buildings and improvements thereon erected and described according to a Survey and Plan thereof made on the 12th day of July 1904, by Joseph C. Wagner, esquire, Surveyor and regulator of the 9th District as follows, to wit:

Beginning at a point on the Northwesterly side of Logan Street at the distance of 97 feet Northeastwardly from the Northeasterly side of Royal Street in the 22nd Ward of the City of Philadelphia; thence extending still further along said Northwesterly side of Logan Street North 45 degrees 1 minute 43 seconds East 22 feet 11-7/8 inches to a point; thence on a line North 49 degrees 10 minutes 20 seconds West 108 feet 10-3/8 inches to a point; thence on a line South 40 degrees 47 minutes 30 seconds West 17 feet 11-7/8 inches to a point; thence on a line South 46 degrees 32 minutes 17 seconds East passing through the center of a party wall dividing this from the premises adjoining to the Southwest 107 feet 3- 3/8 inches to the first mentioned point and place of beginning

Being the same property conveyed to DDH Fund LP, by 29 West Logan LLC, in deed dated 04/28/2021, recorded 10/14/2021, in Instrument No. 53889596, in the County of Philadelphia and State of Pennsylvania.

More commonly known as: 29 West Logan Street, Philadelphia, PA 19144

[redacted]



[redacted]

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: RAD Diversified REIT, Inc.
Case No. 8:26-bk-01636-CPM

# EXHIBIT C

Recorded Assignments of Mortgage

eRecorded in Philadelphia PA Doc Id: [illegible]
10/22/2024 08:14 AM Page 1 of 3 Rec Fee: $242.75
Receipt#[redacted]
Records Department Doc Code: A

**When Record Return To:**
COMMUNITY LOAN SERVICING, LLC
P.O. BOX 458
KIMBERLING CITY, MO, 65686

[redacted]

**CORPORATE ASSIGNMENT OF MORTGAGE**

[redacted]

PA/PHILADELPHIA

Assignment Prepared on: October 09, 2024

**ASSIGNOR: TVC FUNDING III, LLC**, at 7550 WISCONSIN AVE, 10TH FLOOR, BETHDESA, MD, 20814

**ASSIGNEE: COMMUNITY LOAN SERVICING, LLC,** at 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-named Assignee all interest under that certain Mortgage Dated: 11/8/2022, in the amount of $260,000.00, executed by RAD DIVERSIFIED REIT, INC. to TVC FUNDING III, LLC and Recorded: 11/16/2022, Document #: 54121147 in PHILADELPHIA County, State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL, 33146

Attested By: Alison Alexander

The property is located in the City of PHILADELPHIA.
Property Address: 29 W LOGAN STREET, PHILADELPHIA, PA, 19144
Legal Description: See Exhibit 'A' attached hereto and by this reference made a part hereof

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

Page: 2 of 2 / [redacted]

TVC FUNDING III, LLC

On: October 16, 2024

By: ______________________

Name: Daniel B Means

Title: Senior Vice President

STATE OF Maryland
COUNTY OF Montgomery

On October 16, 2024, before me, Christopher Sherbo, a Notary Public in and for Montgomery County in the State of Maryland, personally appeared Daniel B Means, Senior Vice President, TVC FUNDING III, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

______________________

Christopher Sherbo

Notary Expires: 2/3/2027 / #: ______________________

Christopher Sherbo
NOTARY
PUBLIC
MONTGOMERY COUNTY MD

## Exhibit A Legal Description

All that certain lot or piece of ground with the buildings and improvements thereon erected and described according to a Survey and Plan thereof made on the 12th day of July 1904, by Joseph C. Wagner, esquire, Surveyor and regulator of the 9th District as follows, to wit:

Beginning at a point on the Northwesterly side of Logan Street at the distance of 97 feet Northeastwardly from the Northeasterly side of Royal Street in the 22nd Ward of the City of Philadelphia; thence extending still further along said Northwesterly side of Logan Street North 45 degrees 1 minute 43 seconds East 22 feet 11-7/8 inches to a point; thence on a line North 49 degrees 10 minutes 20 seconds West 108 feet 10-3/8 inches to a point; thence on a line South 40 degrees 47 minutes 30 seconds West 17 feet 11-7/8 inches to a point; thence on a line South 46 degrees 32 minutes 17 seconds East passing through the center of a party wall dividing this from the premises adjoining to the Southwest 107 feet 3- 3/8 inches to the first mentioned point and place of beginning

Being the same property conveyed to DDH Fund LP, by 29 West Logan LLC, in deed dated 04/28/2021, recorded 10/14/2021, in Instrument No. 53889596, in the County of Philadelphia and State of Pennsylvania.

