# EXHIBIT B

Recorded Mortgage

1117 S Wilton, Philadelphia, Pennsylvania

.................................... Space Above Line for Recorder's Use ....................................

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

**DATED 07/29/2021**

TAX PARCEL NUMBER(S): 511205000

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>ADiTommaso@EliteCommercialClosings.com<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |
| SIGNATURE: | Pam Wood<br>AGENT ON BEHALF OF THE MORTGAGEE |

Lender Loan Number

## MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made by **DHI Fund, LP** (the "Mortgagor"), a Delaware limited partnership with a principal place of business at 222 Angels Boulevard, Big Bear City, CA 92314; in favor of **RCN Capital, LLC** (the "Mortgagee"), a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, its successors and assigns.

### RECITAL

Mortgagor is indebted to Mortgagee in the principal amount of **Two Hundred Thirty-Seven Thousand Dollars and No Cents ($237,000.00)**, as evidenced by Mortgagor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Mortgagee, executed and delivered contemporaneously with this Instrument, and maturing on August 1, 2051 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Mortgagor and Mortgagee executed and delivered contemporaneously herewith.

### AGREEMENT

TO SECURE TO Mortgagee the full and prompt payment and performance of each and all of Mortgagor's obligations under the Note, and the performance of the covenants and agreements of Mortgagor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Mortgagor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Mortgagor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Mortgagee, the following described property (collectively, the "Premises"):

A The real property located in Philadelphia County, Pennsylvania, at **1117 S Wilton St, Philadelphia, PA 19143**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Mortgagor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");

C All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the commonwealth of Pennsylvania, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Mortgagor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Mortgagor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

G All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating

thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Mortgagor does hereby represent and warrant that Mortgagor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Mortgagee contemporaneously with the execution and recordation of this Instrument and insuring Mortgagee's interest in the Premises. Mortgagor does hereby covenant and agree that Mortgagor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Mortgagor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Mortgagee and any other Person authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Mortgagor, as debtors, and Mortgagee, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the commonwealth of Pennsylvania (the "UCC"), for the purpose of securing Mortgagor's obligations under this Instrument and to further secure Mortgagor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Mortgagor hereby grants to Mortgagee a security interest in the Collateral. To the extent necessary under applicable law, Mortgagor hereby authorizes Mortgagee to prepare and file financing statements, continuation statements and financing statement amendments in such form as Mortgagee may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Mortgagee will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Mortgagee may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Mortgagee's other remedies. This Instrument also constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.

3. Taxes and Other Charges. Mortgagor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Mortgagee's request, Mortgagor shall deliver to Mortgagee within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Mortgagee.

4. Insurance. Mortgagor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Mortgagee, be and become immediately due and payable in full, subject to applicable law, and Mortgagee shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession. (A) As part of the consideration for the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to Mortgagee all Rents. It is the intention of Mortgagor to establish a present, absolute and irrevocable transfer and assignment to Mortgagee of all Rents and to authorizes and empower Mortgagee to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Mortgagee, Mortgagor agrees to execute and deliver such further assignments as Mortgagee may from time to time require. Mortgagor and Mortgagee intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the Rents will be included as a part of the Premises and it is the intention of Mortgagor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Mortgagee, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Mortgagee hereby grants to Mortgagor a revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Mortgagee and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other

amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Mortgagor free and clear of, and released from, Mortgagee's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Mortgagor authorizes Mortgagee to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Mortgagee. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, or by a receiver, Mortgagor's license to collect the Rents will automatically terminate and Mortgagee will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Mortgagor will pay to Mortgagee upon demand all the Rents to which Mortgagee is entitled. At any time on or after the date of Mortgagee's demand for the Rents, Mortgagee may give, and Mortgagor hereby irrevocably authorizes Mortgagee to give, notice to all tenants of the Premises instructing them to pay all Rents to Mortgagee. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Mortgagor *any amounts which are actually paid to* Mortgagee *in response to such a notice.* Any such notice by Mortgagee will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Mortgagor will not interfere with and will cooperate with Mortgagee's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Mortgagee will have each of the following rights and may take any of the following actions: (i) Mortgagee may, regardless of the adequacy of Mortgagee's security or the solvency of Mortgagor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Mortgagee in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Mortgagee, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Mortgagee's security, without regard to Mortgagor's solvency and without the necessity of giving prior notice (oral or written) to Mortgagor, Mortgagee may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Mortgagee elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Mortgagor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Mortgagor is a housing cooperative corporation or association, Mortgagor hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes,

Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Mortgagor and must be paid out of maintenance charges payable by Mortgagor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Mortgagee or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Mortgagee's entering upon and taking possession and control of the Premises, Mortgagor will surrender possession of the Premises to Mortgagee or the receiver, as the case may be, and will deliver to Mortgagee or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Mortgagee takes possession and control of the Premises, then Mortgagee may exclude Mortgagor and its representatives from the Premises. Mortgagor acknowledges and agrees that the exercise by Mortgagee of any of the rights conferred under this <u>Section 7</u> will not be construed to make Mortgagee a Mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and Improvements. (D) If Mortgagee enters the Premises, Mortgagee will be liable to account only to Mortgagor and only for those Rents actually received. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable to the Borrower, anyone claiming under or through Mortgagor or anyone having an interest in the Premises, by reason of any act or omission of Mortgagee under <u>Section 7(C)</u> of this Instrument, and Mortgagor hereby releases and discharges Mortgagee from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness as provided in <u>Section 9</u> of this Instrument. (F) Any entering upon and taking of control of the Premises by Mortgagee or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Mortgagee under applicable law or provided for in this Instrument. (F) During the existence of an Event of Default, Mortgagee may enter into possession of the Premises, with or without legal action, and by force, if necessary; collect all Rents (which term will also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the rents in accordance with <u>Section 7</u> of this Instrument; and for that purpose Mortgagor hereby confirms The assignment to Mortgagee of all Rents due and to become due under all Leases created after the date of this Instrument, as well as all rights and remedies provided in such Lease or Leases or at law or in equity for the collection of Rents. The taking of possession and collection of Rents by Mortgagee will not be construed to be an affirmation of any Lease. **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES DURING THE EXISTENCE OF AN EVENT OF DEFAULT, MORTGAGOR AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN**

EJECTMENT FOR POSSESSION OF THE PREMISES, IN FAVOR OF Mortgagee, FOR WHICH THIS INSTRUMENT, OR A COPY VERIFIED BY AFFIDAVIT, WILL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT WILL BE DISCONTINUED, OR POSSESSION OF THE PREMISES WILL REMAIN IN OR BE RESTORED TO MORTGAGOR, Mortgagee WILL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OF EJECTMENT TO RECOVER POSSESSION OF THE PREMISES. Mortgagee MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS INSTRUMENT OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN THE ACTION OF EJECTMENT OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PREMISES IN WHICH Mortgagee IS THE SUCCESSFUL BIDDER. THIS AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS INSTRUMENT AND THE NOTE, AND WILL SURVIVE ANY EXECUTION SALE TO Mortgagee.

8. Application of Payments. If at any time Mortgagee receives, from Mortgagor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Mortgagee may apply that payment to amounts then due and payable in any manner and in any order determined by Mortgagee, in Mortgagee's discretion. Neither Mortgagee's acceptance of an amount that is less than all amounts then due and payable nor Mortgagee's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Mortgagor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Mortgagee's Security; Instrument Secures Future Advances. If Mortgagor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Mortgagee's security, or Mortgagee's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Mortgagee, at Mortgagee's option may make such appearances, file such documents, disburse such sums and take such actions as Mortgagee reasonably deems necessary to perform such obligations of Mortgagor and to protect Mortgagee's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Mortgagor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of the Mortgagor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Mortgagor for the payment of money that is secured by a

lien on the Premises. Any amounts disbursed by Mortgagee under this Section 9 or under any other provision of this Instrument that treats such disbursement as being made under this Section 9, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 9 will require Mortgagee to incur any expense or take any action. The provisions of this Section 9, including the obligation to indemnify Mortgagee, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Mortgagee's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Mortgagor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 *et seq.*, and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Mortgagee.

11. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Mortgagee's exercise of any particular right or remedy will not in any way prevent Mortgagee from exercising any other right or remedy available to Mortgagee. Mortgagee may exercise any such remedies from time to time and as often as Mortgagee chooses.

12. Waiver of Statute of Limitations, Offsets, and Counterclaims. Mortgagor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or

to any action brought to enforce any Loan Document. Mortgagor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Mortgagee or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Mortgagee to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Mortgagor is obligated to make under any of the Loan Documents.

13. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Mortgagee or by any other party, Mortgagee will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Mortgagee will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. Further Assurances. Mortgagor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Mortgagee may require from time to time in order to better assure, grant, and convey to Mortgagee the rights intended to be granted, now or in the future, to Mortgagee under this Instrument and the Loan Documents.

15. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the commonwealth of Pennsylvania. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Mortgagee's rights with respect to such security interest created in the commonwealth of Pennsylvania). Nothing in this Section 15 is intended to limit Mortgagee's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. Notices. All notices, consents, approvals, and requests required or permitted under this Instrument or under any other Loan Document shall be given in accordance with the requirements set forth under the Loan Agreement.

