**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; *and* | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC; | Case No. 8:26-bk-08030-CPM |
| Debtors. | |
| RAD Diversified REIT, Inc., | Case No. 8:26-bk-01636-CPM |
| Applicable Debtor. | |

**DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING THE DEBTOR TO SELL 2385 SERLES ROAD, MIDDLETON, TENNESSEE FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B), (F), AND (M); (B) APPROVING BIDDING PROCEDURES AND SURCHARGE; AND (C) FOR OTHER RELIEF**

(Property Located at 2385 Serles Road, Middleton, TN 38052)

RAD Diversified REIT, Inc. (the "**Debtor**"), by and through its undersigned counsel, submits this motion (this "**Motion**"), for entry of an order, on an agreed basis, (a) authorizing the Debtor to sell the real property commonly known as 2385 Serles Road, Middleton, Tennessee 38052 (the "**Property**"), free and clear of all liens, claims, encumbrances, and interests pursuant

to 11 U.S.C. §§ 363(b), (f), and (m); (b) approving bidding procedures and a surcharge; and (c) granting related relief. In support of this Motion, the Debtor respectfully states as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 363(b), (f), and (m), and 506(c) of title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") 2002 and 6004.

**Background**

4. On March 1, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing its chapter 11 case (the "**Chapter 11 Case**") before the Bankruptcy Court.

5. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On April 1, 2026, the Court entered an order granting the Office of the United States Trustee's unopposed motion for the appointment of an examiner (the "**Examiner Order**") [Dkt. No. 167], and, upon the application of the Office of the United States Trustee [Dkt. No. 176], approved by the Court on April 8, 2026 [Dkt. No. 195], Maria Yip was appointed as Examiner.

7. On March 27, 2026, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "**Committee**").

8. Debtor is the record title owner of the Property, which consists of approximately 20.0 acres and improvements in Hardeman County, Tennessee, Map 116 Parcel 001.00, and is more particularly described on **Exhibit A**.

9. The Debtor obtained a title report effective November 2, 2026 (the "**Title Report**"). The Title Report identifies RAD Diversified REIT, Inc. as fee owner. The Title Report identifies no mortgages, liens, tax claims, easements, restrictions, or estates for the period searched. The available title information, including unpaid past due ad valorem taxes, is summarized on **Exhibit B**.

10. The Debtor, by and through its Chief Restructuring Officer, Katie Goodman, has determined in the exercise of reasonable business judgment, that an orderly public auction of the Property is in the best interests of the Debtor and its estate. A prompt auction will test the Property's value in the market and may avoid the additional delay and expense associated with continued stay-relief and foreclosure litigation.

## Relief Requested

11. The Debtor has previously been authorized to employ Soldnow, LLC d/b/a Tranzon Driggers ("**TD**") as auctioneer [Dkt. No. 418]. By this Motion, the Debtor requests entry of an order (the "**Sale Order**"), pursuant to section 363 of the Bankruptcy Code, approving the sale of the Property, free and clear of all liens, claims, encumbrances, and interests, by public auction to be conducted by TD. The Auction Application sets forth the proposed terms of the auction.

12. The Debtor proposes that, except as may otherwise be ordered by the Court in the Sale Confirmation Order:

a. all unpaid property taxes for the Property shall be paid by the purchaser at closing, and the purchaser shall be responsible for payment of current and past taxes;

b. the net proceeds of sale of the Property shall be disbursed at closing as follows:

i. first, payment of any municipal liens against the Property;

ii. all remaining net proceeds, if any (the "**Net Proceeds**"), shall be paid to the Debtor. All valid and duly perfected liens against the Property that are not paid at closing will attach to the Net Proceeds with the same extent, validity, and priority as existed before the Petition Date. The Net Proceeds shall be held by the Debtor and disbursed only pursuant to further order of the Bankruptcy Court.

