**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re: | |
| RAD Diversified REIT, Inc.; | Chapter 11<br>Case No. 8:26-bk-01636-CPM |
| RAD Diversified OZ Fund, LP; | *Jointly Administered with*<br>Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; and | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC, | Case No. 8:26-bk-01640-CPM |
| Debtors.<br>_______________________________________/ | |

**MENDENHALL'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, OR ALTERNATIVELY TO LIFT THE STAY TO ALLOW PAYMENT OF DEFENSE COSTS UNDER DIRECTORS AND OFFICERS INSURANCE POLICY**

Dutch Brandon Mendenhall ("Mendenhall"), by and through undersigned counsel and pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a), moves for an order (A) confirming that the automatic stay does not prohibit StarStone Specialty Insurance Company ("StarStone") from advancing and/or reimbursing **Defense Costs**[1] pursuant to the terms and conditions of that certain Public Company Liability Insurance Policy No. DNO00012050P-00 and all renewals thereof, including without limitation, Policy No. DNO00012050P-01 (the "D&O Policy") issued by StarStone, or (B) alternatively, modifying the automatic stay to the extent necessary to permit StarStone to advance and/or reimburse **Defense Costs** pursuant to the terms and conditions of the D&O Policy. In support, Mr. Mendenhall states as follows:

---

[1] Terms in bold are defined in StarStone Policy No. DNO00012050P-00.

## JURISDICTION

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

2. By this motion, pursuant to section 362, 541, and 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Mr. Mendenhall requests entry of an order authorizing and, to the extent necessary, modifying the automatic stay to allow StarStone to advance covered **Defense Costs** on behalf of **Insured Persons** as those terms are defined in the D&O Policy.

3. A proposed form of order granting the relief requested herein is annexed hereto as Exhibit A (the "Proposed Order").

## THE D&O POLICY

4. The Debtor, RAD Diversified REIT, Inc. (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on March 1, 2026 (the "Petition Date").

5. Prior to the Petition Date, the Debtor maintained the D&O Policy with StarStone to protect the Debtor and its directors and officers against certain liabilities. StarStone issued the D&O Policy to the Debtor for the Policy Period of October 24, 2022 to October 24, 2023. The D&O Policy contains a Limit of Liability of $1 million subject to the applicable retention. The D&O Policy was subsequently renewed through January 22, 2025. A true and correct copy of the D&O Policy and renewal is attached hereto as Composite Exhibit B.

6. Relevant to the relief requested herein, the D&O Policy contains a Directors & Officers Coverage Part (the "D&O Coverage Part") that includes, in relevant part, the following Insuring Agreements in Section I. of the D&O Coverage Part:

> A. INSURED PERSON LIABILITY INSURANCE
>
> The **Insurer** shall pay on behalf of the **Insured Person**, **Loss** arising from any **Claim** first made against the **Insured Person** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy, except to the extent that such **Loss** has been paid or indemnified.
>
> * * *
>
> C. COMPANY SECURITIES INSURANCE
>
> The **Insurer** shall pay on behalf of the **Company**, **Loss** arising from a **Securities Claim** first made against the **Company** during the **Policy Period** and reported to the **Insurer** in the time and manner required by this Policy.

7. Section M. of the Common Definitions of the D&O Policy defines **Insured Persons**, in relevant part, as:

> Solely with respect to the Directors & Officers Coverage (Part 1); any past or present **Executive Officer**. Solely with respect to a **Securities Claim**, an **Insured Person** also means an **Employee**[.]

8. Section K. of the Common Definitions of the D&O Policy defines **Executive Officer** as:

> [A]ny natural person who was, or now is, a duly elected or appointed director, officer, trustee, governor, risk manager, in-house general counsel or **Manager** of any **Company**, or any member of any **Company** advisory or scientific board or internal committee, including the audit committee. **Executive Officer** shall include a shadow director of the **Company** as defined under the United Kingdom's Companies Act 2006, including amendments thereto. **Executive Officer** also means the equivalent status of any of the foregoing under the law of any other country.

9. Section E. of the Common Definitions of the D&O Policy defines **Company** as:

> [T]he **Named Insured** and any **Subsidiary**. In the event of a bankruptcy proceeding by or against a **Company**, **Company** shall also mean the resulting

> entity named as a debtor in possession within the United States Bankruptcy Code, or an equivalent legal status under foreign law.

10. Section R. of the Common Definitions of the D&O Policy defines the **Named Insured** as "the entity as specified in Item 1 of the Declarations," which is the Debtor, RAD Diversified REIT Inc.

