**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

| | |
|---|---|
| | Chapter 11 |
| RAD Diversified REIT, Inc.; | Case No. 8:26-bk-01636-CPM |
| | *Jointly Administered with* |
| RAD Diversified OZ Fund, LP; | Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC; and | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC, | Case No. 8:26-bk-08030-CPM |

Debtors.
_________________________________/

**INTERESTED PARTY AMY VAUGHN'S JOINDER IN MENDENHALL'S MOTION (DOC. 1405) AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO PERMIT ADVANCEMENT OF DEFENSE COSTS UNDER THE DEBTOR'S DIRECTORS AND OFFICERS LIABILITY POLICY**

Pursuant to 11 U.S.C. §§ 105(a) and 362, Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 4001-1, Movant, Amy Vaughn ("Vaughn"), by and through undersigned counsel, respectfully moves for entry of an order, substantially in the form attached as **Exhibit A** (the “Proposed Order”), (a) confirming that the automatic stay does not apply to the advancement of her defense costs under the directors and officers (“D&O”) liability policy issued to Debtor RAD Diversified REIT, Inc. (“RADD”), or (b) in the alternative, an order granting her relief from stay to permit advancement of her defense costs. The same policy is the subject of the motion that Brandon Mendenhall filed on November 17, 2026 (Doc. 1405). Vaughn joins in that motion, to the extent stated below, and asks that this Motion be heard with it. In support thereof, Vaughn states as follows:

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## INTRODUCTION

Vaughn is a former officer and director of RADD. The Securities and Exchange Commission ("SEC") is prosecuting a civil enforcement action against her in the United States District Court for the Middle District of Florida. The automatic stay does not protect her from that action. She has answered the complaint, the parties have begun discovery, and her defense costs are mounting.

RADD purchased a D&O policy for precisely this situation. The insurer, StarStone Specialty Insurance Company ("StarStone"), has agreed to advance Vaughn's defense costs, subject to a reservation of rights. However, before Vaughn can receive any funds to support her defense, we understand that StarStone has requested that this Court first enter a customary comfort order specifying that advancement of legal fees would not violate the automatic stay, which Vaughn seeks through this Motion.

Vaughn does not believe that the automatic stay applies to the advancement of her defense costs, and nothing in this Motion or in her joinder in Mendenhall's motion concedes that it does. However, in an exercise of caution, and so that neither StarStone nor Vaughn risks a violation of the automatic stay, she asks the Court to decide the question.

The Court should grant Vaughn her requested relief for three reasons. First, the proceeds payable to Vaughn under the Policy's individual coverage belong to her, not the estates. The Policy's individual coverage pays "on behalf of the Insured Person," carries no retention, and takes contractual priority over every other coverage in the Policy. Second, RADD agreed in the Policy

itself to not oppose this relief, and the Debtors' counsel has confirmed that they take no position on this motion. Third, even if the Court determines the automatic stay does apply, cause exists to lift the stay because Vaughn faces immediate and concrete harm while the estates face none.

In short, denying this motion would force Vaughn to defend a federal enforcement action out of pocket while the coverage RADD purchased for her sits unused. Bankruptcy courts routinely refuse to permit that result, and this Court should do the same.

## BACKGROUND

### A. The Chapter 11 Cases

On March 1, 2026 (the "Petition Date"), RADD and four affiliates (collectively, the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Doc. 1. The Court jointly administers the cases under the above caption, and the Debtors continue to operate as debtors in possession. The Court has set a combined hearing on final approval of the disclosure statement and confirmation of the Debtors' Joint Second Amended Plan of Liquidation (Doc. 1221) for December 17, 2026, at 3:30 p.m. Doc. 1269. RADD's Schedule A/B lists no interest in any insurance policy. Doc. 405-2 at 18–19.

### B. The SEC Action

On July 29, 2026, the Securities and Exchange Commission initiated an action in the United States District Court for the Middle District of Florida against RADD, Brandon Mendenhall, and Vaughn in the case styled *SEC v. RAD Diversified REIT, Inc., et al.,* 8:26-cv-02186-KKM-LSG (the "SEC Action"). The SEC asserts claims under Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 and under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. It seeks permanent injunctions, disgorgement, civil penalties, and officer-and-director bars. **SEC Action, Doc. 1 at 30–38.** The automatic stay protects the Debtors, and not Vaughn.

