**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| IN RE: | |
| RAD Diversified REIT, Inc.; | Chapter 11<br>Case No. 8:26-bk-01636-CPM |
| RAD Diversified OZ Fund, LP; | *Jointly Administered with*<br>Case No. 8:26-bk-01637-CPM |
| DHI Fund, LLC; | Case No. 8:26-bk-01638-CPM |
| DHI Holdings, LP; *and* | Case No. 8:26-bk-01639-CPM |
| DDH Fund, LLC, | Case No. 8:26-bk-01640-CPM |
| The Seminar Solution, LLC,<br>Debtors. | Case No. 8:26-bk-08030-CPM |

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR IBIS HOLDINGS A TRUST'S MOTION FOR RELIEF FROM AUTOMATIC STAY**
**(Re: 2149 W Laveer St, Philadelphia, PA 19138)**

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee for Ibis Holdings A Trust ("Movant"), by and through undersigned counsel, files this Motion for Relief from the Automatic Stay or, in the Alternative, for Adequate Protection, and in support states as follows:

## I. JURISDICTION

This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. Further, review is appropriate under 11 U.S.C. §§ 105(a), 362 and other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

## II. STATEMENT OF FACTS

### A. LOAN HISTORY

1. On March 9, 2023, RAD Diversified REIT, Inc. ("Debtor") executed a promissory

note in the principal sum of $110,600.00 (the "Note"). The Note reflects it was indorsed in blank. The Note is secured by a recorded Mortgage executed by Debtor (the "Mortgage") on the real property located at 2149 W Laveer St, Philadelphia, PA 19138 (the "Property"), which is more fully described in the Mortgage, which is recorded in the Public Records of Philadelphia County, Pennsylvania. True and correct copies of the relevant loan documents are attached as **Composite Exhibit A**.

2. The Mortgage was assigned to Movant. A true and correct copy of the Recorded Assignment of Mortgage is attached hereto as **Exhibit B**.

3. The aforementioned mortgage gives Movant a first mortgage position on the property legally described as:

SCHEDULE 1
PROPERTY DESCRIPTION

ALL THAT CERTAIN a lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northeast corner of Laveer Street and Beechwood Street in the Seventeenth Ward (formerly part of Fiftieth Ward) of the City of Pennsylvania.

CONTAINING in front or breadth on the said Laveer Street fifteen feet nine and three quarters inches and extending of that width in length or depth Northeastwardly and along the Southeasterly side of Beechwood Street sixty feet to a four feet wide alley which runs Southeastwardly from said Beechwood Street into another four feet wide alley running North Eastwardly into another alley five feet wide which runs Northwestwardly into said Beechwood Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveways and for passageways, watercourses and driveways at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as No. 2149 Laveer Street.
Being the same premises which Anna Brown by Deed dated 02/08/2007 and recorded 02/20/2007 in Philadelphia County as Document No. 51635050 conveyed unto Bernard Tyndale, in fee.
Being the same premises which Bernard Tyndale by Deed dated 01/30/2009 and recorded 05/14/2010 in Philadelphia County as Document No. 52211261 conveyed unto Anna Brown and Andre Brown, in fee. ($1.00 consideration)
Being the same premises which Anna Brown and Andre Brown, a single women and single man by Deed dated 04/03/2019 and recorded 02/05/2020 in Philadelphia County as Document No. 53627891 conveyed unto Bernard Tyndale, in fee. ($10.00 consideration)
Being the same premises which Bernard Tyndale by Deed dated 02/16/2022 and recorded 04/12/2022 in Philadelphia County as Document No. 54022145 conveyed unto RAD Diversified REIT, Inc., in fee.

4. NewRez LLC services the underlying mortgage loan and note for the property referenced in this motion for Movant. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Mortgage.

## B. PROCEDURAL HISTORY

6. On March 1, 2026, Debtor commenced the instant case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

7. On April 23, 2026, Creditor filed its Proof of Claim listing a secured Claim of $139,647.60, including pre-petition arrears of $32,664.94. (See Claim No. 164).

## C. LOAN STATUS

8. As of October 29, 2026, the outstanding amount of the Obligations less any partial payments or suspense balance is $188,783.31.[1]*

9. The current monthly mortgage payment is $967.73. Payments pursuant to the Mortgage have been in default and remain in default since June 1, 2024. Debtor has made no post-petition payments.

10. The following chart sets forth the payments due pursuant to the terms of the Note that have been missed by Debtor as of October 29, 2026:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 22 | 06/01/2024 | 03/01/2026 | $756.99 | $16,653.78 |
| 7 | 04/01/2026 | 10/01/2026 | $967.73 | $6,774.11 |
| Less partial payments (suspense balance): | | | | ($ 0.00) |
| Total: | | | | **$23,427.89** |

11. Movant is informed and believes, based on a Broker's Price Opinion, that the fair market value of the Property, as of August 4, 2026, is approximately $140,000.00. A copy of the Broker's Price Opinion is attached hereto as **Exhibit C** and incorporated herein by reference.

## III. ARGUMENT

### 1. Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(1).

12. Relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). Whether cause exists to grant the requested relief is determined by the court "on a case-by-case basis" and further "may be reversed only upon a showing of abuse of discretion." *See In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008) (citing, *In re Dixie Broad., Inc.* 871 F.2d 1023, 1026 (11th Cir. 1989); *See also, e.g., In re Jefferson County, Alabama*, 484 B.R. 427 (Bankr. N.D. Ala. 2012). A debtor's failure to make contractual

[1]As of October 29, 2026, the unpaid principal balance is $109,444.25.
*As of October 29, 2026, the total interest is $61,921.43, which consists of interest balance of $19,875.03 and a default interest balance of $42,046.40.

payments constitutes cause for relief under §362(d)(1). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986); *In re Ellis*, 60 B.R. 432 (B.A.P. 9th Cir. 1985).

13. Here, Movant is not adequately protected as Debtor failed to make payments owed on the Note. The contractual default totals $23,427.89, which continues to increase. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. *In re Harlan*, 783 F.2d 839 (9th Cir. 1986). Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Movant's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1). *In re Three Tuns, Inc.*, 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

**2. Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(A).**

14. Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A); *In re Stewart*, 11 B.R. 93, 94 (Bankr. N.D. Ga. 1981). However, the mere existence of an equity cushion does not constitute adequate protection *per se*. Generally, a 20% or greater equity cushion is deemed sufficient by the courts. *See In re Senior Care Properties, Inc.*, 137 B.R. 527, 528-29 (Bankr. N.D. Fla. Feb. 25, 1992)(analyzing the sufficiency of various equity cushions). Conversely, an equity cushion of less than 20% has generally been held to be insufficient. *In re Big Dog II, LLC*, 602 B.R. 64, 70 (Bankr. N.D. Fla. 2019).

15. Here, the value of the Property is $140,000.00 (See **Exhibit C**). Movant's lien totals $188,783.31. There is no equity in the Property to protect Movant's interests and relief is appropriate under §362(d)(2)(A).

## IV. CONCLUSION

16. Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum.

17. Movant further requests that the Court Order entered pursuant to the instant Motion

provide that all communications sent by Movant in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, be sent directly to Debtor.

18. Pursuant to 11 U.S.C. §362(e), Movant hereby requests that in the event a hearing is necessary, that said hearing be held within thirty (30) days.

19. Movant hereby seeks attorneys' fees in the amount of $1,350.00 and costs in the amount of $199.00 that will be incurred in filing this Motion for Relief from the Automatic Stay.

20. Movant respectfully requests that the Court waive the fourteen (14) day stay of the Order Granting Relief pursuant to Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, so that Movant can pursue its in rem remedies without further delay.

**WHEREFORE**, Movant respectfully requests that the automatic stay be lifted so that Movant may be permitted to protect its security interest in Debtor's property outside of the bankruptcy forum or, in the alternative, that Debtor be directed to make regular cash payments that would adequately protect Movant's interest, that in the event that a hearing is necessary on this Motion that it be held within thirty (30) days, that Debtor be required to pay Movant's attorneys' fees and costs incurred in filing this Motion, that the Court waive the fourteen (14) day stay, that Debtor be required to segregate and account for Movant's cash collateral, that Movant be permitted to communicate with Debtor for the purposes stated above, and for such further relief as the Court may deem just and proper.

Respectfully Submitted:

/s/ Tricia A. Morra

Tricia A. Morra (FLBN 0095989)
Aldridge Pite, LLP
101 East Park Blvd.
Suite 600, Office 23
Plano TX 75074
tmorra@aldridgepite.com
Telephone: (404) 994-7290
Attorney for Secured Creditor

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing Motion for Relief from the Automatic Stay or for Adequate Protection to be served electronically or via U.S. Mail, first-class postage prepaid, to:

**DEBTOR ATTORNEY**
Matthew Fornshell
Ice Miller LLP
250 West Street, Suite 700
Columbus, OH 43215-7509

Jessey James Krehl
Pack Law
4649 Ponce de Leon Boulevard
Ste 405
Coral Gables, FL 33146
jessey@packlaw.com

Joseph A Pack
Pack Law
4649 Ponce de Leon Boulevard
Ste 405
Coral Gables, FL 33146
Joe@packlaw.com

**DEBTOR**
RAD Diversified REIT, Inc.
11418 US-19 N.
Port Richey, FL 34688

**UNITED STATES TRUSTEE**
Nicole Peair
Timberlake Annex
501 E Polk Street, Suite 1200
Tampa, FL 33602
Nicole.W.Peair@USdoj.gov

**UNSECURED CREDITORS' COMMITTEE**
John D Elrod
Greenberg Traurig, LLP
Terminus 200
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA 30305
elrodj@gtlaw.com

Danielle S Kemp
Greenberg Traurig, P.A.
Bank of America Plaza
101 E. Kennedy Blvd., Suite 1900
Tampa, FL 33602
kempd@gtlaw.com

**CONSOLIDATED LIST OF CREDITORS WHO HAVE THE 30 LARGEST UNSECURED CLAIMS:**

Unsecured Creditors' Committee
c/o Greenberg Traurig
3333 Piedmont Road, NE
Suite 2500
Atlanta, GA 30305
elrodj@gtlaw.com
kempd@gtlaw.com

Premiere Networks Inc.
C/O Mcglinchey Stafford
10375 Centurion Pkwy, Ste 420
Jacksonville, FL 32256

Ado Professional Solutions Inc.
4800 Deerwood Campus Pkwy, Bldg 800
Jacksonville, FL 32246

Arneberg, Lora
507 N. Arthur St
New Harmony, IN 47631

Jacar Investments LLC
C/O Savage Villoch Law PLLC
Attn Rovert K Savage, Esq
400 N Tampa St, Ste 2820
Tampa, FL 33602

Hemphill, Steven L
5855 Midnight Pass Rd, Unit 215
Sarasota, FL34242

Boston National LLC
Two Radnor Corporate Center
100 Matsonford Rd.
Radnor, PA 19087

Pbk Architects Inc.
C/O Stream Kim Hicks Wrage & Alfaro PC
Attn: T. Stream, S. Devore
3403 10th St, Ste 700
Riverside, CA 92501

Valet Living, LLC
10150 Highland Manor Dr
Suite 120
Tampa, Fl 33160

PECO
PO Box 37629
Philadelphia, PA 19101

Legno Construction Inc.
Attn: Christiano
3421morrell Ave
Philadelphia, PA 19114

Lowes
1000 Lowes Boulevard
Mooresville, NC 28117

Katz Barsky LLC/KBK Law Group
Attn: Katz, Jeffery
100 S Broad Street, Suite 1205
Philadelphia, PA 19110

American Express card
200 Vesey Street
New York, NY 10285-3106

Veiga Construction And Remodeling LLC
Attn: Veiga, Rojelio
136 Columbia Ave
Phoenixville, PA 19460

Shore To Shore Title LLC
2255 Glades Road Suite 2341a
Boca Raton, FL 33431

Jeffrey Jackson & Associates PLLC
11767 Katy Fwy Suite 813
Houston, TX 77079

and the Local Rule 1007 Parties in Interest List.