More commonly known as: 29 West Logan Street, Philadelphia, PA 19144

[redacted]

eRecorded in Philadelphia PA Doc Id: 54339380
03/07/2025 08:19 AM Page 1 of 3 Rec Fee: $242.75
Receipt#[redacted]
Records Department Doc Code: A

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
[redacted]

[redacted]
WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH: 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **COMMUNITY LOAN SERVICING, LLC** located at **4425 PONCE DE LEON BLVD, CORAL GABLES, FL 33146**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over without recourse, representation or warranty, expressed or implied unto **TEMPLE VIEW CAPITAL FUNDING, LP** located at **7101 WISCONSIN AVENUE, STE 1012, BETHESDA, MD 20814**, Assignee, its successors and assigns, that certain Mortgage described below.

Said Mortgage dated **NOVEMBER 08, 2022** executed by **RAD DIVERSIFIED REIT, INC.**, Mortgagor, to **TVC FUNDING III, LLC**, Original Mortgagee, in the amount of **$260,000.00** and recorded on **NOVEMBER 16, 2022** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **54121147**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **29 W LOGAN STREET, PHILADELPHIA, PA 19144**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on FEB 2 8 2025.

**COMMUNITY LOAN SERVICING, LLC BY NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING, ITS ATTORNEY-IN-FACT, POWER OF ATTORNEY TO BE RECORDED HEREWITH**

**JANALYNNE HEDDEN, VICE PRESIDENT**

STATE OF **SOUTH CAROLINA** COUNTY OF **GREENVILLE** ) ss.

On FEB 2 8 2025, before me, Jennifer Smith, personally appeared **JANALYNNE HEDDEN** known to me to be the **VICE PRESIDENT** of **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AS ATTORNEY-IN-FACT FOR COMMUNITY LOAN SERVICING, LLC** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Jennifer Smith (COMM. EXP. AUG 1 0 2030)
NOTARY PUBLIC

JENNIFER SMITH
Notary Public, State of South Carolina
My Commission Expires 08/10/2030

[redacted]



[redacted]

I do hereby certify that the precise address of the Assignee Residence is:
**TEMPLE VIEW CAPITAL FUNDING, LP, 7101 WISCONSIN AVENUE, STE 1012, BETHESDA, MD 20814**

JANALYNNE HEDDEN, VICE PRESIDENT

[redacted]

[redacted] - RAD DIVERSIFIED REIT, INC.

LEGAL DESCRIPTION

All that certain lot or piece of ground with the buildings and improvements thereon erected and described according to a Survey and Plan thereof made on the 12th day of July 1904, by Joseph C. Wagner, esquire, Surveyor and regulator of the 9th District as follows, to wit:

Beginning at a point on the Northwesterly side of Logan Street at the distance of 97 feet Northeastwardly from the Northeasterly side of Royal Street in the 22nd Ward of the City of Philadelphia; thence extending still further along said Northwesterly side of Logan Street North 45 degrees 1 minute 43 seconds East 22 feet 11-7/8 inches to a point; thence on a line North 49 degrees 10 minutes 20 seconds West 108 feet 10-3/8 inches to a point; thence on a line South 40 degrees 47 minutes 30 seconds West 17 feet 11-7/8 inches to a point; thence on a line South 46 degrees 32 minutes 17 seconds East passing through the center of a party wall dividing this from the premises adjoining to the Southwest 107 feet 3- 3/8 inches to the first mentioned point and place of beginning

[redacted]

eRecorded in Philadelphia PA Doc Id: [illegible]
12/22/2025 07:56 AM Page 1 of 3 Rec Fee: $246.75
Receipt#[redacted]
Records Department Doc Code:[redacted]

RECORD & RETURN TO:
Friedman Vartolo LLP
1325 Franklin Avenue, Suite 160
Garden City, NY 11530
[redacted]

Property Address: 29 West Logan Street, Philadelphia, PA 19144
Assessor's Property Tax Parcel/Account Number[redacted]
Municipality: City of Philadelphia