17. Successors and Assigns. This Instrument will bind the respective successors and assigns of Mortgagor and Mortgagee, and the rights granted by this Instrument will inure to Mortgagee's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Mortgagor, the obligations of such Persons will be joint and several.

19. Relationship of Parties; No Third-Party Beneficiary. The relationship between Mortgagee and Mortgagor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Mortgagee and Mortgagor. Nothing contained in this Instrument will constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations or contracts of Mortgagor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Mortgagee at Mortgagor's request, and Mortgagee will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the commonwealth of Pennsylvania, at any time after an Event of Default, regardless of whether Mortgagee has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Mortgagor and all Persons claiming under Mortgagor for the recovery by Mortgagee of possession of all or any part of the Premises, for which this Instrument

shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. At any time during the existence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Indebtedness to be immediately due and payable without further demand and may foreclose the lien of this Instrument by judicial proceedings and may invoke any other remedies permitted by Pennsylvania law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Mortgagee will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs or fifteen percent (15%) of the unpaid balance of the sums secured by this Instrument, but not less than five thousand dollars ($5,000.00), and costs of documentary evidence, abstracts, and title reports.

24. Release. Upon payment of the Indebtedness, this Instrument will become null and void and Mortgagee will discharge this Instrument. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging this Instrument.

25. Purchase Money Mortgage. If the proceeds of the Indebtedness are used by Mortgagor to pay all or a part of the purchase price of the Premises, this Instrument is declared to be a purchase money mortgage and will be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. Con. Stat. Ann. Section 8141, as amended.

26. Future Advances. This Instrument secures future advances. Notwithstanding anything to the contrary contained in this Instrument, the maximum amount of indebtedness outstanding at any time which may be secured by this Instrument is Two Hundred Thirty-Seven Thousand Dollars and No Cents ($237,000.00), plus accrued and unpaid interest.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has signed and delivered this Mortgage, Assignment of Rents, and Security Agreement or has caused said instrument to be signed and delivered by its duly authorized representative on ___29_______ _____July________, 2021.

**DHI Fund, LP**

______________________
Witness: ______________

By: ______________________
Name: Brandon Mendenhall
Title: Managing Member

______________________
Witness: ______________

STATE OF __Nevada____ )
COUNTY OF ____Clark____ )ss. __________________
)

I certify that on _____7 | 29______________, 2021, Brandon Mendenhall came before me in person and stated to my satisfaction that (he)/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Managing Member of DHI Fund, LP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its partnership agreement and its partners.

______________________
Notary Public

JULIA THOMPSON
Notary Public, State of Nevada
Appointment No. 98-1510-1
My Appt. Expires Apr 2, 2022

## SCHEDULE 1
## PROPERTY DESCRIPTION

All that certain lot or piece of ground with the buildings and improvements thereon erected.

Situate on the Northeasterly side of Wilton Street at the distance of 327 feet 8 inches Northwestwardly from the Northwesterly side of Springfield Avenue in the 51st (formerly 40th Ward) of the City of Philadelphia.

Containing in front or breadth on the said Wilton Street 19 feet 5 inches and extending of that width in length or depth Northeastwardly between parallel lines at right angles to the said Wilton Street 97 feet 6 inches.

Tax ID: 511205000

NOTE: The property address and tax parcel identification number listed are provided solely for informational purposes, without warranty as to accuracy or completeness and are not hereby insured.

Being that parcel of land conveyed to DHI Fund, LP from Jewell Williams, Sheriff of the County of Philadelphia by that deed dated 10/17/2017 and recorded 12/19/2017 in deed Document No. 53305590 of the Philadelphia City, PA public registry.

Escrow File No : PA21114841

## EXHIBIT "A"

All that certain lot or piece of ground with the buildings and improvements thereon erected.

Situate on the Northeasterly side of Wilton Street at the distance of 327 feet 8 inches Northwestwardly from the Northwesterly side of Springfield Avenue in the 51st (formerly 40th Ward) of the City of Philadelphia.

Containing in front or breadth on the said Wilton Street 19 feet 5 inches and extending of that width in length or depth Northeastwardly between parallel lines at right angles to the said Wilton Street 97 feet 6 inches.

Tax ID: 511205000

NOTE: The property address and tax parcel identification number listed are provided solely for informational purposes, without warranty as to accuracy or completeness and are not hereby insured.

Being that parcel of land conveyed to DHI Fund, LP from Jewell Williams, Sheriff of the County of Philadelphia by that deed dated 10/17/2017 and recorded 12/19/2017 in deed Document No. 53305590 of the Philadelphia City, PA public registry.

PARCEL NUMBER(S): 511205000