13. The Debtor, in consultation with TD, proposes that the following terms of sale be approved by the Court:

a. **Free and Clear:** The Property shall be sold free and clear of all liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests attaching to the proceeds of sale to the extent they are not paid at closing.

b. **Auction Dates:** TD shall market the Property for public auction (the "**Auction**"). The Auction shall occur on a date selected by TD that is at least four weeks but not more than eight weeks after entry of the Sale Order. TD shall begin its marketing campaign within ten days after entry of the Sale Order.

c. **Auction Terms:** The auction terms, bid procedures, and compensation of TD shall be as set forth in the Auction Application. Notwithstanding anything to the contrary in the Auction Application, the Debtor may require a bid deposit in the form of a $2,000.00 credit-card hold from potential purchasers in lieu of a cash bid deposit.

d. **Sale Documents:** Promptly following the Auction, the winning bidder shall execute a sale agreement or other applicable sale documents (the "**Sale Documents**").

e. **Condition of Property:** The Property shall be sold "AS IS, WHERE IS, WITH ALL FAULTS," with no warranties of title whatsoever.

f. **Sale Confirmation:** Within ten business days following the Auction and before closing, the Debtor will seek entry of an order confirming the sale to the winning bidder and approving the proposed disbursements at closing (the "**Sale Confirmation Order**").

g. **Closing Documents:** The Property shall be conveyed to the purchaser by Trustee's Deed or another similar instrument.

h. **Closing Date:** Closing shall occur within thirty days after the Auction or within ten business days after the Sale Confirmation Order becomes final and nonappealable, whichever is later.

## Authority for Requested Relief

**A. The Proposed Notice of the Auction and Bid Procedures Is Appropriate.**

14. The Debtor seeks authority to sell the Property through an Auction and related sale process, subject to the Debtor's right to pursue another course that maximizes and preserves the Property's value for the benefit of all parties in interest. TD will conduct an extensive marketing process designed to maximize auction participation, bidding, and sale proceeds. The Auction may include one or more other properties owned by the Debtor if TD determines that doing so will promote competitive bidding.

15. Bankruptcy Rule 2002(a)(2) provides that the clerk or clerk's designee shall give all creditors 21 days' notice of "a proposal to use, sell, or lease property of the estate other than in the ordinary course of business—unless the court, for cause, shortens the time or orders another method of giving notice."

16. Bankruptcy Rule 6004 provides, in pertinent part:

> (a) Notice.
>
> (1) In General. Notice of a proposed use, sale, or lease of property that is not in the ordinary course of business must be given:
>
> (A) under Rule 2002(a)(2), (c)(1), (i), and (k); and
>
> (B) in accordance with § 363(b)(2), if applicable.
>
> * * *
>
> (c) Motion to Sell Property Free and Clear of Liens and Other Interests; Objection. A motion for authority to sell property free and clear of liens or other interests must be made in accordance with Rule 9014 and served on the parties who have the liens or other interests. The notice required by (a) must include:
>
> (1) the date of the hearing on the motion; and
>
> (2) the time to file and serve an objection on the debtor in possession or trustee.

Fed. R. Bankr. P. 6004.

17. The Debtor has served this Motion through CM/ECF on all parties receiving electronic notice. The Debtor also has transmitted the Motion to Epiq Corporate Restructuring, LLC for service on those entitled to notice under the Interim Order Granting Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and Consolidated List of the Top Thirty Unsecured Creditors, (II) Establishing Notice Procedures, and (III) Granting Related Relief [Dkt. No. 72]. The Debtor requests a finding that such notice is good and sufficient under Bankruptcy Rules 2002, 6004, and 9006.

**B. The Auction and Sale of the Property Should Be Approved.**

18. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of a debtor's assets should be authorized if a sound business purpose exists for the proposed transaction. *See, e.g., Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996); *see also In re Sarah's Tent, LLC*, 396 B.R. 571, 573 (Bankr. S.D. Fla. 2008).