11. Section P. of the Common Definitions of the D&O Policy defines **Loss** as "**Damages** and **Defense Costs**," and in turn defines **Defense Costs** in Section H. as:

> [R]easonable and necessary fees and expenses incurred with the **Insurer's** prior written consent to defend the **Insured**, and if authorized by the **Insurer**, all other fees and expenses resulting from: (1) the investigation, adjustment, defense or appeal of any **Claim** including the cost of appeal bonds; however, the **Insurer** shall have no obligation to apply for or furnish appeal bonds on behalf of any **Insured**; or (2) an **Investigative Inquiry**. **Defense Costs** shall also include **Sox 304/Dodd-Frank 954(b) Costs**.
>
> **Defense Costs** shall not include salaries and expenses of regular employees or officers of the **Insurer** or any salaries, wages, fees, costs or expenses of any **Insured**. **Defense Costs** shall be part of, and not in addition to, the **Applicable Limit of Liability**.

12. The Retention is $0 for each **Claim** under Insuring Agreement A and $500,000 for each **Claim** under Insuring Agreement C.

13. Section VI., Priority of Payments, of the D&O Coverage Part provides:

> If **Loss** covered under Insuring Agreement A. or section II. Extensions, B.1. and any other **Loss** are concurrently due under this Policy, the **Insurer** shall first pay **Loss** covered under Insuring Agreement A. or section II. Extensions, B.1.

14. Section N., Bankruptcy, of the Common Conditions of the D&O Policy provides:

> Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of any of its obligations hereunder. In the event that a bankruptcy proceeding is commenced by or against the **Company**, the **Company** and the **Insured Persons** shall not oppose efforts by the **Insureds** or the **Insurer** to obtain relief from any stay or injunction.

## THE PROCEEDINGS

15. On March 10, 2026, the United States Attorney for the Middle District of Florida (the "DOJ") issued a letter to Mr. Mendenhall to advise that he is a target of a federal grand jury investigation. On May 27, 2026, the DOJ filed a criminal indictment against Mr. Mendenhall, captioned *United States of America v. Mendenhall*, Case No. 8:26-cr-00192, which is pending in the U.S. District Court for the Middle District of Florida, Tampa Division (the "Indictment"). A copy of the Indictment is attached as Exhibit C.

16. On July 29, 2026, the SEC filed an enforcement action against the Debtor, Mr. Mendenhall, and Ms. Vaughn, captioned *Securities and Exchange Commission v. Mendenhall, et al.*, Case No. 8:26-cv-02186, which is pending in the U.S. District Court for the Middle District of Florida, Tampa Division (the "SEC Enforcement Action"). A copy of the SEC Enforcement Action is attached as Exhibit D.

17. The Indictment and the SEC Enforcement Action have required and will continue to require the **Insured Persons** who are named as defendants in these proceedings to incur **Defense Costs**.

18. StarStone has acknowledged coverage for the SEC Enforcement Action and the Indictment, subject to its reservation of rights under the D&O Policy and applicable law, and confirmation that advancing or reimbursing **Defense Costs** in accordance with the terms and conditions of the D&O Policy will not violate the automatic stay imposed in connection with the Debtor's bankruptcy petition.

19. Accordingly, by this motion, Mr. Mendenhall respectfully seeks entry of an order allowing the advancement of **Defense Costs** under the D&O Policy. As discussed herein, the proceeds from the D&O Policy may not be property of the Debtors' estate. Additionally, certain

of the **Insured Persons**, including Mr. Mendenhall, are entitled to indemnification for, and the advancement of, expenses including attorneys' fees. However, the Debtor is presently unable to honor its indemnification obligations with respect to advancing any **Defense Costs** to or on behalf of the **Insured Persons** in connection with the Indictment and the SEC Enforcement Action. Accordingly, to the extent that the D&O Policy proceeds are property of the Debtor's estate, cause exists to lift the automatic stay because the **Insured Persons** are entitled to the proceeds in accordance with the priority of payments provision as set forth in the D&O Policy. Additionally, the **Insured Persons** would suffer significant harm if they were not to receive such policy proceeds.

## THE RELIEF REQUESTED SHOULD BE GRANTED

### A. The D&O Policy Proceeds Are Not Property of the Debtor's Estate.

20. The automatic stay enjoins creditors from attempting to exercise possession and control over property of the estate. *Singer Furniture Acq. Corp. v. SSMC Inc.*, 254 B.R. 46, 56 (M.D. Fla. 2000) (citing 11 U.S.C. § 362). "If property is not property of the estate, then the automatic stay does not protect it." *Id.*

21. "In determining whether a property interest exists in an insurance policy, courts look to the policy's language and scope." *In re Laminate Kingdom LLC*, Case No. 07-10279-BKC-AJC, 2008 Bankr. LEXIS 1594 at *5 (Bankr. S.D. Fla., Mar. 13, 2008). A debtor's rights under the policy or interest in policy proceeds are not enhanced by virtue of its status as a debtor under the Bankruptcy Code. *In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001).