Since the SEC Action has been initiated, Vaughn has retained the undersigned counsel and answered the complaint on November 18, 2026. The SEC Action is now proceeding through discovery. *See* SEC Action, Doc. 29 (answer); *id.*, Doc. 28 (discovery through September 17, 2027; trial set for the April 2028 term).

**C. The D&O Policy**

StarStone issued Public Company Management Liability Insurance Policy No. DNO00012050P-00 to RADD for the policy period October 24, 2022 to October 24, 2023 and a renewal policy, No. DNO00012050P-01, for the period January 22, 2024 to January 22, 2025. *See* Doc No. 1405-2 (hereinafter the "Policy"). To the extent that renewal policy applies, Vaughn requests the same relief as to it, and references to the "Policy" include it.

The Policy's Directors & Officers Coverage Part carries a $1,000,000 aggregate limit and contains three insuring agreements. The coverage that applies to Vaughn is Insuring Agreement A (Policy, Part 1, § I.A), and she seeks payment under that provision alone. Insuring Agreement A obligates StarStone to "pay on behalf of the Insured Person, Loss arising from any Claim first made against the Insured Person during the Policy Period . . . except to the extent that such Loss has been paid or indemnified." Policy, Part 1, § I.A. "Insured Person" includes any past or present Executive Officer, including any director or officer, and "Loss" includes "Defense Costs." *Id.*, Part 4, §§ K, M, P. At the insured's written request, StarStone must "advance covered Defense Costs." *Id.*, Part 6, § B.1. Insuring Agreement A carries a $0 retention. *Id.*, Declarations, Items 4–5. Defense Costs are part of the limit and reduce it as they are paid. *Id.*, Part 6, § A.3.

Insuring Agreements B and C do not cover Vaughn. They protect the Debtor, and each carries a $500,000 retention per Claim. Insuring Agreement B pays on behalf of the Debtor "only to the extent the Company has paid or indemnified" an Insured Person's Loss. *Id.*, Part 1, § I.B.

Insuring Agreement C pays on behalf of the Company for a Loss arising from a Securities Claim against the Company itself. *Id.*, Part 1, § I.C. That retention does not reach Vaughn's Loss under Insuring Agreement A; it applies only where the Company fails or refuses to indemnify for reasons other than financial insolvency. *Id.,* Part 1, § V. RADD has not indemnified Vaughn, and Mendenhall's motion states that the Debtor is "presently unable to honor its indemnification obligations." Doc. 1405 ¶ 19.

The Policy also anticipates bankruptcy and preserves the individual insureds' rights. The Policy defines the "Company" to include RADD "as a debtor in possession." *Id.*, Part 4, § E. It provides that bankruptcy "shall not relieve the Insurer of any of its obligations," and furthermore "[i]n the event that a bankruptcy proceeding is commenced by or against the Company, the Company and the Insured Persons shall not oppose efforts by the Insureds or the Insurer to obtain relief from any stay or injunction." *Id.*, Part 6, § N. As such the Debtors take no position on this Motion.

Most important, the Policy places individual coverage first. Its priority-of-payments provision states that, "[i]f Loss covered under Insuring Agreement A. . . . and any other Loss are concurrently due under this Policy, the Insurer shall first pay Loss covered under Insuring Agreement A." *Id.*, Part 1, § VI.

**D. StarStone's Agreement to Advance Defense Costs**

Vaughn is an Insured Person under the Policy as a former officer and director of RADD. Indeed, StarStone has determined that the SEC Action forms part of a single Claim deemed first made during the Policy Period, and it has agreed, subject to a reservation of rights, to advance Vaughn's Defense Costs in the SEC Action under Insuring Agreement A. StarStone has conditioned that advancement only on this Court's entry of a customary comfort order, which

Vaughn seeks here. Before filing this motion, Counsel for Vaughn conferred with counsel for Debtors, by letter dated November 3, 2026 and via videoconference, who advised that the Debtors take no position with respect to the requested relief. Counsel also attempted to confer with counsel for the unsecured creditors committee, by letter sent by email on November 11, 2026, but received no response.