Dated: November 25, 2026

/s/ /s/ Tricia A. Morra
Tricia A. Morra (FLBN 0095989)

[redacted]

[redacted]

## COMMERCIAL PROMISSORY NOTE

1. Promise to Pay. FOR VALUE RECEIVED, **RAD DIVERSIFIED REIT, INC.** (the "Borrower"), a Maryland corporation with a principal place of business of 7 St. Paul Street, Suite 820, Baltimore, MD 21202 promises to pay to the order of **RCN Capital, LLC**, a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, or its assigns (collectively, the "Holder"), the principal sum of **One Hundred Ten Thousand Six Hundred Dollars and No Cents ($110,600.00)** (the "Loan"), together with interest on the Loan computed from the date advanced (the "Commencement Date"), all as hereinafter provided, subject to the terms and conditions of a certain Commercial Loan Agreement (the "Loan Agreement"), executed by Borrower and Holder, and upon the following terms, agreements, and conditions:

2. Interest. Interest shall accrue on the unpaid Loan at the rate of 7.2833% per annum. Interest is calculated on the basis of a 360-day year and a 30-day month.

3. Maturity Date. The unpaid Loan, all accrued interest thereon, and all other fees or charges shall be due and payable on April 1, 2053 (the "Maturity Date"), provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration, or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate.

4. Payments. Beginning on May 1, 2023 and continuing on the first (1st) day of each month thereafter, through and including the Maturity Date, Borrower shall make monthly principal and interest payments in accordance with this Section, which payments shall be applied to the outstanding principal balance of the Note. Holder shall calculate the total amount of principal payments payable from April 1, 2023 to the Maturity Date based upon a 30-year amortization schedule, an amortization period which begins on April 1, 2023, a fixed interest rate equal to the interest rate in effect as of April 1, 2023, and the outstanding principal balance of the Note as of April 1, 2023. The monthly principal payment shall equal the total amount of principal payable for such period (calculated as set forth above) divided by the number of monthly payments during such period. The initial monthly principal and interest payment amount is **$756.99**. The foregoing notwithstanding, upon any additional advance of funds Holder shall recalculate the amount of the monthly principal and interest payment owing for the remainder of the Note term, based on the new outstanding principal balance and the interest rate then in effect, and such revised principal and interest payment shall be due commencing on the first (1st) day of the month immediately following the month in which such additional advance or prepayment (as applicable) is made. All unpaid principal, interest, and other sums due hereunder shall be due and payable in full on the Maturity Date. All payments shall be payable in lawful money of the United States of America and shall be made by wire transfer to an account designated by Holder to Borrower from time to time, or at Holder's election, shall be made through automated clearing house (ACH) transfers from an account designated by Borrower. All payments will be applied first to any unpaid collection costs and late charges, then to accrued and unpaid interest, and any remaining amount to principal. Whenever any payment to be made hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. The term "business day" as used herein shall mean any day other than a Saturday, Sunday, or public holiday.

5. Prepayment of the Indebtedness. If Borrower makes any prepayment of principal owing under this Note, in whole or in part, on or before the five-year anniversary of the Closing Date (as defined in the Loan Agreement), Borrower shall pay Holder a prepayment premium (the "Prepayment Premium") as follows: For any principal prepayment made on or prior to the one-year anniversary of the Closing Date, the Prepayment Premium shall equal THREE PERCENT (3.00%) of the amount prepaid. For any principal prepayment made after the one-year anniversary of the Closing Date, but on or before the two-year anniversary of the Closing Date, the Prepayment Premium shall equal TWO PERCENT (2.00%) of the amount prepaid. For any principal prepayment made after the two-year anniversary of the Closing Date, but on or before the three-year anniversary of the Closing Date, the Prepayment Premium shall equal ONE PERCENT (1.00%) of the amount prepaid. For any principal prepayment made after the three-year anniversary of the Closing Date, but on or before the four-year anniversary of the Closing Date, the



**COMPOSITE EXHIBIT A**

[redacted]

Prepayment Premium shall equal NO PERCENT (0.00%) of the amount prepaid. For any principal prepayment made after the four-year anniversary of the Closing Date, but on or before the five-year anniversary of the Closing Date, the Prepayment Premium shall equal NO PERCENT (0.00%) of the amount prepaid. For purposes of this Section 5, the term "Prepayment" includes any payment or other reduction of the balance due under this Note, regardless of whether such payment or other reduction is: (a) is voluntary or involuntary; (b) is occasioned by Holder's acceleration of the Maturity Date or demand hereunder; (c) is made by Borrower or by a third party; (d) the product of Holder's receipt or collection of proceeds of the real property securing this Note, or any other collateral securing this Note, including insurance proceeds and condemnation awards; (e) the product of Holder's exercise of its right of set-off; or (f) made during a bankruptcy, reorganization or other proceeding, or is made pursuant to any plan of reorganization or liquidation.

6. Default. At the election of Holder, the Maturity Date may be accelerated, and all sums due hereunder shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (a) Any failure by Borrower to pay in full any sum due hereunder on or before the date such sum is due; (b) Any failure by Borrower to perform or observe any other term or provision herein; (c) Any default under the Security Instrument (as hereinafter defined), a default under the Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document, or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document; (d) Any failure by Borrower to satisfy a Condition Precedent set forth in the Loan Agreement; (e) Borrower shall: (i) apply for or consent to the appointment of a receiver, trustee, liquidator or custodian of itself or of all or substantially all of its property and assets; (ii) make a general assignment for the benefit of its creditors; (iii) be dissolved or liquidated; (iv) become insolvent (as such term may be defined or interpreted under any applicable statute); (v) commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to any such relief or to the appointment of or taking possession of its property by any official in an involuntary case or other proceeding commenced against it; or (vi) take any action for the purpose of effecting any of the foregoing. In addition to the rights and remedies provided herein, Holder may exercise any other right or remedy available under applicable law or under any other document, instrument, or agreement evidencing, securing, or otherwise relating to the indebtedness evidenced hereby, in accordance with the terms thereof, all of which rights and remedies shall be cumulative. The payment and acceptance of any sum shall not be considered a waiver of such right of election. Borrower hereby agrees to indemnify, defend, and hold Holder harmless from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder in connection with, or as a result of, any Event of Default.

7. Default Rate. Beginning on the earlier of (i) the Maturity Date; (ii) the date on which an Event of Default occurs; or (iii) the date on which Holder accelerates the entire amount of the indebtedness due hereunder, without notice or any required action by Holder; the Loan will accrue interest at a rate (the "Default Rate") equal to the lesser of (i) Twenty-Three Percent (23%) per annum; or (ii) the Maximum Rate (as hereinafter defined)). Following an Event of Default, interest will continue to accrue at the Default Rate until such Event of Default, and any other Events of Default are cured. In the event Holder, obtains a judgment on this promissory note the interest will continue to accrue at the Default Rate after judgment until all sums are paid in full. Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid, or agreed to be paid, hereunder exceed the highest lawful rate permitted under any applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the aggregate amounts paid on this promissory note (as may be amended, restated, or modified from time to time, the "Note"), should cause the effective interest rate of the Note to exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to be the result of a mistake on the part of both Borrower and Holder. The party that receives such excess payments shall promptly credit such excess (to the extent such payments in excess of the Maximum Rate) against the unpaid principal balance hereof. Any portion of such excess payments not capable of being so credited will be refunded to Borrower.

8. Late Charges. If any payment of interest is not paid within ten (10) days of the date such payment is due, a late charge equal to the lesser of (i) ten percent (10%) of such overdue payment; or (ii) the maximum amount permitted by applicable law shall automatically become due to the Holder of this Note. If any payment of principal is not paid



**COMPOSITE EXHIBIT A**

[redacted]

within ten (10) days of the date such payment is due, a late charge equal to the lesser of: (i) three percent (3%) of such overdue payment; or (ii) the maximum amount permitted by applicable law; shall automatically become due to the Holder of this Note. Said late charges do not constitute interest and shall constitute compensation to Holder of this Note for collection administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the rate of interest per annum on the outstanding Loan shall increase to the Default Rate and such rate increase shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to Holder by reason of any default or Event of Default.

9. Security and Guaranty. The obligations hereunder, including the obligation to make full and timely payments of principal and interest, are secured by, among other things, the following: the Loan Agreement; a certain Commercial Guaranty (the "Guaranty") executed by Brandon D. Mendenhall (the "Guarantor"); a certain Mortgage, Assignment of Rents, and Security Agreement (the "Security Instrument") granted by RAD DIVERSIFIED REIT, INC., in favor of RCN Capital, LLC, encumbering the real property and improvements at 2149 W Laveer St, Philadelphia, PA 19138.

10. Reservation of Holder's Rights. Notwithstanding any course of dealing or course of performance: (i) neither failure nor delay on the part of Holder to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege; (ii) no notice to or demand upon Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Holder to take further action without notice or demand; and (iii) no amendment, modification, rescission, waiver, or release of any provision of this Note shall be effective unless the same shall be in writing and signed by Holder.

11. Costs and Expenses. Borrower will pay to Holder all costs and expenses of collection hereof (including reasonable attorneys' fees).

12. Completion of Instrument; Reproduction Admissible; Counterparts. Borrower authorizes Holder to complete this Note if delivered incomplete in any respect. A photographic or other reproduction of this Note shall be admissible in evidence with the same effect as the original Note in any judicial or other proceeding, whether or not the original is in existence. This Note may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Note may be detached from any counterpart of this Note without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Note identical in form hereto but having attached to it one or more additional signature pages.

**13. WAIVER OF RIGHTS/DELAY; WAIVER OF JURY TRIAL. BORROWER AND EACH SURETY, ENDORSER, AND GURANTOR HEREOF ACKNOWLEDGE THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVE THE RIGHT TO NOTICE AND HEARING UNDER CHAPTER 903a OF THE CONNECTICUT GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, and further waive diligence, demand, presentment for payment, notice of nonpayment, protest and notice of protest, notice of any renewals or extensions of this Note, and all rights under any statute of limitations, and agree that the time for payment in this Note may be changed and extended as provided in the Loan Agreement, without impairing their liability thereon, and further consent to the release of all or any part of the security for the payment hereof, or the release of any party liable for this obligation without affecting the liability of the other parties hereto. Any delay on the part of Holder in exercising any right hereunder shall not operate as a waiver of any such right, and any waiver granted for one occasion shall not operate as a waiver in the event of any subsequent default. In the interest of a speedy resolution of a lawsuit which may arise hereunder, Borrower and each accommodation maker and endorser under this Note waive a trial by jury in any action with respect to this Note and as to any issues arising relating to this Note. Any funds received by Holder after maturity, whether by acceleration or otherwise, shall be applied to amounts then due and Holder's acceptance of any such funds shall not be construed as a waiver of Borrower's default.**



**COMPOSITE EXHIBIT A**

[redacted]

14. Governing Law. This Note shall be governed by, and shall be construed and interpreted in accordance with, the laws of the state of Connecticut.