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, Temple View Capital Funding, LP (the "Assignor"), whose address is 7101 Wisconsin Avenue, Suite 1012, Bethesda, MD 20814, hereby grants, transfers, and assigns and sets over to TVC Funding IV, LLC (the "Assignee"), whose address is 7550 Wisconsin Avenue, 10th Floor, Bethesda, MD 20814, all of the Assignor's rights, title and beneficial interest in and to that certain Mortgage dated November 8, 2022, and given by RAD Diversified REIT, Inc. to TVC Funding III, LLC, in the amount of $260,000.00 which Mortgage encumbers the real property known as **29 West Logan Street, Philadelphia, PA 19144** (Assessor's Property Tax Parcel/Account Number: [redacted], and which Mortgage was recorded on November 16, 2022, as Instrument Number 54121147, in the Office of the Recorder of Deeds of Philadelphia County, Pennsylvania. The real property encumbered by the Security Instrument is described as stated at **Exhibit "A"** herein.



[redacted]

IN WITNESS WHEREOF, **Temple View Capital Funding, LP** has duly executed this instrument on the date set forth below:

Dated:

**Temple View Capital Funding, LP by NEWREZ LLC D/B/A Shellpoint Mortgage Servicing, its Attorney-In-Fact:**

By: Lucas Bennett 12/11/2025

Name: Lucas Bennett

Title: Document Verification Specialist

STATE OF Arizona )
) ss.
COUNTY OF Maricopa )

On the 11th day of December in the year 2025 before me, the undersigned, a Notary Public in and for said State, personally appeared Lucas Bennett, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in Maricopa County.

WITNESS my hand and official seal,

Mary Grace Monta-Adroval

Notary Public:

Notary Expires: 6-24-27

MARY GRACE MONTA-ADROVEL
Notary Public - Arizona
Pinal County
Commission # 650307
My Comm. Expires Jun 24, 2027

I hereby certify that the address of the within named Assignee, **TVC Funding IV, LLC**, is **7550 Wisconsin Avenue, 10th Floor, Bethesda, MD 20814**.

Lucas Bennett 12/11/2025

Signatory Name: Lucas Bennett

Signatory Title: Document Verification Specialist



[redacted]

**Exhibit "A"**

All that certain lot or piece of ground with the buildings and improvements thereon erected and described according to a Survey and Plan thereof made on the 12th day of July 1904, by Joseph C. Wagner, esquire, Surveyor and regulator of the 9th District as follows, to wit:

Beginning at a point on the Northwesterly side of Logan Street at the distance of 97 feet Northeastwardly from the Northeasterly side of Royal Street in the 22nd Ward of the City of Philadelphia; thence extending still further along said Northwesterly side of Logan Street North 45 degrees 1 minute 43 seconds East 22 feet 11-7/8 inches to a point; thence on a line North 49 degrees 10 minutes 20 seconds West 108 feet 10-3/8 inches to a point; thence on a line South 40 degrees 47 minutes 30 seconds West 17 feet 11-7/8 inches to a point; thence on a line South 46 degrees 32 minutes 17 seconds East passing through the center of a party wall dividing this from the premises adjoining to the Southwest 107 feet 3- 3/8 inches to the first mentioned point and place of beginning

Being the same property conveyed to DDH Fund LP, by 29 West Logan LLC, in deed dated 04/28/2021, recorded 10/14/2021, in Instrument No. 53889596, in the County of Philadelphia and State of Pennsylvania.

More commonly known as: 29 West Logan Street, Philadelphia, PA 19144

[redacted]



[redacted]

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: RAD Diversified REIT, Inc.

Case No. 8:26-bk-01636-CPM

# EXHIBIT D

Payoff Statement dated September 29, 2026

**shellpoint**

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

September 29, 2026

RAD DIVERSIFIED REIT INC,
256 Eagle View Blvd Ste 154
Exton, PA 19341

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: [redacted]9836
RAD DIVERSIFIED REIT INC
Brandon Mendenhall
29 W Logan Street
Philadelphia, PA 19144

Loan Type: Commercial

When remitting funds:

1. **YOU MUST include your loan number to ensure proper posting and provide us with the borrower's forwarding address.**
2. **This Payoff quote is effective 9/29/2026 and is good to 9/29/2026.**
   **Any transactions that occur on or after the effective date may change the payoff amount.**
3. Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

| **Projected Payoff Date** | **9/29/2026** |
|---|---|
| Principal Balance | $255,882.30 |
| Interest To 9/29/2026 | $42,481.32 |
| Fees | $20,071.88 |
| Prepayment Penalty | $5,117.65 |
| Release Fees | $0.00 |
| Funds owed by borrower | $10,665.88 |
| Funds owed to borrower | $0.00 |
| | |
| Default Interest | $49,116.28 |
| **Total Payoff** | **$383,335.31** |
| Per diem | $56.08 |