19. Courts typically consider whether (i) a sound business justification exists, (ii) interested parties received adequate and reasonable notice, (iii) the sale will produce a fair and reasonable price, and (iv) the parties acted in good faith. *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991). A sound business purpose may exist when a sale is necessary to preserve asset value for the estate, creditors, or interest holders. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986).

20. The Debtor has a sound business justification for selling the Property. The Property is not subject to a mortgage. The value of the Property will be tested through the Auction conducted pursuant to and according to the bid procedures set forth in the Auction Motion. Ultimately, the winning bid, after being subject to a "market check" in the form of the

Auction and accepted by the Debtor in the exercise of its reasonable business judgment, will constitute the highest and best offer for the Property and will provide the highest and best recovery for the bankruptcy estate. , No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure . . . the auction procedure has developed over the years as an effective means for producing an arm's-length fair value transaction"). Consequently, the fairness and reasonableness of the consideration to be paid in the form of the winning bid ultimately will be demonstrated by adequate "market exposure" and an open and fair auction process.

**C. The Sale of the Property Should Be Approved Free and Clear of All Claims and Interests.**

21. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest if (i) applicable nonbankruptcy law permits a free-and-clear sale, (ii) the holder consents, (iii) the interest is a lien and the sale price exceeds the aggregate value of all liens, (iv) the interest is in bona fide dispute, or (v) the holder could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See 11 U.S.C. § 363(f); In re MMH Auto. Group, LLC, 385 B.R. 347, 367 (Bankr. S.D. Fla. 2008).

22. Section 363(f) is disjunctive; satisfying any one of its five conditions permits a sale free and clear of the affected interest. See In re Kellstrom Indus., Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002); In re Dundee Equity Corp., 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992).

23. The first priority lien against each Parcel is ad valorem property taxes, which will be paid by the purchaser at closing. To the extent of available net proceeds, any municipal liens will be paid next from the net proceeds of sale of each Parcel. Any remaining liens against each parcel of the Property will attach to any remaining net proceeds from the sale of that parcel.

24. The Debtor proposes to sell the Property free and clear of all claims or interests of the tenants identified on **Exhibit B**.

**D. The Sale Will Be Undertaken by the Buyer in Good Faith.**

25. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased in a sale under section 363(b), even if the sale authorization is later reversed or modified on appeal.

26. A purchaser acts in good faith when the transaction occurs at arm's length and without fraud or collusion. *See Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997); *In re Lorraine Brooke Assocs., Inc.*, No. 07-12641, 2007 WL 2257608 (Bankr. S.D. Fla. Aug. 2, 2007).

27. The proposed auction procedures will use a competitive and transparent marketplace intended to facilitate an arm's-length sale without fraud or collusion. The Debtor therefore requests that the Court determine at the sale-confirmation hearing whether the successful purchaser is entitled to the protections of section 363(m) of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (a) approving the sale of the Property free and clear of all liens, claims, encumbrances, and interests pursuant to section 363 of the Bankruptcy Code; (b) approving the sale procedures, sale terms, and Surcharge Amount set forth herein; and (c) granting such other and further relief as may be just and equitable.

Dated: November 5, 2026

Respectfully submitted,

**PACK LAW**
4649 Ponce de Leon Blvd., Suite 405
Coral Gables, Florida 33146
Telephone: (305) 916-4500

By: */s/[DRAFT]*
Joseph A. Pack
Email: joe@packlaw.com
Florida Bar No. 117882
Jessey J. Krehl
Email: jessey@packlaw.com
Florida Bar No. 1025848

*Counsel to the Debtor and Debtor-in-Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 5, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that the foregoing document is being served this day by transmission of the Notice of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices in this case.