22. It is well established that the proceeds of a directors and officers liability insurance policy are not property of the estate where the debtor does not have an interest in the proceeds under the terms of the policy. *La. World Exposition, Inc. v. Fed. Ins. Co.(In re La. World Exposition,*

*Inc.)*, 832 F.2d 1391, 1399 (5th Cir. 1987); *In re CHS Elecs., Inc.*, 261 B.R. at 541-42 ("[W]here the debtor owns the policies but has no interest in the proceeds, the proceeds are not property of the estate."); *In re Taylor Bean & Whitaker Mortg. Corp.*, No. 3:09-bk-07047-JAF, 2010 Bankr. LEXIS 6532, at *10 (Bankr. M.D. Fla. Sep. 14, 2010) ("The Court agrees with and adopts the reasoning set forth in *CHS Electronics*. . . . The Debtors have no property interest in the proceeds available under Coverage A, the coverage for claims against TBW's directors and officers."); *Miller v. McDonald (In re World Health Alts., Inc.)*, 369 B.R. 805, 810 (Bankr. D. Del. 2007) ("[W]hen a policy provides coverage only to directors and officers, courts will generally rule that the proceeds are not property of the estate.").

23. Where an insurance policy provides coverage for both the debtor and its directors and officers, the policy proceeds may be property of the estate if payment of the directors and officers' claim would deplete available coverage for the estate. *In re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594, at *7; *In re Taylor Bean & Whitaker Mortg. Corp.*, 2010 Bankr. LEXIS 6532, at *8 ("[I]nsurance proceeds may be part of the estate where there is also coverage for liability claims against a debtor."). However, the debtor must have an actual claim under the policy—the fact that coverage could conceivably exist for future claim is insufficient to transform the proceeds into property of the estate. *In re Taylor Bean & Whitaker Mortg. Corp.*, 2010 Bankr. LEXIS 6532, at *9, 11 ("The Court is not obligated to postpone payments contractually owed to the former directors and officers based on mere hypothetical claims that may never be asserted and the possibility that coverage determinations may be reversed at some point in the future."); *In re CHS Elecs., Inc.*, 261 B.R. at 538.

24. Even if the debtor does have a present competing claim, where the policy contains a priority-of-payments endorsement requiring the insurer to satisfy claims of directors and officers

before paying claims of the debtor, proceeds payable to the directors and officers are not property of the estate. *In re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594, at *7–9 (concluding that proceeds payable for directors' and officers' covered defense costs were not property of the estate, notwithstanding the debtor's competing claim to the proceeds, because the policy expressly prioritized reimbursement of defense costs over payment of the debtor's claim).

25. Here, the proceeds of the D&O Policy are not property of the Debtor's bankruptcy estate. First, the estate has no present claim to the proceeds that StarStone is presently obligated to advance to cover Mendenhall's defense costs in the SEC Enforcement Action and Criminal Proceedings. Even if the estate could assert a claim to those proceeds in the future, the mere possibility of such a claim does not render the proceeds property of the estate or justify withholding payment of defense costs currently payable on behalf of Mendenhall. Second, even if the estate had a direct claim to the proceeds, the priority-of-payments provision expressly requires that the claims of **Insured Persons**, such as Mr. Mendenhall and Ms. Vaughn, take precedence under Section I., Insuring Agreement A, of the D&O Coverage Part. As a result, payment of the **Insured Persons' Defense Costs** will not deplete any insurance proceeds payable to the estate. Based on the foregoing, the advancement and/or reimbursement of the **Insured Persons' Defense Costs** in connection with the SEC Enforcement Action and the Indictment does not implicate property of the estate or the automatic stay.

**B. Alternatively, The Court Should Grant Stay Relief For Cause.**

26. Under § 362(d)(1) of the Bankruptcy Code, the Court must grant relief from the automatic stay "for cause" shown. 11 U.S.C. § 362(d)(1).