**E. The Pending Mendenhall Motion and Vaughn's Joinder**

On November 17, 2026, Mendenhall, also an Insured Person, moved for relief from the stay as to the same Policy. Doc. 1405. His proposed order would confirm that the stay does not apply to advancement of the Insured Persons' Defense Costs or, alternatively, modify the stay for cause. Doc. 1405-1 ¶¶ 1–2. Vaughn joins in the relief requested in that motion and in its legal arguments, to the extent they are consistent with this Motion. She does not adopt its factual statements or its exhibits. She also moves in her own right so that the order expressly reaches her Defense Costs, so that her request does not depend on the disposition of his, and so that her position on the stay is before the Court. She asks that the two motions be heard together. Her joinder does not waive any of her rights under the Policy.

## RELIEF REQUESTED

Vaughn asks the Court to enter the Proposed Order, which (a) determines that the automatic stay does not apply to StarStone's advancement and payment of her Defense Costs in the SEC Action, and in any other matter for which StarStone determines that coverage is available, under Insuring Agreement A of the Policy, or, alternatively, (b) modifies the automatic stay, to the extent it applies, to permit StarStone to advance and pay those Defense Costs in accordance with the Policy's terms. *See In re SVB Fin. Grp.*, 650 B.R. 790, 800 (Bankr. S.D.N.Y. 2023) (lifting stay without deciding whether proceeds of shared policies were estate property); *In re Celsius Network*

*LLC*, 652 B.R. 34, 43 (Bankr. S.D.N.Y. 2023) (same). This Motion is limited to Defense Costs. Vaughn does not ask the Court to authorize payment of any judgment or settlement under the Policy, and nothing in the Proposed Order does so.

## ARGUMENT

### A. The Proceeds Payable to Vaughn Under Insuring Agreement A Are Not Property of the Debtors' Estates.

Section 541(a)(1) brings into the estate only "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The estate takes those interests as it finds them. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). A bankruptcy estate therefore "can have no greater claim to the proceeds of property of the estate than the debtor would have had outside of bankruptcy." *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002) (quoting *In re Wiesner*, 267 B.R. 32, 35 (Bankr. D. Mass. 2001)).

As it relates to insurance, the ownership of a policy and the ownership of its proceeds are distinct questions. Even where a debtor owns a liability policy, "the question is not who owns the policies, but who owns the liability proceeds." *In re La. World Exposition, Inc.,* 832 F.2d 1391, 1399 (5th Cir. 1987). Accordingly, the proceeds of a directors and officers liability policy are not property of the bankruptcy estate, and not subject to the automatic stay, to the extent such policies provide direct coverage to directors and officers. This is especially true when the policy includes an express priority-of-payments provision that requires the proceeds to be paid towards directors' and officers' coverage ahead of the company's coverage. "In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). For this reason, "[t]ypically, the

*proceeds* of a directors and officers liability insurance policy are not considered property of a bankruptcy estate." *In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *2 (Bankr. S.D. Fla. Mar. 13, 2008) (emphasis added); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1400 (5th Cir. 1987) ("[T]he liability proceeds payable to the directors and officers are not part of the bankrupt's estate."); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007) ("[T]he proceeds of the Debtor's [D&O] insurance policy are not property of the estate."); *In re Taylor Bean & Whitaker Mortgage Corp.*, No. 3:09-bk-07047-JAF, 2013 WL 12567924, at *3 (Bankr. M.D. Fla. Sept. 14, 2010); *In re CHS Elecs., Inc.*, 261 B.R. 538, 541–42 (Bankr. S.D. Fla. 2001).

Where, as here, a policy covers both the debtor and its directors and officers, the proceeds become estate property only "if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *In re MF Global Holdings Ltd.,* 469 B.R. 177, 191 (Bankr. S.D.N.Y. 2012) (*quoting In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010)). Advancing Vaughn's Defense Costs will not adversely affect the estates, for three independent reasons.

*First*, Vaughn seeks payment solely under Insuring Agreement A, which obligates StarStone to pay "on behalf of the Insured Person." Ex B, Part 1, § I.A. The Debtors hold no right to receive or keep those proceeds, and paying them will not reduce any liability of the estates.