15. Binding Effect. The terms and provisions of this Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Holder and its successors and assigns.

[Remainder of page intentionally left blank]



COMPOSITE
EXHIBIT A

[redacted]

IN WITNESS WHEREOF, the undersigned have executed this Commercial Promissory Note on __9th______ __March______, 2023.

**RAD DIVERSIFIED REIT, INC.**

By: ________________________
Name: Brandon D. Mendenhall
Title: CEO

STATE OF ________________ )
)ss. __________________
COUNTY OF ________________ )

I certify that on _________________________, 2023, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as CEO of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

SEE Attachment

______________________________
Notary Public



[redacted]

**COMPOSITE EXHIBIT A**

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )

County of San bernardino ) ss

On 3-9-2023 before me YASMIN BHOLAT, Notary Public, personally appeared Brandon D Mendenhall,
who proved to me on the basis of satisfactory evidence to be the person(~~s~~) whose name(~~s~~) is/are subscribed to the within instrument and acknowledged to me that he/she/~~they~~ executed the same in his/h~~er/the~~ir authorized capacity(~~ies~~), and that by his/h~~er/the~~ir signature(~~s~~) on the instrument the person(~~s~~), or the entity upon behalf of which the person(~~s~~) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

YASMIN BHOLAT
Notary Public - California
San Bernar[redacted]
Commissio[redacted]
My Comm. Expires Sep 29, 2026

Signature [signature]

(affix seal)

**COMPOSITE EXHIBIT A**

[redacted]

ALLONGE TO COMMERCIAL PROMISSORY NOTE

This Allonge to Commercial Promissory Note is to be affixed to and made a part of that certain Commercial Promissory Note in the stated principal amount of **One Hundred Ten Thousand Six Hundred Dollars and No Cents ($110,600.00)**, executed by **RAD DIVERSIFIED REIT, INC.**, a Maryland corporation with a principal place of business of 7 St. Paul Street, Suite 820, Baltimore, MD 21202 and made to the order of **RCN Capital, LLC**, a Connecticut limited liability company, having a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074.

Pay to the order of ____________________________________, WITHOUT RECOURSE OR WARRANTY.

Dated as of March 28, 2023.

**RCN Capital, LLC**

By: ______________________
Angela DiTommaso, Authorized Signer

STATE OF CONNECTICUT )
)ss. South Windsor
COUNTY OF HARTFORD )

I certify that on March 28, 2023, **Angela DiTommaso** came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as Authorized Signer of RCN Capital, LLC, a Connecticut limited liability company (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its members.

______________________
Notary Public

CECELIA RITSKOWITZ
Notary Public of Connecticut
My Commission Expires 03/31/2025

COMPOSITE
EXHIBIT A

eRecorded in Philadelphia PA Doc Id: 54159986
03/17/2023 02:44 PM Page 1 of 15 Rec Fee: $244.75
Receipt#:
Records Department Doc Code: M

INTERNAL FILENAME:

........................................ Space Above Line for Recorder's Use ........................................

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

TAX PARCEL
NUMBER(S):

| THIS DOCUMENT PREPARED BY: | AFTER RECORDING, RETURN TO: |
|---|---|
| Angela DiTommaso<br>[redacted]<br>RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |

| CERTIFICATE OF RESIDENCE | |
|---|---|
| I CERTIFY THAT THE PRECISE ADDRESS OF MORTGAGEE IS: | RCN Capital, LLC<br>75 Gerber Road East, Ste. 102<br>South Windsor, CT 06074 |
| SIGNATURE: | AGENT ON BEHALF OF THE MORTGAGEE |

Lender Loan Number:



**COMPOSITE EXHIBIT A**

# MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (the "Instrument") is made by **RAD DIVERSIFIED REIT, INC.** (the "Mortgagor"), a Maryland corporation with a principal place of business at 7 St. Paul Street, Suite 820, Baltimore, MD 21202; in favor of **RCN Capital, LLC** (the "Mortgagee"), a Connecticut limited liability company with a principal place of business at 75 Gerber Road East, Ste. 102, South Windsor, CT 06074, its successors and assigns.

## RECITAL

Mortgagor is indebted to Mortgagee in the principal amount of **One Hundred Ten Thousand Six Hundred Dollars and No Cents ($110,600.00)**, as evidenced by Mortgagor's Commercial Promissory Note (as the same may be amended, restated, or modified from time to time, the "Note"), payable to Mortgagee, executed and delivered contemporaneously with this Instrument, and maturing on April 1, 2053 (the "Maturity Date"), subject to the terms and conditions of that certain Commercial Loan Agreement (as the same may be amended from time to time, the "Loan Agreement"), between Mortgagor and Mortgagee executed and delivered contemporaneously herewith.

## AGREEMENT

TO SECURE TO Mortgagee the full and prompt payment and performance of each and all of Mortgagor's obligations under the Note, and the performance of the covenants and agreements of Mortgagor contained in this Instrument, and in any other documents evidencing, securing, or now or hereafter executed in connection with the Note (each, a "Loan Document"; collectively, the "Loan Documents"; and all of the indebtedness, obligations, and liabilities of Mortgagor arising under the Note, the Loan Documents, or both, and any and all renewals, modifications, rearrangements, amendments, or extensions thereof, are sometimes hereinafter referred to as the "Indebtedness"), Mortgagor hereby MORTGAGES, WARRANTS, HYPOTHECATES, AND ASSIGNS to Mortgagee, the following described property (collectively, the "Premises"):

A The real property located in Philadelphia County, Pennsylvania, at **2149 W Laveer St, Philadelphia, PA 19138**, as such real property is more particularly described in SCHEDULE 1, attached hereto and made a part hereof for all purposes the same as if set forth herein verbatim; together with all right, title, and interest of Mortgagor in and to (i) all streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to the real property or the Improvements (as hereinafter defined), (ii) any strips or gores between the real property and abutting or adjacent properties, and (iii) all water and water rights, timber, crops and mineral interests pertaining to the real property (such real property and other rights, titles, and interests being hereinafter sometimes called the "Land");

B All buildings, structures, improvements now constructed or at any time in the future constructed or placed upon the Land, including any future alterations, replacements and additions (the "Improvements");



COMPOSITE
EXHIBIT A

C All fixtures and systems and articles of personal property, of every kind and character, now owned or hereafter acquired by Mortgagor which are now or hereafter is attached to the Land or the Improvements so as to constitute a fixture under the laws of the commonwealth of Pennsylvania, and used in or necessary to complete the proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (all of which are herein sometimes referred to together as "Accessories");

D All (i) plans and specifications for the Improvements; (ii) approvals, entitlements and contracts relating to the Land or the Improvements or the Accessories or any part thereof; (iii) deposits including, but not limited to, Mortgagor's rights in tenants' security deposits (if any), deposits with respect to utility services to the Land or the Improvements or the Accessories or any part thereof, and any deposits or reserves hereunder or under any other Loan Documents (as hereinafter defined) for taxes, insurance or otherwise, funds, accounts, contract rights, instruments, documents, commitments, general intangibles, notes and chattel paper used in connection with or arising from or by virtue of any transactions related to the Land or the Improvements or the Accessories or any part thereof; (iv) permits, licenses, franchises, bonds, certificates and other rights and privileges obtained in connection with the Land or the Improvements or the Accessories or any part thereof; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Land, the Improvements and the Accessories; and (vi) other properties, rights, titles and interests, if any, specified in any Section of this Instrument as being part of the Premises;

E All rents (whether from residential or non-residential space), revenues, and other income of the Land or the Improvements, parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Premises, whether now due, past due or to become due, and deposits forfeited by tenants, and, if Mortgagor is a cooperative housing corporation or association, maintenance fees, charges or assessments payable by shareholders or residents under proprietary leases or occupancy agreements, whether now due, past due, or to become due (all of which are herein sometimes referred to together as the "Rents");

F All present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Premises, or any portion of the Premises (including proprietary leases or occupancy agreements if Mortgagor is a cooperative housing corporation), and all modifications, extensions or renewals (all of which are herein sometimes referred to together as the "Leases");

G All proceeds, products, consideration, compensation and recoveries, direct or consequential, cash and noncash, of or arising from, as the case may be, (i) the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), and (F); (ii) any sale, lease or other disposition thereof; (iii) each policy of insurance relating



**COMPOSITE EXHIBIT A**

thereto (including premium refunds); (iv) the taking thereof or of any rights appurtenant thereto by eminent domain or sale in lieu thereof for public or quasi-public use under any law; and (v) any damage thereto whether caused by such a taking (including change of grade of streets, curb cuts or other rights of access) or otherwise caused; and

H All other interests of every kind and character, and proceeds thereof, which Mortgagor now has or hereafter acquires in, to or for the benefit of the properties, rights, titles and interests referred to above in paragraphs (A), (B), (C), (D), (E), (F), (G), and all property used or useful in connection therewith, including, but not limited to, remainders, reversions and reversionary rights or interests.

Mortgagor does hereby represent and warrant that Mortgagor is lawfully seized of the Premises and has the right, power and authority to MORTGAGE, PLEDGE, HYPOTHECATE, GRANT, WARRANT, CONVEY AND ASSIGN the Premises, and that the Premises are unencumbered except for those encumbrances (the "Permitted Encumbrances") shown on the schedule of exceptions to coverage in the Title Policy (as defined in the Loan Agreement), issued to and accepted by Mortgagee contemporaneously with the execution and recordation of this Instrument and insuring Mortgagee's interest in the Premises. Mortgagor does hereby covenant and agree that Mortgagor will warrant and defend generally the title to the Premises against all claims and demands, subject to the Permitted Encumbrances.

In consideration of the aforesaid, and in order to more fully protect the security of this Instrument, Mortgagor hereby represents, warrants, covenants, and agrees as follows:

1. Inspection. Mortgagee and any other Person authorized by Mortgagee shall have the right to enter and inspect the Premises at all reasonable times.