**Please note that we expect to disburse funds for taxes and/or insurance from your escrow account on or about 9/29/2026. If your loan is not paid in full by this date, the payoff amount may change. Please contact us to obtain an updated payoff quote before remitting funds to ensure the loan is paid in full.**

For the protection of all parties and to ensure immediate availability of funds, final mortgage Payoff must be remitted in the form of **certified funds**. Acceptable methods include: **certified check, cashier's check or wire transfer. Personal checks, business checks, and ACH payments are not accepted** for Payoff transactions.

shellpoint®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

**Wiring Instructions -**

* **Must include "Reference" information listed below if wiring funds** *

| | |
|---|---|
| Bank Name: | Citibank N.A. |
| ABA Number: | [redacted] |
| Account Number: | |
| Account Name: | Shellpoint Mortgage Servicing |
| Reference: | [redacted] |

Payoff Mailing Address
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS - IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS .

The next payment due date is 11/1/2024. Payments are made by Billing on a monthly basis. The interest rate for this payment is 8.00000% and the P & I payment is 1,907.79. The taxes are next due 3/31/2026.

**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Payoff Policy Details:

1. When remitting funds, **YOU MUST use our loan number** to ensure proper posting and provide us with the borrower's forwarding address .
2. **The Payoff total quoted above is valid to the stated good to date . Any transactions that occur on or after the issue date of this Payoff statement may change the total amount .**
3. Payoff funds are accepted Monday through Friday, excluding federal holidays, and will be effective same day if received by 3pm EST .
4. **Continue making your monthly payments until you send us the amount needed to Payoff your mortgage** to avoid late charges, adverse credit reporting, or if permitted by your loan documents, default interest charges .
    a. If you currently have your monthly payment set up on automatic withdrawal (ACH), or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled .
5. **If you are due for a refund**, that refund will be issued by check on day 20 after the date the loan is paid in full.
    a. Any refunds will be sent to the mailing address we have on record for this account . If your mailing address is changing, you must contact us to provide a new address .
6. The Payoff amount is subject to our final verification once we receive the Payoff funds . **We reserve the right, except where prohibited, to correct any portion of this statement at any time .**
7. **If the amount we receive is insufficient to Payoff this loan, we may use funds in the escrow balance to cover the short Payoff.**
8. We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the Payoff funds .
    a. You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .
    b. Any existing lender-placed property insurance premium will be cancelled upon account Payoff, and any related unearned premiums will be refunded .
9. Once the loan is paid in full, the appropriate security instrument will be released as follows :
    a. Real Property: a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times .
    b. Personal Property: a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days .

**shellpoint**®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

**IMPORTANT: Update Your Mailing Address for Tax Documentation**

*"To ensure timely delivery of your tax documents related to your mortgage, please verify, and update your mailing address in your online account. To do so, sign into your account at myaccount.shellpointmtg.com and go to your dashboard. Then, click on the "down" arrow beside your profile icon and select My Profile. Here you can update your address and phone number. We encourage you to update your personal information whenever anything changes."*

shellpoint®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

**RAD DIVERSIFIED REIT INC - Loan ID** [redacted]

## FEE DETAILS

| Description | Amount |
|---|---|
| Property Pres | $75.00 |
| Winterization | $150.00 |
| Utilities | $75.00 |
| Snow Removal | $100.00 |
| Sheriff Cost | $7,534.74 |
| Securing | $100.00 |
| Proof of claim | $250.00 |
| Lawn Maintenance | $125.00 |
| Filing Cost | $374.23 |
| FC Costs | $5,952.40 |
| Certified Mail Cost | $124.78 |
| Attorney Cost | $3,935.00 |
| Property Inspection | $45.00 |
| Title Cost | $750.00 |
| BPO Aprsl Cost | $220.00 |
| NSF Fee Payment | $150.00 |
| Late Charge Payment | $110.73 |
| | **$20,071.88** |