I FURTHER CERTIFY that on November 5, 2026, the following interested parties were served by the methods indicated below:

**By Electronic Mail:**

Raymond and Pamela Brooking
pam.brooking@raddcompanies.com

I FURTHER CERTIFY that on November 5, 2026, I transmitted the foregoing document to Epiq Corporate Restructuring, LLC for service on those persons entitled to notice by mail under the Interim Order Granting Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated Creditor Matrix and Consolidated List of the Top Thirty Unsecured Creditors, (II) Establishing Notice Procedures, and (III) Granting Related Relief [Dkt. No. 72].

By: */s/ Jessey J. Krehl*
Jessey J. Krehl
Bar No. 1025848

# Exhibit A

## Legal Description

# Legal Description

**MAP 116 PARCEL 001.00**

Beginning at a new surveyor's nail at the intersection of the center of Serles Road with the center of an old railroad bed; also being at or near the Tennessee State Plane Coordinates of: N 316706.5 E 1118829.3; thence southwest along the center of Serles Road, being in a curve to the left, having a radius of 65.0", an arc length of 76.03", a chord of S 66°" 12" 02 W —- 71 .77" to a point of tangent; thence continuing along the center of Serles Road S 32°" 41" 21"" W a distance of 12.60" to a point of curve; thence southwest along the center of Serles Road, being in a curve to the right, having a radius of 300.0", an arc length of 316.88", a chord of S 62°" 56" 57 W – 302.36" to a point of tangent; thence continuing along the center of Serles Road S 86°" 47" 26"" W a distance of 961.04" to a new surveyor's nail; thence N 41°" 57" 54"" E across RAD Diversified Reit Inc. (119-627) with a new survey line a distance of 1178.97" to a new capped #4 rebar; thence N 48°' 07" 30"" W across RAD Diversified Reit Inc. (119-627) with a new survey line a distance of 165.80" to a new capped #4 rebar; thence N 33°" 46" 54"" E across RAD Diversified Reit inc. (119-627) with a new survey line a distance of 147.68" to a new capped #4 rebar; thence S 78°" 03" 22"" E across RAD Diversified Reit Inc. (119-627) with a new survey line a distance of 325.10" to a new capped #4 rebar set on the bank of the Hatchie River; thence S 72°" 30" 2"" E across RAD Diversified Relt Inc. (119-627) with a new survey line a distance of 113.38" to a point in the center of the Hatchie River; thence S 40°" 45" 11"" E along the center of the Hatchie River a distance of 217.45" to point of intersection; thence S 01°" 06" 07"" W across RAD Diversified Reit Inc. (119-627) with a new survey line crossing a wet area, passing a new capped #4 rebar at 283.1" and on for a total distance of 720.83" to the Point of Beginning, containing 21.0 Acres, more or less. Area within the Hatchie River contains 0.5 Acres, more or less. Area within the prescriptive right of way of Serles Road contains 0.5 Acres, more or less. Net useable land is 20.0 Acres, more or less.

This description was prepared by Jack McAdoo, Jr. RLS Tennessee Certificate No. 1701, and derived from the instruments recorded in Hardeman County Register's Office, and a field survey. Should there be any difference between this description and the original survey, the signed and sealed survey shall be relied upon.

Being the same property **excluded** in the Warranty Deed of RAD Diversified REIT, Inc. to Hardeman County Properties, a Tennessee General partnership, dated July 30, 2025, of record in Deed Book 132, Page 225, Register's Office of Hardeman County, Tennessee.

Subject to any right of way or easement to Hardeman County along Serles Road.

Subject to TVA Transmission Line easement with an apparent width of 75 feet.

Subject to underground pipeline easement no deed found.

Subject to Porter's Creek Watershed Easement of record in Deed Book X-17, Page 463, Register's Office of Hardeman County, Tennessee.

## Exhibit B

### Property Information

| Assessed Value | Unpaid Taxes 2023-25 | Liens | Tenants |
|---|---|---|---|
| $201,000.00 | $7,104.00 | None. | Ray and Pamela Brooking; lease expires 04/30/2029; rent is $1,200.00/month and is current. |