27. Even if a debtor's competing claim to insurance proceeds renders such proceeds property of the estate, "[n]umerous courts have granted relief from the automatic stay to permit

the advancement of defense costs to a debtor's directors and officers . . . ." *In re Taylor Bean & Whitaker Mortg. Corp.*, 2010 Bankr. LEXIS 6532, at *13 (reasoning cause existed for stay relief because the proceeds were contractually payable to the directors and officers of the debtor and the mere hypothetical claim of the debtor was insufficient basis to withhold amounts contractually due to the directors and officers); *In re Laminate Kingdom*, 2008 Bankr. LEXIS 1594 at *10-11 (finding cause for stay relief to permit reimbursement of directors' and officers' defense costs even where policy also provided direct coverage for debtor because directors and officers were entitled to payment before debtor under priority-of-payments endorsement).

28. Here, there is cause for stay relief under § 362(d)(1). As argued above, the **Insured Persons** are presently entitled to advancement and reimbursement of their **Defense Costs** in the SEC Enforcement Action and the Indictment. Any hypothetical claim that could be asserted by the estate is not afforded "super-plaintiff powers." *In re CHS Elecs., Inc.*, 261 B.R. at 544. To the contrary, the estate would merely be "another litigant wishing to pursue claims against the Ds and Os." *Id.* In fact, because any claim that the estate could assert against the **Insured Persons** would necessarily arise from their service as former officers and directors of the Debtor, the **Insured Persons** would be entitled to further advancement of their defense costs in such action. Moreover, under the priority of payments provision, any direct claim the estate could assert under the D&O Policy would be subordinate to the **Insured Persons'** claims under Section I., Insuring Agreement A, of the D&O Coverage Part. Consequently, there exists cause to modify the automatic stay to the extent necessary to enable StarStone to advance and/or reimburse the **Insured Persons' Defense Costs** in the SEC Enforcement Action and the Indictment.

## CONCLUSION

29. For the foregoing reasons, Mr. Mendenhall respectfully requests that the Court enter the Proposed Order:

(1) Confirming that the **Defense Costs** payable under the D&O Policy to the **Insured Persons** are not subject to the automatic stay, and that the automatic stay of 11 U.S.C. § 362(a) does not preclude, or subject to any liability, StarStone from advancing past, present and/or future **Defense Costs** incurred by or on behalf of the **Insureds** in connection with the SEC Enforcement Action or the Indictment in accordance with the terms and conditions of the D&O Policy;

(2) Alternatively, granting relief from or modifying the automatic stay under 11 U.S.C. § 362(d)(1), to the extent that it may be deemed applicable, for all purposes, with regard to the proceeds of the D&O Policy as to the **Insured Persons**, and without limiting the generality of the foregoing, directing that the automatic stay shall not preclude, or subject to any liability, StarStone for advancing any past, present, or future **Defense Costs** incurred by or on behalf of the **Insured Persons** in connection with the SEC Enforcement Action or the Indictment in accordance with the terms and conditions of the D&O Policy;

(3) Providing that any disputes that may arise out of the Order shall be subject to the jurisdiction of this Court; and

(4) Granting such additional and further relief as is just and proper.

DATED: November 17, 2026.

RESPECTFULLY SUBMITTED,

*/s/ Erik Johanson*
Erik Johanson, Esq.
Florida Bar No. 106417

Joseph R. Boyd, Esq.
Florida Bar No. 1039873
ERIK JOHANSON PLLC
3414 W. Bay to Bay Boulevard
Suite 300
Tampa, FL 33629
erik@johanson.law
jr@johanson.law
ecf@johanson.law
*Counsel for Mendenhall*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 17, 2026, a true and correct copy of the foregoing was served using the Court's CM/ECF filing system on all parties in interest who receive electronic service in the ordinary course of business, and via U.S. Mail to the following parties in interest:

- All parties listed on the Local Rule 1007-2 Parties in Interest Listed attached hereto who do not receive electronic service by CM/ECF;
- RAD Diversified REIT, Inc., Attn: Joseph Pack, CRO, 51 Northeast 24th Street, Ste. 108, Miami, Florida 33137;
- RAD Diversified OZ Fund, LP, Attn: Joseph Pack, CRO, 51 Northeast 24th Street, Ste. 108, Miami, Florida 33137;
- DHI Fund, LLC, Attn: Joseph Pack, CRO, 51 Northeast 24th Street, Ste. 108, Miami, Florida 33137;
- DHI Holdings, LP, Attn: Joseph Pack, CRO, 51 Northeast 24th Street, Ste. 108, Miami, Florida 33137; and
- DDH Fund, LLC, Attn: Joseph Pack, CRO, 51 Northeast 24th Street, Ste. 108, Miami, Florida 33137.

*/s/ Erik Johanson*
Erik Johanson