*Second*, the Debtors' indemnification coverage under Insuring Agreement B is purely hypothetical. That coverage responds only "to the extent the Company has paid or indemnified" an insured person's Loss, and the Debtors have neither indemnified Vaughn nor agreed to do so. "[W]hen the liability policy provides the debtor with indemnification coverage but indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not property of the bankruptcy estate." *Downey*, 428 B.R. at 605 (quoting *In re Allied Digital Techs. Corp.*, 306 B.R.

505, 512 (Bankr. D. Del. 2004)); *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003).

*Third*, the Policy's priority-of-payments provision subordinates Debtors' coverage, including any claim RADD might assert under Insuring Agreement C. *See* Policy, Part 1, § VI. Any entity claim must also first exhaust a $500,000 retention per Claim. A priority-of-payments provision leaves the debtor with, at most, a "contingent, residual interest" in the proceeds that cannot bring them into the estate. *Laminate Kingdom*, 2008 WL 1766637, at *3; *see also In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007); *SVB Fin. Grp.*, 650 B.R. at 800 (under a priority-of-payments clause, the debtor is "last in line" for the proceeds). And, just because the advancement of Vaughn's defense costs will reduce the remaining limits, "that fact alone cannot elevate the debtor's interest in the policy proceeds above the interest of the other insureds, the debtor's directors and officers." *In re GB Holdings, Inc.*, 2006 WL 4457350, at *4 (Bankr. D.N.J. Sept. 21, 2006).

The single $1,000,000 limit shared by Insuring Agreements A, B, and C does not change the analysis. In this District, Judge Funk permitted an insurer to advance defense costs from a shared, wasting policy over the creditors' committee's objection. The court held that the Coverage A proceeds were not estate property because the debtors had no current viable claim to them, and it declined to postpone payment on account of "mere hypothetical claims that may never be asserted." *Taylor Bean*, 2013 WL 12567924, at *3. That policy had no priority-of-payments clause. This one does. Nor does the estate's position as a possible claimant against its former directors and officers give it a property interest in the proceeds that fund their defense. *See CHS Elecs.*, 261 B.R. at 544 (trustee stood as a "competing claimant" with no greater rights than any other plaintiff); *Allied Digital*, 306 B.R. at 513 (trustee's real concern was his position as a plaintiff seeking to

recover from the policy). The same answer applies to any argument that the limit should be preserved to pay a judgment or settlement for the benefit of creditors. That is the interest of a claimant against the insureds, not a property interest of the estates, and no such payment is before the Court: this Motion seeks Defense Costs only.

For these reasons, the proceeds payable to Vaughn under the Policy are not property of the estates. The automatic stay does not prevent StarStone from advancing them.

**B. Alternatively, Cause Exists to Modify the Stay Under Section 362(d)(1).**

Even if the proceeds were property of the bankruptcy estates, the Court should modify the stay "for cause." 11 U.S.C. § 362(d)(1). Cause is determined case by case under the totality of the circumstances. *In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013); *In re Aloisi*, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001). In the directors and officers context, courts weigh the harm that individual insureds suffer when they cannot access defense costs against the harm the estate suffers if the stay is modified. Courts routinely strike that balance in favor of the insureds and find cause to modify the stay. *See In re Downey Fin. Corp.,* 428 B.R. at 603; *In re MF Global Holdings Ltd.*, 469 B.R. 177 (Bankr. S.D.N.Y. 2012); *In re Celsius Network LLC*, 652 B.R. 34, 43 (Bankr. S.D.N.Y. 2023) ("The Court does not decide one way or another whether the proceeds are property of the estate, because even if they are, the D&O Insurers are still entitled to the relief they request."). *In re Taylor, Bean & Whitaker Mortg. Corp.*, No. 3:09-bk-07047-JAF, 2013 WL 12567924, at *3 (Bankr. M.D. Fla. Sept. 14, 2010). *See also SVB Fin. Grp.*, 650 B.R. at 800–03 (lifting stay over committee's wasting-policy objection, with quarterly reporting of amounts paid); *CyberMedica*, 280 B.R. at 17–18 (lifting stay for cause to pay defense costs although the proceeds were estate property).