2. Security Agreement. This Instrument is also a security agreement between Mortgagor, as debtors, and Mortgagee, as secured party, for any of the Premises which, under applicable law, may be subjected to a security interest under the Uniform Commercial Code in the commonwealth of Pennsylvania (the "UCC"), for the purpose of securing Mortgagor's obligations under this Instrument and to further secure Mortgagor's obligations under the Note, and other Loan Documents, whether such Premises are owned now or acquired in the future, and all products and cash and non-cash proceeds thereof (collectively, the "UCC Collateral"), and by this Instrument, Mortgagor hereby grants to Mortgagee a security interest in the Collateral. To the extent necessary under applicable law, Mortgagor hereby authorizes Mortgagee to prepare and file financing statements, continuation statements and financing statement amendments in such form as Mortgagee may require to perfect or continue the perfection of this security interest. If an Event of Default (as hereinafter defined) has occurred and is continuing, Mortgagee will have the remedies of a secured party under the UCC, in addition to all remedies provided by this Instrument or existing under applicable law. In exercising any remedies, Mortgagee may exercise its remedies against the Collateral separately or together, and in any order, without in any way affecting the availability of Mortgagee's other remedies. This Instrument also constitutes a financing statement with respect to any part of the Premises that is or may become a fixture, if permitted by applicable law.



**COMPOSITE EXHIBIT A**

3. Taxes and Other Charges. Mortgagor is responsible for the payment of all taxes ("Taxes"), assessments for local improvements ("Assessment"), rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever. Upon Mortgagee's request, Mortgagor shall deliver to Mortgagee within five (5) days of any such request, proof of payment of any and all Impositions, in form satisfactory to Mortgagee.

4. Insurance. Mortgagor shall keep the Premises insured in accordance with the provisions of the Loan Agreement.

5. Liens. Mortgagor shall not, directly or indirectly, create or suffer or permit to be created, or to stand, against the Premises or any portion thereof, or against the rents, issues and profits therefrom, any lien, charge, mortgage, deed of trust, adverse claim or other encumbrance, whether senior or junior to the lien of this Instrument, other than the lien of this Instrument and the Permitted Encumbrances.

6. Due on Sale or Encumbrance. Should the title to the Premises, or any part thereof or any interest therein, be transferred to any Person, firm or entity other than the Borrower, or should the ownership of the Premises, or any part thereof, become vested in any owner other than the Borrower, or should any lien, mortgage or any other encumbrance, voluntary or involuntary, be placed against the Premises, or in any of the foregoing events, the entire principal balance due under the Note, together with all accrued interest thereunder, shall at the election of Mortgagee, be and become immediately due and payable in full, subject to applicable law, and Mortgagee shall be entitled to pursue all remedies provided for in this Instrument or at law, including without limitation, foreclosure of the lien of this Instrument.

7. Assignment of Rents; Appointment of Receiver; Mortgagee in Possession. (A) As part of the consideration for the Indebtedness, Mortgagor absolutely and unconditionally assigns and transfers to Mortgagee all Rents. It is the intention of Mortgagor to establish a present, absolute and irrevocable transfer and assignment to Mortgagee of all Rents and to authorizes and empower Mortgagee to collect and receive all Rents without the necessity of further action on the part of the Borrower. Promptly upon request by Mortgagee, Mortgagor agrees to execute and deliver such further assignments as Mortgagee may from time to time require. Mortgagor and Mortgagee intend this assignment of Rents to be immediately effective and to constitute an absolute, present, and unconditional assignment and not an assignment for additional security only. For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, the Rents will not be deemed to be a part of the Premises. However, if this present, absolute, and unconditional assignment of the Rents is not enforceable by its terms under the laws of the commonwealth of Pennsylvania, then the Rents will be included as a part of the Premises and it is the intention of Mortgagor that in this circumstance this Instrument create and perfect a lien on the Rents in favor of Mortgagee, which lien will be effective as of the date of this Instrument. (B) Until the occurrence of an Event of Default, Mortgagee hereby grants to Mortgagor a revocable license to collect and receive all the Rents, to hold all the Rents in trust for the benefit of Mortgagee and to apply all the Rents to pay the installments of interest and principal then due and payable under the Note and the other



**COMPOSITE EXHIBIT A**

amounts then due and payable under the other Loan Documents, including the Taxes, Impositions, Assessments, and Insurance, and to pay the current costs and expenses of managing, operating and maintaining the Premises, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained by Mortgagor free and clear of, and released from, Mortgagee's rights with respect to the Rents under this Instrument. After the occurrence of an Event of Default, and during the continuance of such Event of Default, Mortgagor authorizes Mortgagee to collect, sue for, and compromise the Rents and directs each tenant of the Premises to pay all the Rents to, or as directed by, Mortgagee. From and after the occurrence of an Event of Default, and during the continuance of such Event of Default, and without the necessity of Mortgagee entering upon and taking and maintaining control of the Premises directly, or by a receiver, Mortgagor's license to collect the Rents will automatically terminate and Mortgagee will, without notice, be entitled to all the Rents as they become due and payable, including the Rents then due and unpaid. Mortgagor will pay to Mortgagee upon demand all the Rents to which Mortgagee is entitled. At any time on or after the date of Mortgagee's demand for the Rents, Mortgagee may give, and Mortgagor hereby irrevocably authorizes Mortgagee to give, notice to all tenants of the Premises instructing them to pay all Rents to Mortgagee. *No tenant will be obligated to inquire further as to the occurrence or continuance of an Event of Default. No tenant will be obligated to pay to* Mortgagor *any amounts which are actually paid to* Mortgagee *in response to such a notice.* Any such notice by Mortgagee will be delivered to each tenant personally, by mail or by delivering such demand to each rental unit. Mortgagor will not interfere with and will cooperate with Mortgagee's collection of such Rents. (C) If an Event of Default has occurred and is continuing, then Mortgagee will have each of the following rights and may take any of the following actions: (i) Mortgagee may, regardless of the adequacy of Mortgagee's security or the solvency of Mortgagor and even in the absence of waste, enter upon and take and maintain full control of the Premises in order to perform all acts that Mortgagee in its discretion determines to be necessary or desirable for the operation and maintenance of the Premises, including the execution, cancellation, or modification of the Leases, the collection of all the Rents, the making of repairs to the Premises and the execution or termination of contracts providing for the management, operation or maintenance of the Premises, for the purposes of enforcing the assignment of the Rents pursuant to Section 7(A) of this Instrument, protecting the Premises or the security of this Instrument, or for such other purposes as Mortgagee, in its discretion, may deem necessary or desirable. (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Mortgagee's security, without regard to Mortgagor's solvency and without the necessity of giving prior notice (oral or written) to Mortgagor, Mortgagee may apply to any court having jurisdiction for the appointment of a receiver for the Premises to take any or all of the actions set forth in the preceding sentence. If Mortgagee elects to seek the appointment of a receiver for the Premises at any time after an Event of Default has occurred and is continuing, Mortgagor's, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. (iii) If Mortgagor is a housing cooperative corporation or association, Mortgagor hereby agrees that if a receiver is appointed, the order appointing the receiver may contain a provision requiring the receiver to pay the installments of interest and principal then due and payable under the Note and the other amounts then due and payable under the other Loan Documents, including the Taxes,



COMPOSITE
EXHIBIT A

Impositions, Assessments, and Insurance, it being acknowledged and agreed that the Indebtedness is an obligation of Mortgagor and must be paid out of maintenance charges payable by Mortgagor's tenant shareholders under their proprietary leases or occupancy agreements. (iv) Mortgagee or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Premises. (v) Immediately upon appointment of a receiver or immediately upon Mortgagee's entering upon and taking possession and control of the Premises, Mortgagor will surrender possession of the Premises to Mortgagee or the receiver, as the case may be, and will deliver to Mortgagee or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Premises and all security deposits and prepaid Rents. (vi) If Mortgagee takes possession and control of the Premises, then Mortgagee may exclude Mortgagor and its representatives from the Premises. Mortgagor acknowledges and agrees that the exercise by Mortgagee of any of the rights conferred under this Section 7 will not be construed to make Mortgagee a Mortgagee-in-possession of the Premises so long as Mortgagee has not itself entered into actual possession of the Land and Improvements. (D) If Mortgagee enters the Premises, Mortgagee will be liable to account only to Mortgagor and only for those Rents actually received. Except to the extent of Mortgagee's gross negligence or willful misconduct, Mortgagee will not be liable to the Borrower, anyone claiming under or through Mortgagor or anyone having an interest in the Premises, by reason of any act or omission of Mortgagee under Section 7(C) of this Instrument, and Mortgagor hereby releases and discharges Mortgagee from any such liability to the fullest extent permitted by law. If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness. (E) If the Rents are not sufficient to meet the costs of taking control of and managing the Premises and collecting the Rents, any funds expended by Mortgagee for such purposes will become an additional part of the Indebtedness as provided in Section 9 of this Instrument. (F) Any entering upon and taking of control of the Premises by Mortgagee or the receiver, as the case may be, and any application of Rents as provided in this Instrument will not cure or waive any Event of Default or invalidate any other right or remedy of Mortgagee under applicable law or provided for in this Instrument. (F) During the existence of an Event of Default, Mortgagee may enter into possession of the Premises, with or without legal action, and by force, if necessary; collect all Rents (which term will also include sums payable for use and occupation) and, after deducting all costs of collection and administration expenses, apply the rents in accordance with Section 7 of this Instrument; and for that purpose Mortgagor hereby confirms The assignment to Mortgagee of all Rents due and to become due under all Leases created after the date of this Instrument, as well as all rights and remedies provided in such Lease or Leases or at law or in equity for the collection of Rents. The taking of possession and collection of Rents by Mortgagee will not be construed to be an affirmation of any Lease. **FOR THE PURPOSE OF OBTAINING POSSESSION OF THE PREMISES DURING THE EXISTENCE OF AN EVENT OF DEFAULT, MORTGAGOR AUTHORIZES AND EMPOWERS ANY ATTORNEY OF ANY COURT OF RECORD IN THE COMMONWEALTH OF PENNSYLVANIA OR ELSEWHERE, AS ATTORNEY FOR MORTGAGOR AND ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR TO APPEAR FOR AND CONFESS JUDGMENT AGAINST MORTGAGOR AND AGAINST ALL PERSONS CLAIMING UNDER OR THROUGH MORTGAGOR, IN AN ACTION IN**



**COMPOSITE EXHIBIT A**

**EJECTMENT FOR POSSESSION OF THE PREMISES, IN FAVOR OF** Mortgagee, **FOR WHICH THIS INSTRUMENT, OR A COPY VERIFIED BY AFFIDAVIT, WILL BE A SUFFICIENT WARRANT; AND THEREUPON A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER AND WITHOUT ANY STAY OF EXECUTION. IF FOR ANY REASON AFTER SUCH ACTION HAS BEEN COMMENCED IT WILL BE DISCONTINUED, OR POSSESSION OF THE PREMISES WILL REMAIN IN OR BE RESTORED TO MORTGAGOR,** Mortgagee **WILL HAVE THE RIGHT FOR THE SAME DEFAULT OR ANY SUBSEQUENT DEFAULT TO BRING ONE OR MORE FURTHER ACTIONS OF EJECTMENT TO RECOVER POSSESSION OF THE PREMISES.** Mortgagee **MAY CONFESS JUDGMENT IN AN ACTION IN EJECTMENT BEFORE OR AFTER THE INSTITUTION OF PROCEEDINGS TO FORECLOSE THIS INSTRUMENT OR TO ENFORCE THE NOTE, OR AFTER ENTRY OF JUDGMENT IN THE ACTION OF EJECTMENT OR ON THE NOTE, OR AFTER A SHERIFF'S SALE OR JUDICIAL SALE OR OTHER FORECLOSURE SALE OF THE PREMISES IN WHICH** Mortgagee **IS THE SUCCESSFUL BIDDER. THIS AUTHORIZATION TO PURSUE SUCH PROCEEDINGS FOR CONFESSION OF JUDGMENT IS AN ESSENTIAL PART OF THE REMEDIES FOR ENFORCEMENT OF THIS INSTRUMENT AND THE NOTE, AND WILL SURVIVE ANY EXECUTION SALE TO** Mortgagee.