## FUNDS OWED BY BORROWER DETAILS

| Description | Amount |
|---|---|
| City Tax Due | $1,608.37 |
| REO LP Hazard Due | $204.57 |
| General Liability Due | $2,441.64 |
| Escrow Only Payment | $6,411.30 |
| | **$10,665.88** |

**shellpoint**®

Monday - Friday: 8:00AM-9:00PM ET
Saturday: 10:00AM-2:00PM ET
PHONE NUMBER: 800-365-7107
FAX NUMBER: 866-467-1137
E-MAIL: [redacted]

---

**Please read the following important notices as they may affect your rights.**

Newrez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is not an attempt to collect a debt due to your bankruptcy filing. Newrez LLC dba Shellpoint Mortgage Servicing's NMLS ID is [redacted]

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address**

You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us. Additionally, if you believe we have furnished inaccurate information to credit reporting agencies, please write to us with specific details regarding those errors and any supporting documentation that you have and we will assist you. Error Resolution, including concerns of inaccurate information sent to credit reporting agencies, or requests for information should be sent to the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 800-365-7107 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

如果您要使用英语以外的其他语言进行交流，请致电 800-365-7107，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。

Please note that we operate as Newrez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re: RAD Diversified REIT, Inc.
Case No. 8:26-bk-01636-CPM

# EXHIBIT E

Reinstatement Figures and Payment History dated September 29, 2026

# Reinstatement Balance -

**LOAN DETAILS**

| | |
|---|---|
| LoanID: | [redacted]9836 |
| Due Date: | 11/1/2024 |
| Current Principal Balance: | $255,882.30 |
| Escrow Balance: | ($6,411.30) |
| Unapplied Balance: | $0.00 |
| Late Charge Balance: | $110.73 |
| NSF Fee Balance: | $150.00 |
| Legal Fee Balance: | $9,887.40 |
| Accrual Balance: | $42,481.32 |
| Other Fees Balance: | $9,923.75 |
| Figure Good Thru Date: | 9/29/2026 |

**BORROWER INFO**

| | |
|---|---|
| Primary Borrower Name: | Mendenhall, Brandon |
| Co Borrower Name: | |

**REINSTATEMENT FIGURES**

| | |
|---|---|
| Total PITI Payments Due: | $58,538.99 |
| Default Interest Due: | $49,116.28 |
| Total Corp Adv/Late/NSF/Atty Fees: | $20,071.88 |
| Unapplied Balance: | $0.00 |
| Escrow Required: | $0.00 |
| Outstanding FC Fees & Costs: | $0.00 |
| **Total Reinstatement Figure*:** | **$127,727.15** |

*(Total PITI + Fees + Unapplied + Escrow Required + FC Fees & Costs)*

This account may not be funded for the coming year

**Please add any outstanding foreclosure fees and costs to this reinstatement

shellpoint.

**PAYMENTS DUE DETAIL**

| Due Date | Interest Rate | Prin & Int Pmt | Escrow Pmt | Total Payment | Principal Amount | Interest Amount | Principal Bal |
|---|---|---|---|---|---|---|---|
| 11/1/2024 | 8.000% | $1,907.79 | $306.86 | $2,214.65 | $0.00 | $1,907.79 | $255,882.30 |
| 12/1/2024 | 8.000% | $1,907.79 | $306.86 | $2,214.65 | $0.00 | $1,907.79 | $255,882.30 |
| 1/1/2025 | 8.000% | $1,907.79 | $306.86 | $2,214.65 | $0.00 | $1,907.79 | $255,882.30 |
| 2/1/2025 | 8.000% | $1,907.79 | $442.16 | $2,349.95 | $0.00 | $1,907.79 | $255,882.30 |
| 3/1/2025 | 8.000% | $1,907.79 | $442.16 | $2,349.95 | $0.00 | $1,907.79 | $255,882.30 |
| 4/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 5/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 6/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 7/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 8/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 9/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 10/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 11/1/2025 | 8.000% | $1,907.79 | $758.84 | $2,666.63 | $0.00 | $1,907.79 | $255,882.30 |
| 12/1/2025 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 1/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 2/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 3/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 4/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 5/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 6/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 7/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 8/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| 9/1/2026 | 8.000% | $1,907.79 | $678.42 | $2,586.21 | $0.00 | $1,907.79 | $255,882.30 |
| | | | Total Payments Due: | $58,538.99 | Count: | 23 | |

**Please add any outstanding foreclosure fees and costs to this reinstatement

shellpoint.