Vaughn faces immediate and concrete harm. The SEC is pursuing a federal enforcement action against her now, the automatic stay does not protect her from it, and she is incurring substantial defense costs as the case moves forward. Without a comfort order, she will be compelled to pay substantial legal fees and expenses defending the allegations made against her despite the fact that the Policy was obtained for the benefit of RADD's directors and officers such as Vaughn. *See In re Laminate Kingdom, LLC*, 2008 WL 1766637, at *4 (The purpose of D&O policies are to protect individual officers and directors, and not a vehicle to protect the corporation). For this reason, Courts consistently lift a stay to allow payment of defense costs because "[w]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense . . . and may suffer substantial and irreparable harm." *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (Bankr. D. Del. 2004); *see also In re Beach First National Bancshares*, 451 B.R. 406, 411 (Bankr. D. S.C. 2011) ("Movants cannot now be prevented from using the [D&O] Policy for its intended purpose simply because Debtor wishes to save the policy limit for any potential claims of its own.").

The estates, by contrast, face no meaningful harm. The requested relief imposes no payment obligation on the Debtors. The Debtors have not indemnified Vaughn and owe no obligation to fund her defense. Any entity claim to the proceeds must clear a substantial retention and yield to the Policy's express priority for individual coverage. The Debtors' own Plan points the same way. It provides that nothing in the Plan or the confirmation order alters the coverage or benefits under the Debtors' insurance policies, and that rights under those policies vest for the benefit of "all of the beneficiaries of such policies." Doc. 1221 at 36–37.

Vaughn also asks the Court to waive the 14-day stay under Bankruptcy Rule 4001(a)(4). Her defense costs are accruing now, and a waiver will allow StarStone to begin advancing them

without further delay. She further asks that the order provide that it remains in effect after confirmation of any plan and binds any liquidating trust or trustee that succeeds to the Debtors' rights under the Policy.

**C. The Debtors Contractually Agreed Not to Oppose This Relief.**

Through the Policy, RADD expressly agreed that, if it became a debtor in bankruptcy, it "shall not oppose efforts by the Insureds or the Insurer to obtain relief from any stay or injunction." Policy, at Part 6, § N. RADD bargained and paid for coverage that would protect its officers and directors even in bankruptcy, and it committed in advance not to stand in the way of that protection. The Debtors have honored that commitment by advising that they take no position on this motion. The same provision binds the Insured Persons, and Vaughn accordingly does not oppose, and joins in, Mendenhall's motion (Doc. 1405).

Vaughn files this Motion solely to obtain the relief requested. Nothing in it is an admission of any allegation in the SEC Action or in any other proceeding, a concession that the automatic stay applies or that the Policy or its proceeds are property of the Debtors' estates, a waiver of any right, privilege, or defense, or a general appearance in, or consent to service of process in, any adversary proceeding or other action.

## CONCLUSION

Vaughn joins in Mendenhall's motion (Doc. 1405) to the extent stated above and respectfully requests the Court enter the Proposed Order determining that the automatic stay does not apply to StarStone's advancement and payment of her Defense Costs in the SEC Action under Insuring Agreement A of the Policy or, alternatively, modifying the automatic stay to permit that advancement and payment and granting such further relief as the Court deems just.

Dated: November 24, 2026 Respectfully submitted,

LAURO & SINGER
400 N. Tampa St., 15th Floor
Tampa, FL 33602
813.222.8990

/s/ Austin M. Krtausch
John F. Lauro, Esq.
Fla. Bar No. 794074
jlauro@laurosinger.com
Austin M. Krtausch, Esq.
Florida Bar No. 1025521
akrtausch@laurosinger.com
*Counsel for Interested Party Amy Vaughn*

**CERTIFICATE OF SERVICE**

I certify that on November 24, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall serve notice of electronic filing on all counsel of record. I further certify that on the same date a copy of the foregoing was served by first-class U.S. Mail, postage prepaid, on the Debtors at the address shown on the petition and on each party on the attached Local Rule 1007-2 Parties in Interest List who does not receive notice through CM/ECF, and by email on counsel for the Official Committee of Unsecured Creditors, the United States Trustee, counsel for StarStone, and counsel for Mendenhall. The name, address, and method of service for each person served appear on the attached service list.

*/s/ Austin M. Krtausch*
Austin M. Krtausch, Esq.