8. Application of Payments. If at any time Mortgagee receives, from Mortgagor or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Mortgagee may apply that payment to amounts then due and payable in any manner and in any order determined by Mortgagee, in Mortgagee's discretion. Neither Mortgagee's acceptance of an amount that is less than all amounts then due and payable nor Mortgagee's application of such payment in the manner authorized will constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Mortgagor's obligations under this Instrument, the Note and all other Loan Documents will remain unchanged.

9. Protection of Mortgagee's Security; Instrument Secures Future Advances. If Mortgagor should fail to perform any of its obligations under this Instrument or any other Loan Document, or if any action or proceeding is commenced which purports to affect the Premises, Mortgagee's security, or Mortgagee's rights under this Instrument, including eminent domain, insolvency, code enforcement, civil or criminal forfeiture, enforcement of Hazardous Materials Laws (as hereinafter defined), fraudulent conveyance or reorganizations or proceedings involving a bankrupt or decedent, then Mortgagee, at Mortgagee's option may make such appearances, file such documents, disburse such sums and take such actions as Mortgagee reasonably deems necessary to perform such obligations of Mortgagor and to protect Mortgagee's interest, including all of the following: (i) payment of attorney's fees and costs; (ii) enter upon the Premises to make repairs or secure the Premises; procure insurance as required by the Loan Agreement; (iii) pay any amounts which Mortgagor has failed to pay under this Instrument, the Loan Agreement, or any of the Loan Documents; (iv) perform any of the Mortgagor's obligations under the Loan Agreement; (v) make advances to pay, satisfy or discharge any obligation of the Mortgagor for the payment of money that is secured by a



**COMPOSITE EXHIBIT A**

lien on the Premises. Any amounts disbursed by Mortgagee under this Section 9 or under any other provision of this Instrument that treats such disbursement as being made under this Section 9, will be secured by this Instrument, will be added to, and become part of, the principal component of the Indebtedness, will be immediately due and payable and will bear interest from the date of disbursement until paid at the Default Rate (as defined in the Note). Nothing in this Section 9 will require Mortgagee to incur any expense or take any action. The provisions of this Section 9, including the obligation to indemnify Mortgagee, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Instrument and shall not be affected by Mortgagee's acquisition of any interest in the Premises, whether by foreclosure or otherwise. As used herein, the term "Hazardous Materials Law" and "Hazardous Materials Laws" means any and all federal, state and local laws, ordinances, regulations and standards, rules, policies and other governmental requirements, administrative rulings and court judgments and decrees in effect now or in the future, including all amendments, that relate to Hazardous Materials (as hereinafter defined) or the protection of human health or the environment and apply to Mortgagor or to the Premises. Hazardous Materials Laws include the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, *et seq.*, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. Section 6901, *et seq.*, the Toxic Substance Control Act, 15 U.S.C. Section 2601, *et seq.*, the Clean Water Act, 33 U.S.C. Section 1251, *et seq.*, and the Hazardous Materials Transportation Act, 49 U.S.C. Section 5101 *et seq.*, and their state analogs. As used herein, the term "Hazardous Materials" means petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives; flammable materials; radioactive materials; polychlorinated biphenyls (PCBs) and compounds containing them; lead and lead-based paint; asbestos or asbestos containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Premises are prohibited by any governmental authority; any substance that requires special handling and any other material or substance now or in the future that (i) is defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" by or within the meaning of any Hazardous Materials Law, or (ii) is regulated in any way by or within the meaning of any Hazardous Materials Law.

10. Events of Default. An Event of Default under the Note, the Loan Agreement, or any other Loan Documents will constitute an Event of Default under this Instrument. Upon the occurrence of an Event of Default, the Indebtedness shall become due and payable forthwith at the option of Mortgagee.

11. Remedies Cumulative. Each right and remedy provided in this Instrument is distinct from all other rights or remedies under this Instrument, the Loan Agreement or any other Loan Document or afforded by applicable law or equity, and each will be cumulative and may be exercised concurrently, independently or successively, in any order. Mortgagee's exercise of any particular right or remedy will not in any way prevent Mortgagee from exercising any other right or remedy available to Mortgagee. Mortgagee may exercise any such remedies from time to time and as often as Mortgagee chooses.

12. Waiver of Statute of Limitations, Offsets, and Counterclaims. Mortgagor waives the right to assert any statute of limitations as a bar to the enforcement of the lien of this Instrument or



**COMPOSITE EXHIBIT A**

to any action brought to enforce any Loan Document. Mortgagor hereby waives the right to assert a counterclaim, other than a compulsory counterclaim, in any action or proceeding brought against it by Mortgagee or otherwise to offset any obligations to make the payments required by the Loan Documents. No failure by Mortgagee to perform any of its obligations under this Instrument will be a valid defense to, or result in any offset against, any payments that Mortgagor is obligated to make under any of the Loan Documents.

13. Waiver of Marshalling. Notwithstanding the existence of any other security interests in the Premises held by Mortgagee or by any other party, Mortgagee will have the right to determine the order in which any or all of the Premises will be subjected to the remedies provided in this Instrument, the Note, the Loan Agreement, or any other Loan Document, or applicable law. Mortgagee will have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of such remedies. Mortgagor and any party who now or in the future acquires a security interest in the Premises and who has actual or constructive notice of this Instrument waives any and all right to require the marshalling of assets or to require that any of the Premises be sold in the inverse order of alienation or that any of the Premises be sold in parcels or as an entirety in connection with the exercise of any of the remedies permitted by applicable law or provided in this Instrument.

14. Further Assurances. Mortgagor will deliver, at its sole cost and expense, all further acts, deeds, conveyances, assignments, estoppel certificates, financing statements or amendments, transfers and assurances as Mortgagee may require from time to time in order to better assure, grant, and convey to Mortgagee the rights intended to be granted, now or in the future, to Mortgagee under this Instrument and the Loan Documents.

15. Governing Law; Consent to Jurisdiction and Venue. This Instrument, and the provisions for the creation, perfection, priority, enforcement, and foreclosure of the liens and security interests created in the Premises will be governed by, and construed in accordance with, the laws of the commonwealth of Pennsylvania. Notwithstanding the foregoing, the law of the state of Connecticut shall govern the validity and enforceability of all Loan Documents, and the Indebtedness arising hereunder (but the foregoing shall not be construed to limit Mortgagee's rights with respect to such security interest created in the commonwealth of Pennsylvania). Nothing in this Section 15 is intended to limit Mortgagee's right to bring any suit, action or proceeding relating to matters under this Instrument, the Note, the Loan Agreement, or any of the Loan Documents in any court of any other jurisdiction.

16. Notices. All notices, consents, approvals, and requests required or permitted under this Instrument or under any other Loan Document shall be given in accordance with the requirements set forth under the Loan Agreement.

17. Successors and Assigns. This Instrument will bind the respective successors and assigns of Mortgagor and Mortgagee, and the rights granted by this Instrument will inure to Mortgagee's successors and assigns.

19. Joint and Several Liability. If more than one party signs this Instrument as Mortgagor, the obligations of such Persons will be joint and several.



**COMPOSITE EXHIBIT A**

19. Relationship of Parties; No Third-Party Beneficiary. The relationship between Mortgagee and Mortgagor will be solely that of creditor and debtor, respectively, and nothing contained in this Instrument will create any other relationship between Mortgagee and Mortgagor. Nothing contained in this Instrument will constitute Mortgagee as a joint venturer, partner or agent of Mortgagor, or render Mortgagee liable for any debts, obligations, acts, omissions, representations or contracts of Mortgagor. No creditor of any party to this Instrument and no other Person will be a third-party beneficiary of this Instrument or any other Loan Document.

20. Severability; Amendments; Construction The invalidity or unenforceability of any provision of this Instrument will not affect the validity or enforceability of any other provision, and all other provisions will remain in full force and effect. This Instrument contains the entire agreement among the parties as to the rights granted and the obligations assumed in this Instrument. This Instrument may not be amended or modified except by a writing signed by the party against whom enforcement is sought. The captions and headings of the sections of this Instrument are for convenience only and will be disregarded in construing this Instrument. Any reference in this Instrument to a "Section" will, unless otherwise explicitly provided, be construed as referring to a section of this Instrument. Any reference in this Instrument to a statute or regulation will be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Instrument includes the plural and use of the plural includes the singular. As used in this Instrument, the term "including" means "including, but not limited to" and the term "includes" means "includes without limitation." Unless the context requires otherwise, any definition of or reference to any agreement, instrument, or other document in this Instrument will be construed as referring to such agreement, instrument or other document as from time to time amended, supplemented or otherwise modified (subject to any restrictions on such amendments, supplements or modifications set forth in this Instrument). Any reference in this Instrument to any Person will be construed to include such Person's successors and assigns. Any capitalized term not specifically defined in this Instrument will have the meaning ascribed to that term in the Loan Agreement. The term "Person" as used herein, shall mean any natural person, sole proprietorship, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, limited liability limited partnership, joint venture, association, joint stock company, bank, trust, estate, unincorporated organization, any federal, state, county or municipal government (or any agency or political subdivision thereof), endowment fund or any other form of entity.

21. Subrogation. If, and to the extent that, the proceeds of the loan evidenced by the Note, or subsequent advances under Section 9 of this Instrument, are used to pay, satisfy or discharge a prior lien, such loan proceeds or advances will be deemed to have been disbursed by Mortgagee at Mortgagor's request, and Mortgagee will automatically, and without further action on its part, be subrogated to the rights, including lien priority, of the owner or holder of the obligation secured by the prior lien, whether or not the prior lien is released.

22. Confession of Judgment in Ejectment. To the extent permissible under the laws of the commonwealth of Pennsylvania, at any time after an Event of Default, regardless of whether Mortgagee has asserted any other right or exercised any other remedy under this Instrument or any of the other Loan Documents, it shall be lawful for any attorney of any court to confess judgment in ejectment against Mortgagor and all Persons claiming under Mortgagor for the recovery by Mortgagee of possession of all or any part of the Premises, for which this Instrument



**COMPOSITE EXHIBIT A**

shall be sufficient warrant. If for any reason after such action shall have commenced the same shall be discontinued and the possession of the Premises shall remain in or be restored to Mortgagor, Mortgagee shall have the right upon subsequent default or defaults to bring one or more action or actions as hereinabove set forth to recover possession of all or any part of the Premises.

23. Acceleration; Remedies. At any time during the existence of an Event of Default, Mortgagee, at Mortgagee's option, may declare the Indebtedness to be immediately due and payable without further demand and may foreclose the lien of this Instrument by judicial proceedings and may invoke any other remedies permitted by Pennsylvania law or provided in this Instrument, the Loan Agreement or in any other Loan Document. Mortgagee will be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees and costs or fifteen percent (15%) of the unpaid balance of the sums secured by this Instrument, but not less than five thousand dollars ($5,000.00), and costs of documentary evidence, abstracts, and title reports.

24. Release. Upon payment of the Indebtedness, this Instrument will become null and void and Mortgagee will discharge this Instrument. Mortgagor will pay Mortgagee's reasonable costs incurred in discharging this Instrument.

25. Purchase Money Mortgage. If the proceeds of the Indebtedness are used by Mortgagor to pay all or a part of the purchase price of the Premises, this Instrument is declared to be a purchase money mortgage and will be entitled to all the benefits as such under the lien priority provisions of the Pennsylvania Judicial Code, 42 Pa. Con. Stat. Ann. Section 8141, as amended.

26. Future Advances. This Instrument secures future advances. Notwithstanding anything to the contrary contained in this Instrument, the maximum amount of indebtedness outstanding at any time which may be secured by this Instrument is One Hundred Ten Thousand Six Hundred Dollars and No Cents ($110,600.00), plus accrued and unpaid interest.

*[Remainder of page intentionally left blank]*



**COMPOSITE EXHIBIT A**

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has signed and delivered this Mortgage, Assignment of Rents, and Security Agreement or has caused said instrument to be signed and delivered by its duly authorized representative on ___9_______ __March______, 2023.

**RAD DIVERSIFIED REIT, INC.**

Witness: _______________

By: ____________________
Name: Brandon D. Mendenhall
Title: CEO

Witness: _______________

STATE OF _________________ )
)ss. _________________
COUNTY OF _________________ )

I certify that on ___________________________, 2023, Brandon D. Mendenhall came before me in person and stated to my satisfaction that he/she made the attached instrument; and was authorized to and did execute this instrument on behalf of, and as CEO of RAD DIVERSIFIED REIT, INC. (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its by-laws and its board of directors.

Notary Public

See Attachment



**COMPOSITE EXHIBIT A**

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of San Bernardino ) ss

On 3-9-2023 before me YASMIN BHOLAT, Notary Public, personally appeared Brandon D Mendenhall - CEO of RAD Diversified REIT, Inc who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that he/she/~~they~~ executed the same in his/~~her/their~~ authorized capacity~~(ies)~~, and that by his/~~her/their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person~~(s)~~ acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

YASMIN BHOLAT
Notary Public - California
San Bernardino County
Commission # [redacted]
My Comm. Expires Sep 29, 2026

Signature ____________________

(affix seal)

COMPOSITE
EXHIBIT A

SCHEDULE 1
PROPERTY DESCRIPTION

ALL THAT CERTAIN a lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northeast corner of Laveer Street and Beechwood Street in the Seventeenth Ward (formerly part of Fiftieth Ward) of the City of Pennsylvania.

CONTAINING in front or breadth on the said Laveer Street fifteen feet nine and three quarters inches and extending of that width in length or depth Northeastwardly and along the Southeasterly side of Beechwood Street sixty feet to a four feet wide alley which runs Southeastwardly from said Beechwood Street into another four feet wide alley running North Eastwardly into another alley five feet wide which runs Northwestwardly into said Beechwood Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveways and for passageways, watercourses and driveways at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.

BEING known as No. 2149 Laveer Street.
Being the same premises which Anna Brown by Deed dated 02/08/2007 and recorded 02/20/2007 in Philadelphia County as Document No. 51635050 conveyed unto Bernard Tyndale. in fee.
Being the same premises which Bernard Tyndale by Deed dated 01/30/2009 and recorded 05/14/2010 in Philadelphia County as Document No. 52211261 conveyed unto Anna Brown and Andre Brown, in fee. ($1.00 consideration)
Being the same premises which Anna Brown and Andre Brown, a single women and single man by Deed dated 04/03/2019 and recorded 02/05/2020 in Philadelphia County as Document No. 53627891 conveyed unto Bernard Tyndale, in fee. ($10.00 consideration)
Being the same premises which Bernard Tyndale by Deed dated 02/16/2022 and recorded 04/12/2022 in Philadelphia County as Document No. 54022145 conveyed unto RAD Diversified REIT, Inc., in fee.



COMPOSITE
EXHIBIT A

eRecorded in Philadelphia PA Doc Id: 54329939
08/12/2024 01:20 PM Page 1 of 3 Rec Fee: $242.75
Receipt#:
Records Department Doc Code: A

**PENNSYLVANIA**
COUNTY OF **PHILADELPHIA**
LOAN NO.:

WHEN RECORDED MAIL TO:
**FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID** 83402, PH.

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **RCN CAPITAL, LLC** located at **75 GERBER ROAD EAST, STE. 102, SOUTH WINDSOR, CT 06074**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over without recourse, representation or warranty, expressed or implied unto **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR IBIS HOLDINGS A TRUST** located at **500 DELAWARE AVENUE, WILMINGTON, DE 19801**, Assignee, its successors and assigns, that certain Mortgage described below.

Said Mortgage dated **MARCH 09, 2023** executed by **RAD DIVERSIFIED REIT, INC.**, Mortgagor, to **RCN CAPITAL, LLC**, Original Mortgagee, in the amount of **$110,600.00** and recorded on **MARCH 17, 2023** in the Office of the Register, Recorder, or County Clerk of **PHILADELPHIA** County, State of **PENNSYLVANIA**, as Document No. **54159986**, more particularly described and commonly known as:

**SEE ATTACHED LEGAL DESCRIPTION**
Property Address: **2149 W LAVEER ST, PHILADELPHIA, PA 19138**
**CITY OF PHILADELPHIA**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on JUL 29 2024.

**RCN CAPITAL, LLC** by Newrez, LLC dba Shellpoint Mortgage Servicing its Attorney in Fact

Name: Janalynne Hedden, Team Lead
Title:

STATE OF SC COUNTY OF Greenville ) ss.
On JUL 29 2024, before me, Jessica R. Blackwell, personally appeared Janalynne Hedden known to me to be the TEAM LEAD of **RCN CAPITAL, LLC*** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Jessica R. Blackwell **(COMM. EXP.** 9/1/2030 **)**
NOTARY PUBLIC

*by Newrez, LLC dba Shellpoint Mortgage Servicing its Attorney in Fact

JESSICA R. BLACKWELL
MY COMMISSION EXPIRES 09/01/2030
NOTARY PUBLIC SOUTH CAROLINA

**EXHIBIT B**

I do hereby certify that the precise address of the Assignee Residence is:
**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR IBIS HOLDINGS A TRUST, 500 DELAWARE AVENUE, WILMINGTON, DE 19801**

______________________________
**Name:** Janalynne Hedden, Team Lead
**Title:**______________________



**EXHIBIT B**

- RAD DIVERSIFIED REIT, INC.

LEGAL DESCRIPTION

ALL THAT CERTAIN a lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the Northeast corner of Laveer Street and Beechwood Street in the Seventeenth Ward (formerly part of Fiftieth Ward) of the City of Pennsylvania.

CONTAINING in front or breadth on the said Laveer Street fifteen feet nine and three quarters inches and extending of that width in length or depth Northeastwardly and along the Southeasterly side of Beechwood Street sixty feet to a four feet wide alley which runs Southeastwardly from said Beechwood Street into another four feet wide alley running North Eastwardly into another alley five feet wide which runs Northwestwardly into said Beechwood Street.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid driveways and for passageways, watercourses and driveways at all times hereafter, forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the use thereof.



EXHIBIT B

SERVICELINK

# Broker Price Opinion

## State Specific Language

## Client Information

Client: Shellpoint
Order Number: [redacted]
Loan Number: [redacted]
Owner / Borrower: RAD DIVERSIFIED REIT INC
Subject Address: 2149 Laveer St
PHILADELPHIA, PA 19138
Subject County: PHILADELPHIA
Subject AP[redacted]
Preparer's Name: Alan Layeni
Preparer's License Numb[redacted]
Preparer's Contact Number[redacted]
Preparer's Distance From the Subject (Driving): 8

Portfolio / Project Name:
Alternate Loan Number:
Inspection Date: 08/04/2026
Inspection Type: Exterior
Contact: ServiceLink
Contact Phone:
Company Name: Realtymark Associates
Broker's Name: Alan Layeni
Broker's License Num[redacted]

## Subject Tax and Sale Information

Estimated Tax Assessed Value Date: 02/25/2026
Tax Assessed Value: $ 110,500

Last Known Sale Date: N/A
Last Known Sale Price: $ 0

## Neighborhood Information

Predominant Occupancy: Owner
No. of Homes in Direct Competition: 12
Density: Suburban
Zoning: Residential
Property Maintenance: Average

Average Market Time of Sales: 90
Price Range (Low to High): $ 100,000 to $ 209,900
Predominant Value: $ 154,950
Property Values Trend: Stable 0 % annually
Market Rent: $ 1,520
Market Rent Trend: Stable 0 % annually

Market / Neighborhood Comments: The subject is located in a Suburban location. The market is currently stable. The average marketing time for similar properties in the subject area is 90 days. No prevalence of REO and no seller concessions."

## Subject Property

Listed in Last 12 Months: No
Vacant: No
Secured: Yes
Conform to Neighborhood: Yes
Estimated Land Price: $ 22,100
Mobile Home Permanently Attached and Taxed as Real Estate: N/A

Currently Listed: No
List Price: $
Listing Agent Name:
Listing Agent Phone:
Days on Market:

Problem for Resale: No

Environmental Problem: No

Subject Data Source(s): [X] Tax Records [ ] SiteXdata [ ] MLS # [ ] RealQuest [ ] REDLINK [ ] Estimated [ ] Other

Explanation of Estimated or Other Sources:

Positive Subject Comments: Based on the exterior observation, subject appears to be in average condition.

Negative Subject Comments: Based on the exterior observation, subject appears to be in average condition. No Negative Attributes

©ServiceLink 2020. All Rights Reserved.


**EXHIBIT C**

SERVICELINK

# Broker Price Opinion

Order #: [redacted] Loan #: [redacted] Client: Shellpoint

## Comparative Sale Information

| | SUBJECT ADDRESS | COMPARABLE 1 | COMPARABLE 2 | COMPARABLE 3 |
|---|---|---|---|---|
| Street Address: | 2149 Laveer St | 6558 Limekiln Pike | 5543 Matthews St | 1911 Elston St |
| City, State, Zip: | PHILADELPHIA, PA 191 | Philadelphia, PA 19138 | Philadelphia, PA 19138 | Philadelphia, PA 19138 |
| Property Type: | Single Family | Single Family | Single Family | Single Family |
| Property Style: | Townhouse | Townhouse | Townhouse | Townhouse |
| Number of Units: | 1 | 1 | 1 | 1 |
| Proximity to Subject: | | 0.39 miles NE | 0.15 miles SW | 1.16 miles NE |
| Sale Date: | N/A | 05/22/2026 | 05/28/2026 | 04/17/2026 |
| Sold Price: | $ 0 | $ 120,000 | $ 150,000 | $ 155,900 |
| Days on Market: | 0 | 98 | 115 | 91 |
| Location: | Average | Average | Average | Average |
| Lot Size: | 0.02 Ac | 0.03 Ac | 0.02 Ac | 0.03 Ac |
| Lot Size is: | Typical | Typical | Typical | Typical |
| Age in Years: | 101 | 101 | 126 | 101 |
| Condition: | Average | Average | Average | Average |
| Total Rooms: | 5 | 5 | 5 | 4 |
| Bedrooms: | 3 | 3 | 3 | 2 |
| Bathrooms: | 1 Full 0 Half | 1 Full 0 Half | 1 Full 0 Half | 1 Full 0 Half |
| Above Grade Sq. Footage: | 922 | 1,196 | 1,056 | 892 |
| Total Below Grade Sq.Ft.: | 461 | 598 | 528 | 446 |
| Garage: | 0 Car N/A | 0 Car N/A | 0 Car N/A | 1 Car Attached |
| Carport: | 0 Car N/A | 0 Car N/A | 0 Car N/A | 0 Car N/A |
| Comparison to Subject: | | Superior | Equal | Inferior |
| Comparable Data Source: | | MLS | MLS | MLS |
| MLS Listing Number: | | PAPH2571580 | PAPH2580584 | PAPH2578710 |

Explanation of Estimated or Other responses above:

Comments on Comparable 1: The Property is Superior in GLA, Similar in Age, Superior in Lot Size, Similar in Bed/bath count to the subject. Similar in market condition. Adj: GLA -$5480, Lot size -$20, Total Adj -$5500, NET Adj $114500

Comments on Comparable 2: The Property is Superior in GLA, Inferior in Age, Similar in Lot Size, Similar in Bed/bath count to the subject. Similar in market condition. Adj: GLA -$2680, Year built $2500, Total Adj -$180, NET Adj $149820

Comments on Comparable 3: The Property is Inferior in GLA, Similar in Age, Superior in Lot Size, Inferior in Bed/bath count to the subject. Similar in market condition. Adj: GLA $600, Lot size -$20, Bed $3000, Garage -$2000, Total Adj $1580, NET Adj $157480

©ServiceLink 2020. All Rights Reserved.


EXHIBIT C

SERVICELINK

# Broker Price Opinion

Order #: [redacted] Loan #: [redacted] Client: Shellpoint

## Comparative Listing Information

| | SUBJECT ADDRESS | COMPARABLE 1 | COMPARABLE 2 | COMPARABLE 3 |
|---|---|---|---|---|
| Street Address: | 2149 Laveer St | 6332 E Wister St | 6309 N Norwood St | 6246 N Woodstock St |
| City, State, Zip: | PHILADELPHIA, PA 191 | Philadelphia, PA 19138 | Philadelphia, PA 19138 | Philadelphia, PA 19138 |
| Property Type: | Single Family | Single Family | Single Family | Single Family |
| Property Style: | Townhouse | Townhouse | Townhouse | Townhouse |
| Number of Units: | 1 | 1 | 1 | 1 |
| Proximity to Subject: | | 0.46 miles NW | 0.09 miles NE | 0.15 miles NE |
| Listing Date: | N/A | 06/12/2026 | 07/17/2026 | 08/02/2026 |
| Days on Market: | 0 | 37 | 12 | 3 |
| Listing Price: | $ 0 | $ 150,000 | $ 169,900 | $ 189,900 |
| Location: | Average | Average | Average | Average |
| Lot Size: | 0.02 Ac | 0.02 Ac | 0.03 Ac | 0.03 Ac |
| Lot Size is: | Typical | Typical | Typical | Typical |
| Age in Years: | 101 | 101 | 126 | 121 |
| Condition: | Average | Average | Average | Average |
| Total Rooms: | 5 | 5 | 5 | 6 |
| Bedrooms: | 3 | 3 | 3 | 3 |
| Bathrooms: | 1 Full 0 Half | 1 Full 0 Half | 1 Full 0 Half | 1 Full 1 Half |
| Above Grade Sq. Footage: | 922 | 1,126 | 1,138 | 972 |
| Total Below Grade Sq.Ft.: | 461 | 563 | 569 | 486 |
| Garage: | 0 Car N/A | 0 Car N/A | 0 Car N/A | 0 Car N/A |
| Carport: | 0 Car N/A | 0 Car N/A | 0 Car N/A | 0 Car N/A |
| Comparison to Subject: | | Superior | Superior | Equal |
| Comparable Data Source: | | MLS | MLS | MLS |
| MLS Listing Number: | | PAPH2646910 | PAPH2627622 | PAPH2639126 |

Explanation of Estimated or Other responses above:

Comments on Comparable 1: The Property is Superior in GLA, Similar in Age, Similar in Lot Size, Similar in Bed/bath count to the subject. Similar in market condition. Adj: GLA -$4080, Total Adj -$4080, NET Adj $145920

Comments on Comparable 2: The Property is Superior in GLA, Inferior in Age, Superior in Lot Size, Similar in Bed/bath count to the subject. Similar in market condition. Adj: GLA -$4320, Year built $2500, Lot size -$20, Total Adj -$1840, NET Adj $168060

Comments on Comparable 3: The Property is Superior in GLA, Inferior in Age, Superior in Lot Size, Similar in Bed/bath count to the subject. Similar in market condition. Adj: GLA -$1000, Year built $2000, Lot size -$20, Half bath -$1000, Total Adj -$20, NET Adj $189880

## Addendum

Any Additional comments regarding market area, conditions, area growth or decline, crime activity, hazards, repairs and the like.

See Attached Addendum

©ServiceLink 2020. All Rights Reserved.


**EXHIBIT C**

SERVICELINK

# Broker Price Opinion

Order #: [redacted] Loan #: [redacted] Client: Shellpoint

## Estimates of Price

Discuss how you arrived at these prices: Final value based on sold comps overall as each of them support subject in specific attribute.

**Preparer Information**

Signed by: Alan Layeni  On: 08/03/2026
Broker: Alan Layeni  Address: 1500 JFK Blvd Suite 1510, Philadelphia PA 19102 [redacted]
Agent Name: Alan Layeni  Proximity to Subject: 8  Years Licensed: 16
License No: [redacted]  Type of License: BROKER  Expiration: 08/03/2028

| | | | |
|---|---|---|---|
| As Is Price Opinion: $ | 140,000 | As Repaired Price Opinion: $ | 140,000 |
| As Is Quick Sale: $ | 135,000 | As Repaired Quick Sale: $ | 135,000 |
| As Is Suggested List: $ | 145,000 | As Repaired Suggested List: $ | 145,000 |
| Land Only Price Opinion: $ | 22,100 | Estimated Cost to Repair: $ | 0 |

Average Market Time of Sale (listing date to contract date): 90

ServiceLink Valuation Solutions, LLC's ("ServiceLink") Broker Price Opinion offers an opinion derived from analysis based on inspection of the subject property and analysis of the local market data as performed by a licensed real estate professional. Information in this report may be gathered from multiple sources, including, but not limited to, multiple listing services (MLS), public records, public records data services, city/county office websites, proprietary files, mapping services, or may be provided by the client. In some cases, information on the subject property may be limited or unavailable, and, in some instances, may be derived from an inspection of the property. The information provided assumes, unless otherwise stated in this report, the subject property is in average condition, contains no health, safety, environmental, structural, or title related defects, the real property interests are fee simple, and the information relied upon is accurate. This report is based upon data that is deemed generally acceptable for products of this type. The analysis of an interest in real property for ownership or collateral purposes is prepared for the above named client only. The intended use is to assist the designated client in making an independent, internal decision regarding the subject property. The use of this report by anyone other than the client for any purpose is not permitted or authorized by ServiceLink, including its subsidiaries and affiliates. Any other use of this report by any other party is prohibited. This report is not an appraisal. This report is provided "AS IS," and no guarantee or warranty is provided. ServiceLink will not be liable for any loss, damage, or injury arising out of, or in conjunction with, the client's utilization of the information contained in this report. If this report is intended to be used for "lending collateral analysis" or "default collateral analysis," the loan transaction value must be less than $400,000.00. (Rev. 04/2025)

**Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.**

## State Specific Language

©ServiceLink 2020. All Rights Reserved.


EXHIBIT C

ADDENDUM

| | | |
|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | | File No.: [redacted] |
| Property Address: 2149 Laveer St | | Case No.: |
| City: PHILADELPHIA | State: PA | Zip: 19138 |
| Lender: Shellpoint | | |

**Additional Comments**

The estimated value in my report is based on a thorough analysis of comparable properties, or ""comps,"" in the subject market. These comps were selected based on their similarity to the subject property and their recent sale prices, with a particular emphasis on sold comps in order to accurately reflect current market conditions. In cases where the number of available comparables within the subject's immediate neighborhood was limited, a wider price range of comps was utilized in order to arrive at a reliable estimated value for the subject property. Closest comparable used, Due to lack of similar comparable, had to expand search by distance in order to find comps that were suitable for analysis when compared to subject property. Subject is closer to commercial property/Busy road. But does not affect the subject marketability value. Subject and all comps are same location. So, no need location adjustment. Value is derived from an emphasis on sold comp 2 was given most weight on GLA and list comp 3 was given most weight on GLA.



**EXHIBIT C**

## State-Specific Disclaimers

[redacted]

| STATE | DISCLAIMER |
|---|---|
| Arizona | Arizona Revised Statutes Annotated<br>Title 32. Professions and Occupations (Refs & Annos)<br>Chapter 36. Real Estate Appraisal (Refs & Annos)<br>Article 1. General Provisions<br>§ 32-3602. Applicability of chapter<br>This chapter does not apply to:<br>9. A person who produces a statement that is provided to any other person concerning the estimated value of real property through an internet website, automated valuation or other software program or other means of comparative market analysis and who discloses that the estimate is not an appraisal. |
| Arkansas | **Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is, desired the services of a licensed or certified appraiser must be obtained.**<br>**Pursuant to Ar Code. Ann § 17-42-110(d), a broker price opinion or market analysis issued by a real estate licensee shall not contain the terms "market value", "appraised value", or "appraisal". Any reference in the report to a specific marketing time period is for illustrative purposes only and does not obligate the licensee or broker to sell the property within the stated timeframe or act as a representation or guarantee that the property will be sold within such timeframe. Unless otherwise indicated, the broker price opinion assumes without investigation a fee simple title ownership interest without any reservation of minerals, subsurface rights, or otherwise. This broker price opinion report is to be used solely for purposes allowed by state and federal law. If the report is to be used for any purpose not specifically allowed by state and federal law, legal counsel should be consulted.** |
| Colorado | This evaluation was prepared by a licensed real estate broker and is not an appraisal. This evaluation cannot be used for the purposes of obtaining financing. |
| Delaware | **Notwithstanding any language to the contrary contained herein, this Competitive Market Analysis is NOT an appraisal of the market value for property and is not intended to be used for any legal purpose including approval of a mortgage loan, modification of a mortgage loan, divorce/property separation, estate settlement, bankruptcy proceedings or any other purpose where real estate value is needed. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** |
| Hawaii | This opinion as to the estimated price of real estate is not an appraisal. |
| Idaho | Unless the broker is licensed under the Idaho Real Estate Appraisers Act, Chapter 41, Title 54, Idaho Code, this report is not intended to meet the Uniform Standards of Professional Appraisal Practice. The broker's price opinion is not intended to be an appraisal of the market value of the property, and if an appraisal is desired, the services of a licensed or certified appraiser should be obtained. |
| Illinois | This is a broker price opinion/comparative market analysis, not an appraisal of the market value of the real estate, and was prepared by a licensed real estate broker or managing broker who was not acting as a State certified real estate appraiser. |
| Maine | **This opinion or appraisal was prepared solely for the client, for the purpose and function stated in this report and is not intended for subsequent use. It was not prepared by a licensed or certified appraiser and may not comply with appraisal standards of the uniform standards of professional appraisal practice.** |
| Maryland | COMPETITIVE MARKET ANALYSIS DISCLOSURE<br>This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property. |
| Michigan | **This is a market analysis, not an appraisal and was prepared by a licensed real estate broker or associate broker, not a licensed appraiser.** |



**EXHIBIT C**

## State-Specific Disclaimers

[redacted]

| STATE | DISCLAIMER |
|---|---|
| Minnesota | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |
| Mississippi | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. |
| Missouri | **This is not an appraisal.** |
| Nebraska | **This opinion or analysis is not an appraisal. It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering or sale price of the real property or for lending purposes in a transaction other than a federally related transaction, or for real property tax appeal purposes. This opinion or analysis is not governed by the Real Property Appraiser Act.** |
| Nevada | **Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** |
| New Jersey | This is not an appraisal and should not be considered the equivalent of an appraisal. |
| North Carolina | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit. |
| Ohio | The valuation used for the purposes of the application was obtained from a market analysis or price opinion or automated valuation model report and not from a person licensed or certified under Ohio Revised Code § 4763.19 |
| Oregon | This report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. This report is not intended as an appraisal and if an appraisal is desired, the services of a competent professional licensed appraiser should be obtained. |
| Pennsylvania | This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which requires valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest. It is not to be construed as an appraisal and may not be used as such for any purpose. |
| Rhode Island | This opinion or analysis is not a certified appraisal or an appraisal that conforms to the Uniform Standards of Professional Appraisal Practice (USPAP). It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing offering, or sale price of the real property and not for any other purpose, including but not limited to, lending purpose excepting that specifically provided under R.I. Gen.Laws § 5-20.7-3. |
| South Carolina | This valuation service may not be used for the purposes of obtaining financing in a federally related transaction. |
| Tennessee | This is not an appraisal. |
| Texas | This represents an estimated sale price for this property. It is not the same as the opinion of value in an appraisal developed by a licensed appraiser under the Uniform Standards of Professional Appraisal Practice |
| Virginia | This is not an appraisal performed in accordance with the Uniform Standards of Professional Appraisal Practice. Nor is this an appraisal as defined in Section 54.1-2009 of the Code of Virginia. |
| Washington | This is not an appraisal as defined in chapter 181.140 RCW and has been prepared by a real estate licensee, licensed under chapter 18.85 RCW. It has not been prepared by a state-certified or state-licensed real estate appraiser acting under their capacity as a licensee under chapter 18.140 RCW. |
| Wyoming | This is an opinion of price and is not a certified appraisal of the market value of the property. If such an appraisal is desired, the service of a certified appraiser must be obtained. |



**EXHIBIT C**

[redacted]

## State-Specific Disclaimers

| STATE | DISCLAIMER |
|---|---|
| West Virginia | **This evaluation has been prepared in compliance with §30-38-1(c)(6) and the following conditions are satisfied, (A) The amount of the loan is equal to or less than the federal de minimus threshold; (B) the evaluation is used solely by the lender in its records to document the collateral value; (C) the evaluation clearly indicates on its face that it is for the lender's internal use only; (D) the evaluation is not labeled an appraisal and explicitly states that the evaluation was performed by an individual that is not licensed as an appraiser in accordance with §30-38-1, et seq.** |
| | |



**EXHIBIT C**

## SUBJECT PROPERTY PHOTO ADDENDUM

[redacted]

| | | |
|---|---|---|
| Property Address: 2149 Laveer St | | |
| City: PHILADELPHIA | State: PA | Zip: 19138 |



SUBJECT (FRONT VIEW)



SUBJECT (ANGLED)




ADDRESS VERIFICATION



**EXHIBIT C**

# SUBJECT PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | | File No.: [redacted] |
| Property Address: 2149 Laveer St | | Case No.: |
| City: PHILADELPHIA | State: PA | Zip: 19138 |
| Lender: Shellpoint | | |



ANGLED VIEW OF
SUBJECT PROPERTY



STREET SCENE



**EXHIBIT C**

Borrower: RAD DIVERSIFIED REIT INC | File No.: [redacted]
Property Address: 2149 Laveer St | Case No.: [redacted]
City: PHILADELPHIA | State: PA | Zip: 19138
Lender: Shellpoint



COMPARABLE SALE #1

6558 Limekiln Pike
Philadelphia, PA 19138

Sale Date: 05/22/2026
Sale Price: $ 120,000



COMPARABLE SALE #2

5543 Matthews St
Philadelphia, PA 19138

Sale Date: 05/28/2026
Sale Price: $ 150,000



COMPARABLE SALE #3

1911 Elston St
Philadelphia, PA 19138

Sale Date: 04/17/2026
Sale Price: $ 155,900



**EXHIBIT C**

## COMPETING LISTING PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | File No.: [redacted] | |
| Property Address: 2149 Laveer St | Case No [redacted] | |
| City: PHILADELPHIA | State: PA | Zip: 19138 |
| Lender: Shellpoint | | |



**COMPETING LISTING #1**

6332 E Wister St
Philadelphia, PA 19138

Listing Price: $ 150,000
Days-On-Market: 37



**COMPETING LISTING #2**

6309 N Norwood St
Philadelphia, PA 19138

Listing Price: $ 169,900
Days-On-Market: 12



**COMPETING LISTING #3**

6246 N Woodstock St
Philadelphia, PA 19138

Listing Price: $ 189,900
Days-On-Market: 3



**EXHIBIT C**

## LOCATION MAP

| | | |
|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | | File No.: [redacted] |
| Property Address: 2149 Laveer St | | Case No.: |
| City: PHILADELPHIA | State: PA | Zip: 19138 |
| Lender: Shellpoint | | |




**EXHIBIT C**

AERIAL MAP

| | | | |
|---|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | | File No [redacted] | |
| Property Address: 2149 Laveer St | | Case No.: | |
| City: PHILADELPHIA | State: PA | | Zip: 19138 |
| Lender: Shellpoint | | | |




**EXHIBIT C**

# Signature

| Property Address: 2149 Laveer St | | File No.: [redacted] |
|---|---|---|
| City: PHILADELPHIA | State: PA | Zip: 19138 |



Signature

Signature



**EXHIBIT C**

| | | | |
|---|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | | File No. [redacted] | |
| Property Address: 2149 Laveer St | | Case No.: | |
| City: PHILADELPHIA | State: PA | | Zip: 19138 |
| Lender: Shellpoint | | | |

04/08/2026, 23:32 Matrix

## Agent 360

**2149 Laveer St, Philadelphia, PA 19138-2542** **Philadelphia** **Tax ID 171303300**





### Summary Information

| | | | |
|---|---|---|---|
| Owner: | Rad Diversified Reit Inc | Property Class: | Residential |
| Owner Address: | 10808 Foothill Blvd Ste 160 Pmb 347 | Annual Tax: | $1,546 |
| Owner City State: | Rancho Cucamonga CA | Record Date: | 04/12/22 |
| Owner Zip+4: | 91730-601 | Settle Date: | 02/16/22 |
| No Mail(P): | No | Sale Amount: | $67,500 |
| Owner Carrier Rt: | C010 | Book: | 0 |
| | | Page: | 0 |
| | | Doc Num: | 54022145 |
| | | Tax Record Updated: | 07/20/26 |

### Geographic Information

| | | | |
|---|---|---|---|
| County: | Philadelphia, PA | Lot: | 49 |
| Municipality: | Philadelphia | Grid: | 7932E3 |
| High Sch Dist: | Philadelphia City | Census: | 0277.005 |
| Tax ID: | 171303300 | | |
| Tax Map: | 108N120 | | |
| Ward: | 17 | | |
| Tax ID Alt: | 171303300 | | |

### Assessment & Tax Information

| | | | | | |
|---|---|---|---|---|---|
| Tax Year: | 2026 | Annual Tax: | $1,546 | Total Land Asmt: | $22,100 |
| Municipal Tax: | $680 | Taxable Land Asmt: | $22,100 | Total Bldg Asmt: | $88,400 |
| School Tax: | $866 | Taxable Bldg Asmt: | $88,400 | Total Asmt: | $110,500 |
| Asmt As Of: | 1/1/2026 | | | Taxable Total Asmt: | $110,500 |
| Mkt Val As Of: | 2026-04-29 | | | Assessors Total Mkt: | $110,500 |

### Lot Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Frontage: | 15.00 | SQFT: | 922 | Zoning: | RSA5 |
| Depth: | 60.00 | Acres: | 0.0212 | Shape: | Rectangle |
| | | Topography: | Level | | |

### Building Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Residential Type: | Row/Twnhse/Cluste | Bed Rooms: | 3 | Basement Type: | Yes (Type Unknown) |
| Residential Design: | 2 Story | Full Baths: | 1 | | |
| Stories: | 2.00 | Total Baths: | 1.0 | Year Built: | 1925 |
| Total Units: | 1 | Family Room: | 0 | | |
| Abv Grd Fin SQFT: | 922 | Exterior: | Masonry | | |
| Fireplace Total: | 0 | Residential Units: | 1 | | |
| | | Basement Desc: | Finished | | |
| | | Heat Delivery: | Hot Water/Steam | | |

### Codes & Descriptions

Land Use: O30 Res: Row, 2 Sty, Masonry



**EXHIBIT C**

| | | | |
|---|---|---|---|
| Borrower: RAD DIVERSIFIED REIT INC | | File No.: [redacted] | |
| Property Address: 2149 Laveer St | | Case No.: | |
| City: PHILADELPHIA | State: PA | | Zip: 19138 |
| Lender: Shellpoint | | | |



**MLS History**

| MLS Number | Category | Status | Status Date | Price |
|---|---|---|---|---|
| PAPH2192722 | RESL | Closed | 03/10/23 | $1,100 |
| PAPH1027378 | RES | Expired | 07/30/21 | $78,000 |
| PAPH1009998 | RES | Canceled | 04/30/21 | $105,000 |
| 1000300773 | RES | Expired | 01/06/18 | $49,900 |

The data on this report is compiled by BRIGHT from various public and private sources. The data on this is not a legal flood determination. Errors may exist in any field on this report, including owner's name, tax amounts, mortgage history, and property characteristics. Verify the accuracy of all data with the county or municipality.

© BRIGHT MLS - Content is reliable but not guaranteed and should be independently verified (e.g., measurements may not be exact, visuals may be modified, school boundaries should be confirmed by school/district). Any offer of compensation is for MLS subscribers subject to Bright MLS policies and applicable agreements with other MLSs. Copyright 2026. Created: 08/04/2026 02:02 PM

**Search Criteria**

Street Number is 2149
Postal Code is '19138'
Selected **1** of **10** results.